# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TV GUIDE ONLINE, INC. and <br> TV GUIDE ONLINE, LLC, <br>         Plaintiffs, <br>         Counterclaim-Defendants, <br><br> v. <br><br> TRIBUNE MEDIA SERVICES, INC., <br>         Defendant, <br>         Counterclaim-Plaintiff. | C.A. No. 05-725-KAJ |

## DEFENDANT'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS AND MOTION TO STRIKE

Richard K. Herrmann (ID No. 405)
Mary B. Matterer (ID No. 2696)
MORRIS JAMES HITCHENS &
   WILLIAMS
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
rherrmann@morrisjames.com

*Attorneys for Defendant*
*Tribune Media Services, Inc.*

**Of Counsel:**

Mark A. Pals, P.C.
Linda S. DeBruin
Michael A. Parks
Laura A. Hepburn
Meredith Zinanni
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000

Dated: March 7, 2006

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

NATURE AND STAGE OF PROCEEDINGS ............................................................... 2

SUMMARY OF ARGUMENT ......................................................................................... 2

STATEMENT OF FACTS ................................................................................................. 3

ARGUMENT ........................................................................................................................ 7

I.      TV Guide's Motions Hinge on a Narrow, Flawed Reading of TMS' Misuse Allegations. ................................................................................................... 9

II.     TV Guide Is Also Wrong In Claiming TMS' Misuse Allegations Should Be Dismissed Because TV Guide Recanted Its Covenant Not To Assert Four Days Before Filing Its Motion to Dismiss. ................................................................... 12

CONCLUSION .................................................................................................................. 13

## TABLE OF AUTHORITIES

### CASES

*Applera Corp. v. MJ Research Inc.*,
    349 F. Supp. 2d 321 (D. Conn. 2004).................................................................... 10

*Bayer AG v. Housey Pharm., Inc.*,
    228 F. Supp. 2d 467 (D. Del. 2002)...................................................................... 10

*Beloit Corp. v. Valmet OY*,
    742 F.2d 1421 (Fed. Cir. 1984)............................................................................. 5

*Duplan Corp. v. Deering Milliken, Inc.*,
    444 F. Supp. 648 (D.S.C. 1977)............................................................................ 10

*Greiff v. T.I.C. Enters., L.L.C.*,
    No. Civ. 03-882-SLR, 2004 WL 115553
    (D. Del. Jan 9, 2004)........................................................................................ 8-9

*Harshbarger v. Philip Morris, Inc.*,
    No. 02*05267 JSW, 2003 WL 23342396 (N.D. Cal. Apr. 1, 2003)................... 7-8

*Impax Laboratories, Inc. v. Aventis Pharmaceuticals, Inc.*,
    333 F. Supp. 2d 265 (D. Del. 1994)....................................................................... 8

*In the Matter of Certain Set-Top Boxes and Components Thereof*,
    U.S.I.T.C. Inv. No. 337-TA-454, 2002 WL 31556392
    (U.S.I.T.C. June 21, 2002) ........................................................................ 4, 6, 11

*Kost v. Kozakiewicz*,
    1 F.3d 176 (3d Cir. 1993) ...................................................................................... 7

*Morton Salt Co. v. G.S. Suppiger Co.*,
    314 U.S. 488 (1942)......................................................................................... 9, 11

*Motorola v. Kimball Int'l, Inc.*,
    601 F. Supp. 62 (N.D. Ill. 1984) ...................................................................... 9, 12

*Sierra Club v. Young Life Campaign, Inc.*,
    176 F. Supp. 2d 1070 (D. Colo. 2001).................................................................. 8

*Trueposition, Inc. v. Allen Telecom, Inc.*,
    No. C.A. 01-8223 GMS, 2003 WL 151227 (D. Del. Jan. 21, 2003) ..................... 8

*Virginia Panel Corp. v. Mac Panel Co.*,
    133 F.3d 860 (Fed. Cir. 1997)............................................................................. 10

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
    782 F.2d 995 (Fed. Cir. 1986) .................................................................................. 10

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    395 U.S. 100 (1969) ................................................................................................ 10

## OTHER AUTHORITIES

DEPT. OF JUSTICE AND FED. TRADE COMM., ANTITRUST GUIDELINES FOR THE LICENSING
    OF INTELLECTUAL PROPERTY § 5.6 (Apr. 6, 1995) ................................................. 11

## RULES

Fed. R. Civ. P. 12(b) ................................................................................................. 7, 8, 13

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 7

Fed. R. Civ. P. 12(f) ........................................................................................................... 8

Rule 56 ........................................................................................................................ 7, 8, 13

## INTRODUCTION

TV Guide and its parent Gemstar-TV Guide International, Inc. are no strangers to patent misuse charges. An Administrative Law Judge in the International Trade Commission previously found Gemstar guilty of patent misuse for engaging in licensing practices similar to those that TMS complains of here. Not surprisingly, TV Guide wishes none of that had happened and hopes to block TMS from pursuing its claim that TV Guide and Gemstar are up to their old patent misuse tricks again.

TV Guide's motion to dismiss and strike TMS' patent misuse allegations is baseless. TV Guide argues the allegations should be dismissed because (according to TV Guide) they are based on covenants not to assert that TV Guide (a) recanted four days before filing its instant motion and (b) had no intent of actually requiring TMS to agree to despite including them in numerous licensing proposals. (D.I. 12, TV Guide Opening Brief at 1) TV Guide's position not only strains credulity; it also misstates the scope of TMS' misuse allegations and entirely misses the point. TMS' charges of patent misuse are not limited to the licensing proposals TV Guide and Gemstar provided to TMS. Rather, TMS' patent misuse allegations are based on the overall licensing practices employed by TV Guide and Gemstar. TMS may pursue a patent misuse claim based on TV Guide and/or Gemstar including a covenant not to assert in any third party patent license, if that third party license includes a patent asserted against TMS, regardless of whether TV Guide forced a covenant not to assert on TMS.

As explained below, TMS has met the pleading standard required by the Federal Rules. TV Guide's motions should be denied.

## NATURE AND STAGE OF PROCEEDINGS

TV Guide filed its Complaint in this action on October 12, 2005. (D.I. 1) TV Guide served TMS with the Complaint on January 10, 2006. (D.I. 4) On February 1, 2006, TMS filed and served its Answer, Affirmative Defenses and Counterclaims. (D.I. 6). One of TMS' counterclaims and affirmative defenses alleges patent misuse based on the practices used by TV Guide and its parent Gemstar to license their patents, including the '078 patent at issue in this case. TV Guide has moved to dismiss TMS' patent misuse counterclaim and to strike TMS' patent misuse affirmative defense. The Court has scheduled a Rule 16 scheduling conference for March 8, 2006 at 4:30 p.m.

## SUMMARY OF ARGUMENT

1. TV Guide's motions hinge entirely on a flawed, narrow reading of TMS' patent misuse allegations. TV Guide incorrectly contends TMS' misuse claim is limited to the licensing proposals TV Guide and Gemstar provided TMS. TMS' misuse allegations, however, are much broader and are based on the overall licensing practices employed by TV Guide and Gemstar.

Even if TV Guide had never proposed a covenant not to assert or any licensing terms at all to TMS, TMS could still bring a patent misuse claim based on TV Guide and/or Gemstar including a covenant not to assert in a third party patent license involving the '078 patent.

2. Patent misuse requires a showing that the patentee has impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect. An overly broad grantback or covenant not to assert in a license agreement is a form of patent misuse. TMS' patent misuse allegations detail how TV Guide's covenants not to assert impermissibly broaden the patent scope with anticompetitive effect.

2

3. The Department of Justice has also recognized that overly broad grantbacks and covenants not to assert can be anticompetitive. Referencing the DOJ guidelines and applying a "rule of reason" test, Administrative Law Judge Luckern of the International Trade Commission found Gemstar guilty of patent misuse for engaging in licensing practices similar to those that TMS complains of here. That is another confirmation that TMS' patent misuse allegations have merit.

4. TV Guide cannot insulate itself from patent misuse liability by recanting the covenant not to assert contained in its proposals to TMS. Not only are TMS' allegations much broader than the specific proposals TV Guide and Gemstar made to TMS, but TV Guide overreaches when it argues a licensing proposal (such as the one TV Guide submitted to TMS) may not form the basis of a misuse claim.

## STATEMENT OF FACTS

In pleading a counterclaim and an affirmative defense of patent misuse, TMS contends TV Guide and its parent Gemstar have misused the '078 patent and other patents by licensing them subject to covenants not to assert, covenants not to sue, and/or grantback provisions. (D.I. 6, First Affirmative Defense and Counterclaim ¶¶ 8-12). TMS alleges these covenants not to assert, covenants not to sue and grantback provisions allow TV Guide, Gemstar and their customers to free ride on some or all of the licensees' patented technology. (*Id.*)

TMS alleges these provisions "unlawfully extend the bounds of the patent monopoly, creating disincentives for competition and innovation." (D.I. 6, Counterclaim ¶ 11). As TMS alleges, "even if a [TV Guide or Gemstar] licensee were to create a competitive interactive program guide technology, TV Guide Online and Gemstar as well as Gemstar's customers could, among other things, misappropriate the technology

3

without fear of liability and free ride off of the licensee's technology or product development costs, thereby creating a disincentive to develop competing technology and products." (*Id.*)  TMS' patent misuse allegations are not limited to TV Guide's and Gemstar's licensing proposals to TMS.  Rather, TMS' allegations are based on the overall licensing practices employed by TV Guide and Gemstar. (*Id.* at First Affirmative Defense and Counterclaim ¶¶ 8-12)

As TMS pleads in its misuse affirmative defense and counterclaim, TV Guide does not begin this case with a clean slate on patent misuse. (*Id.*)  Licensing practices similar to those TMS complains of here — and employed by TV Guide's parent Gemstar, which participated in licensing proposals to TMS — have been found to constitute patent misuse.  (*See id.*; *see also In the Matter of Certain Set-Top Boxes and Components Thereof*, U.S.I.T.C. Inv. No. 337-TA-454, 2002 WL 31556392, at *91 (U.S.I.T.C. June 21, 2002); *id.* at *80, *87, and *130-31 n.27 (regarding grant backs and covenants not to sue).  As TMS alleges, an Administrative Law Judge in the International Trade Commission ("ITC") found, after a full trial on the merits, that Gemstar's grantback and covenant not to sue provisions constitute patent misuse.  (*Id.*)  In a public and judicially noticeable version of the decision, the Administrative Law Judge weighed the anticompetitive effects of Gemstar's covenant not to sue/grantback provisions and concluded that the provisions were unlawful.  (*Id.*)

TV Guide's complaint that the patent misuse affirmative defense in the ITC proceedings involved a different patent misses the point.  (*See* D.I. 12, TV Guide Opening Brief at 4)  Any licensing of the '078 patent by Gemstar or TV Guide subject to grantback, covenant not to sue or covenant not to assert provisions, constitutes patent

misuse, as TMS alleges. (*See* D.I. 6, First Affirmative Defense and Counterclaim ¶¶ 8-12) TMS further alleges it believes discovery will yield additional ways in which TV Guide and Gemstar have misused the '078 patent and other patents. (*Id*. at ¶ 12)

TV Guide's motion contains several inaccurate and misleading statements regarding Administrative Law Judge Luckern's decision. First, TV Guide incorrectly argues it is inappropriate for TMS to reference Judge Luckern's decision because the ITC reviewing his decision took "no position" on his patent misuse findings. (*See* D.I. 12, TV Guide Opening Brief at 11) The ITC adopted Judge Luckern's non-infringement findings and thus did not need to reach the affirmative defense of patent misuse. *See, e.g., Beloit Corp. v. Valmet OY*, 742 F.2d 1421, 1422-23 (Fed. Cir. 1984) (ITC free to take no position on an issue where another issue is dispositive). Accordingly, rather than grant Gemstar's petition for review of the patent misuse findings, the ITC took "no position" on Judge Luckern's findings of misuse. That, however, does not alter the fact that TMS' patent misuse allegations are more than sufficient to survive a motion to dismiss.

Second, TV Guide insinuates that the Northern District of Georgia came to a different conclusion than Judge Luckern. (D.I. 12, TV Guide Opening Brief at 11) Among the antitrust claims made against Gemstar in that case was that its licensing agreements employed an unlawful covenant not to sue in violation of federal antitrust laws. But the covenant-not-to-sue claim was one of the antitrust theories on which Gemstar chose not to move for partial summary judgment. The Northern District of Georgia decision did not address covenants not to sue or grantback provisions. Rather, it related to tying arrangements. (*See generally* D.I.12, TV Guide Opening Brief at Ex. 1)

5

Third, TV Guide argues that because the ITC record is held in confidence and because TMS was not a party to the ITC proceeding, TMS has no basis to assert that the ITC proceeding involved provisions "similar" to the covenant not to assert that TV Guide and Gemstar proposed to TMS.  (D.I. 12, TV Guide Opening Brief at 11-12)  TV Guide is correct that TMS was not party to the ITC investigation in which Judge Luckern found Gemstar guilty of patent misuse.  TV Guide, however, is incorrect in claiming TMS' status as a non-party prevents it from alleging that TV Guide attempted with TMS a covenant not to sue "similar" to what Judge Luckern found to be patent misuse.  (TV Guide Opening Brief at 4, 11)  According to Judge Luckern's publicly filed decision:

- the respondents in the investigation argued that Gemstar's licenses contain unlawful grantbacks and covenants not to sue (*In the Matter of Certain Set-Top Boxes and Components Thereof*, 2002 WL 31556392, at *80, 130-31 n.27);

- the ITC staff argued that Gemstar engaged in patent misuse by using its large patent portfolio to impermissibly expand the scope of its patents, hinder competition and discourage innovation in technology (id. at *80);

- Judge Luckern found that Gemstar had a large portfolio of interactive program guide ("IPG")-related patents which gave Gemstar a large share of the IPG technology market (*id*. at *85);

- Judge Luckern found that Gemstar's grantbacks and covenants not to sue in Gemstar's licensing agreements created significant barriers to entry in the IPG technology and product markets (*id*. at *87);

- Judge Luckern found that the constraints imposed in Gemstar's IPG licensing agreements demonstrated Gemstar's ability to control the market for IPG technology (*id*.);

- Judge Luckern rejected Gemstar's argument that Gemstar's grantbacks and covenants not to sue have not reduced efforts to participate in IPG innovations (*id*. at *91);

- Judge Luckern adopted testimony that Gemstar's grantbacks and covenants not to sue created a "free rider" problem which deterred innovation (*id*.); and

6

- Judge Luckern found that, as a result, Gemstar had engaged in patent misuse (*id.*).

Thus, Judge Luckern's publicly available opinion states that Gemstar had a large IPG patent portfolio; that Gemstar used covenants not to sue and grantbacks in its licensing agreements; that the covenants not to sue and grantbacks created a "free rider" problem, deterred innovation, and created barriers to entry; and that, consequently, Gemstar had committed patent misuse. Given this publicly available information, TMS plainly has a good faith basis to allege the covenant not to sue that TV Guide and Gemstar proposed to TMS was "similar" to what Judge Luckern found unlawful. TV Guide sought covenants not to sue in both cases; the covenants not to sue were in exchange for licenses under TV Guide's and Gemstar's IPG patents in both cases; and in both cases, the covenants not to sue allegedly deterred innovation.

## ARGUMENT

Dismissal under Rule 12(b)(6) is improper unless the challenged allegations, taken as true, fail to state a claim upon which relief may be granted Fed. R. Civ. P. 12(b)(6); *Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993) ("We therefore accept all factual allegations in the complaint as true and give the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom.").

A court cannot consider matters outside the pleadings in ruling on a 12(b)(6) motion without converting the motion to one for summary judgment and giving all parties a reasonable opportunity to present "all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b). One exception to this rule is that matters which are properly subject to judicial notice may be considered by a court without converting the motion to dismiss into a motion for summary judgment. *Harshbarger v. Philip Morris,*

7

*Inc.*, No. 02-05267 JSW, 2003 WL 23342396, at *3 (N.D. Cal. Apr. 1, 2003). "Thus, in considering a motion to dismiss, a district court may take judicial notice of past court decisions, public records, and other documents without converting the motion into a Rule 56 summary judgment motion." *Id.*; *cf. Impax Lab., Inc. v. Aventis Pharm., Inc.*, 333 F. Supp. 2d 265, 269-70 (D. Del. 1994) (in a patent case tried to the bench, taking judicial notice of facts from prior inequitable conduct cases). This Court may therefore consider Judge Luckern's prior decision finding patent misuse by Gemstar without converting TV Guide's motion to one for summary judgment. However, because the numerous materials TV Guide submitted with its motion are not subject to judicial notice, the Court may not consider them without converting TV Guide's motion to a summary judgment motion and allowing TMS to conduct discovery sufficient to respond to the motion. Fed. R. Civ. P. 12(b).[1]

Rule 12(f) motions are appropriate only to strike an "insufficient defense" or "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The burden is on the moving party to prove what matter should be stricken. *Sierra Club v. Young Life Campaign, Inc.*, 176 F. Supp. 2d 1070, 1086 (D. Colo. 2001). Striking affirmative defenses under Rule 12(f) is disfavored. *Trueposition, Inc. v. Allen Telecom, Inc.*, No. C.A. 01-8223 GMS, 2003 WL 151227, at *1 (D. Del. Jan. 21, 2003); *Greiff v. T.I.C. Enters., L.L.C.*, No. Civ. 03-882-SLR, 2004 WL 115553, at *2 (D. Del. Jan 9,

---

[1] For similar reasons, TMS will not comment on TV Guide's materials, TV Guide's characterization of the parties' discussions, or TV Guide's statements concerning TMS' position on the covenant not to assert its patents against TV Guide, Gemstar or its customers. (See D.I. 12, TV Guide Opening Brief at 5-8) Suffice it to say, TMS has a conflicting version of the negotiations.

8

2004). TV Guide concedes its 12(f) motion stands or falls with its 12(b)(6) motion. (D.I. 12, TV Guide Opening Brief at 1)

Both of TV Guide's motions are without merit and should be denied.

### I. TV Guide's Motions Hinge on a Narrow, Flawed Reading of TMS' Misuse Allegations.

TV Guide's sole basis for bringing its motions is the argument that "TMS cannot aver that TV Guide Online ever insisted that the covenant not-to-assert provision *must* be included in a license." (D.I. 12, TV Guide Opening Brief at 1 (emphasis in original); *see also id.* at 12) But that is much too narrow a reading of TMS' allegations. TMS does not limit its patent misuse allegations to the licensing proposals it received from TV Guide and Gemstar. Rather, TMS' misuse allegations are based on TV Guide's and Gemstar's overall licensing practices, and their dealings with TMS are pled as a "further" reason for finding misuse. (*See, e.g.,* D.I. 6 at First Affirmative Defense and Counterclaim ¶¶ 9-11)

Indeed, even if TV Guide and Gemstar had never proposed a covenant not to assert to TMS, TMS could still maintain a patent misuse count based on TV Guide and/or Gemstar's inclusion of the covenant in third party agreements or proposals involving the '078 patent. "[N]o allegation of specific injury . . . is necessary in a claim of patent misuse." *Motorola v. Kimball Int'l, Inc.*, 601 F. Supp. 62, 65 (N.D. Ill. 1984) (denying motion to strike patent misuse affirmative defense and noting that "the cases indicate patent misuse may be established much more easily than an antitrust violation"); *see also Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 494 (1942) ("It is the adverse effect upon the public interest of a successful infringement suit, in conjunction with the patentee's course of conduct, which disqualifies him to maintain the suit, *regardless of*

9

*whether the particular defendant has suffered from the misuse of the patent*.") (emphasis added).

TV Guide does not cite a single authority on patent misuse caused by a covenant not to sue or similar provisions, let alone a patent misuse case on a motion to dismiss. All four of TV Guide's cited patent misuse cases are inapposite. Three of TV Guide's cases relate to patent misuse caused by the patentee requiring royalties to be paid on products that do not practice the licensed patent. *Applera Corp. v. MJ Research Inc.*, 349 F. Supp. 2d 321 (D. Conn. 2004); *Bayer AG v. Housey Pharm., Inc.*, 228 F. Supp. 2d 467 (D. Del. 2002); and *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969). TV Guide also cites to *Virginia Panel Corp. v. Mac Panel Co.*, 133 F.3d 860 (Fed. Cir. 1997), but that case involved patent misuse allegations relating to sending out improper infringement notices, threatening to void warranties and a tying arrangement, not whether a covenant not to assert constitutes patent misuse.

Patent misuse "requires that the alleged infringer show that the patentee has impermissibly broadened the 'physical or temporal' scope of the patent grant with anticompetitive effect." *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed. Cir. 1986); *Virginia Panel Corp. v. Mac Panel Co.*, 133 F.3d 860, 868-69 (Fed. Cir. 1997). Patent misuse can take many forms, one of which is including an overly broad grantback or covenant not to sue in a licensing agreement. *See, e.g., Duplan Corp. v. Deering Milliken, Inc.*, 444 F. Supp. 648, 699-700 (D.S.C. 1977) (patentee misused its patents where grantback for "all improvements in the field of patents" extended scope of patentee's limited monopoly well beyond confines of basic patent), *aff'd in pertinent part, rev'd in part*, 594 F.2d 979 (4th Cir. 1973). TMS alleged in detail how TV Guide's

10

covenant not to assert and similar provisions impermissibly broaden the scope of the patent with anticompetitive effect. (*See, e.g.,* D.I. 6 at Counterclaim ¶ 11)

Likewise, in the antitrust context, the United States Department of Justice ("DOJ") has recognized that overly broad grantbacks or covenants not to sue can be anticompetitive and, thus, can violate federal antitrust laws. DEPT. OF JUSTICE AND FED. TRADE COMM., ANTITRUST GUIDELINES FOR THE LICENSING OF INTELLECTUAL PROPERTY § 5.6 (Apr. 6, 1995). The DOJ examines grantbacks or covenants not to sue to determine "if they substantially reduce the licensee's incentives to engage in research and development and thereby limit rivalry in innovation markets." *Id.* Relevant to this analysis is (i) whether the scope of the grantback or covenant not to sue extends to intellectual property other than improvements on the patent(s) that are the subject of the license; (ii) the identity and number of beneficiaries of the grantback or covenant not to sue; and (iii) whether the grantback or covenant not to sue is royalty-bearing. TV Guide's covenant not to assert described in TMS' patent misuse allegations fails each factor: (i) it was not limited to improvements on the '078 patent but rather covered "TMS' interactive program guide patents"; (ii) it was not limited to TV Guide but rather benefited both "Gemstar or its customers"; and (iii) it provided for no royalty. (*See, e.g.,* D.I. 6 at Counterclaim ¶ 10; *see also id.* at ¶ 11 re "free rider" problem and anticompetitive effects.) TMS certainly does not need to prove an antitrust violation to prevail on its claims of patent misuse. *See Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 494 (1942). Nevertheless, the principles identified by the DOJ are helpful in analyzing grantbacks and covenants not to sue. Those principles were used by Judge

Luckern when he found Gemstar guilty of patent misuse. *See* 2002 WL 31556392, at *91.

Simply put, TMS' patent misuse counterclaim and affirmative defense plainly state a claim for which relief may be granted. And they undoubtedly have merit. TV Guide's motion should be denied.

**II.     TV Guide Is Also Wrong In Claiming TMS' Misuse Allegations Should Be Dismissed Because TV Guide Recanted Its Covenant Not To Assert Four Days Before Filing Its Motion to Dismiss.**

TV Guide's final pitch is that there can be no patent misuse going forward because four days before it filed its motion to dismiss, its in-house licensing counsel sent TMS a letter stating that "TV Guide Online has been and remains open to negotiating a license that does not include a covenant not-to-assert provision." (D.I. 12, TV Guide Opening Brief at 12) Leaving aside the substance of the letter and whether it is appropriate to consider the letter in the first place, TV Guide's reliance on the letter is misplaced for at least two other reasons.

First, TMS' patent misuse allegations are broader than the licensing proposals TV Guide and Gemstar submitted to TMS. As explained above, irrespective of whether TV Guide or Gemstar required covenants not to assert from TMS, TMS can maintain an action for patent misuse based on the inclusion of such covenants or grantback provisions in other licenses. Second, TV Guide overreaches when it implies a patent misuse defense may only be premised on terms that actually make their way into an executed license agreement. (*See* D.I. 12, TV Guide Opening Brief at 12) *See Motorola*, 601 F. Supp. at 65 (on motion to strike patent misuse affirmative defense, rejecting argument that "a defense of misuse cannot be based solely on proposed license terms"). Moreover, as shown above, TV Guide has no authority for its novel position that "conditioning" is a

12

required element of TMS' patent misuse claim based on covenants not to assert, covenants not to sue and grantbacks.  TV Guide's last-ditch effort fails.

## CONCLUSION

For all of the foregoing reasons, TV Guide's motions should be denied.[2]

Dated:  March 7, 2006

*/s/ Richard K. Herrmann*
Richard K. Herrmann (ID No. 405)
Mary B. Matterer (ID No. 2969)
MORRIS JAMES HITCHENS &
    WILLIAMS
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
rherrmann@morrisjames.com

*Attorneys for Defendant
Tribune Media Services, Inc.*

**Of Counsel:**
Mark A. Pals, P.C.
Linda S. DeBruin
Michael A. Parks
Laura A. Hepburn
Meredith Zinanni
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000

---

[2] As noted above, in the event the Court decides to consider the material outside the pleadings presented by TV Guide and treats the motion as one for summary judgment, pursuant to Rule 12(b) TMS requests the opportunity to take discovery and present all material made pertinent to a Rule 56 motion for summary judgment.  In addition, if the Court believes it would be helpful for TMS to add to its Answer, Affirmative Defenses and Counterclaims any of the additional points discussed above, TMS would be happy to amend its pleading to do so, though TMS firmly believes its pleading is sufficient as it stands now.

13

# CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of March, 2006, I electronically filed the foregoing document, **DEFENDANT'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS AND MOTION TO STRIKE**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Frederick L. Cottrell, III
Jeffrey L. Moyer
Steven J. Fineman
Richards, Layton & Finger P.A.
One Rodney Square, 920 North King Street
Wilmington, Delaware 19801

Additionally, I hereby certify that on the 7th day of March, 2006, the foregoing document was served via email and overnight mail on the following non-registered participants:

Robert C. Morgan
Christopher J. Harnett
Stuart W. Yothers
Fish & Neave IP Group
Ropes & Gray LLP
1251 Avenue of the Americas
New York, New York 10020

                                              */s/ Richard K. Herrmann*
                                              Richard K. Herrmann (I.D. No. 405)
                                              Mary B. Matterer (I.D. No. 2696)
                                              MORRIS JAMES HITCHENS & WILLIAMS
                                              222 Delaware Avenue, 10th Floor
                                              Wilmington, Delaware 19801
                                              302.888.6800
                                              rherrmann@morrisjames.com

                                              *Attorneys for Defendant*
                                              *Tribune Media Services, Inc.*