# TAB 2







Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
James GREIFF and T.I.C. Enterprises, Inc.,
Plaintiffs,
v.
T.I.C. ENTERPRISES, L.L.C., NUI Capital Corp.,
NUI Sales Management, Inc., and
NUI Corporation, Defendants.
**No. Civ. 03-882-SLR.**

Jan. 9, 2004.

Elizabeth M. McGeever, Prickett, Jones & Elliott, Wilmington, DE, for Plaintiffs.

Jack Charles Schecter, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Defendants.

MEMORANDUM ORDER

ROBINSON, J.

***1** At Wilmington, this 9th day of January, 2004, having reviewed defendants' motion to strike plaintiffs' affirmative defenses and the papers submitted by the parties in connection therewith;

IT IS ORDERED that defendants' motion to strike plaintiffs' sixteen affirmative defenses (D.I.69) is granted in part as to plaintiffs' seventh, eighth, ninth, tenth, twelfth, and sixteenth affirmative defenses and denied in part as to plaintiffs' first, second, third, fourth, fifth, sixth, eleventh, thirteenth, fourteenth, and fifteenth affirmative defenses.

1. On May 8, 2001, defendants agreed to purchase plaintiffs' fifty-one percent remaining interest [FN1] in T.I.C. Enterprises, LLC for a total sum of eight million dollars to be financed in two parts: (1) five million dollars to be paid in cash upon closing the sale transaction in May 2001; and (2) three million dollars in promissory notes to be paid on a maturity date of January 2, 2001. (D.I. 6 at ¶ 7; *see id.*, exh. A) On April 4, 2002, plaintiffs filed suit against defendants in state court for failure to pay the promissory notes as required under the purchase agreement. (D.I. 36 at 2) Defendants removed the case to the United States District Court for the Northern District of Georgia on May 15, 2002. Plaintiffs filed their first amended complaint on June 17, 2002 alleging breach of contract, fraud, and tortious interference with contractual relations. (*See* D.I. 6) Defendants answered this first amended complaint on July 15, 2002 denying the allegations and contending that plaintiffs failed to state a claim upon which relief may be granted for select counts. (*See* D.I. 11) Defendants later amended their answer on November 14, 2002 to raise affirmative defenses. (*See* D.I. 26) On March 5, 2003, defendants also raised counterclaims against plaintiffs alleging breach of contract, unjust enrichment, and fraud. (*See* D.I. 59) Plaintiffs filed a second amended complaint on May 29, 2003 to refine their fraud claims against defendants to include a charge that defendants defrauded their creditors. (D.I. 60 at ¶ 34) Plaintiffs answered defendants' counterclaims on June 2, 2003 denying the allegations and, alternatively, pleading affirmative defenses. (*See* D.I. 63) Defendants moved to tranfer the case to the District of Delaware on July 2, 2003 (D.I. 66; 02-CV-1323), and the Northern District of Georgia granted this motion on September 10, 2003. (D.I.86)

FN1. Plaintiffs previously sold their forty-nine percent interest in T.I.C. Enterprises, LLC to defendants.

2. Plaintiff James Greiff is a resident of the State of Georgia. (D.I. 6 at ¶ 1) Plaintiff T.I.C. Enterprises, Inc. is a Georgia corporation with its principal place of business in Georgia. (*Id.* at ¶ 2) Defendant T.I.C. Enterprises, L.L.C. is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Georgia. (*Id.* at ¶ 3) Defendant NUI Capital Corporation is incorporated under the laws of the State of Florida with its principal place of business in Florida. (*Id.* at ¶ 4) Defendant NUI Sales Management is incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. (*Id.* at ¶ 5) Defendant NUI Corporation is incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey. (*Id.* at ¶ 6) The court has jurisdiction over the instant suit pursuant to 28 U.S.C. § 1332.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

***2** 3. Federal Rule of Civil Procedure 8 requires a party to set forth affirmative defenses in a responsive pleading with a "short and plain statement." Fed.R.Civ.P. 8(a) (2003). Rule 8(c) specifically enumerates a non-exhaustive list of nineteen affirmative defenses. [FN2] Federal Rule of Civil Procedure 12(f), in turn, states:

> FN2. The affirmative defenses recognized in the rule include: accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. *See* Fed.R.Civ.P. 9(c) (2003).

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed.R.Civ.P. 12(f) (2003). Motions to strike affirmative defenses, however, are disfavored. *Proctor & Gamble Co. v. Nabisco Brands, Inc.*, 697 F.Supp. 1360, 1362 (D.Del.1988). When ruling on such a motion, "the court must construe all facts in favor of the nonmoving party ... and deny the motion if the defense is sufficient under the law." *Id.* Furthermore, courts prefer not to grant a motion to strike "unless it appears to a certainty that ... [the movant] would succeed despite any state of the facts which could be proved in support of the defense." *Salcer v. Envicon Equities, Corp.*, 744 F.2d 935, 939 (2d Cir.1984).

4. Plaintiffs' first affirmative defense asserts that the defendants' complaint fails to state a claim upon which relief can be granted. The court notes that the Federal Rules of Civil Procedure specifically permit this averment to be raised as either an affirmative defense or in a motion to dismiss. Rule 12(b) states, in pertinent part, that: "A defense of failure to state a claim upon which relief can be granted ... may be made in any pleading permitted or ordered under Rule 7(a)." Fed.R.Civ.P. 12(b) (2003). Rule 12(h) also states, in pertinent part, that: "Every defense, in law or fact, to a claim for relief in any pleading ... may at the option of the pleader be made by motion [including]: ... failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(h) (2003). Additionally, it is well settled that the concept of failure to state a claim may be included in an answer as an affirmative defense. *See S.E.C. v. Toomey*, 866 F.Supp. 719, 723 (S.D.N.Y.1992). Accordingly, the court denies defendants' motion to strike plaintiffs' first affirmative defense.

5. Plaintiffs' second through sixth affirmative defenses plead, respectively, an arbitration clause, estoppel, failure of consideration, release, and waiver. These averments are proper affirmative defenses under Rule 8(c) and likewise comply with the "short and plain statement" requirement of Rule 8(a). Additionally, the court finds that plaintiffs' pleadings adequately place defendants on sufficient notice of the nature of the defenses to be litigated against them. Defendants may ascertain the context of these averments through the discovery process, possibly via contention interrogatories. Furthermore, the court concludes that defendants will not be unnecessarily prejudiced if these affirmative defenses remain in the pleadings. The court, consequently, denies defendants' motion to strike the second through sixth affirmative defenses.

***3** 6. Plaintiffs' seventh affirmative defense alleges that any excessive punitive damages sought by defendants are barred by the Due Process Clause of the Fourteenth Amendment and the Due Process Clause of the Georgia Constitution. Plaintiffs' eighth and ninth affirmative defenses plead, respectively, that defendants' counterclaims must fail because defendants have not incurred any damages and that defendants' damages are contractually limited by the purchase agreement. The court finds that these averments do not constitute affirmative defenses because they will not defeat defendants' counterclaims if proven. In other words, these averments entirely overlook liability and focus solely on potential relief. In contrast, "[a]ffirmative defenses, if accepted by the court, will defeat an otherwise legitimate claim for relief." *FDIC v. Haines*, 3 F.Supp.2d 155, 166 (D.Conn.1997) (quoting 2 James Wm. Moore et al., Moore's Federal Practice § 8.07[1] (3d ed.1997)). Moreover, it is clear that the concept of damages serves a purpose far different from an affirmative defense--damages are intended to redress injuries incurred by a plaintiff after liability has been established, not as a means to shield liability in the first instance. The court, therefore, grants defendants' motion to strike plaintiffs' seventh, eighth, and ninth affirmative

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defenses.

7. Plaintiffs' tenth affirmative defense asserts that any damages incurred by defendants are due to their own actions. The court construes this averment as an attempt to plead contributory negligence. Defendants, however, do not plead negligence as one of their counterclaims. The court, consequently, grants defendants' motion to strike this defense.

8. Plaintiffs' eleventh affirmative defense pleads that defendants' breach of the purchase agreement and unjust enrichment counterclaims must fail because defendants breached the contract at issue. [FN3] The court construes this averment to argue that plaintiffs could not have breached the purchase agreement because defendants breached it first, thereby rendering the purchase agreement invalid. In other words, plaintiffs appear to argue that they could not have breached the purchase agreement because it was invalid. Plaintiffs' thirteen, fourteenth, and fifteenth affirmative defenses plead, respectively, that defendants' fraud in the inducement counterclaim [FN4] must fail because (1) plaintiffs did not knowingly make any false representations or material ommissions; (2) plaintiffs did not knowingly make any false representations or material ommissions with intent to induce defendants to act or to refrain from acting; and (3) defendants did not justifiably rely on any alleged misrepresentation or material omission made by plaintiffs. The court interprets these averments as denying particular elements of defendants' breach of contract and fraud in the inducement counterclaims. The court finds that these specific denials give defendants notice of the particular issues to be litigated, despite plaintiffs' choice of nomenclature. Such is one of the main purposes for the affirmative pleadings requirement of Rule 8. Additionally, "as long as the pleading clearly indicates the allegations in the complaint that are intended to be placed in issue, the improper designation should not prejudice the pleader." 5 Wright & Miller, Federal Practice and Procedure: Civil 2d § 1269 (1990). Accordingly, the court denies defendants' motion to strike plaintiffs' eleventh, thirteen, fourteenth, and fifteenth affirmative defenses.

FN3. An action for breach of contract requires proof of: (1) a valid contract; (2) breach of a duty imposed by the contract; and (3) damages resulting from the breach.

FN4. An action for a fraud in the inducement under Delaware law, requires proof of: (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction [was] taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance. *See* *Lord v. Souder*, 748 A.2d 393, 402 (Del.2000).

***4** 9. Plaintiffs' twelfth affirmative defense alleges that defendants' fraud in the inducement counterclaim must fail because defendants breached the contract at issue. Plaintiffs have agreed to withdraw this affirmative defense. (*See* D.I. 73 at 15) "[I]f a defense has been withdrawn, a motion to strike it from the pleadings is proper." 5A Wright & Miller, Federal Practice and Procedure: Civil 2d 1381 (1990). Therefore, the court grants defendants' motion to strike plaintiffs' twelfth affirmative defense.

10. Plaintiffs' sixteenth affirmative defense alleges that "plaintiffs respond to the individually-numbered paragraphs in defendants' counterclaim as follows." (D.I. 63 at 4) The court construes this averment as attempt to offer plaintiffs' entire answer as an affirmative defense. The court finds this attempt illogical and grants defendants' motion to strike plaintiffs' sixteenth affirmative defense.

Not Reported in F.Supp.2d, 2004 WL 115553 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:03CV00882 (Docket) (Sep. 16, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 3







Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
John and Carol HARSHBARGER, Plaintiffs,
v.
PHILIP MORRIS, INC., a Virginia Corporation, R.J. Reynolds Tobacco Company, a New Jersey corporation, Chevron Texaco, a California corporation, Safeway Stores, Inc, a Delaware corporation and Does 1 to 1,000, inclusive, Defendants.
**No. 02-05267 JSW.**

April 1, 2003.

**Background:** Smoker diagnosed with lung cancer brought action against retail stores that sold him cigarettes, alleging that retail stores engaged in fraudulent business practices and unfair competition by selling cigarettes to minors, including smoker, and false and misleading advertising by failing to disclose the dangers of smoking, in violation of California law. Retail stores moved to dismiss.

**Holdings:** The District Court, White, J., held that:
(1) California's product liability immunity statute, pertaining to products known to be inherently unsafe, barred action;
(2) action accrued, for limitations purposes, on last date that stores sold cigarettes to smoker, or on date the last alleged false advertising occurred; and
(3) Master Settlement Agreement (MSA) barred action.
Motion granted.

West Headnotes

**[1] Consumer Protection 11**
92Hk11 Most Cited Cases

**[1] Products Liability 59**
313Ak59 Most Cited Cases
California's immunity statute applicable to product liability actions involving products known to be inherently unsafe precluded action brought by smoker diagnosed with lung cancer against retail stores that sold him cigarettes, alleging that stores engaged in fraudulent business practices, and unfair competition by selling cigarettes to minors, and false and misleading advertising by failing to disclose the dangers of cigarettes, in violation of California business law; claims were for injury caused by a product, although couched in non-tort language. West's Ann.Cal.Bus. & Prof.Code § § 17200, 17500; West's Ann.Cal.Civ.Code § 1714.45(b).

**[2] Limitation of Actions 58(1)**
241k58(1) Most Cited Cases

**[2] Limitation of Actions 95(16)**
241k95(16) Most Cited Cases
Action brought by smoker diagnosed with lung cancer against retail stores that sold him cigarettes, alleging that stores engaged in fraudulent business practices and unfair competition by selling cigarettes to minors, and false and misleading advertising by failing to disclose the dangers of cigarettes, in violation of California business law, accrued, for limitations purposes, on last date that retail stores sold cigarettes to smoker, or on date the last alleged false advertising occurred, rather than on date smoker was diagnosed with lung cancer, absent showing that smoker was unaware of dangers of addiction and smoking until smoker was diagnosed with lung cancer. West's Ann.Cal.Bus. & Prof.Code § § 17200, 17500.

**[3] States 104**
360k104 Most Cited Cases
Master Settlement Agreement (MSA), entered into by California attorney general and attorneys general of other states, granting sweeping releases to cigarette manufacturers and retailers, barred action brought by smoker diagnosed with lung cancer against retail stores, alleging that stores engaged in fraudulent business practices and unfair competition by selling cigarettes to minors, and false and misleading advertising by failing to disclose the dangers of cigarettes, in violation of California business law; claims were representative in nature, as they referenced injuries to the general public, and sought relief in form of disgorgement of all profits from all cigarette sales in the state, which was a public remedy.

Philip C. Bourdette, Bourdette & Partners, Visalia, CA, for Plaintiffs.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H. Joseph Escher, III, Ingrid E. Von Kaschnitz, Richard Shively, Thomas G. Scarvie, Howard Rice Nemerovski Canady Falk Rabin, San Francisco, CA, John J. Baroni, Shook, Hardy & Bacon LLP, Kansas City, MO, Robert Wayne Cowan, Steven R. Selsberg, Vivica N. Simmons, Shook, Hardy & Bacon LLP, Houston, TX, Stephanie A. Schrandt, Alicia J. Donahue, Dana N. Turkel, Shannon L. Spangler, Shook, Hardy & Bacon LLP, San Francisco, CA, James Royce Johnson, Robin Ann Schmahl, Esq., Jones Day, Stephanie Joan Malbrough, Atlanta, GA, for Defendants.

ORDER GRANTING DEFENDANTS CHEVRON U.S.A. AND SAFEWAY, INC.'S MOTION TO DISMISS

WHITE, J.

INTRODUCTION

***1** Now before the Court is defendants Chevron U.S.A., Inc. and Safeway, Inc.'s (the "Retail Defendants") Motion to Dismiss the First Amended Complaint of Plaintiffs John and Carol Harshbarger (the "Harshbargers"). Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby GRANTS the Retail Defendants' Motion to Dismiss the Harshbargers' First Amended Complaint, as against them.

STATEMENT OF FACTS

Plaintiff John Harshbarger began smoking cigarettes in approximately 1962 at the age of twelve. He purchased cigarettes in Sacramento and San Francisco from the Retail Defendants while he was a minor from 1962 through June 30, 1968. John Harshbarger alleges that he smoked as a result of the marketing efforts of tobacco companies. He smoked heavily from 1962 onward, tried to stop numerous times, but was only able to quit once in 1972 for nine months. On June 19, 2001, Mr. Harshbarger was diagnosed with lung cancer, caused by his exposure to tobacco.

On June 12, 2002, the Harshbargers filed their First Amended Complaint in San Francisco Superior Court, naming as defendants the Retail Defendants in addition to various cigarette manufacturers, and alleging a total of twelve causes of action. The ninth through twelfth causes of action state claims against the Retail Defendants. In the ninth cause of action, Carol Harshbarger alleges loss of consortium, though in the Harshbargers' opposition brief they agree to dismiss this claim as against the Retail Defendants. [FN1] (Opp. Br. at 10.) The tenth through twelfth causes of action each allege that the Retail Defendants violated various provisions of the California Business and Professions ("B & P") Code.

FN1. Because the Harshbargers have agreed to dismiss the ninth cause of action as against the Retail Defendants, this court will order that the cause of action be dismissed as against the Retail Defendants only.

The tenth cause of action (violation of California B & P Code § 17200 *et seq.*) alleges that Retail Defendants sold cigarettes to minors, including John Harshbarger, at Sacramento and San Francisco retail locations, as a result of which they gained an unfair advantage over their competition and enabled the defendant cigarette manufacturers to engage in fraudulent business practices. As a result of having sold cigarettes to minors, the Retail Defendants have received money rightfully belonging to the Harshbargers and other similarly situated individuals, and the Harshbargers have suffered economic losses including the cost of cigarettes, hospitalization, and other interim medical expenses resulting from Mr. Harshbarger's use of tobacco. The Harshbargers seek actual damages, attorneys' fees, and request that the court order the Retail Defendants to disgorge all money received from their cigarette sales in California.

The eleventh cause of action (Negligent, False, and Misleading Advertising under California B & P Code § § 17500-17572) alleges that the Retail Defendants violated their duty to warn and to disclose the dangers of smoking. The Harshbargers allege that the Retail Defendants disseminated untrue and misleading statements aimed at Mr. Harshbarger and similarly situated individuals, with the intent of selling cigarettes and by aiding, assisting, and enabling other defendants to conceal the true facts about smoking from Mr. Harshbarger. In reliance on these misrepresentations, Mr. Harshbarger purchased cigarettes from Retail Defendants.

***2** The twelfth cause of action (Intentional False and Misleading Advertising under B & P Code § 17500 *et seq.*) alleges that the Retail Defendants marketed and advertised light and ultra light cigarettes despite their knowledge that this advertising was deceptive, in that these cigarettes were no safer than regular cigarettes. As a result of this advertising and marketing, Mr. Harshbarger was induced to buy cigarettes from the Retail Defendants.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The Retail Defendants now move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the ninth through twelfth causes of action and the entire First Amended Compliant as against them, because Plaintiffs have failed to state a claim against the Retail Defendants upon which relief can be granted. Each of these causes of action, the Retail Defendants argue, are barred by the immunity granted the Retail Defendants by California Civil Code Section 1714.45. The Retail Defendants also argue that the applicable statutes of limitations for these causes of action have expired. Finally, the Retail Defendants argue that because the Harshbargers' claims were asserted in a representative capacity on behalf of the general public, the claims have been released by the 1998 Master Settlement Agreement ("MSA") and are thus barred.

ANALYSIS

1. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) is Granted.

a. Legal Standard.

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). Motions to dismiss are viewed with disfavor and are rarely granted. *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir.1986). A complaint will not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "Dismissal may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988). For the purposes of a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir.1986).

Rule 12(b) states that if, on a motion to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented and considered by the court, the motion shall be treated as a Rule 56 motion for summary judgment. Fed.R.Civ.P. 12(b). One exception to this rule is that matters which are properly subject to judicial notice may be considered by a court without converting the motion to dismiss into a motion for summary judgment. *Mack v. South Bay Beer Distrib., Inc.*, 798 F.2d 1279, 1282 (9th Cir.1986). Thus, in considering a motion to dismiss, a district court may take judicial notice of past court decisions, public records, and other documents without converting the motion into a Rule 56 summary judgment motion. *See Miles, Inc. v. Scripps Clinic and Research Foundation*, 951 F.2d 361, 361 (9th Cir.1991).

b. The Harshbargers' Claims Under the California Business and Professions Code § § 17200 and 17500 Against Retail Defendants Are Barred by Immunity.

***3** The Retail Defendants request that this Court dismiss the tenth through twelfth causes of action because those claims are barred by the immunity granted to the Retail Defendants under California Civil Code Section 1714.45 (the "Immunity Statute"). Plaintiffs contend that the Immunity Statute provides immunity only in product liability actions. Plaintiffs further contend that because this is not a product liability action, the statute is inapplicable and presents no bar to their claims against the Retail Defendants. This Court finds that the Harshbargers' complaint, as against the Retail Defendants, is a "products liability action" and therefore these claims are barred by the Immunity Statute.

[1] Section 1714.45 bars the imposition of civil liability in a "product liability action" involving any product (1) commonly known by consumers to be inherently unsafe, and (2) intended for personal consumption. Cal. Civ.Code § 1714.45(a)(1)-(2). A product liability action is defined broadly as "any action for injury or death caused by a product." Cal. Civ.Code § 1714.45(c). The statute does not differentiate between physical and economic injury for the purpose of defining a product liability action. The statute provides that it immunizes "the sale or distribution of tobacco products by ... retailers or distributors" from any "product liability actions." Cal. Civ.Code § 1714.45(b). The parties to this action dispute whether or not the Harshbargers' claims constitute a "product liability action" such that the claims are barred by the Immunity Statute.

Numerous other California courts involved in cigarette litigation have had the occasion to determine whether certain claims satisfy the Immunity Statute's definition of a "product liability action," almost unanimously construing the term "product liability action" very broadly to include claims for fraud and misrepresentation. The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

California Supreme Court recently held that "the Immunity Statute bars plaintiff's claims, however labeled, where they allege no more than personal injury caused by dangers or risks inherent in the consumption of tobacco products such as cigarettes." *Naegele v. R.J. Reynolds Tobacco Co.*, 28 Cal.4th 856, 867, 123 Cal.Rptr.2d 61, 50 P.3d 769 (2002). In *Naegele,* the Supreme Court held that the Immunity Statute barred fraud claims brought against various tobacco defendants for misrepresenting the addictive nature of smoking and deceiving the public about the dangers of smoking. *Id.* at 867, 123 Cal.Rptr.2d 61, 50 P.3d 769. The Supreme Court found these fraud claims to be encompassed and barred by section 1714.45, "whether based on allegations or theories of fraud, negligence, or manufacture of an unsafe product, an action in which a plaintiff seeks damages for personal injury or death caused by a tobacco product is a product liability action within the meaning of the suit." ' *Id.* at 856, 123 Cal.Rptr.2d 61, 50 P.3d 769; *see also Cannata v. Philip Morris, et al.,* No. CV 02-8-26 (C.D.Cal.2002) (Defendants' Request for Judicial Notice ("RIN") Exh. N) (finding that plaintiff's cause of action against cigarette retailers for tobacco-related injuries, though it was cast as a violation of the California B & P Code Sections 17500-17572 and 17200 *et. seq.,* was barred by the Immunity Statute because in actuality it constituted a product liability action); *Newton v. R.J. Reynolds Tobacco Co., et al,* No.C-02-1415- VRW (N.D.Cal.2002) (RJN Exh. O) (finding that plaintiff's claims for tobacco-related injuries against cigarette retailers were barred by the Immunity Statute, though they were couched as premises liability claims). [FN2]

FN2. The Court hereby GRANTS, in its entirety, Defendants' Corrected Request for Judicial Notice in Support of Motion to Dismiss, filed on February 26, 2003.

***4** The fact that the Harshbargers' claim is not labeled as a product liability action does not mean that it fails to meet the statutory definition of a product liability action. Plaintiffs may not plead around the Immunity Statute by couching their causes of action for tobacco-related injuries as different claims. *See, e.g., Naegele,* 28 Cal.4th at 863-65, 123 Cal.Rptr.2d 61, 50 P.3d 769; *Cannata,* RJN Exh. N at 8 (citing *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 183, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999)). The Harshbargers allege that the Retail Defendants engaged in unfair competition by selling cigarettes to minors and false advertising by failing to disclose, or disguising, the dangers of cigarettes. These activities caused Mr. Harshbarger initially to purchase and to continue to purchase cigarettes and, as a result, he suffered various injuries. Although these claims are couched as non-tort claims, Retail Defendants correctly assert that *but for the dangers of cigarettes,* "the entire predicate for Plaintiffs' B & P Code claims would completely evaporate." (Br. at 6.) For this reason, Plaintiffs' claims are, in fact, product liability actions.

The Harshbargers cannot support their position that their claims against the Retail Defendants are not product liability actions, as defined by the Immunity Statute, and therefore are not barred. The Harshbargers seek to limit the scope of a product liability action as it is used in this statute by arguing that the statute extends only to "claims for injury or death caused by a product, not to § 17200 and § 17500 claims." (Opp. at 10.) The Harshbargers contend that their claims should not be considered product liability actions because (1) they do not allege physical injuries and (2) the alleged injuries resulted not from the product itself but from the manner in which the Retail Defendants sold and represented the product. [FN3] (Opp. Br. at 10.) Because the statute does not differentiate between physical and economic injuries, however, the nature of the injuries alleged by the Harshbargers is not a relevant factor in determining whether or not their claims constitute a product liability action within the meaning of the statute.

FN3. The Northern District Court in *City and County of San Francisco v. Philip Morris,* Inc., 957 F.Supp. 1130, 1140 (N.D.Cal.1997) agreed, holding that fraud claims were distinguishable from claims based on defects in a product because plaintiffs can plead that their alleged injuries resulted from the fraudulent activity, rather than the product defect. The case was, however, decided prior to the controlling California Supreme Court Case, *Nagele v. R.J. Reynolds,* 28 Cal.4th 856, 123 Cal.Rptr.2d 61, 50 P.3d 769 (2002), which held that fraud claims *do* constitute product liability actions for the purposes of the Immunity Statute, implicitly invalidating the prior holding.

The Harshbargers also claim that their injuries did not result from the product itself, therefore these are not product liability actions. This argument is flawed, however, because it fails to acknowledge that the §

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

17200 and § 17500 claims are entirely dependent upon alleged injuries resulting from exposure to tobacco--but for the dangers of tobacco these claims would be baseless. *See Daniels, et al. v. Philip Morris Inc.*, (JCCP 4042 *In re Tobacco Cases II),* No. SDSC719446, 2002 WL 31628641 (RJN Exh. Q) (holding that, based on similar reasoning, claims for fraud, unfair competition, and misrepresentation were encompassed by the Immunity Statute because they were, at their core, product liability actions.) Furthermore, although the Harshbargers assert that they have not alleged injuries resulting from cigarettes themselves, throughout their complaint the Harshbargers do in fact allege and allude to injuries *resulting from* "ingestion of a harmful and defective product," namely, tobacco. (*See, e.g.*, First Amended Complaint ("FAC") at ¶ ¶ 18, 156, and 179.) It is also worth noting, as the *Daniels* court points out, that to read product liability actions to include only claims for physical injury or death would mean that plaintiffs who allege physical injury would be unable to recover while those alleging only that they were induced to smoke would be able to recover, clearly an incongruous result. *See Daniels,* 2002 WL 31628641 at *18.

***5** Though artfully labeled as unfair competition and false advertising claims, the Harshbargers' claims are indeed product liability actions, as that term is used in the Immunity Statute. *See Naegele,* 28 Cal.4th at 867, 123 Cal.Rptr.2d 61, 50 P.3d 769 ("The Immunity Statute bars Plaintiff's claims, however, labeled, where they allege no more than personal injury caused by dangers or risks inherent in the consumption of tobacco products such as cigarettes.") Despite the fact that the injuries for which they seek recovery are not physical and the claims are not tort actions, at the crux of these allegations are "claims for injury or death caused by a product," the definition of a product liability action as it appears in the Immunity Statute.

The Court therefore finds that the Harshbargers' tenth through twelfth causes of action against Chevron U.S.A. and Safeway, Inc. are barred by the immunity granted to the Retail Defendants by California Civil Code Section 1714.45.

c. The Harshbargers' Business & Professions Claims Against Retail Defendants Are Barred by the Applicable Statute of Limitations.

The Retail Defendants further request that this Court dismiss the Harshbargers' complaint, as against them, because the tenth through twelfth causes of action are barred by the applicable statute of limitations. Plaintiffs argue that the statute of limitations did not begin to run until June 19, 2001, when Mr. Harshbarger was diagnosed with lung cancer. Because Plaintiffs filed their complaint on June 12, 2002, less than one year later, they contend that the statute of limitations does not bar the claims.

The Harshbargers' claims under B & P Code § 17200 *et seq.*, for unfair competition, are governed by a four-year statute of limitations: "any cause of action pursuant to this chapter shall be commenced within four years after the cause of action has accrued." Cal. Bus. & Prof.Code § 17208. There is some dispute as to whether this four-year statute of limitations also applies to Section 17500 claims or if those claims are instead governed by California Code of Civil Procedure Section 338(a), which sets forth a default three-year statute of limitations for "liabilty created by a statute," when the statute does not include a statute of limitations. *See Newton,* RJN Exh. O at 8 (finding that § 17500 claims are governed by the § 17208 four-year statute of limitations), *contra Cannata v. Philip Morris,* RJN Exh. N at 10 (applying the three-year statute of limitations of California Code of Civil Procedure § 338(a) to § 17500 claims); *County of Fresno v. Lehman,* 229 Cal.App.3d 340, 346, 280 Cal.Rptr. 310 (1991) (applying California Code of Civil Procedure § 338(a)'s three-year statute of limitation to § 17500 claims). This Court need not determine which statute of limitations period is applicable to the § 17500 claims because whether it is three or four years, the Harshbargers' action accrued long before that. Therefore the statute of limitations has expired and the claims are time barred.

***6** The statute of limitations for a given cause of action begins to run when the cause of action accrues. Generally, an action accrues either when the wrongful act is done, or when the wrongful result occurs, whichever is later. *Norgart v. Upjohn Co.,* 21 Cal.4th 383, 397, 87 Cal.Rptr.2d 453, 981 P.2d 79 (1999); *see also Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 1109, 245 Cal.Rptr. 658, 751 P.2d 923 (1988). Stated differently, the statute of limitations is often said to commence "upon the occurrence of the last element essential to the cause of action." *Norgart,* 21 Cal.4th at 397, 87 Cal.Rptr.2d 453, 981 P.2d 79.

An important exception to the general rule for defining the accrual of a cause of action is the discovery rule, which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action for which he seeks

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

recovery. *Id.* at 399, 87 Cal.Rptr.2d 453, 981 P.2d 79. A plaintiff "discovers" his cause of action when he suspects or should suspect that he has been wronged, whether or not he suspects that there is a specific legal theory under which he may recover. *Jolly,* 44 Cal.3d at 1110, 245 Cal.Rptr. 658, 751 P.2d 923.

[2] The preliminary consideration before this Court is the trigger date for accrual of the Plaintiffs' cause of action. Plaintiffs argue that the statute of limitations did not begin to run until Mr. Harshbarger was diagnosed with lung cancer on June 19, 2001. Defendants argue, however, that "damages for personal injury are not recoverable in connection with" claims under California B & P Code Sections 17200 *et seq.* or 17500 *et seq.* and thus the date on which Mr. Harshbarger's lung cancer was diagnosed cannot serve as the accrual date for the cause of action. *See Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1266, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992) ("The only nonpunitive monetary relief available under the Unfair Business Practices Act is the disgorgement of money that has been wrongfully obtained or, in the language of the statute, an order 'restoring ... money ... which may have been acquired by means of ... unfair competition" '); *see also Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003) (holding that a UCL action is equitable in nature; damages cannot be recovered"); *see also Chern v. Bank of America,* 15 Cal.3d 866, 875, 127 Cal.Rptr. 110, 544 P.2d 1310 (1976) ("[B & P Code, § 17500] does not authorize recovery of damages by private individuals").

Each of the Harshbargers' causes of action against the Retail Defendants are based on violations of the California B & P Code. Personal injuries, such as Mr. Harshbarger's lung cancer, are not compensable under any of these causes of action. Therefore, for the purposes of determining when these causes of action accrued, the date on which Mr. Harshbarger was diagnosed with lung cancer is irrelevant. The Court will, with this in mind, consider each of the Harshbargers' causes of action to determine whether the statutes of limitations have expired.

The Harshbargers' tenth cause of action, for violations of California B & P Code Section 17200, for Unfair Competition, is based on claims that the Retail Defendants sold cigarettes to John Harshbarger while he was a minor, between 1962 and 1968, and that Defendants gained an unfair advantage over their competition by doing so. (Opp. Br. at 2.) The only *compensable* injuries which the Harshbargers allege were caused by the Retail Defendants' acts of unfair competition during this time period consist of Mr. Harshbarger spending money on cigarettes while he was a minor, an injury which, if sustained, began in 1962 and ended in 1968 when he ceased to be a minor. This cause of action accrued, at the latest, in 1968, after which the Retail Defendants could no longer have sold cigarettes to John Harshbarger as a minor. The statute of limitations on this cause of action, whether three or four years, has long since run.

***7** The Harshbargers' eleventh and twelfth causes of action, for violations of California B & P Code § 17500, for Negligent and Intentional False Advertising, are based on claims that the Retail Defendants failed to disclose or disguised the dangers of smoking, and that as a result Mr. Harshbarger was initially induced, and then forced by ongoing addiction, to buy cigarettes from the Retail Defendants. (*See, e.g.,* FAC at ¶ 199.) The Harshbargers allege many acts of misconduct by the Retail Defendants, and specifically detail this alleged wrongdoing throughout their complaint, including, for example the dates on which various allegedly misleading statements were made and allegedly false advertising was used. (*See, e.g.* FAC at ¶ ¶ 162, 167, 176, 177, 191, and 193.) However, the complaint contains no specific allegations of misconduct in the three or four years prior to the commencement of this action. Plaintiffs make only vague and conclusory statements regarding alleged, continuing wrongful acts. Plaintiffs make no clear allegations that any of the alleged wrongdoing occurred in the three or four year period prior to the commencement of this action. Thus, these causes of action accrued prior to this period, whenever the last alleged wrongdoing took place, such that the statute of limitations on these causes of action has run.

Furthermore, the Harshbargers make no allegations that Mr. Harshbarger has been injured by the allegedly false and misleading advertising in the past three or four years. There are no specific allegations that he relied on any such advertising by the Retail Defendants in the three or four years prior to the commencement of this action. The complaint alleges that John Harshbarger began purchasing cigarettes in 1962 because of the Retail Defendant's false advertising and misrepresentation of the dangers of smoking. (FAC at ¶ 199.) The complaint further alleges that Mr. Harshbarger continued to smoke because he had developed an addiction which he could not control. (FAC at ¶ ¶ 15 and 71.) Assuming all allegations regarding Mr. Harshbarger's addiction

are true, he became addicted to cigarettes long before the three or four year period prior to the commencement of this action. Any injuries he suffered as a result of this addiction, in terms of being forced to expend personal resources to purchase cigarettes due to the addiction, should have been suspected by, if not known to, Mr. Harshbarger long before the three to four years prior to the commencement of this action. Thus, even according to the discovery rule, which delays the accrual of a cause of action until the injury was or should have first been discovered by the plaintiff, the action accrued more than three or four years prior to the commencement of the action. *See* *Norgart*, 21 Cal.4th at 399, 87 Cal.Rptr.2d 453, 981 P.2d 79. Therefore, the statute of limitations has expired.

The Harshbargers argue that until Mr. Harshbarger was diagnosed with lung cancer in June 2001, he had no way of knowing that his cause of action had accrued. (Opp. Br. at 7.) Plaintiffs further allege that due to "conspiracy and union of action" on the part of the Retail Defendants to disguise the dangers of smoking, Mr. Harshbarger was prevented from learning of the inherent danger of tobacco until he was diagnosed with cancer and learned of them first-hand. (Opp. Br. at 7.) Plaintiffs' argument fails. California precedent provides a presumption that a smoker is aware that smoking causes addiction and other health problems, such that any reliance on the industry's failure to disclose those facts is presumed to be unreasonable. *See, e.g.,* *Soliman v. Philip Morris Inc.*, 311 F.3d 966, 973-75 (9th Cir.2002). Although Plaintiffs claim they were unaware of the dangers of addiction and smoking until Mr. Harshbarger was diagnosed with lung cancer, they have failed to present any argument defeating the presumption that this information was commonly available and known to them. Thus, whether or not Plaintiffs were aware of the dangers presented by smoking, and the injuries Mr. Harshbarger personally may have suffered as a result of his addiction, they are presumed to have had this knowledge prior to three to four years before the commencement of this action. The causes of action therefore accrued prior to this time and the statute of limitations has expired. *See* *Jolly*, 44 Cal.3d at 1110, 245 Cal.Rptr. 658, 751 P.2d 923; *see also* *Norgart*, 21 Cal.4th at 399, 87 Cal.Rptr.2d 453, 981 P.2d 79.

d. The Harshbargers' Business and Professions Claims Against the Retail Defendants Are Barred by the Master Settlement Agreement.

***8** [3] The Retail Defendants also request that this Court dismiss the Plaintiffs' tenth, through twelfth causes of action as against them because they are barred by the Master Settlement Agreement ("MSA"). In 1998, the California Attorney General, joined by the attorneys general of 51 other states and territories, entered into the MSA, which granted sweeping releases to cigarette manufacturers and retailers for claims arising out of "A) the use, sale, distribution, manufacture, development, advertising, marketing, or health effects of, B) the exposure to, or C), research, statements, or warnings regarding, Tobacco Products." (MSA § II, RJN Exh. A at 13.) The MSA binds all releasing parties, including "persons or entities acting in a ... private attorney general ... capacity ... to the extent that any such person or entity is seeking relief on behalf of or generally applicable to the general public ... as opposed solely to private or individual relief for separate and distinct injuries." (*Id.*) The MSA thus explicitly bars tobacco-related claims against retailers, by parties who are acting in a representative capacity on behalf of the public, but does not bar individual claims asserting solely private relief.

The Harshbargers and the Retail Defendants disagree as to whether the Harshbargers' claims are representative claims, brought on behalf of the public for wrongs committed against the general public, or individual claims seeking solely private relief. (Br. at 10-12; Opp. Br. at 3-5.) This Court finds that, as currently plead, the Harshbargers' claims are representative in nature and are thus barred by the MSA. This court is not persuaded by the Retail Defendants that the Plaintiffs' inclusion of the sentence: the Retail Defendants "have received and continue to use monies that rightfully belong to Plaintiffs and others so situated" renders their claims representative in nature. (FAC at ¶ 155.) It is conceivable that this language was included to support Plaintiffs claims that the Retail Defendants engaged in systematically unfair business practices, as these allegations provide further support for their individual claims. The Court agrees with Retail Defendants, however, that because the Harshbargers "request the court to order defendants to disgorge all monies received from sales of cigarettes in California," they have in fact stated representative claims. (*See* FAC at ¶ 156.) Disgorgement of all profits received from all cigarette sales throughout California is not private or individual relief within the meaning of the MSA. In requesting disgorgement of all profits received from cigarette sales in California, rather than solely for cigarette sales to John Harshbarger, the Plaintiffs have requested "relief on behalf of or generally applicable to the general

public." (*See* MSA § II, RJN Exh. A at 13.)

The Harshbargers rely on *Newton v. R.J Reynolds Tobacco* for the position that the issue to be decided by this Court is not whether or not the Plaintiffs *have* stated a viable claim for relief under B & P § § 17200 and 17500, which is not barred by the MSA, but whether they *could* do so. (Opp. Br. at 4.) This Court, presented with a motion to dismiss, must assess the claims which have been asserted not those that might have or could have been asserted. *See* Fed.R.Civ.P. 12(b)(6). In *Newton*, the court held that although the Plaintiff-smokers had made reference to injuries suffered by the general public and caused by the tobacco defendants, which may have been barred by the MSA, they had also stated individual claims which could be reformulated so as request solely private relief. (*See Newton,* RJN Exh. O at 6-7.) The *Newton* court specifically stated, however, that, *"On a motion to remand,* the issue is whether or not the Newtons could state a viable claim, not whether they, in fact, have stated a viable claim." (*Id.* at 7.) The same standard is not applicable to a decision on the present motion to dismiss. Furthermore, in *Newton*, the plaintiffs sought disgorgement only for profits made from sales to those particular plaintiffs, while in this case the Harshbargers have sought disgorgement of all profits made from cigarette sales in California. Finally, insofar as the Harshbargers' claims are found to have been barred by the statute of limitations and California Civil Code Section 1714.45, it is irrelevant whether they could restate the claims so as to state solely individual relief such that they would not be barred by the MSA.

***9** The claims are thus barred by the MSA as representative claims, seeking relief "generally applicable to the general public." *See Lofton v. Philip Morris, Inc.*, CV 01-07373 at 7 (C.D. Cal.2001, RJN Exh. P ("To the extent that Plaintiff seeks relief on behalf of or generally applicable to the general public, her claims are barred by the MSA.").

CONCLUSION

For the foregoing reasons, Defendants Chevron, U.S.A., Inc. and Safeway, Inc.'s Motion to Dismiss the Harshbargers' ninth, tenth, eleventh, and twelfth causes of action as against them is GRANTED.

IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2003 WL 23342396 (N.D.Cal.)

**Motions, Pleadings and Filings** **(Back to top)**

• 3:02cv05267 (Docket) (Oct. 31, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 4

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
TRUEPOSITION, INC. and KSI, Inc., Plaintiffs / Counterclaim Defendants
v.
ALLEN TELECOM, INC. Defendant / Counterclaim Plaintiff.
**No. C.A. 01-823 GMS.**

Jan. 21, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

***1** On December 11, 2001, the plaintiffs, TruePosition, Inc. and KSI, Inc. (collectively "TruePosition") filed a complaint against the defendant, Allen Telecom, Inc. ("Allen"). In the complaint, TruePosition alleges that Allen has infringed three of its patents, namely U.S. Patent No. 4,728,959 ("the '959 patent"), U.S. Patent No. 6,108,555 ("the '555 patent"), and U.S. Patent No. 6,119,013 ("the '013 patent"). Each of these patents discloses a technology for locating cellular phones. In its Answer and Counterclaims (D.I.6, 48), the defendant asserted six affirmative defenses to the plaintiffs' claims, as well as five counterclaims.

Presently before the court is TruePosition's Motion to Dismiss and/or Strike the Defendant's Counterclaims III, IV, and V, and Affirmative Defenses III and VI (D.I.58). For the following reasons, the court will grant in part and deny in part the plaintiffs' motion.

II. STANDARDS OF REVIEW

The plaintiffs move to dismiss Counterclaims III, IV, and V pursuant to Federal Rule of Civil Procedure 12(b)(6). Dismissal is appropriate pursuant to this Rule if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In this inquiry, the court must accept as true and view in the light most favorable to the non-movant the well-pleaded allegations of the complaint. *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir.2000). The court 'need not accept as true "unsupported conclusions and unwarranted inferences." ' *Id.* (quoting *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n. 13 (3d Cir.1998)) (quoting *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir.1997)). However, it is the duty of the court 'to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable.' *Id.* at 184 (quoting *City of Pittsburgh*, 147 F.3d at 263).

The plaintiffs rely upon Federal Rules of Civil Procedure 8 and 12(f) for their motion to strike Affirmative Defenses III and VI. Rule 8 requires a "short and plain" statement of a claim or defense. Fed. R. Civ. P. 8(a) and (b). It is well settled that the Federal Rules intend a liberal pleading standard. *See Leatherman v. Tarrant County Narcotic Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (holding that federal courts may not impose a more demanding standard of pleading beyond "the liberal system of 'notice pleading' set up by the Federal Rules"). Indeed, Rule 8 expressly mandates that "[e]ach averment of a pleading shall be simple, concise, and direct." Fed. R. Civ. P. 8(e).

Rule 12(f) allows a court to strike "any insufficient defense" from any pleading. Fed. R. Civ. P. 12(f). Motions to strike affirmative defenses are disfavored. *Proctor & Gamble Co. v. Nabisco Brands, Inc.*, 697 F.Supp. 1360, 1362 (D.Del.1988). When ruling on such a motion, "the [c]ourt must construe all facts in favor of the nonmoving party ... and deny the motion if the defense is sufficient under the law." *Id.*

III. DISCUSSION

A. Counterclaim III

***2** Counterclaim III alleges tortious interference with a contract. The plaintiffs move to dismiss the counterclaim pursuant to Rule 12(b)(6) on the grounds that it fails to plead an essential element of the alleged tort, namely, a breach of the relevant contract.

The tort of interference with a contract requires "an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

intentional act that is a significant factor in causing the breach of the contract." [FN1] *Cantor Fitzgerald, L.P. v. Cantor*, 724 A .2d 571, 584 (Del. Ch.1998). Without a breach, there is no viable tortious interference claim. As to this point, Delaware law is well-settled. *See id.; see also Associated/Acc Int'l, LTD. v. Dupont Flooring Sys. Franchise Co.,* 2002 U.S. Dist. LEXIS 6464, at *27- 28 (D.Del.2002); *DeBakey Corp. v. Raytheon Serv. Co.*, 2002 WL 1273317 (Del. Ch.2000); *Boyer v. Wilmington Materials*, 1997 WL 382979 (Del. Ch.1997); *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch.1987). There is no discussion in these cases as to behavior that could constitute tortious interference when no breach of contract occurs. Presumably, this is because there is no conduct that could constitute the tort of interference with a contract, unless a breach of that contract results. [FN2]

FN1. Contrary to the defendant's paraphrasing, the court did not style this element as requiring only some kind of interference and no resultant breach. *See* Answering Brief at 9.

FN2. Although the defendant acknowledges that "a review of the relevant case law shows that the cases are universally precipitated by a breach of contract," it maintains that "the absence of a total breach does not foreclose recovery for damages caused by improper interference." Answering Brief at 10-11. This assertion is unpersuasive as it applies to interference with a contract, particularly given Allen's conspicuous failure to cite any supporting caselaw for it. Furthermore, Allen's contention that a breach of contract is not required in such a case because "the applicable tort here is, for a reason, labeled 'tortious *interference* with contractual relations' not 'tortious *breach* of contractual relations," ' Answering Brief at 12 n. 5 (emphasis added), is astounding in its fatuity. The tort is not labeled "tortious breach of contractual relations" because a non-party to a contract generally is not bound by the contract and thus can not breach the contract. *See, e.g., Traffas v. Bridge Capital Investors II*, 1993 WL 339293 (D.Kan.1993), at *3 ("It would be a novel holding for the court to rule that a breach of contract action can be maintained against a person who is not a party to the contract being sued upon.... A party to a contract cannot sue a person who is not a party to that contract for breach of contract."); *Credit Gen. Ins. Co. v. Midwest Indem. Corp.*, 916 F.Supp. 766, 722 (N.D.Ill.1996) (finding "ludicrous" the defendants' contention that a non-party to a contract can breach that contract).

In this case, the contract at issue is between AT & T Wireless Services, Inc. ("AT & T") and Allen for the purchase of Allen's wireless location systems, which systems are the subject of the present patent infringement suit. In its counterclaim, Allen alleges that the plaintiffs, by filing the present suit and by publicizing it, intended to cause a breach of the AT & T contract. Answer and Counterclaims (D.I.48) ¶ ¶ 17-18. This is insufficient to state a claim of tortious interference with a contract because, as the defendant concedes, there has been no breach of the AT & T contract. [FN3] Answering Brief at 10. Therefore, Counterclaim III must be dismissed.

FN3. The court is mindful of Allen's contention that "much of this may ... be a matter of semantics." Answering Brief at 12 n. 6. Allen argues that, because the original AT & T contract was modified subsequent to TruePosition's initiation of the present suit, it suffered a complete loss of the original anticipated contract. *Id.* Apparently, Allen wishes the court to view this "loss" as a breach. However, a mutual modification of a contract certainly is not a breach. *See, e.g., Anderson v. Golden*, 569 F.Supp. 122, 140 (S.D.Ga.1982) (distinguishing between breach and mutual modification). To the extent such a loss represents the loss of an economic expectation, the corresponding tort is interference with a prospective business opportunity. The court reiterates that Delaware law requires a breach to sustain the tort of interference with a contract.

B. Counterclaim IV

Counterclaim IV alleges tortious interference with prospective business opportunities. The elements of this tort are: '(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

lawful manner.' *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del.1981) (quoting *DeBonaventura v. Nationwide Mut. Ins. Co.*, 419 A.2d 942, 947 (Del. Ch.1980)) (citations omitted). The plaintiffs move to dismiss the counterclaim on the grounds that the defendant cannot prove all of the required elements, namely, a prospective business opportunity, or an interference with that opportunity.

The only "prospective business opportunity" at issue in the counterclaim is the AT & T contract. As stated above, the defendant acknowledges a completed and continuing contract with AT & T. Allen's expected business opportunity, thus, appears to have been consummated before the allegedly tortious conduct of the plaintiffs. This is particularly true because "the probability of the business opportunity must be assessed at the time of the alleged interference ." *Malpiede v. Towson*, 780 A.2d 1075, 1099 (Del.2001). In this case, the alleged interference occurred after Allen had been awarded the contract with AT & T. Answer and Counterclaims (D.I.48) ¶ 17.

***3** Allen maintains, however, that the plaintiffs' interference caused a modification of the expected contract terms. Following TruePosition's commencement of a patent infringement action against Allen and a press release announcing the same, Allen allegedly incurred additional legal expenses in renegotiating certain provisions of the AT & T contract, more onerous indemnification terms in the contract, and damages to its reputation. Thus, Allen contends, TruePosition's actions interfered with its expected business opportunity in that the final terms of the AT & T contract differed from the original terms. For purposes of this motion only, this is sufficient to state a claim of tortious interference with prospective business opportunities. *See McHugh v. Board of Educ.*, 100 F.Supp.2d 231, 247 n. 15 (D.Del.2000) (noting that the tort requires "a valid business relationship or expectancy" and citing cases).

Assuming that these facts constitute a sufficient interference, the counterclaim may be challenged on other grounds, namely, that Allen has not shown that the plaintiffs engaged in any wrongful conduct. To sustain the tort of interference with a business opportunity, the interference must have been improper. *Bohatiuk v. Delaware Chiropractic Servs. Network, L.L.C.*, 1997 Del.Super. LEXIS 215, at *8-10 (Del.Super.1997). The conduct at issue is the filing of a patent infringement suit and the public announcement of the suit by a press release. Normally, lawful actions cannot form the basis of a claim of tortious interference, particularly in light of TruePosition's "privilege to compete and protect its own business interests." *Acierno v. Preit-Rubin, Inc.*, 199 F.R.D. 157, 164-65 (D.Del.2001) (dismissing tortious interference with contractual relations claim because defendant corporation and real estate investment trust, in failing to affirmatively suggest to County that competitor plaintiff's property be included in a traffic impact study, committed no wrongful conduct) (citing caselaw). In this case, however, the defendant also has alleged the counterclaim of "sham litigation." In the sham litigation context, the mere initiation of a lawsuit may be wrongful if it constitutes unlawful antitrust activity. Because the court will allow the "sham litigation" counterclaim to stand, *see infra* Section I.C., the tortious interference with a prospective business opportunity claim must survive as well. It is axiomatic that if the defendant can prove that the instant lawsuit is merely a "sham" and violative of antitrust law, then the filing of the lawsuit constitutes improper conduct. Therefore, in the interest of consistency, and viewing the pleadings in the light most favorable to Allen, Counterclaim IV survives the instant motion to dismiss.

C. Counterclaim V

TruePosition moves for the dismissal of Counterclaim V, which alleges "sham litigation," on the grounds that such a cause of action does not exist. The term "sham litigation" refers to an exception to the doctrine of antitrust immunity. Immunity to certain antitrust suits was established by the Supreme Court in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U .S. 127 (1961), and *Mine Workers v. Pennington*, 381 U.S. 657 (1965). These cases established that "the Sherman Act does not prohibit ... persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly." *Noerr*, 365 U.S. at 136. The Supreme Court refused to "impute to Congress an intent to invade" the First Amendment right to petition. *Id.* at 136. Thus, the *Noerr-Pennington* doctrine protects those who petition the government from antitrust liability.

***4** Later caselaw extended *Noerr* antitrust immunity to "the approach of citizens ... to administrative agencies ... and to courts." *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). However, such immunity is not afforded to "sham" petitioning that is only "an attempt to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

interfere directly with the business relationships of a competitor." *Noerr*, 365 U.S. at 144. Litigation is a mere "sham" if it is objectively baseless and subjectively motivated to interfere with business competition by using a governmental process 'as an anticompetitive weapon.' *Professional Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49 (1993) (quoting *Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380 (1991)).

The plaintiffs urge that "sham litigation" is not a cognizable cause of action. The court cannot agree. A counterclaim of sham litigation is, essentially, an assertion that antitrust law has been violated. Indeed, in litigation leading to the Court's decision in *Professional Real Estate Investors,* Columbia Pictures had sued the defendant, PRE, for copyright infringement. *Id.* at 52. The defendant counterclaimed, accusing Columbia of violations of § § 1 and 2 of the Sherman Act, 26 Stat. 209, as amended, 15 U.S.C. § § 1-2. *Id.* "In particular, PRE alleged that Columbia's copyright action was a mere sham that cloaked underlying acts of monopolization and conspiracy to restrain trade." *Id.* Although the counterclaim did not survive summary judgment on the facts of the case, the Court upheld the validity of the sham counterclaim itself. Indeed, in announcing a two-part test for its application, the Court only clarified the existence and context of the sham litigation exception. [FN4]

FN4. Of course, as already stated, a violation of antitrust law underlies any sham exception to antitrust immunity. Although the defendant has not specifically pled a violation of the Sherman Act in Counterclaim V, the invocation of the sham litigation doctrine is sufficient to give notice of the basis of its claim. This is particularly true in the context of a Rule 12(b)(6) motion to dismiss, and in light of both the liberal pleading philosophy of the Federal Rules and the court's responsibility 'to examine the complaint to determine if the allegations provide for relief on any possible theory.' *O'Boyle v. Jiffy Lube Int'l, Inc.*, 866 F.2d 88, 93 (3d Cir.1989) (quoting C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1357, at 601-02 (1969) (footnotes omitted)).

Since *Professional Real Estate Investors*, the sham litigation exception has been invoked in varied contexts. For example, in a recent case, the Supreme Court refused to strip antitrust immunity from an employer who filed a losing and retaliatory lawsuit where the suit was not objectively baseless. *BE & K Constr. Co. v. NLRB*, 122 S.Ct. 2390 (2002). In so doing, the Court implicitly held that the sham litigation exception applies to the National Labor Relations Act in the same way it applies to the Sherman Act. *See id.* at 2402 (Scalia, J., concurring) ("[T]he implication of our decision today is that ... we will construe the National Labor Relations Act ... in the same way we have already construed the Sherman Act: to prohibit only lawsuits that are *both* objectively baseless *and* subjectively intended to abuse process.") (emphasis in original). Other courts have applied the immunity principles of *Noerr-Pennington* to other contexts. *See, e.g., State of Missouri v. National Organization of Women*, 620 F.2d 1301, 1318-19 (8th Cir.1980) (applying *Noerr-Pennington* liability principles to state tort laws); *Video International Production, Inc. v. Warner-Amex Cable Communications, Inc.*, 858 F.2d 1075, 1084 (5th Cir.1988) (holding that *Noerr-Pennington* doctrine applies to Civil Rights Act liability); *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 614-15 (8th Cir.1980) (same). It follows that if the *Noerr-Pennington* immunity principles apply in these contexts, the sham litigation exception to immunity applies as well. [FN5] Other cases have explicitly or implicitly accepted the sham exception in the patent infringement context. *See, e.g., Carroll Touch, Inc. v. Electro Mechanical Sys.*, 15 F.3d 1573 (D.C.Cir.1993) (discussing sham litigation counterclaim in patent infringement context); *U.S. Philips Corp. v. Sears Roebuck & Co.*, 55 F.3d 592, 597 (Fed.Cir.1995) (rejecting sham counterclaim on the facts of the case).

FN5. Unlike the defendant, however, the court recognizes a distinction between the *Noerr-Pennington* doctrine, which shields petitioners from antitrust liability, and the sham litigation exception, which strips this immunity when the petition is meritless and anticompetitive in nature. *See, e.g.,* Answering Brief at 15 ('... the Noerr-Pennington [*i.e.,* "sham litigation"] doctrine ...').

***5** In sum, the court can find no justification for refusing to allow the sham exception to be litigated in the instant case. Indeed, a copyright infringement action, like that at issue in *Professional Real Estate Investors*, and a patent infringement action such as the one at issue here present such analogous contexts regarding the application of the sham litigation exception that it would strain credibility to announce

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

a relevant and dispositive difference between them. Thus, Counterclaim V may remain, to succeed or fail as it may in the ensuing litigation. [FN6]

FN6. In this vein, the court stresses that the defendant, of course, will be tasked in the ensuing litigation with proving the elements of the sham litigation exception, namely, that the present patent infringement suit is objectively baseless and subjectively motivated by an intent to interfere with competition. *See* *Carroll Touch*, 15 F.3d at 1583 (holding that sham litigation counterclaim could not survive summary judgment because defendant did not establish a genuine issue regarding whether the patent infringement action was baseless).

D. Affirmative Defense III

As its third affirmative defense, Allen alleges that TruePosition engaged in "fraud and/or inequitable conduct" in acquiring the relevant patents. The plaintiffs move to strike the defense, as well as Counterclaim I, which is predicated on the inequitable conduct defense, on the grounds that the affirmative defense does not meet the pleading requirements of Federal Rule of Civil Procedure 9(b).

Rule 9 requires that all pleadings of fraud or mistake "be stated with particularity." Fed. R. Civ. P. 9(b). [FN7] These averments, however, remain subject to the liberal pleading standard of Rule 8, which requires only a "short and plain" statement of a claim or defense. *See* *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 703 (3d Cir.1996) (citing cases); *see generally* *Leatherman*, 507 U.S. at 168 (holding that federal courts may not impose a more demanding standard of pleading beyond "the liberal system of 'notice pleading' set up by the Federal Rules"); 5 Charles Alan Wright & Arthur R. Miller Federal Practice and Procedure § 1281, at 520-21 (1990) (pleading with particularity under Rule 9(b) should be done consistently with the general philosophy of Rule 8); 2A James W. Moore, Moore's Federal Practice ¶ 8.13, at 8-58 (2d ed.1995) (the mandate of Rule 8 applies "even where the Rules command particularity, as in the pleading of fraud under Rule 9(b)") (footnote omitted).

FN7. Because the court has found that Allen's pleadings satisfy the heightened pleading requirements of Rule 9(b), it need not address the defendant's argument that Rule 9(b) may not apply to allegations of inequitable conduct.

The pleading requirements are satisfied by Allen's third affirmative defense. The defense constitutes one paragraph which names the title and publication date of at least one allegedly withheld material prior art publication. In the context of alleged inequitable conduct before the PTO during a patent prosecution, "pleadings that disclose the name of the [allegedly withheld] relevant prior art and disclose the acts of the alleged fraud fulfill the requirements of Rule 9(b)." *EMC Corp. v. Storage Tech. Corp.*, 921 F.Supp. 1261, 1263 (D.Del.1996). The third affirmative defense discloses at least this much, and thus suffices "to apprise the other party of what is being alleged in a manner sufficient to permit responsive pleadings" as Rule 9 requires. 5 WRIGHT & MILLER § 1296 (1990).

TruePosition objects that the named publication is relevant to only certain of their patents and, therefore, the defendant has not sufficiently pled the defense of inequitable conduct as to the other patents. The court declines, however, to weigh the relevance and materiality of the allegedly withheld prior art for purposes of this motion. It is the court's duty for purposes of this motion only to test the sufficiency of the pleading, not to resolve disputed facts or decide the merits of the case. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). Furthermore, the Third Circuit has made clear that, although "it is certainly true that allegations of 'date, place or time" ' satisfy the pleading requirements, "nothing in [Rule 9] requires them." *Seville Industrial Machinery v. Southmost Machinery*, 742 F.2d 786, 791. The affirmative defense, as pled, suffices to place the plaintiffs on notice of the misconduct with which they are charged. *Id.; see also* *Scripps Clinic and Research Found., et al. v. Baxter Travenol Lab., et al.*, 1988 WL 22602, at *3 (D.Del.) (defense of inequitable conduct sufficiently pled when defendant simply "allege[d] that [the plaintiff] failed to identify to the PTO relevant prior art of which it was aware").

***6** The motion to strike the third affirmative defense, and to dismiss Counterclaim I, which is at least partially premised on the defense of inequitable conduct, is denied.

E. Affirmative Defense VI

Finally, the plaintiffs move to strike Affirmative Defense VI, abuse of process, on the grounds that it is not a defense to a patent infringement action, and that, in any event, it has not been pled properly.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The plaintiffs are correct that abuse of process is not a defense to a patent infringement action. Rather, it is a tort, *see* PROSSER, LAW OF TORTS, § 121 (4th Ed.1971), which should have been pled as a counterclaim. This mistake is not fatal, however. Federal Rule of Civil Procedure 8(c) states that "[w]hen a party has mistakenly designated ... a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." Fed. R. Civ. P. 8(c). The court will view the defendant's averment of the "defense" of abuse of process as a counterclaim.

Abuse of process may be alleged in a patent infringement case as in any other. *See, e.g., Bayer AG v. Sony Elecs., Inc.*, 229 F.Supp.2d 332 (D.Del.2002). A claim of abuse of process is established when "the defendant ... prove[s] that the plaintiff had an 'ulterior purpose' and committed 'a willful act in the use of the process that is not proper in the regular conduct of the proceedings ." ' *Id.* at 368 (quoting *Feinman v. Bank of Delaware*, 728 F.Supp. 1105, 1115 (D.Del.1990), *aff'd*, 909 F.2d 1475 (3d Cir.1990)). "There must be 'some definite act or threat not authorized by the process or aimed at an objective not legitimate in the use of process ... there is no liability where the [plaintiff] has done nothing more than carry out the process to its authorized conclusion ." ' *Id.* (citations omitted).

The defendant has asserted that the "[p]laintiffs have abused the judicial process by bringing the present action based on the [p]atents that [p]laintiffs know are invalid, unenforceable, and/or not infringed." Answer and Counterclaims (D.I.48) at 8. There is no elaboration in the Answer and Counterclaims. The defendant's briefing, however, contends that "the same averments with regard to TruePositions tortious interference with Allen's business contracts and relations also establish a basis to proceed against TruePosition for abuse of process." Answering Brief at 17-18 n. 10.

The defendant's averments are sufficient to sustain a Rule 8, Rule 12(f), or Rule 12(b)(6) motion to strike and/or dismiss. Allen has offered a "short and plain" statement of the claim and has presented a factual context that, viewed in the light most favorable to Allen, states an abuse of process claim. Again, it is the court's duty for purposes of this motion only to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *Kost*, 1 F.3d at 183. Despite the defendant's anemic presentation of its abuse of process claim, the facts presented in the context of its sham litigation and tortious interference claims suffice to state a claim for relief for abuse of process as well. The plaintiffs' motion to dismiss the claim is denied.

IV. CONCLUSION

***7** The court concludes that the defendant's tortious interference with a contract claim can not be sustained because there has been no breach of contract. Allen's other counterclaims of tortious interference with prospective business opportunities, sham litigation, declaratory judgment, and abuse of process survive this motion to dismiss. Likewise, the defendant's third affirmative defense of fraud and/or inequitable conduct may remain.

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. TruePosition's Motion to Dismiss and/or Strike (D.I.58) is GRANTED IN PART and DENIED IN PART.
2. Counterclaim III, alleging tortious interference with a contract, is DISMISSED.

Not Reported in F.Supp.2d, 2003 WL 151227 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.