IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TV GUIDE ONLINE, INC. AND TV GUIDE ONLINE, LLC,

Plaintiffs,
Counterclaim-Defendants,

v.

TRIBUNE MEDIA SERVICES, INC.

Defendants,
Counterclaim-Plaintiffs.

C.A. No. 05-CV-725-KAJ

**JURY TRIAL DEMANDED**

**REDACTED - PUBLIC VERSION**

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR ALLEGED PATENT MISUSE AND TO STRIKE DEFENDANT'S PATENT MISUSE DEFENSE**

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Steven J. Fineman (#4025)
Richards, Layton & Finger PA
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
cottrell@rlf.com
moyer@rlf.com
fineman@rlf.com
Attorneys for Plaintiffs TV Guide Online, Inc. and TV Guide Online, LLC

OF COUNSEL:
Robert C. Morgan
Christopher J. Harnett
Stuart W. Yothers
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Dated: March 24, 2006

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| INTRODUCTION | 1 |
| ARGUMENT | 5 |
| I. TMS IS TRYING TO DISTANCE ITSELF FROM ITS PATENT MISUSE PLEADINGS | 5 |
| II. TMS'S RELIANCE ON THE ALJ'S FINDINGS IS MISPLACED | 6 |
| A. TMS's "Similarity" Arguments Are Unavailing | 6 |
| B. The ALJ's Decision Has Already Been Rejected | 8 |
| III. TMS'S DECISION TO REMAIN SILENT ON THE HISTORY OF NEGOTIATIONS BETWEEN THE PARTIES SPEAKS VOLUMES | 9 |
| IV. TMS IS TRYING TO USE ITS PATENT MISUSE CLAIM AS A BASIS TO CONDUCT A DISCOVERY FISHING EXPEDITION | 11 |
| CONCLUSION | 14 |

# TABLE OF AUTHORITIES

## CASES

*Bayer AG v. Housey Pharms., Inc.*,
228 F. Supp. 2d 467 (D. Del. 2002) ........ 10

*Beloit Corp. v. Valmet Oy*,
742 F.2d 1421 (Fed. Cir. 1984) ........ 8

*In re Gemstar Dev. Corp. Patent Litig.*,
No. MDL-1274-WBH (N.D. ga. March 24, 2004) (ORDER) ........ 3

*Greene v. Emersons, Ltd.*,
86 F.R.D. 66 (S.D.N.Y. 1980) ........ 6

*Kolene Corp. v. Motor City Metal Treating, Inc.*,
440 F.2d 77 (6th Cir. 1971) ........ 2, 9

*Motorola v. Kimball Int'l Inc.*,
601 F. Supp. 62 (N.D. Ill. 1984) ........ 10

*Yuhasz v. Brush Wellman, Inc.*,
341 F.3d 559 (6th Cir. 2003) ........ 6

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
395 U.S. 100 (1969) ........ 1, 10

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6) ........ 1

INTRODUCTION

TV Guide Online respectfully submits this reply brief in support of its motion: (1) to dismiss the patent misuse counterclaim asserted by defendant Tribune Media Services, Inc. ("TMS") pursuant to Fed. R. Civ. P. 12(b)(6); and (2) to strike TMS's corresponding affirmative defense pursuant to Fed. R. Civ. P. 12(f).

TV Guide Online explained in its opening brief that TMS did not plead (and cannot possibly establish) an essential element of its patent misuse defense -- specifically, that TV Guide Online would agree to license the '078 patent to TMS ***only if*** TMS agreed to accept a covenant not-to-assert provision. This was not some technical pleading oversight on TMS's part. As TV Guide Online explained, TMS never objected to such a provision and TV Guide Online never insisted on one. In its answering brief (D.I. 22), TMS makes no effort to demonstrate otherwise. Moreover, TMS has not alleged (and cannot allege) that TV Guide Online ***ever once required any licensee*** of the '078 patent to accept ***any*** license provision -- including the covenant not-to-assert provision about which TMS complains.

TMS's efforts to salvage its patent misuse counterclaim and affirmative defense fail as a matter of law and unchallenged fact. For example:

1. TMS's only pleaded basis for asserting patent misuse is that TV Guide Online supposedly "conditioned" its proposal to license TMS to the '078 patent on the acceptance of a "covenant not-to-assert" (D.I. 6 at pp. 13-14). TMS, however, has not alleged and cannot allege the legal requirements for such a patent misuse claim. As a matter of settled law, misuse in this context requires a showing that "the patentee refuses to license on any other basis and leaves the licensee with the choice between a license so providing and no license at all." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 135 (1969). ***TMS does not***

***even acknowledge this Supreme Court holding in its answering brief -- much less show where it has pleaded the elements of misuse that the law requires.***

2. Confronted by TV Guide Online's showing that TMS's patent misuse claim has no basis in law or fact, TMS tries to distance itself from its own pleadings. TMS ***now says***: (1) that it is entitled to pursue a patent misuse claim "regardless of whether TV Guide Online forced a covenant not to assert on TMS" (D.I. 22 at 1); and (2) that its patent misuse claims really are "much broader" and are based on the "overall licensing practices employed by TV Guide and Gemstar." (D.I. 22). TMS's "much broader" patent misuse allegations, however, are simply not articulated anywhere in its Answer and Counterclaims. TMS never pled misuse of the '078 patent outside the context of the TV Guide-TMS negotiations. TMS cannot now avoid dismissal under Rule 12 of the Federal Rules of Civil Procedure by simply suggesting patent "misuse in the air." *Kolene Corp. v. Motor City Metal Treating, Inc.*, 440 F.2d 77, 84-85 (6th Cir. 1971). Misuse must be misuse of the '078 patent. Dismissal is warranted here because, even under TMS's new interpretation of its pleadings, TMS has not presented a sustainable averment directed to any supposedly improper license to the '078 patent.

3. Instead, TMS persists in relying on an incomplete, redacted opinion by the Administrative Law Judge in a 2001 ITC proceeding that did not involve the '078 patent. According to TMS, the existence of that opinion somehow provides a basis for TMS to argue that TV Guide Online has misused the '078 patent. TMS is incorrect -- the ITC proceeding has no bearing on this case. TMS never alleged in its pleadings that the '078 patent (or any license to the '078 patent) was the subject of the ALJ's determination. Moreover:

- TMS fails to show that the license provisions addressed by the ALJ were anything like the covenant not-to-assert license terms at issue

here. Indeed, the ALJ's published opinion does not set forth even a single example of any improper licensing provision; and

- TMS fails to plead (or provide support for the proposition that) any of the patents involved in the ITC proceedings would be licensed ***only*** if the licensee accepted a covenant not-to-assert provision.

4. TMS's reliance on the ALJ's decision is also misplaced because the ITC did not adopt -- and expressly declined to take a position on -- the ALJ's patent misuse finding. Indeed, the published ITC decision states that "[p]ages 151-218 of this Initial Determination have been omitted because they discuss patent misuse, an issue on which the Commission took no position." (Ex. A).[1] Beyond that, TMS ignores the substance of a subsequent decision by an Article III Court (the U.S. District Court for the District of Georgia). In that decision, Judge Hunt ruled that the license agreements at issue in the ITC proceedings ***were not patent licenses but rather product licenses***. *In re Gemstar Dev. Corp. Patent Litig.*, No. MDL-1274-WBH, Order at 9 (N.D. Ga. March 24, 2004) (attached hereto as Ex. B). That ruling confirms that Gemstar could not possibly have misused any patents.[2] Because of that ruling, and because TMS cannot plead any act of misuse specific to the '078 patent -- through "conditioning" or any other theory -- any effort by TMS to replead its patent misuse allegations would be futile.

---

1 Under ITC procedures, the Commission can adopt the findings of an ALJ explicitly or by remaining silent about the findings. Here, the Commission took the affirmative step of announcing that it decided to "take no position" on the ALJ's misuse findings -- thereby, ensuring that the findings were ***not*** adopted by the Commission. Notice of Decisions to Review in Part, Take No Position in Part, and Not Review in Part the Administrative Law Judge's Final Initial Determination; Notice of Decisions to Affirm Three Rulings of the Administrative Law Judge; Notice of Determination of No Violation of Section 337 of the Tariff Act of 1930 (August 30, 2002), *In the Matter of Certain Set-Top Boxes and Components Thereof*, Inv. No. 337-TA-454, Publication 3564 (U.S. Int'l Trade Comm'n November 2002).

2 Even TMS concedes that to succeed on its so-called "broader" misuse theory, TMS must show that these other licenses were "***patent license[s]*** involving the '078 patent" (D.I. 22 at 2, emphasis added).

5. In many ways, TMS's answering brief is most remarkable for what TMS ***does not say***. For example, TMS does not deny that during the course of license discussions with TV Guide Online TMS ***never even objected*** to the covenant not-to-assert provision in question.

REDACTED

6. TMS's continuing efforts to pursue a patent misuse claim -- both with respect to its pleaded theory and its new "broader" theory are simply calculated to create a diversion during discovery and, ultimately, trial. The overbroad document demands and interrogatories that TMS has already served on the patent misuse issue confirm this point. This is a simple patent case -- it involves a straightforward technology, only one patent, and an accused service -- www.Zap2It.com -- that is not complicated. TMS's efforts to divert attention and resources from the primary issues in the case with its improperly-pled and unsupportable patent misuse allegations should be rejected. TV Guide Online, therefore, respectfully submits

that the Court should grant the present motion pursuant to Rules 12(b)(6) and 12(f), Fed. R. Civ. P.

## ARGUMENT

### I. TMS IS TRYING TO DISTANCE ITSELF FROM ITS PATENT MISUSE PLEADINGS

TMS attempts to avoid the plain words of its own "Answer, Affirmative Defenses and Counterclaims." TMS makes the remarkable assertion that "TV Guide Online has ***no authority*** ***for its novel position that 'conditioning' is a required element of TMS's patent misuse claim*** based on covenants not-to-assert, covenants not to sue and grant backs." (D.I. 22 at 12-13, emphasis added.)

For ***authority***, TV Guide Online relies on the United States Supreme Court. As stated above, in *Zenith Radio*, the Supreme Court made plain that misuse of the type that TMS seeks to assert must be a situation "where the patentee refuses to license on any other basis." Here, TMS did not plead that TV Guide Online "refused to license" on any basis that did not include the covenant not-to-assert provision in question.




Through its silence, TMS has conceded that its patent misuse claim was not properly pled.

Because of this, TMS tries to recharacterize its "Affirmative Defenses and Counterclaims." TMS now asserts that "TMS' patent misuse allegations are based on the ***overall licensing practices*** employed by TV Guide Online and Gemstar." (D.I. 22 at 1, emphasis added). That assertion, however, appears nowhere in TMS's pleadings. There is no patent

misuse allegation based on the "overall licensing practices" employed by the TV Guide companies specifically with respect to the '078 patent.

Moreover, TMS's repeated assertion that "discovery will yield additional ways in which TV Guide Online and Gemstar have misused the '078 patent and other patents" confirms that TMS has not and cannot meet its pleading requirements (D.I. 22 at 5). TMS only ***hopes*** to find some "additional" bases for a misuse claim in discovery. Such a hope cannot cure its pleading failure and does not justify the fishing expedition TMS would take. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003); *Greene v. Emersons, Ltd.*, 86 F.R.D. 66, 73 (S.D.N.Y. 1980).

## II. TMS'S RELIANCE ON THE ALJ'S FINDINGS IS MISPLACED

### A. TMS's "Similarity" Arguments Are Unavailing

TMS asserts that "[r]eferencing the DOJ Guidelines and applying a 'rule of reason' test, Administrative Law Judge Luckern of the International Trade Commission found Gemstar guilty of patent misuse for engaging in licensing practices ***similar to those that TMS complains of here***." (D.I. 22 at 3). What TMS "complains of here" in its pleadings is supposed "conditioning" of a license on a covenant not-to-assert provision that TMS never objected to. As stated above, TMS is now trying to distance itself from its "conditioning" argument in its entirety.






Faced with this, TMS continues to argue that the covenant not-to-assert term that TV Guide Online offered to TMS was somehow "similar" to a term that the ALJ found objectionable in connection with the ITC proceeding. In prefacing its pleading concerning supposed "similarities" of license provisions, TMS alleges that "TV Guide Online and Gemstar have misused the '078 patent and other patents for the reason the Administrative Law Judge found that Gemstar misused its patents in the [ITC] matter." (D.I. 6 at ¶ 9). TMS, however, does not allege that the ALJ made a finding that Gemstar misused the '078 patent. TMS also does not allege that the '078 patent was the subject of any patent license in that administrative proceeding. Accordingly, TMS has not alleged that TV Guide Online has ever sought to impermissibly expand the scope of the '078 patent rights.

In its opening brief, TV Guide Online noted that TMS did not provide any basis in its pleadings for asserting that the ALJ decision has any bearing here. TMS's answering brief confirms that there is no basis. At pages 6-7 of that brief, TMS simply strings together a series of bullet points purporting to summarize unrelated portions of the ALJ's decision. Neither those bullet points -- nor anything else offered by TMS -- provides a basis to infer any relevance of the ALJ decision to the '078 patent or to the proposed covenant at issue here. That is because the

ITC proceedings involved different patents and different license terms.[3] In any event, ***whether or not*** there was "similarity" between any licensing terms, patent misuse here would have required a showing that TV Guide Online refused to license without the covenant -- ***something that TMS now tacitly admits never happened***.

**B. The ALJ's Decision Has Already Been Rejected**

TMS cannot dispute that the Commission did not adopt the ALJ's findings.[4] And, TMS tries to ignore the subsequent decision of the U.S. District Court for the Northern District of Georgia in a related multidistrict litigation involving parties to the ITC proceeding where the same licenses were at issue.

Specifically, TMS does not even attempt to address the District Court ruling that the licenses at issue in the ITC proceeding were product licenses ***not*** patent licenses. That ruling by an Article III Court provides additional confirmation that the ALJ decision has absolutely no precedential value and that any finding of patent misuse would have been legally unsound. *Beloit Corp. v. Valmet Oy*, 742 F.2d 1421, 1422 (Fed. Cir. 1984). As such, the District Court ruling confirms that TMS's patent misuse claims would fail as a matter of law ***even if*** TMS had pled patent misuse based on Gemstar-TV Guide's "general licensing practices" that were

---

3 Specifically, three patents owned by Gemstar - TV Guide, Inc. and Starsight Telecast, Inc. were involved in the ITC investigation -- none of which was the '078 patent -- and the ALJ found misuse with respect to only one of them. TMS does not and cannot allege that the ITC proceeding involved the '078 patent in any way. Indeed, the '078 patent is never even mentioned in the ALJ's decision.

4 TMS is incorrect when it argues that the Commission did not adopt the ALJ patent misuse findings because it adopted the ALJ's "non-infringement findings and thus did not need to reach the affirmative defense of patent misuse." (D.I. 22 at 5). The Commission adopted ***all*** of the ALJ's findings with respect to ***all*** of the respondents' other affirmative defenses. The ***only*** affirmative defense findings the Commission went out of its way expressly not to adopt were the ALJ's patent misuse findings.

supposedly at issue in the ALJ's decision.[5] TMS, however, did not plead anything about "general licensing practices" specifically with respect to the '078 patent-in-suit and it would be futile to permit TMS to replead.

As a matter of law, patent misuse allegations must be specific to the patent-in-suit. It is not sufficient for an accused infringer to present vague allegations suggesting "[patent] misuse in the air." *Kolene Corp.*, 440 F.2d at 84-85. "The misuse must be of the patent in suit." *Id.* ("[T]he [patent misuse] misconduct must be connected with the matter in litigation, and the defense is not available to a party with whom the misconduct is of no concern."). A vague -- and incorrect -- suggestion of "misuse in the air" is all that TMS is presenting here. TMS's allegations, therefore, do not state a claim on which relief can be granted.

## III. TMS'S DECISION TO REMAIN SILENT ON THE HISTORY OF NEGOTIATIONS BETWEEN THE PARTIES SPEAKS VOLUMES

In its opening brief, TV Guide Online set forth in detail (with a sworn declaration and contemporaneous confirming documents) the history of license negotiations between TV Guide Online and TMS concerning the '078 patent. TMS does not and cannot dispute any of TV Guide Online's assertions in that regard. Instead, TMS tries to bury the issue in a footnote on page 8 of its brief stating that "TMS will not comment on . . . TV Guide Online's characterization of the parties' discussions." TMS then asserts, without elaboration or support -- "[s]uffice it to say, TMS has a conflicting version of the negotiations."

---

5 *Even if* TMS had been able to plead that the ALJ's decision bore some relationship to the '078 patent and/or Gemstar-TV Guide's efforts to license that patent (which TMS was not able to do), that pleading would have been legally incorrect because: (1) as stated above, the ITC declined to adopt the ALJ's misuse findings; and (2) the Georgia District Court effectively reversed them.

If TV Guide Online's description of the negotiations was in any way inaccurate, TMS would have and should have said so.




TMS's assertion of patent misuse in this case is precisely the type of claim that this Court and other courts have rejected. *See, e.g., Bayer AG v. Housey Pharms., Inc.*, 228 F. Supp. 2d 467, 470-71 (D. Del. 2002):

> The key consideration of whether the patentee "conditions" a license . . . is "the voluntariness of the licensee's agreement . . . ."
>
> Plaintiffs have provided no evidence that defendant has impermissibly "conditioned" its licenses upon royalty provisions covering unpatented products and activities . . . . In *Zenith Radio*, relied on by plaintiffs, the Supreme Court stated that "misuse inheres in a patentee's insistence on a percentage-of-sales royalty . . . and his ***rejections*** of licensee proposals to pay for actual use." 395 U.S. at 139, 89 S.Ct. 1562 (emphasis added).[7]

---

6 TMS's failure to challenge TV Guide Online's account of these events shows that there are no disputed facts here. That, coupled with the deficiencies in TMS's pleadings, confirms that it is appropriate for the Court to proceed under Rule 12(b)(6) and 12(f), Fed. R. Civ. P. rather than Rule 56.

7 TMS tries to ignore the *Bayer* holding as well as the *Zenith Radio* holding by arguing that the specific disputed license terms that formed the basis of the conditioning claims in those cases were not covenant not-to-assert terms. (D.I. 22 at 10). That distinction is, of course, irrelevant to the issue of conditioning. Without anything of substance to say about the controlling legal authorities, TMS tries to rely on *Motorola* v. *Kimball Int'l Inc.*, 601 F. Supp. 62 (N.D. Ill. 1984). Referencing that case, TMS argues that "TV Guide overreaches when it implies a patent misuse defense may only be premised on terms that actually make their way into an executed license agreement." (D.I. 22 at 3, 12). TV Guide did not imply anything of the kind because what matters here is that TV Guide Online never refused to license the '078 patent absent acceptance of the covenant provision in the first place.

Right from the outset of the license negotiations with TV Guide Online, TMS has tried to do whatever it could to avoid paying for a license to the patented technology that it is using in connection with the www.Zap2it.com service. Between April and June 2005, TMS and TV Guide Online negotiated a detailed nondisclosure agreement so that TV Guide Online could present TMS with a formal licensing proposal. Immediately after the NDA was executed, TV Guide Online provided TMS with proposed terms. Within 24 hours of receiving that proposal, TMS wrote to TV Guide Online summarily rejecting the proposal




TMS's current efforts to manufacture a patent misuse defense -- when TMS never once objected to the covenant not-to-assert provision at issue -- is more of the same. Likewise, TMS's decision not to respond to TV Guide Online's February 17, 2006 letter shows that TMS simply wants to use the '078 patent free of charge.[8]

## IV. TMS IS TRYING TO USE ITS PATENT MISUSE CLAIM AS A BASIS TO CONDUCT A DISCOVERY FISHING EXPEDITION

This is a straightforward infringement case involving one patent and a simple accused service. The technology of the '078 patent-in-suit is straightforward -- in general terms, it is directed to a system and method to enable a television viewer using a computer to obtain television programming information specific to that viewer's location. TV Guide Online is

---

[8] In connection with TV Guide Online's February 17, 2006 letter, TMS asserts that TV Guide "recanted" its covenant not-to-assert "four days before filing its instant motion." (D.I. 22 at 1). TMS is way off the mark. TV Guide Online had nothing to recant. During license negotiations, TMS never objected to the covenant not-to-assert provision. The first time that TV Guide Online ever heard that TMS had an issue with that provision was when TMS served its "Answer, Affirmative Defenses and Counterclaims" earlier in February. TV Guide Online promptly wrote to TMS to make clear that TMS's assertions about "conditioning" were incorrect.

asserting the '078 patent against TMS in connection with TMS's operation of the www.Zap2it.com service. Using that service, TMS's customers can obtain television programming information specific to the viewer's location.

TMS apparently hopes to pursue its moving-target patent misuse claim against TV Guide Online to increase the complexity and the cost of the case, thereby diverting attention from TV Guide Online's straightforward demonstration of TMS's infringement. Because TMS was -- and continues to be -- unable to plead the legal requirements of a patent misuse claim, TMS has repeatedly asserted that "discovery will yield" supposed evidence of some form of patent misuse.

The discovery that TMS served on TV Guide Online on March 2, 2006 (the day of the Rule 26(f) conference between counsel for the parties) confirms that TMS hopes to use its improperly-pled patent misuse assertions to conduct a fishing expedition into all of Gemstar's past business activities.

The following exemplary interrogatory served by TMS illustrates this point:

> 19. Identify all past and current agreements, express or implied, to which TV Guide is a party relating to interactive program guide technology which contain a covenant not to sue, or non-assertion clause, grantback clause, or any other provisions that permit TV Guide and/or any TV Guide customer or licensee to practice technology not owned by TV Guide. This identification should provide, without limitation: the parties, date entered into, term, licensed patents by patent number, amount, field of use and bates numbers of each license; the identification of all entities accused of infringement; all meetings or other communications relating to the subject matter; the names and contact information for all individuals involved in such negotiations and related communications; and the identity of the persons most knowledgeable thereof.

Five exemplary document demands served by TMS similarly reveal TMS's plans for a fishing expedition far afield from the issues raised by TV Guide Online's infringement allegations -- or even TMS's misuse allegations:

31. All documents referring or relating to the Department of Justice investigation into the merger of Gemstar and TV Guide.

82. All communications, testimony, and correspondence between TV Guide and the Department of Justice, or any other government agency, relating to, referring to, or concerning interactive program guide technology.[9]

83. All communications, testimony, and correspondence between TV Guide and the Department of Justice, or any other government agency, relating to, referring to, or concerning any future actions TV Guide would or would not take with respect to interactive program guide technology, including, without limitation, the '078 patent.

87. All documents relating to any discussions, communications, or negotiations with licensees or prospective licensees of interactive program guide technology regarding a covenant not to sue, non-assertion clause, grantback clause, or any other provisions that permit TV Guide and/or any TV Guide customer or licensee to practice technology not owned by TV Guide.

88. All documents referring to, relating to, or comprising communications among TV Guide's officers, directors, employees, contractors, or agents regarding a covenant not to sue, non-assertion clause, grantback clause, or any other provisions that permit TV Guide and/or any TV Guide customer or licensee to practice technology not owned by TV Guide.

TV Guide Online respectfully reserves the right to address issues associated with TMS's overbroad discovery efforts in the future, if necessary, in conjunction with a discovery motion.

---

[9] These overly broad discovery requests are not directed to the licensing of the '078 patent, or its alleged misuse. Rather, they suggest that TMS is seeking to use its patent misuse allegations as a hook to engage in the proverbial fishing expedition into an extensive discovery campaign which extends far beyond the licensening or the alleged misuse of the '078 patent.

## CONCLUSION

In view of the foregoing, TV Guide Online respectfully requests that the Court: (1) dismiss TMS's patent misuse counterclaim for failing to state a claim on which relief can be granted pursuant to Rule 12(b)(6) and (2) strike TMS's affirmative defense of patent misuse as insufficient under Rule 12(f).

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Steven J. Fineman (#4025)
Richards, Layton & Finger PA
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
cottrell@rlf.com
moyer@rlf.com
fineman@rlf.com
Attorneys for Plaintiffs TV Guide Online, Inc. and TV Guide Online, LLC

OF COUNSEL:
Robert C. Morgan
Christopher J. Harnett
Stuart W. Yothers
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Dated: March 17, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2006 I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand Delivered to the following:

Richard K. Herrmann, Esquire
Mary B. Matterer, Esquire
Morris James Hitchens & Williams
222 Delaware Avenue, 10th Floor
Wilmington, DE 19899-0951

I hereby certify that on March 17, 2006, I have sent by Federal Express, the foregoing document to the following non-registered participants:

Mark A. Pals, P.C., Esquire
Kirkland & Ellis, LLP
200 East Randolph Drive
Chicago, IL 60601

Steven J. Fineman (#4025)

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand Delivered to the following:

Richard K. Herrmann, Esquire
Mary B. Matterer, Esquire
Morris James Hitchens & Williams
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801

I hereby certify that on March 24, 2006, I have sent by Federal Express, the foregoing document to the following non-registered participants:

Mark A. Pals, P.C., Esquire
Kirkland & Ellis, LLP
200 East Randolph Drive
Chicago, IL 60601

Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
fineman@rlf.com