2002 WL 31556392                                          Page 148
USITC Inv. No. 337-TA-454

displaying the television schedule is further configured to provide an alternate
overlay including a program note with a program description for the television
program being shown on said television display.
(CX-4).

   65. Asserted claim 17 of the '204 patent, which depends from claim 14, states:
      The interactive television schedule system of claim 14 in which said means for
displaying the television schedule is further configured to provide an alternate
display including a program note with a program description for the visually
identified program. (CX-4).

   66. Asserted claim 31 of the '204 patent states:
      An interactive process for operating a television schedule, which comprises:
         displaying a television schedule on a television display as a grid of two-
dimensionally arranged, adjacent irregular cells which vary in length corresponding
to time duration of programs, with a title of a program being displayed in each of
said irregular cells, said grid having a plurality of channels listed in a first
dimension and time listed in a second dimension,
         providing a visual identification of a selected one of said irregular cells,
         moving said visual identification in the first dimension and in the second
dimension between first and second ones of said irregular cells to select a desired
one of said irregular cells corresponding to a desired program,
         tuning a programmable tuner to a select channel based on position of said
visual identification for the desired program, and displaying an overlay containing
information relating to a television program being shown on said television set
when a channel is being shown on the television set is changed.
(CX-4).

   67. Asserted claim 32 of the '204 patent, which depends from claim 31, states:
      The interactive process for operating a television schedule system of claim 31
in which the information relating to the television program includes program title,
name of television service, channel number, and time.
(CX-4).

   68. Asserted claim 33 of the '204 patent, which depends from claim 32 (and hence
depends also from claim 31), states:
      The interactive process for operating a television schedule system of claim 32
additionally comprising the step of displaying an overlay including a program note
with a program description for the television program being shown on said
television set.
(CX-4).

   69. Asserted claim 34 of the '204 patent, which depends from claim 31, states:
      The interactive process for operating a television schedule system of claim 31
additionally comprising the step of displaying a program note with a program
description for the visually identified program.
(CX-4).

C. Gemstar's Licenses

   70. {* * *}

   {* * *}
   {* * *} {* * *}
   71. {* * *}

   {* * *}

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2002 WL 31556392                                    Page 149
USITC Inv. No. 337-TA-454

{* * *}
{* * *}
72. {* * *}

{* * *}
{* * *}
73. {* * *}

{* * *}
74. {* * *}

75. {* * *}

76. {* * *}

77. {* * *}

78. {* [FN1] * *} {* * *}

{* * *}
{* * *} {* * *}
{* * *}
79. {* * *}

80. {* * *}

81. {* * *}

82. {* * *}

83. {* * *}

84. {* * *}

86. {* * *}

87. {* * *}

88. {* * *}

{* * *}
{* * *}
{* * *}

D. Person Of Ordinary Skill In the Art

89. A person of ordinary skill in the art of the '121 patent at the time of filing would have had a Bachelor's degree in electrical engineering or computer engineering, or the equivalent of that in experience, plus several years of experience in the development of computer systems and television broadcasting. (Tjaden, Tr. at 3803-04; Faillace, Tr. at 1098; Bristow, Tr. at 5076).

90. A person of ordinary skill in the art of the '268 and '204 patents as of September 10, 1990 was a person with a Bachelor's degree in computer science or a closely related field, and approximately two years of experience with user interfaces and computer programming. (Myers, Tr. at 3965-66).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

E. Reexamination Of The '121 Patent

91. Original claim 18 of the '121 patent, as it issued on Nov. 10, 1987 with fifty six claims read: (CX-1):
    18. A process for controlling the presentation of broadcast programs to a television receiver, which comprises supplying program schedule information to a data processor, supplying user program selection criteria to the data processor, combining user selection criteria, selecting those programs meeting the combined user selection criteria for viewing from the program schedule information in the data processor, storing information identifying the selected programs, and using the stored information to tune the television receiver to the selected programs. None of original claims 1 to 56 recited program titles.

92. A "Request for Reexamination" of claims 1 through 56 of the '121 patent was filed on 12/6/91 by TV Answer, Inc. of Reston Virginia (TV Answer). (RX-3008 at 10).

93. The "Request for Reexamination" was granted by the PTO on February 11, 1992. The Examiner agreed that substantial questions as to the patentability of claims 1-56 of the '121 patent as issue have been raised by "the new references" cited by TV Answer. (RX-3008 at 99, 102).

94. The PTO, in the first Office Action mailed June 8, 1992, rejected all of the claimed subject matter, under 35 U.S.C. § 102(b) and 35 U.S.C. § 103, over certain prior art. (RX-3008 at 110 to 127). Thus, in the Office Action in point 2, claims 1-6, 8-10, 12, 15, 18-22, 24-27, 31, 33, 34, 39, 42-46, 48, 49 and 52 were rejected as being anticipated by Yarbrough et al. U.S. Patent No. 4,305,101. (RX-3008 at 18, 111-118). In point 3 claims 1-8, 13, 15, 17, 18, 19, 21-28, 31-36, 38, 42-46, 51, and 56 were rejected as being anticipated by Muguet U.S. Patent No. 4,787,063, the Examiner stating, inter alia, that Muguet disclosed the "turning on and off the VCR at start and en [sic] of the program or both." (RX-3008 at 24, 118). In point 5, claims 1-12, 15, 18-22, 24- 27, 31, 33, 34, 37 and 39-56 were rejected as being unpatentable over Yarbrough et al in view of Beyers, Jr. U.S. Patent No. 4,641,205 and Reiter U.S. Patent No. 4,751,578. (RX-3008 at 119-120). In point 6, claims 1, 2, 4-8, 11- 19, 21-35, 45 and 47-56 were rejected as being unpatentable over Beyers, Jr. in view of Yarbrough et al, Kruger et al. U.S. Patent No. 4,388,179, Miller U.S. Patent No. 4,081,753 and Muguet. (RX-3008 at 120-122). In point 7, claims 1, 33 and 42 were rejected as being unpatentable over Kruger et al. in view of Kato et al. 4,031,548. (RX-3008 at 122, 123). In point 8, claims 1, 2, 18, 19, and 49 were rejected as being unpatentable over Kruger in view of Kram et al. 4,754,326. (RX-3008 at 123-124). In point 9, claims 42-53 were rejected as being unpatentable over Peers et al. U.S. Patent No. 4,689,022 in view of any of Kruger et al., Yarbrough et al or Beyers, Jr. (RX-3008 at 124). In point 10, claims 13, 17, 35 and 38 were rejected as being unpatentable over Kruger et al. in view of Miller or Muguet. (RX-3008 at 124). In point 11, claims 1, 5, 7, 8, 12-15, 21-15, 26-36, 38, 40, 41, 42, 51, 52 and 56 were rejected as being unpatentable over Kruger et al. in view of Muguet. (RX-3008 at 125-126).

95. An August 5, 1992 declaration of Patrick Young filed in the '121 reexamination proceeding recite that "the Insight product will reprogram the VCR for any schedule changes of the selected program. Also, the on-screen schedule will provide accurate and accessible schedule information for the particular cable or network broadcasting region. These advantages of the claimed invention solve the problems that VCR owners have experienced for a long time." (RX-3008 at 139).

96. In an Amendment, received by the PTO on August 13, 1992. (RX-3008 at 189-237), the applicant responded to the June 8, 1992 Office action by amending claim

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2002 WL 31556392
USITC Inv. No. 337-TA-454

12 and adding new claims 57-88 that recited, among other limitations, "a data
processor system." New independent claim 57 directed to a "television schedule
system" defined "broadcast schedule information" as "comprising broadcast schedule
times, titles and channels." Independent process claim 18 was not amended then and
did not refer to program titles. (RX-3008 at 189-204).

97. In the amendment of August 13, 1992 it was argued that channel, theme, and
prime time buffers maintain the user's selected criteria. Thus it was stated:
    The Present Invention
    The present invention is a system that integrates the on-screen presentation of
television schedule information with automatic control of television apparatus
including a television receiver and a VCR. This integration enables immediate
access to and sharing of schedule information, which includes at least program
titles, channels, and times, to facilitate many of the advantageous features
described below and which allow an unskilled user to use the system of the present
invention with ease. The system may be implemented integrally with a VCR or as a
separate unit, in which case it may communicate with the VCR by remote control. The
recitals of claim 1 include a data processor having a schedule information input
means, a user input means for selecting programs from stored schedule information,
and several devices controlled by the data processor; a television receiver, a
program recorder, and a programmable tuner. It should be understood that the data
processor system may include a plurality of microprocessors. The data processor
system contains storage for schedule information for selected programs and uses
this information to control operations of television apparatus. Actuating signals
are sent to the recorder to cause it to record a selected program, and the data
processor system may allow the television to receive a different program. The
integration of television schedule information, programmable tuner control, and VCR
record control is one of the important aspects of the present invention.
    The following features of a preferred embodiments are recited in various other
claims. A number of schedule selection criteria may be provided by the user into
the date processor system. Menus are displayed on the television screen, from which
the user may make selections with the user input device.
    Typical schedule selection criteria include accessible satellite symbols or
channel numbers, viewing times, or program themes (news, sports, comedy, etc.). The
system stores the schedule selection criteria, and the various selection criteria
may then be enabled or disabled by the user as desired. When schedule information
is presented to the user, the data processor system automatically combines all the
currently enabled schedule selection criteria and presents to the user only
schedule information meeting the requirements of the combined criteria. (RX-3008 at
206-207).

98. Applicant Young in the August 13, 1992 Amendment also stated:
    The integrated television schedule system of this invention allows for
automatic updating of program schedules, both within the stored main schedule and
within the stored record schedule list. When the schedule input means receives new
schedule information, either in the normal course of periodic schedule updating or
due to last minute rescheduling, the new information is provided to the integrated
data processor system, which in turn incorporates the new information into the
stored schedule information for both the main schedule and the record list. Updated
schedule information is thus provided as an 'on-line' resource to be automatically
incorporated into the stored schedule information.
    None of the cited references disclose a system integrating on-line television
schedule information presentation and program selection with 'hands-on' television
tuner control and/or VCR control by an integrated data process or system as
disclosed and claimed in the present invention.
(RX-3008 at 209).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

99. In the August 13, 1992 Amendment, the applicant stated: "In particular, it is noted that none of the prior art systems store the schedule information (which includes information of interest only to the user) of programs selected for recording from a schedule display; the only information stored as recording orders by the prior art systems is essentially simply numeric VCR programming information." (RX-3008 at 210).

100. In distinguishing his invention over Muguet, the applicant in the August 13, 1992 Amendment argued that Muguet used time, channel and a program identification "as opposed to" "schedule information," stating (RX-3008 at 212):

Thus, the system of Muguet simply programs the VCR with standard programming information (channel, start & stop times) and/or program ID information. As explained below, because Muguet simply downloads the programming information required by the VCR, as opposed to the schedule information including program title, verification of record requests is very tedious and complex.

101. In the amendment dated August 13, 1992, the applicant stated (RX-3008 at 216):

Independent process claims 18 and 32-38 all recite the process steps of providing schedule information to a data processor, selecting programs from the schedule information based on user inputs, storing schedule information for the selected programs, and using the stored schedule information to tune a television to receive the selected programs.

102. In the Amendment of August 13, 1992 applicant Young noted (RX-3008 at 216-217):

Independent process claims 18 and 32-38 all recite the process steps of providing schedule information to a data processor, selecting programs from the schedule information based on user inputs, storing schedule information for the selected programs, and using the stored schedule information to tune a television to receive the selected programs.

It should be noted that the term "schedule information", both as used in the present patent and as commonly understood, refers to a television schedule, i.e., a list of programs to be shown over a range of times, with at least program titles, program times, and, if for a plurality of channels, program channels. This usage is consistent with the dictionary meaning, wherein a schedule is defined as "a list of times of recurring events...; a timetable".

103. In distinguishing over prior art, the applicant in the Amendment of August 13, 1992 further stated (RX-3008 at 217):

Of particular importance in distinguishing the present claims over the disclosure of Yarbrough are the claim recitals,

'said data processor configured to select programs from the schedule information based on user inputs, storage means connected to receive the schedule information for programs selected by said data processor....' The first clause requires that the data processor select program listings from the schedule information based on user inputs, as distinguished from selecting broadcast programs based on the schedule information. The second clause requires that the selected schedule information for the programs, previously selected by user inputs, is stored. This claim language describes a situation in which a data processor acquires program schedule information/listings, the user provides a selection input to select one of the program listings from the acquired schedule information, then the computer stores the selected program schedule information so that it may be used to control a programmable tuner and/or a VCR to receive and/or record the program corresponding to the selected program schedule listing.
(Emphasis in original)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2002 WL 31556392                                                          Page 153
USITC Inv. No. 337-TA-454

104. In the Amendment of August 13, 1992, with regards to a prior art reference to Yarbrough, the applicant stated,

The user enters a recording order, specifying program ID information, which is stored. The user order is not selected by the data processor in any way. The stored user order is then used to select only current broadcast programs based on the program IDs. This is clearly different from using user inputs as claimed to select a program listing from schedule information and thereafter store the schedule information for the selected programs.
(RX-3008 at 218) (Emphasis in original).

105. In distinguishing a prior art reference to Muguet, in the August 13, 1992 Amendment (RX-3008 at 189 to 237) the applicant stated:

These recitations specify an integrated television schedule system in which a data processor system first receives schedule information, then selects particular programs from the schedule information based on user inputs, and then stores schedule information for the selected programs; finally, this stored schedule information is used for controlling a programmable tuner. The data processor thus remains in 'hands on' control of the VCR and tuner, thereby enabling easy verification of record requests, automatic updating of record schedules, and a variety of other advantageous features.
(RX-3008 at 224).

106. In the August 13, 1992 Amendment the applicant Young stated:

Muguet, in contrast [to the '121 patent application], simply programs a VCR timer with VCR programming information – channel, start/stop times, and program ID in some implementations, as opposed to storing schedule information.
(RX-3008 at 224). In the August 13, 1992 Amendment Young also stated (RX-3008 at 227):

Claims 33-55 include in their recitations the step of turning on a program recorder for a selected program, whereas in Muguet the specialized VCR must remain on continually, not just for the selected program.

107. The applicant in the Amendment of August 13, 1992 analogized the schedule information of the '121 patent to a television schedule in arguing that the '121 patent was not anticipated by the prior art:

It is again respectfully submitted that the program description/ID information of the Krüger system is not functional as the television schedule information required by all currently pending claims. Firstly, Krüger's program information is concurrently transmitted along side the program being currently broadcast, and therefore cannot be used as a forecast schedule....

                                    *  *  *

Furthermore, even if the system of Kram could be used as a television guide controller for Kruger, the present system would not result. First, it is noted systems such as Kram cannot custom assemble a new page of data combining a plurality of listings earlier received. Systems such as Kram are only capable of associating related but distinct pages of data which must be viewed one at a time. The Examiner cited a "weather", then "city" operation in Kram. This type of operation is explained in more detail from col. 24, line 52 to col. 26, line 41. If the user selects a keyword topic "weather", the system constructs an index menu including each page having the keyword "weather". Each such page will also have a particular supplemental keyword which will be displayed on the index menu. The user then chooses one of the index entries to retrieve either a single page or a series (one at a time) of relational pages. The system of Kram cannot automatically combine two selection criteria such as "weather" and "channels 2, 5, and 11" to provide the user a custom assembled list of programs meeting the combined criteria.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2002 WL 31556392
USITC Inv. No. 337-TA-454

The system of Kram could only provide a first index in response to "weather", from which the user would have to select "channel 2" to receive that screen, and then select "channel 5" to receive that screen, and then select "channel 11" to receive that screen. Furthermore, as with Kato, Kram is very specific and does not remedy the general deficiencies of Kruger. (RX-3008 at 230 to 232).

108. In an Office Action mailed on September 22, 1992, and in response to the 8/13/92 Amendment, the Examiner rejected the new claims as being broader than the original claims. The Examiner stated: "[c]laims 57-88 are rejected under 37 CFR 305 as broadening the scope of the claimed invention. It is noted that claims 57-88 fail to recite all of the limitations which are recited in any one of the patented claims and thereby enlarge the scope of the claimed invention. For example, all of these claims have been amended with respect to the original claims to recite 'a data processor system' instead of 'a data processor.' It is maintained that a 'data processor system' is broader than 'a data processor' in that it may include devices (displays, printers, light pens, etc.) which are peripheral to the 'data processor' itself." (RX-3008 at 254- 55).

109. In the Office Action of 9/22//92, the Examiner in point 6 also rejected claims 1, 5, 18, 19, 22, 24-27, 42, 43 and 45 as anticipated by or obvious over Levine U.S. Patent No. 4,963,994 alone, or, in view of Wright, U.K. published application 2.034,995 and Monteath et al. U.S. Patent No. 4,329,684. (RX-3008 at 256 to 261).

110. In point 6 of the Office Action of 9/22/62 it was also stated that the Examiner noted "with respect to claims 18, 19, 22 and 24-27 'combining user selection criterion' is maintained to read on the plurality of data needed to identify a single program to be recorded (i.e. the channel, time, etc...)." (RX-3008 at 261).

111. The Examiner, in his 9/22/92 Office Action in point 6 also stated that applicant's disclosed invention appears to operate by: a) displaying a list of TV programs (i.e., the schedule information) from which a user may select desired programs to be viewed/recorded; b) providing means by which a user can input data to the processor so that the processor can identify the programs from the list which have been selected by the user; and c) "automatically" controlling the receiving device based on the internally stored schedule information in response tot he user selections. (RX-3008 at 257, 258).

112. In point 7 of the Office Action of 9/22/92, claims 2-4, 9, 10, 12, 15, 18, 20, 21, 23, 28-30, 34, 37-41, 44, 48, 49, 52 and 58 were rejected as being unpatentable over Levine, Wright and Monteath et al as set forth in point 6. (RX-3008 at 261 to 264). In point 8, the Examiner rejected claims 6, 7, 11, 14, 31, 36, 41, 46, 47, 50, 51 and 54-56 as being unpatentable over Levine, Wright and Monteath et al. as was set forth in point 7 of the Office action in view of Muguet. (RX-3008 at 264 to 266). The Examiner in point 9 did state that claims 13, 17 and 35 avoid the act of record in that they at least recite selective actuation circuitry (alarm and recorder) which was not suggested or taught by the prior art and that claim 32 avoided the art of record in that it at least recited displaying data indicating the time remaining in a broadcast signal. It was concluded that such a display was not taught or suggested by the art of record. (RX-3008 at 266).

113. In an Amendment, responsive to the Office Action of 9/22/92 and filed on November 23, 1992 the applicant rewrote claim 36 and revised new claims 57-60, 66, 72 and 87. (RX-3008 at 269 to 286). Revised independent claim 57 to a "television schedule system" defined "broadcast schedule information" as comprising broadcast

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2002 WL 31556392                                           Page 155
USITC Inv. No. 337-TA-454

schedule times, title and channels." However independent claim 18 was not yet
amended to refer to program titles. It was also argued, in the November 23, 1992
Amendment, that "a data processor system" was not broader than "a data processor."
In particular, the applicant stated that "a data processor system must include more
elements than a data processor, and is therefore equal or narrower in scope than
simply a data processor." (RX-3008 at 275).

114. In the Amendment dated filed November 23, 1992, the applicant, on page 8,
disputed certain prior art rejections stating: "These rejections are based on a
failure to recognize the fundamental distinction between 'schedule information' as
used in, e.g., Claim 1 or 'information identifying the selected programs' as used
in, e.g., Claim 18, and the program data used in the prior art, i.e., sufficient
data such as time, day, and channel to program a VCR or television set." (RX-3008
at 276)(emphasis in original).

115. In the amendment filed November 23, 1992, the applicant, at page 8, argued
"Levine discloses a system which can prompt the user through the steps of
programming the VCR, and which in some embodiments can display schedule information
on the television screen" (RX-3008 at 276).

116. In the Amendment filed November 23, 1992, applicant Young again stated that
storing schedule information for selected programs distinguished the invention over
the prior art:
    These rejections are based on a failure to recognize the fundamental
distinction between "schedule information" as used in, e.g., Claim 1 or
"information identifying the selected programs" as used in, e.g. Claim 18, and the
program data used in the prior art, i.e., sufficient data such as time, day and
channel to program a VCR or television set.

                                    * * *

    "Additionally, Applicant notes that Levine stores only conventional
programming data, not schedule information as presently claimed. As discussed in
the previous Amendment, the storage of schedule information as opposed to mere
programming data significantly enhances the user's ability to verify and later
identify the selected programs, and also enables the data processor to perform
additional functions, such as linking and tracking programs, i.e., allowing the
user to review a list of programs selected for future viewing or taping by
presenting a calendar as disclosed, rather than simple programming data for
controlling a video recorder. Some of the Examiner's current remarks appear to
recognize the distinction between these two types of information, but the relevance
of this distinction to the analysis of the claim language was not explicitly
discussed. Applicant respectfully submits that this distinction is an important one
separating the claimed invention from the prior art, and is sufficient to
distinguish the claimed invention from the prior art."
(RX-3008 at 278) (Emphasis in original).

117. In the November 23, 1992 Amendment, the applicant referred to claim 18 as
storing "schedule information" for selected programs. The applicant stated (RX-3008
at 279):
    Process Claim 18 contains a similar limitation which distinguishes over the
prior art. Regarding the claimed 'combining of user selection criteria,' the
Examiner has asserted that this reads on the plurality of data needed to identify a
single program to be recorded (channel, time, etc.). This trivializing
simplification, however, ignores the plain meaning and interpretation of the
claims, which interpretation is also supported by the specification. Of course,
programming information such as channel and time might be used as selection

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

criteria, but, such as is recited in claim 18, the selection criteria must then be combined, the combined criteria must be used to select programs from schedule information, and then the schedule information for the selected program is stored. These steps are clearly not met by the simple input and storage of programming data for a single program.
(RX-3008 at 279) (Emphasis in original).

   118. With regards to prior art applicant Young in the November 23, a Amendment stated:
        Claim 18 further requires "storing information identifying the selected programs." It is respectfully submitted that data, channel and time data do not sufficiently identify the selected programs. Date, channel and time data identify time slots and channels without any identification of programs broadcast in the time slots on the channels. Again, the distinction between identifying selected programs and identifying only time slots and channels is critical for achieving many benefits" tracking programs that have been selected with the system, i.e., allowing the user to review a list of programs selected for future viewing or taping by presenting identifying information on the program, rather than just an indication of when recordings will be made; linking related programs with the schedule information; and, automatically updating the stored schedule information for the selected program when the schedule time for a previously selected program is changed, as described in the '121 patent. Because the prior art does not combine user selection criteria, use such combined user selection criteria to select programs meeting the combined user selection criteria in the data processor, or store information identifying the selected programs, the Levine, Wright and Monteath prior art fails to teach or suggest the subject matter of Claim 18 or its dependent claims 19-31.
        Similarly, independent Claim 33 requires 'using the user selection criteria to select programs for viewing from the schedule information in the data processor,' and 'storing information identifying the selected programs.' In Levine, Wright and Monteath et al., the selection is made by user entry of date, channel and time, without using the schedule information already in the data processor and the user entered date, channel and time information does not identify the selected programs. These limitations are also present in independent claims 34 and 36-38.
(RX-3008 at 280-81) (Emphasis in original).

   119. On December 23, 1992 and December 29, 1992, the applicant's attorney conducted several telephonic interviews with the Examiner in which broadening matter was discussed. (RX-3008 at 288).

   120. The Reexamination Interview Summary Form, mailed on January 5, 1993 in paper # 15, and summarizing the December 23, 1992 Examiner interview stated, inter alia, that "[t]he examiner indicated that he believed the language of the claims to be broader than the scope of applicant's arguments filed 11/23/92 (see paper #15)." (RX-3008 at 288).

   121. In a Final Office Action, mailed January 5, 1993, the Examiner rejected the new claims 57-88 as broadening the scope of the claimed invention. In discussing this rejection on pages 2-4 of the Office Action, the Examiner gave examples of how the new claims are broadening. Thus it was stated (RX-3008 at 290-93):
     In view of applicant's amendment filed 11/23/92, the following is hereby noted to exemplify how the claims have been broadened:
     I. Claim 57 does not recite:
     a) the supplying of the "actuating signal" recited in original claim 1; b) the plurality of user selection menus recited in original claim 12; c) the "actuating signal" in original claim; d) the "actuating signal" in original claim 14; e) the "actuating signal" in original claim 15; f) the "linking information" in original

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2002 WL 31556392                                                    Page 157
USITC Inv. No. 337-TA-454

claim 16; g) the "alarm" in original claim 17; h) the "combining of user selection
criteria" in original claim 18; i) the "time remaining" message in original claim
32; j) the "television receiver" recited in original claim 37; k) the "terminating
[of] recording" recited in original claim 34; l) the "turning on [of] the recording
device" recited in original claim 35; m) the "remote controller" recited in
original claim 36; n) the "linking information" recited in original claim 37; o)
the "alarm" recited in original claim 38; p) the "user selection menu" recited in
original claim 39; q) the "television receiver" recited in original claim 42; r)
the "remote controller" recited in original claim 51; s) the "recording device"
recited in original claim 52; f) the "linking information" recited in original
claim 53; and g) the storing means connected to "receive the schedule information
for programs selected by said processor" as in original claim 54. [Emphasis in
original]
(RX-3008 at 290-93).

    122. In the Final Office Action, mailed January 5, 1993, the Examiner in point 2
with respect to claims 65, 67, 72, 76, 82, 84 and 87, noted that those claims
differ from the claims as originally filed in that they at least recited "a data
processing.. system" instead of "a data processor;" that "applicant argued that a
'data processing system' must include more elements than a 'data processor' and
therefore the limitation is more limiting." (Emphasis in original). The Examiner
then stated specifically that he
    does not dispute applicant's position that a 'processor system' must include
more elements, but, he points out that the recited connections to and processing
performed by the processing system (as recited in these new claims) does not
require connections to and processing performed by the processor itself (as recited
in the original claims). Such processing/connections could be directed to said
'more elements.' Being such, these claims are clearly broader in scope than those
originally filed.
(RX-3008 at 292) (Emphasis in original).

    123. The Examiner in the Office Action of January 5, 1993 in point 5 rejecting
again claims 1, 5, 18, 19, 22, 24-27, 33, 42, 43 and 45 as being anticipated by
Levine alone as set forth in the 9/22/92 office action found that the claim
language of the original claims of the '121 patent failed to include language that
would require that the '121 patent's claim's data processor select programs from
previously provided schedule information. For example the Examiner in, giving a
reason why pending claims were rejected as anticipated by Levine, stated (RX-3008
at 293-295):
    1) The examiner notes that applicant does not appear to dispute the receipt and
display of "schedule information" in Levine [see lines 1-4 in the last paragraph on
page 8 of the arguments filed 11/23/92]. Nor does applicant appear to dispute that
a user may enter codes into the system of Levine, wherein said codes are obtained
from the displayed "schedule information", such that the entered information
directs the processor to control a video recorder to receive and record the
selected programs [see the paragraph which starts on page 8 and extends to page 9
in the arguments filed 11/23/92].
    As disclosed, applicant's claimed invention also displays schedule information
from which a user also selects the desired program to be recorded. The user then
also enters data into the system which directs the processor to control a video
recorder to receive and record the selected programs. Applicant's disclosed system
differs from Levine in that the user inputs of applicant are used by the processor
to actually access the stored information while the user inputs in Levine actually
represent the stored information. The examiner maintains that the recitation that
the processor is "configured to select programs from the schedule information based
on user inputs" does not distinguish two systems. Specifically, the processors of
both systems are directed to record selected programs based on user inputs [see

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2002 WL 31556392                                              Page 158
USITC Inv. No. 337-TA-454

applicant's arguments on page 9 and the first 7 lines of page 10].
      2) In the first full paragraph on page 10 of the argument's [sic], applicant
argues that Levine stores only "conventional programming data" and not "schedule
information" as claimed. This argument seems only to be directed to terminology
(i.e. labels) and appears to be inconsistent with applicant's discussion in the
last paragraph on page 8 in which applicant has acknowledged thestored [sic] data
to be schedule information [see lines 52-59 in column 2 of Levine].
(RX-3008 at 293-95). (Emphasis in original)."

   124. The Examiner in point 5 of the Office Action of 1/5/93 further gave another
reason why pending claims were anticipated by Levine in stating:
      2) In the first full paragraph on page 10 of the argument's [sic], applicant
argues that Levine stores only "conventional programming data" and not "schedule
information" as claimed. The argument seems only to be directed to terminology
(i.e. labels) and appears to be inconsistent with applicant's discussion in the
last paragraph on page 8 in which applicant has acknowledge thestored data to be
schedule information [see lines 52-59 in column 2 of Levine.]
(RX-3008 at 294, 295).

   125. The Examiner in point 5 of the Office Action of 1/5/93 gave another reason
why pending claims were anticipated by Levine in stating:
      3) The examiner points out that neither the processor of applicant's disclosed
system nor the processor of Levine are intelligent devices. That is, the only way
either processor "selects" programs to be recorded is that the user provides inputs
which instruct the processors which programs are to be selected. Although the
examiner acknowledges that the two processors operate differently to provide the
selections, the examiner maintains that the limitation that the processor is
"configured to select programs from the schedule information based on user inputs"
does not define such differences.
(RX-3008 at 295) (Emphasis added).

   126. The Examiner also in point 5 of the Office Action of 1/5/93 gave two other
reasons why pending claims were anticipated by Levine in stating:
      4) With respect to claim 18 (see arguments in the first full paragraph on page
11 of the amendment filed 11/23/92), the examiner maintains that the system
described by Levine selects "those programs" for recording based on a plurality of
criteria input by the user which was derived from stored schedule information
displayed on the receiver. Such is maintained to meet the limitations of claim 18
when the "data processor" is consider to include the means for storing the incoming
schedule information and the controller (26).
      5) With respect to claim 33 (see arguments which start on the bottom of page 12
and extend to page 13), the examiner refers applicant back to the discussion of
claim 18 above. Additionally, the examiner points out that the system of Levine
must include means for storing the user input criteria for the system to be able to
know/remember the selected programs which are to be recorded at some later date.
Further, it is noted that information such as date, time, and channel are used by
the processor in Levine to identify the programs to be recorded (the use of such
identifiers is common in most TV listings).
(RX-3008 at 295 - 96) (Emphasis added).

   127. The Examiner in his 1/5/93 Office action summarized all the reasons for
anticipation by Levine in the following:
      6) The examiner does not dispute that applicant's disclosed system operates
differently than that disclosed by Levine. It is maintained, however, that such
differences are not defined in the claims. Applicant's argument's simply appear to
be an attempt to specifically define terminology/labels used in the claims so as to
incorporate portions of the written description. Such arguments are not deemed to

be persuasive. (RX-3008 at 296) (Emphasis added)

128. The Examiner, in the Office Action of 1/5/93, stated that claim 32 avoids the art of record "as was set forth in paragraph 9 of paper ¶ 12 [viz., the Office Action of 9/22/92]" (RX-3008 at 301).

129. In a Proposed Amendment, attached to the Reexamination Interview Summary Form concerning a telephonic interview on January 6, 1993, the language "electronic memory associated with a data processor" was added to process claims 18, 33, 34, 36, and 38, and the language "storage means comprising an electronic memory" was added to system claims 1, 12, 14, 15, 39, 42, 51, 52, and 54. (RX-3008 at 364-70) (Emphasis added). In claim 18, on the face of this proposed amendment, the language "associated with" is bracketed, and replaced with the word "in." (RX-3008 at 366). In the proposed amendment, proposed claim 18 did not refer to titles of programs: (RX-3008 at 366). However the last proposed claim stated that "said data processor identifies broadcast schedule times, titles and channels." (RX-3008 at 370).

130. On January 21, 1993, the applicant faxed to Examiner a Proposed Amendment (RX-3008 at 373, 391) incorporating the change that appears on the face of the Proposed Amendment attached to the January 6, 1993 Reexamination Interview Summary Form. However in claim 18, "electronic memory associated with" a data processor which was found in the proposed amendment attached to the reexamination Interview Summary Form concerning the telephonic interview on January 6, 1993 was amended to read "electronic memory in" a data processor. (RX-3008 at 377). In the amendment Young stated (RX-3008 at 388-89):
During the interview on January 5, 1993, clarifying amendments to claim 18 and others were presented for the Examiner's consideration. The amendments to claim 18 clarify that the schedule information is provided to an electronic memory in the data processor, the data processor combines user selection criteria, and the programs meeting the combined criteria are then selected from the schedule information in the memory. During the interview on January 5, the Examiner agreed to consider the proposed amendments to claim 18, and on January 6 confirmed that the proposed amendments were considered to avoid the prior art.
Proposed claim 18 yet did not include program titles. However proposed independent claim 57 to a "television schedule system" did state "said stored broadcast schedule information identifying a broadcast schedule time and channel and a program title for each said selected program." (RX-3008 at 377- 86).

131. An Amendment After Final, date-stamped at the PTO on January 29, 1993, (RX-3008 at 393 - 410) was filed in response to the Office Acton on 1/5/93, to an in-person interview on Jan. 5, 1993 (RX-3008 at 305), and a telephone interview on Jan. 6, 1993. In claim 1, handwritten brackets were placed around "comprising an electronic memory" in the language "storage means comprising an electronic memory." (RX-3008 at 394).

132. In the amendment of 1/29/93 (RX-3008 at 393 - 410) applicant rewrote claims 1, 4, 12, 14-15, 18, 21, 29, 33-34, 36-39, 42, 51-52, 54 and 57-64. In the Amendment, independent process claim 18 did not yet include titles of programs. Rewritten claim 57 to a television schedule system did include the phrase "said stored broadcast schedule information identifying a broadcast schedule time and channel and a program title for each said related program."

133. In the Amendment After Final, date-stamped at the PTO on January 29, 1993, the applicant surrendered the "data processor system" language, and instead amended independent process claims 18, 33, 34, 36 and 38 to recite the step of "supplying program schedule information to electronic memory in a data processor, the data processor combining user selection criteria, selecting those programs meeting the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2002 WL 31556392                                                    Page 160
USITC Inv. No. 337-TA-454

combined user selection criteria for viewing from the program schedule information
in said electronic memory in" the data processor, storing information identifying
the selected programs, and using the stored information to tune the television
receiver to the selected programs. (RX-3008 at 397). (language added in this
amendment is underlined). (RX-3008 at 394-407).

134. On February 11, 1993, the applicant's attorney conducted a telephone
interview with the Examiner, in which the Examiner "questioned" the support for the
new "electronic memory" recitations. (RX-3008 at 416).

134A. In a Proposed Supplemental Amendment After Final, faxed to the Examiner on
February 16, 1993. (RX-3008 at 418 to 435), the applicant deleted the language
"comprising an electronic memory" from claim 1. (RX-3008 at 419). Young did not add
any claim language in this amendment to the independent process claim 18 to state
that the stored information identifies program times, channels and program titles.
However in the proposed amendment, independent claim 57 to a "television schedule
system" did include the language "said stored broadcast schedule information
identifying a broadcast schedule time and channel and a program title for each said
selected program." (RX-3008 at 422- 431).

135. In a "Reexamination Interview Summary Form," mailed February 17, 1993, the
Examiner "questioned" whether the specification provided support/antecedent basis
for the retrieving of schedule information from an electronic memory, selecting
data therefrom, and restoring the selected data. (RX-3008 at 416).

136. Telephonic interviews were conducted on each of January 6, 1993  (RX-3008 at
363), January 28, 1993 (RX-3008 at 372) and February 11, 1993 (RX-3008 at 416). In
the interview summary forms, there is no indication that applicant Young proposed
any claim language explicitly stating that the stored information identifies
program times, channels and program titles.

137. In a Reexamination Advisory Action, mailed February 17, 1993, the Examiner
considered, but refused to enter, the Amendment After Final maintaining the
rejections from the previous Action. The Examiner extended the response period for
three months. (RX-3008 at 437).

138. In the Reexmination Advisory Action of February 17, 1993 regarding the
applicant's proposal to add the "electronic memory" language, the Examiner noted
that:
    [a]pplicant agreed to file a supplemental amendment which would cancel the
added limitations in the amended claims directed to the storage and retrieval of
schedule information, to/from an electronic memory, in view of questions raised by
the examiner as to the lack of support in the specification for such limitations
and in view that applicant believed that such limitations were no longer needed."
(RX-3008 at 438).

139. After the Reexamination Advisory Action of 2/17/93 was mailed, and prior to
its receipt, the applicant faxed on February 23, 1993 a Proposed Supplemental
Amendment After Final (RX-3008 at 441 to 463), adding "electronic memory" language
and including the same language in new process claims 67 and 68. (RX-3008 at 442-
58). For example new claims 67 and 68 read:
    67. A process for controlling the presentation of broadcast programs to a
television receiver, which comprises supplying program schedule information to
electronic memory in a data processor, supplying independent user chosen program
selection criteria to the data processor, the data processor combining said user
selection criteria, selecting those programs meeting the combined user selection
criteria for viewing from the program schedule information in said electronic

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2002 WL 31556392                                                    Page 161
USITC Inv. No. 337-TA-454

memory in the data processor, storing information identifying the selected
programs, and using the stored information to tune the television receiver to the
selected programs.
    68. A process for controlling the presentation of broadcast programs to a
television receiver, which comprises supplying program schedule information to
electronic memory in a data processor, supplying user program selection criteria to
the data processor, the data processor combining said user selection criteria,
selecting those programs meeting the combined user selection criteria for viewing
from the program schedule information in said electronic memory in the data
processor, storing information identifying the selected program, and using the
stored information to tune the television receiver to the selected programs,
wherein a group of said selection criteria are combined by the data processor as
logical alternatives so that the combination of said group of selection criteria is
satisfied whenever any one of said selection criteria of said group is met.
(Emphasis added). In this proposed supplemental amendment after final no proposal
was made to amend the specification. Existing claims were proposed to be amended
which included adding the language, "said stored information identifying broadcast
schedule times, channels, and program titles" to claim 18. (RX-3008 at 445-46).

    140. In the Proposed Supplemental Amendment After Final, with a fax date of
2/23/93 (RX 3008 at 441 - 63), the applicant argued that the specification
"inherently" and "implicitly" supports the "electronic memory" limitations,
stating:
    A. Combining User Selection Criteria: A group of claims have been amended to
clarify that the schedule information is provided to a storage means (in some
claims recited as an electronic memory in the data processor), the data processor
combines user selection criteria, and programs meeting the combined criteria are
then selected from the schedule information in the storage means. Support for these
limitations can be found in a number of locations in the patent, including at
column 8, lines 23 et seq., and at column 17, lines 33 et seq. It is believed
inherent and implicit that the list operations described in column 17 are performed
on information in an electronic memory.
(RX-3008 at 459).

    141. The applicant, in the Proposed Supplemental Amendment After Final (RX-3008
at 441-63) faxed on February 23, 1993, proposed amending certain claims "to further
clarify that the schedule information stored for the selected programs identifies
not only program channels and times, but also program titles." Thus it was stated:
    I. Clarifying Schedule Information: Independent claims 1, 12, 14-15, 18, 33-
34, 36-38 and 54 have been amended, in addition to the earlier clarifications
agreed upon by the Examiner, to further clarify that the schedule information
stored for the selected programs identifies not only program channels and times,
but also program titles. New claim 57 also contains this recitation. As previously
noted, prior art systems simply program the VCR with the channels and times for
selected programs; information identifying the title was not stored.

                                    * * *

    Independent claims 65 and 68 [which became claims 64 and 67] now require that
at least some of the selection criteria are combined as alternatives. This is
supported, for example, at column 14, in the discussion of the Channel Restriction
selection criteria. Multiple channels may be specified, and the combined of
selection criteria by the present invention versus the 'combining' of paging
commands or other selections by the cited prior art systems.
(RX-3008 at 459-60).

    142. Applicant in the Proposed Supplemental Amendment After FINAL, faxed on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2002 WL 31556392                                                        Page 162
USITC Inv. No. 337-TA-454

February 23, 1993, represented

A. Combining User Selection Criteria:

    A group of claims have been amended to clarify that the schedule information is
provided to a storage means (in some claims recited as an electronic memory in the
data processor), the data processor combines user selection criteria, and programs
meeting the combined criteria are then selected from the schedule information in
the storage means. Support of these limitations can be found in a number of
locations in the patent, including at column 8, lines 23 et. seq., and at column
17, lines 33 et seq. It is believed inherent and implicit that the list operations
described in column 17 are performed on information in an electronic memory.
(RX-3008 at 459).

    143. The Examiner in a Reexamination Interview Summary Form, in reference to
interviews that took place on February 19 and 24, stated that he had "expressed
concerns that the term 'electronic memory' and the recitations that the schedule
data is stored and retrieved from such a memory did not appear to have clear
support in the disclosure." (RX-3008 at 465).

    144. In a February 26, 1993 Supplemental Amendment After Final (RX-3008 at 467-
496), Young attempted to overcome the Examiner's rejections with three amendments
to the '121 patent's specification: (1) changing from "A memory" at column 7, line
47 to "An electronic memory;" (2) amending column 17, line 38 to specify that the
"program listing" is stored in "program list buffer 303;" and (3) amending column
17, line 49 to read, "Program list buffer 303, screen buffer 353, and the other
buffers discussed above are located within an electronic memory coupled to the data
processor, such as electronic memory 111." (RX-3008 at 468). Young explained the
reason for these proposed amendments to the specification, including attempting to
explain why the claimed "electronic memory" was "inherent" and "implicit" in the
original specification, as follows:
    As suggested by the Examiner, various minor amendments have been made to the
specification to make explicit various aspects of the invention that were implicit
but not totally explicit in the original specification. At column 7, language was
added to make explicit the fact that the memory employed by the data processor is
an electronic memory. This is believed not to be new matter because it is inherent
and implicit in the original specification that in the disclosed embodiment the
memory used by the data processor is electronic (as opposed to human, for example).
    In several places throughout columns 15 and 16, clarifications were made so the
reminder calendar is consistently referred to as the "reminder calendar schedule."
This is believed not to be new matter because in this section of the specification
the term "schedule" was alternatively used to refer to the reminder calendar. The
amendments simply make a consistent usage that was inherent and implicit in the
original.
    In column 17 language was added to make explicit the facts that program listing
325 is stored in program list buffer 303, and that the various buffers are within
electronic memory coupled to the data processor. This is believed not to be new
matter because at column 16, lines 45 et. seq., it is stated that the CPU stores
the program data in program list buffer 303, and because it is inherent and
implicit in the original specification that in the disclosed embodiment the various
buffers manipulated by the data processor must be in the electronic memory, or the
data processor could not do the recited functions.
(RX-3008 at 486-87).

    145. Applicant, in the February 26, 1993 Supplement Amendment After Final, added
the following limitation to claim 42 (RX-3008 at 477-478):
    wherein said data processor is configured for a selectable display mode, said

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

data processor being configured to present an initial display of said schedule
information in said storage means upon selection of said display mode, said
initial display automatically comprising schedule information for at least one of a
current time period and a current channel of said programmable tuner.

146. In the February 26, 1993 Supplemental Amendment After Final (RX 3008 at 467-
96), the applicant added new independent process claims that include the step of
"supplying program schedule information to electronic memory in a data processor."
Also certain claims were amended. The amendments included adding to claim 18 the
phrase "said stored information identifying broadcast schedule times, channels, and
program titles." (RX-3008 at 473, 485-86).

147. In the Supplemental Amendment After Final, stamped as received on February
26, 1993 by Group 260 of the PTO, the applicant proposed amendments to the
specification pertaining to memory or storage which included the following: the
applicant requested that "[i]n col. 7, line 47, please replace 'A memory' with --An
electronic memory --;" the applicant requested that "[i]n col. 17, line 38, after
'program listing 352' and before 'is made' please insert --, stored in program list
buffer 303,--;" and the applicant requested that "[i]n col. 17, line 49, after "TV."
please insert -- Program list buffer 303, screen buffer 353, and the other buffers
discussed above are located within an electronic memory coupled to the data
processor, such as electronic memory 111.--" (RX-3008 at 468).

148. Consistent with the specification, the '121 patent file history specifically
notes that the channel, theme, and prime time buffers maintain the user's selected
criteria. (RX-3008 at 489). Thus in the February 26, 1993 Supplemental Amendment
After Final, the applicant stated: "The user selection criteria may be entered and
activated independently under different categories (theme, channel, prime time) and
are maintained by the data processor whether currently activated or not." (RX-3008
at 489). (Emphasis in original) "Maintained" means kept in the buffers. (Rhyne, Tr.
at 3777).

149. Applicant, in the February 26, 1993 Supplemental Amendment, represented
(RX-3008 at 490):

Automatically Focusing the Display
Also discussed were clarifications of the preselection of schedule information
for display, directed to automatically focusing a display of schedule information
according to a current time or a current channel. The Examiner has confirmed that
the claims reciting this selective display are believed to be allowable. Support
for this selective display can found [sic], for example, at column 10, lines 12-65.
Lines 50-59 are an example display for preferred embodiment. Lines 45-46 explain
that the listing starts at the nearest previous half-hour. Lines 46-47 explain that
a pointer (not shown in the example screen) will be positioned at the last
selection made (and thus indicate the current channel). Lines 60 to 62 explain that
the screen also includes 3 lines of status information, which at lines 56-59 is
shown to include for the currently selected channel the remaining time and program
title schedule information. Similar disclosure also appears at column 1, lines 33-
37.

150. In the February 26, 1993 Supplemental Amendment, applicant also stated (RX-
3008 at 488-90):
Several of the present claims recite a process in which the user enters user
program selection criteria, and the user enters user program selection criteria,
and the data processor combines the program selection criteria, searches through
the stored selection criteria, searches through the stored schedule information,
and creates and stores a display list of program listings that meet the combined

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

criteria. This is disclosed, for example, at col. 17 lines 33 et seq. The user may
then make program selection choices (which the Examiner has characterized as
further program selection criteria) from this display. The data processor then
stores information fo these program sections, including information identifying
program titles, in a reminder calender list.

        Several claims recite the data processor combining a plurality of user
selection criteria other than the program choices. This is different from the
scenario that the Examiner has proposed would be inherent in Levine and similar
art, namely that the user could enter a date as a first selection criteria, then be
presented with a page of program listings, and then enter a program choice as a
second selection criteria to be "combined" with the date selection criteria. As
amended, several claims (such as claim 1) require the data processor combine a
plurality of selection criteria in addition to the program choice. The Examiner's
proposed data entry does not meet the requirement of combined selection criteria
even if entered as a series of page commands. Each page command simply establishes
a new requirement that supersedes and replaces the previous requirement rather than
being combined with it.

        In response to earlier arguments that the claims require schedule information
including program title to be stored for selected programs, the Examiner only
argued that the term "schedule information" was not defined so as to require
program title. Several claims have been amended to specify the storage of program
title for the selected programs and are thus believed to be allowable. As
previously noted, prior art systems simply program the VCR with the channels and
times for selected programs; information identifying the title was not stored.

        The user selection criteria may be entered and activated independently under
different categories (theme, channel, prime time) and are maintained by the data
processor whether currently activated or not. This is disclosed, for example, from
column 12 line 12 to column 15 line 17 (wherein it is stated that buttons can be
pressed to independently activate the THEME, PRIME-TIME, and CHANNEL selection
criteria) and from column 18 line 11 to column 20 line 38. Furthermore, the
selection criteria can be combined as alternatives (in a logical OR fashion), such
as a list of acceptable channels or a list of acceptable themes. This is far
different from even the cited teletext art, where search criteria are entered and
combined in a dependent, hierarchical fashion. At each stage in the cited teletext
art, the available search choices are determined by and dependent upon the previous
choices made. Furthermore, they are only combined in a logical AND fashion.

        Also the prior art does not allow complex entries (such as theme or channel
lists) to be deactivated yet saved in memory.

    151. Applicant, in the February 26, 1993 Amendment (RX-3008 at 467-96),
specifically asserted as to claims 18, 32, 33, 36, 42, 51, 54, 57 and 66 (RX-3008
at 492-95):

Claim 18

    This claim now requires that the data processor combine a plurality of
independent user program selection criteria in addition to a program choice, and
that it store information identifying titles for selected programs.

Claim 32

    This claim has been confirmed as patentable and recites the display of time
remaining for a program being broadcast.

Claim 33

    This claim now recites that the data processor automatically focuses the

        © 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

program listing display according to at least one of a current time or channel.

* * *

Claim 36

This claim now requires that the data processor combine a plurality of independent user program selection criteria in addition to a program choice, and that it store information identifying titles for selected programs.

* * *

Claim 42

This claim now recites the focusing of an initial display of schedule information according to at least one of a current time period or channel.

Claim 51

This claim now recites the focusing of an initial display of schedule information according to at least one of a current time period or channel.

* * *

Claim 54

This claim now recites the presentation of entering a plurality user selection criteria to be combined, allow user program selection from a menu of programs meeting the combined selection criteria, and storing a reminder calendar including titles for the chosen programs.

Claim 57

This claim recites the focusing of an initial display of schedule information according to at least one of a current time period or channel, and stores information identifying titles for selected programs.

* * *

Claim 66

This claim requires that the data processor combine a plurality of independent user program selection criteria in addition to a program choice.

152. In the Office Action of March 26, 1993, the Examiner objected to the proposed amendment as "new matter" and stated that "[a]pplicant is required to cancel the new matter in the response to this Office Action." (RX-3008 at 507- 08).

153. The Examiner in an Office Action of March 26, 1993 stated in part (RX-3008 at 507):
2. The amendment filed 2/26/93 is objected to under 35 U.S.C. § 132 because it introduces new matter into the specification. 35 U.S.C. § 132 states that no amendment shall introduce new matter into the disclosure of the invention. The added material which is not supported by the original disclosure is as follows:
1) In column 7, line 47, "A memory" has been changed to -- an electronic memory--. This amendment is considered to introduce new matter because: a) it is not clear from the disclosure as originally filed what kind of memories are

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

included or excluded by the term "electronic memories" (i.e. RAM, disc, tape,
storage tubes, etc...), and b) it appears to suggest that said memory is now
intended to be limited only to memories of some certain type (i.e. electronic)
while the disclosure as originally filed appears to have recited a generic memory
(i.e. inclusive of all types).
      2) In column 17, line 49 has been amended to recite that the program list
buffer 303, screen buffer 353, and other discussed buffers are located within an
electronic memory coupled to the data processor, such as electronic memory 111.
This amendment is considered to add new matter because: a) it [The file wrapper
does not finish the sentence]

      Applicant is required to cancel the new matter in response to the Office action.

      154. In the same Office Action dated March 26, 1993, in which the Examiner
rejected the applicant's proposed amendments to column 7, line 47 and column 17,
line 49 of the specification, the Examiner also rejected, under 35 U.S.C. § 112, ¶
1, claims 1-12, 14, 15, 18-31, 33, 34, 36, 38, 54-56, and 64-67 on the basis that
the claims recited that the schedule information is stored in an electronic memory.
(RX-3008 at 508). The Examiner did state that if the claims were amended to
overcome the § 112, ¶ 1 problems, they would be found patentable. (RX-3008 at
509).

      155. In the Office Action dated March 26, 1993, the Examiner rejected the
applicant's proposed amendment at column 17, line 49, which was proposed in a
February 26, 1993 Supplemental Amendment After Final, and which stated that "the
program list buffer 303, screen buffer 353, and other discussed buffers are located
within an electronic memory coupled to the data processor, such as electronic
memory 111." In the same Office Action, the Examiner rejected, under § 112 1,
claims 1-12, 14, 15, 18-31, 33, 34, 36, 38, 54-56, and 64- 67 on the basis that the
claims recited that the schedule information is stored in an "electronic memory,"
and that "[s]uch recitations do not appear to be supported by the specification as
originally filed [see paragraph 1 of this Office Action]." (Bracketed material in
original). Said paragraph 1 read:
      1) In column 7, line 47, "A memory" has been changed to -an electronic
memory-. This amendment is considered to introduce new matter because: a) it is not
clear from the disclosure as originally filed what kind of memories are included or
excluded by the term "electronic memories" (i.e. RAM, disc, tape, storage tubes,
etc...); and b) it appears to suggest that said memory is how intended to be
limited only to memories of some certain type (i.e. electronic) while the
disclosure as originally filed appears to have recited a generic memory (i.e.
inclusive of all types).
(RX-3008 at 507-508). The Examiner also stated that claims 42 "as amended avoid the
art of record and [is] patentable." The Examiner further stated that if the claims
were amended to overcome the 35 U.S.C. § 112 problems, they would be found
patentable. (RX-3008 at 509).

      156. Because the Examiner rejected the proposed claim language "lectronic
memory," the applicant in an amendment dated April 6, 1993 (Amendment E),
substituted the term "electronic memory" in the claims (including independent
process claims 18, 33, 34, 36, 38, 66 and 67) with "storage means" (RX-3008 at 512-
34) and amended the sixth full paragraph of column 17 ln. 38 to include the
language of its sentence as follows: "[p]rogram list buffer 303, screen buffer 353,
and the other buffers discussed above are located within a data storage device
coupled to the data processor." (RX-3008 at 513-514). The remainder of the
paragraph was restored to the language which was found when the '121 patent issued
on November 10, 1987. Old claim 18 had read in part: "selecting those programs
meeting the combined user selection criteria for viewing from the program schedule

2002 WL 31556392                                          Page 167
USITC Inv. No. 337-TA-454

information is said electronic memory in the data processor" (RX 3008 at 473). New claim 18 now read in part:
    selecting those programs meeting the combined user selection criteria for viewing from the program schedule information in said storage means in the data processor
(RX-3008 at 520).

    157. Applicant in amendment dated April 6, 1993 explained:
    Applicant has amended the specification as requested by the Examiner, and has amended the claims to no longer refer to an electronic memory. It is respectfully submitted that the original specification fully supports the claims and that the objection to the specification and the § 112 rejection of claims is therefore overcome.
(RX-3008 at 534).

    158. In a Reexamination Interview Summary Form regarding a telephonic interview held on April 19, 1993, the Examiner stated that "[a]pplicant agreed to change the last two lines in the sixth full paragraph of column 17 so as to avoid the issue of new matter" The last two lines was in reference to the following: "[p]rogram list buffer 303, screen buffer 353, and the other buffers discussed above are located within a data storage device coupled to the data processor." (RX-3008 at 536).

    159. The following day, the applicant submitted a Supplemental Amendment dated April 20, 1993 (amendment F) (RX-3008 at 538-42), that amended the ' 121 patent's specification to set forth a definition of the term "data storage means," and deleting the language indicating that the storage means was "coupled" to the data processor so that the sixth full paragraph at col. 17 reads:
    A search of the program listing 352, stored in program list buffer 303, is made. The search is dependent on the status of the channel buffer, the theme buffer, the prime time buffer, and the direction of the search. If the page 356 is up, the search direction is forward starting from the list pointer. If the page is down 357, the search direction will be backward 358 from the current list pointer. When the search satisfies the above criteria, the program listing from program list buffer 303 is placed into the screen buffer 353. The search continues until the screen buffer is full 354 in which case the search is terminated. The status line information is passed to the screen buffer and displayed 355 by the TV. Program list buffer 303, screen buffer 353, and the other buffers discussed above comprise a data storage means.
(RX-3008 at 540-41; CX-1, RX-3001, 17:38-49; RX-3002 at 2:38-52 (underlined language amended by April 20, 1993 Supplemental Amendment)).

    160. The applicant in the April 20, 1993 amendment explained that this final amendment was made at the Examiner's request: "During the telephone conversation of April 19, 1993, Applicant agreed to correct claim 29 to no longer refer to an electronic memory, agreed to present the earlier amendments to the specification in the format preferred for Reexaminations, and agreed to change the amendment to column 17 of the specification to simply refer to a data storage means. The Examiner indicated that these changes were believed to place the claims in condition for allowance. (RX-3008 at 541-42).

    161. The applicant overcame the Examiner's rejection by amending the specification to state that the buffers "comprise a data storage means" and by amending the claim to describe a "storage means in a data processor." (CX-1 (Re-examination certificate), col. 2 lns. 50-52 and col. 5, ln. 17).

    162. Column 2, lines 50-52 of the Re-examination certificate, contain an amendment to the patent's specification stating that that "[p]rogram list buffer

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2002 WL 31556392                                      Page 168
USITC Inv. No. 337-TA-454

303, screen buffer 353, and the other buffers discussed above comprise a data
storage means." The phrase "other buffers discussed above" has antecedent basis
earlier in the same paragraph and includes the "channel buffer, the theme buffer,
[and] the prime time buffer." (CX-1, '121 Reexamination Certificate, at col. 2,
lns. 40-41).

163. In a Notice to Issue Reexamination Certificate, stamped as mailed on June 2,
1993, the Examiner used the term "data storage means" in place of the term "storage
means." (RX-3008 at 563). A supplemental notice of intent to issue reexamination
certificate issued on August 26, 1993. (RX-3008 at 569-91).

164. In the supplemental notice of intent to issue reexamination certificate
mailed August 26, 1993 (RX-3008 at 569-91) the Examiner gave specific reasons as to
how independent claims in issue avoid the art of record. Thus it was stated (RX-
3008 at 582-90):
    H. Claims 18-31 avoid the art of record in at least the art of record does not
show or suggest a process for controlling the presentation of broadcast programs to
a television receiver which comprises.
    1) supplying program schedule information to storage means in a data processor;
    2) supplying user selection criteria, which comprises a plurality of
independent user chosen program selection criteria and at least one program choice,
to said data processor;
    3) combining said user selection criteria;
    4) selecting those programs meeting the combined selection criteria from the
schedule information stored in the storage means;
    5) storing information identifying the selected programs and identifying
broadcast schedule times, channels, and titles; and
    6) using the stored information to tune the television receiver to the selected
programs.
    I. Claims 32 avoids the art of record in at least the art of record does not
show or suggest a process for controlling the presentation of broadcast programs to
a television receiver including:
    1) presenting messages to the user, via the television receiver, including the
time remaining for a program being broadcast.
    J. Claim 33 avoids the art of record in at least the art of record does not
show or suggest a process for controlling the presentation of broadcast programs to
a television receiver which includes:
    1) combining user selection criteria with automatic criteria according to at
least one of current time period and a current channel via a data processor; and
    2) using the combined criteria to select programs for viewing from program
schedule information in a storage means in said data processor.

                                    *  *  *

    M. Claim 36 avoids the art of record in at least the art of record does not
show or suggest a process for controlling the presentation of broadcast programs to
a television receiver which includes:
    1) supplying user program selection criteria, which comprises a plurality of
independent user chosen selection criteria and at least on [sic] program choice, to
a data processor;
    2) combining said user selection criteria via the data processor;
    3) using the combined criteria to select programs for viewing from stored
schedule information;
    4) storing information identifying the selected programs wherein the
information includes broadcast schedule times, channels, and program titles; and
    5) recording the selected programs by supplying control signals to a remote
control device for a program recording device.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2002 WL 31556392                                          Page 169
USITC Inv. No. 337-TA-454

                              * * *

    Q. Claims 42-52 avoid the art of record in at least the art of record does not
show or suggest a system for controlling a recording device to allow user selection
of broadcast programs from schedule information which comprises:
    1) a data processor which is configured to present an initial display of
schedule information stored in a storage means upon selection of a display mode
wherein said initial display automatically comprises schedule information for at
least one of a current time period and a current channel of a programmable tuner.

                              * * *

    S. Claims 54-56 avoid the art of record in at least the art of record in at
least the art of record [sic] does not show or suggest a system for controlling
receipt of broadcast television programs to allow user selection of broadcast
programs from broadcast schedule information which is selectively stored in a
storage means wherein the system comprises:
    1) means for separating broadcast schedule information from the broadcast
programs;
    2) a processor configured to select programs from the schedule information
stored in the storage means based on user inputs wherein the user inputs comprise a
plurality of user program selection criteria;
    3) said processor being configured to combine said plurality of user selection
criteria and to present a list of programs meeting said combined criteria;
    4) wherein said user inputs further comprise a program choice from said
displayed list of programs; and
    5) said storage means being connected to receive a reminder calendar list
comprising information identifying titles for the programs selected by said data
processor.
    T. Claims 57-63 avoid the art of record for at least the same reasons as were
set forth for claims 42-52.
    U. Claims 64-67 avoid the art at record for at least the following reasons:

Claim 64

    This claim recites the presentation of entering a plurality user selection
criteria (including a plurality of channels) to be combined, allow user program
selection from a menu of programs meeting the combined selection criteria, and
storing a reminder calendar including titles for the chosen programs.

Claim 65

    This claim recites the presentation of entering a plurality user selection
criteria to be combined, where the selection criteria are under a pluralities of
categories that can be deactivated while still storing the selecting criteria in
addition to a program choice.

Claim 66

    This claim requires that the data processor combine a plurality of independent
user program selection criteria in addition to a program choice.
Similar language was found in the Examiner's "Notice Of Intent To Issue
Reexamination Certificate" (RX-3008 at 546-57) mailed June 2, 1993.

    165. Claim 18 of B1 4,706,121 which issued on December 14, 1993 read (CX-1, col.
5, lns. 14-19):

            © 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A process for controlling the presentation of broadcast programs to a
television receiver, which comprises supplying program schedule information to
storage means in a data processor, supplying user program selection criteria to the
data processor, said user program selection criteria comprising a plurality of
independent user program selection criteria and at least one program choice, the
data processor combining said user selection criteria, selecting those programs
meeting the combined user selection criteria for viewing from the program schedule
information in said storage means in the data processor, storing information
identifying the selected programs, said stored information identifying broadcast
schedule times, channels and program titles, and using the stored information to
tune the television to the selected program. (underlined language was added in the
reexamination proceeding)

166. The applicant used the terms "data processor" and "CPU" interchangeably in
prosecuting the '121 patent. A Supplemental Amendment After Final, file-stamped
February 26, 1993 provides an example that demonstrates the synonymous use of these
terms is provided by the applicant's rejected proposal that, "In col. 17, line 49,
after 'TV.' please insert -- Program list buffer 303, screen buffer 353, and the
other buffers discussed above are located within an electronic memory coupled to
the data processor, such as electronic memory 111." (RX-3008 at 468). The '121
patent's specification states in describing Figure 3, "A memory 111 is connected to
the CPU 110 at 113." (CX-1 at col 7, ln. 47). The parallel manner in which the
applicant described the "CPU" and "data processor" as connected or coupled to
"memory 111" demonstrates that the claimed "data processor" is the "CPU."

167. Column 17, lns. 38-49 of the '121 patent, as it issued on November 10, 1987,
read (CX-1):
A search of the program listing 352 is made. The search is dependent on the
status of the channel buffer, the theme buffer, the prime time buffer, and the
direction of search. If the page 356 is up, the search direction is forward
starting from the list pointer. If the page is down 357, the search direction will
be backward 358 from the current list pointer. When the search satisfies the above
criteria, the program listing is placed into the screen buffer 353. The search
continues until the screen buffer is full 354 in which case the search is
terminated. The status lines information is passed to the screen buffer and display
355 by the TV.

168. The Supplemental Amendment After Final dated February 26, 2002 (CX-3008 at
71, 467-96), amended the paragraph at col. 17, lns. 38-49 of the '121 patent to
read (RX-3008 at 468, underlined material added by amendment):
A search of the program listing 352 stored in program list buffer 303, is made.
The search is dependent on the status of the channel buffer, the theme buffer, the
prime time buffer and the direction of search. If the page 356 is up, the search
direction is forward starting from the listing pointer. If the page is down 357,
the search direction will be backward 358 from the current list pointer. When the
search satisfies the above criteria, the program listing from program list buffer
303 is placed into the screen buffer 353. The search continues until the screen
buffer is full 354 in which case the search is terminated. The status lines
information is passed to the screen buffer and displayed 355 by the TV. Program
list buffer 303, screen buffer 353, and the other buffers discussed above are
located within an electronic memory coupled to the data processor, such as
electronic memory 111.

F. Infringement

169. {* * *}

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

170. {* * *}

171. {* * *}

172. {* * *}

173. {* * *}

174. {* * *}

175. {* * *}

176. {* * *}

177. {* * *}

178. {* * *}

179. {* * *}

180. {* * *}

181. {* * *}

182. {* * *}

183. {* * *}

184. {* * *}

185. {* * *}

186. {* * *}

187. {* * *}

188. {* * *}

189. {* * *}

190. {* * *}

191. {* * *}

192. {* * *}

193. {* * *}

194. {* * *}

195. {* * *}

196. {* * *}

197. {* * *} {* * *}

198. {* * *}

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

199. {* * *}

200. {* * *}

201. {* * *}

202. {* * *}

203. {* * *}

204. {* * *}

205. {* * *}

206. {* * *}

207. {* * *}

208. {* * *}

FN1. {* * *}

XX. CONCLUSIONS OF LAW

1. The Commission has in rem jurisdiction, subject matter jurisdiction and in personam jurisdiction.

2. There has been an importation of certain set-top boxes and components thereof which are the subject of the alleged unfair trade allegation.

3. No domestic industry exists, as required by subsection (a) (2) of section 337, that exploits each of the '121, '268 and '204 patents because complainants have not met their burden in satisfying the technical prong of the domestic industry requirement.

4. Respondents have failed to establish that the asserted claims of each of the '121, '268 and '204 patents are not valid.

5. Complainants have failed to establish that the claims of the '121, '268 and '204 patents asserted against each of the respondents are infringed.

6. It has been established that complainants misused the '121 patent.

7. It has been established that the '121 patent is unenforceable for failure to name a coinventor.

8. Respondents are not in violation of section 337 based on any importation into the United States, sale for importation, and sale within the United States after importation of certain set-top boxes and components thereof which are the subject of the alleged unfair trade allegation.

XXI. ORDER

Based on the foregoing opinion, it is the administrative law judge's final initial determination that there has been no violation by any of the respondents of section 337 in the importation into the United States, sale for importation, and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2002 WL 31556392                                      Page 173
USITC Inv. No. 337-TA-454

the sale within the United States after importation of certain set-top boxes and
components thereof.

The administrative law judge hereby CERTIFIES to the Commission his final initial
determination together with the record consisting of the exhibits admitted into
evidence. The pleadings of the parties filed with the Secretary and the transcript
of the hearing, are not certified, since they are already in the Commission's
possession in accordance with Commission rules.

Further it is ORDERED that:

1. In accordance with Commission rule 210.39, all material heretofore marked in
camera because of business, financial, and marketing data found by the
administrative law judge to be cognizable as confidential business information
under Commission rule 201.6(a) is to be given in camera treatment continuing after
the date that this investigation is terminated.

2. Counsel for the parties shall have in the hands of the administrative law
judge those portions of the final initial determination which contain bracketed
confidential business information to be deleted from any public version of said
determination, no later than July 12, 2002. Any such bracketed version shall not be
served by telecopy on the administrative law judge. If no such bracketed version is
received from a party it will mean that the party has no objection to removing the
confidential status, in its entirety, from this initial determination.

3. This final initial determination, issued pursuant to Commission rule
210.42(h)(2), shall become the determination of the Commission forty-five (45) days
after the service thereof, unless the Commission, within that period shall have
ordered its review in its entirety or certain issues therein, or by order has
changed the effective date of said initial determination.

Paul J. Luckern

Administrative Law Judge

2002 WL 31556392 (U.S.I.T.C.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.