IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TV GUIDE ONLINE, INC. and TV GUIDE ONLINE, LLC<br><br>Plaintiffs,<br><br>v.<br><br>TRIBUNE MEDIA SERVICES, INC.,<br><br>Defendant. | C.A. No. 05-CV-725-KAJ<br><br>**JURY TRIAL DEMANDED**<br><br>**PUBLIC VERSION<br>- REDACTED -** |

### TV GUIDE'S ANSWERING BRIEF IN OPPOSITION TO TMS'S MOTION FOR LEAVE TO AMEND ITS ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

OF COUNSEL:

Robert C. Morgan
Christopher J. Harnett
Ching-Lee Fukuda
Stuart W. Yothers
Fish & Neave IP Group
Ropes & Gray LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Ronald E. Naves, Jr.
Sr. Vice President
Legal Affairs and Litigation
Gemstar-TV Guide International, Inc.
6922 Hollywood Boulevard
Hollywood, California 90028
(323) 817-4600

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Steven J. Fineman (#4025)
Richards, Layton & Finger PA
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
cottrell@rlf.com
moyer@rlf.com
fineman@rlf.com
Attorneys for Plaintiffs TV Guide Online, Inc. and TV Guide Online, LLC

Dated: August 14, 2006

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

I. NATURE AND STAGE OF THE PROCEEDING ........................................................ 1

II. SUMMARY OF ARGUMENT ....................................................................................... 3

III. STATEMENT OF FACTS .............................................................................................. 5

IV. ARGUMENT .................................................................................................................. 6

    A. TMS Should Not Be Granted Leave To Amend ................................................. 6

    B. TMS's Proposed Amendment To
       Add The Gemstar Companies Is Futile ............................................................... 7

    C. TMS's Proposed Amendment Is Not
       Necessary For It To Prosecute Its Defenses ........................................................ 9

    D. TMS Improperly Delayed Its Proposed Amendment ........................................ 11

    E. The Case Law Cited By TMS Is Inapplicable ................................................... 12

V. CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

## CASES

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
   157 F.3d 1340 (Fed. Cir. 1998) ............................................................................................7

*Commodity Futures Trading Comm'n v. Am. Metal Exch. Corp.*,
   693 F. Supp. 168 (D.N.J. 1988) .......................................................................................6, 12

*Foman v. Davis*,
   371 U.S. 178 (1962) .............................................................................................................6

*Greenwell v. Hastings*, No. Civ.A. 96-77-GMS,
   2001 WL 173803 (D. Del. Feb. 16, 2001) ............................................................................7

*Hamilton v. Civigenics*,
   2005 WL 418023 (D. Del. Feb. 22, 2005) ............................................................................7

*In re Gemstar Dev. Corp. Patent Litig.*,
   No. MDL-1274-WBH (N.D. Ga. March 24, 2004) ..........................................................1, 9

*Kolene Corp. v. Motor City Metal Treating, Inc.*,
   440 F.2d 77 (6th Cir. 1971) ..............................................................................................2, 9

*Lockett v. Gen. Fin. Loan Co. of Downtown*,
   623 F.2d 1128 (5th Cir. 1980) .......................................................................................12, 13

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   395 U.S. 100 (1969) ..........................................................................................................1, 8

## RULES

Rule 30(b)(6) ..................................................................................................................................9

I.   **NATURE AND STAGE OF THE PROCEEDING**

On October 12, 2005, plaintiffs TV Guide Online, Inc. and TV Guide Online, LLC (collectively "TV Guide") filed a complaint in this action charging defendant Tribune Media Services, Inc. ("TMS") with infringing U.S. Patent No. 5,988,078 ("the '078 patent") (D.I. 1). TV Guide deferred service of the complaint to provide an opportunity for the parties to resolve the matter through licensing discussions. When licensing efforts proved unsuccessful, TV Guide served TMS with the Complaint on January 10, 2006 (D.I. 4).

On February 1, 2006, TMS served its Answer, Affirmative Defenses and Counterclaims, which includes allegations of patent misuse (D.I. 6). TV Guide promptly filed a motion pursuant to Rules 12(b) and (f), Fed. R. Civ. P., to dismiss TMS's patent misuse counterclaim and defense (D.I. 11). That motion was fully briefed as of March 17, 2006 and is currently pending before the Court.

TMS's patent misuse pleading is premised on a theory of "conditioning" (D.I. 6). As TV Guide explained in its motion to dismiss, TMS has not pled and cannot plead the legal requirements of a "conditioning" claim as set forth by the United States Supreme Court in *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 135 (1969) (D.I. 12). In response, TMS argued that it was *really* pursuing a "broader" theory based on the "overall licensing practices supported by TV Guide and Gemstar" that is supposedly based on the decision of the ALJ in an earlier ITC proceeding (D.I. 22).

In its reply brief (D.I. 33), TV Guide explained that TMS's vague "broader" theory is fatally flawed because: (1) TMS never pled it; (2) the ALJ's decision was not directed to the '078 patent; (3) the ITC expressly declined to adopt the ALJ's findings; and (4) when an Article III Court ultimately addressed the same patent misuse allegations, the Court's ruling made plain that there could be no patent misuse. *In re Gemstar Dev. Corp. Patent Litig.*, No.

1

MDL-1274-WBH (N.D. Ga. March 24, 2004) (Ex. N). TV Guide explained that TMS's allegations amount to an assertion of "patent misuse in the air" which is insufficient as a matter of law (D.I. 33). *Kolene Corp. v. Motor City Metal Treating, Inc.* 440 F.2d 77, 84-85 (6th Cir. 1971).

Discovery commenced on March 2, 2006 with service of the parties' respective first sets of discovery requests (D.I. 17-19).

On June 27, 2006, the parties appeared before the Court for a technology tutorial. The patented technology, which was developed during the early days of the Internet, allows a television viewer to access television listings for his or her particular viewing location using a computer. During the tutorial, TMS stated that it had no scheduling issues to address with the Court (D.I. 51). Just two days later, however, TMS wrote to the Court seeking permission to file an early summary judgment motion on the issue of non-infringement (D.I. 50). TMS's articulated reason for its request was the straightforward nature of the technology (D.I. 50). In response, TV Guide advised the Court that TMS had not yet provided fundamental discovery on the question of infringement and, therefore, TMS's summary judgment proposal was unsound (D.I. 52). The Court denied TMS's request to adjust the Scheduling Order and allow it to file an early summary judgment motion.

Throughout discovery, disputes have arisen between the parties -- including disputes relating to the scope of discovery sought by TMS that supposedly is related to its patent misuse allegations. For example, TMS has served document demands on TV Guide as well as ***sixteen third parties*** -- eight law firms and eight companies that do business with TV Guide -- that would require collection, review and processing of millions of pages of documents that are unrelated to the '078 patent-in-suit (Exs. A and B). Many of the documents that TMS seeks include privileged and/or third-party confidential information (*Id.*).

The discovery that TMS is seeking, if permitted, would result in enormous and unnecessary expenditures of resources and would serve only to overwhelm the central issues presented in this case. Accordingly, TV Guide advised TMS that it will seek an Order from the Court severing and staying TMS's patent misuse allegations (and discovery relating to those allegations) in the event that the Court does not grant TV Guide's pending motion to dismiss. The Court scheduled a telephone conference with the parties for August 21, 2006 to discuss this and other issues (D.I. 57).

The Scheduling Order in this case provides that the parties will endeavor to complete fact discovery on or before October 2, 2006 and that all discovery, including expert discovery, will be completed by January 30, 2007 (D.I. 27).

## II.   SUMMARY OF ARGUMENT

1.   TMS's motion seeking to add Gemstar-TV Guide International, Inc. and Gemstar-TV Guide Interactive, Inc. ("the Gemstar Companies") as defendants to its counterclaim for patent misuse should be denied. The provision of Rule 15, Fed. R. Civ. P., that leave to amend pleadings is to be "freely given," has limits. Under Rule 15, leave to amend shall be given only "when justice so requires." In this case, justice requires denial of TMS's motion because it seeks to add parties that are wholly unnecessary to resolve TV Guide's patent infringement claim or any of TMS's counterclaims or defenses.

2.   TV Guide Online, LLC is the owner by assignment of the '078 patent and TV Guide Online, Inc. is the exclusive licensee (Exs. C and D). Both are plaintiffs in this action and -- besides TMS -- are the only appropriate parties. Nonetheless, TMS seeks to add TV Guide's parent company and an affiliated sister company even though neither own the '078 patent. TMS's efforts in this regard are premised solely on TMS's allegation that the Gemstar Companies were involved in licensing activities of a patent portfolio that may or may not have

3

included the '078 patent. According to TMS, this licensing activity is somehow relevant to its patent misuse allegations.

3. Regardless of any role that the Gemstar Companies may have played in executing patent portfolio licenses, there is no need to add them as parties. Even if the Court does not grant TV Guide's motion to dismiss TMS's patent misuse allegations and TMS ultimately succeeds on the misuse issue, the Gemstar Companies are not appropriate or necessary parties. If TMS could prove patent misuse, the '078 patent would be held to be unenforceable. The patent could not be enforced by TV Guide, by the Gemstar Companies, or by anyone else as a matter of law until such a time as any misuse was purged. TMS's argument that the Gemstar Companies would not otherwise be bound by the judgment on its patent misuse claim, therefore, makes no sense. TMS's proposed amendment is unnecessary and futile and should not be permitted.

4. TMS's attempt to add two additional parties is merely the latest in a long line of actions undertaken by TMS to divert attention from the central issue in this action -- TMS's infringement of the '078 patent. TMS's actual motivation for seeking to add the Gemstar Companies as parties to this action is readily ascertained by considering TMS's hopelessly overbroad document demands (which will be addressed at the August 21, 2006 telephone conference with the Court). For example, TMS's document requests nos. 31 and 82 are reproduced below:

> **Document Request No. 31.** All documents produced or generated in connection with the Department of Justice investigation into the merger of Gemstar and TV Guide relating to actual or potential suppliers, purchasers, licensees, licensors, market conditions, competition, market share, market power, or the actual or potential effect of the proposed merger on any market for interactive program guides or interactive program guide technology.
>
> **Document Request No. 82.** All communications, testimony, and correspondence between TV Guide and the Department of Justice, or any other government agency, relating to, referring to actual or potential suppliers, purchasers, licensees,

4

licensors, market conditions, competition, market share, market power, or actual or potential anticompetitive behavior or antitrust violations relating to interactive program guide technology or the licensing of interactive program guide technology.

(Ex. E). TMS is demanding production of vast numbers of documents concerning Department of Justice investigations -- even though those investigations did not involve the '078 patent in any way. Rather, TMS is seeking those documents simply because certain individuals who formerly had management responsibilities at TV Guide's parent company, Gemstar, faced prosecution under the securities laws. Those individuals are no longer associated with Gemstar or TV Guide. For almost three years now, Gemstar-TV Guide has had an entirely new management team in place. Indeed, the SEC has explicitly commented on the "significant cooperation and remediation following a change in senior management and restructuring of its corporate governance" at Gemstar-TV Guide (Ex. F at 1). TMS's fishing expedition -- conducted in the hopes of finding information that will allow TMS to throw mud at TV Guide because of past legal issues encountered by individuals associated with its parent company -- does not justify in any way TMS's efforts to join that parent company and other affiliates as parties to this case.

### III. STATEMENT OF FACTS

TV Guide Online, LLC is the owner by assignment of the '078 patent (Ex. C). TV Guide Online, Inc. is the exclusive licensee of the '078 patent and has the right to bring suit for past infringement (Ex. D). Both are already parties to this action.

The '078 patent has not previously been asserted in litigation.

Gemstar-TV Guide International, Inc. is the ultimate parent company of TV Guide. Gemstar-TV Guide Interactive, Inc. is an affiliated company. Neither of these two companies have any ownership interest in or exclusive license to the '078 patent.

The Gemstar Companies that TMS seeks to add are merely the signatories to some license agreements that have been executed by the Gemstar-TV Guide companies that grant licenses to portfolios of patents in various fields of use.[1]

## IV. ARGUMENT

### A. TMS Should Not Be Granted Leave To Amend.

Rule 15(a), Fed. R. Civ. P., provides that leave to amend a pleading shall be given only "when justice so requires." A court may properly deny leave to amend for reasons such as futility of amendment, bad faith or dilatory motive on the part of the movant, undue delay or undue prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court should deny TMS's motion: (1) because amendment is futile; (2) because TMS does not need to add the Gemstar Companies to prosecute its defenses; and (3) because addition of those companies will serve only to unnecessarily complicate a straightforward patent infringement case.[2]

---

[1] TMS argues that TV Guide recently produced several licenses that grant rights to the '078 patent that were executed by the Gemstar Companies that TMS now seeks to add as parties. TMS's argument is both inconsistent with the facts and irrelevant. On March 2, 2006, TMS served overbroad document requests demanding production of virtually every document relating to licensing of any Gemstar/TV Guide patent, regardless of the relationship of the licensing activity to the '078 patent (Ex. E). Those document requests are unduly burdensome -- not only because of the volume of documents that they call for, but also because the documents include proprietary information of third-parties that TV Guide is contractually obligated to maintain as confidential. Despite TMS's improper discovery efforts, TV Guide undertook to search for and produce licenses that grant rights in a field of use in which the '078 patent might possibly be included. TV Guide made plain that by producing such licenses TV Guide was not "conced[ing] that any rights in or to the '078 patent have been granted" (Ex. G at 26-28). And, as stated above, even if the two Gemstar Companies were signatories to licenses granting rights to the '078 patent, those companies are not necessary parties to TMS's vague patent misuse counterclaim. Upon a finding of misuse, a patent is unenforceable by any party until the misuse is purged.

[2] *Commodity Futures Trading Comm'n v. Am. Metal Exch. Corp.*, 693 F. Supp. 168, 189 (D.N.J. 1988) (*quoting Foman*, 371 U.S. at 182), one of the cases relied upon by TMS, states explicitly that leave to amend pleadings should not be granted when "the underlying circumstances illustrate 'apparent or declared reason such as undue delay, bad faith or dilatory

6

RLF1-3047927-1

### B. TMS's Proposed Amendment To Add The Gemstar Companies Is Futile.

When a proposed amendment would not withstand a motion to dismiss, such an amendment would be futile. *Hamilton v. Civigenics*, No. Civ.A. 03-826 GMS, 2005 WL 418023, at *3 (D. Del. Feb. 22, 2005). This Court has routinely denied requests of a party to amend its pleadings when such an amendment would be futile. *See, e.g., Hamilton*, 2005 WL 418023; *Greenwell v. Hastings*, No. Civ.A. 96-77-GMS, 2001 WL 173803 (D. Del. Feb. 16, 2001).

The only rationale articulated by TMS for seeking to add the Gemstar Companies is that "[i]f TMS prevails, it is entitled to a declaratory judgment of patent misuse against anyone who has the right to license the '078 patent" and that the Gemstar Companies "should be bound by the judgment on that claim" (D.I. 60 at 1 and 7).

TMS, however, does not -- and cannot -- cite any authority that requires entities who do not own the patent (or have exclusive rights to the patent) to be added as parties to a patent misuse claim. If the Court finds in favor of TMS on its patent misuse claim, the '078 patent would be declared unenforceable. An unenforceable patent cannot be enforced by *anyone* -- not just the assignee and exclusive licensee. *See C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998) ("[p]atent misuse arises in equity, and a holding of misuse renders the *patent* unenforceable until the misuse is purged") (emphasis added). As a matter of law, therefore, TMS's argument about parties being "bound by the judgment" on the patent misuse claim is illogical. If TMS were correct, TMS would be able to add as a party *any* person or corporate entity who might later obtain ownership rights (or rights to execute licenses) to the '078 patent. That, of course, is not the law.

---

motive on the part of a movant, repeated failure to the deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etcetera.'"

7

In any event, as a threshold matter, TMS has not alleged and cannot allege the legal requirements to state a claim for patent misuse. As explained in the briefing submitted with TV Guide's motion to dismiss and strike TMS's patent misuse allegations (D.I. 12 and 33), TMS premised its patent misuse allegations on the argument that Gemstar-TV Guide International, Inc. (*i.e.*, ***the same entity that TMS now seeks to add as a party***) "conditioned" its offer to license TMS to the '078 patent on the acceptance of a "covenant not-to-assert" license term (D.I 6 at 13-14). The United States Supreme Court has made plain that misuse of the type that TMS seeks to assert can only occur in a situation "where the patentee refuses to license on any other basis and leaves the licensee with the choice between a license so providing and no license at all." *Zenith Radio Corp.*, 395 U.S. at 135. TMS, however, did not plead and cannot plead -- as the law requires -- that TV Guide/Gemstar refused to license TMS on any other basis.

### REDACTED

(D.I. 13 at Ex. I). TMS has not disputed (and cannot dispute) these facts.

Instead, in response to TV Guide's motion, TMS argued that it was *really* asserting a "broader" theory of patent misuse based on the "overall licensing practices employed by TV Guide and Gemstar" (D.I. 22). In that regard, TMS cited to the patent misuse finding of an Administrative Law Judge in a 2001 ITC proceeding -- *In the Matter of Certain Set-Top Boxes and Components Thereof*, ITC Investigation No. 337-TA-454 -- a proceeding that did not involve the '078 patent. The ITC proceeding, however, has no bearing on TV Guide's patent infringement action against TMS. TMS never alleged in its pleadings that the '078 patent (or

any license to the '078 patent) was the subject of the ALJ's determination. In fact, the '078 patent has never previously been asserted in litigation.

Beyond that, the ITC did not adopt -- and expressly declined to take a position on -- the ALJ's patent misuse finding (D.I. 33 at Ex. A). Furthermore, a subsequent decision by an Article III Court (the United States District Court for the Northern District of Georgia) ruled that the license agreements at issue in the ITC proceedings were not patent licenses at all, but rather product licenses. *In re Gemstar Dev. Corp. Patent Litig.*, No. MDL-1274-WBH, Order at 9 (N.D. Ga. March 24, 2004) (D.I. 33 at Ex. B) (Ex. N). TMS's "broader" theory of patent misuse, which is not directed to any supposedly improper license to the '078 patent, is merely an attempt to allege patent "misuse in the air." That is improper as a matter of law. *Kolene Corp.*, 440 F.2d at 84-85.

### C. TMS's Proposed Amendment Is Not Necessary For It To Prosecute Its Defenses.

As stated above, TMS's instant motion is the latest in a long line of actions by TMS calculated to divert attention from the central issue in this case -- TMS's infringement of TV Guide's '078 patent. To date, discovery from TMS on the central case issues has been largely unproductive because TMS has delayed in providing (or, in some instances, failed to provide) fundamental discovery on the technical details of its accused service -- the www.Zap2it.com website -- as well as its instructions to customers directing them to use the website in a way that infringes the '078 patent.[3]

---

[3]  On May 17, 2006, TV Guide noticed for June 20 a Rule 30(b)(6) deposition with topics that included the structure and operation of TMS's accused website and the instructions that TMS provided to its customers concerning use of that website (D.I. 44). Because TMS had produced few, if any, documents on those topics, it was necessary for TV Guide to postpone that deposition. The parties subsequently met and conferred on several occasions in late June and early July concerning the status of discovery. Despite repeated assurances that TMS would promptly produce its technical documents, TMS continued to delay (Ex. H). TMS did not produce a Rule 30(b)(6) witness until August 9 and even then, TMS's designated witnesses on

9

Instead, TMS has sought to pursue unbridled, burdensome discovery under the guise of its patent misuse counterclaim and defense. That discovery has no purpose other than to increase the costs and complexity of this straightforward action involving a single patent that TV Guide has never previously asserted.

On March 2, 2006, TMS served TV Guide with a series of document requests calling for production of, *inter alia*, vast numbers of documents concerning: (a) prior litigations; (b) licensing activities; and (c) government investigations -- none of which involved the '078 patent in suit (Ex. E). On April 10, 2006, TV Guide objected to TMS's document requests as being hopelessly overboard, burdensome and oppressive and as not being reasonably calculated to lead to the discovery of admissible evidence (Ex. L). At that time, TV Guide explicitly invited TMS to narrow those requests to a more reasonable scope (*Id.*).

TMS did not respond to that invitation -- instead, TMS simply sat on its hands for more than two months. Then, at a June 21 meet and confer, TMS asserted that its document requests were entirely proper but agreed to "consider" whether they could be narrowed. TMS then sat on its hands for another three weeks until July 12, when TMS wrote to TV Guide setting forth some supposedly "narrowed" requests (Ex. M at 2-3). Unfortunately, those requests did not reduce in any meaningful way the vast number of irrelevant documents that TMS is seeking.

To make matters worse, the very next day, TMS delivered third-party subpoenas to eight law firms that previously represented TV Guide's parent company seeking an enormous volume of documents from earlier litigations (Ex. A). According to TMS, those documents supposedly relate to its patent misuse allegations even though the '078 patent was not asserted in

eight of the nine noticed topics was utterly unprepared to give knowledgeable testimony (Ex. I at p. 83, line 5 -- p. 90, line 20). Beyond that, TMS continued to condition the production of the source code underlying its accused website on unreasonably restricted terms even though TMS's own Rule 30(b)(6) witness unequivocally confirmed the relevance and importance of that information (Ex. J; Ex. K at p. 31, line 16 -- p. 35, line 12).

10

any of those litigations. On July 19, TMS served *eight more* third-party subpoenas on companies that do business with TV Guide seeking the same type of documents (Ex. B).

TMS's third-party discovery efforts represent an improper effort by TMS to: (1) circumvent TV Guide's legitimate objections to TMS' burdensome discovery requests; (2) divert the focus of this litigation away from the issue of TMS's infringement of a single asserted patent and, instead, (3) pursue a fishing expedition hoping to find some evidence of unrelated past legal problems encountered by TV Guide's parent company. TMS's efforts to add the two additional Gemstar Companies is more of the same. As with its overbroad discovery requests, TMS's request to add two additional parties is not necessary for it to prosecute its defenses, including the defense of patent misuse. Thus, TMS's continuing efforts to cloud the issues beyond what they are -- a straightforward patent infringement action -- should be prevented.

### D.    TMS Improperly Delayed Its Proposed Amendment.

TMS's suggestion that it was previously unaware of the activities of the Gemstar parties that it now seeks to add is simply incorrect. TMS at least had knowledge of Gemstar-TV Guide International, Inc.'s role in the past licensing activities even before the filing of the action.

Indeed, in its Answer, Affirmative Defenses and Counterclaims filed on February 1, 2006, TMS alleges that "[t]he '078 patent is unenforceable due to misuse by ... Gemstar-TV Guide International, Inc. ('Gemstar')" (D.I. 6 at 13). TMS's Answer also avers that Gemstar-TV Guide International, Inc. sent TMS a June 16, 2005 proposal "with respect to a license under Gemstar's patent portfolio for TMS' online IPGs, including the '078 patent" (*Id.*). TMS's seven month delay in raising this issue confirms the lack of diligence needed on TMS's part to add the additional parties now.

11

### E. The Case Law Cited By TMS Is Inapplicable.

TMS relies heavily on *Commodity Futures Trading Comm'n*, 693 F. Supp. 168 in arguing that the two Gemstar Companies should be added as parties. That case, however, is distinguishable from the circumstances of this action. *Commodity Futures Trading Comm'n* related to the issuance of injunctive and equitable relief against defendants engaged in conduct that violated the Commodity Exchange Act. After the court granted such relief against the named parties, the plaintiffs sought to add new defendants to the complaint seeking similar relief. The court allowed the addition of the new defendants partly because the record clearly supported a finding that the new defendants had control over the named defendants in the illegal conduct.

In *Commodity Futures Trading Comm'n*, the injunctive and equitable relief sought by the plaintiffs could only have been applied against the new defendants if they were added to the action. Specifically, plaintiffs sought "a court order which freezes defendants' assets, gives plaintiffs access to their books, enjoins defendants from offering, selling or accepting funds for the offer and sale of securities, appoints a receiver to marshall, account for and distribute assets for the benefit of the corporate investors, and requires the individual defendants to make an accounting of their assets." *Commodity Futures Trading Comm'n*, 693 F. Supp. at 172.

In this action, however, the relief sought by TMS based on its claim of patent misuse -- unenforceability of the '078 patent -- would be binding on all entities. Whether or not the Gemstar Companies are named as parties to this action, they would not be able to license or enforce a patent that has been declared unenforceable. For this reason, the addition of the Gemstar Companies to this action is wholly unnecessary.

Finally, TMS relies upon *Lockett v. Gen. Fin. Loan Co. of Downtown*, 623 F.2d 1128 (5th Cir. 1980) for the proposition that the court should allow a parent of the named party

12

RLF1-3047927-1

to be added as a party. The holding of *Lockett*, however, is inapplicable to the circumstances of this action. The court in *Lockett* allowed the addition of the parent company because the original complaint in *Lockett* stated that the named defendants were the alter ego of their unknown parent, and specifically reserved the right to amend the complaint to add the parent once its identity was obtained. *Id.* at 1130-32. In this action, however, TMS knew about TV Guide's parent at the time it filed its Answer, but specifically chose *not* to add it as a party.

## V. CONCLUSION

For the foregoing reasons, TMS's Motion for Leave to Amend Its Answer, Affirmative Defenses and Counterclaims should be denied.

OF COUNSEL:

Robert C. Morgan
Christopher J. Harnett
Ching-Lee Fukuda
Stuart W. Yothers
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Ronald E. Naves, Jr.
Sr. Vice President
Legal Affairs and Litigation
Gemstar-TV Guide International, Inc.
6922 Hollywood Boulevard
Hollywood, California 90028
(323) 817-4600

/s/ Frederick L. Cottrell, III
Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Steven J. Fineman (#4025)
RICHARDS, LAYTON & FINGER PA
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
cottrell@rlf.com
moyer@rlf.com
fineman@rlf.com
Attorneys for Plaintiffs TV Guide Online, Inc. and TV Guide Online, LLC

Dated: August 14, 2006

14

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand Delivered to the following:

Richard K. Herrmann, Esquire
Mary B. Matterer, Esquire
Morris James Hitchens & Williams
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801

I hereby certify that on August 14, 2006, I have sent by Federal Express, the foregoing document to the following non-registered participants:

Mark A. Pals, P.C., Esquire
Kirkland & Ellis, LLP
200 East Randolph Drive
Chicago, IL 60601

Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
fineman@rlf.com

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand Delivered to the following:

> Richard K. Herrmann, Esquire
> Mary B. Matterer, Esquire
> Morris James Hitchens & Williams
> 222 Delaware Avenue, 10th Floor
> Wilmington, DE 19801

I hereby certify that on August 21, 2006, I have sent by Federal Express, the foregoing document to the following non-registered participants:

> Mark A. Pals, P.C., Esquire
> Kirkland & Ellis, LLP
> 200 East Randolph Drive
> Chicago, IL 60601

> /s/ Steven J. Fineman
> Steven J. Fineman (#4025)
> Richards, Layton & Finger, P.A.
> One Rodney Square
> P.O. Box 551
> Wilmington, Delaware 19899
> (302) 651-7700
> fineman@rlf.com

RLF1-2978403-1