## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TV GUIDE ONLINE, INC. AND <br> TV GUIDE ONLINE, LLC, <br><br>     Plaintiffs, <br><br>     v. <br><br> TRIBUNE MEDIA SERVICES, INC. <br><br>     Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

C.A. No.: 05-CV-725-KAJ

**REDACTED - PUBLIC VERSION**

---

## TV GUIDE'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO BIFURCATE TRIAL AND STAY DISCOVERY OF TMS'S AFFIRMATIVE DEFENSE AND <u>COUNTERCLAIM OF PATENT MISUSE</u>

OF COUNSEL:

Robert C. Morgan
Christopher J. Harnett
Ching-Lee Fukuda
Stuart W. Yothers
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Ronald E. Naves, Jr.
Sr. Vice President
Legal Affairs and Litigation
Gemstar-TV Guide International, Inc.
6922 Hollywood Boulevard
Hollywood, California 90028
(323) 817-4600

August 28, 2006

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Steven J. Fineman (#4025)
RICHARDS, LAYTON & FINGER PA
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
fineman@rlf.com

Attorneys for Plaintiffs TV Guide Online, Inc.
and TV Guide Online, LLC

## TABLE OF CONTENTS

Page

I.    OVERVIEW ........................................................................................................1

II.   NATURE AND STAGE OF THE PROCEEDING ...........................................3

III.  SUMMARY OF ARGUMENT .........................................................................5

IV.   STATEMENT OF FACTS ................................................................................7

      A.   General Background ................................................................................7

      B.   Pre-Suit Negotiations .............................................................................7

      C.   TMS's Patent Misuse Pleading ..............................................................9

      D.   Discovery Relating to TMS's Patent Misuse Allegations ...................11

V.    ARGUMENT ...................................................................................................16

      A.   The Law Favors Separate Trials And Discovery
           To Promote Expedience And Economy ................................................16

      B.   Expensive and Protracted Patent Misuse Discovery
           Before Resolution Of The Patent Issues May Well
           Prove To Be A Waste Of Valuable Resources ......................................17

      C.   TMS Will Not Be Prejudiced By Separate Trial And Discovery .........19

      D.   TMS's Patent Misuse Allegations Are Not Legally Sustainable ..........20

VI.   CONCLUSION ................................................................................................21

## TABLE OF AUTHORITIES

### CASES

*Akzona Inc.* v. *E.I. Du Pont de Nemours & Co.*,
607 F. Supp. 227 (D. Del. 1984)............................................................5, 16, 19

*Allen-Bradley Co.* v. *Autotech Corp.*,
No. 86 *C 8514*, 1990 WL 16456 (N.D. Ill. Feb. 8, 1990)...........................5, 17

*Applera Corp.* v. *MJ Research, Inc.*,
349 F. Supp. 2d 321 (D. Conn. 2004)..................................................................10

*Bayer AG* v. *Housey Pharms., Inc.*,
228 F. Supp. 2d 467 (D. Del. 2002).....................................................................10

*Gardco Mfg.* v. *Herst Lighting Co.*,
820 F.2d 1209 (Fed. Cir. 1987)............................................................................16

*In re Gemstar Dev. Corp. Patent Litig.*,
No. MDL-1274-WBH (N.D. Ga. March 24, 2004)..............................................10

*Hewlett-Packard Co.* v. *Genrad, Inc.*,
882 F. Supp. 1141 (D. Mass. 1995)..................................................................5, 17

*In re Innotron Diagnostics*,
800 F.2d 1077 (Fed. Cir. 1986)......................................................................16, 17

*Virginia Panel Corp.* v. *MAC Panel Co.*,
133 F.3d 860 (Fed. Cir. 1997).......................................................................10, 19

*In re Yarn Processing Patent Validity Litigation*,
472 F. Supp. 170 (S.D. Fla. 1979)......................................................................19

*Zenith Radio Corp.* v. *Hazeltine Research, Inc.*,
395 U.S. 100 (1969) (D.I. 12)..............................................................................10

### FEDERAL STATUTES

Fed. R. Civ. P. 42(b).............................................................................................17

## I.    OVERVIEW

This is a straightforward patent infringement case. It involves a single patent -- the '078 patent -- that has never before been asserted in litigation. The technology underlying the '078 patent is not complicated. That technology was developed during the early days of the Internet and allows a television viewer to use a computer to obtain television program information specific to the viewer's geographic location.

There are now less than six weeks remaining until the date set forth in the Court's Scheduling Order for parties to complete fact discovery. The parties have produced about 200,000 pages of documents directed to the central issues of infringement, validity and damages. Depositions of party witnesses (as well as third-party witnesses) directed to those central issues are currently proceeding. The parties have worked out a heavy schedule for depositions in September so as to complete fact discovery in accordance with the Scheduling Order.

Throughout the fact discovery period, TV Guide and TMS have had disputes concerning the overbroad discovery demands that TMS served on TV Guide and 16 third parties directed to TMS's patent misuse allegations. The discovery that TMS is seeking on the single issue of patent misuse would dwarf the discovery on all of the other issues in the case combined. Indeed, TMS itself does not dispute that the patent misuse discovery it is seeking from TV Guide and 16 third parties would require the collection, review, processing and production of millions of pages of documents. The number of depositions that will follow this voluminous production can only be guessed at, but certainly will be large.

Early in the case, on February 21, 2006, TV Guide filed a motion to dismiss TMS's counterclaim and affirmative defense directed to alleged patent misuse pursuant to Rules 12(b)(6) and 12(f), Fed. R. Civ. P. As TV Guide explained in that motion to dismiss (which is fully briefed and pending before the Court), prior to service of the Complaint in this action, TV

Guide sought to engage TMS in licensing negotiations with respect to the '078 patent. TV Guide offered a license to TMS on reasonable commercial terms (D.I. 13, Ex. B). TMS, however, rejected TV Guide's reasonable offer and, instead, forced TV Guide to litigate.



TMS has pursued an unnecessarily broad and time-consuming approach to this litigation, including efforts to obtain vast numbers of documents that are unrelated to the '078 patent.

After TV Guide filed its motion to dismiss, on March 8, 2006, TMS began discovery by serving TV Guide with document requests, including those that are at issue here. On April 10, 2006, TV Guide timely objected to TMS's document requests as being hopelessly overbroad, burdensome and oppressive and as not being reasonably calculated to lead to the discovery of admissible evidence. At that time, TV Guide explicitly invited TMS to narrow those requests to a more reasonable scope. TMS then sat on its hands for nearly three months -- *TMS did not respond to TV Guide's invitation to narrow the requests and TMS did not raise the issue with the Court*. Instead, TMS did nothing until July 12, when TMS wrote to TV Guide setting forth some supposedly "narrowed" requests. Unfortunately, those requests did not reduce in any meaningful way the vast number of irrelevant documents that TMS is seeking. TV Guide then promptly advised TMS that TV Guide would seek an Order form the Court precluding or deferring such discovery by TMS.

On August 21, 2006, the Court held a discovery teleconference with the parties. At that time, the Court directed TV Guide to file the present motion to bifurcate trial on TMS's patent misuse allegations and to stay discovery on that issue. As we explain below, in the event that the Court does not grant TV Guide's pending February 21, 2006 motion to dismiss, the interests of judicial economy -- as expressly provided in Rules 1 and 42 of the Federal Rules of

2

Civil Procedure -- will be served by bifurcating TMS's patent misuse allegations and staying TMS's discovery efforts relating to those allegations.   Addressing TMS's patent misuse allegations can properly be deferred pending resolution of the central issues in this case (infringement, validity and damages).

There is no need to proceed with discovery on TMS's patent misuse allegations now.  The millions of pages of documents that TMS seeks have absolutely nothing to do with: (1) whether the accused Zap2it.com website infringes the claims of the '078 patent; (2) whether any of the prior art identified by TMS anticipates or renders obvious any of the claims of the '078 patent; and (3) the amount of damage that TV Guide is entitled to recover upon a showing of infringement by TMS.   If TMS succeeds with any of its other defenses -- *e.g.*, noninfringement, anticipation or obviousness -- there will be no need at all for the extensive, time consuming and costly discovery that TMS seeks for its patent misuse defense to proceed. If, on the other hand, TV Guide prevails on the central issues of infringement and validity, patent misuse discovery still may never need to go forward.  That is so because TV Guide has ***already*** offered TMS a commercially reasonable license under the '078 patent so that TMS can continue to commercialize its accused www.Zap2it.com website service.

## II.    NATURE AND STAGE OF THE PROCEEDING

On October 12, 2005, plaintiffs TV Guide Online, Inc. and TV Guide Online, LLC (collectively "TV Guide") filed the Complaint in this action charging defendant TMS with infringing U.S. Patent No. 5,988,078 ("the '078 patent") (D.I. 1).  TV Guide asserts that TMS has infringed and continues to infringe the '078 patent in connection with TMS's operation of the www.Zap2it.com website.

On February 1, 2006, TMS served its Answer, Affirmative Defenses and Counterclaims, which included allegations of patent misuse that was premised on a theory of

3

"conditioning" (D.I. 6). TV Guide promptly filed a motion pursuant to Rules 12(b) and (f), Fed. R. Civ. P., to dismiss TMS's patent misuse counterclaim and defense (D.I. 11). In that motion, TV Guide explained that TMS's theory of "conditioning" is not legally sustainable in this case. TV Guide's motion was fully briefed as of March 17, 2006 and is currently pending before the Court.

Discovery commenced on March 2, 2006. Depositions are proceeding now. The Scheduling Order in this case provides that the parties will endeavor to complete fact discovery on or before October 2, 2006 -- less than six weeks from now. The Scheduling Order also provides that all discovery, including expert discovery, will be completed by January 30, 2007 (D.I. 27).

On July 24, 2006, TMS filed a motion for leave to amend its pleadings to add Gemstar-TV Guide International, Inc. and Gemstar-TV Guide Interactive, Inc., TV Guide's parent company and another affiliated company, as additional parties to its patent misuse counterclaim (D.I. 60). TV Guide opposed TMS's motion. In that opposition, TV Guide explained that TMS's requested amendment is a waste of the Court's and parties' resources, given that the remedy for patent misuse -- unenforceability of the patent at issue -- is applicable to a patent and therefore is effective as to any entity which might try to enforce it, regardless of whether the entity is a party to the action (D.I. 88). That motion was fully briefed as of August 21, 2006 and is currently pending before the Court.

The Court conducted a discovery conference with the parties on August 21, 2006 to address several outstanding discovery issues, including TV Guide's request to stay discovery directed to TMS's patent misuse allegations. At the hearing, the Court invited TV Guide to file a formal motion to bifurcate TMS's patent misuse counterclaim and defense and to stay discovery relating to those patent misuse allegations. (*Id.*). Moreover, the Court immediately stayed the

4

broad discovery sought by TMS relating to its misuse allegations, permitting only discovery that is directly related to the '078 patent to proceed until the Court rules on TV Guide's motion to bifurcate and stay (*Id.* at 11-13).

The parties are scheduled to appear before Magistrate Judge Thynge October 13, 2006 for a formal mediation conference in the hopes of resolving this matter through settlement. (D.I. 42).

## III.    SUMMARY OF ARGUMENT

1.    TV Guide moves pursuant to Rule 42(b), Fed. R. Civ. P., to bifurcate trial and stay discovery directed to TMS's affirmative defense and counterclaim of patent misuse, pending resolution of the central patent issues raised in TV Guide's pleadings. Rule 42(b) provides that the Court may bifurcate trial on any claim "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Courts routinely bifurcate patent misuse claims and defenses and stay discovery on those issues in patent cases because those claims and defenses raise complex issues that are often resolved as a result of trial on the primary patent issues. *See, e.g., Akzona Inc. v. E.I. Du Pont de Nemours & Co.*, 607 F. Supp. 227, 232 (D. Del. 1984); *Allen-Bradley Co. v. Autotech Corp.*, No. 86 C 8514, 1990 WL 16456 (N.D. Ill. Feb. 8, 1990); *Hewlett-Packard Co. v. Genrad, Inc.*, 882 F. Supp. 1141, 1158 (D. Mass. 1995).

2.    Bifurcation and stay are particularly appropriate here. This is a straightforward patent infringement case. The central issues -- infringement, validity, and damages relating to one patent in suit -- are not complex. The parties have produced, in total, about 200,000 pages of documents -- 145,000 by TV Guide and 55,000 by TMS -- constituting the majority of documents that are relevant to the issues of infringement, validity and damages. Nonetheless, TMS continues to seek extremely broad document discovery from TV Guide and

5

*16 third parties* that is directed strictly to the single issue of TMS's patent misuse allegations. TMS does not dispute that the document discovery it seeks on the patent misuse issues would require TV Guide and 16 third parties to review and produce *millions of pages of documents*. Extensive depositions with respect to those documents necessarily will follow. Rule 1, Fed. R. Civ. P. provides that the Federal Rules shall be administered "to secure the just, speedy, and inexpensive determination of every action." The objectives of that rule would be advanced by bifurcation and stay here.

        3.    Bifurcation and stay is also warranted because the patent misuse counterclaim and defense would greatly increase the complexity and length of the trial. Introduction of evidence on the misuse issue would cause delay and confusion. Much of the discovery that TMS seeks is directed to: (1) events that occurred many years ago -- involving persons no longer associated with the Company; and (2) numerous inflammatory, tangential allegations made by TMS.[1] Proceeding with such evidence at the infringement trial would be unfairly prejudicial to TV Guide.

        4.    TMS, on the other hand, will not be prejudiced in any way by bifurcation and stay of its patent misuse allegations. TMS served its broad document requests directed to patent misuse issues on March 2, 2006. TV Guide timely objected to their scope and specifically invited TMS to narrow its requests. TMS did not respond to TV Guide's invitation. Instead, *TMS sat on its hands for three months* and TMS waited until mid-July to propose supposedly "narrowed" requests. However, the supposedly "narrowed" requests did not meaningfully reduce the number of irrelevant documents TMS is seeking. TMS will have its day in court on

---

[1] For example, TMS asserts that "TV Guide and Gemstar are up to their old patent misuse tricks again" (D.I. 22 at 1) and TMS's discovery requests are clearly directed to information concerning prosecution of former Gemstar employees under the securities laws.

its allegations, should that prove necessary. It is not prejudiced by the timing of that day by bifurcation, where TMS itself did not timely act.

      5.      Finally, as a threshold matter, TMS's patent misuse allegations are not legally sustainable, and TV Guide has already filed a motion to dismiss them. In the event that the Court does not ultimately dismiss TMS's patent misuse allegations, TV Guide respectfully submits that bifurcation of trial and stay of discovery directed to TMS's patent misuse allegations is warranted under Rules 1 and 42 of the Federal Rules of Civil Procedure.

## IV.   STATEMENT OF FACTS

### A.   <u>General Background</u>

      TV Guide Online, LLC is the owner by assignment of the '078 patent. TV Guide Online, Inc. is the exclusive licensee of the '078 patent and has the right to bring suit for past infringement. The '078 patent has never before been asserted in litigation.

      The patented technology, which was developed during the early days of the Internet, allows a television viewer to access television listings for his or her particular viewing location using a computer. TV Guide asserts that TMS has infringed and continues to infringe the '078 patent in connection with its operation of the www.Zap2It.com website.



### B.   <u>Pre-Suit Negotiations</u>

      In early 2005, representatives of TV Guide (and its predecessor and parent companies) initiated discussions with TMS directed to licensing of the '078 patent and other patents.

REDACTED

REDACTED

RLF1-3052655-1



C.    **TMS's Patent Misuse Pleading**

By the end of December 2005, negotiations had broken down.    After filing its Complaint, TV Guide deferred service of the Complaint on TMS and, instead, invited TMS yet again to resume discussions concerning a possible license to the '078 patent.



Accordingly, on January 10, 2006, TV Guide served TMS with the Complaint (D.I. 4).

On February 1, 2006, TMS filed its "Answer, Affirmative Defenses and Counterclaims" setting forth its patent misuse allegations that were focused on the covenant not to assert license term and a legal theory that TV Guide had somehow "conditioned" its license offer on the acceptance of that term.    Shortly after receiving that pleading, TV Guide wrote to TMS stating:

9



**TMS never responded to TV Guide's offer for a license without a covenant not-to-assert.**

TMS's patent misuse pleading is premised on a theory of "conditioning" (D.I. 6). As TV Guide explained in its motion to dismiss, TMS has not pled and cannot plead the legal requirements of a "conditioning" claim as set forth by the United States Supreme Court in *Zenith Radio Corp. v. Hazeltine Research, Inc*, 395 U.S. 100, 135 (1969) (D.I. 12). Such a claim requires an assertion (and, ultimately, proof) that "the patentee refuses to license on any other basis and leaves the licensee with the choice between a license so providing and no license at all." *Id*. In response, TMS argued that it was *really* pursuing a "broader" theory based on the "overall licensing practices supported by TV Guide and Gemstar" that is supposedly based on the decision of the ALJ in an earlier ITC proceeding where different patents were asserted against different infringing products (D.I. 22).

In its reply brief (D.I. 33), TV Guide explained that TMS's vague "broader" theory is fatally flawed because: (1) TMS never pled it; (2) the '078 patent was not asserted in the action pending before the ALJ; (3) the ITC expressly declined to adopt the ALJ's findings; and (4) when an Article III Court ultimately addressed the same patent misuse allegations, the Court did not find patent misuse and issued rulings that are inconsistent with the ALJ's preliminary, unadopted patent misuse findings. *In re Gemstar Dev. Corp. Patent Litig.*, No. MDL-1274-WBH (N.D. Ga. March 24, 2004).[2]

---

[2] During the August 21 telephone conference with the Court, TMS argued that its broad patent misuse discovery is somehow justified because license agreements at issue in earlier proceedings before the ITC and in a multi-district litigation included a covenant not-to-assert clause. Beyond

D.    **Discovery Relating to TMS's Patent Misuse Allegations**

On March 2, 2006, TMS served its first set of document requests on TV Guide (Ex. C).    More than a dozen of those requests seek overwhelmingly broad categories of documents that relate solely to TMS's misuse allegations -- if in fact, they relate at all to any claim or defense in this action.

On April 10, 2006, TV Guide objected to these requests as being unreasonably overbroad, burdensome and prejudicial and expressly invited TMS to narrow those requests (Ex. D). *For more than two months*, TMS simply ignored that invitation.  Then, at a June 21 meet and confer, TMS asserted that its requests were entirely proper but agreed to "consider" whether they could be narrowed.  *After three more weeks*, TMS wrote to TV Guide on July 12, 2006 setting forth some supposedly "narrowed" requests (Ex. E).  The original requests and the supposedly "narrowed" requests at issue are reproduced below (modifications are italicized):

| Doc. Req. No. | Original Requests (March 2, 2006) | "Narrowed" Requests (July 12, 2006) |
|---|---|---|
| 30 | All sworn statements, all transcripts, all | *All hearing and deposition transcripts and* |

---

TMS's failure to properly plead a conditioning claim, as a matter of common sense and fairness, TMS's patent misuse allegations fail.  TMS should not be permitted to participate in patent licensing negotiations with TV Guide -- never saying word one about having an objection to a particular proposed licensing provision -- and then, when negotiations break down, assert an unenforceability claim based on patent misuse (thereby claiming entitlement to practice the patent for free).  Indeed, this Court has found that where the accused infringer provides no evidence of providing an alternative and merely blames the patent owner for not offering an alternative, there can be no finding of patent misuse.  *Bayer AG* v. *Housey Pharms., Inc.*, 228 F. Supp. 2d 467, 471 (D. Del. 2002).  Other Courts have also rejected efforts by accused infringers to make such patent misuse assertions.  *See, e.g., Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 871 (Fed. Cir. 1997) (determining that where a patent owner revoked its own proposal to link a proposed license to the purchase of unpatented items, its activities could not amount to extending the scope of its patent rights) and *Applera Corp.* v. *MJ Research, Inc.*, 349 F. Supp. 2d 321, 335 (D. Conn. 2004) (finding that where a provision is subject to free negotiations, there cannot be a finding of conditioning).  And, TV Guide again points out that there is nothing improper or anticompetitive about the covenant not-to-assert provision that it offered to TMS.  It is a common provision of the type found in many patent licenses because patent owners do not want to license patents to another party only to later be sued under the licensee's patents.

11

| Doc. Req. No. | Original Requests (March 2, 2006) | "Narrowed" Requests (July 12, 2006) |
|---|---|---|
| | expert reports, all discovery responses, all dispositive motions and related filings, and all decisions from any lawsuit or other legal proceedings before any court or agency to which TV Guide is or was a party, whether pending or settled, involving patent misuse and/or antitrust defenses or claims, including but not limited to: (1) Gemstar Development Corp. v. StarSight Telecast Inc., 93-CV-6903 (C.D. Cal.) transferred to Starsight Telecast, Inc. v. Gemstar Development Corp. and Michael C. Levine, 93-CV-20777 (N.D. Cal.), (2) Prevue Interactive, Inc. and United Video Satellite Group, Inc. v. StarSight Telecast, Inc., 93-CV-934 (N.D. Okla.), Gemstar Development Corp. and StarSight Telecast, Inc. v. Prevue Networks Inc. and Telecast Inc., 98-CV-20778 (N.D. Cal.) transferred to Gemstar Development Corp., Superguide, Inc. and StarSight Telecast, Inc. v. Prevue Networks, Inc., 99-CV-127 (N.D. Okla.), (3) In re Gemstar Development Corporation Patent Litigation, MDL-1274-WBH (N.D. Ga.), and (4) Superguide Corp. v. DirecTV Enterprises, Inc., No. 1-00CV144 (W.D.N.C.), (5) In the Matter of Certain Set-Top Boxes and Components Thereof, ITC Investigation No. 337-TA-454. | *exhibits identified therein, all expert reports and exhibits and evidence referenced therein, all dispositive motions, post-hearing briefs, and related filings and exhibits and evidence referenced therein; the Complainants' and Respondents' proposed findings of fact and/or conclusions of law and the exhibits and evidence referenced therein; and the Final Initial Determination, findings of fact, and conclusions of law of Judge Luckern and the exhibits and evidence references therein* relating to patent misuse and/or antitrust defenses or claims from one or more of the following proceedings: (1) In re Gemstar Development Corporation Patent Litigation, MDL-1274-WBH (N.D. Ga.), and (2) In the Matter of Certain Set-Top Boxes and Components Thereof, ITC Investigation No. 337-TA-454. |
| 31 | All documents referring or relating to the Department of Justice investigation into the merger of Gemstar and TV Guide | All documents *produced or generated in connection with* the Department of Justice investigation into the merger of Gemstar and TV Guide *relating to actual or potential suppliers, purchasers, licensees, licensors, market conditions, competition, market share, market power, or the actual or potential effect of the proposed merger on any market for interactive program guides or interactive program guide technology.* |
| 74 | All TV Guide licenses and all other agreements that you contend permit or authorize any third party to practice any patent which TV Guide owns or for which | All TV Guide licenses *for interactive program guide technology that contain a grantback license, non-assertion clause, or covenant not to sue.* |

12

| Doc. Req. No. | Original Requests (March 2, 2006) | "Narrowed" Requests (July 12, 2006) |
|---|---|---|
| | TV Guide otherwise has the right to sue for patent infringement. | |
| 75 | All documents constituting, referring to, or relating to communications between TV Guide and any licensee or prospective licensee to negotiate or otherwise discuss the terms of any TV Guide license or other agreement that you contend permits or authorizes any third party to practice any patent which TV Guide owns or for which TV Guide otherwise has the right to sue for patent infringement. | All documents constituting, referring to, or relating to communications between TV Guide and any licensee or prospective licensee to negotiate or otherwise discuss the terms of any TV Guide license or other agreement *relating to interactive program guide technology that contains a grantback clause, non-assertion clause, or covenant not to sue.* |
| 76 | All documents constituting, referring to, or relating to communications among TV Guide's officers, directors, employees, contractors, or agents regarding the terms of any TV Guide license or other agreement that you contend permits or authorizes any third party to practice any patent which TV Guide owns or for which TV Guide otherwise has the right to sue for patent infringement. | All documents constituting, referring to, or relating to communications among TV Guide's officers, directors, employees, contractors, or agents regarding the terms of any TV Guide license or other agreement *relating to interactive program guide technology that contains a grantback clause, non-assertion clause, or covenant not to sue.* |
| 81 | All documents and things that comprise, relate to, refer to or concern licenses entered into or contemplated by TV Guide in the field of interactive program guide technology. | |
| 82 | All communications, testimony, and correspondence between TV Guide and the Department of Justice, or any other government agency, relating to, referring to, or concerning interactive program guide technology. | All communications, testimony, and correspondence between TV Guide and the Department of Justice, or any other government agency, *relating to, referring to actual or potential suppliers, purchasers, licensees, licensors, market conditions, competition, market share, market power, or actual or potential anticompetitive behavior or antitrust violations* relating to interactive program guide technology *or the licensing of interactive program guide technology.* |
| 83 | All communications, testimony, and correspondence between TV Guide and the Department of Justice, or any other government agency, relating to, referring to, or concerning any future actions TV Guide | All communications, testimony, and correspondence between TV Guide and the Department of Justice, or any other government agency, relating to any future actions TV Guide would or would not |

| Doc. Req. No. | Original Requests (March 2, 2006) | "Narrowed" Requests (July 12, 2006) |
|---|---|---|
| | would or would not take with respect to interactive program guide technology, including, without limitation, the '078 patent. | take with respect to *acquiring, licensing, or enforcing rights to* interactive program guide technology. |
| 84 | All communications, testimony, and correspondence between TV Guide and the Department of Justice, or any other government agency, relating to, referring to, or concerning TV Guide's licensing of interactive program guide technology. | All communications, testimony, and correspondence between TV Guide and the Department of Justice, or any other government agency, relating to *the terms of* TV Guide's *actual or proposed licenses for* interactive program guide technology. |
| 86 | All licenses relating to interactive program guide technology which contain a covenant not to sue, or non-assertion clause, grantback clause, or any other provisions that permit TV Guide and/or any TV Guide customer or licensee to practice technology not owned by TV Guide. | |
| 87 | All documents relating to any discussions, communications, or negotiations with licensees or prospective licensees of interactive program guide technology regarding a covenant not to sue, non-assertion clause, grantback clause, or any other provisions that permit TV Guide and/or any TV Guide customer or licensee to practice technology not owned by TV Guide. | |
| 88 | All documents referring to, relating to, or comprising communications among TV Guide's officers, directors, employees, contractors, or agents regarding a covenant not to sue, non-assertion clause, grantback clause, or any other provisions that permit TV Guide and/or any TV Guide customer or licensee to practice technology not owned by TV Guide. | |
| 92 | All transcripts or minutes of any conference calls, meeting, discussions, or communications that TV Guide has had with third party analysts, investors, shareholders, or media personnel, including, without limitation, transcripts of conference calls, meeting, discussions, or communications concerning patents, interactive program guide technology, market performance, competition, TMS, litigation, earnings, | All transcripts or minutes of any conference calls, meeting, discussions, or communications that TV Guide has had with third party analysts, investors, shareholders, or media personnel *relating to actual or potential suppliers, purchasers, licensees, licensors, market conditions, competition, market share, market power, TV Guide's position within a market, potential or actual threats of* |

14

| Doc. Req. No. | Original Requests (March 2, 2006) | "Narrowed" Requests (July 12, 2006) |
|---|---|---|
| | licensing, and related topics | *litigation, or potential or actual anticompetitive behavior or antitrust violations relating to interactive program guide technology or the licensing of interactive program guide technology.* |

TMS's document requests, before and after modifications, would require production of a huge number of documents that are unrelated to the '078 patent in suit. The documents sought have no relevance to the central issues of infringement, validity and damages in this action.[3] TV Guide, therefore, continued to object to the requests as overly broad and unduly burdensome.[4]

On June 27, 2006 the parties appeared before the Court for a technology tutorial. At the conclusion of that tutorial TMS told the Court *that it had no scheduling issues to address with the Court* (D.I. 51). TMS made that statement even though TV Guide had made plain that it was objecting to TMS's overbroad patent misuse discovery efforts. In fact, just two days later, TMS wrote to the Court seeking permission to file an early summary judgment motion on the issue of non-infringement (D.I. 50). TMS's articulated reason for its request was the straightforward nature of the technology (D.I. 50).

On July 18, during a meet and confer teleconference, TV Guide told TMS that it intended to seek relief from the Court in view of TMS's continuing pursuit of its overly broad

---

[3] TV Guide submits that TMS's document requests are not even reasonably tailored to any legally cognizable patent misuse claim.

[4] In its July 12, 2006 letter to TV Guide, TMS stated that, notwithstanding its presentation of supposedly "narrowed" requests, TMS reserved the right to move to compel discovery under the document requests as originally served (Ex. E). In a subsequent telephone conversation counsel for TMS stated that the inclusion of that statement in the July 12, 2006 letter was "inadvertent." TMS, however, has not withdrawn its original document demands.

RLF1-3052655-1

document requests (Ex. E). The Court scheduled an August 21 teleconference to discuss this and other issues.

TMS then served subpoenas demanding many of the same documents from *16 third parties* -- eight law firms and eight companies that do business with TV Guide -- that would require collection, review and processing of millions of pages of documents. TV Guide objected to TMS's third-party discovery advising TMS that such discovery effects reflect: (1) an attempt by TMS to circumvent TV Guide's legitimate discovery objections; (2) an attempt by TMS to impose unreasonable costs and burdens on third parties that do business with TV Guide or that have provided legal representation to TV Guide; and (3) most troublingly, an attempt by TMS to divest this Court of control over discovery in this action by forcing discovery from third parties before this Court had an opportunity to hear the issues on August 21.

## V.     ARGUMENT

### A.     The Law Favors Separate Trials And Discovery To Promote Expedience And Economy

In accordance with Rule 42(b), Fed. R. Civ. P., a Court may order separate trials of claims, counterclaims or issues "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." This rule "'empowers the court to [bifurcate] issues, which, if tried with the main issues, would lead to confusion, delay, additional expense, or undue prejudice.'" *Akzona Inc.*, 607 F. Supp. at 232. "Under Rule 42(b), a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management." *Id. See also Gardco Mfg. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987).

The Federal Circuit has noted with favor, for example, the "now-standard practice" of bifurcating antitrust claims from patent claims, and trying the patent claims first. *In*

16

*re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986). Bifurcation is standard practice in these cases because the trial of the patent claims will often make discovery and trial of the complex antitrust claims unnecessary. The same logic holds true for the patent misuse allegations in this case where TMS is seeking broad discovery akin to that which is sought in an antitrust case (*e.g.*, "market power," "TV Guide's positioning within the market," "DOJ investigation into the merger of Gemstar and TV Guide").

The Court's authority to stay discovery on the patent misuse allegations and "limit discovery to issues relevant to the first trial" is "implicit" in Rule 42(b). *Akzona*, 607 F. Supp. at 232 (granting motion to bifurcate and stay discovery on antitrust issues until conclusion of patent trial). "'One of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues.'" *Id.* at 236. *See generally Allen-Bradley Co*, No. 86 C 8514, 1990 WL 16456 (patent claim bifurcated from unfair competition claim and patent misuse defense, and discovery of these issues stayed) (Ex. F); *Hewlett-Packard Co*, 882 F. Supp. at 1158 (motion under Fed. R. Civ. P. 42(b) for separate trial, if necessary, on antitrust, unfair competition and patent misuse issues and to stay discovery of these issues granted).

### B. Expensive and Protracted Patent Misuse Discovery Before Resolution Of The Patent Issues May Well Prove To Be A Waste Of Valuable Resources

This action is particularly suited for bifurcation and stay. TMS has requested millions of pages of documents from TV Guide and 16 third parties that are unrelated to any issue in the central patent infringement case. For example, TMS's "narrowed" requests seek documents that fall within four general categories:

    (1)    documents from prior legal proceedings both in the ITC and in a multi-district litigation where the '078 patent was not asserted;

(2)    documents concerning Department of Justice investigations into the Gemstar merger (which took place in 2000) that were not directed to the '078 patent;

(3)    documents concerning all of Gemstar/TV Guide's licensing activities, regardless of whether the resulting license conveys rights to the '078 patent; and

(4)    all "transcripts and minutes of any conference calls and communications TV Guide has had with any third parties" relating broadly to any market conditions concerning any "interactive program guide."

(Ex. E).   Those documents simply do not relate to the central issues of patent infringement, validity, and damages:

- *None* of the requested documents relate to how the claims of the '078 patent apply to the accused www.Zap2it.com website.

- *None* of the requested documents relate to the discovery of any potential prior art to the '078 patent.

- *None* of the requested documents relate to the amount of revenues that were lost by TV Guide as a result of TMS's activities that infringe the '078 patent.

Moreover, much of the patent misuse discovery sought by TMS is intricately interwoven with issues of third party confidentiality and questions of attorney-client privilege and work product immunity.  Going forward with such discovery would, therefore, likely lead to extensive motion practice involving the parties -- as well as third parties on whom TMS has served numerous subpoenas.   Discovery of these complex issues will make it virtually impossible for the parties to complete fact and expert discovery and claim construction and summary judgment activities in the time specified by the Court's Scheduling Order.  All of this can be avoided by trying the patent issues first in a separate trial and staying discovery on the patent misuse issues.

A stay will prevent the parties and the Court from wasting valuable resources dealing with potentially moot patent misuse issues which are a distraction from the core issues of

18

patent infringement, validity, and damages. For example, if bifurcation is granted and TMS is successful in its non-infringement or validity defenses, the issue of patent misuse will never need to be considered. *See Akzona*, 607 F. Supp. at 235. If TV Guide prevails on the issue of infringement, there is also a substantial likelihood that discovery on alleged patent misuse will not need to go forward given the commercial realities of this case.

Moreover, patent misuse claims are equitable in nature and are tried before a court rather than a jury. *See In re Yarn Processing Patent Validity Litigation*, 472 F. Supp. 170 (S.D. Fla. 1979); *Virginia Panel Corp*, 133 F.3d at 868. For this additional reason, this case is particularly suited for bifurcation -- patent misuse issues ought to be separately tried from the patent issues in any case. Bifurcating the patent misuse defense and counterclaim from the central patent issues also will serve to reduce jury confusion -- there would be no need to present to the jury, who will be charged only with the findings of patent infringement and damages, the voluminous and complex set of evidence relating to alleged patent misuse.

### C.    TMS Will Not Be Prejudiced By Separate Trial And Discovery

Bifurcating and staying the patent misuse defense and counterclaim will not prejudice TMS because there will be no need to retry issues already decided in the first trial. There is no overlap of issues, documents or witnesses between the central patent infringement case and the patent misuse claim.[5] The timing of discovery and trial of the patent misuse issues cannot be of significance to TMS given that it waited three months to even respond to TV Guide's request to narrow its overly broad document requests. Moreover, TMS did not raise the patent misuse discovery issue with the Court until less than two months before the close of fact

---

[5] There is no reason why any of the 16 third parties that TMS has subpoenaed -- or the four former Gemstar employees that TMS has subpoenaed -- in connection with TMS's patent misuse discovery would testify at trial about infringement, validity or damages.

discovery -- even though TV Guide made crystal clear its objections to the overly broad and unduly burdensome requests. In fact, TMS did not raise the issue with the Court until *after TV Guide advised TMS that TV Guide would be approaching the Court for a request to sever and stay*.

In contrast, patent misuse discovery is not only likely to be wasteful and contentious, but also prejudicial to TV Guide. TV Guide has a legitimate interest in having its patent infringement case adjudicated so that it can continue with its licensing efforts. And, as TV Guide has already advised the Court, much of the discovery that TMS is seeking under the umbrella of patent misuse discovery seems calculated to find potentially embarrassing or inflammatory information about individuals who were formerly associated with TV Guide's parent company.[6] Allowing discovery to proceed on TMS's patent misuse issues undoubtedly would delay the close of discovery and likely delay the date of trial on TV Guide's patent case. Moreover, the necessity of taking discovery of third-parties who have been involved in licensing negotiations with TV Guide may have a chilling effect on prospective licensees -- contrary to public policy which encourages settlement of disputes.

### D.    TMS's Patent Misuse Allegations Are Not Legally Sustainable

In the briefing that TV Guide submitted with its motion to dismiss TMS's patent misuse counterclaim and defense, TV Guide fully explained in detail why TMS's patent misuse

---

[6] With respect to TMS's demand for information concerning Department of Justice investigations (which, of course, did not involve the '078 patent), it is a matter of public record that certain individuals who formerly had management responsibilities at Gemstar faced prosecution under the securities laws. Those individuals are no longer associated with Gemstar-TV Guide. For almost three years now, Gemstar-TV Guide has had an entirely new management team in place. Indeed, the SEC has explicitly commented on the "significant cooperation and remediation following a change in senior management and restructuring of its corporate governance" at Gemstar-TV Guide (Ex. G). In any event, the DOJ investigation, which was settled in early 2003, was focused on "gun jumping" in connection with the Gemstar/TV Guide merger, which closed in 2000.

allegations are legally futile and have not been properly pled (D.I. 12 and 33). TV Guide will not repeat that explanation here.

TV Guide continues to believe that the Court should dismiss TMS's patent misuse allegations under Rule 12, Fed. R. Civ. P. In the event that the Court decides not to do so, for the reasons set forth above, the interests of economy to the parties, witnesses and the Court militate strongly in favor of bifurcation and stay of discovery directed to TMS's patent misuse allegations.

## VI.   CONCLUSION

For the foregoing reasons, TV Guide's Motion to Bifurcate Trial and Stay Discovery of TMS's Affirmative Defense and Counterclaim of Patent Misuse should be granted.


OF COUNSEL:

Robert C. Morgan
Christopher J. Harnett
Ching-Lee Fukuda
Stuart W. Yothers
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Ronald E. Naves, Jr.
Sr. Vice President
Legal Affairs and Litigation
Gemstar-TV Guide International, Inc.
6922 Hollywood Boulevard
Hollywood, California 90028
(323) 817-4600

August 28, 2006

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Steven J. Fineman (#4025)
RICHARDS, LAYTON & FINGER PA
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
fineman@rlf.com

Attorneys for Plaintiffs TV Guide Online, Inc.
and TV Guide Online, LLC

21

RLF1-3052655-1