**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TV GUIDE ONLINE, INC. and<br>TV GUIDE ONLINE, LLC,<br><br>　　　　Plaintiffs and Counterclaim Defendants,<br>　　　　　　　　　v.<br><br>TRIBUNE MEDIA SERVICES, INC.,<br><br>　　　　Defendant and Counterclaim Plaintiff. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

C.A. No. 05-725-KAJ

**PUBLIC VERSION**

**TMS'S ANSWERING BRIEF IN OPPOSITION TO TV GUIDE'S MOTION TO
BIFURCATE TRIAL AND STAY DISCOVERY ON TMS'S AFFIRMATIVE
<u>DEFENSE AND COUNTERCLAIM OF PATENT MISUSE</u>**

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES HITCHENS & WILLIAMS
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
rherrmann@morrisjames.com

Mark A. Pals, P.C.
Linda S. DeBruin
Michael A. Parks
Meredith Zinanni
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
312.861.2000

*Attorneys for Defendant
Tribune Media Services, Inc.*

Originally filed: September 12, 2006
Public version filed: September 19, 2006

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

NATURE AND STAGE OF PROCEEDINGS ...................................................4

SUMMARY OF ARGUMENT ...........................................................................5

STATEMENT OF FACTS ..................................................................................7

ARGUMENT ......................................................................................................9

    I.     Staying Patent Misuse Discovery that has been Ongoing Since
           the Inception of this Case Serves No Legitimate Purpose and
           Will Prejudice TMS. ..........................................................................9

    II.    The Premise for this Eleventh Hour Motion—that TMS Seeks
           "Millions" of Pages of Documents—is False. ..........................................15

    III.   The Court Should Allow the Parties to Complete Discovery
           and then Consider Whether a Bifurcated Trial is Warranted in
           Light of a Full Discovery Record. ...........................................................16

CONCLUSION..................................................................................................17

i

# TABLE OF AUTHORITIES

**Page**

*Applied Biosystems, Inc. v. Cruachem, Inc.*,
    C.A. No. 89-579, 1990 WL 495458 (D. Del. Aug. 3, 1990) ...............10, 11, 13, 14

*B. Braun Med. Inc. v. Abbott Labs.*,
    892 F. Supp. 112 (E.D. Pa. 1995) ...........................................................................17

*Cipollone v. Liggett Group, Inc.*,
    785 F.2d 1108 (3d Cir. 1986).................................................................................15

*Dentsply Int'l, Inc. v. New Tech. Co.*,
    C.A. No. 96-272, 1996 WL 756766 (D. Del. Dec. 19, 1996)................................14

*Enzo Life Sciences, Inc. v. Digene Corp.*,
    C.A. No. 02-212, 2003 WL 21402512 (D. Del. June 10, 2003)............................14

*In the Matter of Certain Set-Top Boxes and Components Thereof*,
    ITC Inv. No. 337-TA-454, 2002 WL 31556392 (ITC June 21, 2002) ...................5

*Johns Hopkins Univ. v. Cellpro*,
    160 F.R.D. 30 (D. Del. 1995) ................................................................. 13-14, 15

*THK America, Inc. v. NSK Co. Ltd.*,
    151 F.R.D. 625 (N.D. Ill 1993)..............................................................................14

*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*,
    707 F. Supp. 1429 (D. Del. 1989).........................................................................11


## RULES

Fed. R. Civ. P. 26(f)..................................................................................................9

**INTRODUCTION**

TV Guide's motion to "stay" discovery on TMS's patent misuse counterclaim and affirmative defense is too late. This motion comes nearly nine months after TV Guide served its Complaint. Never once during the entire discovery period did TV Guide breathe a word about staying patent misuse discovery:

- TV Guide did not make the request to sever and stay patent misuse discovery in response to TMS's counterclaim filed seven months ago;

- Nor did it make such a request in proposing the scheduling order to the Court six months ago;

- Nor did it make such a request when the Court ordered discovery to occur on *all* claims six months ago;

- Nor did it make such a request in response to TMS's document requests served six months ago about which it complains;

- Nor did it make such a request when TV Guide itself served patent misuse discovery and obtained responses;

- Nor did it make such a request in the multiple meet and confer sessions that the parties have had over TV Guide's discovery responses;

- Nor did it make such a request when the parties were before the Court on June 27;

- Nor did it make such a request upon receiving notice that TMS would issue Rule 45 subpoenas.

Instead, *TV Guide waited* until one month before the target date for completing discovery to request a stay of patent misuse discovery.

Throughout this period, TMS has spent considerable time, effort and resources pursuing party and third party discovery on its patent misuse claims. TMS has served document requests and interrogatories on patent misuse issues; TMS issued third party subpoenas in at least 12 different jurisdictions which are still pending; documents are being gathered, produced and analyzed; parties and third parties have been meeting and

1

conferring for months; and party and third party depositions have been noticed and continue to be noticed. After months of trying to overcome TV Guide's baseless objections to basic patent misuse discovery, TMS is on the brink of obtaining the information it requires from TV Guide and third parties. Now, at this late stage, TV Guide seeks to put a stop to patent misuse discovery altogether.

To say at this eleventh hour that patent misuse discovery—which TMS has pursued according to the Court's scheduling order (an order issued with TV Guide's consent)—should now be stayed is senseless and would severely prejudice TMS. For example, valid subpoenas issued and served by TMS may become difficult to enforce. Third party witnesses whom TMS has found and served may disappear. Documents now subject to subpoena may also disappear. Party and third party witnesses who have knowledge of both infringement and patent misuse facts will need to be deposed twice. Employees identified as having relevant information and noticed for deposition may become former employees. And memories may fade. In short, moving to stay discovery at this late date is like telling a pilot not to take off *after* he has flown half-way around the world and is finally approaching his destination.

Besides, the premise for TV Guide's motion is false. TV Guide repeatedly claims that it will be unduly burdened because TMS is somehow pursuing "millions of pages of documents," including documents produced in prior litigation. Those are just unsubstantiated words. TMS *has not* asked for a wholesale production of documents produced in the prior ITC litigation. Rather, TMS has asked for *hearing exhibits and transcripts*, and deposition exhibits and transcripts, pertaining to issues of market power and TV Guide's licensing program. This is a *fraction* of the documents from prior

2

litigation.    These exhibits have already been reviewed for privilege and are easily
.referenced through Respondents' Proposed Findings of Fact and the hearing exhibit list.
If TV Guide has the hearing exhibits (TV Guide has *refused* to even tell TMS if they
have these documents, thereby forcing TMS to serve eight subpoenas on the law firms
that represented parties, including TV Guide, in the ITC hearing), then the documents
could be identified and produced with little effort.    TV Guide also fails to offer any
evidence showing that TMS's other document requests seek anything other than a
manageable set of documents reasonably tailored to TMS's patent misuse claim.

  TV Guide's effort to resist and now stay patent misuse discovery is not about
burden.    TV Guide's efforts are about attempting to win a claim by choking off
discovery.    TMS has spent months trying to obtain straight answers to simple questions.


**REDACTED**


TMS needs to know who TV Guide's licensees are.    To this end, TMS asked TV Guide
to produce all of its licensing agreements  **REDACTED**

         TV Guide refused, arguing that licensing
agreements which do not convey rights to the '078 patent are "irrelevant."    That makes
no sense.  How can TMS determine who TV Guide's licensees are  **REDACTED**

**REDACTED**                                    if TV Guide will not

produce its licensing agreements?

TV Guide has not been cooperative even where it had no objection to discovery. At the very beginning of the discovery period, for example, TMS propounded interrogatories asking TV Guide to identify all licensing agreements in which the subject matter of the license related to the '078 patent.


**REDACTED**


At bottom, TMS's discovery into patent misuse issues has been met with objection and resistance at every turn. This belated motion to stay patent misuse discovery is just another handful of marbles that TV Guide has thrown into the path.

### NATURE AND STAGE OF PROCEEDINGS

TV Guide served its Complaint for patent infringement against TMS on January 10, 2006. (D.I. 4.) On February 1, 2006, TMS pled an affirmative defense and counterclaim of patent misuse based on improper attempts by TV Guide to obtain from licensees a covenant-not-to-sue, non-assertion, or grantback clause giving TV Guide *and all of TV Guide's many licensees* the right to use a licensee's intellectual property for free, thereby deterring innovation. (D.I. 6, First Affirmative Defense and Counterclaim ¶¶ 8-12.) On March 10, 2006, the Court issued its scheduling order requiring the parties to endeavor to conclude fact discovery on all claims on or before October 2, 2006. (D.I. 27 at 2.) The order states that all discovery must be completed by January 30, 2007. (*Id.*)

Throughout the litigation, TMS has sought discovery relating to all issues in the case, including patent misuse. For example, TMS has served and pursued document requests, interrogatories, requests for admission, and Rule 45 subpoenas. On August 17, 2006, TV Guide raised for the first time in this case a request to stay patent misuse discovery. (D.I. 91, TV Guide's Discovery Letter.) TMS opposed the request for a stay. During an August 21, 2006 discovery teleconference, the Court asked the parties to brief the issue of whether patent misuse discovery should be stayed. The motion at issue followed.[1]

## SUMMARY OF ARGUMENT

1.     TV Guide's request to stay patent misuse discovery comes too late and would severely prejudice TMS. TV Guide did not request to stay patent misuse

---

[1] TV Guide once again improperly uses a discovery pleading in an attempt to reargue its motion to dismiss, hoping to portray TMS's patent misuse claim as a distraction unworthy of discovery in an effort to deflect attention from the merits of the pending motion. TMS's opposition to TV Guide's motion to dismiss explains in full why that motion is improper and lacks merit. (*See* D.I. 22.)        **REDACTED**

As explained there, TMS's claim that TV Guide conditioned a license to the '078 patent on an unlawful covenant-not-to-sue       This is not the time to litigate the merits of the case, but when that time comes, TMS will prove that TV Guide is wrong.        **REDACTED**

The merit of TMS's claim is underscored by proceedings in the International Trade Commission and in MDL litigation in the Northern District of Georgia involving similar issues. In particular, Judge Luckern found, after a multi-week evidentiary hearing, that TV Guide had substantial market power; that TV Guide used that market power to demand a covenant-not-to-sue from hundreds of licensees; and that the covenant-not-to-sue was extremely broad and had the effect of deterring innovation. *See In the Matter of Certain Set-Top Boxes and Components Thereof*, ITC Inv. No. 337-TA-454, 2002 WL 31556392 at *80-81 (D.I. 22, Br. at Tab 1). A similar claim under federal antitrust laws survived the summary judgment phase of litigation in MDL proceedings before that case settled.

discovery during the parties' Rule 26(f) discussions, omitted any mention of phased discovery from the parties' joint proposed scheduling order, and allowed TMS to spend time and resources pursuing party and third party patent misuse discovery without ever mentioning a stay.  As a result, patent misuse discovery has been served and is pending, not only in this jurisdiction, but in at least twelve other jurisdictions where Rule 45 subpoenas have been issued.  With trial in this matter currently set for next September, a stay in patent misuse discovery now would push that discovery back for at least an entire year—perhaps into 2008—and maybe even longer.  The discovery trail may go cold, evidence could become stale, and memories may fade.  A stay of patent misuse discovery will also waste time and resources by requiring the several witnesses who have information regarding both infringement and patent misuse to be deposed twice.

2.    TV Guide's claim that a stay is necessary to avoid extraordinarily burdensome and costly patent misuse discovery is false.  TMS does not seek "millions of pages" of documents, as TV Guide asserts.  Rather, TMS seeks *hearing exhibits and transcripts*, and *deposition exhibits and transcripts*, from prior litigation on issues common to this case, along with a manageable set of relevant documents related to TV Guide's licensing activities and market power.   The trial exhibits and deposition transcripts from the prior ITC litigation have already been collected, reviewed, Bates-labeled and produced in two previous litigations.  TV Guide's unsubstantiated rhetoric fails the test for staying discovery based upon supposed burden.

3.    Given the advanced stage of discovery in this case and the overlap of patent misuse and non-infringement witnesses, the rational course of action is to compel TV Guide to produce the documents it has been withholding for months, allow the parties

to complete discovery on all claims, and then determine at a later date whether a bifurcated trial makes sense once the evidence is collected and the parties can determine whether or not the trial plan for these claims warrants one trial or two. If patent misuse discovery is stayed now, the Court will be forced to hold two trials, even if later developments make clear that all issues should be considered together.

## STATEMENT OF FACTS

On March 2, 2006, TMS served discovery requests seeking information on issues central to its patent misuse claim. (Ex. B, Defendant's First Set of Requests for the Production of Documents and Things; Ex. C, Defendant's First Set of Interrogatories.) TV Guide served its responses on April 10, 2006,


**REDACTED**


                                                                    TMS

decided to await TV Guide's document production to determine precisely what documents TV Guide would withhold. After 60 days, TV Guide had produced relatively few documents pertaining to patent misuse issues and had not substantively responded to interrogatories asking TV Guide to identify licensing agreements conveying rights to the '078 patent. Thus, it was impossible for TMS to determine how broadly TV Guide interpreted the '078 patent and what documents TV Guide intended to produce.

On June 9, 2006, therefore, counsel for TMS wrote a detailed letter outlining concerns with the deficiencies in TV Guide's document production and interrogatory responses. (Ex. F, June 9, 2006 letter from C. Watson to C. Harnett.) TMS and TV Guide then met and conferred in an effort to resolve differences over the scope of discovery and to understand exactly what categories of documents TV Guide intended to produce in light of its interpretation of the '078 patent. TMS repeatedly asked TV Guide to explain what licensing agreements and negotiation documents would fall within TV Guide's interpretation of the '078 field of use. (If TV Guide interpreted the '078 patent to encompass many of the documents that TMS sought from the ITC litigation, then perhaps any discovery dispute could be resolved.)

## REDACTED

Ironically, TV Guide tells the Court in its brief that TMS "sat on its hands for three months" during this period of time. (D.I. 108, Br. at 6.) That obviously is not true.

By early July, it had become clear that TV Guide's promised document production on patent misuse issues was deficient. TV Guide had not even told TMS at that point which licensing agreements it believed conveyed rights to the '078 patent. TMS, therefore, made a final effort to revise its document requests in such a way as to obtain TV Guide's commitment to voluntarily produce clearly relevant documents. (*See* Ex. G, Jul. 12, 2006 letter from M. Zinanni to C. Harnett; Ex. L, Jul. 17, 2006 letter from T. Hernandez to C. Harnett.) TV Guide rejected the proposal. TMS immediately sought a discovery conference to compel production of documents. That conference was set

approximately one month out—for August 21, 2006.[2]  TMS's discovery letters to the

Court dated August 17 and 18 identify the discovery disputes at issue.  (*See* D.I. 92, 95,

TMS's Discovery Letters.)

At the August 21, 2006 hearing, the Court noted that it was not inclined to agree

with TV Guide's spurious characterization of TMS as "just an out-of-control litigant on

the other side who really doesn't have anything except fishing on their mind."  (D.I. 100,

Aug. 21, 2006 Tr. at 11:8-12.)  The Court, however, decided not to resolve TMS's

request for an order compelling discovery until after it resolved TV Guide's newly-

minted motion to "sever and stay" patent misuse discovery.  (*Id.* at 13:6-11.)  In the

meantime, the Court ordered TV Guide to identify the license agreements that, at least

according to TV Guide's interpretation, conveyed rights to the '078 patent.  (*Id.* at 17:3-

18:4.)       **REDACTED**

## ARGUMENT

**I.     STAYING PATENT MISUSE DISCOVERY THAT HAS BEEN ONGOING
SINCE THE INCEPTION OF THIS CASE SERVES NO LEGITIMATE
PURPOSE AND WILL PREJUDICE TMS.**

Requests to conduct discovery in phases should be made during the Rule 26(f)

conference before discovery begins.   Fed. R. Civ. P. 26(f)(2) (prior to the initial

scheduling conference, the parties are to discuss "whether discovery should be conducted

in phases or be limited to or focused on particular issues").  The Court's February 21,

---

[2] The Court was available for the discovery conference as early as August 14, but the
conference was held on August 21 at TV Guide's request.

2006 Order expressly directed the parties to confer on all issues described under Rule 26(f).  (D.I. 10.)  TV Guide, however, never mentioned phased discovery in the proposed scheduling order or at the Rule 26(f) conference, or in response to any of TMS's discovery requests, or during the recent June 27, 2006 technology tutorial before the Court—or at any time during the nine-month pendency of this case.  (*See* D.I. 27 (Scheduling Order); D.I. 26 (Mar. 8, 2006 Tr., Scheduling Conf.); D.I. 51, (June 27, 2006 Tr. at 17:7-15).)[3]  Requests to conduct discovery in phases made after the case has progressed are disfavored.  *See Applied Biosystems, Inc. v. Cruachem, Inc.*, C.A. No. 89-579, 1990 WL 495458 at *2-3 (D. Del. Aug. 3, 1990) (ordering separate trials on patent and antitrust issues, but refusing to stay antitrust discovery, noting that a stay would be "inappropriate in light of the extensive antitrust discovery that has already taken place").

After months of trying to overcome TV Guide's baseless objections to the most basic discovery, TMS is finally on the brink of obtaining the information it requires from TV Guide and third parties on patent misuse issues.  Now—at the eleventh hour—TV Guide seeks to undermine this process and "stay" discovery.  That is illogical and unfair to TMS.  Courts in this district have rejected bifurcation as part of a tactical strategy to

---

[3] THE COURT:  Let me ask a question of you folks as long as we have everybody together:  How are we doing with the schedule that we've put in place last March?  Are things moving ahead?

MR. MORGAN:  Things are going along just fine, Your Honor.

THE COURT:  So we're on track?  We don't have any problems?

MR. MORGAN:  Yes, your honor.

(D.I. 51, June 27, 2006 Tr. at 17:7-15.)

avoid producing relevant discovery—a strategy that TV Guide seeks to use here. *See Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1435 (D. Del. 1989) (noting that the timing of the motion to bifurcate "does appear to be conspicuously fortuitous—defendant filed this motion on the eve of the date its responses to plaintiff's interrogatories were due . . .."). TMS should be allowed—and TV Guide should be compelled—to complete discovery on all issues now, rather than delaying until some indefinite point in the future.

Not only has TV Guide unreasonably delayed its request for a stay, but TV Guide itself has propounded discovery requests pertaining to patent misuse to which TMS has responded. (*See, e.g.*, Ex. H, TMS' Responses to TV Guide's First Set of Interrogatories at 28-37.) TV Guide's decision to seek its own discovery on patent misuse issues equitably bars it from now seeking to stay TMS's discovery. In *Applied Biosystems*, the plaintiff—much like TV Guide has done here—moved to sever its infringement case from the patent misuse counterclaim, and "withheld production of documents that it deem[ed] related to the antitrust claims." 1990 WL 495458 at *1. But the defendant—much like TMS has done here—had already responded to interrogatories and requests for production. *Id.* at *3. Judge Roth, noting that there had been "roughly nine months of unilateral discovery on antitrust issues" by the plaintiff, denied a stay of discovery on the patent misuse counterclaim. *Id.*

Moreover, a stay of misuse discovery at this juncture would severely prejudice TMS's efforts to pursue its legitimate patent misuse counterclaim, creating inefficiencies, delay, and added expense. ***First***, staying discovery now would interfere with pending Rule 45 subpoenas for documents and testimony. For example:

11

- TMS has issued subpoenas in other jurisdictions to four former TV Guide executives responsible for developing and implementing TV Guide's patent licensing program. TMS has located and served two of these witnesses. At least one witness may have responsive documents. Staying discovery now might render the subpoenas unenforceable, risking lost testimony and documents.

- TMS has issued subpoenas in other jurisdictions to eight cable companies.

## REDACTED

  Staying discovery now might render the subpoenas unenforceable and jeopardize TMS's ability to obtain documents at some unknown point in the future.

- TMS also has issued subpoenas in other jurisdictions to eight law firms in an effort to obtain documents from the ITC litigation on issues that overlap this case. Staying discovery again might make the subpoenas unenforceable. If TV Guide does not have these documents (it refuses to tell TMS one way or the other), TMS's ability to obtain this important information will be jeopardized.

Forcing TMS to wait for at least a year before collecting documents and taking depositions from third parties risks losing important evidence. Memories may fade as time passes. Third party witnesses might not be found again. Third party documents may be lost or destroyed. TMS has devoted resources to pursue this third party discovery. Forcing TMS to either withdraw or abandon these subpoenas now risks loss of key information, creates unnecessary confusion with the third parties, and will cause TMS to duplicate the time, effort and expense that has been invested in the process to date.

*Second*, staying patent misuse discovery risks losing important party discovery from TV Guide itself. Again, memories may fade, and current employees may leave their positions.

*Third*, in many cases, witnesses have information about *both* non-infringement *and* patent misuse issues. TV Guide, for example, has disclosed multiple individuals as having knowledge of both infringement and patent misuse issues. (Ex. I, TV Guide's Initial Disclosures at 3-5.) And some TMS witnesses will similarly have knowledge

12

pertaining to both issues. Witnesses who provide testimony regarding the technology at issue are also likely to possess knowledge of the existence and scope of a relevant market, information that is important to TMS's patent misuse claim. A phased discovery schedule would require TMS to take multiple depositions of the same witnesses.[4] TMS should not be forced to expend unnecessary effort and expense to depose the same witnesses multiple times. *See Applied Biosystems*, 1990 WL 495458 at *3 (denying a discovery stay where there was no showing that "the number of depositions will be materially reduced by staying discovery related to the antitrust and patent misuse issues"). Likewise, TMS should not have to produce witnesses with knowledge of both non-infringement and patent misuse issues twice.

**Fourth**, requiring phased discovery at this late date would inject unnecessary complexity into this case. TMS has been working patent misuse discovery issues for months. To mothball those efforts for a year or longer—perhaps until 2008 or even later—would require TMS and its lawyers to re-educate themselves about all of the pending issues and arguments when patent misuse discovery is finally allowed to proceed. Courts are reluctant to grant stays of discovery, mindful of the resulting inefficiencies. The "stop-and-start of a stay of discovery and separate trials undermines our goal of working to apply the Rules of Civil Procedure to obtain a just, speedy and inexpensive resolution of every action." *Johns Hopkins Univ. v. Cellpro*, 160 F.R.D. 30,

---

[4] TV Guide's assertion that "[t]here is no overlap of . . . witnesses between the central patent infringement case and the patent misuse claim" (D.I. 108, Br. at 19) contradicts its own Initial Disclosures, which identify Samir B. Armaly, Richard Cusick and Marcelino Ford-Levine as individuals with knowledge relating to both the infringement and patent misuse claims. (Ex. I, Plaintiffs' Initial Disclosures at 3-5.)

36 (D. Del. 1995) (denying motion to bifurcate and stay discovery); *see also Dentsply Int'l, Inc. v. New Tech. Co.*, C.A. No. 96-272, 1996 WL 756766 at *5-6 (D. Del. Dec. 19, 1996) (bifurcating patent and antitrust issues for trial, but holding that "efficiency dictates that discovery on all claims, including the antitrust counterclaims, continue apace"); *THK America, Inc. v. NSK Co. Ltd.*, 151 F.R.D. 625, 633 (N.D. Ill 1993) ("[S]eparate discovery phases would not in any way promote judicial economy.  Instead, it would result in additional expense to all parties, and would unduly prolong the litigation . . .."); *Enzo Life Sciences, Inc. v. Digene Corp.*, C.A. No. 02-212, 2003 WL 21402512 at *5 (D. Del. June 10, 2003) (separating issues for trial but holding that a stay of discovery would "prevent a fair and efficient resolution to the Counterclaims").

*Fifth*, there is no clean dividing line between documents relating to patent misuse issues and those relating to infringement.  For example, a licensing proposal to a third party conveying rights to the '078 patent may include admissions probative of the patent's claim construction.  Given TV Guide's previous discovery behavior, staying patent misuse discovery is likely to create unnecessary squabbling over what is patent misuse discovery and what is not.  That factor "militates against a stay." *Applied Biosystems*, 1990 WL 495458 at *3 ("[A] stay of antitrust discovery will merely serve to multiply discovery disputes inordinately").

In short, TV Guide has unreasonably delayed its request to stay patent misuse discovery; TMS has invested substantial resources to serve and pursue patent misuse discovery; and TV Guide has pursued patent misuse discovery of its own.  Staying patent misuse discovery now would undermine substantial pending party and third party discovery requests and subpoenas, would increase costs, and would force TMS to

14

shoulder the risk of losing important party and third party evidence probative of its misuse claims.

## II.   THE PREMISE FOR THIS ELEVENTH HOUR MOTION—THAT TMS SEEKS "MILLIONS" OF PAGES OF DOCUMENTS—IS FALSE.

TV Guide's repeated assertion that the patent misuse discovery sought by TMS "would require the collection, review, processing and production of millions of pages of documents" has no basis. (D.I. 108, Br. at 1.) TV Guide offers no evidence whatsoever that producing the requested patent misuse discovery would be burdensome, or that "much of the patent misuse discovery sought by TMS is intricately interwoven with . . . questions of attorney-client privilege and work product immunity." (*Id.* at 18.) This unsubstantiated rhetoric fails the test for staying discovery based upon supposed burden. *See Cellpro*, 160 F.R.D. at 35 (denying motion to bifurcate and stay discovery on damages where party seeking stay "has not shown that discovery on damages will be complicated, expensive or time consuming"); *see also Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) (party seeking protective order under Fed. R. Civ. P. 26(c) must do more than make "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning"). Because TV Guide offers only broad allegations of harm without evidentiary support, its request to stay patent misuse discovery lacks foundation.

The fact is that TMS does not seek "millions of pages of documents." What TMS wants are the hearing exhibits and transcripts, and deposition exhibits and transcripts, relating to the patent misuse claim at issue in the ITC case, along with a manageable set of other relevant documents related to TV Guide's licensing activities and market power. (*See* Ex. G, Jul. 12, 2006 letter from M. Zinanni to C. Harnett.) This is a far cry from the

millions of pages of documents which may have been produced in the ITC litigation. Producing the prior litigation documents that TMS seeks would require little effort at all: the patent misuse exhibits are easily identified using Respondents' Proposed Findings of Fact and the hearing exhibit list. And the prior litigation documents require no review for attorney-client privilege or work product.

Nor does TMS seek to impose undue burden on third parties. At least eight of the Rule 45 subpoenas issued by TMS are directed to law firms that represented parties, including TV Guide, in the ITC litigation. These subpoenas request the same set of trial exhibits and deposition testimony discussed above. TMS issued these subpoenas because it does not know whether TV Guide itself has the documents. In fact, TMS offered to refrain from enforcing these subpoenas if TV Guide could confirm that the documents demanded were within TV Guide's possession, custody or control. (*See* Ex. J, Aug. 4, 2006 letter from T. Hernandez to C. Harnett.) TV Guide **refused to answer that question**. (Ex. K, Aug. 7, 2006 letter from C. Harnett to T. Hernandez.) As such, the need for at least eight of the subpoenas issued are attributable to TV Guide itself.

Thus, the very premise for TV Guide's motion to stay patent misuse discovery is unsupported and false. Absent an evidentiary showing of undue burden, there is absolutely no basis for this Court to grant TV Guide's request to stay patent misuse discovery. And TV Guide offers no evidence at all.

**III.    THE COURT SHOULD ALLOW THE PARTIES TO COMPLETE DISCOVERY AND THEN CONSIDER WHETHER A BIFURCATED TRIAL IS WARRANTED IN LIGHT OF A FULL DISCOVERY RECORD.**

The delay, prejudice, risk of losing evidence, and the unnecessary inefficiencies and complexities that would result from a stay of patent misuse discovery at this late date,

warrant denial of TV Guide's motion to stay patent misuse discovery.    Accordingly, discovery on the patent misuse claims should be completed now rather than later.

TV Guide's motion to bifurcate the trial of patent misuse issues from all other issues should be postponed until discovery is completed and a trial plan is developed. For example, completion of discovery will indicate that patent misuse witnesses overlap with witnesses who testify to non-infringement or invalidity issues, in which case two trials may not make sense.[5]   Likewise, completion of discovery will allow the parties to determine how long it might take to try non-infringement and patent misuse issues, which also could inform the bifurcation decision.   The motion to bifurcate trial, therefore, need not be decided now, and is best decided after the discovery record is complete.

## CONCLUSION

For these reasons, TV Guide's motion to stay patent misuse discovery should be denied, and a ruling on TV Guide's motion to bifurcate trial of the patent misuse claims should be postponed until after discovery is complete and the parties have a better sense of how a trial of this case would be presented.

---

[5] Contrary to TV Guide's argument, TMS believes that it is entitled to a jury trial on the patent misuse counterclaim and defense alleged in this case. *See B. Braun Med. Inc. v. Abbott Labs.*, 892 F. Supp. 112, 114-15 (E.D. Pa. 1995) (patent misuse issue properly submitted to jury).   But even if the patent misuse claim is tried to the Court, TV Guide presents no reason why this alone justifies a stay of patent misuse discovery.

Dated: September 12, 2006

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES HITCHENS & WILLIAMS
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
rherrmann@morrisjames.com

Mark A. Pals, P.C.
Linda S. DeBruin
Michael A. Parks
Meredith Zinanni
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601
312.861.2000

*Attorneys for Defendant*
*Tribune Media Services, Inc.*

18

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of September, 2006, I electronically filed the foregoing document, **PUBLIC VERSION OF TMS'S ANSWERING BRIEF IN OPPOSITION TO TV GUIDE'S MOTION TO BIFURCATE TRIAL AND STAY DISCOVERY ON TMS'S AFFIRMATIVE DEFENSE AND COUNTERCLAIM OF PATENT MISUSE**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Frederick L. Cottrell, III
Jeffrey L. Moyer
Steven J. Fineman
Richards, Layton & Finger P.A.
One Rodney Square, 920 North King Street
Wilmington, Delaware 19801

Additionally, I hereby certify that on the 19th day of September, 2006, the foregoing document was served via email and via hand delivery on the above referenced attorneys and also via email and via Federal Express on the following non-registered participants:

Robert C. Morgan
Christopher J. Harnett
Stuart W. Yothers
Fish & Neave IP Group
Ropes & Gray LLP
1251 Avenue of the Americas
New York, New York 10020
212.596.9000

_____ */s/ Richard K. Herrmann* _____
Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES HITCHENS &
WILLIAMS
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
rherrmann@morrisjames.com

*Attorneys for Defendant*
*Tribune Media Services, Inc.*