# EXHIBIT  A

KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

312 861-2000

www.kirkland.com

Linda S. DeBruin
To Call Writer Directly:
(312) 861-2378
ldebruin@kirkland.com

Facsimile:
312 861-2200

September 20, 2006

**<u>Via Facsimile</u>**

Robert C. Morgan
Fish & Neave IP Group of Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

Re:    *TV Guide Online v. Tribune Media Services*

Dear Bob:

I write in response to TV Guide's notice of deposition of Dennis FitzSimons. TMS objects to the notice of deposition of Mr. FitzSimons. As the Chairman and CEO of Tribune Company, Mr. FitzSimons is not involved in the day-to-day operations of Tribune Media Services, Inc., the defendant in this case, and has no knowledge regarding any issues relevant to this case. What is TV Guide's basis for noticing the deposition of Mr. FitzSimons? If TV Guide insists on pursuing Mr. FitzSimons' deposition without providing an adequate basis for its request, TMS will seek a protective order from the Court to prevent Mr. FitzSimons' deposition from occurring.

Please contact Meredith Zinanni or Chris Almand no later than the end of the day tomorrow, September 21, 2006, to schedule a meet and confer on this issue as well as those identified by Chris Almand in his letter to Ching-Lee Fukuda sent yesterday.

Sincerely,

*Linda DeBruin*

Linda S. DeBruin

cc:    Frederick I. Cottrell, III, Esq.
        Richard K. Hermann, Esq.

London        Los Angeles        Munich        New York        San Francisco        Washington, D.C.

# EXHIBIT   B

Sep-21-06    11:06    From-ROPES & GRAY LLP                    +                    T-763   P.002/003   F-814



**FISH & NEAVE IP GROUP**

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9090
BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

September 21, 2006

Ching-Lee Fukuda
212-596-9336
Ching-Lee.Fukuda@ropesgray.com

**BY FACSIMILE**

Chris Almand, Esq.
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA 90017

Re:    TV Guide Online v. Tribune Media Services
       C. A. No. 05-CV-725-KAJ

Dear Chris:

I write in response to your September 19 letter. Your letter contains many inaccurate statements. In the interest of saving our resources for the more productive exercise of furthering discovery, I address only some of those inaccuracies below.

Your statement concerning the postponement of Samir Armaly and Mike McKee's depositions "until a reasonable time after TV Guide completes its production of documents relating to patent misuse issues" is incorrect and unacceptable. The Court expressly stayed discovery of TMS's broad patent misuse claim at the August 21 hearing. Pursuant to the discussions at the hearing, TV Guide has updated its interrogatory responses with respect to the licenses that grant rights to the '078 patent, has produced documents relating to those updated licenses, and is making every effort to complete production of any additional documents relating to those licenses. TMS has no basis for postponing any deposition until completion of production on "patent misuse issues."

With respect to Stuart Yothers's August 10 letter, the representations were true at the time of the letter. As stated before, any additional production relates to the updated TV Guide licenses. In that regard, we note that TMS wrote a letter on August 16 representing that "TMS's electronic review is a 'belt and suspenders' check of the document production that has been completed to date, which included a review of electronic documents," that "a small number [sic] additional documents will be produced as a result of this review," and that "TMS does not plan to produce a large number of documents to TV Guide on the eve of the scheduled depositions." Since the date of that letter, TMS has produced more than 20,000 pages of documents (almost half of its production) on about six occasions, often days (or only a day) before a scheduled deposition of a TMS witness, including documents collected from the files of those witnesses (*see* my September 15 letter to you). Last week, you told me that Jay Fehnel's deposition would have to be postponed because TMS will be producing a substantial amount of documents from his

ROPES & GRAY LLP

Chris Almand, Esq.                          - 2 -                          September 21, 2006

electronic files.  We are still waiting for that production.  You also never answered my inquiry concerning whether TMS will be producing any additional documents from the files of the other TMS witnesses whose depositions have been scheduled.  Apparently there is no end in sight for TMS's production.

On the topic of deposition scheduling, because TMS has requested postponement of Samir Armaly's individual deposition, Mr. Armaly is no longer available on the originally scheduled date of September 26.  TV Guide will provide Mr. Armaly for deposition in both his individual and Rule 30(b)(6) capacities at the same time.  As of now, Mr. Armaly is available on October 18.  Please let me know immediately if this date is not acceptable to TMS.

We are working on gathering additional availability for our other witnesses and will provide those dates to you as soon as we are able to do so.

I also write in response to Linda DeBruin's September 20 letter to Robert Morgan regarding TV Guide's notice of deposition of Dennis FitzSimons.  We do not understand TMS's objections to this notice in light of TMS's notice of deposition of Richard Battista, CEO of Gemstar-TV Guide International, Inc.

Sincerely,

Ching-Lee Fukuda

CF:

cc:    Frederick L. Cottrell III Esq.
       Richard K. Hermann, Esq.
       Linda S. DeBruin, Esq.

# EXHIBIT   C

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Meredith Zinanni
To Call Writer Directly:
(312) 861-2010
mzinanni@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

September 22, 2006

**Via Facsimile**

Ching-Lee Fukuda
Fish & Neave IP Group of Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

Re:    *TV Guide Online v. Tribune Media Services*

Dear Ching-Lee:

I write in response to your September 15, 2006 letter to me and your September 21, 2006 letter to Chris Almand.

Given the dates currently proposed by TV Guide (to the extent any dates have been proposed), not a single TV Guide witness will be made available prior to the October 2, 2006 close of fact discovery. This delay is unacceptable. Consistent with the Court's direction during the August 21, 2006 teleconference, "discovery on all other fronts should be rolling forward." (8/21/06 Conf. Trans., pg. 13, lns. 12-13.) TMS has not agreed to postpone its 30(b)(6) deposition on topics relating to TV Guide's knowledge of zap2it.com, and expects that this deposition go forward on September 26, 2006, as scheduled. As TV Guide has done with TMS' witnesses, however, TMS will consider this deposition open pending the production of any remaining documents by TV Guide. Please let us know by the close of business today whether TMS' 30(b)(6) deposition on topics relating to TV Guide's knowledge of zap2it.com will go forward on Tuesday, as scheduled.

Your September 21, 2006 letter fails to address a central point of Chris Almand's letter dated September 19, 2006: the status of TV Guide's document production. TV Guide has agreed to produce all documents relating to the license agreements that grant rights to the '078 patent — documents that relate to the patent misuse issues. Again, we ask that you confirm: (1) that the remaining TV Guide production relates solely to the license agreements that grant rights to the '078 patent and (2) the date by which TV Guide will complete its production of these documents. Please also confirm that TV Guide has produced all responsive documents relating to other issues in the case.

TV Guide's "tit for tat" argument in support of its notice of deposition of Dennis FitzSimons is not a sufficient basis for pursuing Mr. FitzSimons' deposition. TMS noticed the

London          Los Angeles          Munich          New York          San Francisco          Washington, D.C.

Ching-Lee Fukuda
September 22, 2006
Page 2

deposition of Richard Battista because Mr. Battista is believed to have relevant, unique and superior knowledge regarding the issues in this case. In particular, Mr. Battista is the CEO of Gemstar-TV Guide, the named party to the license agreements granting rights in the '078 patent and the party with which TMS has conducted its licensing discussions regarding the '078 patent. The documents TV Guide has produced also indicate that Mr. Battista played a role in TV Guide's decision to sue TMS. Mr. Battista plainly has knowledge and information relevant to this case. In contrast, Dennis FitzSimons is the CEO of Tribune Company, a party who is not named in this suit, is not a party to any agreement related to this dispute, and a party that did not participate in any negotiations or discussions regarding the '078 patent. A review of the documents produced by both sides reveals nothing that would indicate Mr. FitzSimons has any information relevant to this dispute. Please let me know by the end of the day today whether or not TV Guide intends to pursue Mr. FitzSimons' deposition. If TV Guide does not voluntarily withdraw its deposition notice to Mr. FitzSimons by noon EDT on Monday, TMS will file a protective order to prevent this deposition from occurring.

We have not received responses to: (1) my letter dated August 16, 2006 to Stuart Yothers regarding TV Guide's response to Interrogatory No. 4; (2) Michael Parks' letter dated September 14, 2006 to Chris Harnett regarding the production of transcripts of Mr. Levine's prior testimony, affidavits and declarations; and (3) Kevin Askew's letter dated September 15, 2006 to Stuart Yothers regarding TV Guide's agreement with Yahoo! Inc. Please respond to these letters by Monday at the latest.

TMS will be producing documents early next week, including all electronic production from the TMS witnesses. TMS expects this production will complete the lion's share of its document production.

Please let us know whether TV Guide will be attending the depositions pursuant to subpoena of Mark Kaplinsky, scheduled for September 27, 2006, and Barry Berkov, scheduled for October 2, 2006. If TV Guide plans to attend these depositions and is not available on these dates, please let us know by noon on Monday and we will see if Mr. Kaplinsky and Mr. Berkov are available on alternate dates.

With regard to TV Guide's pending 30(b)(6) notices, TMS identifies Kevin McFall as its designee with regard to topics 1-2 and 6-8 of TV Guide's May 17, 2006 notice and topics 10-11 of TV Guide's August 7, 2006 notice. We confirm that Mr. McFall's deposition will go forward on October 2, 2006. Barbara Needleman will be TMS' designee with regard to topic 4 of TV Guide's May 17, 2006 notice and topic 16 of TV Guide's August 7, 2006 notice, to the extent it seeks factual testimony regarding the discussions between the parties involving the '078 patent. TMS objects to the remainder of topic 16 as calling for expert testimony. We confirm that Ms. Needleman's deposition will go forward on September 29, 2006. TMS identifies Jay Fehnel as its designee with regard to topics 7-8 and 12-13 of TV Guide's August 7, 2006 notice as to zap2it.com only. TMS objects to these topics 7-8 and 12-13 to the extent they concern

Ching-Lee Fukuda
September 22, 2006
Page 3

"electronic television programming listings." We confirm that Mr. Fehnel's deposition will go forward on October 6, 2006. Robin Mulvaney will be TMS' designee with regard to topics 1-4 of TV Guide's August 7, 2006 deposition notice. Ms. Mulvaney is not available on September 28, 2006; however, she is available at a mutually convenient time during the week of October 16th. We believe topics 5, 9, and 14 are duplicative of topics previously noticed by TV Guide, but are willing to discuss possible witnesses for these topics — likely witnesses TV Guide has already deposed — and those witnesses' availability during the weeks of October 9th or 16th. As stated in my letter dated September 13, 2006, TMS objects to topic 15 and will not present a witness on this topic. Each of these depositions will take place at Kirkland & Ellis' Chicago office. One day prior to the deposition, please notify us of the deposition attendees so that we may add them to the security list for the day.

With regard to TV Guide's damages 30(b)(6) notice, TMS responds to your September 15, 2006 letter as follows:

- TV Guide has still failed to identify what it considers the relevant time period for the topics in its damages 30(b)(6) notice. Please confirm that time period for which TV Guide seeks testimony.

- As TV Guide has not provided a clarification of the terms "credits and warranties" as used in Topic 8, TMS presumes that TV Guide will not be pursuing testimony regarding these terms, and will prepare its witness accordingly.

- TMS objects to Topic 9 to the extent it seeks "customer education or training documents," as defined in your September 15, 2006 letter, as duplicative of Topics 7 and 8 of TV Guide's May 17, 2006 Rule 30(b)(6) deposition notice. If TV Guide pursues this duplicative topic, TMS' witness will be prepared to testify regarding competitive reports and lost business reports in response to this topic.

- TMS disagrees with TV Guide's position that limiting testimony in response to topic 12 to the market and demand for www.zap2it.com will "prevent TV Guide from acquiring discovery of information relevant to its damages analysis." TV Guide has not presented any reason why testimony regarding the market and demand for "television program listings presented in an electronic format" is necessary for this analysis. Thus, TMS' witness on this topic will be prepared to testify regarding the market and demand for www.zap2it.com only.

With this letter, TMS has identified witnesses and provided available dates or date ranges for its witnesses. In contrast, TV Guide has yet to propose acceptable dates for Messrs. Battista, Cusick and McKee, and has not identified any designees or proposed any dates for the 30(b)(6) notice TMS served on September 6, 2006. We again request that TV Guide propose dates for these witnesses as soon as possible. If TV Guide is unable to propose dates for these witnesses

KIRKLAND & ELLIS LLP

☑ 005/005

Ching-Lee Fukuda
September 22, 2006
Page 4

by the close of business on Monday, September 25, 2006, TMS will be forced to seek relief from the Court to address these scheduling issues.

Sincerely,

Meredith Zinanni

cc:     Frederick I. Cottrell, III, Esq.
        Christopher J. Harnett, Esq.
        Richard K. Hermann, Esq.

# EXHIBIT   D

Sep-25-06    16:41    From-ROPES & GRAY LLP    +    T-771    P.002/005    F-822



FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9090
BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

September 25, 2006

Ching-Lee Fukuda
212-596-9336
646-728-2533 fax
Ching-Lee.Fukuda@ropesgray.com

**BY FACSIMILE**

Meredith Zinanni, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

Re:    TV Guide Online v. Tribune Media Services
       C. A. No. 05-CV-725-KAJ

Dear Meredith:

I write in response to your September 22 letter.

Your letter includes many factual inaccuracies and mischaracterizations of the numerous meet and confer teleconferences I had with your colleague, Chris Almand, concerning deposition scheduling of both parties' witnesses. In particular, TV Guide proposed dates before the October 2 fact discovery cut-off date for *all* of its witnesses. It was TMS who canceled those depositions and asked for them to be rescheduled. We explained that TV Guide's witnesses have busy schedules, and rescheduling would likely push the dates beyond October 2. In response, TMS specifically said that it was "not opposed" to dates in October. Moreover, TV Guide had accepted proposed dates for *all* of TMS's witnesses before October 2. Again, it was TMS who canceled scheduled dates for several of its own witnesses and rescheduled for dates after October 2. Examples of the foregoing are detailed below:

- <u>Samir Armaly</u>. During an August 11 meet and confer, *TV Guide proposed August 31* for the deposition of its witness, Samir Armaly. TMS tentatively accepted, but canceled the deposition a week before the scheduled date. During an August 16 meet and confer, TV Guide told TMS that Mr. Armaly likely would be its corporate witness for some of TMS's Rule 30(b)(6) noticed topics, and that TV Guide intends to present Mr. Armaly in both his individual and corporate capacities at the same deposition, to avoid further burdening TV Guide and the witness. TMS did not object. After rechecking Mr. Armaly's availability, during an August 28 meet and confer, *TV Guide offered September 26.* Again, TMS accepted the date at first but canceled the deposition on September 14. TMS said that because it had canceled the original dates, that it would accept dates in October. TV Guide once again rechecked Mr. Armaly's schedule for his

Sep-25-06   16:41     From-ROPES & GRAY LLP                    +                    T-771   P.003/005   F-822

ROPES & GRAY LLP

Meredith Zinanni, Esq.                        - 2 -                        September 25, 2006

next availability and offered October 18. TMS has not yet responded to that offer. Last week was the first time that TMS requested that Mr. Armaly's Rule 30(b)(6) deposition go forward on September 26 while postponing his individual deposition. As I stated in my September 21 letter, because TMS canceled his deposition on September 26, Mr. Armaly had rearranged his schedule and was no longer available on that date. Let us know immediately if October 18 is not acceptable to TMS. Mr. Armaly will be TV Guide's corporate witness on the licensing topics in TMS's September 6, 2006 Rule 30(b)(6) notice.

- Richard Cusick. During the August 11 meet and confer, *TV Guide proposed September 6* for the deposition of its witness, Richard Cusick. Again, TMS accepted that date, but canceled the deposition on August 28. During the August 16 meet and confer, TV Guide also told TMS that Mr. Cusick likely would be its corporate witness for some of TMS's other Rule 30(b)(6) topics and that he would be presented in both capacities at the same deposition. TMS did not object. During a September 1 meet and confer, TV Guide offered Mr. Cusick's next available date on October 11. TMS said that because it had canceled the original date, that it would accept dates in October. But on September 12, TMS again canceled the scheduled date, providing only the explanation that its counsel was not available to take the deposition on October 11. Mr. Cusick's next availability is on October 19. Mr. Cusick likely will be TV Guide's corporate witness on TMS's July 26, 2006 Rule 30(b)(6) notices relating to knowledge of www.zap2it.com and www.tvguide.com, and Topics 1-8 of TMS's September 6, 2006 Rule 30(b)(6) notice.

- Mike McKee. During the August 11 meet and confer, *TV Guide proposed September 28 or 29* for the deposition of its witness, Mike McKee. TMS said it would pick one of the two dates. During the August 28 meet and confer, the parties agreed to move the scheduled date to *September 22*. On September 14, TMS canceled the deposition and asked for a date in October. Mr. McKee's next availability is on October 27.

- Jay Fehnel. During the August 11 meet and confer, TMS proposed September 19 for the deposition of its witness, Jay Fehnel. TV Guide accepted. Five days before the scheduled deposition, TMS called suggesting that we cancel the deposition for the reason that TMS is producing a substantial amount of electronic documents from Mr. Fehnel's files and TV Guide is not likely to receive them until the day before the scheduled deposition. Under these circumstances, TV Guide had no choice but to reschedule. *TMS then offered October 6* and TV Guide accepted. As of today, TV Guide still has not received the production of electronic documents from Mr. Fehnel's files.

- TMS's Damages Witness(es). During the August 28 meet and confer, TMS agreed to provide its corporate witness(es) for TV Guide's August 7 Rule 30(b)(6) deposition notice relating to damages topics on the targeted date of September 28. Your September 13 letter stated: "TMS will try to make its designee(s) ... available for deposition during

ROPES & GRAY LLP

Meredith Zinanni, Esq.                    - 3 -                    September 25, 2006

the week of September 25, 2006." Your September 22 letter, however, provides dates for TMS's corporate witnesses on September 29, *October 6*, and *"during the week of October 16th."*

The postponement of depositions beyond the October 2 date was a circumstance of TMS's making -- not TV Guide's. Furthermore, the parties have been scheduling depositions with the agreement that any individual who also is designated as a Rule 30(b)(6) witness will appear in both capacities during the same deposition. TV Guide has proceeded in this manner with the deposition of Mark Yamada and agreed do so with the depositions of Barbara Needleman and Jay Fehnel. Last week was the first and only time that TMS insisted on moving forward with the Rule 30(b)(6) deposition apart from an individual deposition. Unfortunately, Mr. Armaly's schedule could not accommodate TMS's request at that time. Please let us know if this is no longer the parties' understanding with respect to the upcoming depositions.

As I advised you in my e-mail of earlier today, TV Guide plans to attend the depositions of third parties Mark Kaplinsky and Barry Berkov. We note that we only received the subpoena of Mark Kaplinsky late last week, and we never received confirmation from TMS regarding any actually scheduled deposition for either of these two people until late in the day last Friday. With the heavy discovery schedule we have in place, please provide us with at least 10 business days notice of any scheduled third party depositions. Because TMS advised us of the dates for those depositions in a belated fashion, we cannot agree to have them proceed on September 27 and October 2.

TV Guide disagrees with your attempt to draw a distinction between Messrs. Battista and FitzSimons with respect to the necessity of those depositions. Messrs. FitzSimons and Battista would have equal knowledge with respect to the licensing negotiations between TV Guide and TMS regarding the '078 patent. Mr. Battista is the CEO of Gemstar-TV Guide International, Inc. and any knowledge he may have related to this lawsuit would be duplicative of knowledge possessed by TV Guide witnesses already being scheduled for depositions. In an effort to compromise, TV Guide is willing to withdraw its deposition notice to Mr. FitzSimons on the condition that TMS withdraws its deposition notice to Mr. Battista. Otherwise, TV Guide will seek a protective order preventing Mr. Battista's deposition from going forward.

With respect to document production, TV Guide confirms that virtually all of its recent production and remaining production relates to licenses granting rights under the '078 patent. As promised, TV Guide produced documents two weeks ago, last week, and will produce more this week. We hope to complete "the lion's share" of TV Guide's document production in about two more weeks.

Sep-25-06 . 16:41    From-ROPES & GRAY LLP    +    T-771  P.005/005  F-822

ROPES & GRAY LLP

Mcredith Zinanni, Esq.                    - 4 -                        September 25, 2006

We will address the remaining issues in your letter later this week.

Sincerely,

Ching-Lce Fukuda

CF:

cc:    Frederick L. Cottrell III Esq.
       Richard K. Herrmann, Esq.
       Chris Almand, Esq.

# EXHIBIT   E

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Meredith Zinanni
To Call Writer Directly:
(312) 861-2010
mzinanni@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

September 27, 2006

**<u>Via Facsimile</u>**

Ching-Lee Fukuda
Fish & Neave IP Group of Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

Re:    *TV Guide Online v. Tribune Media Services*

Dear Ching-Lee:

I write in response to your September 25, 2006 letter to correct your mischaracterizations and clarify the circumstances surrounding scheduling of witnesses in this case.

The scheduling of witnesses for deposition is inextricably linked to the production of documents. As stated in Chris Almand's September 19, 2006 letter to you, "The schedule for deposition of TV Guide's witnesses will be determined, in part, by when TV Guide completes its document production." Originally, in a letter dated August 10, 2006, TV Guide informed TMS that it had "complet[ed] the majority of its production in this case" and that "a final set of electronic documents" would be produced shortly. Based upon that representation, TMS was willing to begin scheduling depositions. Since that letter, however, TV Guide has produced nearly 100,000 pages of additional documents, and now TV Guide has indicated that it will be another two weeks before "the lion's share" of its production will be complete.

Per your letter, "virtually all of [TV Guide's] recent production and remaining production relates to licenses granting rights under the '078 patent" — *i.e.*, virtually all of the recent production is germane to TMS' patent misuse counterclaim. Each of the scheduled TV Guide individual witnesses (Richard Cusick, Samir Armaly, and Mike McKee) were identified in TV Guide's initial disclosures as likely to have information relating to TMS' patent misuse counterclaim, and thus TMS is unable to proceed with their individual depositions until TV Guide has completed its document production. As TMS has stated each time it has been forced to reschedule a deposition, it is TV Guide's failure to produce all responsive, relevant documents that has caused delay in the scheduling of witnesses. For example:

- On August 16, 2006 (six days after saying its document production was nearly complete), TV Guide produced nearly 85,000 pages of additional documents. In order to have adequate time to review this production — more than double what TV Guide had

London          Los Angeles          Munich          New York          San Francisco          Washington, D.C.

Ching-Lee Fukuda
September 27, 2006
Page 2

produced to date — TMS asked for an alternative to Samir Armaly's scheduled
deposition date of August 31, 2006.

- During a call on August 28, 2006, TV Guide indicated that it would have a substantial
volume of additional production, including negotiation materials relating to license
agreements, but would not indicate when that production might be forthcoming. In light
of the anticipated additional document production and TV Guide's refusal to commit to a
date certain for the production, TMS asked for an alternative to Richard Cusick's
scheduled individual deposition date of September 6, 2006.

- During a call on September 14, 2006, TV Guide still could not specify the quantity of
documents to be produced, or when production would be made, of the documents
identified in the August 28, 2006 call. Because of the uncertainty surrounding this
document production, and the expectation that the production would not be completed
before the scheduled depositions, TMS asked for alternative dates for the *individual*
depositions of Mike McKee (scheduled for September 22, 2006) and Samir Armaly
(scheduled for September 26, 2006).

As illustrated, TMS has not asked to reschedule depositions of these witnesses without cause, as
implied by your letter. TMS has been forced to reschedule these depositions until TV Guide has
completed production of all responsive documents about which these witnesses may have
knowledge. The postponement of depositions beyond the October 2, 2006 date is not a
"circumstance of TMS' making" — it is a direct result of TV Guide's failure to produce
documents in a timely manner.

TMS did not and does not wish to push out depositions on issues in this case relating to
non-infringement, invalidity, laches, etc. Therefore, on the September 14, 2006 call, Chris
Almand stated that TMS intended to go forward with the September 26, 2006 deposition with
regard to all topics of TMS' Rule 30(b)(6) deposition notice relating to TV Guide's knowledge
of www.zap2it.com, noticed on July 26, 2006 for August 24, 2006, whomever TV Guide's
witness may be. At no time did TMS cancel or agree to postpone the 30(b)(6) deposition on
those topics. Despite this notice that TMS intended to take this deposition as scheduled, TV
Guide did not notify TMS that there would be no witness presented on September 26, 2006 until
September 21, 2006. Your statement that "Last week was the first time that TMS requested that
Mr. Armaly's Rule 30(b)(6) deposition go forward on September 26 while postponing his
individual deposition" is false. TMS made this request more than 10 days prior to your letter.
Furthermore, it is not Mr. Armaly's Rule 30(b)(6) deposition; it is TV Guide's deposition on the
noticed topics. In fact, according to your September 25, 2006 letter, Mr. Armaly will no longer
be TV Guide's designee as to these topics.

To correct other misstatements in your letter, TMS never agreed to the deposition of Mr.
Cusick on October 11, 2006, and thus could not have "canceled" that date. TMS has worked

Ching-Lee Fukuda
September 27, 2006
Page 3


with TV Guide to produce its witnesses and conduct third-party depositions on dates acceptable to TV Guide's counsel, and expects the same courtesy from TV Guide. To illustrate this point, TMS agreed it would check with its designee(s) for TV Guide's August 7 Rule 30(b)(6) deposition notice on topics related to damages to see if the designee(s) was available on September 28, 2006, a date requested by TV Guide. TMS did not, as stated in your letter, agree to this date for that deposition.

It is TMS' understanding that the following schedule of witnesses has been set:

**TMS Witnesses**

- Barbara Needleman will be presented for deposition on September 29, 2006, at Kirkland & Ellis Chicago, in her individual capacity and as TMS' designee for topic 4 of TV Guide's May 17, 2006 notice and topic 16 of TV Guide's August 7, 2006 notice, to the extent it seeks factual testimony regarding the discussions between the parties involving the '078 patent.

- Kevin McFall will be presented for deposition on October 2, 2006, at Kirkland & Ellis Chicago, as TMS's designee for topics 1-2 and 6-8 of TV Guide's May 17, 2006 notice and topics 10-11 of TV Guide's August 7, 2006 notice.

- Jay Fehnel will be presented for deposition on October 6, 2006, at Kirkland & Ellis Chicago, in his individual capacity and as TMS' designee for topics 7-8 and 12-13 of TV Guide's August 7, 2006 notice, as to zap2it.com only.

- Robin Mulvaney will be TMS' designee with regard to topics 1-4 of TV Guide's August 7, 2006 deposition notice. TMS is working to confirm Ms. Mulvaney's availability, and will follow up with TV Guide once we have those dates.

**TV Guide's Witnesses**

- Samir Armaly will be presented for deposition on October 18, 2006 in Los Angeles. Mr. Armaly will be deposed in his individual capacity and as TV Guide's designee as to topics 9-14 of TMS' September 6, 2006 Rule 30(b)(6) notice. Given Mr. Armaly's status as both an individual deponent and a corporate designee, TMS expects that it will require more than seven hours with Mr. Armaly. Please propose additional dates for the continuation of Mr. Armaly's deposition, preferably October 19, 2006 or during the week of October 23, 2006.

- Richard Cusick will be presented for deposition on October 19, 2006 in Los Angeles. Mr. Cusick will be deposed in his individual capacity and as TV Guide's designee as to topics 1-11 of TMS' Rule 30(b)(6) notice noticed for August 24, 2006, topics 1-6 of

Ching-Lee Fukuda
September 27, 2006
Page 4

TMS' Rule 30(b)(6) notice noticed for August 29, 2006, and topics 1-8 of TMS' September 6, 2006 Rule 30(b)(6) notice.  Given the extensive number of topics for which Mr. Cusick has been designated, in addition to being deposed in his individual capacity, TMS expects that it will require multiple days with Mr. Cusick.  Please propose additional dates for the continuation of Mr. Cusick's deposition, preferably October 20, 2006 or during the week of October 23, 2006.

- Mike McKee will be presented for deposition on October 27, 2006 in Los Angeles in his individual capacity only.

TMS has considered your proposal regarding the deposition notices of Messrs. Battista and FitzSimons.  TMS will agree to withdraw the notice of deposition of Mr. Battista provided that TV Guide agrees that Mr. Battista will not be a witness at trial.  In return, TV Guide shall withdraw the notice of deposition of Mr. FitzSimons.  TMS confirms that it will not call Mr. FitzSimons as a witness at trial.  Please let us know if we have an agreement.

TMS has confirmed that the deposition of Mark Kaplinsky will proceed in Las Vegas on October 5, 2006 and the deposition of Barry Berkov will proceed in San Diego on October 11, 2006.  TMS will provide information regarding the location and start time of each of these depositions later this week.

Sincerely

Meredith Zinanni

cc:     Frederick I. Cottrell, III, Esq.
        Richard K. Hermann, Esq.

# EXHIBIT   F



ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9090
BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

Stuart W. Yothers
212-596-9176
646-728-2957 fax
Stuart.Yothers@ropesgray.com

September 28, 2006

**BY FACSIMILE**

Meredith Zinanni, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 80601

Re:    *TV Guide Online v. Tribune Media Services*
C. A. No. 05-CV-725-KAJ

Dear Meredith:

I write in response to your September 27, 2006 letter to Ching-Lee Fukuda regarding the depositions of Messrs. Battista and FitzSimons.

At this stage in the case, TV Guide is not prepared to agree that Mr. Battista will not be a witness at trial. Mr. Battista will be available for deposition in Los Angeles, California on October 24, 27, or 30. Please select a date and let us know your selection by the close of business on Monday, October 2, 2006. Mr. Battista's schedule is very full, and he cannot make all of these days available for long.

We await dates for Mr. FitzSimons's deposition.

Sincerely yours,

Stuart W. Yothers

SWY

cc:    Frederick L. Cottrell, III, Esq.
       Richard K. Hermann, Esq.

# EXHIBIT   G

Westlaw.

Not Reported in F.Supp.                                                                                   Page 1
Not Reported in F.Supp., 1993 WL 364471 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

**H**

Briefs and Other Related Documents

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
CONSOLIDATED RAIL CORPORATION,
Plaintiff,
v.
PRIMARY INDUSTRIES CORPORATION,
Defendant.
CONSOLIDATED RAIL CORPORATION,
Plaintiff,
v.
PRIMARY COAL, INC., Defendant.
**Nos. 92 Civ. 4927 (PNL), 92 Civ. 6313 (PNL).**

Sept. 10, 1993.

MEMORANDUM AND ORDER

FRANCIS, United States Magistrate Judge.
*1 The plaintiff in these related actions, Consolidated Rail Corporation ("Conrail"), has moved for a protective order precluding certain depositions and directing that others be conducted in Philadelphia, Pennsylvania. The defendants, Primary Industries Corp. and Primary Coal, Inc. (collectively referred to as "Primary"), have cross-moved for an order compelling discovery responses and extending the deadline for completion of discovery. Each of these issues will be addressed in turn.

*Background*

Conrail, a common carrier, seeks to recover freight charges that it contends are owed by Primary, a coal producer. Primary has counterclaimed, asserting that it suffered damages when Conrail wrongfully closed its port facility at Philadelphia and diverted its coal traffic to Baltimore. Conrail has filed a motion for summary judgment on statute of limitations grounds which is currently pending.

*Discussion*

A. *Executive Officer Depositions*

Primary has served a notice for the deposition of ten

Conrail employees. Conrail has agreed to produce seven of these witnesses, but has moved for a protective order precluding the depositions of three others: James Hagan, Chairman, President, and Chief Executive Officer of Conrail; Robert Swert, Vice President of Labor Relations; and David LeVan, Senior Vice President of Operations. Each of these individuals has submitted an affidavit attesting that he has no personal knowledge of the facts underlying the claims and counterclaims in these cases except for what he may have learned from other Conrail employees.

Highly-placed executives are not immune from discovery. "[T]he fact that the witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery." *CBS, Inc. v. Ahern,* 102 F.R.D. 820, 822 (S.D.N.Y.1984) (citation omitted). Moreover, a claim that the witness lacks knowledge is subject to testing by the examining party. *See Amherst Leasing Corp. v. Emhart Corp.,* 65 F.R.D. 121, 122 (D.Conn.1974).

At the same time, permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation. Accordingly, where other witnesses have the same knowledge, it may be appropriate to preclude a redundant deposition of a highly-placed executive. *See CBS,* 102 F.R.D. at 822 n. 2; *Amherst,* 65 F.R.D. at 123.

Given these considerations, it is appropriate in these cases to defer any live depositions of the three named executives until it has been demonstrated that they have some unique knowledge pertinent to the issues in these cases. Primary may seek to establish such a foundation through Rule 31 depositions upon written questions of these executives as well as through the deposition testimony of other witnesses. Until such a showing has been made, however, these three individuals shall not be deposed in person.

B. *Site of Depositions*

Conrail next contends that the depositions of its seven remaining witnesses should be held in Philadelphia, where Conrail's headquarters are located, rather than in New York, as the deposition notice indicates.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                          Page 2
Not Reported in F.Supp., 1993 WL 364471 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

**\*2** This request has merit.   It is far more efficient to require Primary's counsel to travel to Philadelphia than it is to require Conrail's attorney and seven witnesses to come to New York.   *See Huynh v. Werke,* 90 F.R.D. 447, 449 (S.D.Ohio 1981). Moreover, it is possible that documents available in Conrail's offices but not previously disclosed in discovery will be necessary for the depositions.

Accordingly, the depositions of Conrail's employees shall be taken in Philadelphia.   Since Conrail, as the plaintiff, would normally be expected to produce its witnesses for deposition in the forum district, it shall initially bear the costs of conducting the depositions in Philadelphia, including the travel and accommodation expenses of Primary's counsel, as well as his reasonable attorney's fees.  *See id.;* local civil rule 15.   These costs shall ultimately be taxed against the losing party at the conclusion of the litigation.

### C. *Document Requests*

In its cross-motion, Primary seeks to compel production of a variety of documents primarily related to the reasons that Conrail closed its Philadelphia facility.   Such documents are of doubtful relevance to any issue in the cases and are clearly not pertinent to Conrail's pending summary judgment motion.   Since the request for this discovery will be moot if the summary judgment motion is granted, the motion to compel is denied without prejudice to renewing it after the dispositive motion is decided.

### D. *Discovery Schedule*

Finally, Primary seeks an extension of the discovery deadline.   Because of the pending summary judgment motion, the parties may decide to defer some discovery until the motion is decided.   The discovery deadline shall therefore be held in abeyance until the motion for summary judgment has been determined.

SO ORDERED.

S.D.N.Y.,1993.
Consolidated Rail Corp. v. Primary Industries Corp.
Not Reported in F.Supp., 1993 WL 364471 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

- 1:92cv06313 (Docket) (Aug. 20, 1992)
- 1:92cv04927 (Docket) (Jul. 02, 1992)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT  H



Slip Copy                                                                 Page 1
Slip Copy, 2005 WL 2313859 (E.D.Mich.)
**(Cite as: Slip Copy)**

C

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Michigan, Southern
Division.
James H. DEVLIN, Plaintiff,
v.
CHEMED CORPORATION, Defendant.
**No. 04-CV-74192-DT.**

Sept. 21, 2005.

B. Andrew Rifkin, John F. Schaefer, John F.
SchaeferAssoc., Birmingham, MI, for Plaintiff.
Joseph A. Ritok, Jr., Lori A. Rogala, John W. Smith,
Dykema Gossett, Detroit, MI, for Defendant.

*ORDER AFFIRMING MAGISTRATE JUDGE'S
JUNE 24, 2005 ORDER DENYING PLAINTIFF'S
MOTION TO COMPEL PRODUCTION OF FOUR
WITNESSES FOR DEPOSITION*

ROSEN, J.

At a session of said Court, held in the U.S.
Courthouse, Detroit, Michigan on *September 21,
2005*

**\*1** This matter is before the Court on Plaintiff's
Objections to Magistrate Judge Steven D. Pepe's
Order denying Plaintiff's motion to compel the
deposition of four out-of-state members of the
Chemed Board of Directors, Timothy O'Toole,
Sandra Laney, Edward Hutton, and Charles Erhardt.
Defendant has responded to Plaintiff's Objections.
Plaintiff has also filed a "Reply to Defendant's
Response."

Having reviewed and considered Plaintiff's Motion
and the Magistrate Judge's Order, the Court finds that
the Magistrate Judge's rulings were not clearly
erroneous or contrary to law. *See* 28 U.S.C. §
636(b)(1)(A).

In this lawsuit, Plaintiff James Devlin seeks damages
from Chemed Corporation, his former employer,
based upon the company's refusal to allow him to
exercise his stock options after his employment was
terminated. At issue in this discovery dispute is the
Severance Agreement that Devlin entered into in

December 2001 shortly before his employment
relationship with Chemed was terminated. That
Severance Agreement spells out in detail the various
salary and fringe benefit payments to be paid to
Devlin upon his termination of employment
including paying off approximately $400,000 in
principal and interest owed by Devlin on a loan from
Fifth Third Bank; payment of $200,936.89 deferred
compensation; payment of $108,763.11 to cover
three years health insurance for Devlin; payment of a
$34,000 bonus; providing him with 7,402 shares of
Chemed Stock; and paying up to $50,000 to cover the
cost of any legal expenses associated with the
Severance Agreement. Notably, the Agreement
contains no provision whatsoever concerning stock
options.

Plaintiff claims that the absence of a provision
addressing stock options renders the agreement
ambiguous and therefore seeks extrinsic evidence
concerning the "meaning" of the Agreement and for
this purpose has deposed several company employees
including CEO Kevin McNamara who was the
person who independently negotiated all of the terms
of the Severance Agreement with Plaintiff and who
executed the Agreement on behalf of the company.
Plaintiff also deposed the company's Employee
Benefits Coordinator David Sparks as well as three
other management employees.

By way of the subject Motion to Compel, Plaintiff
also sought to depose four members of the Board of
Directors. All four of these individuals live out of
state-two are in Ohio, one resides in Florida and one
resides in New York. All four Board members have
provided sworn affidavits stating that they have no
personal knowledge regarding the negotiation of
severance or stock option agreements with Mr.
Devlin. And, although three of the members did vote
in a Board meeting to authorize CEO McNamara to
negotiate a severance agreement with Mr. Devlin,
one of them-Timothy O'Toole was not even present
when the agreement was authorized and he did not
vote on that authorization, at all.

Magistrate Judge Pepe denied Plaintiff's Motion to
Compel, finding as follows:
**\*2** ... Plaintiff's counsel provided no evidence that the
individuals he sought to depose possess any
knowledge of Plaintiff's severance package that could
not be obtained more easily from a different source.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                       Page 2
Slip Copy, 2005 WL 2313859 (E.D.Mich.)
**(Cite as: Slip Copy)**

The court may limit discovery if the information sought "is obtainable from some other source that is more convenient, less burdensome, or less expensive," Fed.R.Civ.P. 26(b)(2)(i). In this case, Plaintiff's counsel failed to show that these individuals could contribute substantially more information than CEO Kevin McNamara, who has already been deposed, or Employee Benefits Coordinator Sparks.

*See* 6/24/05 Order.[FN1]

> **FN1.** Although the Magistrate Judge mistakenly found that the deposition notices had not been timely served, his untimeliness determination did not alter the substance of his finding that Plaintiff failed to demonstrate that the Board members could contribute substantially more information than CEO McNamara.

When a party seeks to depose high-level decision makers who are removed from the daily subjects at issue in the litigation, the party must first demonstrate that the proposed deponent has "unique personal knowledge" of facts relevant to the dispute. *Evans v. Allstate Ins. Co.,* 216 F.R.D. 515, 518 (N.D.Okla.2003); *Baine v. General Motors Corp.,* 141 F.R.D. 332, 334 (M.D.Ala.1991); *Thomas v. International Business Machines,* 48 F.3d 478, 483-84 (10th Cir.1995) (upholding protective order barring deposition of top executive where lower level employees were available for deposition and where executive lacked personal knowledge of the matters at issue in plaintiff's case.)

In the absence of a showing of unique personal knowledge, the circuit courts, including the Sixth Circuit, have upheld the entry of a protective order precluding the depositions of high level company executives. *See Lewelling v. Farmer Ins. of Columbus, Inc.,* 879 F.2d 212, 218 (6th Cir.1989) (affirming issuance of protective order based on deponent having no knowledge as to facts pertinent to the plaintiff's action); *see also Thomas v. IBM, supra; Bush v. Dictaphone Corp.,* 16 F.3d 363 (6th Cir.1989).

Given that the record evidence shows that Board's only action with regard to Plaintiff's cessation of employment was to authorize CEO McNamara to negotiate a severance agreement and to authorize a payment amount which the agreement could not exceed, and given that Plaintiff has already deposed persons identified by the company as having knowledge of the areas in which he seeks discovery, and given that Plaintiff has made no showing that the four Board members have any relevant knowledge of the issues he has identified, the Court finds that the Magistrate Judge's did not err in denying Plaintiff's Motion to Compel.

THEREFORE,

IT IS HEREBY ORDERED that the Magistrate Judge's June 24, 2005 Order is AFFIRMED.

E.D.Mich.,2005.
Devlin v. Chemed Corp.
Slip Copy, 2005 WL 2313859 (E.D.Mich.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 2142665 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply to Defendant's Response Plaintiff's Objections to Magistrate Judge Pepe's Order Denying Plaintiff's Motion to Compel Production of Witnesses for Deposition (Jul. 24, 2005) Original Image of this Document (PDF)
• 2005 WL 2142663 (Trial Motion, Memorandum and Affidavit) Defendant Chemed Corporation's Response to Plaintiff's Objections to Magistrate Judge Pepe's Order Denying Plaintiff's Motion to Compel Production of Witnesses for Deposition (Jul. 18, 2005) Original Image of this Document (PDF)
• 2004 WL 2877778 (Trial Pleading) Answer to Complaint and Affirmative Defenses (Nov. 2, 2004) Original Image of this Document with Appendix (PDF)
• 2:04cv74192 (Docket) (Oct. 27, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.