EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1

Not Reported in F.Supp.2d, 1998 WL 552966 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

н
Briefs and Other Related Documents
Falkenberg Capital Corp. v. Dakota Cellular,
Inc.D.Del.,1998.Only the Westlaw citation is
currently available.
United States District Court, D. Delaware.
FALKENBERG CAPITAL CORPORATION, a
Colorado corporation, Plaintiff,
v.
DAKOTA CELLULAR, INC., a Delaware
corporation, Defendant.
**No. Civ.A. 95-351 MMS.**

Aug. 4, 1998.

Alan J. Stone, and S. Mark Hurd, of Morris,
Nichols, Arsht & Tunnell, Wilmington, Delaware;
Timothy R. Beyer, and Peter J. Korneffel, of Baker
& Hostetler, Denver, Colorado; for plaintiffs, of
counsel.
James M. Mulligan, Jr., and John C. Kairis, of
Connolly, Bove, Lodge & Hutz, Wilmington,
Delaware; Paul C. Besozzi, and Benjamin G. Chew,
of Patton Boggs, L.L.P., Washington, District of
Columbia; for defendants, of counsel.

*MEMORANDUM OPINION*
SCHWARTZ, Senior J.

I. Introduction

*1 Falkenberg Capital Corporation ("Falkenberg")
filed a Complaint against Dakota Cellular, Inc. ("
Dakota") alleging breach of contract, or
alternatively, quantum meruit. Specifically,
Falkenberg contends Dakota failed to pay a
commission to it after entering into a listing
agreement in which Falkenberg agreed to be the
exclusive sales agent on behalf of Dakota in order
to obtain a buyer for Dakota's non-wireline cellular
system serving the South Dakota 3 rural service
area. The Court initially granted Dakota's motion to
dismiss for failure to state a claim. *See Falkenberg*

*Capital Corp. v. Dakota Cellular, Inc.,* 925 F.Supp.
231 (D.Del.1996). However, this decision was
overturned by the Third Circuit Court of Appeals
which remanded the case conditionally to consider
extrinsic evidence of the parties' intent concerning
the meaning of Paragraph 5(b) of the listing
agreement. *See Falkenberg Capital Corp. v. Dakota
Cellular, Inc.,* No. 96-7361, slip op. (3d Cir. Oct.
24, 1997).

Presently before the Court is Dakota's Motion for a
protective order that its counsel, Paul C. Besozzi ("
Besozzi") not be required to be called as a witness
or be disqualified.[FN1] Jurisdiction is based upon
diversity. *See* 28 U.S.C. § 1332. The motion for
protective order will be denied for the reasons
which follow.

> FN1. Dakota also initially filed a Motion
> to stay initial disclosures. This motion
> became moot, however, when Dakota filed
> its initial disclosures on March 6, 1998.

II. Factual Background

For purposes of this motion, it is only necessary to
relate events which have occurred subsequent to the
Third Circuit Court of Appeals remanding of this
case. In late December, 1997, counsel for Dakota,
Besozzi, and counsel for Falkenberg, Timothy
Beyer ("Beyer"), engaged in a Rule 26(f)
scheduling meeting pursuant to this Court's Order
entered on November 24, 1997. *See* Docket Item ("
D.I.") 24 at ¶ 2. On December 29, 1997, the
parties entered into a Stipulated Scheduling Order,
which outlined, in a non-exhaustive fashion, the
scope of discovery *See* D.I. 25 at ¶ 5. On January
8, 1998, Besozzi telephoned Beyer to discuss the
possibility of settling the litigation. During this
telephone conversation, Besozzi asked Beyer
whether Falkenberg intended to name Besozzi as a
witness.[FN2] On January 12, 1998, Beyer left a
voice-mail message for Besozzi advising that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 552966 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

Falkenberg did plan to call him as a witness. Beyer wrote a letter on January 16, 1998, which memorialized the voice-mail message. Specifically, Beyer wrote to Besozzi that it was "clear that you will be a material witness in the case." *See* D.I. 29, Ex. 6 Additionally, Beyer stated his belief that Besozzi and his firm, Patton Boggs, L.L.P., were required to withdraw from representation of Dakota as a result. *See id.* Lastly, Beyer indicated that Falkenberg would be noticing Besozzi for a deposition "in the very near future" and that he was reserving the right to seek to force Besozzi to withdraw from the litigation.[FN3] *See id.* In response, Dakota filed a motion for a protective order that Besozzi not be required to be called as a witness or be disqualified.

FN2. Beyer submitted in his affidavit that he was asked whether his client planned to call Besozzi during the Rule 26(f) meeting. But the January 16, 1998 letter between Besozzi and Beyer makes clear that Besozzi inquired about whether he would be called as a witness "this week," referring to the week of January 12, 1998 (a Monday).

FN3. In fact, Besozzi was noticed on June 9, 1998, by Falkenberg that his deposition was to be taken June 15, 1998. The deposition did not take place.

### III. Discussion

### A. Ripeness of Protective Order Motion

*2 Before considering the merits of Dakota's protective order motion, it is first necessary to resolve Falkenberg's contention that the motion is premature and not ripe. The ripeness requirement stems from Article III of the United States Constitution which states that federal courts only have jurisdiction over "cases and controversies."[FN4] *See* U.S. Const. Art. III, § 2; *Abbott Labs v Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The "cases and controversies" provision "stands as a direct prohibition on the

issuance of advisory opinions." *See Travelers Insurance Co. v Obusek*, 72 F.3d 1148, 1153 (3d Cir.1995) (quoting *Armstrong World Industries, Inc. v Adams*, 961 F.2d 405, 410 (3d Cir.1992)). Its rationale is to "prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements." *See Artway v. Attorney General of State of New Jersey*, 81 F.3d 1235, 1246-47 (3d Cir.1996) (quoting *Abbott Labs.*, 387 U.S. at 148). Consequently, the ripeness inquiry focuses on the timing of defendant's motion. *See Presbytery of New Jersey of the Orthodox Presbyterian Church v Florio*, 40 F.3d 1454, 1462 (3d Cir.1994) ( " [A]nalysis in terms of ripeness tells us when a proper party may bring an action."); *see also* Erwin Chemerinsky, *Federal Jurisdiction* 99 (1989) ( " [R]ipeness centers on whether the injury has occurred yet.").

FN4. There is some uncertainty in circuit and elsewhere whether the ripeness requirement stems from the "case and controversy" clause of Article III or is just a prudential limitation on federal jurisdiction. *See Armstrong World Industries, Inc v Adams*, 961 F.2d 405, 411 n. 12 (3d Cir.1992). Regardless, the Third Circuit has noted most recently that the doctrine is at least partially grounded in the case and controversy requirement. *See Travelers Insurance Co. v Obusek*, 72 F.3d 1148, 1154 (3d Cir.1995).

Under Third Circuit Court of Appeals' case law,[FN5] ripeness involves weighing two factors: (1) the hardship to the parties of withholding court consideration ("hardship prong"); and (2) the fitness of the issues for judicial review ("fitness prong"). *See Artway*, 8 F.3d at 1247.[FN6] Ultimately, the case must involve " 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " *Presbytery*, 40 F.3d at 1463 (quoting *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971)). It is the plaintiff's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                        Page 3

Not Reported in F.Supp.2d, 1998 WL 552966 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

responsibility to allege facts that invoke the court's jurisdiction. *See Presbytery*, 40 F.3d at 1462 (citing *Renne v. Geary*, 501 U.S. 312, 316, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991)).

> FN5. Because a motion of this type is procedural and does not unduly infringe the substantive interests of Colorado, the State whose contract law applies in this case, federal law applies to resolution of this motion. *See generally Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Byrd v. Blue Ridge Rural Electric Coop.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); *Erie R. Co v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

> FN6. A three-part test for ripeness may also be applied having the following prongs: (1) adversity of interest; (2) conclusiveness; and (3) utility. *See Artway*, 81 F.3d at 1247 n. 7 (citing *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643, 647 (3d Cir.1990)). The Supreme Court's two-part test remains good law, however, and appears more apt for this case. *See id*

### 1. Hardship of Denying Review

In this case, the hardship factor inquiry asks whether the threat of trying to force defendant's counsel to testify at a deposition and subsequently moving to disqualify defendant's counsel is credible and not merely speculative so as to be concrete for purposes of Article III. *See Artway*, 8 F.3d at 1247 (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)). In other words, "[m]any cases, deny ripeness on the straight-forward ground that the anticipated events and injury are simply too remote and uncertain to justify present adjudication." *See id* at 1248 (quoting 13A Charles A. Wright *et al, Federal Practice and Procedure* § 3532.2 at 138 (1984)).

*3 Dakota seeks to protect itself from two potential

harms: (1) having its lead counsel testify as a material witness; and (2) having its lead counsel and his firm disqualified from the litigation. Although the deposition of Dakota's counsel has not occurred as of the time of this opinion, it is nonetheless true that Falkenberg has taken substantive steps in procuring Besozzi first at his deposition and then as a material witness at trial. The noticing of Besozzi's deposition is concrete enough evidence of potential hardship to Dakota's interests.

Insofar as disqualification is concerned, a motion for disqualification has not been filed by Falkenberg, has not been raised *sua sponte* by the Court, nor has Besozzi taken a position on whether it would be necessary for him to have to withdraw from the case given his obligations under D. DEL. LR 83.6(d)(2) (1995).[FN7] The only evidence of Falkenberg's intent to disqualify Besozzi is found in the letter of the January 16 which states in pertinent part:

> FN7. D. Del. LR 83.6(d)(2) states:
> Acts or omissions by an attorney admitted to practice before this Court, individually or in concert with any other person or persons, which violates the Model Rules of Professional Conduct of the American Bar Association, subject to such modifications as may be required or permitted by Federal statute, court rule or decision of law, shall constitute misconduct and be grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship.

Under the circumstances, I believe you and your firm are required to withdraw from representation of Dakota Cellular. We intend to name you on our Rule 26(a)(1) disclosure, and to pursue the matter. For example, we will be noticing a deposition of you in the very near future. If you, or your firm, continue to serve as counsel to Dakota Cellular, we reserve the right to seek to force your withdrawal.
*See* D.I. 29, Ex. 6. This letter's mention of an anticipated disqualification motion is simply too remote and uncertain to justify present adjudication. Accordingly, although the hardship prong has been

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 552966 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

met as far as requiring Besozzi to testify, any ruling on the disqualification of Besozzi would be premature at this time since there is no concrete hardship to Dakota at this point of the litigation.

### 2. Fitness of Issues for Judicial Review

As disqualification has been found to be premature under the hardship prong, it is only necessary to analyze the Besozzi deposition issue under the fitness prong. In analyzing the fitness factor, the primary consideration is whether the record is factually adequate to enable the Court to make the necessary legal determinations. *See Artway,* 81 F.3d at 1249. The more the question presented is purely one of law, and the less that additional facts will aid the court in its inquiry, the more likely the issue to be ripe, and vice-versa. *Id*

Here, the contractual interpretation issue was initially decided by this Court as a matter of law on a motion to dismiss, but was remanded because the Third Circuit Court of Appeals found that the Court must conditionally consider extrinsic evidence concerning the parties' intentions in entering into the listing agreement. Nevertheless, the record is factually adequate to enable the Court to determine whether Besozzi could shed light on custom and usage or other relevant extrinsic evidence when testifying. Counsel for Falkenberg has identified, through its briefing and at oral argument, at least six different areas in which Besozzi's testimony may be relevant. Accordingly, the Court finds Dakota's Motion for protective order concerning the testimony of Besozzi is fit for review and thus, this aspect of the motion for protective order is ripe for Article III purposes.

### B. Substantive Analysis of Protective Order Motion

*4 In a civil case, a party is entitled as a general matter to discovery of any information sought if it appears "reasonably calculated to lead to the discovery of admissible evidence." *See Degen v. United States,* 517 U.S. 820, 116 S.Ct. 1777, 1782, 135 L.Ed.2d 102 (1996) (quoting Fed.R.Civ.P. 26(b)(1) [FN8]). It is axiomatic that the discovery

rules are to be construed liberally in favor of the party seeking discovery. *See Marshall v Electric Hose and Rubber Co.,* 68 F.R.D. 287, 295 (D.Del.1975) (citing *Hickman v Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). Additionally, there is no general prohibition against obtaining the deposition of adverse counsel regarding relevant, non-privileged information. *See Johnston Development Group v Carpenters Local 1578,* 130 F.R.D. 348, 352 (D.N.J.1990). A party wishing to obtain an order of protection over discovery material must demonstrate that "good cause" exists for such a protective order. *See Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786 (3d Cir.1994) (citing Fed. R.Civ.P. 26(c) [FN9]). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Id.* (quoting *Publicker Indus., Inc v. Cohen,* 733 F.2d 1059, 1071 (3d Cir.1984)). The question of whether an attorney deposition should be permitted is analyzed under the same standards as any other protective order motion. *See Johnston Development,* 130 F.R.D. at 352. Dakota, as the party seeking the protective order to preclude Besozzi's deposition, bears the burden of demonstrating good cause to preclude Besozzi's testimony. *See Cipollone v Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986), *cert. denied,* 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987) (citing Fed.R.Civ.P. 26(c)).

FN8. Fed.R.Civ.P. 26(b)(1) recites:
Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ... The information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

FN9. Fed.R.Civ.P. 26(c), in pertinent part, recites:
Upon motion by a party ... and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d

Not Reported in F Supp.2d, 1998 WL 552966 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 5

from annoyance, embarrassment, oppression, or undue burden or expense....

The Court finds Dakota has not carried its burden in demonstrating good cause. First, Falkenberg has made the requisite showing that its request to depose Besozzi is reasonably calculated to lead to the discovery of admissible evidence. There is ample evidence to suggest that Besozzi possesses relevant extrinsic evidence as to how the parties viewed the meaning of Paragraph 5(b) of the listing agreement.[FN10] Specifically, Falkenberg's counsel points to six potential relevant areas about which Besozzi may have knowledge: 1) whether a separate agreement or letter of intent was ever entered into between the parties; 2) whether Besozzi had any personal knowledge whether the closing, in addition to the initial asset purchase agreement, had to occur within the six month protective period outlined in the listing agreement; 3) whether a pleading filed with the Federal Communications Commission (" FCC") by Besozzi was an admission by an agent of Dakota that a listing agreement did exist; 4) if Besozzi drafted the asset purchase agreement and whether his drafting of the asset purchase agreement was affected by his understanding of the listing agreement; [FN11] 5) why Besozzi made certain changes to the asset purchase agreement by inserting new language into the agreement; and 6) whether Besozzi has any knowledge with regard to custom and usage in brokerage contracts in the telecommunications field. See D.I. 51 at 21-26. This proffer by Falkenberg satisfies the Court that the deposition of Besozzi is not being sought for any improper reason or in bad faith.

FN10. Besozzi is also likely to have relevant information to provide concerning the quantum meruit claim whether that issue is tried in conjunction with the contract claim, or thereafter. Specifically, Besozzi may testify as to whether Falkenberg obtained a higher price than Dakota had been previously able to negotiate.

FN11. Dakota disputes that the asset purchase agreement is relevant to the

interpretation of the listing agreement. However, Falkenberg points to the *Water Rights* case which stands for the proposition that post-contract and pre-dispute evidence may be relevant extrinsic evidence for contract interpretation purposes. *See Water Rights v. No Colo Water Conservancy Dist*, 677 P.2d 320, 327 (Colo.1984) (en banc). Thus, it is not dispositive of the issue that the parties now agree that Falkenberg drafted the listing agreement, *see* D.I. 51 at 38, as a party's intent in entering a contract may be gleaned from post-contractual events under Colorado law.

*5 As for what serious injury Dakota will suffer if Besozzi's deposition is allowed, Dakota first asserts it will suffer significant harm if Besozzi is forced to withdraw from this case as he has accumulated a substantial understanding of this case which no other attorney has. The Court, however has previously determined that an adjudication of whether Besozzi must withdraw from this litigation would be premature at this time. Accordingly, it is not necessary to determine whether "good cause" would exist if Besozzi and his firm were forced to withdraw from the case as a result of this deposition. Such speculative future harm does not meet the specificity requirement mandated by the good cause standard. *See Cipollone*, 785 F.2d at 1121.

Second, the fact that Besozzi may be able to assert attorney-client or work-product privilege on some questions asked by Falkenberg does not cause specific injury to Dakota. Indeed, the relevant Federal Rule of Civil Procedure exempts privileged information from the scope of discoverable material. *See* Fed.R.Civ.P 26(b)(1). Additionally, there is sufficient reason to believe that other questions asked during a deposition concerning Besozzi's knowledge of the parties' intent may not be protected by the privilege, such as matters disclosed to third parties or information gleaned outside of the attorney-client relationship. Lastly, Falkenberg has given the Court its assurances that it does not plan to tread on either Dakota's work-product or attorney-client privileges. The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 6
Not Reported in F.Supp.2d, 1998 WL 552966 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Court reminds Falkenberg, nevertheless, that " caution in permitting the deposition of litigation counsel is indicated where the subject matter of the deposition would be likely to be heavily intertwined with privileged or confidential information." *See Johnston Development Group,* 130 F.R.D. at 352.

Third, the Court does not believe that deposing Besozzi would cause injury to Dakota by going beyond the mandate issued by the Third Circuit Court of Appeals. The mandate states in pertinent part: "[T]he judgment ... is ... reversed and remanded .. for further proceedings consistent with the Opinion of this Court." *See* D.I. 29, Ex. 3. In turn, the Opinion of the appellate court only requires the district court "to consider the types of extrinsic evidence that Colorado permits, including ' evidence of local usage and of the circumstances surrounding the making of the contract.' *Cheyenne Mountain,* 861 P.2d at 715." *See Falkenberg,* No. 96-7361, slip op. at 13. Significantly, the Court is allowed to consider "the types of extrinsic evidence that Colorado permits," and is not limited to the two types explicitly referenced by the Court. In fact, in the *Water Rights Case,* an en banc Colorado Supreme Court decided that relevant extrinsic evidence may also include "the parties' construction of a contract before a dispute arises..." *See Water Rights,* 677 P.2d at 327. Thus, Besozzi's deposition testimony may indeed be relevant extrinsic evidence that Colorado law permits if he is able to supply any information on how the parties construed Paragraph 5(b) of the listing agreement. As such, permitting Besozzi to be deposed does not exceed the mandate of the Third Circuit Appeals Court and does not prejudice Dakota's interests in any matter.

*6 In sum, Dakota has not illustrated good cause for the requested protective order. Dakota has not show that any clearly defined and serious injury would transpire if Besozzi gives his deposition. Any work-product protection or attorney-client privilege that Besozzi possesses will remain sacrosanct. Nevertheless, Falkenberg will be able to depose Besozzi on any relevant extrinsic evidence permitted by Colorado law, not protected by work product or privilege, that might shed light on the parties intent with respect to Paragraph 5(b) of the listing agreement or addresses Falkenberg's

quantum meruit claim.[FN12] This conclusion is consistent with other courts which have ruled in this often complex area of discovery. *See Johnston Development Group,* 130 F.R.D. at 352 ("The deposition of the attorney may be 'both necessary and appropriate' where the attorney may be a fact witness, such as an 'actor or viewer.' ") (citing *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc,* 117 F.R.D. 83, 85 n. 2 (M.D.N.C.1987)). Accordingly, Dakota's motion for protective order will be denied.

> FN12. Having agreed in the Stipulated Scheduling Order to carry out discovery on both the contract and quantum meruit claim, *see* D.I. 25 at 2, the Court can see no reason why Besozzi should not also be deposed on the quantum meruit claim even though the Third Circuit Court of Appeals deferred ruling on this issue.

An appropriate order will issue.

D.Del.,1998.
Falkenberg Capital Corp. v. Dakota Cellular, Inc.
Not Reported in F.Supp.2d, 1998 WL 552966 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:95cv00351 (Docket) (Jun. 12, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.