## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TV GUIDE ONLINE, INC. and <br> TV GUIDE ONLINE, LLC, <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> TRIBUNE MEDIA SERVICES, INC., <br><br> Defendant and Counterclaim Plaintiff. | ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No.: 05-725 KAJ <br> ) <br> ) <br> ) PUBLIC VERSION <br> ) <br> ) |

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANT TRIBUNE MEDIA SERVICES, INC.'S
### MOTION TO DISMISS PLAINTIFF TV GUIDE ONLINE, INC.

Richard K. Herrmann (I.D. No. 405)　　　　　　　　Mark A. Pals, P.C.
Mary B. Matterer (I.D. No. 2696)　　　　　　　　　Linda S. DeBruin
MORRIS JAMES HITCHENS & WILLIAMS　　　　Michael A. Parks
222 Delaware Avenue, 10th Floor　　　　　　　　　Meredith Zinanni
Wilmington, Delaware 19801　　　　　　　　　　　KIRKLAND & ELLIS LLP
302.888.6800　　　　　　　　　　　　　　　　　　200 East Randolph Drive
rherrmann@morrisjames.com　　　　　　　　　　　Chicago, Illinois 60601
　　　　　　　　　　　　　　　　　　　　　　　　312.861.2000

*Counsel for Defendant Tribune Media Services, Inc.*

Originally filed: November 20, 2006
Public version filed: November 28, 2006

## TABLE OF CONTENTS

BACKGROUND ....................................................................................................................... 1

ARGUMENT ............................................................................................................................. 3

    I.     Non-Exclusive Licensees to a Patent Can Suffer No Injury and Cannot Sue on That Patent. .................................................................................................................... 3

    II.    TVGO Inc. May Not Sue On The '078 Patent And Cannot Be Party To This Suit. ............................................................................................................................... 5

CONCLUSION .......................................................................................................................... 7

## TABLE OF AUTHORITIES

**Cases**

*Durable Metal Products, Inc. v. U.S.*, 1993 WL 410294 (Fed. Cir. Oct. 15, 1993) .................... 3-4

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................ 3, 4

*Ortho Pharm. Corp. v. Genetics Institute, Inc.*, 52 F.3d 1026 (Fed. Cir. 1995) ................. 1, 4, 5, 7

*Poly-America, L.P. v. GSE Lining Tech.*, 383 F.3d 1303 (Fed. Cir. 2004) ..................................... 4

*Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 (Fed. Cir. 1995) ............................................... 4, 5, 6

*Warth v. Seldin*, 422 U.S. 490 (1974) ............................................................................................. 3

**Statutes**

35 U.S.C. § 281 ............................................................................................................................... 5

35 U.S.C. §100(d) ........................................................................................................................... 5

TV Guide Online, Inc. should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, as it does not have standing to sue as a plaintiff or co-plaintiff in this case. It is settled law that "[a] holder of [] a nonexclusive license suffers no legal injury from infringement and, thus, has no standing to bring suit or even join in a suit with the patentee." *Ortho Pharm. Corp. v. Genetics Institute, Inc.* 52 F.3d 1026, 1031 (Fed. Cir. 1995). TV Guide Online, Inc., by its own admission, is a non-exclusive licensee to the '078 patent. Therefore, under black letter law, it suffers no legal injury upon which a claim may be based and has no standing to bring suit. TMS asks this Court to dismiss TV Guide Online, Inc. from this action.

## BACKGROUND

Plaintiffs TV Guide Online, LLC ("TVGO LLC") and TV Guide Online, Inc. ("TVGO Inc.") (collectively, "Plaintiffs") have jointly sued defendant Tribune Media Services, Inc. ("TMS"). TVGO LLC is the owner by assignment of United States Patent No. 5,988,078 ("the '078 patent"). In paragraph four of its Complaint, Plaintiffs plead that TVGO Inc. "is the exclusive licensee of [United States Patent No. 5,988,078], with the right to bring suit and to recover damages for past infringement." D.I. 1 at 1.

REDACTED

During an August 21, 2006 discovery teleconference, this Court ordered Plaintiffs to identify all licenses that cover the '078 patent. D.I. 100 at 15-18. In response to that order, Plaintiffs supplemented their response to Interrogatory Nos. 18 and 19.

i

REDACTED

This admission of Plaintiffs' Rule 30(b)(6) designee further undermines Plaintiffs' allegations that TVGO Inc. has an exclusive license. Gemstar is not the owner of the '078 patent, nor have Plaintiffs identified to date any rights Gemstar has in the '078 patent. Gemstar is simply the parent company of the owner of the '078 patent, TVGO LLC. For Gemstar to be a licensor of the '078 patent, it would have to be yet another licensee, with rights including the right to

REDACTED

sublicense —

## ARGUMENT

Non-exclusive patent licensees can suffer no injury under the patent laws. As such, they have no standing to sue for patent infringement. Because TVGO Inc. is a non-exclusive licensee of the '078 patent, it cannot itself sue for patent infringement, nor may it join such a suit. TVGO Inc. must therefore be dismissed from this suit for lack of standing.

### I. Only Patentees And Exclusive Licensees To A Patent — Not Nonexclusive Licensees — Have Standing To Sue On That Patent.

Standing is founded "in concern about the proper — and properly limited — role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1974). There are three requirements for Article III standing: (1) injury in fact, which means an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct, which means that the injury fairly can be traced to the challenged action of the defendant, and has not resulted from the independent action of some third party not before the court; and (3) a likelihood that the injury will be redressed by a favorable decision, which means that the prospect of obtaining relief from the injury as a result of a favorable ruling is not too speculative. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A party who lacks standing to sue may be dismissed from the case for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Durable Metal Products, Inc. v. U.S.*, No. 93-5090, 1993 WL 410294, at *3 (Fed. Cir. Oct. 15, 1993) (finding that because plaintiff lacked standing, it was permissible for the district court to dismiss for lack of subject matter jurisdiction

pursuant to Fed. R. Civ. P. 12(b)(1)). The party invoking federal jurisdiction bears the burden of establishing that it has standing to sue. *Lujan*, 504 U.S. at 561; *Ortho Pharm.*, 52 F.3d at 1031.

In patent cases, it is the patentee who has a remedy for infringement of a patent, and thus standing to sue. 35 U.S.C. § 281; *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995) ("Generally, one seeking money damages for patent infringement must have held legal title to the patent at the time of the infringement."). The patentee includes both the original patent owner and any successors in title to the patent, such as assignees. 35 U.S.C. § 100(d). There is one exception to this rule of standing — a licensee has co-plaintiff standing to sue if it has exclusive rights under the patent, generally referred to as an exclusive license. *Poly-America, L.P. v. GSE Lining Tech.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004) ("a licensee generally may not sue for damages unless it has exclusive rights under a patent."); *Rite-Hite*, 56 F.3d at 1552 ("[u]nder certain circumstances, a licensee may possess sufficient interest in the patent to have standing to sue as a co-plaintiff with the patentee. Such a licensee is usually an 'exclusive licensee.'" (citations omitted)); *Ortho Pharm.*, 52 F.3d at 1031-32 (holding that to have co-plaintiff standing, a licensee must "hold some of the proprietary sticks from the bundle of patent rights," which makes the licensee an exclusive licensee).

An exclusive license grants the licensee some right "to exclude others from making, using or selling the invention in the United States." *Id.*; *see also Rite-Hite*, 56 F.3d at 1552 ("To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well."). "[I]t is the licensee's beneficial ownership of a right to prevent others from making, using or selling the

patented technology that provides the foundation of co-plaintiff standing, not simply that the word 'exclusive' may or may not appear in the license." *Ortho Pharm.*, 52 F.3d at 1032.

In contrast, "[i]f the party has not received an express or implied promise of exclusivity under the patent, *i.e.*, the right to exclude others from making, using, or selling the patented invention, the party has a 'bare license,' and has received only the patentee's promise that that party will not be sued for infringement." *Rite-Hite*, 56 F.3d at 1552. Such a "bare license" is a nonexclusive license and does not provide standing because it does not grant a right to exclude others. *Id.* at 1553. Although a non-exclusive licensee may suffer economic injury, it does not suffer a legal injury from patent infringement, and thus is not entitled to damages. *See Ortho Pharm.*, 52 F.3d at 1031. It is well settled law that "[a] holder of [] a nonexclusive license suffers no legal injury from infringement and, thus, has no standing to bring suit or even join in a suit with the patentee." *Id.*

As the non-patentee plaintiff, the burden is on TVGO Inc. to establish that it has standing to sue. *See id.* TVGO Inc. cannot meet that burden.

II. **TVGO Inc. Is A Nonexclusive Licensee To The '078 Patent, And Thus Does Not Have Standing To Sue On The '078 Patent And Cannot Be A Party To This Suit.**

The Federal Circuit has held that "to be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, *but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well.*" *Rite-Hite*, 56 F.3d at 1552 (emphasis added). TVGO Inc. has received no such promise that others will be excluded from practicing the '078 patent — in fact, the opposite is true. **REDACTED**

## REDACTED

    This, however, fails the Federal Circuit's definition of an exclusive licensee for standing purposes. *See Rite-Hite*, 56 F.3d at 1552.

REDACTED

**REDACTED**

"[A] contract cannot change the statutory requirement for suit to be brought by the 'patentee'" and does not "negate the requirement that, for co-plaintiff standing, a licensee must have beneficial ownership of some of the patentee's proprietary rights." *See Ortho Pharm.*, 52 F.3d at 1034.   **REDACTED**

As a nonexclusive licensee to the '078 patent, even assuming *arguendo* that TVGO Inc. may suffer an economic injury as a result of TMS' alleged infringement, TVGO Inc. does not suffer a compensable legal injury, and thus does not have standing to sue for infringement of the '078 patent. *See Ortho Pharm.*, 52 F.3d at 1031 ("A holder of such a nonexclusive license suffers no legal injury from infringement and, thus, has no standing to bring suit or even join in a suit with the patentee."). Thus, TVGO Inc. should be dismissed from this suit.

## CONCLUSION

Because TVGO Inc. lacks any standing to bring or join a suit for alleged infringement of the '078 patent as a nonexclusive licensee to the patent, TMS respectfully requests that Plaintiff TVGO Inc. be dismissed from this action.

Dated: November 20, 2006  /s/ Richard K. Herrmann
Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES HITCHENS & WILLIAMS
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
rherrmann@morrisjames.com

Mark A. Pals, P.C.
Linda S. DeBruin
Michael A. Parks
Meredith Zinanni
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
312.861.2000

*Counsel for Defendant Tribune Media Services, Inc.*

# EXHIBIT 1

# EXHIBIT REDACTED IN ITS ENTIRETY

# EXHIBIT 2

# EXHIBIT REDACTED IN ITS ENTIRETY

# EXHIBIT 3

# EXHIBIT REDACTED IN ITS ENTIRETY

# EXHIBIT 4

Westlaw.

11 F.3d 1071 Page 1
11 F.3d 1071, 1993 WL 410294 (C.A.Fed.)
**(Cite as: 11 F.3d 1071)**

**H**
Durable Metal Products, Inc. v. U.S.C.A.Fed.,1993.NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTAF Rule 47.6 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Federal Circuit.
DURABLE METAL PRODUCTS, INC., Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
**No. 93-5090.**

Oct. 15, 1993.

Fed.Cl.

AFFIRMED.

Before ARCHER, MICHEL and CLEVENGER, Circuit Judges.MICHEL, Circuit Judge.

DECISION

*1 Plaintiff-Appellant, Durable Metal Products, Inc. ("Durable"), appeals from the January 26, 1993, decision of the United States Court of Federal Claims, No. 687-89C, in this bid protest case granting the government's motion to dismiss Durable's claims for equitable relief pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RUSCFC), and granting the government's motion for summary judgment with respect to the remaining claims. Finding no error in the Court of Federal Claims's decision, we *affirm*.

DISCUSSION

In September 1989, the United States Army Tank Automotive Command ("TACOM") issued a request for bids, Request for Quotation No. DAAE07-89-Q-Y282 (hereinafter "Y282"). Although Durable's bid was the lowest submitted, the government informed Durable that it was not eligible for the award because Durable had been found nonresponsible.

In December 1989, Durable received another solicitation from TACOM, Request for Quotation No. DAAE07-89-B-L374 (hereinafter "L374"). Fearing that it would be found nonresponsible for award under this solicitation, Durable initiated a suit in the United States Claims Court [FN1] for injunctive and other relief. In its complaint, Durable sought to enjoin the government from making any awards under solicitations Y282 or L374 until a new determination of Durable's responsibility had been made. The trial court granted Durable's request for injunctive relief, and, in so doing, enjoined the government from making any award under these two solicitations. Thereafter, the government agreed to conduct a new pre-award survey to determine Durable's responsibility or lack thereof. As a result of the new survey, Durable was found to be responsible to perform a contract awarded under solicitation L374, but not to perform one awarded under solicitation Y282.

Durable contends that both the first and second findings of nonresponsibility with respect to solicitation Y282 were arbitrary and lacking in rational basis. Durable argues that if it had been allowed to proceed with discovery, it could have produced government documents illustrating the arbitrariness and lack of rational basis in the government's findings. Instead, in an order dated August 21, 1991, the Court of Federal Claims stayed all discovery. Durable now argues that the Court of Federal Claims erred in granting the government's motion for summary judgment on the ground that Durable failed to establish an evidentiary basis for its contentions.

In reviewing a grant of summary judgment, we are not bound by Court of Federal Claims's rulings. We must independently determine whether the standards for summary judgment have been met. *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed.Cir.1987). "Summary judgment is properly granted only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Id.;* RUSCFC 56.

Here, the underlying material facts are undisputed. In its Statement of Genuine Issues, Durable agreed with all except two of the government's Proposed Findings of Uncontested Facts. Durable disagreed with the fact that solicitation Y282 was cancelled "in the best interest of the [g]overnment," and that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.3d 1071 Page 2
11 F.3d 1071, 1993 WL 410294 (C.A.Fed.)
**(Cite as: 11 F.3d 1071)**

solicitation Y282 was cancelled because "the supplies being contracted for are no longer required." In support of its Proposed Findings, which are relevant to the inquiry of whether the government acted arbitrarily or capriciously in cancelling the solicitation, the government submitted the affidavit of Judith A. Ward, the Procuring Contracting Officer and Chief of the Trailer Support Section of the United States Army Tank Automotive Command, which issued the request for quotation.

*2 Durable, on the other hand, provided no evidence whatsoever to contradict the Court of Federal Claims's findings. Durable's mere allegations that the rulings of the Court of Federal Claims are incorrect, along with its unsubstantiated assertions that discovery would have provided it with necessary evidence to establish the impropriety of the government's nonresponsibility determinations are insufficient to raise a genuine issue for trial. See, e.g., Campbell v. United States, 2 Cl.Ct. 247, 249 (1983) (an officer in the United States Army Reserve brought a suit claiming pay and allowances for two periods of active duty, and the Court of Federal Claims granted the government's motion for summary judgment on the grounds that the government produced evidence that plaintiff's active duty orders were terminated early, whereas plaintiff presented no evidence to the contrary, and that plaintiff's assertions of entitlement to payment were nothing more than "legal conclusions [,] * * * insufficient to cast doubt on defendant's evidence"). Furthermore, the Court of Federal Claims need not deny summary judgment merely to satisfy Durable's "speculative hope" of finding some evidence that might tend to support its claim of improper conduct on the part of government officials. Pure Gold, Inc. v. Syntex (U.S.A.), Inc., 739 F.2d 624, 627 (Fed.Cir.1984).

Unlike appellants in Cowan v. J.C. Penney Co., 790 F.2d 1529, 1531 (11th Cir.1986), who won a court order compelling appellees to answer certain interrogatories, in Snook v. Trust Co. of Georgia Bank of Savannah, N.A., 859 F.2d 865, 869-70 (11th Cir.1988), who filed a motion to compel production of certain documents, and in THI-Hawaii, Inc. v. First Commerce Financial Corp., 627 F.2d 991, 994 (9th Cir.1980), who were required to apply under Federal Rule of Civil Procedure 56(f) for a continuance of the proceedings pending completion of discovery, Durable failed to move for a court order compelling production of the requested documents, to file a Rule 56(f) motion or even to mention in its brief in opposition to the government's motion for summary judgment the government's uncooperativeness in producing the requested documents. In so doing, Durable waived any arguments it may have had with respect to obtaining those documents before a ruling on summary judgment.

Even if Durable did not waive its arguments, however, Durable still failed to raise a genuine issue of material fact because it did not offer any evidence to establish that the documents would be helpful to its case. The Small Business Administration (SBA) documents concerning the SBA's refusal to issue a certificate of competency are no doubt highly relevant to the issue of the government's basis for its finding on Durable's responsibility. In order to survive summary judgment, however, Durable must demonstrate that the contents of these documents not produced by the government would be helpful to Durable's case. Because Durable failed to do so, we affirm the Court of Federal Claims's grant of summary judgment.

*3 Durable also contends that the Court of Federal Claims erred in refusing to allow Durable to apply for attorney fees and costs. In order to recover attorney fees and costs, Durable must establish that it is a prevailing party, and allege that the position of the government was not substantially justified. 28 U.S.C. § 2412 (1988). In the present case, the Court of Federal Claims found that Durable withdrew its bid to solicitation L374 prior to an award of a contract, and that the government properly cancelled solicitation Y282 before making an award. Because Durable therefore cannot in any event establish itself as a prevailing party, the Court of Federal Claims's denial of Durable's request to apply for attorney fees and costs was proper.

Finally, Durable asserts that the Court of Federal Claims erred in ruling that Durable's claims for injunctive and declaratory relief became moot when solicitations Y282 and L374 were cancelled. We disagree.

As noted above, Durable withdrew its bid for solicitation L374 prior to an award of a contract. In Federal Data Corp. v. United States, 911 F.2d 699 (Fed.Cir.1990), we held that an unsuccessful bidder who withdrew from the procurement was not an "interested party," had no standing, and therefore was not entitled to relief. Id. at 704. Like the unsuccessful bidder in Federal Data, Durable no longer qualified as an "interested party" after withdrawing its bid. Accordingly, the Court of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 F.3d 1071 Page 3
11 F.3d 1071, 1993 WL 410294 (C.A.Fed.)
**(Cite as: 11 F.3d 1071)**

Federal Claims properly concluded that Durable's claims for declaratory relief became moot.

Similarly, Durable's request for a permanent injunction was also rendered moot because solicitation Y282 had been properly cancelled by the government prior to a ruling on the request. In addition, Durable's request for a preliminary injunction as to solicitation Y282 became moot because this request had previously been granted. Durable neither challenges the propriety of the government's cancellation action, nor disputes that it previously received preliminary injunctive relief. Since Durable's claims became moot, Durable lacked standing, and it was, therefore, permissible for the Court of Federal Claims to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Accordingly, we affirm the Court of Federal Claims's rulings on these issues.

We have considered petitioner's other arguments and find them to be without merit. For the foregoing reasons, we affirm the judgment of the Court of Federal Claims in all respects.

> FN1. Effective October 29, 1992, the United States Claims Court became the "United States Court of Federal Claims" pursuant to Title IX of the Federal Courts Administration Act of 1992, Pub.L. No. 102-572, 106 Stat. 4506 (1992). For simplicity, we refer to it throughout by its new name.

C.A.Fed.,1993.
Durable Metal Products, Inc. v. U.S.
11 F.3d 1071, 1993 WL 410294 (C.A.Fed.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.