**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TV GUIDE ONLINE, INC. and | ) |
| TV GUIDE ONLINE, LLC, | ) |
|              Plaintiffs, | ) |
| | ) |
|       v. | )  C.A. No. 05-725 KAJ |
| | ) |
| TRIBUNE MEDIA SERVICES, INC., | )  **PUBLIC VERSION** |
|              Defendant. | ) |

## REBUTTAL EXPERT REPORT OF MICHAEL H. CHASE ON DAMAGES

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES HITCHENS & WILLIAMS
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
rherrmann@morrisjames.com

Mark A. Pals
Linda S. DeBruin
Michael A. Parks
Laura A. Hepburn
Meredith Zinanni
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601
312.861.2000

Tina Hernandez
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, CA  90017-5800
213.680.8400

*Attorneys for Defendant*
*Tribune Media Services, Inc.*

Original Date:  February 9, 2007
Redacted Version:  February 19, 2007

TV GUIDE ONLINE, INC. AND TV GUIDE ONLINE, LLC

v.

TRIBUNE MEDIA SERVICES, INC.

REBUTTAL EXPERT REPORT ON DAMAGES

MICHAEL H. CHASE

NAVIGANT CONSULTING, INC.
FEBRUARY 9, 2007

Confidential
Subject To Protective Order

# TV Guide v. TMS

## Rebuttal Expert Report On Damages

### Table Of Contents

I.    Introduction.................................................................................................1

II.   Information Reviewed And Background........................................................2

III.  Lost Profits Analysis....................................................................................7

IV.   Reasonable Royalty Analysis .....................................................................32

### Attachments

| | |
|---|---|
| Attachment A: | Resume Of Michael Chase |
| Attachment B: | Testimony Of Michael Chase In The Last Four Years |
| Attachment C: | Documents And Other Information Reviewed |
| Attachment D: | Analysis of Georgia Pacific Factors |
| Attachment E: | TMS Deposition Quotations Regarding The Zip Code Feature And Local TV Listings |
| Attachment F: | Summary Of Issues, Omissions And Errors In Dr. Vellturo's Exhibit 18 |
| | |
| Attachment 100: | Summary Of Reasonable Royalties Including All Website Revenue |
| Attachments 110-111: | Summary And Analysis Of Reasonable Royalties Excluding Revenue Attributable To Traffic From Office Locations |
| Attachment 120: | Summary Of Zap2it.com And TV Guide Online Visitor Duplication |
| Attachment 130: | Amount Zap2it.com Would Pay To TV Guide As An Affiliate |
| Attachments 140-144: | Analysis Of Zap2it.com Revenue Per 1,000 Page Views |
| Attachments 200-202: | Summary Of Vellturo's Zap2it.com Projection And Corrections |
| Attachments 210-212: | Replication Of Vellturo's Zap2it.com Projection |
| Attachments 220-221: | Vellturo's Zap2it.com Projection Corrected Only For Page Views |
| Attachments 230-231: | Vellturo's Zap2it.com Projection With Corrected Page Views And Segregated Revenue |

**Confidential**
**Subject To Protective Order**

# TV Guide v. TMS

## Rebuttal Expert Report On Damages

### ATTACHMENTS (CONTINUED)

| | |
|---|---|
| ATTACHMENTS 240-242: | Vellturo's Zap2it.com Projection With Corrected Page Views And Segregated Revenue Excluding TV Week Allocation |
| ATTACHMENTS 250-251: | Vellturo's Zap2it.com Projection Corrected Only To Exclude TV Week Allocation |
| ATTACHMENT 300: | Summary Of Total Accused Revenue In 2005 And 2006 |
| ATTACHMENT 301: | Summary Of Total Accused Revenue And Reasonable Royalties If TMS Was Given Notice In 2000 |
| ATTACHMENT 310: | Zap2it.com P&Ls |
| ATTACHMENT 311: | Zap2it.com P&Ls Excluding TV Week Allocation Revenue |
| ATTACHMENT 400: | TMSTV.com And MovieQuest.com 2000-2004 Plan |
| ATTACHMENT 410: | Zap2it.com 2001 Plan |
| ATTACHMENT 420: | Zap2it.com 2005 Plan |
| ATTACHMENT 430: | Zap2it.com 2005 Plan |
| ATTACHMENTS 500-501: | Zap2it.com National TV Listings Page Views Versus Total National Page Views |
| ATTACHMENTS 510-515: | Zap2it.com Page View Summary And Detail |

Confidential
Subject To Protective Order

## I.     INTRODUCTION

My name is Michael H. Chase.  I am a Managing Director of Navigant Consulting, Inc. ("NCI"), and a Certified Public Accountant.  I am experienced in financial, economic, damage, and accounting matters related to the scope of my work on this matter.  I have consulted on intellectual property and licensing related matters, prepared and analyzed numerous claims for lost profits and other economic impacts, and provided extensive analyses related to licensing matters including reasonable royalty rates, terms and amounts.

My curriculum vitae is included as ATTACHMENT A to this Report.  A listing of cases where I have testified as an expert witness at trial or deposition during the preceding four years is included as ATTACHMENT B.  My hourly billing rate for my work, including deposition and trial testimony is $400.  NCI's compensation is not contingent on the results of this case, the opinions I express or my testimony.  NCI's work on this matter was performed by me or under my supervision.

NCI is an international business, economic, financial and damages consulting company that provides services to corporations and counsel.  NCI has approximately 1,500 professionals in over 30 offices throughout the United States, Canada and the United Kingdom.

I was retained by Tribune Media Services, Inc. ("TMS') to analyze damages issues in the <u>TV Guide Online, Inc. and TV Guide Online, LLC v. Tribune Media Services, Inc.</u>, matter and to respond to Dr. Christopher Vellturo's report dated December 15, 2006

1

("Dr. Vellturo or Vellturo report").[1]  I may be asked to address additional issues raised by the plaintiff's expert witnesses or other issues as directed by counsel.

## II.    INFORMATION REVIEWED AND BACKGROUND

### A.    Information Reviewed

NCI received copies of the various documents and information listed in ATTACHMENT C.

The analysis presented in this Report is based on currently available documents and information and is subject to change based on review of additional information.  I understand that this Report may be supplemented by deposition and trial testimony.  Selected pages of the documents and information relied upon in this Report may be used as exhibits. Additionally, I may prepare graphical or illustrative exhibits based on the documents and information relied upon and my analysis of those documents and information.

The ATTACHMENTS are part of this Report, whether or not discussed directly in the text of this Report.

### B.    Background

#### 1.    TV Guide Online, LLC,  and TV Guide Online, Inc.

TV Guide Online, LLC and TV Guide Online, Inc., the plaintiffs in this matter, are sister corporations.  The plaintiffs are both subsidiaries of Gemstar-TV Guide International Inc. ("Gemstar" or "parent").

---

[1] Dr. Vellturo also submitted a Supplemental Expert Report on December 29, 2006 to correct formula and sourcing errors and to add certain licenses.

Confidential
Subject To Protective Order

TV Guide Online, LLC is the assignee of the patent at issue in this case as of October 5, 2005 ("the patentee"). I understand that TV Guide Online, LLC was formed on September 28, 2005[2], has no operations, and was created as a holding company for the '078 patent at issue in this case.

TV Guide Online, Inc. is affiliated with the patentee via common ownership and is licensed under the '078 patent. TV Guide Online, Inc. was acquired by Gemstar in 2000. TV Guide Online, Inc. operates the website www.tvguide.com, which competes with Zap2it.com.

### 2.    TMS And Zap2it.com

Tribune Media Services ("TMS') and its parent, Tribune Company, are headquartered in Chicago, Illinois. TMS is a provider of entertainment listings data and is considered to be the leading source of such data in the United States.[3] TMS listings are provided to many newspapers, cable and satellite service providers, and web portals.[4]

Zap2it.com, a website of TMS, was launched in 2000 and provides on-line television program listings along with original television and movie related content produced by Zap2it's own writing and photo staff.[5] Additional content is provided by Tribune Company subsidiaries and affiliates and other third parties.

Zap2it.com is operated as a national site at www.Zap2it.com and is also a provider of on-line television listings and movie, television and entertainment content to several hundred affiliate sites.[6] Predecessor sites to Zap2it.com include TV Week Interactive

---

[2] Articles of incorporation for TV Guide Online, LLC (TMS0068738 – 39).
[3] www.zap2it.com/services/site/zap-aboutus,0,2987155.story
[4] Ibid.
[5] Ibid.
[6] Ibid.

3

Confidential
Subject To Protective Order

(1995), TV Quest (1997), Movie Quest (1998), and Ultimate TV (1999).[7]  TV Week Interactive, TV Quest, and Ultimate TV all allowed users to search and view TV listings by zip code.[8]

### 3.    '078 Patent

The patent asserted in this matter is United States Patent No. 5,988,078 ("the '078 patent") entitled "Method And Apparatus For Receiving Customized Television Programming Information By Transmitting Geographic Location To A Service Provider Through A Wide-Area Network," which issued on November 23, 1999 to Michael R. Levine and was assigned to Index Systems, Inc. ("Index").[9]  On October 6, 2005 Index assigned the '078 patent to TV Guide Online, LLC.[10]

I understand the accused feature in this matter relates to the screens that allow a user at Zap2it.com to enter his or her five digit zip code ("zip code feature") as part of the process for identifying the particular cable or satellite provider service for which the user would like to view listings.  In response to entering a zip code, the Zap2it.com site displays a list of cable or satellite providers for that zip code for the user to select.  After the user selects the cable or satellite provider, the Zap2it.com site displays the television listing grid matched to that particular cable or satellite provider.

The plaintiffs accuse Zap2it.com's zip code feature of infringing the '078 patent.  For the purposes of this Report, I have been asked to assume that the '078 patent is valid, enforceable and infringed and the plaintiffs are entitled to damages.  Dr. Vellturo has

---

[7] TMS 0055939-40.
[8] TMS' Responses To TV Guide's First Set Of Interrogatories. (See Interrogatory No. 5).
[9] The '078 patent lists Gemstar Development Corp. as the assignee.  According to the Plaintiffs' December 4, 2006 Supplemental Responses And Objections To Defendant's Interrogatory Nos. 1, 4, 10, 11, 12, 13, 14, 17, 18 and 19, the listing of Gemstar was an error and the correct original assignee of the '078 patent was Index. (See the Second Supplemental Response To Interrogatory No. 14)
[10] TG 000450.

Confidential
Subject To Protective Order

outlined the plaintiffs' damages position, opining to a lost profits and a reasonable royalty measure of damages. This Report responds to the damages claims outlined in Dr. Vellturo's report.

### 4.    Damages Considerations

I understand the date for the start of damages is a legal issue. For the purposes of this Report, I have been asked to use two dates for the start of the damages period. The first date I have used is the date asserted by the plaintiffs and presented in Dr. Vellturo's report, April 29, 2005. This date coincides with the date of a presentation made by Gemstar to TMS. Alternatively, I have also quantified damages beginning on the date of the Complaint, October 12, 2005.

I have also been asked to address the proper measurement of accused revenue and associated damages under various possible infringement scenarios. The first scenario assumes that all website related revenues are properly considered in the damages calculation. Other scenarios address the possibility that not all users of Zap2it.com are infringing or eligible for inclusion in the compensation base.

As one example of another damages scenario, I understand TMS has taken the position that users accessing Zap2it.com from a location other than their television viewing location represent non-infringing users and, as such, are properly excluded from any patent infringement damages analysis. I understand it is TMS' position that users who access Zap2it.com from office locations are not accessing the site from their "television viewing location" (i.e., home) and are therefore non-infringing and properly excluded from the damages calculation. A proportionate deduction for the amount of non-infringing users who

5

access Zap2it.com from office locations should be made to reduce the compensation base to account for this scenario.[11]

As a further example of another damages scenario, I understand TMS has taken the position that the claims of the '078 patent are limited to users accessing Zap2it.com using a dial-up modem. Consequently all other users, including high speed access users, would be non-infringing and properly excluded from any patent infringement damages analysis. A proportionate deduction for the amount of non-infringing users who access Zap2it.com using methods other than a dial-up modem should be made to reduce the compensation base to account for this scenario.

More generally the compensation base is properly adjusted to exclude any and all uses that are non-infringing or otherwise ineligible for inclusion in the damages calculation due to notice issues or other issues. As another such example, I understand TMS has taken the position that damages would also be limited to users who actually entered a user zip code at least once during the damages period. Since Zap2it.com has a substantial number of repeat users, not all of the website traffic during the damages period would have required users to enter zip code information.[12]

This Report outlines examples for the methodology that would be reasonably employed to limit the compensation base for users that are non-infringing or otherwise ineligible for damages. The ATTACHMENTS provide detailed examples for the calculations. Such calculations would be adjusted as appropriate based on the findings that the Court or

---

[11] This adjustment assumes a determination of non-infringement. For these adjustments, the compensation base subject to a proportionate decrease would be the royalty base or, if applicable for any reason, the sales or page views used as a starting point in any lost profit analysis.

[12] I understand that users who previously accessed the Zap2it.com site would not need to manually enter their zip codes again during the damages period because a "cookie" resident on their computer stores the needed data for accessing customized television listings.

**Confidential**
**Subject To Protective Order**

jury may determine regarding such issues and be based on reasonable estimates for quantifying the appropriate compensation base.

## III.    LOST PROFITS ANALYSIS

Dr. Vellturo presents three distinct lost profits claims:

# REDACTED

As detailed below, lost profits based upon Dr. Vellturo's theories are not appropriate.

In order to establish a claim for lost profits, the patentee[13] must demonstrate that there is a reasonable probability that "but-for" TMS' assumed infringement, the patentee would have made some or all of the accused sales and earned higher profits. The "Panduit Test" is one way to systematically consider and evaluate the market impact on the patent owner's sales "but-for" TMS' assumed infringement. The following are the Panduit factors: (A) demand for the patented product; (B) manufacturing and marketing capability to exploit the demand; (C) absence of acceptable non-infringing substitutes; and (D) the amount of the profit.[14] The patent holder must prove all four of the Panduit factors to establish a claim for lost profits.

As discussed below, in my opinion it is not reasonable to infer that

# REDACTED

---

[13] I understand that in certain cases, damages may be claimed by the exclusive licensee under the patent as well. When referring to the patentee, I am also considering the exclusive licensee, if applicable.
[14] Panduit Corp. v. Stahlin Bros. Fibre Works, 575 F.2d 1152 (6th Cir. 1978).

7

Confidential
Subject To Protective Order

# REDACTED

**A.** **The Patentee Has Not Lost Any Profits – Dr. Vellturo's Lost Profits Claims Are For Affiliated Entities That Are Not The Patentee Or Exclusive Licensees**

As noted above, TV Guide Online, LLC is the patentee via assignment of the '078 patent as of October 6, 2005, six days before the Complaint was filed. TV Guide Online, LLC has no operations and has no capacity to make any sales or profits from business activities that are in competition with Zap2it.com. None of Dr. Vellturo's lost profits claims are based upon the business operations of TV Guide Online, LLC.

I understand that in some circumstances, an exclusive licensee may be entitled to damages in a patent infringement matter. Dr. Vellturo suggests that TV Guide Online, Inc. is an exclusive licensee,

# REDACTED

I understand that TMS has taken the position that from a legal perspective, TV Guide Online, Inc. is not in a position to recover lost profits as it is not the patentee and does not meet the legal requirement for standing as an exclusive licensee. Should such a position be accepted by the Court, Dr. Vellturo's lost profits claims would no longer be applicable.

15
16

17
18

# REDACTED

8

**Confidential**
**Subject To Protective Order**

The largest lost profit claim presented by Dr. Vellturo is related to the amount

# REDACTED

The following analysis provides further rebuttal to the lost profits claims presented by Dr. Vellturo assuming such claims are somehow applicable.

**B.  Price Erosion**



[19] Dr. Vellturo report dated December 15, 2006, pp. 29 – 30 at paragraph 73 (also summarized in earlier paragraphs without any added substance or discussion) and Exhibits 15, 15A.

9

**Confidential**
**Subject To Protective Order**

# REDACTED

Given the novelty of his price erosion claim, Dr. Vellturo was not able to present his claim using a sound methodology and he was not able to demonstrate how it meets the common criteria for a price erosion claim in a patent infringement matter.  For example, he does not evaluate the Panduit factors.[20]  His discussion of a "but-for" hypothetical provides no more than asserted conclusions without meaningful support.  He states that he was somehow able to "determine"[21] lost royalties, but he provides no discussion for the basis of his calculus.

There are many unstated and inescapable predicates and assumptions inherent in Dr. Vellturo's calculations.   Upon reasonable consideration of such predicates and assumptions, his determinations are erroneous, exaggerated and unsupportable.   The following elaborates on some of the significant and fatal flaws related to this claim including his unreliable methodology, his absence of sufficient facts and data, and examples of his failure to address the issues necessary to support a price erosion claim.  In my opinion the lost profit (price erosion) claim presented by Dr. Vellturo                    is not

# REDACTED

---

[21] Dr. Vellturo report dated December 15, 2006, p. 30 at paragraph 73.

10

Confidential
Subject To Protective Order

supportable, not properly calculated leading to a speculative and exaggerated result, and is not a proper element of damages.[22]

      1.     Dr. Vellturo's      Lost Profit Claim Is Based On An Unreliable Methodology Leading To An Improper Conclusion

**REDACTED**

**REDACTED**

---

[22] To the extent that Dr. Vellturo's claim related to the other issues that precede the notice to TMS, such claims are also properly excluded as being prior to the start of damages in this matter.

11

Confidential
Subject To Protective Order

**REDACTED**

---
[23] Dr. Vellturo's report dated December 15, 2006, p. 25 at paragraph 58.
[24]

**REDACTED**

**Confidential
Subject To Protective Order**

REDACTED

_____

13

**Confidential**
**Subject To Protective Order**

# REDACTED

[30] Armaly deposition, 1/31/07, pp. 226-227, 234.
[31] Armaly deposition, 1/31/07, pp. 293, 295.
[32] Armaly deposition, 1/31/07, p. 280.

14

**Confidential**
**Subject To Protective Order**

REDACTED

---

[33] Armaly deposition, 1/31/07, p. 288.
[34] ]
[35]
[36] Dr. Velluro uses March 2006 data for his market share estimates. See his Exhibit 15A.

**Confidential**
**Subject To Protective Order**

2.  Dr. Vellturo's          Lost Profit Claim Is Not Based On Sufficient
    Facts And Data

REDACTED

16                          **Confidential**
                    **Subject To Protective Order**

REDACTED

3.    Lost Profit Claim Does Not Pass A But-For Analysis, The
Panduit Test Or The Entire Market Value Rule

r

REDACTED

---

[39] Dr. Vellturo report dated December 15, 2006, p. 30 at paragraph 73.

17

Confidential
Subject To Protective Order

**REDACTED**

---

[41] Discussion with Beth Fulkerson.
[42] Vulcan Engineering Co., Inc. v. FATA Aluminum Inc., and FATA Group S.p.A., 278 F.3d 1366, (Fed. Cir. 2002)
[43] Crystal Semiconductor Corporation v. Tritech Microelectronics International, Inc. and Tritech Microelectronics
International PTE LTD, 246 F.3d 1336 (Fed. Cir. 2001)

18

Confidential
Subject To Protective Order

## C. Lost Sales                  REDACTED

Dr. Vellturo claims that "but-for" TMS' assumed infringement, the website traffic at the national Zap2it.com website from pages containing television grid listings[45] or any other television related content would have been diverted to other websites, leading to an increase in traffic at TV Guide Online, Inc.'s national website. The following responds to his claim for lost profits at the national website. In my opinion, the lost profits claim presented by Dr. Vellturo related to the national website is not supportable. Further, the calculated amount of these damages is not based on a reasonable estimate, but instead is speculative.

### 1.    But-For Considerations

Dr. Vellturo assumes in his lost profit analysis that the Zap2it.com website traffic from the TV listing grids along with all the other TV content would be forced to stop, leading

---

[44] Rite-Hite Corporation et al v. Kelley Company, Inc., 56 F.3d 1538 (Fed. Cir. 1995).
[45] For purposes of my report, I have assumed that the traffic at the accused TMS websites on the TV grid listings may be associated with the alleged infringement in this matter. I understand that the traffic at the other portions of the site, generally the other TV content and movie content, are not associated with the alleged infringement in this matter as access to those areas does not utilize the accused zip code feature.

Confidential
Subject To Protective Order

to a one-for-one increase in website traffic at certain other competing websites. In other words, he assumes that but-for Zap2it.com's assumed infringement, users of Zap2it.com would have gone to certain other websites for TV listing grids and other related TV content. This inherent assumption in constructing a "but-for" scenario is not demonstrated or supportable. Since the users paid nothing to access the accused website, there are many other reasonable inferences of alternative activity "but-for" the assumed infringement – users could have gone to no other websites, already been at other websites or gone to different websites than those considered by Dr. Vellturo. First, there has been no showing by Dr. Vellturo that the users who accessed Zap2it.com didn't already access the other competitive websites considered by Dr. Vellturo. The data from Attachment 120 demonstrates otherwise.[46] While the extent of overlap varies from period to period, some of the users of Zap2it.com already were visiting the TV Guide Online, Inc. site. These users would have no need to return yet again to the TV Guide Online, Inc. website. The same would be true if users were regular visitors of the other websites considered in Dr. Vellturo's market share. Next, as much of the website traffic is generated from the editorial content for the TV and Movie sections of Zap2it.com,[47] users precluded from the Zap2it.com site TV listing grids in a "but-for" world may not go to any other additional sites. In other words, if a story, headline, feature article or other content was the trigger for a user to enter Zap2it.com and spend time on the site, there is no reason to believe that the user would necessarily seek out another such story, headline or feature article even if the Zap2it.com site or television grid listing section was not operated in the "but-for" world. Even if users sought out other websites seeking the type of TV entertainment content provided by Zap2it.com, the range of other sites that provide television

---

[46] Nielson data of unique users and overlap – ATTACHMENT 120.
[47] Statistics indicate that less than 50% of Zap2it.com's national site page views are for TV listing grids. Other page views are directed at other editorial content at Zap2it.com. See ATTACHMENT 500.

**Confidential**
**Subject To Protective Order**

entertainment content is much wider than sites containing TV grid listings.[48]  Finally, users

wanting data on TV listings could turn to other readily available sources of data on TV

listings outside the web, including the interactive program guides offered by cable and

satellite TV providers.  Dr. Vellturo's unsupported premise in his but-for analysis renders his

lost profit claim unsupportable, speculative and inappropriate.

### 2.    Demand Is Not Demonstrated

In many patent cases, actual purchases by customers of the patentee and the

infringer demonstrate demand for the product or service covered by the patent.  In such

cases, the demand is apparent because consumers have elected to spend money to purchase

the patented or accused devices.  In this matter, customer use does not demonstrate demand

to the same extent because users of the accused patent have operated in an environment

without any cost or user fee.  Lacking a history of customer purchase and payment for the

patented feature, the mere use of the accused feature by TMS' users does not correspond to a

showing of demand for the patented feature that would support a lost profit claim.

Zap2it.com provides a means to match TV listings grids to the user's particular

cable or satellite service provider.  While TMS uses the accused zip code entry screen as one

of the steps for narrowing the list of cable or satellite service providers for a user to select,

such use does not demonstrate demand for the patented feature.  The zip code feature is not

the ultimate objective.  It simply is one convenient way to work toward the objective.  Since

alternatives exist for TMS to accomplish its desired result of matching the TV grid listings to

---

[48] Consider web site traffic at Zap2it.com that was initiated from a search regarding an actor, actress or television show.  Had the Zap2it.com site not been available, such a user may have read other articles that were identified as part of the search already, whether on the TV Guide Online, Inc. website or elsewhere.  Also, and as discussed further below Dr. Vellturo provides no basis to conclude that the TV Guide Online, Inc. website had a comparable story or feature article that would translate into the possibility for increased traffic.

**Confidential**
**Subject To Protective Order**

the particular service provider for each user, it is not appropriate to conclude that there is demand for the '078 patent.

Dr. Vellturo apparently believes the '078 patent generates the demand for the other TV content offered on the Zap2it.com website. He has not provided a sufficient nexus between the '078 patent and the users' demand for other TV content provided by the Zap2it.com website. Consequently, his lost profit claim stemming from the users accessing the other TV content on Zap2it.com is not supportable for additional reasons.

### 3.    Capacity Is Not Completely Demonstrated

I have assumed that TV Guide Online, Inc. has the requisite capacity to service users seeking television grid listings on its national site, provided appropriate increases in costs are accounted for to accommodate higher traffic volumes.

With respect to the claim for increased traffic from other TV content, there has been no showing that TV Guide Online, Inc. had the capacity to capture the users at Zap2it.com, as there has been no showing that the non-grid television content offered between the TV Guide Online, Inc. website and Zap2it.com website was comparable or interchangeable among users. Consequently, his lost profit claim stemming from the users accessing the other TV content does not pass the capacity requirement for a lost profit claim.

### 4.    Numerous Alternatives Exist

The many authorized alternatives to both Zap2it.com and the TV Guide Online, Inc. website, coupled with the absence of an established market share for the TV Guide Online, Inc. website, preclude a finding of lost profits. Numerous other acceptable and available non-infringing alternatives to access online television grid listings matched to a user's cable or satellite service provider existed during the period of the lost profit claim.

22

**Confidential**<br>**Subject To Protective Order**

Prominent examples include REDACTED and whom all operate a website that contains localized television grid listings matched to a user's cable or satellite service provider. With the extensive number of acceptable and available non-infringing alternatives, lost profits are not appropriate on all the accused activity because even if the accused users sought out another on-line listing, they could have accessed listings at other sites instead of TV Guide Online, Inc.'s website.

One means to preserve a lost profit claim in situations where other acceptable and available non-infringing alternatives exist in the market is to limit the lost profit claim to the patentee's established market share.[49] While Dr. Vellturo attempts to construct such a claim, his analysis falls short. There is not an established market share for the TV Guide Online, Inc. website for online television grid listings matched to a user's cable or satellite service provider. Such statistics are not available and not reasonably measured by Dr. Vellturo. Dr. Vellturo's calculations are flawed and incomplete,

Further, he does not account for the fact that some of the accused users had already visited the TV Guide Online, Inc. website. Finally, Dr. Vellturo has not considered or studied the ability of Zap2it to retain some portion of its users without offering localized TV listings based on the accused zip code feature. Lacking an established market share, Dr. Vellturo's lost profit claim is not appropriate.

The alternatives available to users that Dr. Vellturo assumes are diverted from the other TV content pages is much broader than the limited websites that contain online television grid listings matched to a user's cable or satellite service provider. Users seeking

---

[49] State Industries, Inc. v. Mor-Flo Industries, Inc. 883 F.2d 1573, 12 USPQ2d 1026 (Fed. Cir. 1989).

Confidential
Subject To Protective Order

stories and content on the varied articles and other content offered on the Zap2it.com site would have a wide array of sites to browse.  Examples include E! Online, Hollywood.com, TV.com and many other entertainment focused websites.[50]   Further, Zap2it.com could continue to offer its TV content on its website, just as Dr. Vellturo assumes it would continue to offer its movie content.  Since Dr. Vellturo doesn't consider other entertainment sites and Zap2it.com's ability to retain some of its website traffic, his market share theory is further unsupported for the Zap2it.com traffic associated with the other TV content.

Alternatives that were available and acceptable to TMS as a substitute to the zip code entry feature on its national website preclude a finding of lost profits.[51]  TMS had a number of non-infringing alternatives for providing localized television grid listings matched to a user's cable or satellite service provider.[52]

---

[50] TMS 0051956 and www.tv.com
[51] A patent infringement case that expanded upon the considerations in evaluating the Panduit factors is Grain Processing Corporation v. American Maize-Products Company (185 F.3d 1341 (Fed. Cir. 1999)).  In Grain Processing, the Court examined alternatives available to the infringer in its "but-for" analysis:

> ...a fair and accurate reconstruction of the "but for" market also must take into account, where relevant, alternative actions the infringer foreseeably would have undertaken had he not infringed. Without the infringing product, a rational would-be infringer is likely to offer an acceptable noninfringing alternative, if available, to compete with the patent owner rather than leave the market altogether. The competitor in the "but for" marketplace is hardly likely to surrender its complete market share when faced with a patent, if it can compete in some other lawful manner. Moreover, only by comparing the patented invention to its next-best available alternative(s) - regardless of whether the alternative(s) were actually produced and sold during the infringement - can the court discern the market value of the patent owner's exclusive right, and therefore his expected profit or reward, had the infringer's activities not prevented him from taking full economic advantage of this right. Cf. *Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co., 225 U.S. 604, 614-15, 32 S. Ct. 691, 694, 56 L. Ed. 1222 (1912); Mowry v. Whitney, 81 U.S. 620, 651, 20 L. Ed. 860 (1872); King Instrument Corp. v. Otari Corp., 767 F.2d 853, 865, 226 U.S.P.Q. (BNA) 402, 410-11 (Fed. Cir. 1985).* Thus, an accurate reconstruction of the hypothetical "but for" market takes into account any alternatives available to the infringer.

[52] For the following discussion, I assume the alternatives are non-infringing.

24

Confidential
Subject To Protective Order

REDACTED

---

[53] The following alternative is based on discussions with knowledgeable TMS personnel, including Greg Loose, Director of Enterprise Application Development.

25

**Confidential**
**Subject To Protective Order**

# REDACTED

**5.     The Amount Of Possible Increase In TV Guide Online, Inc. Profit Cannot Be Determined**

Even if one concluded that Zap2it.com would experience decreased traffic "but-for" the assumed infringement, the amount of any potential increase in traffic for the TV Guide Online, Inc. website cannot be reasonably measured. As demonstrated above, the market share estimates are not established. Overlap already exists between some of the users. Zap2it.com would not be restricted from offering its other editorial TV content. Next, the alternatives that TMS could reasonably implement in the "but-for" world for the TV grid listings would act to preserve some substantial portion, if not all of its TV grid listings website traffic. In any event, the combined forces from these variables cannot be determined with reasonable certainty. Dr. Vellturo has merely speculated at the amount of added traffic for the TV Guide Online, Inc. website as he has not analyzed all the requisite variables. In my opinion, the amount of possible increase in TV Guide Online, Inc. profits from its national website cannot be determined without unsupported speculation.

---

[55] As it would represent an improvement, such a change would obviously be acceptable to users.

Confidential
Subject To Protective Order

Finally, Dr. Vellturo provides no alternative calculations that would be needed if TMS prevails on some, but not all, of its non-infringement claims. He provides no estimate that excludes the impact from users accessing Zap2it.com from office locations or other locations away from the user's television viewing location. I understand that TMS alleges that such use would not infringe. Under such an assumption, such uses would be excluded in any but-for analysis. Consequently, Dr. Vellturo's lost profit analysis would be overstated as a substantial percentage of users access Zap2it.com away from their television viewing location. To the extent that TMS prevails on this non-infringement position, Dr. Vellturo's lost profit claim cannot provide a basis for the appropriate damages. Next, I understand that TMS alleges that repeat visits by a user that do not include entering zip code information would not be infringing uses. Since a user does not enter his or her zip code on repeat visits, a large part of the user traffic covered by Dr. Vellturo's damages claims involved no infringement during the damages period. Dr. Vellturo provides no way of measuring the possible amount of profits limited to users who actually provided zip code data during the damages period. To the extent that TMS prevails on this non-infringement position, Dr. Vellturo's lost profit claim cannot provide a basis for the appropriate damages.

**D. Lost Sales – Zap2it.com Affiliate Sites**

Dr. Vellturo claims that the affiliate sites serviced by Zap2it.com would have had no alternative other than to obtain an on-line affiliate service from TV Guide Online, Inc. Consequently, he assumes TV Guide Online, Inc. would capture all of the TMS affiliate clients in the "but-for" world. The following responds to his claim for lost profits from the Zap2it.com affiliate websites. In my opinion, the lost profits claim presented by Dr. Vellturo related to the affiliate websites is not supportable. Further the calculated amount of these damages is not based on a reasonable estimate, but instead is speculative.

27

Confidential
Subject To Protective Order

1.    **But-For Considerations**

Dr. Vellturo assumes the Zap2it.com affiliate website customers would generate a one-for-one increase in affiliate customers for TV Guide Online, Inc.'s website. In other words, he assumes that but-for the Zap2it.com assumed infringement, the affiliates would all seek to secure a similar service from TV Guide Online, Inc. This inherent assumption in constructing a "but-for" scenario is not demonstrated or supportable. As explained below, the Zap2it.com affiliates would also have the ability to continue with the Zap2it.com service, modified to avoid the alleged infringement under the '078 patent, or even develop their own website capability for localized television listings.

Further, there has been no reasonable showing that any affiliate customers captured by TV Guide Online, Inc. would generate the same number of page views from the TV Guide Online, Inc. affiliate sites as was experienced on Zap2it.com. Dr. Vellturo's assumption that the entire traffic from an affiliate site would be captured by TV Guide Online, Inc. is contrary to a reasonable consideration of what would happen but-for infringement.

2.    **Demand Is Not Demonstrated**

Consistent with the discussion above, the use of the accused feature does not demonstrate demand for the '078 patent. Since alternatives exist for TMS to accomplish its desired result of matching the TV grid listings to the particular service provider for each user, it is not appropriate to conclude that there is demand for the '078 patent.

3.    **Capacity Is Not Completely Demonstrated**

Dr. Vellturo does not demonstrate that TV Guide Online, Inc. had the capacity to provide additional affiliate websites as an alternative to the accused affiliate websites.

**Confidential**
**Subject To Protective Order**

Dr. Vellturo ignores the requirement for showing the necessary marketing capacity to make the accused sales. He has no discussion or analysis of the marketing efforts that would be needed by TV Guide Online, Inc., the obstacles that would be faced, the associated costs and time required to convert the Zap2it.com affiliates. In any event, capturing all the TMS affiliate accounts would not be instantaneous as assumed by Dr. Vellturo.

### 4.     Numerous Alternatives Exist

Alternatives that were available and acceptable to TMS as a substitute to the zip code entry feature on its national website also preclude a finding of lost profits regarding the affiliate websites. In other words, TMS could implement the same alternatives as discussed above regarding the national website in implementing alternatives for the affiliate sites.



The presence of these alternatives precludes a finding of lost profit from the affiliate websites.

29

Confidential
Subject To Protective Order

5.    **The Amount Of Possible Increase In TV Guide Online, Inc. Profit Cannot Be Determined**

Even if one concluded that some number or percentage of the TMS affiliates would seek to replace the accused TV grid listings with a zip code feature from TV Guide Online, Inc., the amount of increased traffic at the TV Guide Online, Inc. website and associated possible revenues are not reasonably measured by Dr. Vellturo in his report. Dr. Vellturo assumes a one for one transfer of all affiliate web site traffic from the Zap2it.com site to TV Guide Online, Inc. affiliate relationships. There is not a reasonable basis to estimate the number of affiliates that would switch to TV Guide Online, Inc. but-for infringement in light of the issues outlined above. Further, with respect to the incremental costs for TV Guide Online, Inc., Dr. Vellturo is merely adopting company estimates. He has not tested or verified the reasonableness of the amounts.

Dr. Vellturo's calculation cannot possibly be appropriate in this matter. According to his calculations in his Exhibit 16,



As with the national site, Dr. Vellturo provides no alternative calculations that would be needed if TMS prevails on some, but not all, of its non-infringement claims. As

---

[56] Attachment 130.

30

**Confidential**
**Subject To Protective Order**

explained above, if TMS prevails on some of its non-infringement positions, Dr. Vellturo's

lost profit claim cannot provide a basis for the appropriate damages.

**Confidential**
**Subject To Protective Order**

## IV.   REASONABLE ROYALTY ANALYSIS

If it prevails, TV Guide is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."[57]

A reasonable royalty may be determined through consideration of a hypothetical negotiation between the patent owner and the patent infringer. The hypothetical negotiation is conducted on the date of first infringement, with both parties assumed to be knowledgeable of the relevant facts, including knowledge regarding actual events after the date of the hypothetical negotiation. The hypothetical negotiation and reasonable royalty concepts are articulated, in part, in the Georgia Pacific case:

> The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee - who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention - would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license. [Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116; 166 USPQ 235 (S.D.N.Y. 1970)]

In a hypothetical negotiation, it is assumed that the '078 patent is valid, enforceable and infringed by TMS in connection with its use of the accused feature. For the purposes of this Report, I have assumed the hypothetical negotiation is conducted on November 23, 1999 when the '078 patent issued. While the Zap2it.com site was not live when the '078 patent issued,

---

[57] 35 USC Sec 284

**Confidential
Subject To Protective Order**

[3] Further, the predecessor sites owned by TMS were being operated when the '078 patent issued. Consequently, I have assumed the date of first infringement is when the '078 patent issued and the hypothetical negotiation occurs on that date. Dr. Vellturo suggests a need for an extended time to complete the hypothetical negotiation. The hypothetical negotiation does not occur over an extended period of time. Instead, it is assumed that the parties have access to all relevant information as noted above and come to a reasonable agreement as a business proposition.

I have considered the <u>Georgia Pacific</u> factors and other relevant considerations in connection with this hypothetical negotiation. ATTACHMENT D addresses each of the <u>Georgia Pacific</u> factors directly. The following sections describe important considerations in the reasonable royalty analysis and my rationale for determining the amount of reasonable royalties.

A.     **Reasonable Royalty Considerations**

1.     **Licensee's Ability To Pay And Reasonable Starting Point For The Range Of Negotiation – Errors In Dr. Vellturo's Projections**

As Dr. Vellturo suggests, the licensee's ability to pay is a significant consideration in the hypothetical negotiation. As detailed further below and on the ATTACHMENTS, Dr. Vellturo has introduced substantial errors in his forecast of TMS' long-run ability to pay. Two of Dr. Vellturo's most significant errors are as follows. First, Dr. Vellturo contends that the entire profit he projects for TMS is available for TMS to pay in a reasonable royalty. Such a position is not reasonably supportable. A licensee in a hypothetical negotiation would not rationally turn over its entire forecast of profits from a business opportunity, as it would have no incentive or financial reward for its own risks and

---

[58] Needleman deposition, 9/29/2006, pp. 133 – 134.

33

**Confidential**
**Subject To Protective Order**

business efforts.    Second, Dr. Vellturo exaggerates the amount possibly indicated in his projection by introducing significant errors when converting his projected operating profits to a dollar amount per page view.

# REDACTED

His manipulations, calculations and embedded errors lead him to derive an unreasonable result – while he desired to cap his reasonable royalty based on TMS' projected ability to pay, his end result is a damages figure that exceeds Dr. Vellturo's own calculation for TMS' ability to pay.

---

[59] ATTACHMENT 201.
[60] ATTACHMENT 201.
[61] Dr. Vellturo Exhibit 4

Confidential
Subject To Protective Order

REDACTED

---

[63] ATTACHMENT 210.
[64] TMS 0032539 – 545 AT 542.
[65] ATTACHMENT 141.

**Confidential**
**Subject To Protective Order**

# REDACTED

2. **Licensee's Ability To Pay And Reasonable Starting Point For The Range Of Negotiation – Reasonable Estimates For A Starting Point**

One common rule of thumb in licensing situations involves a split of the relevant profits associated with the intellectual property at issue in the case. The rule of thumb indicates that a reasonable starting point for a royalty rate is based upon one quarter of the relevant expected operating profits that would be earned by the licensee over the long run. Some practitioners suggest the starting point is one quarter to one third of the profits earned by the licensee.

This rule of thumb attempts to balance the contributions of the intellectual property owner and the efforts of the licensee, consistent with the requirement under the twelfth and thirteenth Georgia Pacific factors.[67] The licensee is obviously responsible for the manufacturing and marketing of the product at issue and bears all of the business risk. The split of profits under the rule of thumb attempts to compensate the licensee for those additional efforts, investments and risks with a greater share of the profits. The split of profits provides an indication for a starting point for determining a reasonable royalty rate. This starting point must then be adjusted upward or downward based on the specific circumstances of the hypothetical negotiation, such as those considered in the other Georgia Pacific factors and those discussed throughout this Report.

---

[66] As noted later and in the ATTACHMENTS, there are other problems associated with Dr. Vellturo's forecasted profits.
[67] The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions; and The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant feature or improvements added by the infringer.

Confidential
Subject To Protective Order

REDACTED

---

[68] TMS 0032539 – 545 at 544-545.
[69]

[70] See the 400 series of ATTACHMENTS.

Confidential
Subject To Protective Order

REDACTED

---

[71] Discussions with Robin Mulvaney.
[72] Mulvaney deposition, 10/20/06, pp. 30-32, 47-48.

38

**Confidential**
**Subject To Protective Order**

3.      **Existing Licenses Involving The Patents In Suit Or Comparable
        Patents**

REDACTED

Confidential
Subject To Protective Order

4.     **Other Business Agreements**

# REDACTED

**Confidential**
**Subject To Protective Order**

5.    **Significance Of The Accused Zip Code Feature**



B.    **Reasonable Royalty Conclusion**

In my opinion a reasonable royalty in this matter should be determined based upon a percentage reasonable royalty rate applied to the applicable royalty base comprised of the accused sales that are found to be infringing and subject to damages. This is a very common royalty structure in many license agreements,

It is a reasonable framework as it does not improperly shift added

---

[76] ATTACHMENT E.
[77] Internet users are very familiar with providing zip code data for any number of on-line applications, from finding where to order pizza, or locating a nearby retailer.

41                                                      **Confidential**
**Subject To Protective Order**

risks onto either the licensor or licensee. By way of example, if the reasonable royalty framework was based on a percentage of actual profits (rather than revenues), the licensor would be accepting more risk. Conversely, if the reasonable royalty framework was based on a dollar amount per page view (as suggested by Dr. Vellturo) additional risk is shifted to the licensee for such items as the number of impressions sold per page and the pricing in the future for advertising revenues. A percentage royalty rate on the accused sales is a customary framework and is balanced in terms of risks going forward.

### 1. Royalty Base

The royalty base would include all of the TMS revenues that are earned in connection with the accused on-line revenue categories that are found to infringe and are subject to damages. This includes

# REDACTED

ATTACHMENT 300 summarizes the royalty base assuming all the accused sales are included in the reasonable royalty calculation.

### 2. Royalty Rate

In my opinion, a reasonable royalty rate is 2.5%.

Confidential
Subject To Protective Order

In my opinion, the 0.625% starting point is too low and the 4.5% starting point is too high for purposes of the hypothetical negotiation. They represent outer boundaries for consideration in this matter.

Focusing on the 1.6% starting point, a variety of upward and downward pressures are indicated as outlined in my Report and ATTACHMENTS. On balance, in my opinion, an upward adjustment is warranted from the 1.6%, but not an adjustment that would double the indicated starting point. The principle factor contributing to the upward adjustment is the extent of TMS' use of the accused zip code feature and my assumption that it would be preferred over implementing an alternative on the date of the hypothetical negotiation. Downward influences as outlined in the Report have a limiting influence on the upward adjustment.

# REDACTED

Focusing on the 2.8% starting point, a variety of upward and downward pressures are indicated as outlined in my Report and ATTACHMENTS. On balance, in my opinion, a downward adjustment is warranted from the 2.8%. One of the significant downward adjustments that must be considered when starting with the 2.8% point is the fact that some

Confidential
Subject To Protective Order

[78] Thereafter, the remaining considerations would provide for an upward adjustment as noted above. On balance, I have concluded that these competing adjustments largely balance out, with a concluding reasonable royalty rate of 2.5% which is very close to the 2.8% starting point.

### 3.    Reasonable Royalty Conclusion

As noted in the introduction of this Report, I have considered two different time periods for damages and illustrated the impact of varied assumptions regarding the extent of infringing sales. The alternative calculations showing reductions in the royalty base are illustrative of the methodology that is appropriately employed. Such calculations can be adapted for whatever assumptions or combinations of assumptions are appropriate for exclusions to the royalty base using reasonable estimates or measurements for the exclusions to the royalty base.

#### a. Amounts Assuming All Revenues Infringe And Are Subject To Damages[79]



---

[78]

[79] See ATTACHMENT 100.
[80]

Confidential
Subject To Protective Order

### b. Amounts Assuming Office Locations Do Not Infringe And Are Excluded From The Royalty Base[81]

I have estimated the amount of non-infringing use at office locations based on the available statistics that estimate the origination of user traffic.[82]   I have excluded a proportionate amount of Zap2it.com's revenue from the royalty base based on the estimated use from office locations.[83]   Using a damages time period consistent with Dr. Vellturo, the

# REDACTED

### c. Other Exclusions From The Royalty Base

If it is determined that other groups of users are not properly included in the royalty base, my reasonable royalty calculation can be adjusted accordingly, limiting the royalty base for such exclusions.   Consequently, the reasonable royalty in this matter would be based on the accused sales that are shown to be properly included in the reasonable royalty base and the reasonable royalty rate of 2.5%.   The calculations noted above regarding office locations show an example for completing such a calculation.

Dr. Vellturo makes no allowance in his report for the possibility that some of the accused traffic at Zap2it.com is not infringing or otherwise is not properly included in the damages calculation.   He provides no methodology or framework for adjustments.   Should exclusions be required, his report and methodology do not provide a basis for measuring damages in this matter.

---

[81] See ATTACHMENT 110.
[82] I understand that the statistics for office users tend to be understated as the sampling opportunities in corporate environments are sometimes limited.  Some corporations do not allow monitoring of its website traffic.
[83] See Attachment 110 -- the traffic estimated from office locations is 50% - 51% depending on the time period.

Confidential
Subject To Protective Order

I submit this Report, dated February 9, 2007.

Michael H. Chase, CPA

Confidential
Subject To Protective Order

# EXHIBIT A



ATTACHMENT A

# Michael H. Chase

**Michael H. Chase**
Managing Director

**Navigant Consulting**
5445 Corporate Drive
Suite 340
Troy, MI 48098
Tel: 248.641-2460
Fax: 248.641-2441

mchase@navigantconsulting.com

**Professional History**
- Navigant Consulting
  2004 - present
- Tucker Alan Inc.
  1997 - 2004
- Epps, Antonishen & Walworth, P.C.
  1993 - 1997
- Peterson Consulting Limited
  Partnership
  1984 - 1993

**Education & Certifications**
- Bachelor of Science, Accounting,
  Indiana University – Graduated with
  Highest Distinction
- Certified Public Accountant, Licensed
  in Illinois, Indiana and Michigan,
  Accredited in Business Valuation

**Professional Associations**
- American Institute Of Certified Public
  Accountants
- Michigan Association Of Certified
  Public Accountants
- Economic Club Of Detroit
- Licensing Executives Society

Mr. Chase is a CPA and Managing Director in the Litigation and Investigations practice of Navigant Consulting, Inc. He has over 20 years of expertise providing expert analysis and where necessary, expert testimony related to claims for economic damages, claims for increased costs, business valuation and accounting investigations. He has extensive experience in evaluating business issues, financial analyses, valuation questions and damages contentions in a variety of forensic accounting circumstances including commercial disputes. His experience spans across many industries, practice areas and many litigation forums. He has testified in over 50 matters pending in state courts, federal courts and arbitration forums.

## Intellectual Property Matters

» Extensive experience on intellectual property assignments including patent infringement matters, copyright infringement, trade dress, trade secrets and other intellectual property claims involving lost profits, price erosion, reasonable royalty, pre-judgment and post judgment interest calculations.

» Numerous expert reports have been prepared in connection with damages studies on intellectual property matters. Related testimony has included numerous depositions and trials, including both bench trials and jury trials.

## Patent Infringement Matters

» Analyzed numerous lost profit claims associated with lost unit sales, lost convoyed sales, price erosion, market share erosion, lost head start and other claims of lost profits. Regularly studied and documented the incremental profit for patented products and processes, as well as accused products and processes. Developed significant knowledge of leading cases and common jury instructions related to lost profits including Panduit, Rite-Hite, Grain Processing v American Maize-Products and others. Expert trial testimony has included lost profits calculations.

» Reasonable royalty analysis has also been completed on many patent infringement matters. Analysis and consideration of the



hypothetical negotiation, including the Georgia Pacific factors is routinely completed. Reasonable royalty analysis has included consideration and analysis of existing licenses, established license rates, analytical methods, cost savings, profit improvement, apportionment issues and many other considerations.   Considered the appropriateness of the entire market value rule in determining the appropriate royalty base. Developed significant knowledge of leading cases and common jury instructions related to reasonable royalty determinations including Georgia Pacific, Panduit, TWM v Dura, and others. Expert trial testimony has included reasonable royalty analysis and reasonable royalty rate determinations.

» Combinations of lost profits and reasonable royalty claims have been considered and presented in several cases. Evaluation of market share issues has been completed in order to assess the appropriateness of lost profits claims using a market share approach. Detailed analysis of market segments and market shares has been completed to support market share determinations. Developed significant knowledge of leading cases and common jury instructions related to combination claims of lost profits and reasonable royalties such as State Industries v Mor-Flo. Expert trial testimony has included combination claims of lost profits and reasonable royalties.

## Trademark, Trade Dress and Copyright Infringement Matters

» Analysis in several cases related to various damages remedies, including actual damages associated with the alleged infringement and analysis of infringer's sales and profits associated with infringement. Consideration and analysis of proper offsets and deductions including properly deducted costs and apportionment issues. Testimony experience includes deposition and trial testimony.

## Licensing Related

» Negotiated license terms for a major manufacturer seeking to obtain rights under a patent issued to an individual. Successfully arranged the terms for the assignment of the patent between the parties.

» Analysis of consideration received from licensor on multiple licenses to evaluate whether more favored terms were allowed to one licensee. Net present value analysis of avoided royalties was applied to calculate possible value of cross-licensing terms.

» Analysis and verification of royalty reports, including testing of sales values included in the royalty base and identification of omitted sales subject to royalties.

## Trade Secret Matters

» Analysis in a number of cases related to various damages remedies. Analyzed actual damages assertions including lost profits and lost value of alleged trade secrets. Considered and analyzed the possible unjust enrichment to the defendant for trade secret disclosure. Also examined reasonable royalty for use of trade secrets. Testimony experience includes deposition and trial testimony.

## Other Commercial Litigation And Damages Studies

» Experience on a variety of other commercial litigation assignments including antitrust, breach of contract, professional malpractice, employment disputes, divorce matters, shareholder disputes, wage loss claims and other litigation assignments. Extensive analysis of cost and profit issues applicable to



each case has been completed.  Focus has been on analyzing the accounting issues and damages issues related to the matter.  Lost profit and increased cost models have been developed, as appropriate, to help quantify the financial impacts.  In addition, business valuation models have been utilized to evaluate the value of business interests at selected points in time.  Analysis of business decisions related to the continued operation of troubled businesses has been completed in connection with deepening insolvency claims.  Testimony experience includes deposition and trial testimony.

## Mutual Fund Analysis and Securities Disputes

» Experience working with mutual fund companies and outside directors in connection with internal investigations related to market timing allegations.  Investigations included detailed analysis of historical trading activity, evaluation of gains and losses on trading activity, documentation of holding periods, evaluation of funds flow within mutual funds and consideration of other issues.

» Experience evaluating a hedge fund company's investment experience where we analyzed in great detail the historical return experience achieved from its investments in mutual funds.  As part of the analysis, we analyzed daily trading positions for the hedge fund between money market accounts and equity-oriented mutual funds, confirmed and reconstructed historical trading data, computed daily, monthly and annual returns for the hedge fund from its mutual fund investments and compared the hedge fund's returns to broad market indexes.  We also identified and summarized academic studies addressing excess returns available from actively trading no-load mutual funds based upon movements in the domestic market and other variables.

» Securities dispute experience where a class of shareholders sued the controlling shareholders and the outside auditors in connection with the spin-off and privatization of a portion of the public company.  The class of shareholders contended that the transaction was not properly valued and that later losses on the public portion of the company (held by the class) were due to improper actions of the majority shareholders or the outside auditors.  In one claim analyzed, the plaintiff's contended that continuing losses would have been avoided if the auditors had recognized additional loss reserves in earlier time periods.  Our work included detailed analysis of the damages claim along with an analysis of the causation assumptions embraced by the opposing expert.  The damages analysis revealed many flaws in the plaintiff position, including a $20 million double count from misinterpreted accounting conventions.  The causation analysis revealed that earlier recognition of losses would not have impacted future losses during the period studied.

## Government Contract Matters

» Participated on numerous assignments assisting government contractors and their counsel.  Significant experience in several areas including claims (Requests for Equitable Adjustments), defective pricing analysis, and fraud assertions.

» Claims analysis has included the study and pricing of contract changes, including formal and constructive change orders, the impact of delays, impact of late and defective government furnished information and equipment, disruption, acceleration, changed conditions and other inefficiencies.  Many of the claims have involved highly technical and complex components of weapon systems.

» In the area of defective pricing, experience has been focused on quantifying the impact on negotiated contract prices, assuming that additional data had been disclosed during the original pricing negotiations.  In one matter, a learning curve model was developed to "recalculate" labor hours after including added points of labor data from the program.  The model included many assumptions that



were consistent with the actual negotiations, modified to include additional data. The model formed the basis of a presentation on quantum used in an alternative dispute resolution.

» In the area of alleged fraud, experience has included the analysis of financial disclosures and bid projections to determine if false statements or unreasonable assumptions were used in pricing negotiations. Detailed analysis of historical records and projections were completed in order to support testimony that the contractor's estimates and related representations to the government were free of false statements and based on reasonable assumptions.

## Construction Matters

» On construction projects, a variety of claims have been examined and priced. Experience has included formal and constructive change orders, delay claims, disruption claims, and acceleration claims. In the construction area, experience includes projects related to nuclear power plants, high rise condominiums, telephone systems, flexible manufacturing systems, ships, aircraft, and rail cars.

## Publications

» Panelist "Proving Damages in Patent Trials," *The Patent Lawyer*, Winter 2005

## Testimony and Alternative Dispute Resolution Experience

» Testified as an expert witness in both jury and bench trials in federal and state courts.

» Testimony has covered a variety of damages issues and other financial considerations.

» Testimony has been in connection with cases throughout the country including:

» U.S. District Court – Eastern District of Michigan

» U.S. District Court – Central District of California

» U.S. District Court – District of Colorado

» U.S. District Court – District of Delaware

» U.S. District Court – Northern District of Illinois

» U.S. District Court – District of Minnesota

» U.S. District Court – Eastern District of Missouri

» U.S. District Court – District of New Jersey

» U.S. District Court – Southern District of New York

» U.S. District Court – District of South Dakota

» U.S. District Court – Middle District of Tennessee

» U.S. District Court – Western District of Wisconsin

» State of Michigan Circuit Court – Counties of Berrien, Grand Traverse, Macomb, Oakland, Osceola, and Wayne

» State of Michigan – Michigan Tax Tribunal



» Actively participated in settlement negotiations on a variety of matters. Have also presented damages analysis in formal alternative dispute resolution settings.

» Prepared other expert witnesses for testimony.



Deposition And Trial Testimony Of Michael H. Chase

**Kelsey-Hayes Company v. Automotive Brake Company, Inc. Brake Parts Inc., and Dana Corporation,** U.S. District Court, Eastern District of Michigan, Southern Division (Deposition), 2003

**Rehrig Pacific Company v. Norseman Plastics Limited, Inc.,** U.S. District Court, Central District of California (Deposition), 2003

**Robert D. Thompson v. Microsoft Corporation,** U.S. District Court, Eastern District of Michigan, Southern Division (Deposition), 2004

**General Motors Corporation v. Keystone Automotive Industries, Inc. and Tong Yang Industrial Co., LTD.,** U.S. District Court, Eastern District of Michigan, Southern Division (Deposition), 2004

**Storage Technologies Corporation v. Quantum Corporation,** U.S. District Court, District of Colorado (Deposition), 2005

**Blackhawk Molding Co., Inc. v. Portola Packaging, Inc.,** U.S. District Court, Northern District of Illinois, Eastern Division (Deposition), 2005

**New Sensations, LLC v. Conair Corporation,** U.S. District Court, District of Colorado (Trial), 2005

**General Motors Corporation v. Lanard Toys, Inc. and Lanard Toys Limited,** U.S. District Court, Eastern District of Michigan, Southern Division (Trial, Deposition, Trial), 2002, 2003, 2005

**Thomas Industries Inc. v. Gast Manufacturing, Inc.,** U.S. District Court, Western District of Wisconsin (Deposition), 2005

**David Alan Speers et al v. County of Berrien et al,** U.S. District Court, Western District of Michigan, Southern Division (Deposition), 2005

**E.I. DuPont De Nemours and Company v. Cardinal Health 200, Inc., BBA Group U.S. Holdings, Inc., and BBA Nonwovens Simpsonville, Inc.** U.S. District Court, Middle District of Tennessee, Nashville Division (Deposition), 2005

**Juicy Whip, Inc. v. Orange Bang, Inc. and Unique Beverage Dispensers, Inc.,** U.S. District Court, Central District of California, Western Division (Deposition), 2000; (Trial), 2003; (Trial), 2005

**Laminate Products, Inc. et al v. Guardian Automotive Corporation, et al.,** State of Michigan in the Circuit Court for the County of Macomb (Trial), 2005

**Warrior Lacrosse, Inc. v. STX, LLC,** U.S District Court, Eastern District of Michigan, Southern Division (Deposition), 2005

**Peter E. Maritz, et al. v. Maritz Inc., et al.,** State of Missouri in the Circuit Court of the County of St. Louis (Deposition), 2006



**Deposition And Trial Testimony Of Michael H. Chase**

**Mars Incorporated v. Coin Acceptors, Inc.,** U.S. District Court, For The District Of New Jersey (Deposition), 2002; (Trial), 2006

**Leggett & Platt, Incorporated et al. v. Vutek Inc.,** U. S. District Court, Eastern District of Missouri (Deposition), 2006

**Single Chip Systems Corporation and Neology, S. de R.L. de C.V. v. Intermec IP Corp., Transcore, LP, and Transcore Holdings, Inc.,** U.S. District Court, Southern District of California (Deposition), 2006

TV Guide Online, Inc. And TV Guide Online, LLC v. Tribune Media Services, Inc.
**Documents And Other Information Reviewed**

| Beginning Bates | Ending Bates | Beginning Bates | Ending Bates |
|---|---|---|---|
| TMS 0000001 | TMS 0000007 | TMS 0006234 | TMS 0006234 |
| TMS 0001291 | TMS 0001388 | TMS 0006354 | TMS 0006358 |
| TMS 0001330 | TMS 0001330 | TMS 0006385 | TMS 0006386 |
| TMS 0001337 | TMS 0001345 | TMS 0006387 | TMS 0006388 |
| TMS 0001347 | TMS 0001349 | TMS 0006389 | TMS 0006390 |
| TMS 0001381 | TMS 0001386 | TMS 0006453 | TMS 0006453 |
| TMS 0001583 | TMS 0001695 | TMS 0006454 | TMS 0006454 |
| TMS 0001701 | TMS 0001720 | TMS 0007163 | TMS 0007169 |
| TMS 0001756 | TMS 0001801 | TMS 0007833 | TMS 0007835 |
| TMS 0001844 | TMS 0001844 | TMS 0008823 | TMS 0008828 |
| TMS 0001846 | TMS 0001848 | TMS 0008829 | TMS 0008829 |
| TMS 0001911 | TMS 0001911 | TMS 0008831 | TMS 0008833 |
| TMS 0001916 | TMS 0001916 | TMS 0008967 | TMS 0008979 |
| TMS 0001917 | TMS 0001917 | TMS 0008984 | TMS 0009024 |
| TMS 0001918 | TMS 0001948 | TMS 0009025 | TMS 0009040 |
| TMS 0002030 | TMS 0002054 | TMS 0009165 | TMS 0009177 |
| TMS 0002056 | TMS 0002069 | TMS 0009218 | TMS 0009238 |
| TMS 0002072 | TMS 0002081 | TMS 0009378 | TMS 0009380 |
| TMS 0002086 | TMS 0002088 | TMS 0013014 | TMS 0013023 |
| TMS 0002095 | TMS 0002096 | TMS 0013025 | TMS 0013025 |
| TMS 0002105 | TMS 0002105 | TMS 0013026 | TMS 0013026 |
| TMS 0002109 | TMS 0002111 | TMS 0013069 | TMS 0013113 |
| TMS 0002113 | TMS 0002137 | TMS 0013211 | TMS 0013213 |
| TMS 0002174 | TMS 0002179 | TMS 0013649 | TMS 0013652 |
| TMS 0002183 | TMS 0002185 | TMS 0014001 | TMS 0014048 |
| TMS 0002209 | TMS 0002210 | TMS 0014054 | TMS 0014067 |
| TMS 0002233 | TMS 0002245 | TMS 0014069 | TMS 0014099 |
| TMS 0002251 | TMS 0002252 | TMS 0014835 | TMS 0014847 |
| TMS 0002283 | TMS 0002294 | TMS 0015035 | TMS 0015035 |
| TMS 0002296 | TMS 0002309 | TMS 0015036 | TMS 0015036 |
| TMS 0002314 | TMS 0002314 | TMS 0015038 | TMS 0015038 |
| TMS 0002317 | TMS 0002317 | TMS 0015039 | TMS 0015039 |
| TMS 0002325 | TMS 0002352 | TMS 0015376 | TMS 0015383 |
| TMS 0002353 | TMS 0002355 | TMS 0015591 | TMS 0015593 |
| TMS 0002356 | TMS 0002363 | TMS 0015652 | TMS 0015674 |
| TMS 0002369 | TMS 0002372 | TMS 0015726 | TMS 0015729 |
| TMS 0002376 | TMS 0002400 | TMS 0015857 | TMS 0015871 |
| TMS 0003169 | TMS 0003231 | TMS 0015883 | TMS 0015893 |
| TMS 0003325 | TMS 0003360 | TMS 0015897 | TMS 0015903 |
| TMS 0003361 | TMS 0003412 | TMS 0015963 | TMS 0015965 |
| TMS 0003829 | TMS 0003843 | TMS 0016483 | TMS 0016483 |
| TMS 0003868 | TMS 0003887 | TMS 0016923 | TMS 0016924 |
| TMS 0003944 | TMS 0003982 | TMS 0016942 | TMS 0016969 |
| TMS 0004518 | TMS 0004528 | TMS 0016987 | TMS 0016991 |
| TMS 0004579 | TMS 0004599 | TMS 0017098 | TMS 0017114 |
| TMS 0004792 | TMS 0004792 | TMS 0017117 | TMS 0017122 |
| TMS 0005110 | TMS 0005166 | TMS 0017147 | TMS 0017147 |
| TMS 0005227 | TMS 0005296 | TMS 0017248 | TMS 0017260 |
| TMS 0005412 | TMS 0005426 | TMS 0017261 | TMS 0017266 |
| TMS 0005428 | TMS 0005434 | TMS 0017403 | TMS 0017456 |
| TMS 0005471 | TMS 0005487 | TMS 0017459 | TMS 0017473 |
| TMS 0005493 | TMS 0005496 | TMS 0017483 | TMS 0017511 |
| TMS 0005507 | TMS 0005508 | TMS 0017542 | TMS 0017593 |
| TMS 0006188 | TMS 0006188 | TMS 0017618 | TMS 0017631 |
| TMS 0006189 | TMS 0006189 | TMS 0017649 | TMS 0017757 |
| TMS 0006190 | TMS 0006190 | TMS 0017672 | TMS 0017757 |

Confidential

TV Guide Online, Inc. And TV Guide Online, LLC v. Tribune Media Services, Inc.
**Documents And Other Information Reviewed**

| Beginning Bates | | Ending Bates | | Beginning Bates | | Ending Bates | |
|---|---|---|---|---|---|---|---|
| TMS | 0017889 | TMS | 0017906 | TMS | 0021031 | TMS | 0021031 |
| TMS | 0018213 | TMS | 0018243 | TMS | 0021042 | TMS | 0021095 |
| TMS | 0018317 | TMS | 0018367 | TMS | 0021058 | TMS | 0021067 |
| TMS | 0018614 | TMS | 0018615 | TMS | 0021097 | TMS | 0021156 |
| TMS | 0018619 | TMS | 0018620 | TMS | 0021163 | TMS | 0021228 |
| TMS | 0018700 | TMS | 0018703 | TMS | 0021214 | TMS | 0021220 |
| TMS | 0018714 | TMS | 0018718 | TMS | 0021240 | TMS | 0021245 |
| TMS | 0018765 | TMS | 0018782 | TMS | 0021252 | TMS | 0021252 |
| TMS | 0018835 | TMS | 0018839 | TMS | 0021275 | TMS | 0021300 |
| TMS | 0018849 | TMS | 0018851 | TMS | 0021332 | TMS | 0021410 |
| TMS | 0018852 | TMS | 0018855 | TMS | 0021444 | TMS | 0021455 |
| TMS | 0018863 | TMS | 0018865 | TMS | 0021458 | TMS | 0021468 |
| TMS | 0018866 | TMS | 008933 | TMS | 0021484 | TMS | 0021489 |
| TMS | 0018935 | TMS | 0018948 | TMS | 0021494 | TMS | 0021509 |
| TMS | 0018954 | TMS | 0018964 | TMS | 0021532 | TMS | 0021539 |
| TMS | 0018967 | TMS | 0018977 | TMS | 0021543 | TMS | 0021543 |
| TMS | 0018981 | TMS | 0019011 | TMS | 0021547 | TMS | 0021549 |
| TMS | 0019014 | TMS | 0019040 | TMS | 0021558 | TMS | 0021593 |
| TMS | 0019052 | TMS | 0019066 | TMS | 0021704 | TMS | 0021708 |
| TMS | 0019068 | TMS | 0019074 | TMS | 0021747 | TMS | 0021751 |
| TMS | 0019100 | TMS | 0019102 | TMS | 0022176 | TMS | 0022185 |
| TMS | 0019140 | TMS | 0019192 | TMS | 0022202 | TMS | 0022252 |
| TMS | 0019171 | TMS | 0019192 | TMS | 0022398 | TMS | 0022399 |
| TMS | 0019196 | TMS | 0019196 | TMS | 0022403 | TMS | 0022407 |
| TMS | 0019204 | TMS | 0019205 | TMS | 0022816 | TMS | 0022820 |
| TMS | 0019245 | TMS | 0019246 | TMS | 0023143 | TMS | 0023144 |
| TMS | 0019262 | TMS | 0019264 | TMS | 0023162 | TMS | 0023165 |
| TMS | 0019268 | TMS | 0019272 | TMS | 0023607 | TMS | 0023608 |
| TMS | 0019318 | TMS | 0019330 | TMS | 0023614 | TMS | 0023618 |
| TMS | 0019370 | TMS | 0019371 | TMS | 0023625 | TMS | 0023627 |
| TMS | 0019381 | TMS | 0019387 | TMS | 0023849 | TMS | 0024006 |
| TMS | 0019391 | TMS | 0019395 | TMS | 0023854 | TMS | 0023861 |
| TMS | 0019418 | TMS | 0019422 | TMS | 0023890 | TMS | 0023891 |
| TMS | 0019432 | TMS | 0019433 | TMS | 0024010 | TMS | 0024018 |
| TMS | 0019451 | TMS | 0019456 | TMS | 0024022 | TMS | 0024031 |
| TMS | 0019459 | TMS | 0019464 | TMS | 0024034 | TMS | 0024057 |
| TMS | 0019468 | TMS | 0019468 | TMS | 0024062 | TMS | 0024065 |
| TMS | 0019540 | TMS | 0019552 | TMS | 0024067 | TMS | 0024069 |
| TMS | 0019555 | TMS | 0019597 | TMS | 0024072 | TMS | 0024074 |
| TMS | 0019566 | TMS | 0019597 | TMS | 0024076 | TMS | 0024080 |
| TMS | 0019671 | TMS | 0019672 | TMS | 0024109 | TMS | 0024114 |
| TMS | 0019692 | TMS | 0019697 | TMS | 0024118 | TMS | 0024120 |
| TMS | 0019704 | TMS | 0019716 | TMS | 0024121 | TMS | 0024127 |
| TMS | 0019722 | TMS | 0019744 | TMS | 0024125 | TMS | 0024184 |
| TMS | 0019776 | TMS | 0019783 | TMS | 0024214 | TMS | 0024221 |
| TMS | 0019802 | TMS | 0019838 | TMS | 0024679 | TMS | 0024721 |
| TMS | 0019808 | TMS | 0019840 | TMS | 0025059 | TMS | 0025081 |
| TMS | 0019888 | TMS | 0019896 | TMS | 0025059 | TMS | 0025081 |
| TMS | 0019897 | TMS | 0019946 | TMS | 0025548 | TMS | 0025548 |
| TMS | 0020150 | TMS | 0020169 | TMS | 0025549 | TMS | 0025549 |
| TMS | 0020293 | TMS | 0020332 | TMS | 0025552 | TMS | 0025553 |
| TMS | 0020400 | TMS | 0020418 | TMS | 0025562 | TMS | 0025587 |
| TMS | 0020930 | TMS | 0020940 | TMS | 0025592 | TMS | 0025595 |
| TMS | 0020946 | TMS | 0020955 | TMS | 0025600 | TMS | 0025606 |
| TMS | 0021007 | TMS | 0021008 | TMS | 0025609 | TMS | 0025622 |
| TMS | 0021009 | TMS | 0021030 | TMS | 0025770 | TMS | 0025784 |

Confidential

TV Guide Online, Inc. And TV Guide Online, LLC v. Tribune Media Services, Inc.
**Documents And Other Information Reviewed**

| Beginning Bates | | Ending Bates | | Beginning Bates | | Ending Bates | |
|---|---|---|---|---|---|---|---|
| TMS | 0026067 | TMS | 0026074 | TMS | 0034016 | TMS | 0034016 |
| TMS | 0026229 | TMS | 0026396 | TMS | 0034017 | TMS | 0034018 |
| TMS | 0026923 | TMS | 0026999 | TMS | 0034022 | TMS | 0034022 |
| TMS | 0029517 | TMS | 0029536 | TMS | 0034049 | TMS | 0034053 |
| TMS | 0029688 | TMS | 0029698 | TMS | 0034101 | TMS | 0034101 |
| TMS | 0029688 | TMS | 0029698 | TMS | 0034102 | TMS | 0034102 |
| TMS | 0029833 | TMS | 0029842 | TMS | 0034108 | TMS | 0034108 |
| TMS | 0029942 | TMS | 0029946 | TMS | 0034109 | TMS | 0034109 |
| TMS | 0030112 | TMS | 0030116 | TMS | 0034112 | TMS | 0034121 |
| TMS | 0030147 | TMS | 0030164 | TMS | 0034117 | TMS | 0034118 |
| TMS | 0030234 | TMS | 0030240 | TMS | 0034166 | TMS | 0034167 |
| TMS | 0030487 | TMS | 0030535 | TMS | 0034177 | TMS | 0034185 |
| TMS | 0030555 | TMS | 0030556 | TMS | 0034189 | TMS | 0034197 |
| TMS | 0030592 | TMS | 0030615 | TMS | 0034199 | TMS | 0034199 |
| TMS | 0030771 | TMS | 0030774 | TMS | 0034201 | TMS | 0034203 |
| TMS | 0030779 | TMS | 0030781 | TMS | 0034202 | TMS | 0034202 |
| TMS | 0030784 | TMS | 0030794 | TMS | 0034264 | TMS | 0034277 |
| TMS | 0030806 | TMS | 0030809 | TMS | 0034373 | TMS | 0034374 |
| TMS | 0030806 | TMS | 0030816 | TMS | 0034373 | TMS | 0034513 |
| TMS | 0031031 | TMS | 0031079 | TMS | 0034534 | TMS | 0034534 |
| TMS | 0031133 | TMS | 0031155 | TMS | 0034590 | TMS | 0034591 |
| TMS | 0031173 | TMS | 0034177 | TMS | 0034609 | TMS | 0034618 |
| TMS | 0031176 | TMS | 0031193 | TMS | 0034620 | TMS | 0034650 |
| TMS | 0031176 | TMS | 0031193 | TMS | 0034621 | TMS | 0034624 |
| TMS | 0031520 | TMS | 0031564 | TMS | 0034656 | TMS | 0034658 |
| TMS | 0031520 | TMS | 0031564 | TMS | 0034670 | TMS | 0034671 |
| TMS | 0031596 | TMS | 0031599 | TMS | 0034738 | TMS | 0034745 |
| TMS | 0031602 | TMS | 0031602 | TMS | 0035137 | TMS | 0035137 |
| TMS | 0031623 | TMS | 0031642 | TMS | 0035139 | TMS | 0035140 |
| TMS | 0032069 | TMS | 0032069 | TMS | 0035192 | TMS | 0035193 |
| TMS | 0032071 | TMS | 0032071 | TMS | 0035200 | TMS | 0035280 |
| TMS | 0032073 | TMS | 0032074 | TMS | 0035284 | TMS | 0035290 |
| TMS | 0032108 | TMS | 0032132 | TMS | 0035311 | TMS | 0035314 |
| TMS | 0032239 | TMS | 0032406 | TMS | 0035385 | TMS | 0035393 |
| TMS | 0032394 | TMS | 0032406 | TMS | 0035462 | TMS | 0035463 |
| TMS | 0032408 | TMS | 0032429 | TMS | 0035473 | TMS | 0035480 |
| TMS | 0032507 | TMS | 0032510 | TMS | 0035484 | TMS | 0035484 |
| TMS | 0032539 | TMS | 0032545 | TMS | 0035539 | TMS | 0035540 |
| TMS | 0032578 | TMS | 0032580 | TMS | 0035545 | TMS | 0035547 |
| TMS | 0032583 | TMS | 0032602 | TMS | 0035559 | TMS | 0035560 |
| TMS | 0033042 | TMS | 0033048 | TMS | 0035561 | TMS | 0035563 |
| TMS | 0033570 | TMS | 0033589 | TMS | 0035566 | TMS | 0035583 |
| TMS | 0033570 | TMS | 0033589 | TMS | 0035585 | TMS | 0035585 |
| TMS | 0033591 | TMS | 0033596 | TMS | 0035613 | TMS | 0035626 |
| TMS | 0033687 | TMS | 0033687 | TMS | 0035642 | TMS | 0035658 |
| TMS | 0033714 | TMS | 0033723 | TMS | 0035665 | TMS | 0035665 |
| TMS | 0033714 | TMS | 0033723 | TMS | 0035758 | TMS | 0035758 |
| TMS | 0033725 | TMS | 0033744 | TMS | 0036859 | TMS | 0036860 |
| TMS | 0033765 | TMS | 0033765 | TMS | 0036868 | TMS | 0036886 |
| TMS | 0033766 | TMS | 0033766 | TMS | 0036897 | TMS | 0036900 |
| TMS | 0033807 | TMS | 0033808 | TMS | 0036913 | TMS | 0036913 |
| TMS | 0033814 | TMS | 0033815 | TMS | 0036958 | TMS | 0036958 |
| TMS | 0033825 | TMS | 0033825 | TMS | 0037121 | TMS | 0037121 |
| TMS | 0033950 | TMS | 0033973 | TMS | 0037162 | TMS | 0037162 |
| TMS | 0033997 | TMS | 0033997 | TMS | 0037219 | TMS | 0037243 |
| TMS | 0034012 | TMS | 0034012 | TMS | 0037255 | TMS | 0037269 |

Confidential

TV Guide Online, Inc. And TV Guide Online, LLC v. Tribune Media Services, Inc.
**Documents And Other Information Reviewed**

| Beginning Bates | | Ending Bates | | Beginning Bates | | Ending Bates | |
|---|---|---|---|---|---|---|---|
| TMS | 0037284 | TMS | 0037287 | TMS | 0039769 | TMS | 0039769 |
| TMS | 0037289 | TMS | 0037292 | TMS | 0039771 | TMS | 0039773 |
| TMS | 0037296 | TMS | 0037299 | TMS | 0039795 | TMS | 0039798 |
| TMS | 0037364 | TMS | 0037365 | TMS | 0039795 | TMS | 0039809 |
| TMS | 0037374 | TMS | 0037374 | TMS | 0039811 | TMS | 0039813 |
| TMS | 0037440 | TMS | 0037440 | TMS | 0039814 | TMS | 0039815 |
| TMS | 0037465 | TMS | 0037465 | TMS | 0042113 | TMS | 0042118 |
| TMS | 0037499 | TMS | 0037501 | TMS | 0043207 | TMS | 0043212 |
| TMS | 0037510 | TMS | 0037511 | TMS | 0043245 | TMS | 0043298 |
| TMS | 0037513 | TMS | 0037515 | TMS | 0050221 | TMS | 0050242 |
| TMS | 0037520 | TMS | 0037521 | TMS | 0050266 | TMS | 0050267 |
| TMS | 0037524 | TMS | 0037548 | TMS | 0050346 | TMS | 0050347 |
| TMS | 0037557 | TMS | 0037557 | TMS | 0050364 | TMS | 0050366 |
| TMS | 0037559 | TMS | 0037561 | TMS | 0050379 | TMS | 0050381 |
| TMS | 0037563 | TMS | 0037565 | TMS | 0050382 | TMS | 0050384 |
| TMS | 0037566 | TMS | 0037566 | TMS | 0050466 | TMS | 0050469 |
| TMS | 0037586 | TMS | 0037602 | TMS | 0050478 | TMS | 0050504 |
| TMS | 0037606 | TMS | 0037611 | TMS | 0050526 | TMS | 0050567 |
| TMS | 0037611 | TMS | 0037614 | TMS | 0051921 | TMS | 0051979 |
| TMS | 0037618 | TMS | 0037619 | TMS | 0053253 | TMS | 0053300 |
| TMS | 0037618 | TMS | 0037621 | TMS | 0053307 | TMS | 0053326 |
| TMS | 0037623 | TMS | 0037625 | TMS | 0053411 | TMS | 0053837 |
| TMS | 0037633 | TMS | 0037638 | TMS | 0053852 | TMS | 0053980 |
| TMS | 0037644 | TMS | 0037660 | TMS | 0053988 | TMS | 0054009 |
| TMS | 0037663 | TMS | 0037687 | TMS | 0054014 | TMS | 0054048 |
| TMS | 0037690 | TMS | 0037714 | TMS | 0054053 | TMS | 0054135 |
| TMS | 0037756 | TMS | 0037756 | TMS | 0054148 | TMS | 0054148 |
| TMS | 0037759 | TMS | 0037759 | TMS | 0054152 | TMS | 0054157 |
| TMS | 0037760 | TMS | 0037760 | TMS | 0054211 | TMS | 0054237 |
| TMS | 0037773 | TMS | 0037775 | TMS | 0054244 | TMS | 0054346 |
| TMS | 0037806 | TMS | 0037809 | TMS | 0054365 | TMS | 0054367 |
| TMS | 0037817 | TMS | 0037818 | TMS | 0054817 | TMS | 0055074 |
| TMS | 0037858 | TMS | 0037861 | TMS | 0055101 | TMS | 0055118 |
| TMS | 0037872 | TMS | 0037874 | TMS | 0055123 | TMS | 0055123 |
| TMS | 0037891 | TMS | 0037891 | TMS | 0055228 | TMS | 0055230 |
| TMS | 0037898 | TMS | 0037899 | TMS | 0055232 | TMS | 0055233 |
| TMS | 0037902 | TMS | 0037902 | TMS | 0055236 | TMS | 0055237 |
| TMS | 0037903 | TMS | 0037903 | TMS | 0055289 | TMS | 0055290 |
| TMS | 0037962 | TMS | 0037985 | TMS | 0055291 | TMS | 0055311 |
| TMS | 0037962 | TMS | 0037985 | TMS | 0055291 | TMS | 0055370 |
| TMS | 0037991 | TMS | 0038015 | TMS | 0055459 | TMS | 0055471 |
| TMS | 0038018 | TMS | 0038042 | TMS | 0055487 | TMS | 0055512 |
| TMS | 0038061 | TMS | 0038062 | TMS | 0055513 | TMS | 0055541 |
| TMS | 0038067 | TMS | 0038091 | TMS | 0055544 | TMS | 0055545 |
| TMS | 0038096 | TMS | 0038099 | TMS | 0055688 | TMS | 0055690 |
| TMS | 0038100 | TMS | 0038154 | TMS | 0055697 | TMS | 0055703 |
| TMS | 0038160 | TMS | 0038174 | TMS | 0055704 | TMS | 0055704 |
| TMS | 0038175 | TMS | 0038184 | TMS | 0055705 | TMS | 0055705 |
| TMS | 0038194 | TMS | 0038211 | TMS | 0055712 | TMS | 0055718 |
| TMS | 0038225 | TMS | 0038225 | TMS | 0055931 | TMS | 0055935 |
| TMS | 0038282 | TMS | 0038283 | TMS | 0055939 | TMS | 0055944 |
| TMS | 0038589 | TMS | 0038600 | TMS | 0055947 | TMS | 0055949 |
| TMS | 0038607 | TMS | 0039153 | TMS | 0055953 | TMS | 0055959 |
| TMS | 0038810 | TMS | 0038857 | TMS | 0055982 | TMS | 0056011 |
| TMS | 0039108 | TMS | 0039111 | TMS | 0056014 | TMS | 0056014 |
| TMS | 0039120 | TMS | 0039153 | TMS | 0056020 | TMS | 0056027 |

Confidential

TV Guide Online, Inc. And TV Guide Online, LLC v. Tribune Media Services, Inc.
## Documents And Other Information Reviewed

| Beginning Bates | | Ending Bates | | Beginning Bates | | Ending Bates | |
|---|---|---|---|---|---|---|---|
| TMS | 0056034 | TMS | 0056034 | TMS | 0062300 | TMS | 0062306 |
| TMS | 0056037 | TMS | 0056050 | TMS | 0062372 | TMS | 0062400 |
| TMS | 0056063 | TMS | 0056074 | TMS | 0062430 | TMS | 0062441 |
| TMS | 0056086 | TMS | 0056132 | TMS | 0062480 | TMS | 0062484 |
| TMS | 0056164 | TMS | 0056169 | TMS | 0062487 | TMS | 0062503 |
| TMS | 0056170 | TMS | 0056199 | TMS | 0062510 | TMS | 0062934 |
| TMS | 0056200 | TMS | 0056233 | TMS | 0067957 | TMS | 0067961 |
| TMS | 0056205 | TMS | 0056233 | TMS | 0067968 | TMS | 0067998 |
| TMS | 0056329 | TMS | 0056333 | TMS | 0067999 | TMS | 0068061 |
| TMS | 0056390 | TMS | 0056413 | TMS | 0068719 | TMS | 0068735 |
| TMS | 0056438 | TMS | 0056446 | TMS | 0068737 | TMS | 0068739 |
| TMS | 0056730 | TMS | 0056734 | | | | |
| TMS | 0056897 | TMS | 0056918 | | | | |
| TMS | 0056935 | TMS | 0056946 | TG | 0000001 | TG | 0000008 |
| TMS | 0057078 | TMS | 0057114 | TG | 0000448 | TG | 0000450 |
| TMS | 0057148 | TMS | 0057160 | TG | 0000451 | TG | 0000458 |
| TMS | 0057216 | TMS | 0057217 | TG | 0000467 | TG | 0000483 |
| TMS | 0057313 | TMS | 0057343 | TG | 0000484 | TG | 0000484 |
| TMS | 0057319 | TMS | 0057351 | TG | 0000495 | TG | 0000505 |
| TMS | 0057390 | TMS | 0057422 | TG | 0003054 | TG | 0003065 |
| TMS | 0057432 | TMS | 0057554 | TG | 0003068 | TG | 0003072 |
| TMS | 0057600 | TMS | 0057645 | TG | 0003079 | TG | 0003082 |
| TMS | 0057663 | TMS | 0057713 | TG | 0003089 | TG | 0003089 |
| TMS | 0057717 | TMS | 0057729 | TG | 0003094 | TG | 0003097 |
| TMS | 0057733 | TMS | 0057747 | TG | 0003100 | TG | 0003103 |
| TMS | 0057749 | TMS | 0057764 | TG | 0003105 | TG | 0003110 |
| TMS | 0057771 | TMS | 0057771 | TG | 0003139 | TG | 0003177 |
| TMS | 0057798 | TMS | 0057814 | TG | 0003184 | TG | 0003186 |
| TMS | 0057840 | TMS | 0057849 | TG | 0003206 | TG | 0003233 |
| TMS | 0057851 | TMS | 0057867 | TG | 0003270 | TG | 0003270 |
| TMS | 0058195 | TMS | 0058227 | TG | 0003308 | TG | 0003310 |
| TMS | 0058342 | TMS | 0058353 | TG | 0003311 | TG | 0003313 |
| TMS | 0058355 | TMS | 0058357 | TG | 0003317 | TG | 0003320 |
| TMS | 0058431 | TMS | 0058431 | TG | 0003329 | TG | 0003331 |
| TMS | 0058502 | TMS | 0058503 | TG | 0003334 | TG | 0003344 |
| TMS | 0058568 | TMS | 0058629 | TG | 0003359 | TG | 0003359 |
| TMS | 0058651 | TMS | 0058657 | TG | 0003372 | TG | 0003375 |
| TMS | 0058739 | TMS | 0058503 | TG | 0003377 | TG | 0003378 |
| TMS | 0058879 | TMS | 0058879 | TG | 0003413 | TG | 0003416 |
| TMS | 0059156 | TMS | 0059157 | TG | 0003433 | TG | 0003434 |
| TMS | 0059375 | TMS | 0059376 | TG | 0003437 | TG | 0003438 |
| TMS | 0060666 | TMS | 0060679 | TG | 0003450 | TG | 0003451 |
| TMS | 0060914 | TMS | 0060915 | TG | 0003466 | TG | 0003468 |
| TMS | 0061455 | TMS | 0061455 | TG | 0003471 | TG | 0003472 |
| TMS | 0061944 | TMS | 0061955 | TG | 0003474 | TG | 0003474 |
| TMS | 0061986 | TMS | 0061987 | TG | 0003489 | TG | 0003495 |
| TMS | 0062001 | TMS | 0062003 | TG | 0003507 | TG | 0003512 |
| TMS | 0062011 | TMS | 0062014 | TG | 0003516 | TG | 0003517 |
| TMS | 0062039 | TMS | 0062040 | TG | 0003531 | TG | 0003554 |
| TMS | 0062054 | TMS | 0062054 | TG | 0003582 | TG | 0003668 |
| TMS | 0062070 | TMS | 0062071 | TG | 0003670 | TG | 0003687 |
| TMS | 0062091 | TMS | 0062109 | TG | 0003698 | TG | 0003701 |
| TMS | 0062158 | TMS | 0062159 | TG | 0003706 | TG | 0003712 |
| TMS | 0062167 | TMS | 0062169 | TG | 0003732 | TG | 0003735 |
| TMS | 0062177 | TMS | 0062178 | TG | 0003777 | TG | 0003813 |
| TMS | 0062195 | TMS | 0062197 | TG | 0003827 | TG | 0003891 |

Confidential

TV Guide Online, Inc. And TV Guide Online, LLC v. Tribune Media Services, Inc.
**Documents And Other Information Reviewed**

| Beginning Bates | | Ending Bates | | Beginning Bates | | Ending Bates | |
|---|---|---|---|---|---|---|---|
| TG | 0003937 | TG | 0003943 | TG | 0007126 | TG | 0007134 |
| TG | 0003945 | TG | 0003946 | TG | 0007139 | TG | 0007141 |
| TG | 0003959 | TG | 0003966 | TG | 0007143 | TG | 0007147 |
| TG | 0003977 | TG | 0003995 | TG | 0007149 | TG | 0007149 |
| TG | 0004254 | TG | 0004261 | TG | 0007152 | TG | 0007192 |
| TG | 0004525 | TG | 0004526 | TG | 0007196 | TG | 0007198 |
| TG | 0004539 | TG | 0004554 | TG | 0007200 | TG | 0007204 |
| TG | 0004571 | TG | 0004575 | TG | 0007206 | TG | 0007257 |
| TG | 0004583 | TG | 0004594 | TG | 0007206 | TG | 0007342 |
| TG | 0004850 | TG | 0004850 | TG | 0007361 | TG | 0007362 |
| TG | 0004858 | TG | 0004872 | TG | 0007365 | TG | 0007405 |
| TG | 0004880 | TG | 0004892 | TG | 0007406 | TG | 0007406 |
| TG | 0004903 | TG | 0004906 | TG | 0007407 | TG | 0007408 |
| TG | 0005147 | TG | 0005200 | TG | 0007408 | TG | 0007408 |
| TG | 0005227 | TG | 0005292 | TG | 0007411 | TG | 0007485 |
| TG | 0005295 | TG | 0005301 | TG | 0007488 | TG | 0007513 |
| TG | 0005307 | TG | 0005309 | TG | 0007515 | TG | 0007520 |
| TG | 0005326 | TG | 0005327 | TG | 0007523 | TG | 0007546 |
| TG | 0005336 | TG | 0005339 | TG | 0007549 | TG | 0007551 |
| TG | 0005341 | TG | 0005473 | TG | 0007567 | TG | 0007588 |
| TG | 0005477 | TG | 0005487 | TG | 0007761 | TG | 0007784 |
| TG | 0005496 | TG | 0005499 | TG | 0007895 | TG | 0007905 |
| TG | 0005676 | TG | 0005677 | TG | 0007914 | TG | 0007916 |
| TG | 0005680 | TG | 0005695 | TG | 0007940 | TG | 0007941 |
| TG | 0005706 | TG | 0005706 | TG | 0007992 | TG | 0008014 |
| TG | 0005708 | TG | 0005713 | TG | 0008011 | TG | 0008012 |
| TG | 0005724 | TG | 0005724 | TG | 0008017 | TG | 0008046 |
| TG | 0005729 | TG | 0005736 | TG | 0008048 | TG | 0008072 |
| TG | 0005741 | TG | 0005743 | TG | 0008048 | TG | 0008072 |
| TG | 0005989 | TG | 0006008 | TG | 0008074 | TG | 0008100 |
| TG | 0006014 | TG | 0006024 | TG | 0008102 | TG | 0008126 |
| TG | 0006033 | TG | 0006037 | TG | 0008128 | TG | 0008145 |
| TG | 0006041 | TG | 0006044 | TG | 0008147 | TG | 0008164 |
| TG | 0006057 | TG | 0006058 | TG | 0008166 | TG | 0008170 |
| TG | 0006069 | TG | 0006150 | TG | 0008193 | TG | 0008214 |
| TG | 0006156 | TG | 0006230 | TG | 0008281 | TG | 0008295 |
| TG | 0006234 | TG | 0006324 | TG | 0008301 | TG | 0008322 |
| TG | 0006328 | TG | 0006343 | TG | 0008493 | TG | 0008548 |
| TG | 0006353 | TG | 0006359 | TG | 0008556 | TG | 0008569 |
| TG | 0006368 | TG | 0006372 | TG | 0008662 | TG | 0008673 |
| TG | 0006381 | TG | 0006464 | TG | 0008675 | TG | 0008677 |
| TG | 0006473 | TG | 0006481 | TG | 0008679 | TG | 0008693 |
| TG | 0006577 | TG | 0006613 | TG | 0008707 | TG | 0008728 |
| TG | 0006621 | TG | 0006644 | TG | 0008901 | TG | 0008922 |
| TG | 0006676 | TG | 0006841 | TG | 0009096 | TG | 0009097 |
| TG | 0006851 | TG | 0006852 | TG | 0009096 | TG | 0009097 |
| TG | 0006870 | TG | 0006871 | TG | 0009120 | TG | 0009125 |
| TG | 0006886 | TG | 0006964 | TG | 0009172 | TG | 0009507 |
| TG | 0006942 | TG | 0006963 | TG | 0009722 | TG | 0009722 |
| TG | 0006942 | TG | 0006963 | TG | 0009910 | TG | 0009911 |
| TG | 0006966 | TG | 0006972 | TG | 0009915 | TG | 0009915 |
| TG | 0007011 | TG | 0007069 | TG | 0010058 | TG | 0010058 |
| TG | 0007077 | TG | 0007077 | TG | 0010319 | TG | 0010321 |
| TG | 0007092 | TG | 0007093 | TG | 0010415 | TG | 0010415 |
| TG | 0007095 | TG | 0007102 | TG | 0010520 | TG | 0010520 |
| TG | 0007106 | TG | 0007109 | TG | 0010578 | TG | 0010578 |

Confidential

TV Guide Online, Inc. And TV Guide Online, LLC v. Tribune Media Services, Inc.
**Documents And Other Information Reviewed**

| Beginning Bates | | Ending Bates | | Beginning Bates | | Ending Bates | |
|---|---|---|---|---|---|---|---|
| TG | 0010666 | TG | 0010704 | TG | 0024321 | TG | 0024350 |
| TG | 0013158 | TG | 0013282 | TG | 0024354 | TG | 0024381 |
| TG | 0013360 | TG | 0013374 | TG | 0024406 | TG | 0024413 |
| TG | 0013380 | TG | 0013381 | TG | 0024415 | TG | 0024441 |
| TG | 0013391 | TG | 0013391 | TG | 0024444 | TG | 0024444 |
| TG | 0013393 | TG | 0013404 | TG | 0024492 | TG | 0024497 |
| TG | 0013397 | TG | 0013397 | TG | 0024563 | TG | 0024575 |
| TG | 0013420 | TG | 0013420 | TG | 0024803 | TG | 0024805 |
| TG | 0018784 | TG | 0018841 | TG | 0024815 | TG | 0024820 |
| TG | 0018842 | TG | 0018887 | TG | 0024830 | TG | 0024835 |
| TG | 0018888 | TG | 0018916 | TG | 0024846 | TG | 0024858 |
| TG | 0018917 | TG | 0018919 | TG | 0024893 | TG | 0024898 |
| TG | 0018937 | TG | 0018947 | TG | 0024899 | TG | 0024925 |
| TG | 0018957 | TG | 0018968 | TG | 0024899 | TG | 0024925 |
| TG | 0019007 | TG | 0019007 | TG | 0024926 | TG | 0025052 |
| TG | 0019011 | TG | 0019014 | TG | 0025179 | TG | 0025182 |
| TG | 0019017 | TG | 0019055 | TG | 0025185 | TG | 0025187 |
| TG | 0019036 | TG | 0019055 | TG | 0025189 | TG | 0025189 |
| TG | 0019057 | TG | 0019060 | TG | 0025192 | TG | 0025192 |
| TG | 0019066 | TG | 0019066 | TG | 0025194 | TG | 0025195 |
| TG | 0019081 | TG | 0019082 | TG | 0025197 | TG | 0025197 |
| TG | 0021609 | TG | 0021611 | TG | 0025255 | TG | 0025274 |
| TG | 0021609 | TG | 0021615 | TG | 0025934 | TG | 0025950 |
| TG | 0021612 | TG | 0021613 | TG | 0025957 | TG | 0025959 |
| TG | 0021620 | TG | 0021625 | TG | 0025962 | TG | 0025968 |
| TG | 0021650 | TG | 0021650 | TG | 0025970 | TG | 0025974 |
| TG | 0021657 | TG | 0021657 | TG | 0025978 | TG | 0025978 |
| TG | 0022090 | TG | 0022093 | TG | 0025982 | TG | 0025986 |
| TG | 0022101 | TG | 0022159 | TG | 0025991 | TG | 0026000 |
| TG | 0022974 | TG | 0022996 | TG | 0026027 | TG | 0026079 |
| TG | 0022999 | TG | 0023003 | TG | 0026136 | TG | 0026204 |
| TG | 0023006 | TG | 0023010 | TG | 0026206 | TG | 0026261 |
| TG | 0023015 | TG | 0023024 | TG | 0026263 | TG | 0026301 |
| TG | 0023032 | TG | 0023067 | TG | 0026505 | TG | 0026519 |
| TG | 0024078 | TG | 0024114 | TG | 0026546 | TG | 0026549 |
| TG | 0024128 | TG | 0024130 | TG | 0026565 | TG | 0026586 |
| TG | 0024141 | TG | 0024151 | TG | 0026729 | TG | 0026753 |
| TG | 0024170 | TG | 0024171 | TG | 0026757 | TG | 0026759 |
| TG | 0024173 | TG | 0024174 | TG | 0026765 | TG | 0026772 |
| TG | 0024176 | TG | 0024185 | TG | 0026774 | TG | 0026791 |
| TG | 0024187 | TG | 0024197 | TG | 0026798 | TG | 0026819 |
| TG | 0024199 | TG | 0024202 | TG | 0026837 | TG | 0026852 |
| TG | 0024204 | TG | 0024209 | TG | 0026872 | TG | 0026884 |
| TG | 0024211 | TG | 0024213 | TG | 0026886 | TG | 0026913 |
| TG | 0024215 | TG | 0024220 | TG | 0026959 | TG | 0026966 |
| TG | 0024222 | TG | 0024222 | TG | 0027142 | TG | 0027178 |
| TG | 0024224 | TG | 0024239 | TG | 0027294 | TG | 0027362 |
| TG | 0024241 | TG | 0024249 | TG | 0027364 | TG | 0027419 |
| TG | 0024251 | TG | 0024252 | TG | 0027421 | TG | 0027459 |
| TG | 0024254 | TG | 0024265 | TG | 0027462 | TG | 0027543 |
| TG | 0024267 | TG | 0024271 | TG | 0027569 | TG | 0027594 |
| TG | 0024273 | TG | 0024275 | TG | 0027600 | TG | 0027635 |
| TG | 0024277 | TG | 0024278 | TG | 0027639 | TG | 0027662 |
| TG | 0024280 | TG | 0024280 | TG | 0027844 | TG | 0027864 |
| TG | 0024283 | TG | 0024305 | TG | 0027893 | TG | 0027901 |
| TG | 0024307 | TG | 0024312 | TG | 0027915 | TG | 0027929 |

Confidential

TV Guide Online, Inc. And TV Guide Online, LLC v. Tribune Media Services, Inc.
**Documents And Other Information Reviewed**

| Beginning Bates | Ending Bates | Beginning Bates | Ending Bates |
|---|---|---|---|
| TG 0027941 | TG 0027983 | TG 0031152 | TG 0031158 |
| TG 0028022 | TG 0028206 | TG 0031160 | TG 0031162 |
| TG 0028298 | TG 0028353 | TG 0031259 | TG 0031262 |
| TG 0028358 | TG 0028391 | TG 0031289 | TG 0031400 |
| TG 0028393 | TG 0028425 | TG 0031434 | TG 0031449 |
| TG 0028428 | TG 0028450 | TG 0031451 | TG 0031472 |
| TG 0028455 | TG 0028461 | TG 0031555 | TG 0031563 |
| TG 0028550 | TG 0028584 | TG 0031565 | TG 0031580 |
| TG 0028585 | TG 0028587 | TG 0031624 | TG 0031625 |
| TG 0028589 | TG 0028597 | TG 0031627 | TG 0031628 |
| TG 0028603 | TG 0028627 | TG 0031635 | TG 0031636 |
| TG 0028632 | TG 0028632 | TG 0031639 | TG 0031640 |
| TG 0028635 | TG 0028640 | TG 0037361 | TG 0037384 |
| TG 0028646 | TG 0028646 | TG 0037391 | TG 0037399 |
| TG 0028648 | TG 0028648 | TG 0037401 | TG 0037406 |
| TG 0028662 | TG 0028663 | TG 0037578 | TG 0037581 |
| TG 0028687 | TG 0028687 | TG 0037583 | TG 0037601 |
| TG 0028691 | TG 0028693 | TG 0037583 | TG 0037608 |
| TG 0028700 | TG 0028703 | TG 0037822 | TG 0037822 |
| TG 0028753 | TG 0028763 | TG 0037842 | TG 0037863 |
| TG 0028753 | TG 0028763 | TG 0037870 | TG 0037871 |
| TG 0028784 | TG 0028784 | TG 0037876 | TG 0037899 |
| TG 0028794 | TG 0028799 | TG 0037909 | TG 0037933 |
| TG 0028855 | TG 0028980 | TG 0037977 | TG 0037978 |
| TG 0028985 | TG 0029037 | TG 0038086 | TG 0038087 |
| TG 0029038 | TG 0029040 | TG 0038089 | TG 0038089 |
| TG 0029043 | TG 0029085 | TG 0038117 | TG 0038140 |
| TG 0029066 | TG 0029085 | TG 0038198 | TG 0038201 |
| TG 0029833 | TG 0029884 | TG 0038203 | TG 0038206 |
| TG 0029833 | TG 0029884 | TG 0038226 | TG 0038227 |
| TG 0029905 | TG 0029910 | TG 0038314 | TG 0038316 |
| TG 0030130 | TG 0030153 | TG 0038331 | TG 0038332 |
| TG 0030130 | TG 0030153 | TG 0038335 | TG 0038338 |
| TG 0030263 | TG 0030266 | TG 0038345 | TG 0038345 |
| TG 0030495 | TG 0030503 | TG 0038348 | TG 0038348 |
| TG 0030512 | TG 0030536 | TG 0038440 | TG 0038443 |
| TG 0030538 | TG 0030544 | TG 0038458 | TG 0038461 |
| TG 0030538 | TG 0030552 | TG 0038465 | TG 0038466 |
| TG 0030554 | TG 0030560 | TG 0038508 | TG 0038511 |
| TG 0030554 | TG 0030560 | TG 0038599 | TG 0038603 |
| TG 0030564 | TG 0030633 | TG 0038933 | TG 0038936 |
| TG 0030652 | TG 0030671 | TG 0039008 | TG 0039010 |
| TG 0030747 | TG 0030808 | TG 0039035 | TG 0039038 |
| TG 0030921 | TG 0030935 | TG 0039065 | TG 0039066 |
| TG 0030937 | TG 0030942 | TG 0039082 | TG 0039088 |
| TG 0030944 | TG 0030958 | TG 0039103 | TG 0039103 |
| TG 0030960 | TG 0030960 | TG 0039116 | TG 0039117 |
| TG 0030962 | TG 0031018 | TG 0039128 | TG 0039128 |
| TG 0031020 | TG 0031041 | TG 0039141 | TG 0039144 |
| TG 0031043 | TG 0031043 | TG 0039209 | TG 0039211 |
| TG 0031049 | TG 0031057 | TG 0039253 | TG 0039275 |
| TG 0031059 | TG 0031059 | TG 0039280 | TG 0039282 |
| TG 0031061 | TG 0031064 | TG 0039289 | TG 0039290 |
| TG 0031068 | TG 0031081 | TG 0039292 | TG 0039293 |
| TG 0031085 | TG 0031085 | TG 0039295 | TG 0039296 |
| TG 0031087 | TG 0031112 | TG 0039313 | TG 0039316 |

Confidential

TV Guide Online, Inc. And TV Guide Online, LLC v. Tribune Media Services, Inc.
**Documents And Other Information Reviewed**

| Beginning Bates | Ending Bates | Beginning Bates | Ending Bates |
|---|---|---|---|
| TG 0039389 | TG 0039390 | TG 0044834 | TG 0044838 |
| TG 0039392 | TG 0039394 | TG 0045214 | TG 0045216 |
| TG 0039396 | TG 0039398 | TG 0045219 | TG 0045224 |
| TG 0039400 | TG 0039402 | TG 0045235 | TG 0045275 |
| TG 0039406 | TG 0036409 | TG 0045280 | TG 0045380 |
| TG 0039479 | TG 0039480 | TG 0045408 | TG 0045463 |
| TG 0039482 | TG 0039484 | TG 0045592 | TG 0045594 |
| TG 0039497 | TG 0039500 | TG 0045626 | TG 0045626 |
| TG 0039614 | TG 0039617 | TG 0045681 | TG 0045718 |
| TG 0039619 | TG 0039622 | TG 0045721 | TG 0045730 |
| TG 0039718 | TG 0039720 | TG 0045844 | TG 0045846 |
| TG 0039725 | TG 0039727 | TG 0046064 | TG 0046067 |
| TG 0039758 | TG 0039762 | TG 0046077 | TG 0046081 |
| TG 0039782 | TG 0039787 | TG 0046091 | TG 0046104 |
| TG 0039804 | TG 0039804 | TG 0046106 | TG 0046108 |
| TG 0039934 | TG 0039936 | TG 0046110 | TG 0046112 |
| TG 0039934 | TG 0039936 | TG 0046128 | TG 0046130 |
| TG 0040122 | TG 0040123 | TG 0046134 | TG 0046146 |
| TG 0040144 | TG 0040150 | TG 0046167 | TG 0046198 |
| TG 0040153 | TG 0040176 | TG 0046202 | TG 0046204 |
| TG 0040184 | TG 0040201 | TG 0046266 | TG 0046271 |
| TG 0040203 | TG 0040220 | TG 0046282 | TG 0046284 |
| TG 0040277 | TG 0040287 | TG 0046388 | TG 0046478 |
| TG 0040292 | TG 0040298 | TG 0046480 | TG 0046482 |
| TG 0040707 | TG 0040733 | TG 0046483 | TG 0046499 |
| TG 0040939 | TG 0040962 | TG 0046504 | TG 0046506 |
| TG 0040964 | TG 0040973 | TG 0046513 | TG 0046515 |
| TG 0040998 | TG 0041007 | TG 0046536 | TG 0046560 |
| TG 0041027 | TG 0041030 | TG 0046606 | TG 0046636 |
| TG 0041268 | TG 0041291 | TG 0046642 | TG 0046675 |
| TG 0041339 | TG 0041344 | TG 0046685 | TG 0046708 |
| TG 0041347 | TG 0041353 | TG 0046711 | TG 0046716 |
| TG 0041386 | TG 0041432 | TG 0046721 | TG 0046723 |
| TG 0041386 | TG 0041484 | TG 0046794 | TG 0046811 |
| TG 0041588 | TG 0041593 | TG 0046888 | TG 0046893 |
| TG 0041939 | TG 0041957 | TG 0046906 | TG 0046923 |
| TG 0042133 | TG 0042152 | TG 0047031 | TG 0047062 |
| TG 0042154 | TG 0042159 | TG 0047116 | TG 0047137 |
| TG 0042194 | TG 0042210 | TG 0047142 | TG 0047144 |
| TG 0042212 | TG 0042223 | TG 0047148 | TG 0047153 |
| TG 0042373 | TG 0042375 | TG 0047157 | TG 0047162 |
| TG 0042658 | TG 0042710 | TG 0047179 | TG 0047184 |
| TG 0042712 | TG 0042733 | TG 0047260 | TG 0047264 |
| TG 0042865 | TG 0042870 | TG 0047303 | TG 0047313 |
| TG 0043030 | TG 0043104 | TG 0047317 | TG 0047319 |
| TG 0043827 | TG 0043843 | TG 0047363 | TG 0047408 |
| TG 0043827 | TG 0021613 | TG 0047420 | TG 0047459 |
| TG 0043914 | TG 0043947 | TG 0047474 | TG 0047476 |
| TG 0044002 | TG 0044036 | TG 0047479 | TG 0047504 |
| TG 0044139 | TG 0044164 | TG 0047515 | TG 0047525 |
| TG 0044181 | TG 0044200 | TG 0047548 | TG 0047549 |
| TG 0044221 | TG 0044240 | TG 0047560 | TG 0047585 |
| TG 0044578 | TG 0044607 | TG 0047635 | TG 0047647 |
| TG 0044646 | TG 0044650 | TG 0047694 | TG 0047726 |
| TG 0044671 | TG 0044674 | TG 0047732 | TG 0047789 |
| TG 0044780 | TG 0044783 | TG 0047821 | TG 0047828 |

TV Guide Online, Inc. And TV Guide Online, LLC v. Tribune Media Services, Inc.
**Documents And Other Information Reviewed**

| Beginning Bates | Ending Bates | Beginning Bates | Ending Bates |
|---|---|---|---|
| TG 0047860 | TG 0047879 | TG 0051605 | TG 0051619 |
| TG 0047893 | TG 0047896 | TG 0051624 | TG 0051627 |
| TG 0047914 | TG 0047933 | TG 0053392 | TG 0053401 |
| TG 0047938 | TG 0047939 | TG 0053601 | TG 0053621 |
| TG 0047945 | TG 0047947 | TG 0054088 | TG 0054101 |
| TG 0047949 | TG 0048000 | TG 0054119 | TG 0054128 |
| TG 0048095 | TG 0048097 | TG 0054297 | TG 0054317 |
| TG 0048102 | TG 0048104 | TG 0054452 | TG 0054455 |
| TG 0048226 | TG 0048365 | TG 0054855 | TG 0054875 |
| TG 0048370 | TG 0048431 | TG 0055652 | TG 0055672 |
| TG 0048460 | TG 0048462 | TG 0056478 | TG 0056481 |
| TG 0048473 | TG 0048492 | TG 0056494 | TG 0056494 |
| TG 0048531 | TG 0048557 | TG 0056498 | TG 0056505 |
| TG 0048580 | TG 0048611 | TG 0056508 | TG 0056509 |
| TG 0048642 | TG 0048644 | TG 0058354 | TG 0058358 |
| TG 0048679 | TG 0048681 | TG 0059753 | TG 0059795 |
| TG 0048729 | TG 0048737 | TG 0059753 | TG 0059795 |
| TG 0048747 | TG 0048747 | TG 0059977 | TG 0059977 |
| TG 0048752 | TG 0048777 | TG 0060030 | TG 0060030 |
| TG 0048799 | TG 0048804 | TG 0060065 | TG 0060088 |
| TG 0048809 | TG 0048811 | TG 0060102 | TG 0060102 |
| TG 0048931 | TG 0048936 | TG 0060102 | TG 0060102 |
| TG 0048979 | TG 0048990 | TG 0060191 | TG 0060202 |
| TG 0048996 | TG 0048998 | TG 0060426 | TG 0060461 |
| TG 0049016 | TG 0049050 | TG 0060462 | TG 0060500 |
| TG 0049053 | TG 0049101 | TG 0060511 | TG 0060541 |
| TG 0049198 | TG 0049229 | TG 0060542 | TG 0060549 |
| TG 0049252 | TG 0049319 | TG 0060550 | TG 0060577 |
| TG 0049432 | TG 0049443 | TG 0060578 | TG 0060586 |
| TG 0049552 | TG 0049555 | TG 0060587 | TG 0060615 |
| TG 0049567 | TG 0049570 | TG 0060616 | TG 0060648 |
| TG 0049578 | TG 0049580 | TG 0060649 | TG 0060700 |
| TG 0049598 | TG 0049600 | TG 0060701 | TG 0060727 |
| TG 0049606 | TG 0049608 | TG 0060701 | TG 0060741 |
| TG 0049618 | TG 0049639 | TG 0060776 | TG 0060787 |
| TG 0049649 | TG 0049666 | TG 0061476 | TG 0061481 |
| TG 0049673 | TG 0049694 | TG 0061496 | TG 0061497 |
| TG 0049697 | TG 0049721 | TG 0061981 | TG 0062000 |
| TG 0049729 | TG 0049738 | TG 0062019 | TG 0062020 |
| TG 0049806 | TG 0049819 | TG 0062051 | TG 0062051 |
| TG 0050041 | TG 0050060 | TG 0062061 | TG 0062061 |
| TG 0050080 | TG 0050080 | TG 0062071 | TG 0062071 |
| TG 0050270 | TG 0050282 | TG 0062083 | TG 0062083 |
| TG 0050318 | TG 0050327 | TG 0062127 | TG 0062127 |
| TG 0050375 | TG 0050394 | TG 0062166 | TG 0062166 |
| TG 0050470 | TG 0050472 | TG 0062180 | TG 0062180 |
| TG 0050741 | TG 0050752 | TG 0062188 | TG 0062188 |
| TG 0050773 | TG 0050780 | TG 0062189 | TG 0062189 |
| TG 0050880 | TG 0050892 | TG 0062241 | TG 0062248 |
| TG 0050894 | TG 0050894 | TG 0062249 | TG 0062256 |
| TG 0050979 | TG 0050997 | TG 0062261 | TG 0062262 |
| TG 0051000 | TG 0051002 | TG 0062267 | TG 0062270 |
| TG 0051152 | TG 0051211 | TG 0062369 | TG 0062370 |
| TG 0051289 | TG 0051312 | TG 0062413 | TG 0062415 |
| TG 0051451 | TG 0051480 | TG 0062506 | TG 0062508 |
| TG 0051557 | TG 0051568 | TG 0066592 | TG 0066595 |

Confidential

TV Guide Online, Inc. And TV Guide Online, LLC v. Tribune Media Services, Inc.
**Documents And Other Information Reviewed**

| Beginning Bates | Ending Bates | Beginning Bates | Ending Bates |
|---|---|---|---|
| TG 0067720 | TG 0067720 | TG 0151018 | TG 0151115 |
| TG 0067912 | TG 0067912 | TG 0151116 | TG 0151153 |
| TG 0068737 | TG 0068737 | TG 0151154 | TG 0151185 |
| TG 0079168 | TG 0079199 | TG 0151186 | TG 0151225 |
| TG 0079214 | TG 0079221 | TG 0151598 | TG 0151744 |
| TG 0079250 | TG 0079254 | TG 0151795 | TG 0151796 |
| TG 0079255 | TG 0079276 | TG 0151802 | TG 0151860 |
| TG 0080047 | TG 0080052 | TG 0152022 | TG 0152174 |
| TG 0080073 | TG 0080076 | TG 0152184 | TG 0152185 |
| TG 0080109 | TG 0080225 | TG 0152231 | TG 0152238 |
| TG 0080238 | TG 0080298 | TG 0152243 | TG 0152246 |
| TG 0080311 | TG 0080312 | TG 0152253 | TG 0152264 |
| TG 0080320 | TG 0080320 | TG 0152253 | TG 0122311 |
| TG 0080374 | TG 0080376 | TG 0152312 | TG 0152326 |
| TG 0080509 | TG 0080510 | TG 0153815 | TG 0153907 |
| TG 0081287 | TG 0081323 | TG 0154074 | TG 0154077 |
| TG 0081394 | TG 0081430 | TG 0154090 | TG 0154092 |
| TG 0081435 | TG 0081477 | TG 0154455 | TG 0154470 |
| TG 0082410 | TG 0082476 | TG 0155539 | TG 0155560 |
| TG 0082480 | TG 0082550 | TG 0155539 | TG 0155605 |
| TG 0138492 | TG 0138494 | TG 0155949 | TG 0155973 |
| TG 0140231 | TG 0140329 | TG 0157992 | TG 0158006 |
| TG 0141387 | TG 0141505 | TG 0159115 | TG 0159122 |
| TG 0142536 | TG 0142645 | TG 0159639 | TG 0159657 |
| TG 0145864 | TG 0145867 | TG 0159703 | TG 0159710 |
| TG 0147331 | TG 0147331 | TG 0159751 | TG 0159752 |
| TG 0148810 | TG 0148811 | TG 0159855 | TG 0159883 |
| TG 0149013 | TG 0149036 | TG 0159884 | TG 0159902 |
| TG 0149206 | TG 0149209 | TG 0159903 | TG 0159927 |
| TG 0149221 | TG 0149224 | TG 0159984 | TG 0159902 |
| TG 0149235 | TG 0149237 | TG 0160077 | TG 0160101 |
| TG 0149253 | TG 0149290 | TG 0162614 | TG 0162575 |
| TG 0149461 | TG 0149461 | TG 0163083 | TG 0163092 |
| TG 0149498 | TG 0149505 | TG 0163083 | TG 0163083 |
| TG 0149507 | TG 0149509 | TG 0163376 | TG 0163386 |
| TG 0149517 | TG 0149518 | TG 0163376 | TG 0163376 |
| TG 0149520 | TG 0149521 | TG 0163425 | TG 0163434 |
| TG 0149608 | TG 0149612 | TG 0163425 | TG 0163425 |
| TG 0149614 | TG 0149618 | TG 0163441 | TG 0163441 |
| TG 0149620 | TG 0149627 | TG 0163496 | TG 0164160 |
| TG 0149659 | TG 0149665 | TG 0163607 | TG 0163665 |
| TG 0149669 | TG 0149677 | TG 0163921 | TG 0163936 |
| TG 0149679 | TG 0149687 | TG 0164785 | TG 0164793 |
| TG 0149690 | TG 0149698 | TG 0164800 | TG 0165097 |
| TG 0149700 | TG 0149710 | TG 0165244 | TG 0165244 |
| TG 0150078 | TG 0150080 | TG 0171970 | TG 0171977 |
| TG 0150312 | TG 0150313 | TG 0172051 | TG 0172053 |
| TG 0150343 | TG 0105346 | TG 0180350 | TG 0180493 |
| TG 0150359 | TG 0150367 | TG 0180350 | TG 0180516A |
| TG 0150377 | TG 0150384 | TG 0180517 | TG 0180634 |
| TG 0150386 | TG 0150388 | TG 0180517 | TG 0180634 |
| TG 0150402 | TG 0150402 | TG 0180517 | TG 0180652 |
| TG 0150484 | TG 0150485 | TG 0180872 | TG 0180892 |
| TG 0150489 | TG 0150493 | TG 0181082 | TG 0181227 |
| TG 0150505 | TG 0150507 | TG 0181228 | TG 0181698 |
| TG 0150907 | TG 0151017 | TG 0181450 | TG 0181490 |

Confidential

**TV Guide Online, Inc. And TV Guide Online, LLC v. Tribune Media Services, Inc.**
## Documents And Other Information Reviewed

| Beginning Bates | | Ending Bates | | Beginning Bates | | Ending Bates | |
|---|---|---|---|---|---|---|---|
| TG | 0181715 | TG | 0181743 | TG | 0185970 | TG | 0185984 |
| TG | 0181715 | TG | 0181730 | TG | 0185985 | TG | 0186008 |
| TG | 0184726 | TG | 0184757 | TG | 0188563 | TG | 0188624 |
| TG | 0184792 | TG | 0184811 | TG | 0188625 | TG | 0188626 |
| TG | 0184863 | TG | 0184892 | TG | 0191257 | TG | 0194034 |
| TG | 0184895 | TG | 0184913 | | | | |
| TG | 0185524 | TG | 0185526 | | | | |
| TG | 0185524 | TG | 0185603 | | | | |
| TG | 0185527 | TG | 0185529 | | | | |
| TG | 0185537 | TG | 0185582 | | | | |
| TG | 0185583 | TG | 0185596 | | | | |
| TG | 0185601 | TG | 0185603 | | | | |
| TG | 0185652 | TG | 0185715 | | | | |
| TG | 0185704 | TG | 0185705 | | | | |
| TG | 0185731 | TG | 0185731 | | | | |
| TG | 0185751 | TG | 0185755 | | | | |
| TG | 0185777 | TG | 0185791 | | | | |
| TG | 0185792 | TG | 0185799 | | | | |
| TG | 0185801 | TG | 0185953 | | | | |

### Documents Not Bearing Bates-Stamping

1    Complaint, 10/12/2005
2    Defendant's Answer, Affirmative Defenses, And Counterclaims, 2/1/2006
3    Plaintiff's Answers To Defendant's Counterclaims, 2/21/2006
4    TMS' Responses To TV Guide's First Set Of Interrogatories, 4/10/2006
5    Tribune Media Services' First Supplemental Response To Plaintiff's Interrogatories, 7/14/2006
6    Tribune Media Services' Second Supplemental Response To Plaintiff's Interrogatories, 12/4/2006
7    TMS' Responses To TV Guide's Second Set Of Interrogatories, 6/23/2006
8    TMS' Responses To TV Guide's Third Set Of Interrogatories, 9/18/2006
9    TMS' Responses To TV Guide's Fourth Set Of Interrogatories, 10/10/2006
10   TMS Interrogatory 18 with TV Guide Response and Supplemental Responses
11   Plaintiffs' December 4, 2006 Supplemental Responses And Objections To Defendant's Interrogatory Nos. 1, 4, 10, 11, 12, 13, 14, 17, 18
     And 19
12   Tribune Media Services' Notice Of Deposition Of TV Guide Pursuant To Federal Rule Of Civil Procedure 30(b)(6), 7/26/2006
13   Tribune Media Services' Notice Of Deposition Of TV Guide Pursuant To Federal Rule Of Civil Procedure 30(b)(6), 7/26/2006
14   Tribune Media Services' Notice Of Deposition Of TV Guide Pursuant To Federal Rule Of Civil Procedure 30(b)(6), 9/6/2006
15   TV Guide Online's Notice of Deposition of TMS Pursuant to Federal Rule of Civil Procedure 30(b)(6), 8/7/2006
16   TV Guide's Notice of Deposition of Tribune Media Services, Inc. Pursuant to Federal Rule of Civil Procedure 30(b)(6), 5/17/2006
17   TV Guide's Opening Brief in Support of its Motion to Bifurcate Trial and Stay Discovery of TMS's Affirmative Defense and
     Counterclaim of Patent Misuse, 8/28/2006
18   TMS's Answering Brief in Opposition to TV Guide's Motion to Bifurcate Trial and Stay Discovery on TMS's Affirmative Defense and
     Counterclaim of Patent Misuse, 9/12/2006
19   TV Guide's Reply Brief in Support of Its Motion to Bifurcate Trial and Stay Discovery of TMS's Affirmative Defense and Counterclaim
     of Patent Misuse, 9/21/2006
20   Stipulation and Order to Bifurcate Trial and Stay Discovery on TMS's Affirmative Defense and Counterclaim of Patent Misuse
21   Plaintiffs' Opening Brief in Support of Their Motion to Dismiss Defendant's Counterclaim for Alleged Patent Misuse and to Strike
     Defendant's Patent Misuse Defense, 2/21/2006
22   Defendant's Answering Brief in Opposition to Plaintiffs' Motion to Dismiss and Motion to Strike, 3/7/2006
23   Plaintiffs' Reply Brief in Support of Their Motion to Dismiss Defendant's Counterclaim for Alleged Patent Misuse and to Strike
     Defendant's Patent Misuse Defense, 3/17/2006
24   TV Guide Online's Responses to TMS's First Set of Requests for Admissions, 9/7/2006
25   TMS's Responses to Plaintiffs' First Set of Requests for Admission, 10/10/2006
26   TV Guide Online's Responses to TMS's Second Set of Requests for Admissions, 10/10/2006

Confidential

TV Guide Online, Inc. And TV Guide Online, LLC v. Tribune Media Services, Inc.
**Documents And Other Information Reviewed**

### Documents Not Bearing Bates-Stamping

| | |
|---|---|
| 27 | Plaintiffs' TV Guide Online, Inc. and TV Guide Online, LLC's Answering Memorandum in Opposition to TMS's Motion to Dismiss Plaintiff TV Guide Online, Inc., 12/5/2006 |
| 28 | Reply Brief In Support Of Defendant Tribune Media Services, Inc.'s Motion To Dismiss Plaintiff TV Guide Online, Inc., 12/19/2006 |
| 29 | Memorandum Of Law In Support Of Defendant Tribune Media Services, Inc.'s Motion To Dismiss Plaintiff TV Guide Online, Inc., 11/20/2006 |
| 30 | Plaintiffs' Initial Disclosures, 3/17/2006 |
| 31 | Defendant's Initial Disclosures Pursuant to Rule 26(a)(1), 3/17/2006 |
| 32 | Plaintiffs' TV Guide Online, Inc. and TV Guide Online, LLC's Motion to Dismiss Defendant's Counterclaim for Alleged Patent Misuse and to Strike Defendant's Patent Misuse Defense, 2/21/2006 |
| 33 | Declaration of Samir B. Armaly in Support of Plaintiffs' Motion to Dismiss Defendant's Counterclaim for Alleged Patent Misuse and to Strike Defendant's Patent Misuse Defense, 2/21/2006 |
| 34 | Declaration of Samir B. Armaly in Support of TV Guide's Opposition to TMS's Motion to Dismiss TV Guide Online, Inc., 12/5/2006 |
| 35 | Declaration of Melanie Sims Frank in Support of Plaintiffs' Motion to Bifurcate Trial and Stay Discovery of TMS's Affirmative Defense and Counterclaim of Patent Misuse, 9/21/2006 |
| 36 | U.S. Patent No. 5,988,078 |
| 37 | Deposition Of Kathleen Tolstrup And Exhibits, 8/9/2006 |
| 38 | Deposition Of Kevin McFall And Exhibits, 8/9/2006 |
| 39 | Deposition Of Kevin McFall, 10/2/2006 |
| 40 | Deposition Of Kevin McFall, 11/30/2006 |
| 41 | Deposition Of Akira Yamada And Exhibits, 8/29/2006 |
| 42 | Deposition Of Michael Silver And Exhibits, 9/8/2006 |
| 43 | Deposition Of Barbara Needleman And Exhibits, 9/29/2006 |
| 44 | Deposition Of Barry Berkov, 10/11/2006 |
| 45 | Deposition Of Richard Cusick And Exhibits, 10/19/2006 |
| 46 | Deposition Of Robin Mulvaney And Exhibits, 10/20/2006 |
| 47 | Deposition Of Jay Fehnel And Exhibits, 10/25/2006 |
| 48 | Deposition Of Samir Armaly And Exhibits, excluding Exhibit 67, 10/18/2006 |
| 49 | Deposition Of Samir Armaly, 1/31/2007 |
| 50 | Deposition Of Richard Cusick And Exhibits, 11/15/2006 |
| 51 | Deposition Of Michael McKee And Exhibits, 11/16/2006 |
| 52 | Expert Report of Dr. Christopher A. Vellturo, dated 12/15/2006 |
| 53 | Supplemental Expert Report of Dr. Christopher A. Vellturo, dated 12/29/2006 |
| 54 | Expert Report of J. Tipton Cole Concerning Infringement, 12/15/2006 |
| 55 | http://www.tvguide.com/listings/default.aspx |
| 56 | http://tvlistings5.zap2it.com/tvlistings/CustomizeAction.do?#customize |
| 57 | http://i.ncta.com/ncta_com/PDFs/NCTAAnnual%20Report4-06FINAL.pdf |
| 58 | http://www.ncta.com/Organizations.aspx?type=orgtyp2&contentId=2907 |
| 59 | http://sports.espn.go.com/espntv/espnGuide |
| 60 | http://www.tvguide.com. |
| 61 | http://tv.msn.com/tv/default.aspx?stTz=300&dstTz=240 |
| 62 | http://www.tv.com/listings/index.html?tag=nav-top;listings |
| 63 | http://www.cnetnetworks.com/aboutus/brands.html |
| 64 | http://www.accesshollywood.com/television/ |
| 65 | http://www.imdb.com/tvgrid/2006-11-07/2000/ |
| 66 | zap2it_tvg_audience_duplication.ppt |
| 67 | zap2it_tvg_audience_overlap_1106.xls |
| 68 | zap2it_tvg_unduplicated_aud_1106.xls |
| 69 | Discussions with Beth Fulkerson |
| 70 | Discussions with Greg Loose |
| 71 | Discussions with Kathy Tolstrup |
| 72 | Discussions with Mark Yamada |
| 73 | Discussions with Rebecca Baldwin |
| 74 | Discussions with Robin Mulvaney |

Confidential

# ATTACHMENT D
# UNDER SEAL

# ATTACHMENT E
# UNDER SEAL

# ATTACHMENT F
# UNDER SEAL

# ATTACHMENTS 100-505 UNDER SEAL

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of February, 2007, I electronically filed the foregoing document, **PUBLIC VERSION OF REBUTTAL EXPERT REPORT OF MICHAEL H. CHASE ON DAMAGES**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Frederick L. Cottrell, III
Jeffrey L. Moyer
Steven J. Fineman
Richards, Layton & Finger P.A.
One Rodney Square, 920 North King Street
Wilmington, Delaware 19801


Additionally, I hereby certify that on the 19th day of February 2007, the foregoing document was served by email on the above-referenced attorneys and on the following non-registered participants:

Robert C. Morgan
Christopher J. Harnett
Stuart W. Yothers
Fish & Neave IP Group
Ropes & Gray LLP
1251 Avenue of the Americas
New York, New York 10020
212.596.9000


                                            /s/ Richard K. Herrmann
                                    Richard K. Herrmann (I.D. No. 405)
                                    Mary B. Matterer (I.D. No. 2696)
                                    MORRIS JAMES HITCHENS & WILLIAMS
                                    500 Delaware Avenue, 15th Floor
                                    Wilmington, Delaware 19801
                                    302.888.6800
                                    rherrmann@morrisjames.com
                                    *Attorneys for Defendant*
                                    Tribune Media Services, Inc.