# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TV GUIDE ONLINE, INC. and
TV GUIDE ONLINE, LLC,

        Plaintiffs and Counterclaim Defendants,

                v.

TRIBUNE MEDIA SERVICES, INC.,

        Defendant and Counterclaim Plaintiff.

)
)
)
)
)
)
)
)
)
)
)

Case No.: 05-725-***

## TRIBUNE MEDIA SERVICES, INC.'S OPENING BRIEF
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF
## NONINFRINGEMENT OF U.S. PATENT NO. 5,988,078

*Of Counsel*

Mark A. Pals, P.C.
Linda S. DeBruin, P.C.
Michael A. Parks
Meredith Zinanni
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
312.861.2000

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES LLP
500 Delaware Avenue, 15th Floor
Wilmington, Delaware 19801
302.888.6800

*Counsel for Defendant Tribune
   Media Services, Inc.*

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   NATURE AND STAGE OF THE PROCEEDING...............................................2

III.  SUMMARY OF ARGUMENT ............................................................................2

    A.   TMS Does Not Directly Infringe Any Asserted Claim Of The '078 Patent............2

    B.   TMS Does Not Induce Infringement Of Any Asserted Claim Of The '078 Patent..................................................................................................3

    C.   TMS Does Not Contribute To The Infringement Of Any Asserted Claim Of The '078 Patent..................................................................................3

    D.   TMS And Its Accused Website Also Do Not Infringe Any Asserted Claim Of The '078 Patent Due To The Named Inventor's Prosecution History Statements. ........................................................................................4

IV.   STATEMENT OF UNDISPUTED FACTS ........................................................5

    A.   The '078 Patent. ..........................................................................................5

    B.   The Prosecution Of The '078 Patent And The Patent Application To Which It Claims Priority.........................................................................7

    C.   TMS And The Accused Product, Zap2it.com.............................................8

V.    ARGUMENT........................................................................................................10

    A.   The Legal Standards For Summary Judgment...........................................10

    B.   The Legal Standards For Determination Of Infringement.........................11

    C.   TMS Does Not Directly Infringe Any Asserted Claim Of The '078 Patent..........15

    D.   TMS Does Not Induce Infringement Of Any Asserted Claim Of The '078 Patent..................................................................................................19

    E.   TMS Does Not Contribute To The Infringement Of Any Asserted Claim Of The '078 Patent..............................................................................21

F.    TMS And Its Accused Website Do Not Infringe Any Asserted Claim Of The '078 Patent, Either Literally Or Under The Doctrine Of Equivalents, Because Users Of Zap2it.com Do Not Receive Television Programming Information As Required By Each Asserted Claim. .............................................. 23

VI.    CONCLUSION .................................................................................................................. 28

# TABLE OF AUTHORITIES

**Page**

## Cases

*ACCO Brands, Inc. v. ABA Locks Mfr. Co. Ltd.*
__F.3d__, 2007 WL 2609976, at *4 (Fed. Cir. Sept. 12, 2007) ...................................... 25

*Anderson v. Liberty Lobby Inc.,*
477 U.S. 242 (1986) ........................................................................................ 11

*Augustine Med., Inc. v. Gaymar Inds., Inc.,*
181 F.3d 1291 (Fed. Cir. 1999) ....................................................................... 13

*Barmag Barmer Maschinefabrik AG v. Maruta Machinery, Ltd.,*
731 F.2d 831 (Fed. Cir. 1984) ......................................................................... 11

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ........................................................................................ 11

*Cordis Corp. v. Medtronic Ave., Inc.,*
339 F.3d 1352 (Fed. Cir. 2003) .................................................................. 13, 26

*Cross Med. Prods., Inc., v. Medtronic Sofamor Danek, Inc.,*
424 F.3d 1293 (Fed. Cir. 2005) ................................................................. passim

*Cybor Corp. v. FAS Techs., Inc.,*
138 F.3d 1448 (Fed. Cir. 1998) .................................................................. 13, 27

*DeMarini Sports, Inc. v. Worth, Inc.,*
239 F.3d 1315 (Fed. Cir. 2001) ....................................................................... 12

*Desper Prods., Inc v. QSound Labs, Inc.,*
157 F.3d 1325 (Fed. Cir. 1998) ....................................................................... 27

*DSU Med. Corp. v. JMS Co.,*
471 F.3d 1293 (Fed. Cir. 2006) ........................................................... 14, 19, 21

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
535 U.S. 722 (2002) .................................................................................... 13, 27

*First Nat'l Bank of Ariz. v. Cities Serv. Co.,*
391 U.S. 253 (1968) ........................................................................................ 11

*Franks Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.,*
389 F.3d 1370, 1378 (Fed. Cir. 2004) ............................................................. 12

*Golden Blount, Inc., v. Robert H. Peterson Co.*,
    365 F.3d 1054 (Fed. Cir. 2004)...................................................................... 15, 21

*Hilton Davis Chem. Co. v. Warner-Jenkinson*, Co.,
    62 F.3d 1512 (Fed. Cir. 1995)........................................................................ 12

*Hodosh v. Block Drug Co.*,
    786 F.2d 1136 (Fed. Cir. 1986)...................................................................... 11

*Hoffman-LaRoche, Inc., v. Premega Corp.*,
    33 U.S.P.Q.2d 1641 (N.D. Cal. 1994) ........................................................ 15, 21

*Linear Tech. Corp. v. Impala Linear Corp.*,
    379 F.3d 1311 (Fed. Cir. 2004)...................................................................... 11, 14

*Litton Sys., Inc. v. Honeywell, Inc.*,
    140 F.3d 1449 (Fed. Cir. 1998)...................................................................... 13, 27

*Manville Sales Corp. v. Paramount Sys., Inc.*,
    917 F.2d 544 (Fed. Cir. 1990)........................................................................ 14

*Paragon Podiatry Lab., Inc. v. KLM Lab., Inc.*,
    984 F.2d 1182 (Fed. Cir. 1993)...................................................................... 11

*RF Del., Inc. v. Pac. Keystone Tech., Inc.*,
    326 F.3d 1255 (Fed. Cir. 2003)...................................................................... 12, 14

*Seachange Int'l, Inc. v. C-COR Inc.*,
    413 F.3d 1361 (Fed. Cir. 2005).................................................................. 11, 12, 13

*Sys., Inc. v. Honeywell, Inc.*,
    140 F.3d 1449 (Fed. Cir. 1998)...................................................................... 13

*Wahpeton Canvas Co., Inc., v. Frontier, Inc.*,
    870 F.2d 1546 (Fed. Cir. 1989)...................................................................... 18

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem Co.*,
    520 U.S. 17 (1997)......................................................................................... 12

*Warner-Lambert Co. v. Apotex Corp.*,
    316 F.3d 1348 (Fed. Cir. 2003)...................................................................... 21

*Water Technologies Corp. v. Calco, Ltd.*,
    850 F.2d 600 (Fed. Cir. 1988)........................................................................ 19

**Statutes**

35 U.S.C. § 271 ................................................................................................... 14

**Rules**

Fed. R. Civ. P. 56 ..................................................................................................... 10, 11

## I.    INTRODUCTION

TMS has been providing online television listings websites for over 10 years now, starting well before the '078 patent issued. Even after the '078 patent issued in 1999, TV Guide never mentioned the patent to TMS (and TMS did not know about it) until April 2005. After all these years, TV Guide now claims that TMS directly infringes, induces infringement of, and contributes to the infringement of claims 1-8 and 10 of the '078 patent.

TV Guide's own admissions and the other undisputed facts of record, however, confirm there is no infringement. For example:

- TV Guide admits TMS does not make, use, sell or offer for sale the components necessary to infringe the '078 patent;

- TV Guide has proffered no evidence to demonstrate that TMS induces its Zap2it.com users to make or use those components in the particular configuration necessary to infringe the asserted claims; and

- TV Guide admits over 25% of Zap2it.com's users access the website from a location where they do not watch television.

Moreover, to obtain the '078 patent, the named inventor repeatedly emphasized to the Patent Office that a user practicing the '078 patent will be able to save television listings on their home computer and manipulate the television listings information saved in their computer. However, this is not possible on the Zap2it.com website. And because the named inventor surrendered any broader coverage of the claim limitation during prosecution, TV Guide is estopped from arguing that Zap2it.com does something "equivalent."

Because TV Guide cannot meet its burden of proof on its claims of infringement for any asserted '078 patent claim, TMS should be granted judgment of noninfringement as a matter of law.

## II.    NATURE AND STAGE OF THE PROCEEDING

TV Guide filed suit against TMS on October 12, 2005, accusing TMS of infringing the '078 patent. D.I. 1. TMS filed its Answer, Affirmative Defenses and Counterclaims on February 1, 2006, counterclaiming for patent misuse and declaratory judgment of noninfringement and invalidity. D.I. 6. TMS's counterclaim for patent misuse was severed and stayed by stipulation of the parties on October 10, 2006. D.I. 131. Fact discovery closed February 28, 2007, D.I. 187, and expert discovery closed August 17, 2007, D.I. 191. Pending since November 20, 2006 is TMS's motion to dismiss Plaintiff TV Guide Online, Inc. for lack of standing. D.I. 145.

## III.    SUMMARY OF ARGUMENT

### A.    TMS Does Not Directly Infringe Any Asserted Claim Of The '078 Patent.

1.    The asserted claims of the '078 patent consist of method and apparatus claims. A method claim can be directly infringed only by someone practicing every step of the patented method. An apparatus claim cannot be infringed unless the accused device meets all of the claim's structural limitations.

2.    As admitted by TV Guide's own technical expert, TMS does not perform all of the steps of the asserted method claims of the '078 patent or provide a device meeting all of the structural limitations of the asserted apparatus claims.

3.    Because TV Guide cannot meet its burden of proof that TMS performs each step of the asserted method claims of the '078 patent, and that TMS provides an apparatus that meets all of the structural limitations of the asserted apparatus claims of the '078 patent, TMS cannot directly infringe the asserted claims of the '078 patent as a matter of law. Thus, summary judgment of no direct infringement should be granted in TMS's favor.

2

**B.    TMS Does Not Induce Infringement Of Any Asserted Claim Of The '078 Patent.**

4.    In order to succeed on a claim for induced infringement, the patentee must prove that after the accused infringer knew of the patent, it "actively and knowingly aided and abetted" direct infringement by another.  This requires proof of more than simply the accused infringer's knowledge of or intent to cause the acts that are now alleged to be infringing.  The accused infringer must *specifically intend that another directly infringe* the patent before inducement can exist.

5.    The undisputed facts show that TMS does not intend, much less specifically intend, that anyone infringe the asserted claims of the '078 patent.  As the named inventor of the '078 patent emphasized during prosecution of the patent, each asserted claim of the '078 patent specifically requires that the user access a third party source *using a computer situated at the user's television viewing location*.  TMS does not intend for users to access Zap2it.com from a computer situated at their television viewing location, and for that reason alone, cannot induce infringement of any asserted claim.

6.    Because TV Guide cannot meet its burden of proof that TMS induces infringement of any asserted claim of the '078 patent, TMS should be granted summary judgment as a matter of law that it does not induce infringement of the '078 patent.

**C.    TMS Does Not Contribute To The Infringement Of Any Asserted Claim Of The '078 Patent.**

7.    In order to succeed on a claim for contributory infringement, the patentee must prove that:  (i) the accused infringer sells or offers for sale a component of a patented machine or item for use in practicing a patented process; (ii) the method or system of which the component or item is a part was both patented and infringing; and (iii) the component or item does not have any substantial non-infringing uses.

3

8.    The undisputed facts show that the accused TMS website, Zap2it.com, is used by a substantial number of users away from any location that could possibly be deemed a television viewing location. As the named inventor emphasized, each asserted claim of the '078 patent requires that the user access a third party source using a computer situated at the user's television viewing location. TV Guide admits that at least 25% of Zap2it.com's users access Zap2it.com from work, which is not their television viewing location.

9.    Because no reasonable jury could find that 25% is not substantial, TV Guide cannot meet its burden of proof that TMS contributes to the infringement of the '078 patent.

**D.    TMS And Its Accused Website Also Do Not Infringe Any Asserted Claim Of The '078 Patent Due To The Named Inventor's Prosecution History Statements.**

10.    During prosecution of the patent application to which the '078 patent claims priority, the named inventor of the '078 patent distinguished his invention from the prior art. In the prior art, the television programming information was kept in a remote database and downloaded on an as-needed basis. The inventor argued that in his invention, "an entire block of schedule information for a given period of time is transferred to the personal computer in accordance with the present invention, thereby enabling an operator to perform database-type manipulations directly on this information." Because of the inventor's disclaimer, the claim limitation that a user "receive" television programming information has a particular meaning within the context of the patent claims — namely, having data transferred to a computer such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data.

11.    TMS's accused website, Zap2it.com, allows a user to access, and view in their internet browser, television programming information on an as-needed basis. Zap2it.com does not, however, transfer the data to the user's computer such that the user can perform database-

4

type manipulations on the data after disconnecting from the Zap2it.com website. Accordingly, undisputed facts confirm that Zap2it.com does not literally meet the limitation that the user "receive" television programming information, as that limitation is properly construed in light of the prosecution history.

12.    The named inventor's arguments disclaiming a system such as Zap2it.com that allows users to view television schedule information from a remote database on an as-needed basis bar TV Guide from asserting that Zap2it.com somehow infringes the asserted claims of the '078 patent under the doctrine of equivalents. Indeed, if an accused product does not satisfy the "receive" limitation literally, the product cannot infringe as a matter of law. That is the case with Zap2it.com.

13.    For this additional reason, summary judgment of noninfringement of all asserted claims should be granted in TMS's favor.

## IV.    STATEMENT OF UNDISPUTED FACTS

The following facts are undisputed:

### A.    The '078 Patent.

1.    The '078 patent is entitled "Method and Apparatus for Receiving Customized Television Programming Information By Transmitting Geographic Location to a Service Provider Through a Wide-Area Network." It issued on November 23, 1999 from an application filed on October 9, 1997. '078 patent at 1 (A1). It claims priority to an abandoned patent application with a filing date of March 9, 1992. 2/12/99 Office Action, at 2 (A113).

2.    The '078 patent relates generally to a method and system for receiving television programming information specific to a geographic location. '078 patent at 1 (A1).

3.    The '078 patent specification describes the prior art as suffering "from the disadvantage" of "not contain[ing] a schedule memory and a database program for selecting

5

particular entries on the memory for the display." '078 patent at 1:47-51 (A5). In the SUMMARY OF THE INVENTION, the specification states that "[t]he present invention allows the implementation of the electronic schedule memory … through use of an associated personal computer." '078 patent at 1:54-57 (A5).

4.    TV Guide accuses TMS of infringing claims 1-8 and 10 of the '078 patent through the operation of its Zap2it.com website. TV Guide Supp. Interr. Resp. at 4-10 (A539-A545).

5.    Claims 1 and 6 are independent method claims, from which claims 2-5 and 7 depend. Claim 8 is an independent apparatus claim, from which claim 10 depends. The full text of each claim can be found at A7-8.

6.    Each asserted claim includes the limitation "receiving … information specific to the type of programming available to the particular viewing location" or a variant thereof. '078 patent at claims 1, 6 and 8 (A7-A8).

7.    Each asserted method claim includes the limitation "establishing a connection … through the modem." '078 patent at claims 1 and 6 (A7-A8).

8.    Each asserted method claim includes the limitation "providing a computerized unit at the particular viewing location" or a variant thereof. '078 patent at claims 1 and 6 (A7-A8).

9.    Claim 6 of the '078 patent requires the step of "viewing the information on the display device." The display device is located at the television viewing location with the claimed controller. '078 patent at claim 6 (A8).

10.    Claim 8 of the '078 patent, the only independent apparatus claim, claims a system "comprising an electronic terminal unit including an operator input, a bidirectional modem, and a

6

controller in communication with the operator input and the modem, the controller being programmed to perform the following functions . . ." '078 patent at claim 8 (A8).

11.    Each asserted claim requires that the user access a service provider using a computer located at the user's viewing location. '078 patent at claims 1 and 6 (A7-A8); 5/18/99 Resp. to Office Action, at 1 (A117); 11/30/98 Amend. at 3 (A108).

### B.    The Prosecution Of The '078 Patent And The Patent Application To Which It Claims Priority.

12.    During prosecution of the 1992 Application, in an office action dated August 13, 1993, the examiner rejected all pending claims as either anticipated or obvious in view of U.S. Patent 5,086,385 to Launey et al. ("Launey"). 8/13/93 Office Action, at 2-6 (A30-A34).

13.    To overcome this rejection, the named inventor distinguished his invention from Launey by arguing the '078 patent claims do not cover a system that provides television schedule information on an as-needed basis:

> It can only be inferred from the Launey patent that such schedule information might be kept in remote database 44 and downloaded through modem 42 to central processor 10 on an as-needed basis, or is simply entered via touch-screens 16 from a printed TV guide. … In contrast, the present invention maintains a database including information relating to programming available to the VCR during a future period, including program identification, start time and so forth.    In all cases, however, an entire block of schedule information for a given period of time is transferred to the personal computer in accordance with the present invention, thereby enabling an operator to perform database-type manipulations directly on this information, including its use to immediately schedule a particular video program for future recording.

11/16/93 Amend., at 7-8 (A42-A43); *see also id..* at 6 (A41) ("Launey does not suggest <u>where</u> schedule information concerning future programming available to the VCR is to be stored.")

14.    In prosecuting the '078 patent, the named inventor repeatedly stated that *all* of the claims of the '078 patent require that the computerized unit be situated at the user's television

viewing location. *See* 5/18/99 Resp. to Office Action, at 1 (A117) ("*[a]ll* of Applicant's independent claims include the limitation, in one form or another, of <u>transmitting</u>, *from a computerized unit situated at a viewing location*, information regarding geographical location.") (underlining in original, other emphases added); 11/30/98 Amend., at 2 (A107) ("*all* of Applicant's independent claims include the step *or apparatus* associated with transmitting, *from a viewing location*, information to a service provider . . .") (emphases added).

### C.     TMS And The Accused Product, Zap2it.com.

15.     A "necessary precondition" for any use of Zap2it.com is that a user connect to the website using his or her own computer. Cole Dep. at 60:17-61:5 (A599) ("Q: If the user does not enter zap2it.com website address, isn't it true that there will not be a connection established to a service provider through the modem? A: I believe it is a necessary precondition. I'm sorry, I think that is the common precondition, yes. Q: Isn't it true a user must affirmatively access zap2it.com before any connection is established through the user's modem? A: Yes, I believe he does that before the connection is established."); *see also id.* at 59:15-21 (A599) ("Q: Before TMS can establish any connection with the user, doesn't the user have to do something first? A: Yes, I believe so. The user enters the website address www.Zap2it.com into the address bar of his browser and hits return or some such.").

16.     A user of Zap2it.com, not TMS, establishes a connection between the user's computer and a wide area network, such as the Internet. Cole Dep. at 53:25-54:6 (A597-A597) ("Q: Isn't it correct that Tribune Media Services does not establish a connection between a user's computer and a wide area network? ... A: It think that is essentially correct, yes."); *see also id.* at 56:2-8, 60:17-61:5 (A598, A599); 12/15/06 Cole Rpt. at Ex. N pg. 2, 5 (A582, A585) (stating that it is the user, not TMS, who establishes a connection to the Internet through the modem).

17.    TMS does not provide Zap2it.com users with computers (also called computerized units or electronic terminal units) to access Zap2it.com. Cole Dep. at 57:23-58:4 (A598) ("Q: Leaving aside the TMS employees, do you have any evidence whatsoever to understanding [sic] that TMS has ever provided an electronic terminal unit for a user to access zap2it.com? A: None that I'm aware of."); *id.* at 51:13-51:17 (A597) ("Q: It's correct that TMS as an entity does not provide a computerized unit at a user's particular viewing location; correct? A: For general users that's correct, yes."); *see also id.* at 55:4-12 (A598); 12/15/06 Cole Rpt. at Ex. N pg. 1, 4 (A581, A584) (stating that "users, in order to use its zap2it TV listings service, provide a computer at their particular viewing location"); *id.* at Ex. N pg. 7 (A587) (stating that users of Zap2it.com access the service using an electronic terminal unit, but not that TMS provides the electronic terminal unit).

18.    At most, Zap2it.com users may view television programming information on a display device. 12/15/06 Cole Rpt. at Ex. N pg. 6 (A586) ("displays the information on the display device interfaced to the user's computer for the user to view").

19.    The information sent from Zap2it.com to a user's computer is an HTML file. 12/15/06 Cole Rpt. at ¶¶ 68, 83, 118-120 (A573, A574, A576); Tjaden Decl. at ¶ 6 (A654).

20.    When a user wants to see new or different television programming information from Zap2it.com displayed in the web browser on the user's computer, such as schedule information for a different time period or day, another request must be sent to the Zap2it.com server and a new HTML file generated. Tjaden Decl. at ¶ 8 (A655).

21.    TV Guide's expert, Mr. Cole, had to copy the information presented by the Zap2it.com HTML file into a database program such as Microsoft Excel or Microsoft Access in

order to manipulate the information.  2/28/07 Cole Rpt. at ¶ 28 (A568); Cole Dep. at 241:7-242:23 (A612).

22.    TV Guide admits that only between 61% and 74% of Zap2it.com's users access the site from home.  The remaining 26% to 39% of Zap2it.com users access the site from their place of employment or other location.  *Home v. Work Usage Statistics*, TMS0001583-1621 (A412-A450); Zap2it.com user profile, (A337); Magid Study, at 44 (A382); 12/15/06 Cole Rpt. at ¶ 129 (A578).

23.    TMS is indifferent as to whether a Zap2it.com user accesses the site from home or from work.  Tolstrup Dep. at 53:23-54:3 (A640-641) ("Q: Does it make any difference to TMS whether the Zap2it users use the site, access the site from home or at work?  A: I would believe TMS would be indifferent as to where a user sees access to Zap2it.com.").

24.    TV Guide's expert, Mr. Cole, admits 25% is a substantial number.  Cole Dep. at 123:15-24 (A604)  ("Q:  Let's say that gasoline prices increase by 25 percent, would you consider that to be a substantial increase in gasoline prices?  A: I think so, yes.  Q: Let's say that TV Guide were to say, Mr. Cole, we made a decision we are reducing your compensation in this case by 25 percent per hour, will you consider that to be a substantial reduction?  A: Yes, I believe I would.").

## V.    ARGUMENT

### A.    The Legal Standards For Summary Judgment.

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material only if it

"might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party satisfies its burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party in turn "may not rest upon the mere allegations or denials of [his] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e); *see also Anderson*, 477 U.S. at 248 ("[A]ll that is required is that sufficient evidence supporting the claimed factual dispute be shown...") (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). "Summary judgment is as appropriate in a patent case as in any other." *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984); *see also Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1190 (Fed. Cir. 1993); *Hodosh v. Block Drug Co.*, 786 F.2d 1136, 1141 (Fed. Cir. 1986).

### B.    The Legal Standards For Determination Of Infringement.

"A determination of infringement is a two-step process. The court must first correctly construe the asserted claims, and then compare the properly construed claims to the allegedly infringing devices, systems, or methods." *Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1377 (Fed. Cir. 2005). Because the patentee bears the burden of proof on infringement at trial, "in moving for summary judgment [the alleged infringer] need only establish a deficiency concerning an element of [the patentee's] infringement claim." *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1325-26 (Fed. Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The sections below explain the differences between literal infringement and infringement under the doctrine of equivalents, and direct versus indirect infringement.

11

1.     Literal Infringement

"Literal infringement requires that each and every limitation set forth in a claim appear in an accused product." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005) (citing *Franks Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004)).  There can be no literal infringement if any claim limitation is not literally present in the accused device, exactly as written in the claim. *See, e.g., DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001) ("Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, i.e., when 'the properly construed claim reads on the accused device exactly.'").

2.     Infringement Under The Doctrine Of Equivalents

Where there is no literal infringement, the doctrine of equivalents may come into play under limited circumstances.  Under the doctrine of equivalents, one cannot be liable for direct infringement unless the differences between the accused product and the asserted patent claims are insubstantial. *See Hilton Davis Chem. Co. v. Warner-Jenkinson*, Co., 62 F.3d 1512, 1521-22 (Fed. Cir. 1995) ("[A] finding of infringement under the doctrine of equivalents requires proof of insubstantial differences between the claimed and accused products or processes."); *see also Warner-Jenkinson Co., Inc. v. Hilton Davis Chem Co.*, 520 U.S. 17, 39-40 (1997) (reversing *Hilton Davis* based on its analysis of prosecution history estoppel, but leaving the choice of whether to use the "triple identity" test or "insubstantiality test" in analyzing equivalence to the "sound judgment [of the Federal Circuit] in this area of its special expertise.").

The doctrine of equivalents is limited by two legal doctrines, both of which are questions of law: the "all elements rule" and prosecution history estoppel. *Seachange*, 413 F.3d at 1378. The "all elements rule" states that if any limitation is missing, there can be no infringement. *RF Del., Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d at 1266 (there can be no infringement if "even

one limitation of a claim or its equivalent is not present in the accused device or method."); *see also Seachange*, 413 F.3d at 1378 ("The 'all elements rule' provides that the doctrine of equivalents does not apply if applying the doctrine would vitiate an entire claim limitation."). On the other hand, prosecution history estoppel "requires that the claims of a patent be interpreted in light of the proceedings in the PTO during the application process ... by reference to those [claims] that have been cancelled or rejected." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002). In other words, "prosecution history estoppel prevents a patentee from recapturing subject matter surrendered during prosecution of the patent." *Augustine Med., Inc. v. Gaymar Inds., Inc.*, 181 F.3d 1291, 1298 (Fed. Cir. 1999).

Prosecution history estoppel "may arise from matter surrendered as a result of amendments to overcome patentability rejections or as a result of argument to secure allowance of a claim." *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc); *see also Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1458 (Fed. Cir. 1998) ("[E]ven ***arguments made during prosecution without amendments to claim language*** . . . may estop an applicant from recapturing that surrendered matter under the doctrine of equivalents.") (emphasis added). Argument-based estoppel applies as a limit on the doctrine of equivalents when "the prosecution history...evince[s] a clear and unmistakable surrender of subject matter." *Cordis Corp. v. Medtronic Ave., Inc.*, 339 F.3d 1352, 1363 (Fed. Cir. 2003) (citing *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449 (Fed. Cir. 1998)). When the prosecution history shows a "clear and unmistakable" surrender of subject matter, estoppel applies because it is a basic principle of the patent system that the public has a right to rely on the prosecution history and claim language in order to pursue new ideas beyond the inventor's explicitly protected rights. *See Litton Sys.*, 140 F.3d at 1458 ("[Estoppel by clear and unmistakable surrender] presupposes that the applicant

13

has made the surrender unmistakable enough that the public may reasonably rely on it."); *Festo Corp.*, 535 U.S. at 731 ("[T]he patent laws require inventors to describe their work in 'full, clear, concise, and exact terms,' . . . as part of the delicate balance the law attempts to maintain between inventors . . . and the public, which should be encouraged to pursue innovations, creations, and new ideas beyond the inventor's exclusive rights.").

### 3.     Direct Infringement

Infringement can be either direct or indirect.  A direct infringer is one who "without authority makes, uses, offers to sell or sells any patented invention." 35 U.S.C. § 271(a).  "A method claim is directly infringed only by one practicing the patented method," *RF Del.*, 326 F.3d at 1267.  To directly "infringe an apparatus claim, the device must meet all of the structural limitations." *Cross Med. Prods.*, 424 F.3d at 1311-12.  If the patentee fails to prove direct infringement, there automatically is no indirect infringement. *Linear Tech.*, 379 F.3d at 1326 ("There can be no inducement or contributory infringement without an underlying act of direct infringement.").

### 4.     Indirect Infringement

An indirect infringer "actively induces infringement of a patent" or contributes to the infringement of a patent. *See* 35 U.S.C. §§ 271(b) and (c). The inducement theory requires that the patentee prove "that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006).  In other words, as opposed to inducing particular *acts* that are alleged to infringe, to be liable under the inducement theory, one must knowingly induce the infringement itself. *DSU Med.*, 471 F.3d at 1306 (citing *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990)).

14

"In order to succeed on a claim of contributory infringement, … plaintiff must show that defendant 'knew that the combination for which its components were especially made was both patented and infringing' and that defendant's components have 'no substantial non-infringing uses.'" *Cross Med. Prods.*, 424 F3d at 1312 (quoting *Golden Blount, Inc., v. Robert H. Peterson Co.,* 365 F.3d 1054, 1061 (Fed. Cir. 2004). Thus, if the accused product is capable of a substantial non-infringing use, the accused infringer cannot be liable for contributory judgment as a matter of law. *See id.* "Whether a use is 'substantial' or not depends on how likely and often the use will occur." *Hoffman-LaRoche, Inc., v. Premega Corp.,* 33 U.S.P.Q.2d 1641, 1648 (N.D. Cal. 1994). A non-infringing use can be substantial if, for example, it is efficient and economical. *Id.*

**C.      TMS Does Not Directly Infringe Any Asserted Claim Of The '078 Patent.**

Regardless of how TV Guide tries to interpret the '078 patent claims, TMS cannot directly infringe any claim of the '078 patent. A method claim is only directly infringed by the person practicing *all* steps of the patented method. *RF Del.*, 326 F.3d at 1267. Also, "[t]o infringe an apparatus claim, the device must meet all of the structural limitations." *Cross Med. Prods.*, 424 F.3d at 1311-12. As TV Guide's own expert admits, a "necessary precondition" for any use of Zap2it.com is that a *user* connect to the website using his or her own computer:

> Q: If the user does not enter [the] zap2it.com website address, isn't it true that there will not be a connection established to a service provider through the modem?
>
> A: I believe it is a necessary preconditions. I'm sorry, I think that is the common precondition, yes.
>
> Q: Isn't it true a user must affirmatively access zap2it.com before any connection is established through the user's modem?
>
> A: Yes, I believe he does that before the connection is established.

15

Cole Dep. at 60:17-61:5 (A599); *see also id.* at 59:15-21 (A599) ("Q: Before TMS can establish any connection with the user, doesn't the user have to do something first?  A: Yes, I believe so. The user enters the website address www.zap2it.com into the address bar of his browser and hits return or some such.").  Because this step is required for each claim, and because TMS does not perform this step, TMS cannot directly infringe any claim as a matter of law.

Indeed, TV Guide's expert's own claim charts show that TMS does not practice all of the steps of the asserted method claims, and that TMS's accused Zap2it.com website does not meet all of the structural limitations of the asserted system claims.  12/15/06 Cole Rpt. at Ex. N (A581-A588).  Regardless of TV Guide's theory of infringement, the only one who could even theoretically practice the claimed methods or provide the claimed apparatus is the *user* of Zap2it.com, not TMS.  Thus TMS does not, as a matter of law, directly infringe any method or apparatus claim of the '078 patent.

### 1.    TMS Does Not Perform Each Step Of Asserted Method Claims 1-7 Of The '078 Patent.

The method claims of the '078 patent all include the following limitation: "establishing a connection to a wide-area network through the modem."  *See* '078 patent at claims 1, 6 (A7-A8). There is no issue of disputed fact that TMS does not perform this step of the asserted method claims — TV Guide's own expert admits that TMS does not establish a connection to a wide-area network:

> Q: Isn't it correct that Tribune Media Services does not establish a connection between a user's computer and a wide area network?
>
> [objection omitted]
>
> A: It think that is essentially correct, yes.

Cole Dep. at 53:25-54:6 (A597-598); *see also id.* at 56:2-8, 60:17-61:5 (A598-A599); 12/15/06 Cole Rpt. at Ex. N pg. 2, 5 (A582, A585) (stating that it is the user, not TMS, who establishes a

connection to the Internet through the modem). Because TMS does not establish a connection to a wide-area network through a modem, as required by all of the asserted method claims of the '078 patent, it cannot as a matter of law directly infringe method claims 1-7 of the '078 patent.

But this is not the only limitation of the asserted '078 patent method claims that TV Guide concedes TMS does not perform. The asserted method claims also include the limitations: "providing a computerized unit at the particular viewing location" (claim 1) and "providing, at a television viewing location, a controller" (claim 6). '078 patent (A7-A8). Again, the parties agree that it is the *user* of Zap2it.com, not TMS, that provides a computerized unit or controller at the viewing location.

> Q: It's correct that TMS as an entity does not provide a computerized unit at a user's particular viewing location; correct?
>
> A: For general users that's correct, yes.

Cole Dep. at 51:13-51:17 (A597); *see also id.* at 55:4-12 (A598); 12/15/06 Cole Rpt. at Ex. N pg. 1, 4 (A581, A584) (stating that "*users*, in order to use its zap2it TV listings service, provide a computer at their particular viewing location") (emphasis added). Therefore, TMS cannot be a direct infringer of the asserted method claims of the '078 patent.

Additionally, claim 6 of the '078 patent requires the step of "viewing the information on the display device." '078 patent (A8). This display device is located at the television viewing location with the controller. *Id.* TMS, as operator of the Zap2it.com website, is not at the user's television viewing location, nor does TMS view the television programming information displayed by the user. Again, only the *user* of Zap2it.com could even theoretically view information on the display device located at the user's television viewing location. TMS cannot perform this claimed step, as TV Guide's expert concedes. 12/15/06 Cole Rpt. at Ex. N pg. 6

17

(A586) ("displays the information on the display device interfaced to the user's computer *for the user to view*") (emphasis added).

Because the undisputed facts establish that TMS does not perform at least two of the claimed steps of the asserted method claims of the '078 patent, TMS does not directly infringe those claims as a matter of law. *See RF Del.*, 326 F.3d at 1267 ("A method claim is directly infringed only by one practicing the patented method."). TMS respectfully requests summary judgment of no direct infringement of method claims 1-7 of the '078 patent.

> 2. TMS Does Not Provide A Device That Meets All Of The Structural Limitations Of Asserted System Claims 8 and 10 Of The '078 Patent.

Claim 8 of the '078 patent, the only independent apparatus claim, claims a system comprising:

> an electronic terminal unit including an operator input, a bidirectional modem, and a controller in communication with the operator input and the modem, the controller being programmed to perform the following functions

'078 patent (A8). Accordingly, TMS cannot directly infringe claim 8 unless TMS provides the claimed "electronic terminal unit." There is no evidence that TMS provides Zap2it.com users with an "electronic terminal unit" to access Zap2it.com, as TV Guide's expert concedes:

> Q: Leaving aside the TMS employees, do you have any evidence whatsoever to understanding [sic] that TMS has ever provided an electronic terminal unit for a user to access zap2it.com?

> A: None that I'm aware of.

Cole Dep. at 57:23-58:4 (A598-A599); *see also* 12/15/06 Cole Rpt. at Ex. N pg. 7 (A587) (stating that users of Zap2it.com access the service using an electronic terminal unit, but not that TMS provides the electronic terminal unit). Because TMS does not make or sell the claimed "electronic terminal unit" structure of this apparatus claim, TMS does not infringe this claim as a matter of law. *See Cross Med. Prods.*, 424 F.3d at 1311-12 ("To infringe an apparatus claim, the

device must meet all of the structural limitations."). Because TMS does not infringe independent claim 8, it cannot as a matter of law infringe dependent claim 10, which depends from claim 8. *Wahpeton Canvas Co., Inc., v. Frontier, Inc.,* 870 F.2d 1546, 1552 n. 9 (Fed. Cir. 1989) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim"). TMS respectfully requests summary judgment of no direct infringement of apparatus claims 8 and 10 of the '078 patent.

**D.    TMS Does Not Induce Infringement Of Any Asserted Claim Of The '078 Patent.**

To establish liability for inducing infringement, the patentee must prove that the accused infringer "actively and *knowingly* aid[ed] and abett[ed] another's direct infringement." *Water Tech. Corp. v. Calco, Ltd.,* 850 F.2d 660, 668 (Fed. Cir. 1988). The patentee must prove that the accused infringer had *specific intent* and took action to induce infringement; the accused infringer's mere knowledge of possible direct infringement is insufficient for a finding of inducement. *See DSU Med.,* 471 F.3d at 1305 ("[S]pecific intent and action to induce infringement must be proven."). "[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *Id.* at 1306. Under any construction given the asserted claims of the '078 patent, TV Guide cannot, as a matter of law, meet this heavy burden.

TV Guide cannot point to any evidence to support the conclusion that TMS had or has a specific intent for users of Zap2it.com to infringe the '078 patent. Each asserted claim requires that the user access a service provider using a computer located *at the user's television viewing*

19

*location,* i.e., their home.[1]   '078 patent (A7-A8).  There is no evidence in the record that TMS requires, or even prefers, that a user access Zap2it.com from a computer located at the user's television viewing location.  The unrebutted testimony of TMS's 30(b)(6) witness is that TMS does *not* intend to have Zap2it.com users access Zap2it.com from their alleged television viewing location rather than a non-viewing location such as their work location:

> Q: Does it make any difference to TMS whether the Zap2it users use the site, access the site from home or at work?
>
> A: I would believe TMS would be indifferent as to where a user sees access to Zap2it.com.

Tolstrup Dep. at 53:23-54:3 (A640).   TV Guide has no evidence, and cannot present any evidence, to the contrary to show that TMS has a specific intent that users of Zap2it.com access the website from their television viewing (allegedly) location, rather than a non-viewing (noninfringing) location.

The only thing TV Guide says to support its "intent" argument is that TMS *knows* Zap2it.com is accessible from users' homes.  *See, e.g.*, Cole Dep. at 82:8-25 (A603) ("Q: What is your basis for saying TMS intends that users access zap2it.com from the users' homes?  A: They intend to access — well, TMS offers a website which is accessible through normal internet connections and many, many, many normal internet connections are from people's homes. Q: My question is a little bit different.  My question, what evidence do you have as you are

---

[1]   This is explicitly a requirement of independent claims 1 and 6 of the '078 patent.  '078 patent, claims 1, 6 (A7-A8).  It is also a requirement of the independent apparatus claim 8, as repeatedly stated by the named inventor during prosecution of the patent.  *See* 5/18/99 Resp. to Office Action, at 1 (A117) ("*[a]ll* of Applicant's independent claims include the limitation, in one form or another, of transmitting, *from a computerized unit situated at a viewing location,* information regarding geographical location.") (underlining in original, other emphases added); 11/30/98 Amend., at 2 (A107) ("*all* of Applicant's independent claims include the step *or apparatus* associated with transmitting, *from a viewing location,* information to a service provider") (emphases added); *see also* TMS's *Markman* Brief at IV.A.

sitting here today that TMS specifically intends for users to access zap2it.com from the users' homes? A: They have to be aware that that is where it is happening. I believe that is part of the intent of the offering of the service. I am not sure there is anything deep or mysterious about that."); 12/15/06 Cole Rpt. at ¶ 129 (A578) ("TMS necessarily intends and knows that users access the Zap2it website from their homes and offices where their televisions are located, because it affirmatively relies on and uses the fact that at least 74% of users do so, in order to obtain advertising for the website."). Mere knowledge of the acts accused of infringement, however, has been specifically rejected by the Federal Circuit as a basis for a finding of induced infringement. *See DSU Med.*, 471 F.3d at 1305 ("[K]nowledge of the acts alleged to constitute infringement is not enough…The mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven.").

Thus TV Guide cannot, as a matter of law, meet its heavy burden to prove that TMS has specific intent to induce infringement of the asserted claims of the '078 patent, and TMS therefore should be granted summary judgment of no induced infringement.

### E.    TMS Does Not Contribute To The Infringement Of Any Asserted Claim Of The '078 Patent.

To meet its burden of proof that TMS contributes to the infringement of the '078 patent, TV Guide must prove that TMS's accused Zap2it.com website has no substantial non-infringing uses. *See Cross Med. Prods.*, 424 F.3d at 1312; *Golden Blount*, 365 F.3d at 1061. A non-infringing use that is more than occasional or aberrant, and, for example, that is efficient and economical, should be considered a substantial non-infringing use. *Hoffman-LaRoche*, 33 U.S.P.Q.2d at 1648. Under the undisputed facts of this case, no reasonable jury could find that Zap2it.com is not capable of substantial non-infringing use, and thus TV Guide cannot prove that TMS contributes to the infringement of the '078 patent.

21

As explained above and in TMS's *Markman* Brief, all of the asserted claims of the '078 patent require that a user access the service provider using a computer located at the user's television viewing location. '078 patent at claims 1, 6 and 8 (A7-A8). Thus a user accessing Zap2it.com from a location that is *not* their television viewing location is *not* infringing the patent — that is a non-infringing use.

The use of Zap2it.com from a location that is not the user's television viewing location is substantial. The parties do not dispute the fact that a percentage of Zap2it.com users access the website from somewhere other than their alleged television viewing location. 12/15/06 Cole Rpt. at ¶ 129 (A578); *see also Home v. Work Usage Statistics*, (A412-A450); Zap2it.com user profile (A337); Magid Study, at 44 (A382). And it is an undisputed fact that the percentage of people accessing Zap2it.com from their work locations ranges from approximately 26% (Magid Study, at 44 (A382) to 34% (*Home v. Work Usage Statistics*, at TMS0001583-1585 (A412-A450)). None of these users are accessing Zap2it.com from a location that can be deemed their television viewing location, and therefore they cannot infringe any asserted claim. Even if TV Guide considers home access an infringing use — a point TMS does not concede — over 25% use away from home is substantial non-infringing use. TV Guide's own expert concedes that 25% is a substantial figure — he testified that a 25% increase in gasoline prices would be a substantial increase in price, and that a 25% decrease in his fees would be a substantial decrease in compensation. Cole Dep. at 123:15-24 (A604). No reasonable jury could find that 25% is not substantial, and thus TMS is entitled to judgment as a matter of law that it does not contribute to the infringement of the '078 patent.

**F.    TMS And Its Accused Website Do Not Infringe Any Asserted Claim Of The '078 Patent, Either Literally Or Under The Doctrine Of Equivalents, Because Users Of Zap2it.com Do Not Receive Television Programming Information As Required By Each Asserted Claim.**

Each of the asserted claims of the '078 patent requires the step of "receiving ... information specific to the type of programming available to the particular viewing location," or a variant thereof.  Because the "receive" limitation is not literally met by TMS or the accused Zap2it.com website, and because TV Guide is estopped from arguing infringement under the doctrine of equivalents for this limitation, TMS cannot infringe any asserted claim of the '078 patent as a matter of law.

        1.    Users Of Zap2it.com Do Not Literally "Receive" Television Programming Information From Zap2it.com.

"Literal infringement requires that each and every limitation set forth in a claim appear in an accused product." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293, 1310 (Fed. Cir. 2005).  The asserted claims of the '078 patent each include the following "receive" limitation:

- "receiving, from the service provider, information specific to the type of programming available to the particular viewing location" (claim 1 and dependent claims 2-5)

- "receiving, from the service provider, television programming schedule information specific to the viewing location" (claim 6 and dependent claim 7)

- "receive, from the service provider, the information specific to the type of television programming available to the receiver" (claim 8 and dependent claims 9-10)

'078 patent (A7-A8).  The proper construction of these claim limitations, as described in detail in TMS's *Markman* Brief, is based on a disclaimer made by the named inventor to distinguish his alleged invention from the prior art of record during prosecution of the application to which the '078 patent claims priority.  During prosecution, the Examiner rejected all of the pending claims

based on U.S. Patent No. 5,086,385 to Launey.  8/13/93 Office Action, at 2-6 (A30-A34).  The

named inventor distinguished his invention from Launey to overcome this patentability rejection

by arguing the '078 patent claims do not cover a system that provides television schedule

information on an as-needed basis:

> Launey does not suggest <u>where</u> schedule information concerning
> future programming available to the VCR is to be stored.  It can
> only be inferred from the Launey patent that ***such schedule
> information might be kept in remote database 44 and
> downloaded through modem 42 to central processor 10 on an as-
> needed basis***.
>
> …
>
> ***In contrast, the present invention maintains a database*** including
> information relating to programming available to the VCR during a
> future period, including program identification, start time and so
> forth.  This information may be derived from a remote database via
> telephonic communication, by broadcast, or by subscription
> provision of disposable memories.  ***In all cases, however, an
> entire block of schedule information for a given period of time is
> transferred to the personal computer*** in accordance with the
> present invention, thereby enabling an operator to perform
> database-type manipulations directly on this information, including
> its use to immediately schedule a particular video program for
> future recording.

11/16/93 Amend., at 6-8 (A41-A43).  Thus the named inventor defined his alleged invention to

be one in which the schedule information is transferred to a user's personal computer so that the

user can perform database-type manipulations directly on the transferred information — and not

one in which a user accesses the television schedule information on an as-needed basis.  Thus the

proper construction of the "receive" limitation is "having data transferred to a computer such that

a user can perform database-type manipulations directly on the transferred data without being

connected to the original source of the data."  *See also* TMS's *Markman* Brief at Section IV.E.

Neither TMS's Zap2it.com website nor users of Zap2it.com meet this limitation.  The

information sent from the Zap2it.com web servers to a user's personal computer for display is

24

not transferred such that the user can perform database-type manipulations directly on it. The information sent from Zap2it.com to a user's computer is in an HTML file, not in a database format such as a Microsoft Excel or Microsoft Access file. 12/15/06 Cole Rpt. at ¶¶ 68, 83, 118-120 (A573-A576). As admitted by TV Guide's expert, one cannot perform "database-type manipulations" directly on the HTML file — TV Guide's expert had to copy the information presented by the HTML file into a separate database program such as Microsoft Excel or Microsoft Access in order to manipulate it. 2/28/07 Cole Rpt. at ¶ 28 (A568); Cole Dep. at 241:7-242:23 (A612). Performing these manipulations on data that has been cut and pasted into a different program is not performing these manipulations *directly* on the transferred data, as required by the claim. Thus TV Guide has not met, and cannot meet, its burden of proof with regard to this claim limitation.

Furthermore, TV Guide presents no evidence that *anyone* other than Mr. Cole has ever copied the HTML display sent by Zap2it.com into a database program, or even would know it could be done. And Mr. Cole has not produced a copy of the file he allegedly generated in this process. Mr. Cole's actions in developing his opinions are not enough to constitute proof of infringement. *See, e.g., ACCO Brands, Inc. v. ABA Locks Mfr. Co. Ltd.,* __F.3d__, 2007 WL 2609976, at *4 (Fed. Cir. Sept. 12, 2007) (finding that the record lacked sufficient evidence to sustain the jury's finding of direct infringement, where the only evidence of direct infringement was the action of plaintiff's expert).

Instead of transferring data to a user's computer, Zap2it.com allows a user to access schedule information on an as-needed basis. The parties agree that the information that is sent from Zap2it.com's web servers to the user accessing the television listings data on Zap2it.com is an HTML web page. 12/15/06 Cole Rpt. at ¶¶ 68, 83, 118-120 (A573-A576); Tjaden Decl. at ¶ 6

(A654). Each time a user wants to see new or different television programming information —
for example, schedule information for a different time period or day — another request must be
sent to the Zap2it.com server and a new HTML file generated. Tjaden Decl. Rpt. at ¶ 8 (A655).
It cannot be done while disconnected from the Zap2it.com website.

To demonstrate this, one only need to go to Zap2it.com and try to access the data without
being connected to the site. After entering your zip code on the home page and selecting your
television service provider from the list presented, you see a grid of television schedule
information. Zap2it.com Screen Shots, at 1 (A452). In Internet Explorer, you can then go to the
"File" menu and select "Work Offline" to disconnect Internet Explorer from the Internet and the
Zap2it.com website. Zap2it.com Screen Shots, at 2 (A453). If, after disconnecting from the
Zap2it.com website, you then try to change the time period displayed in the grid using the menu
at the top of the grid or the arrow bars to the side, you receive an error message stating that the
page is unavailable and, to be able to do view that updated page, you must connect to the
website. Zap2it.com Screen Shots, at 3 (A454). The same error message is presented when you
try to change the date of the information displayed or use the search function of the website.
When users are not connected to the Zap2it.com website, they cannot perform database-type
manipulations on the television schedule information they are viewing in their web browser.

TMS and TV Guide agree that information regarding television programming
information is returned to a Zap2it.com user in the form of an HTML file that is displayed by the
user's browser as a web page. TMS and TV Guide agree that database-type manipulations
cannot be performed directly on that HTML file. There is no dispute of material fact, therefore,
that this claim limitation is not met by Zap2it.com, and TMS should be found as a matter of law
not to infringe any asserted claim of the '078 patent.

2.    TV Guide Is Estopped From Arguing Infringement Under The Doctrine
      Of Equivalents Because Of Arguments Made During Patent Prosecution.

TMS also is entitled to summary judgment of no infringement under the doctrine of

equivalents because a user of the accused Zap2it.com product accesses information from a

remote database on an as-needed basis, and TV Guide is estopped from asserting that this falls

within the scope of the '078 patent.  When a patentee clearly surrenders subject matter through

an argument made to an examiner during prosecution to overcome a patentability rejection or to

secure allowance of a claim, prosecution history estoppel serves to bar the patentee from

asserting the doctrine of equivalents to capture that surrendered subject matter.  *See Cordis,* 339

F.3d at 1363 ("To invoke argument-based estoppel, the prosecution history must evince a 'clear

and unmistakable surrender of subject matter.") (citing *Litton Sys., Inc.*, 140 F.3d at 1458);

*Cybor*, 138 F.3d at 1460 ("Prosecution history estoppel provides a legal limitation on the

application of the doctrine of equivalents by excluding from the range of equivalents subject

matter surrendered during prosecution of the application for the patent . . . The estoppel may

arise from matter surrendered as a result of amendments to overcome patentability rejections, . . .

or as a result of argument to secure allowance of a claim.").  Indeed, "[t]he public has a right to

rely on the assertions made by a patent application to secure allowance of its claims.  Post-hoc,

litigation-inspired argument cannot be sued to reclaim subject matter that the public record in the

PTO clearly shows has been abandoned." *Desper Prods., Inc v. QSound Labs, Inc.,* 157 F.3d

1325, 1340 (Fed. Cir. 1998).

As explained above, the named inventor distinguished his alleged invention from the

Launey patent, which taught a system where schedule information was kept in a remote database

and downloaded on an as-needed basis, to overcome a patentability rejection.  *See* 11/16/93

Amend., at 7-8 (A42-A43).  In so distinguishing his invention — the same invention as claimed

27

in the '078 patent, given that the '078 patent claims priority to this application — the named inventor surrendered any claim of infringement under the doctrine of equivalents for situations where schedule information is kept in a remote database and downloaded only on an as-needed basis, rather than being transferred to the personal computer such that the operator can perform database-type manipulations on the information. Having surrendered this scope of the patent, TV Guide is barred from trying to recapture it under the doctrine of equivalents because of prosecution history estoppel. *See Festo*, 535 U.S. at 733-34 ("…[the patentee] may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issues patent."); *Cybor*, 138 F.3d at 1460 (prosecution history estoppel excludes "from the range of equivalents subject matter surrendered during prosecution of the application for the patent.").

As explained above, Zap2it.com falls within this surrender of scope by the named inventor. TMS maintains a database of television schedule information that is accessible by users of the Zap2it.com website on an as-needed basis. Zap2it.com does *not* transfer an entire block of schedule information for a given period of time to a user's computer such that the user can perform database-type manipulations on the information. Because the named inventor surrendered from the scope of the '078 patent the method by which Zap2it.com operates, TV Guide cannot prove infringement under the doctrine of equivalents as a matter of law, and TMS should be granted summary judgment of noninfringement.

## VI.    CONCLUSION

The undisputed facts establish that TMS does not directly infringe, contributorily infringe or induce infringement of any asserted claim of the '078 patent. Furthermore, under the claims as properly construed, neither TMS, Zap2it.com, nor users of Zap2it.com can infringe any asserted claim of the '078 patent because they do not meet the "receive" limitation. Because TV

Guide cannot meet its burden of proof that TMS directly infringes, contributorily infringes or induces infringement of any asserted claim of the '078 patent, or that anyone satisfies the "receive" limitation of the asserted claims as set forth above, TMS respectfully requests entry of judgment in its favor as a matter of law of noninfringement of the '078 patent.

Dated: October 5, 2007

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES LLP
500 Delaware Avenue, 15th Floor
Wilmington, Delaware 19801
302.888.6800

Mark A. Pals, P.C.
Linda S. DeBruin, P.C.
Michael A. Parks
Meredith Zinanni
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
312.861.2000

*Counsel for Defendant Tribune Media Services, Inc.*

29