IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TV GUIDE ONLINE, INC. and<br>TV GUIDE ONLINE, LLC<br><br>Plaintiffs,<br>Counterclaim-Defendants,<br><br>v.<br><br>TRIBUNE MEDIA SERVICES, INC.<br><br>Defendants,<br>Counterclaim-Plaintiffs | C.A. No. 05-cv-725-***<br><br>REDACTED<br>PUBLIC VERSION |

## TV GUIDE'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT THAT TMS INFRINGES CLAIMS 1-8 AND 10 OF THE '078 PATENT

OF COUNSEL:

Robert C. Morgan
Christopher J. Harnett
Ching-Lee Fukuda
Stuart W. Yothers
Ropes &Gray LLP
1211 Avenue of the Americas
New York, New York 10036
(212) 596-9000

Ronald E. Naves, Jr.
Jeffrey A. Fehervari
Vladamir V. Radovanov
Gemstar-TV Guide International, Inc.
6922 Hollywood Blvd.
Hollywood, California 90028
(323) 817-4600

October 5, 2007

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Steven J. Fineman (#4025)
Richards, Layton & Finger PA
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
fineman@rlf.com

*Attorneys for Plaintiffs TV Guide Online,
Inc. and TV Guide Online, LLC*

RLF1-3208970-1

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ iii

I.    INTRODUCTION ................................................................................................... 1

II.   NATURE AND STAGE OF THE PROCEEDINGS ............................................. 4

III.  SUMMARY OF ARGUMENT ............................................................................. 4

IV.   STATEMENT OF FACTS ..................................................................................... 7

     A.   TV Guide's '078 Patent ............................................................................... 7

     B.   Zap2it Web Site and Service ........................................................................ 8

V.    ARGUMENT ........................................................................................................ 12

     A.   Summary Judgment is Appropriate in this Case ......................................... 12

     B.   TMS's Zap2it.com Web Site Infringes The Asserted Claims Of The '078 Patent ......................................................................................................... 13

          1.   TMS's Zap2it.com Web Site Infringes Claim 1 ............................... 14

               a.   providing a computerized unit at the particular viewing location, the unit including an operator input and a modem ............ 14

               b.   establishing a connection to a wide-area network through the modem ...................................................................................... 15

               c.   transmitting, from the computerized unit, information to a service provider through the wide-area network regarding the geographical location of the particular viewing location ............ 16

               d.   receiving, from the service provider, information specific to the type of programming available to the particular viewing location ................................................................................... 16

          2.   TMS's Zap2it.com Web Site Infringes Claim 2 ............................... 18

          3.   TMS's Zap2it.com Web Site Infringes Claim 3 ............................... 19

          4.   TMS's Zap2it.com Web Site Infringes Claim 4 ............................... 19

          5.   TMS's Zap2it.com Web Site Infringes Claim 5 ............................... 19

          6.   TMS's Zap2it.com Web Site Infringes Claim 6 ............................... 20

               a.   providing, at a television viewing location, a controller interfaced to a bidirectional modem and a display device ............ 20

               b.   establishing a connection to a wide-area network through the modem ...................................................................................... 20

i

TABLE OF CONTENTS
(CONTINUED)

Page

c.  transmitting, from the television viewing location, information
    to a service provider through the wide-area network regarding
    the geographical area of the viewing location...........................20

d.  receiving, from the service provider, television programming
    schedule information specific to the viewing location.................21

e.  viewing the information on the display device.........................21

7.  TMS's Zap2it.com Web Site Infringes Claim 7 .........................21

8.  TMS's Zap2it.com Web Site Infringes Claim 8 .........................21

a   an electronic terminal unit including an operator input, a
    bidirectional modem, and a controller in communication with
    the operator input and the modem, the controller being
    programmed to perform the following functions:.....................22

b.  establish a connection to a service provider through the
    modem..............................................................24

c.  receive information through the operator input pertaining to
    the geographic location of the television receiver...................24

d.  transmit the information pertaining to the geographic location
    of the television receiver to the service provider....................24

e.  receive, from the service provider, the information specific to
    the type of television programming available to the receiver ........24

9.  TMS's Zap2it.com Web Site Infringes Claim 10.........................25

C.  TMS Directly Infringes The Asserted Claims Of The '078 Patent .........25

1.  TMS Directly Infringes Claims 1-5 ..................................27

2   TMS Directly Infringes Claims 6-7 ..................................28

3   TMS Directly Infringes Claims 8 and 10 ............................28

D.  Alternatively, TMS, At the Very Least, Induces Infringement of The
    Asserted Claims Of The '078 Patent .................................29

VI.  CONCLUSION ............................................................30

RLF1-3208970-1

TABLE OF AUTHORITIES

CASES

*Advanced Cardiovascular Sys., Inc v Medtronic, Inc.,*
   265 F.3d 1294 (Fed. Cir. 2001) ................................................................................13

*Applied Interact, LLC v. Vt. Teddy Bear Co.,*
   No 04 Civ 8713 (HB), 2005 U.S. Dist.
   LEXIS 19070 (S.D.N.Y. Sept. 6, 2005) ...................................................... *passim*

*Athletic Alternatives, Inc v. Prince Mfg., Inc.,*
   73 F.3d 1573 (Fed. Cir. 1996) ................................................................................13

*BMC Resources, Inc. v. Paymentech, L.P.,*
   No. 2006-1503, 2007 U.S. App. LEXIS 22413 (Fed. Cir. Sept. 20, 2007) ............27

*E I DuPont de Nemours & Co. v. Monsanto Co.,*
   903 F. Supp. 680 (D. Del. 1995) ................................................................ 6, 7, 30

*Fantasy Sports Properties, Inc. v. SportsLine com, Inc.,*
   287 F.3d 1108 (Fed. Cir. 2002) ..............................................................................29

*Gen. Mills, Inc v. Hunt-Wesson, Inc.,*
   103 F.3d 978 (Fed. Cir. 1997) ................................................................................13

*Hill v. Amazon com, Inc.,*
   No. 2:02-cv-186, 2006 U.S. Dist LEXIS 3389 (E.D. Tex. Jan 19, 2006) ...... *passim*

*Johnson Worldwide Assocs., Inc v. Zebco Corp.,*
   175 F.3d 985 (Fed. Cir. 1999) ..........................................................................13, 14

*Karlin Tech., Inc v. Surgical Dynamics, Inc.,*
   177 F.3d 968 (Fed. Cir. 1999) ................................................................................13

*Lisle Corp v. A.J Mfg. Co.,*
   398 F.3d 1306 (Fed. Cir. 2005) ..............................................................................13

*Markman v. Westview Instruments, Inc.,*
   517 U.S. 370 (1996) .................................................................................................5

*Marley Mouldings, Ltd v. Mikron Indus., Inc.,*
   No 02C 2855, 2003 U.S. Dist LEXIS 7211 (N.D. Ill. April 29, 2003) ........ *passim*

iii

*N. Telecom Ltd v Samsung Elecs. Co , Ltd.,*
   215 F 3d 1281 (Fed. Cir. 2000) .......................................................................13

*Ocean Innovations, Inc. v. Archer,*
   483 F. Supp. 2d 570 (N.D. Ohio 2007) ...............................................................5

*On Demand Mach. Corp v. Ingram Indus., Inc.,*
   442 F 3d 1331 (Fed. Cir. 2006) ............................................................5, 26, 27

*TA Instruments, Inc. v. Perkin-Elmer Corp ,*
   277 F. Supp. 2d 367 (D Del 2003) ................................................... *passim*

*TAP Pharm. Prods , Inc. v OWL Pharms , L L C ,*
   419 F.3d 1346 (Fed. Cir. 2005) .......................................................................13

*Teleflex, Inc v Ficosa N. Am. Corp ,*
   299 F.3d 1313 (Fed. Cir. 2002) .......................................................................12

## STATUTES

35 U.S C § 271(b)............................................................................................4, 14

Fed. R. Civ P 56(c) ......................................................................................4, 12

RLF1-3208770-1

I.    INTRODUCTION

Plaintiffs TV Guide Online, Inc. and TV Guide Online, LLC (collectively, "TV Guide") respectfully submit this opening brief in support of their motion for summary judgment that Defendant Tribune Media Services, Inc.'s ("TMS") accused product infringes claims 1-8 and 10 ("the asserted claims") of TV Guide's U.S. Patent No. 5,988,078 ("the '078 patent," attached as Ex. A[1]).

TMS is liable for infringement if each and every limitation of any *one* claim of the asserted '078 patent is found in TMS's accused product. There is no disputed material fact with respect to the operation of TMS's accused product, www.zap2it.com. Resolution of the outstanding legal disputes will show that TMS's accused product literally meets each and every limitation of not just one claim, but *all* of the asserted claims of the '078 patent. Therefore, entry of a judgment of infringement as a matter of law is appropriate.

The invention of the '078 patent was a groundbreaking advancement in the early days of the Internet. The '078 patent describes technology that allows a user to access television program listings for his or her viewing location using a computer. The claims cover a system and a method in which a user enters his or her zip code and receives television program listings for the identified location. The invention presented an efficient way to access and process information that was growing in both complexity and volume.

TMS designed, built, hosts, and controls the operation of the www.zap2it.com website. TMS also offers its product and service through "affiliate sites."

REDACTED

---

[1] As used herein, "Ex. ___" refers to the stated exhibit to the Declaration of Stuart W. Yothers, which is submitted concurrently with this brief.

1

REDACTED                              Throughout this brief,

reference to "accused product," "TMS's web site," "Zap2it.com," "the Zap2it web site," etc.

refer to TMS's main site, www.zap2it.com, and each of its affiliate sites.

Zap2it.com enables a user to enter a zip code and receive localized television

program listings over the Internet (Ex. H at 51:13-15)  By meeting every limitation of each of

the asserted claims, TMS infringes all of the asserted claims of the '078 patent.

The question of infringement in this case hinges on two issues -- both of them are

legal in nature. One is the question of claim construction, the resolution of which is a question of

law. The second dispute is also a legal question -- whether under controlling authorities, TMS's

infringement is direct or indirect in nature  There is no legitimate dispute that TMS is liable for

either direct infringement or inducement of infringement.  The only question is which legal

theory of infringement applies  Determination of the question of infringement in this case,

therefore, is particularly well suited for summary judgment.

In arguing that use of its Zap2it.com website somehow does not constitute

infringement, TMS relies on its tortured construction of two disputed claim terms. TMS argues

that "receiving information" means "having data transferred to a computer such that a user can

perform database-type manipulations directly on the transferred data without being connected to

the original source of the data " TMS also argues that "controller being programmed to perform"

means "computer application programs are installed on the 'controller,' as defined above, *prior*

---

[2]  As used herein, "Cole Ex ___" refers to the stated exhibit to the Affidavit of J. Tipton Cole
("Cole Aff "), which is submitted concurrently with this brief.

*to its use* by a user to perform." TMS's constructions of these two terms -- with the inclusion of numerous extraneous limitations -- find no support in the intrinsic evidence.[3]

In any case, even applying TMS's construction to those terms, the use of Zap2it.com would still infringe the '078 patent. Because of this, in an attempt to manufacture a noninfringement defense, TMS's expert argues that TMS's proposed claim definitions must be subjected to an additional layer of construction to arrive at an even more specific and restrictive reading. TMS should not be permitted to propose a claim definition that permits -- or requires -- its expert to further construe that definition. The entire point of the claim construction exercise is to arrive at claim definitions that can be readily applied by the finder of fact in determining questions of infringement and validity. Based on the literal language of either party's proposed definitions, these two elements -- in addition to all the others -- are met by the accused product.

TMS also argues that it does not directly infringe the asserted method claims of the '078 patent because TMS does not, by itself, perform each and every step of the method claims. This argument does not withstand legal scrutiny. An accused infringer cannot escape liability for direct infringement by having someone else perform some steps of the method. This is particularly true where, as here, the plain words of the patent specifications and claims suggest performance of the method steps by more than one entity.

Moreover, where the accused infringer has "some connection" with the other entities who complete the steps of the claim, the law holds such accused infringer liable for direct infringement. In the present action, there is no genuine issue of material fact that TMS and the user have the requisite "connection." TMS orchestrates the infringement of the claims by exerting direct control over the users who complete the steps of the asserted method claims

---

[3] A more detailed explanation of the claim construction issues are set forth in TV Guide's Opening Claim Construction Brief, submitted concurrently herewith

3

TMS designed, built, and hosts the user/service-provider architecture used to infringe the asserted claims of the '078 patent. Having done so, TMS cannot avoid liability for direct infringement when the users of that architecture use it in exactly the way it was designed to be used.

Alternatively, if the user of Zap2it.com is found to be the direct infringer, then TMS is necessarily liable for indirect infringement. By providing the Zap2it.com architecture and instructions on how to obtain localized television listings, TMS induces its users' infringement of the '078 patent. Moreover, TMS, even after it received actual notice of infringement of the '078 patent, continues to provide the architecture being used for infringement and continues to instruct its users to use its Zap2it.com website in an infringing manner. The undisputed facts of the case, therefore, demonstrate that TMS had the requisite intent for a finding of inducement of infringement under 35 U.S.C § 271(b).

## II. NATURE AND STAGE OF THE PROCEEDINGS

TV Guide respectfully directs the Court's attention to pages 2-3 of TV Guide's Opening Claim Construction Brief for a summary of the procedural history of this litigation.

## III. SUMMARY OF ARGUMENT

1. There is no disputed material fact with respect to the operation of TMS's accused product. TMS's infringement may be found as a matter of law upon resolution of two outstanding legal disputes. Therefore, resolution of infringement by summary judgment is appropriate. *See* Fed. R. Civ. P. 56(c) (summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law").

2. Under either party's claim construction, TMS's accused product literally meets each and every element of the asserted claims. TMS's expert attempts to further construe

4

two of TMS's proposed definitions to manufacture a noninfringement defense. The claim construction process, however, is designed to provide definitive meanings to the claims' terms. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996). TMS should not be permitted to rely on its proffered technical expert to read further restrictive elements into its proposed constructions. To do so would defeat the purpose of claim construction in the first place. *See TA Instruments, Inc. v. Perkin-Elmer Corp.*, 277 F. Supp. 2d 367, 375 (D. Del. 2003)(finding that a party cannot further construe a claim's construction), *aff'd*, 97 Fed. Appx. 319 (Fed. Cir. 2004). Therefore, TMS's efforts in this regard should be rejected.

3.    TMS directly infringes the asserted claims of the '078 patent by designing, building, and hosting its Zap2it.com web site. Each step of the claimed methods is performed by TMS or at its instruction. The acts that constitute direct infringement do not need to be performed by a single person or entity. *See On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1344-45 (Fed. Cir. 2006), *cert. denied*, 127 S. Ct. 683 (2006)[4]; *Ocean Innovations, Inc. v. Archer*, 483 F. Supp. 2d 570, 581 (N.D. Ohio 2007). A party that arranges for, controls, or instructs part of a process or method to be completed by someone else actually performs the combination of each and every step of the claimed method by its connection with the other person or entity that it controls or instructs. *See Hill v. Amazon.com, Inc.*, No. 2:02-cv-186, 2006

---

[4]  In *On Demand*, the Court endorsed the following jury instruction as a statement of law:

> It is not necessary for the acts that constitute infringement to be performed by one person or entity. When infringement results from the participation and combined action(s) of more than one person or entity, they are all joint infringers and jointly liable for patent infringement. Infringement of a patented process or method cannot be avoided by having another perform one step of the process or method. Where the infringement is the result of the participation and combined action(s) of one or more persons or entities, they are joint infringers and are jointly liable for the infringement.

> *Id.*

5

U.S. Dist. LEXIS 3389, at *18 (E.D. Tex. Jan. 19, 2006); *Marley Mouldings, Ltd. v. Mikron Indus., Inc.*, No. 02C 2855, 2003 U.S. Dist. LEXIS 7211, at *9 (N.D. Ill. Apr. 29, 2003). This is especially true where "the patent contemplates action by at least two actors." *Applied Interact, LLC v. Vt. Teddy Bear Co.*, No. 04 Civ. 8713 (HB), 2005 U.S. Dist. LEXIS 19070, at *15-16 (S.D.N.Y. Sept. 6, 2005) (emphasis added). Because the '078 patent expressly contemplates performance of the claimed steps by multiple entities, and because TMS dictates the steps performed by each actor, TMS is liable for direct infringement.

        4.     In the alternative, in the event that the Court finds the user -- and not TMS -- to be the direct infringer, TMS is nonetheless liable for indirect infringement. TMS controls and instructs the steps taken by the user, who directly infringes the '078 patent. Zap2it.com users may be found to be the direct infringers even though TMS performs some steps of the claimed methods. *E.I. DuPont de Nemours & Co. v. Monsanto Co.*, 903 F. Supp. 680, 734-35 (D. Del. 1995) (where defendant practices step (a) of the claimed process and sells product to customer who then practices steps (b) and (c), the Court found the customer to be the direct infringer and defendant to be the inducer of infringement), *aff'd*, 92 F.3d 1208 (Fed. Cir. 1996) (TABLE).

REDACTED      TMS, therefore, intends for its users to infringe the asserted claims of the '078 patent and is liable for indirect infringement of the asserted claims. *E.I. DuPont de Nemours & Co.*, 903 F. Supp. at 734 (finding defendant liable for inducing infringement where defendant continued to supply material to direct infringer even after defendant became aware of the patent-in-suit).

## IV.   STATEMENT OF FACTS

### A.   TV Guide's '078 Patent

TV Guide Online, LLC is the owner by assignment of the '078 patent. The '078 patent is directed to a system and a method for providing information specific to the type of television programming available to a particular viewing location. The viewing location is identified by geographic information such as a zip code.

The patented technology was conceived in the early days of the Internet by Michael R. Levine, the inventor of the '078 patent. By the early 1990s, Mr. Levine found that the large number of channels, programs, and channel line-ups that were made available by television providers (e.g., cable providers, satellite providers, broadcast providers, etc.) made it increasingly difficult and frustrating to program his VCR. REDACTED

Mr. Levine came up with the idea of using a geographic identifier, e.g., a zip code, to determine an accurate channel line-up and television program schedule for a user. Mr. Levine's ideas eventually led to the filing of the application that resulted in the '078 patent.

The '078 patent describes a system in which a computer is used to transmit a postal zip code, and, if necessary, an identification of a cable service provider, in order to receive the schedule of programming for that local area (Ex. A at col. 3:50-56). The computer receives schedule information from the schedule source via a modem, cablecast, or broadcast (Ex. A at col. 3:56-67). Using the present invention, "the operator may obtain a display of programming for a particular period of time, such as that illustrated at 46 in FIG. 1" (reproduced as Figure 1 below) (Ex. A at col. 4:1-4).

7



Figure 1: Portion of '078 Patent's FIG. 1 Showing Display of Programming

B.    Zap2it Web Site and Service

Zap2it.com is a web site designed, built, and hosted by TMS to provide its users with access to television program listings available to a specified viewing location. The site's users specify their viewing locations with a zip code. On the Zap2it.com home page, TMS prompts its users to "Enter Zip" to obtain local TV listings (shown below as Figure 2) (Cole Ex. A at ¶22 and FIG B1).

8



**Figure 2: Sample Zap2it.com Home Page Prompting Users
(Without a Pre-existing Cookie on Their Computers) To "Enter Zip"**

Like most web sites, Zap2it com is displayed via a user's Internet browser

application (e g, Microsoft Internet Explorer) REDACTED                    TMS

hosts its web site on servers that provide HTML (Hyper Text Mark-Up Language), JavaScript,

and other computer code to the user's Internet browser application (Cole Ex. A at ¶29)   TMS

establishes a browser session between a user's computer and its servers whenever a user visits its

web site (Cole Ex. A at ¶56; and Cole Aff at ¶¶6-8)   This browser session allows TMS to

communicate with the user's computer, exchange computer code, and transmit data back and

forth (Cole Ex. A at ¶56 and Ex. G at ¶97)   The computer code exchanged during the browser

session accepts and transmits a zip code to TMS's server (Cole Ex. A at ¶22 and FIG. C1; and

Ex G at ¶97)

9

Based on the zip code provided, Zap2it.com displays a list of television programming providers (e g , cable, satellite, and broadcast operators) for that geographic area and instructs the user to select the correct provider (shown below as Figure 3) (Cole Ex. A at ¶22 and FIG. B2; and Ex. H at 51:4-7). Upon selection by the user, that provider identification is transmitted to TMS's server via the browser session (Cole Ex A at ¶22 and FIG. C2)



Figure 3: Sample Zap2it.com Web Page For Selecting Service Provider
for User's Zip Code

In response to this transmission, TMS's servers deliver to the user's computer the HTML code that displays a grid of television listings on the user's computer (shown by the example below as Figure 4) (Cole Ex. A at ¶22, FIG C3 and FIG B3; and Ex. H at 51:13-15). That code includes the text of the television programming schedule information (Ex G at ¶87)



**Figure 4: Sample Television Listings Grid of Programming Available to User's Location Displayed by TMS**

In view of the foregoing, the web site designed and operated by TMS programs a user's computer to provide television listings information specific to the zip code and cable, satellite, or broadcast operator entered and selected by the user.

As shown in Figure 5, below, when a user returns to Zap2it com, the site's programming finds and displays a previously entered zip code (Cole Ex A at FIG B4 and ¶¶25-26) The retrieved zip code was stored in a cookie on the user's computer during the user's previous visit to Zap2it com (Cole Ex A at ¶25) The zip code is retrieved by a background computer program executed by TMS when a user accesses its Zap2it com web site (Cole Ex A at ¶¶25-26). The Zap2it com computer code and browser session transmit the zip code to TMS's servers (Cole Ex. A at ¶56; and Ex G at ¶97) Thus, on subsequent visits to Zap2it com, users do not have to re-enter their zip code

11

Figure 5: Sample Zap2it.com Home Page As Seen By Returning Users
(Note Pre-Entered Zip Code)

V.   **ARGUMENT**

   A.   **Summary Judgment is Appropriate in this Case**

   Summary judgment is appropriate where, as here, "there is no genuine issue as to any material fact and . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As illustrated above, there is no dispute about any material fact regarding TMS's accused product and service. While TV Guide demonstrates herein that TMS infringes *all* of the asserted claims, TMS is liable for infringement if each and every limitation of *just a single claim* of the '078 patent is found in its accused product. *See Teleflex, Inc. v Ficosa N Am Corp*, 299 F.3d 1313, 1323 (Fed. Cir. 2002) (stating that finding infringement is proper where "at least one claim" is present in the accused device).

   The question of literal infringement in this case is particularly amenable to summary resolution There is no dispute of the relevant facts regarding the accused product

12

The parties merely dispute the construction of two claim terms and the legal standard for direct infringement. *See Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996). *See also Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997) (reaffirming that "[w]here the parties do not dispute any relevant facts regarding the accused product, . . . but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment"); *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971 (Fed. Cir 1999) (holding that the claim construction issue centered on the meaning of a single phrase, which once properly construed, necessitated a finding of infringement as a matter of law).

The Federal Circuit routinely affirms such grants of summary judgment of infringement. *See, e.g., Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985 (Fed. Cir. 1999); *N. Telecom Ltd. v. Samsung Elecs. Co., Ltd.*, 215 F.3d 1281 (Fed. Cir. 2000); *Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306 (Fed. Cir. 2005); *TAP Pharm. Prods., Inc. v. OWL Pharms., L.L.C.*, 419 F.3d 1346 (Fed. Cir. 2005); and *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294 (Fed. Cir. 2001).

## B.    TMS's Zap2it.com Web Site Infringes The Asserted Claims Of The '078 Patent

There is no disputed material fact regarding the features and operation of TMS's accused web site, www.zap2it.com. TMS's noninfringement arguments turn on the construction of the terms "receiving information specific to the type of programming available to the particular viewing location" and "controller being programmed to perform." TMS's constructions, which are not supported by intrinsic or extrinsic evidence, fail as a matter of law. As discussed in more detail below, in an effort to manufacture a noninfringement defense, TMS's expert effectively deconstructs TMS's proposed definitions and argues that the words in

13

those definitions require further restrictive interpretation. That is improper. *See TA Instruments, Inc.*, 277 F. Supp. 2d at 375.

Infringement is determined by a two-step process. *See Johnson Worldwide*, 175 F.3d at 988. First, the claims are construed to determine the correct claim scope. *Id.* Second, the elements of the properly-construed claims are compared to the accused device and/or method. *Id.* In order to prove infringement, TV Guide does not need to show that every use of Zap2it.com infringes the asserted claims of the '078 patent. *See* 35 U.S.C. § 271(a) ("whoever without authority makes, uses, offers to sell, or sells *any* patented invention, . . . infringes the patent" (emphasis added)). Rather, *any* infringing use of Zap2it.com renders TMS liable for infringement. *Id.*

### 1.    TMS's Zap2it.com Web Site Infringes Claim 1

Zap2it.com performs a method by which its users receive TV listings specific to the type of programming available to particular viewing locations in a television distribution arrangement, where the particular viewing locations are geographically dispersed (Cole Ex. A at (Ex. N at 1)). As shown below, use of Zap2it.com involves each and every step of claim 1 of the '078 patent.

#### a.    *providing a computerized unit at the particular viewing location, the unit including an operator input and a modem*

TMS requires its users to access Zap2it.com from a computerized unit having an operator input and a modem by offering its service over the Internet (Ex. U). In fact, TMS *instructs* its users to use a personal computer to access its services. (*See, e.g.,* Ex. U ("Check your Local Listings at www.Zap2it.com")). For example, users access Zap2it.com with a personal computer having a keyboard and a connection to the Internet via a modem (Cole Ex. A at ¶91).

REDACTED

14

REDACTED

Notwithstanding the claim interpretation dispute over the term "modem," there is no dispute that at least some users access Zap2it com using a computer having a keyboard and a traditional telephone modem.  TMS is aware of this fact and has admitted it (Ex. V at 2 (RFA No. 6); and Ex. G at ¶¶37 and 47).

REDACTED

b.  **establishing a connection to a wide-area network through the modem**

REDACTED

There is, therefore, no dispute that at least some Zap2it.com users establish a connection to a wide-area network through a modem when accessing Zap2it com.

---

[5] TV Guide, of course, disputes TMS's assertion that the "modem" limitation is limited to dial-up modems used over a telephone line.  Nonetheless, for purposes of this summary judgment motion, even TMS has conceded that Zap2it com can be -- and is -- used with dial-up modems over telephone lines.

c.    transmitting, from the computerized unit, information to a service provider through the wide-area network regarding the geographical location of the particular viewing location

TMS admits that it performs the "transmitting" step of claim 1.

REDACTED

Thus, by TMS's own admission, there is no dispute that at least some use of the Zap2it.com website meets this step of the claimed method.

d.    *receiving, from the service provider, information specific to the type of programming available to the particular viewing location*

TMS admits that Zap2it.com provides a grid of television program listings that is received and displayed on the user's computer (Ex. H at 51:14-15; and Ex. G at ¶89). Thus, under TV Guide's proposed construction, use of Zap2it.com requires the performance of this step of claim 1.

This is the only step of claim 1 that TMS's expert contends is not performed by TMS or its users. TMS's noninfringement position is premised on its argument that

16

"receiving    information" should be construed to mean "having data transferred to a computer such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data." As explained in TV Guide's Opening Claim Construction Brief, this proposed construction -- with its extraneous limiting verbiage -- is utterly at odds with the intrinsic record, including the plain words of the claims

        TV Guide notes, however, that even under TMS's own proposed definition of this term, the use of Zap2it com *still* meets this element of claim 1  For example, once the grid is displayed on a user's computer, a user can search at least the data contained in the current grid by using the "find" feature of their Internet browser application (see Figure 6 below)



Figure 6: Using the "Find" Feature on Zap2it.com Provided Listings

        Moreover, the user can use a commercially available database program to search the listings information provided by Zap2it com (Cole Ex  C at ¶28)  For example, "a user of Zap2it com is able to copy the program schedule information that is returned by Zap2it.com and

17

paste it into a database program such as Microsoft Excel or Microsoft Access. That information can then be manipulated by the user with ease. For example, a user may perform a 'search' or a 'sort' function on the information that was returned by Zap2it.com" (Cole Ex. C at ¶28). The user can even perform this search after the connection to the original data source is terminated

In order to argue noninfringement, TMS's expert attempts to further construe TMS's own proposed construction of "having data transferred to a computer such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data" such that "database-type manipulation" further requires such manipulation to be performed with "a commercially available database manipulation program running on the user's personal computer to identify or select a particular television program based on some property of the program such as time, title, subject or provider" (Ex. G at ¶88). None of these additional limitations are part of TMS's proposed construction – much less part of the intrinsic evidence. This insertion of extraneous verbiage and limitations finds no support in the intrinsic record and is improper as a matter of law. See TA Instruments, Inc., 277 F. Supp. 2d at 375. Thus, the entirety of TMS's noninfringement defense to claim 1 is premised on a faulty claim construction.

2.    TMS's Zap2it.com Web Site Infringes Claim 2

*The method of claim 1, wherein the information transmitted to the service provider includes the Zip Code associated with the particular viewing location.*

TMS admits that a user transmits a zip code to the TMS server when the user accesses Zap2it.com (Ex. G at ¶97; and Ex. N at 152:11) Therefore, in addition to meeting each and every step of claim 1, Zap2it.com also meets each and every additional element of claim 2 of the '078 patent Accordingly, use of TMS's Zap2it.com website also infringes claim 2.

18

3.    TMS's Zap2it.com Web Site Infringes Claim 3

> *The method of claim 1, wherein the information received from the service provider includes a schedule of the television programming available to the particular viewing location.*

Zap2it.com meets each and every element of claim 3. In particular, providing "a schedule of the television programming available to the particular viewing location" is exactly what Zap2it.com is designed to do (Ex. H at 51:13-15). For example, by following Zap2it.com's instructions, TMS's and TV Guide's experts both accessed and viewed a schedule of television programming available to an entered zip code (Ex. G at ¶48; and Cole Ex. A at ¶¶19-26; and FIG. 4 above). Therefore, use of TMS's Zap2it.com website also infringes claim 3.

4.    TMS's Zap2it.com Web Site Infringes Claim 4

> *The method of claim 1, wherein the computerized unit is interfaced to a display, and wherein the method further includes the step of displaying the information specific to the type of programming available to the particular viewing location.*

It is undisputed that Zap2it.com displays to its users television program listings. For example, both parties' experts accessed Zap2it.com using computers having displays, and both experts viewed the returned grids of television program listings on those displays (Ex. G at ¶48; and Cole Ex. A at ¶78). Thus, claim 4 also is infringed by the use of Zap2it.com.

5.    TMS's Zap2it.com Web Site Infringes Claim 5

> *The method of claim 1, wherein the computerized unit further includes a memory for storing the information specific to the type of programming available to the particular viewing location.*

TMS admitted that users access Zap2it.com with a computer that has memory (Ex. V at 2 (RFA No. 10)). Use of TMS's Zap2it.com website, accordingly, infringes claim 5.

6.   <u>TMS's Zap2it.com Web Site Infringes Claim 6</u>

Zap2it.com provides a method for receiving customized television programming schedule information (e.g., television programming schedule information specific to an identified zip code). As shown below, Zap2it.com meets each and every step of claim 6 of the '078 patent.

> a.   providing, at a television viewing location, a controller interfaced to a bidirectional modem and a display device

TMS requires its users to access Zap2it.com from programmable electronic devices capable of accessing the Internet, such as a personal computer (Cole Ex. A at ¶¶88-89). TMS admits that the central processing unit ("CPU") of a personal computer is covered by the parties' proposed constructions of "controller" (Ex. G at ¶97) Thus, accessing Zap2it.com with a personal computer having a programmable electronic device -- such as a CPU -- interfaced to a display device (e.g., a computer monitor) and a modem for establishing a connection to the Internet meets this step of claim 6. It is therefore undisputed that use of Zap2it.com infringes claim 6.

> b.   establishing a connection to a wide-area network through the modem

The "establishing" step of claim 6 is identical to the "establishing" step of claim 1, and use of Zap2it com meets the elements of this step for the same reasons discussed above

> c.   transmitting, from the television viewing location, information to a service provider through the wide-area network regarding the geographical area of the viewing location

The "transmitting" step of claim 6 is performed during the use of Zap2it com for the same reasons discussed for the "transmitting" step of claim 1. TMS admits to performing this step of the claimed method.

20

      d.     receiving, from the service provider, television programming
            schedule information specific to the viewing location

The "receiving" step of claim 6 is performed during the use of Zap2it.com for the same reasons discussed for the "receiving" step of claim 1.

This is the only element of claim 6 that TMS's expert argues is not performed by either TMS or its users. As explained above, TMS's arguments are not supported by the law and use of Zap2it.com meets this element of claim 6 even under TMS's own proposed construction.

      e.     viewing the information on the display device

It is undisputed that Zap2it.com displays a grid of television program schedule information on the computer's monitor (Ex. G at ¶89; and Ex. H at 51:13-15). Its users are able to view a grid of television program listings. For example, TMS's expert admitted that he, himself, viewed television listings on the Zap2it.com website (Ex. G at ¶48).

      7.    TMS's Zap2it.com Web Site Infringes Claim 7

> *The method of claim 6, wherein the information transmitted to the service provider through the wide-area network regarding the geographical area of the viewing location is the Zip Code associated with the viewing location.*

TMS admits that it transmits a zip code to the TMS server when Zap2it.com is accessed for television listings (Ex. V at 5 (RFA Nos. 30 and 31); Ex. N at 152:11; and Ex. G at ¶97). Thus, use of TMS's Zap2it.com website also infringes claim 7 as a matter of law.

      8.    TMS's Zap2it.com Web Site Infringes Claim 8

Zap2it.com allows a user to receive TV listings available to a television receiver (Cole Ex. A at ¶107). TMS is the architect and programmer of the Zap2it.com system. That system embodies each and every element of claim 8 of the '078 patent.

      a.    *an electronic terminal unit including an operator input, a*
               *bidirectional modem, and a controller in communication with the*
               *operator input and the modem, the controller being programmed*
               *to perform the following functions:*

TMS admits that Zap2it.com is accessed by an electronic terminal unit including an operator input and a controller (Ex. V at 3 (RFA Nos. 16 and 18)).[6] As discussed above, TMS also admits that Zap2it.com is accessed over the Internet (Ex. G at ¶37). TMS further admits that at least some users access Zap2it.com through a "modem," even under TMS's improperly narrow construction of the term. For example, TMS's own expert admits to accessing Zap2it.com through a "modem" as interpreted by TMS (Ex. G at ¶47; and Ex. H at 40:10-12). TMS, therefore, admits that Zap2it.com meets the physical limitations of the "electronic terminal unit" element of claim 8.

The electronic terminal unit defined above is programmed by TMS to perform the four remaining claim elements discussed below. TMS's expert relies on a flawed construction of the term "controller being programmed to perform," and a further narrowing interpretation of TMS's own construction, as the basis of TMS's noninfringement position. As stated above, this is improper as a matter of law. *See TA Instruments, Inc.*, 277 F. Supp. 2d at 375.

TV Guide proposes that the term "controller being programmed to perform" means exactly what it says, i.e., that the controller (e.g., computer's CPU) is programmed to perform the following four elements of claim 8:

establish a connection to a service provider (e.g., TMS) through the modem;

receive information through the operator input pertaining to the geographic location of the television receiver;

---

[6] TMS's admission applies even where the disputed terms are given the meanings proposed by TMS itself, i.e., "electronic terminal unit" means "a computer," "operator input" means "a keyboard or other device for entering data into a computer," and "controller" means "a device that controls the transfer of data between a computer and a peripheral device such as a monitor."

transmit the information pertaining to the geographic location of the television receiver to the service provider; and

receive, from the service provider, the information specific to the type of television programming available to the receiver.

As described in detail above, computers used to access Zap2it.com are programmed to connect to TMS's servers through a modem, request and accept a zip code, transmit the entered zip code to TMS's servers, and receive from TMS's servers the information necessary to display a grid of television listings available to the television receiver.

TMS's proposed construction of the "controller being programmed to perform" limitation is "computer application programs are installed on the 'controller,' as defined above, *prior to* its use by a user to perform" (emphasis added). Even under TMS's construction, the Zap2it.com system infringes claim 8. The browser session established by TMS between its server and a user's computer programs the user's computer to perform each of the four elements of claim 8 before each element is performed (Cole Ex. A at ¶¶109 and 111). TMS's expert admitted that this is exactly how the "transmitting" element works (Ex. G at ¶97).

In an attempt to avoid a finding of infringement, Dr. Tjaden tries to further limit TMS's proposed construction to require that all of the programming is completed *before the first step begins* (Ex. G at ¶¶94-96). There is no support in the intrinsic evidence for such temporal or sequencing limitations. TMS's expert is simply making this up. This is improper as a matter of law and further demonstrates that TMS's construction of the term "controller being programmed to perform" is unsupported and erroneous. *See TA Instruments, Inc.*, 277 F. Supp. 2d at 375. Again, the entirety of TMS's noninfringement defense is premised on a legally impermissible claim construction.

23

b.    *establish a connection to a service provider through the modem*

When a user types "www.zap2it.com" into his or her Internet browser application and pushes "enter," TMS's servers establish a connection (e.g., a browser session) between the user's computer and the server through the computer's modem (Cole Ex. A at ¶111). TMS's expert admits this (Ex. G at ¶97). Thus, TMS meets this element of claim 8.

c.    *receive information through the operator input pertaining to the geographic location of the television receiver*

By way of the browser session, TMS programs a user's computer to request and receive a zip code entered on the keyboard of the computer by the user (Cole Ex. A at ¶¶112-113). Thus, this element of claim 8 is met by Zap2it.com

d.    *transmit the information pertaining to the geographic location of the television receiver to the service provider*

TMS admits that Zap2it.com, by way of the TMS-controlled browser session, transmits the zip code of a user over the Internet to TMS's server (Ex. G at ¶97). Therefore, TMS meets this element of claim 8.

e.    *receive, from the service provider, the information specific to the type of television programming available to the receiver*

The computer code for displaying the grid of television program schedule information is received via the browser session running on the user's computer (Cole Ex. A at ¶68). TMS does not deny this. Instead, TMS's expert relies on an improper construction of the "receive" term in an attempt to manufacture a noninfringement argument (Ex. G at ¶¶82-86). As explained above, however, Zap2it.com embodies this element even under TMS's own proposed construction of the "receive" term.

Because Zap2it.com meets each and every limitation of claim 8, TMS directly infringes claim 8 of the '078 patent as a matter of law

24

9.    TMS's Zap2it.com Web Site Infringes Claim 10

> *The system of claim 8, further including a memory in communication with the controller for storing and retrieving the information specific to the type of television programming available to the receiver.*

TMS admits that where "electronic terminal unit" is construed to mean "a computer," at least some of its users access Zap2it.com through an electronic terminal unit with a memory (Ex. V at 4 (RFA No. 20)). Thus, finding infringement of claim 8 above necessitates a finding of infringement of claim 10. Therefore, TMS directly infringes claim 10 as a matter of law.

C.    TMS Directly Infringes The Asserted Claims Of The '078 Patent

TMS's second "noninfringement" argument is that it does not directly infringe the asserted claims, because it does not perform each step of the method or provide each element of the system *by itself*. TMS argues that its users perform some of the steps. This argument also fails as a matter of law.

The acts that constitute direct infringement do not have to be performed by a single person or entity. In *On Demand Mach. Corp*, 442 F.3d at 1344-45, the Federal Circuit endorsed the following jury instruction as a statement of law:

> It is not necessary for the acts that constitute infringement to be performed by one person or entity. When infringement results from the participation and combined action(s) of more than one person or entity, they are all joint infringers and jointly liable for patent infringement. *Infringement of a patented process or method cannot be avoided by having another perform one step of the process or method.* Where the infringement is the result of the participation and combined action(s) of one or more persons or entities, they are joint infringers and are jointly liable for the infringement.

*Id.* (emphasis added).

District courts have routinely found that a defendant may be held liable as the direct infringer even though it did not perform every step of a method claim, so long as the

25

defendant has "some connection" with the other entities that performed the remaining steps. *See, e.g., Hill*, 2006 U.S. Dist. LEXIS 3389, at *14-18 (finding that defendants may be liable for direct infringement even though they only perform some steps and the customers independently perform the remaining steps); *Applied Interact*, 2005 U.S. Dist. LEXIS 19070, at *15-16; *Marley Mouldings, Ltd.*, 2003 U.S. Dist. LEXIS 7211, at *9. This is particularly true where "'the patent contemplates action by at least two actors." *Applied Interact*, 2005 U.S. Dist. LEXIS 19070, at *16. The requirement for "some connection" may be satisfied by a showing that the defendant directs the other entities to perform the remaining steps. *Hill*, 2006 U.S. Dist. LEXIS 3389, at *17-18; *Applied Interact*, 2005 U.S. Dist. LEXIS 19070, at *15-17 (finding that "some connection" exists because the customers perform the infringing steps "according to the instructions on [defendant's] web site"); *Marley Mouldings, Ltd.*, 2003 U.S. Dist. LEXIS 7211, at *8-9 ("some connection" may be found if defendant has control over the other entity's performance of the remaining steps).[7]

As discussed below, TMS directs the users of its Zap2it.com website to infringe the '078 patent by: (1) designing and providing the architecture for the website service that enables users to obtain local television listings in the specific manner claimed by the '078 patent; and (2) prompting the users to "Enter Zip" to obtain local TV listings.

---

[7] The Federal Circuit's recent decision in *BMC Res., Inc. v. Paymentech, L.P.*, No. 2006-1503, 2007 U.S. App. LEXIS 22413, at *12 (Fed. Cir. Sept. 20, 2007) confirmed that "[i]n the context of patent infringement a defendant cannot .. avoid liability for direct infringement by having someone else carry out one or more of the claimed steps on its behalf." The Federal Circuit also confirmed that "the law imposes vicarious liability on a party for the acts of another in circumstances showing that the liable party controlled the conduct of the acting party." *Id.* Here, TMS controls the infringement by, for example, providing instructions to "Enter Zip."

26

1.    **TMS Directly Infringes Claims 1-5**

When a user accesses Zap2it.com, TMS's server establishes a browser session with the user's Internet browser for the current visit/session (Cole Ex. A at ¶56). TMS controls the browser session, and uses the connection to deliver computer code and data to the user and to transmit input from the user back to its servers (Cole Ex. A at ¶¶56-60). Through this browser session, TMS exercises direct control over the operation and use of Zap2it.com, and therefore directly performs each step of method claims 1-5.

TMS argues that TMS, itself, does not provide the computer, keyboard, and modem (Ex. G at ¶¶64 and 70). TMS, however, cannot escape infringement by not physically placing the computer and/or other hardware at the particular viewing location. *Applied Interact* is instructive on this issue. *Applied Interact*, 2005 U.S. Dist. LEXIS 19070, at *21-22. In that case, one of the claimed steps required "providing said individuals with electronically programmable token dispensers." *Id.* at*20. The Court found that this step does not require the defendant to provide the hardware to the customers. *Id.* at *21-22. Rather, this step is met when the customers use their own computers to print a hard copy record. *Id.*

Where, as here, TMS has direct control over the completion of each step of the method, TMS is liable for direct infringement. *See Hill*, 2006 U.S. Dist. LEXIS 3389, at *18; *Applied Interact*, 2005 U.S. Dist LEXIS 19070, at *15-16; *Marley Mouldings, Ltd.*, 2003 U.S. Dist. LEXIS 7211, at *9. For example, TMS requires its users to establish a connection to the Internet by offering its service over the Internet. Thus, by designing, hosting and providing Zap2it.com, TMS practices each step of method claims 1-5. *See Hill*, 2006 U.S. Dist. LEXIS 3389, at *18-19.

27

2.    TMS Directly Infringes Claims 6-7

TMS's expert also argues that TMS does not, itself, view the information on the display device. As explained above, the law does not permit TMS to escape infringement on this ground. Where, as here, the accused infringer orchestrates the entire infringement, he is liable for direct infringement. *See Hill*, 2006 U.S. Dist. LEXIS 3389, at *18; *Applied Interact*, 2005 U.S. Dist. LEXIS 19070, at *15-16; *Marley Mouldings, Ltd.*, 2003 U.S. Dist. LEXIS 7211, at *9. The steps of these claims could not be completed without TMS as the service provider who orchestrates the infringement.

3.    TMS Directly Infringes Claims 8 and 10

TMS's direct infringement is particularly clear in the context of claims 8 and 10. The claims are directed to a "controller being programmed to perform" a number of steps. The browser session established by TMS between its server and a user's computer programs the user's computer to perform each of the steps set forth in claims 8 and 10. TMS, therefore, is directly responsible for "programming" the users' computers to operate in the infringing manner.

As explained above, TMS also has admitted that the system required to access Zap2it.com includes each and every piece of hardware that is required by claims 8 and 10. It does not matter for purposes of direct infringement that TMS does not, itself, manufacture and provide the hardware. *See Fantasy Sports Properties, Inc. v. SportsLine com, Inc.*, 287 F.3d 1108, 1118-19 (Fed. Cir 2002)

D.    Alternatively, TMS, At the Very Least, Induces Infringement of The Asserted Claims Of The '078 Patent

The only entities involved in the use of Zap2it.com are TMS and the users. If the Court were to find that the direct infringer is the Zap2it.com user,[8] rather than TMS, then TMS is the indirect infringer who induces the infringement of the '078 patent. TMS provides the Zap2it.com architecture and provides instructions to users on how to obtain localized television listings in an infringing manner. TMS has not and cannot dispute that it has provided and continues to provide to users instructions such as "Enter Zip," "Enter your zipcode for TV or Movie listings," "To see TV listings enter your ZIP Code, and click 'Continue,'" etc. (Cole Ex. A at ¶128 and FIG B1). Through marketing materials, user instructions, and FAQs, TMS expressly instructs its users to infringe the asserted claims of the '078 patent (Cole Ex. A at ¶¶127-128).

Also, TMS has the requisite knowledge of the '078 patent and the requisite intent for its users to infringe the asserted claims (Cole Ex. A at ¶¶126 and 129).

REDACTED                          TMS's acts, coupled with TMS's knowledge of the '078 patent, demonstrates that TMS is at least liable for indirect infringement as a matter of law.

---

[8] Zap2it.com users may be found to be the direct infringers even if TMS performs some of the steps of the asserted method claims. *E.I. DuPont de Nemours & Co.*, 903 F. Supp. at 734-35 (where defendant practices step (a) of the claimed process and sells product to customer who then practices steps (b) and (c), the Court found the customer to be the direct infringer)

## VI.    CONCLUSION

There are no disputed material issues of fact regarding the accused system, Zap2it.com, and the related method of its use. Proper construction of the disputed claim terms will render it impossible for a reasonable jury to find anything other than infringement of the asserted claims by TMS's web site, Zap2it.com. Therefore, TV Guide respectfully requests that the Court issue an order finding so as a matter of law.

OF COUNSEL:

Robert C. Morgan
Christopher J. Harnett
Ching-Lee Fukuda
Stuart W. Yothers
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Ronald E. Naves, Jr.
Jeffrey A. Fehervari
Vladamir V. Radovanov
GEMSTAR-TV GUIDE
INTERNATIONAL, INC.
6922 Hollywood Blvd.
Hollywood, California 90028
(323) 817-4600

October 5, 2007

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Steven J. Fineman (#4025)
RICHARDS, LAYTON & FINGER PA
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
fineman@rlf.com

*Attorneys for Plaintiffs TV Guide Online, Inc.
and TV Guide Online, LLC*

30

RLF1-3208970-1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2007 I electronically filed the foregoing document

with the Clerk of Court using CM/ECF which will send notification of such filing(s) and

Electronic Mail to the following:

Richard K. Herrmann, Esquire
Mary B. Matterer, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE   19899

I hereby certify that on October 5, 2007 I have sent by Federal Express, the foregoing

document to the following non-registered participant:

Mark A. Pals, Esquire
Kirkland & Ellis, LLP
200 East Randolph Drive
Chicago, IL  60601

Frederick L. Cottrell, III (#2555)

RLF1-2983269-1

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2007, I electronically filed the foregoing document

with the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand

Delivered to the following:

> Richard K. Herrmann, Esquire
> Mary B. Matterer, Esquire
> Morris James, LLP
> 500 Delaware Avenue
> Suite 1500
> Wilmington, DE 19801-1494

I hereby certify that on October 15, 2007, I have sent by Federal Express, the foregoing

document to the following non-registered participant:

> Mark A. Pals, P.C., Esquire
> Kirkland & Ellis, LLP
> 200 East Randolph Drive
> Chicago, IL 60601

> Steven J. Fineman (#4025)
> Richards, Layton & Finger, P.A.
> One Rodney Square
> P.O. Box 551
> Wilmington, Delaware 19899
> (302) 651-7700
> fineman@rlf.com