# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TV GUIDE ONLINE, INC. and<br>TV GUIDE ONLINE, LLC,<br><br>     Plaintiffs and Counterclaim Defendants,<br>                  v.<br><br>TRIBUNE MEDIA SERVICES, INC.,<br><br>     Defendant and Counterclaim Plaintiff. | )<br>)<br>)<br>)<br>)  C.A. No.: 05-725-***<br>)<br>)  **PUBLIC VERSION**<br>)<br>)<br>) |

## TRIBUNE MEDIA SERVICES, INC.'S ANSWERING BRIEF
## IN OPPOSITION TO TV GUIDE'S MOTION FOR SUMMARY JUDGMENT THAT
## TMS INFRINGES CLAIMS 1-8 AND 10 OF THE '078 PATENT

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
302.888.6800
rherrmann@morrisjames.com

Mark A. Pals, P.C.
Linda S. DeBruin, P.C.
Michael A. Parks
Meredith Zinanni
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
312.861.2000

*Counsel for Defendant Tribune Media Services, Inc.*

Originally filed:  November 21, 2007
Public version filed:  November 28, 2007

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  NATURE AND STAGE OF THE PROCEEDING..............................................1

III. SUMMARY OF ARGUMENT ...........................................................................2

    A.   TV Guide's Infringement Arguments Go Beyond, And Are Contrary To, The Teachings Of The '078 Patent. ..........................................................2

    B.   TMS Does Not Directly Infringe Any Asserted Claim Of The '078 Patent............2

    C.   TMS Does Not Induce Infringement Of Any Asserted Claim Of The '078 Patent...........................................................................................3

IV.  STATEMENT OF FACTS ....................................................................................4

V.   ARGUMENT .........................................................................................................6

    A.   The Legal Standards For Summary Judgment......................................................6

    B.   TV Guide's Infringement Arguments Go Beyond, And Are Contrary To, The Teachings Of The '078 Patent. ..........................................................7

        1.   The '078 Patent Was Not Written To Read On A "Service Provider" Such As Zap2it.com. ....................................................8

        2.   The '078 Patent Was Not Written To Read On A Website Such As Zap2it.com. ..................................................................11

    C.   TMS Does Not Directly Infringe Any Asserted Claim Of The '078 Patent..........15

        1.   TMS's Zap2it.com Website Does Not Perform Each Step Of The Asserted Method Claims Of The '078 Patent. ...........................................15

        2.   TMS's Zap2it.com Website Does Not Meet The Structural Limitations Of The Asserted Apparatus Claims Of The '078 Patent..........................................................................................19

        3.   TV Guide's "Joint Infringement" Theory Misstates The Law And Is Inapplicable To TMS And Zap2it.com. .................................................23

    D.   TMS Does Not Induce Infringement Of Any Asserted Claim Of The '078 Patent...........................................................................................27

VI.  CONCLUSION......................................................................................................30

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abbott Labs. v. Torpharm, Inc.*,
   300 F.3d 1367 (Fed. Cir. 2002).........................................................................7

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)....................................................................................6, 7

*Applied Interact, LLC v. Vermont Teddy Bear Co., Inc.*,
   No. 04 Civ. 8713 HB, 2005 WL 2133416 (S.D.N.Y. Sept. 6, 2005) ..................17, 18, 27

*BMC Resources, Inc. v. Paymentech, L.P.*,
   498 F.3d 1373, 1378 (Fed. Cir. 2007)...................................................... passim

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).........................................................................................7

*Chef America, Inc. v. Lamb-Weston, Inc.*,
   358 F.3d 1371 (Fed. Cir. 2004).........................................................................17

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
   424 F.3d 1293 (Fed. Cir. 2005)..............................................................19, 20, 24

*DeMarini Sports, Inc. v. Worth, Inc.*,
   239 F.3d 1314 (Fed. Cir. 2001).........................................................................18

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006)....................................................................28, 30

*Electro Scientific Industries, Inc. v. Dynamic Details, Inc.*,
   307 F.3d 1343 (Fed. Cir. 2002).........................................................................7

*Hill v. Amazon.com, Inc.*,
   No. Civ. A. 2:02-CV-186, 2006 WL 151911 (E.D. Tex. Jan. 19, 2006)..................25, 27

*Linear Tech. Corp v. Impala Linear Corp.*,
   379 F.3d 1311 (Fed. Cir. 2004).........................................................................27

*Marley Mouldings Ltd. v. Mikron Indus., Inc.*,
   No. 02 C 2855, 2003 WL 1989640 (N.D. Ill. Apr. 30, 2003)...........................27

*On Demand Machine Corp. v. Ingram Industries, Inc.*,
   442 F.3d 1331 (Fed. Cir. 2006).....................................................................23, 24

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
   247 F.3d 1316 (Fed. Cir. 2001).........................................................................7

*Water Tech. Corp. v. Calco, Ltd.*,
    850 F.2d 660 (Fed. Cir. 1988).............................................................................. 28

**Statutes**

35 U.S.C. § 271(a) ..................................................................................... 19, 21

**Rules**

Fed. R. Civ. P. 56(c) ...................................................................................... 6

Fed. R. Civ. P. 56(e) ...................................................................................... 7

## I.    INTRODUCTION

Recognizing the weakness of its summary judgment position, TV focuses its arguments on trying to cast TMS as a direct infringer of the '078 patent.  However, TV Guide's efforts to make a direct infringement case against TMS are efforts to fit a square peg in a round hole.  TMS does not and cannot directly infringe the asserted claims of the '078 patent.  The patent was not written to read on a service provider such as Zap2it.com, nor was it written to read on today's Internet technology.  Trying to prove that TMS directly infringes the '078 patent, TV Guide disregards the teachings of the '078 patent, rewrites the plain language of the claims, inaccurately describes the operation of Zap2it.com, and misrepresents the law of joint infringement.

Making a last-ditch attempt at presenting a workable infringement theory, TV Guide moves in the alternative for judgment as a matter of law on a theory of indirect infringement—namely, that TMS induces infringement of the '078 patent.  But in its mere one-page analysis of the inducement issue, TV Guide fails to cite any law regarding the legal standards for a finding of induced infringement or make even the threshold showing that there is any direct infringer of the '078 patent claims.

TV Guide has not proved that TMS either directly infringes or induces infringement, or that there are no genuine issues of material fact remaining, and thus TV Guide's summary judgment motion should be denied.

## II.    NATURE AND STAGE OF THE PROCEEDING

For a summary of the nature and stage of the proceeding, TMS respectfully refers the Court to its Opening Brief in Support of Its Motion for Summary Judgment of Noninfringement, D.I. 211.

III.    **SUMMARY OF ARGUMENT**

    A.    **TV Guide's Infringement Arguments Go Beyond, And Are Contrary To, The Teachings Of The '078 Patent.**

       1.    The problem the named inventor of the '078 patent identified and aimed to solve with the patent was a problem experienced by individual television viewers. As a result, the '078 patent specification and claims are written from the perspective of a television viewer, not a service provider. TV Guide's attempt to argue that TMS, a service provider, directly infringes claims written to apply only to a television viewer is not credible.

       2.    The technology the '078 patent discloses is that of dial-up services such as CompuServe and Prodigy—prominent systems as of the priority date of the '078 patent and identified in its specification—not today's Internet technology. Thus, the '078 patent system claims are written to describe such a dial-up system, not a website such as Zap2it.com that uses Hypertext Transfer Protocol ("HTTP") to communicate over the Internet. TV Guide's attempt to read the '078 system claims on Zap2it.com results in TV Guide ignoring or rewriting the plain language of the claims.

    B.    **TMS Does Not Directly Infringe Any Asserted Claim Of The '078 Patent.**

       3.    Asserted claims 1-7 of the '078 patent are method claims. A method claim can be directly infringed only by someone practicing every step of the claimed method. As admitted by both TV Guide and its own technical expert, and as explained in TMS's brief in support of its motion for summary judgment of noninfringement, TMS's accused Zap2it.com website does not perform all of the steps of the asserted method claims of the '078 patent. Therefore, TV Guide should not be granted summary judgment of direct infringement regarding these claims.

       4.    Asserted claims 8 and 10 of the '078 patent are apparatus claims. An apparatus claim cannot be infringed unless the accused device meets all of the claim's structural

limitations. TV Guide's infringement analysis relies upon a flawed understanding of how Zap2it.com operates. Zap2it.com does not meet all of the structural limitations of the '078 patent apparatus claims, and thus cannot infringe as a matter of law. At a minimum, there is a genuine issue of material fact regarding the operation of Zap2it.com that makes summary judgment inappropriate.

5.      TV Guide alleges in the alternative that TMS directly infringes all of the asserted claims of the '078 patent under a "joint infringement" theory, where TMS's accused Zap2it.com website and Zap2it.com's users allegedly jointly infringe. However, TV Guide misstates the current law on this issue and ignores a recent Federal Circuit decision regarding the proper analysis of joint infringement. Under the proper legal standards, TMS's accused Zap2it.com website and its users cannot jointly infringe the asserted claims of the '078 patent because TMS does not "control or direct" the actions of its users. At a minimum, a genuine issue of material fact remains regarding whether the relationship between TMS and Zap2it.com's users meets this "control or direct" requirement. Therefore, TV Guide should not be granted summary judgment of infringement based upon this "joint infringement" theory.

**C.      TMS Does Not Induce Infringement Of Any Asserted Claim Of The '078 Patent.**

6.      In order to succeed on a claim for induced infringement, the patentee must prove that after the accused infringer knew of the patent, it "actively and knowingly aided and abetted" direct infringement by another. This requires that the patentee prove: (1) that someone other than the accused infringer directly infringes its patents; and (2) that the accused infringer had specific intent that another directly infringe the patent.

7.    TV Guide has offered no evidence or analysis that someone other than TMS directly infringes the '078 patent, and thus has failed to establish the threshold requirement for a finding of induced infringement.

8.    TV Guide has offered no evidence that TMS has the specific intent required to be found liable for inducing infringement.  In fact, the only evidence in the record on this point is that TMS does not have such intent.  Therefore, TV Guide has not met its burden of proof that TMS induces infringement of any asserted claim of the '078 patent, and summary judgment of induced infringement in favor of TV Guide should not be granted.

## IV.    STATEMENT OF FACTS

Contrary to TV Guide's assertion, there are disputed material facts with regard to the operation of TMS's accused product, Zap2it.com.  Thus, summary judgment based upon TV Guide's theories of infringement is not warranted.[1]

Zap2it.com is a website that provides a variety of entertainment content; in addition to television listings, Zap2it.com provides movie showtimes, editorial content, entertainment news, user forums and photos.  Zap2it.com screen shots (A335, A452-54).  A user can access and view the content on Zap2it.com using his or her Internet browser (*e.g.*, Internet Explorer).  Loose Decl. at ¶ 6 (B74).  The user sends an initial request, using Hypertext Transfer Protocol ("HTTP"), to the Zap2it.com server.  *Id.*  In response, the user's Internet browser receives a

---

[1]    The disputed issues of material fact raised by TV Guide's motion do not affect TMS's motion for summary judgment of noninfringement.  Whether or not Zap2it.com operates in the manner described by TV Guide, TMS and Zap2it.com do not perform all the steps of the asserted method claims (*see* Section V.B.2, *infra*, and Section V.F of TMS's Noninfring. Br., D.I. 211), nor do they "make, use, offer to sell or sell" the device of the asserted system claims (*see* Section V.B.3, *infra*, and Section V.C of TMS's Noninfring. Br., D.I. 211.).  Additionally, regardless of how the Zap2it.com website operates, there is no evidence of TMS inducing infringement of the '078 patent, and the Zap2it.com website is capable of substantial non-infringing uses even under TV Guide's proposed claim constructions and theories of infringement.  Therefore, TMS should be granted summary judgment of noninfringement for the reasons outlined in its Opening Brief in Support of Its Motion for Summary Judgment of Noninfringement.

4

HyperText Markup Language ("HTML") file from the Zap2it.com server and displays to the user the information in that HTML file.     **REDACTED**                    (A573, A574, A576); 10/5/07 Tjaden Decl. at ¶ 6 (A654); Loose Decl. at ¶ 6 (B74).  If the user wishes to navigate to a new page in order to see different Zap2it.com content from that currently displayed, such as news on a different television show or television schedule information for a different day, the user must generate another request to the Zap2it.com server.  10/5/07 Tjaden Decl. at ¶ 8 (A655); Loose Decl. at ¶ 7 (B74).  In response to this request, the Zap2it.com server sends a new HTML file to the user's computer with information to be displayed by the Internet browser. 10/5/07 Tjaden Decl. at ¶¶ 6, 8 (A654-55); Loose Decl. at ¶ 7 (B74).

This request-response interaction between a user's computer and Zap2it.com's server is inherent to HTTP, the protocol that is used for Zap2it.com (as well as most other public websites).  Loose Decl. at ¶ 8 (B74).  Each HTTP request-response is a separate event.  *Id.*  The Zap2it.com server can only communicate with the user's Internet browser in response to a request submitted by the user's Internet browser to the Zap2it.com server.  Loose Decl. at ¶ 9 (B74).  The Zap2it.com server cannot initiate any communication with the user's Internet browser.  *Id.*

TV Guide relies upon the existence of a "browser session" for its infringement analysis. A browser session is a single instance of the Internet browser software running on a user's computer (from the time a user opens the Internet browser software to the time he or she closes it).  Loose Decl. at ¶ 10 (B74-75).  TMS does not establish a browser session—the user does so by launching his or her Internet browser, such as Internet Explorer.  *Id.*  Furthermore, a browser session is not, and cannot be, established "between" a user's computer and the Zap2it.com server.  *Id.*  The browser session is a function of the user's computer only.  *Id.*  Although the

5

Internet browser is the program that makes the request to the Zap2it.com server and receives the server's response, no browser session is established "between" the Internet browser and Zap2it.com server. *Id.*

**REDACTED**

## V.    ARGUMENT

### A.    The Legal Standards For Summary Judgment.

Summary judgment should only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is *not* appropriate, therefore, when there *is* a "genuine issue as to any material fact." *Id.*; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("…summary judgment will not lie if the dispute about a material fact is 'genuine'. . ."). To show that a dispute is genuine, "all that is required [of the nonmoving

party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. In other words, a motion for summary judgment should not be granted if the nonmoving party can "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) (internal citations omitted); *see also* Fed. R. Civ. P. 56(e) (requiring that the responding, *i.e.* nonmoving, party "set forth specific facts" to defeat a motion for summary judgment).

These same standards for summary judgment apply in a case of patent infringement. "[A] trial court may not resolve infringement on summary judgment unless no genuine factual issue remains." *Electro Scientific Indus., Inc. v. Dynamic Details, Inc.*, 307 F.3d 1343, 1347 (Fed. Cir. 2002); *see also Abbott Labs. v. Torpharm, Inc.*, 300 F.3d 1367, 1373 (Fed. Cir. 2002) ("Because the determination of infringement is a question of fact, summary judgment of infringement is improper if a reasonable jury could find that not every limitation of the claim in question would be met by the [competitor's product].") (internal citations omitted). Summary judgment is not appropriate unless "only one conclusion as to infringement could be reached by a reasonable jury." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir. 2001).

**B.    TV Guide's Infringement Arguments Go Beyond, And Are Contrary To, The Teachings Of The '078 Patent.**

In order to make a direct infringement argument against Zap2it.com—a service provider offering television listing information via the Internet—TV Guide is forced to stretch the '078 patent beyond the plain language of its specification and claims. The '078 patent was written from the perspective of a user, not a service provider, and describes technologies that pre-date the Internet, such as the CompuServe and Prodigy dial-up services identified in the '078 patent.

7

In going beyond the teachings of the '078 patent, TV Guide is forced to take positions that are not credible.

      1.     The '078 Patent Was Not Written To Read On A "Service Provider" Such As Zap2it.com.

Perhaps TV Guide's difficulty in articulating a direct infringement theory against TMS and the accused Zap2it.com website is due to the fact that the '078 patent claims were not written such that the service provider described in the claims would be the direct infringer, but rather that the television viewer seeking television programming information would be. In its efforts to fit a square peg into a round hole to make a direct infringement case against TMS, TV Guide ignores the purpose and teachings of the '078 patent and strains the language of the '078 patent claims.

As TV Guide itself describes it, "[t]he patented technology … allows a *television viewer* to access television listings for his or her particular viewing location using a computer. Prior to this invention, *viewers* had available only passive program guides… Because of the large number of television providers, the desired information was not always easily accessible or accurate for each *viewer*." D.I. 205, TV Guide *Markman* Br. at 7-8 (emphases added). According to TV Guide, the named inventor of the '078 patent "found that the large number of channels, programs, and channel line-ups that were made available by television providers … made it increasingly difficult and frustrating to program his VCR." D.I. 204, TV Guide Infring. Br. at 7. To allegedly solve this problem, the inventor "came up with the idea of using a geographic identifier, e.g., a zip code, to determine an accurate channel line-up and television program schedule *for a user*." *Id.* (emphasis added). Even the abstract of the patent describes the patent in terms of what the television viewer—the individual user—would do. '078 patent at Abstract (A1) ("***The operator*** can perform data base operations on the data to obtain listings of

8

programs of particular interest." (emphasis added)).  Thus in TV Guide's own words, both the problem to be solved and the technology allegedly invented to solve it were focused on the individual television viewer who wanted to see what programs were available at his or her television viewing location to either watch or record.

This focus on the individual television viewer carries over into the claims themselves. The independent claims of the '078 patent are "a method of *receiving* information specific to the type of programming available to a particular one of the viewing locations," "[a] method of *receiving* customized television programming schedule information," and "[a] system *enabling a viewer* of a television receiver to download information specific to the type of television programming available to the receiver." '078 patent at claims 1, 6, 8 (A7-8) (emphases added). Each of these claims describes a way in which an individual television viewer will *receive* the information regarding television programming information; they do not describe the way a service provider will *provide* that information.  Each limitation of these claims is written from the perspective of the television viewer, not the service provider referenced in the claims.

The direct infringer contemplated by the '078 patent is clearly the television viewer, not the service provider.  As observed by the Federal Circuit, "[a] patentee can usually structure a claim to capture infringement by a single party." *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007) (further explaining that to capture infringement by a single party, "[t]he steps of the claim might have featured references to a single party's supplying or receiving each element of the claimed process.").  To place the service provider in the role of the alleged direct infringer creates illogical results when the claim language is examined closely; for example, the service provider performs the step of "transmitting" information to and "receiving"

information from *itself*, and the service provider is expected to "view" information.  *See* '078

patent at claims 1, 6, 8 (A7-8).

Nonetheless, TV Guide asserts that TMS's accused Zap2it.com website—a service

provider—is the direct infringer.  But TV Guide cannot credibly sustain that position.  TV Guide

does not even attempt to argue that Zap2it.com performs all of the steps of the asserted method

claims, as is required for a finding of direct infringement.  *See, e.g.*, D.I. 204, TV Guide Infring.

Br. at 15 ("… at least some Zap2it.com *users* establish a connection to a wide-area network

through a modem …") (emphasis added).  Indeed, in an apparent attempt to mask the fact that

TMS does not and cannot perform all of the steps of the asserted method claims, TV Guide

selectively uses the passive voice to obscure who the actor is when addressing various claim

elements in its direct infringement analysis.  *See, e.g., id.* at 16           **REDACTED**

                                               and "… Zap2it.com provides a grid of television

program listings that *is received and displayed* on the user's computer …") (emphases added).

However, TV Guide's grammatical slight-of-hand is unavailing.  TV Guide's direct infringement

arguments cannot succeed unless it is able to prove that a single actor—TMS— performs all the

steps of the asserted method claims.  *See BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d

1373 (Fed. Cir. 2007) ("Direct infringement requires a party to perform or use each and every

step or element of a claimed method or product.").  TV Guide has not done so.

In an attempt to gloss over this failure of proof, TV Guide tries to rewrite the asserted

claims in a manner more favorable to its direct infringement position, as discussed in more detail

below.  Even as rewritten, however, TV Guide still cannot establish that TMS and the accused

Zap2it.com website meet all of the limitations of the asserted claims.  Perhaps realizing the

deficiencies in its direct infringement case, TV Guide adds a new theory at the end of its brief—

that TMS "jointly" infringes the '078 patent with the Zap2it.com users—but this theory fails as well.  The '078 patent was not written to be asserted against a service provider as a direct infringer.  TV Guide's attempt to do so should be rejected and its motion for summary judgment of direct infringement denied.

    2.    <u>The '078 Patent Was Not Written To Read On A Website Such As Zap2it.com.</u>

Just as the '078 patent was not written to read on a service provider such as Zap2it.com, it was not written to read on a website such as Zap2it.com.  The technology described and claimed in the '078 patent does not match up with the request-response nature of communications over the Internet using HTTP.[2]  Accordingly, TV Guide's attempt to adapt the system claims of the '078 patent to the technology of today fails.

The system or apparatus envisioned by the inventor of the '078 patent is described in the '078 patent specification.  The "apparatus of the present invention" is "a conventional personal computer, generally indicated at 18, incorporating a main computer housing 20, a keyboard 22 and a monitor 24."  '078 patent at 3:16-19 (A6).  This personal computer "is provided with a special application program to implement the present invention."  *Id.* at 3:22-24 (A6).  "The application program is loaded into the personal computer via a diskette or the like.  The program requires as data the schedule of future programming available to the system 10 from a programming source 38…"  *Id.* at 3:40-43 (A6).  The specification goes on to describe several methods by which the computer may acquire this schedule of future programming, one of which

---

[2]    For purposes of this brief, "Internet" is used synonymously with the "World Wide Web."  The accused product, Zap2it.com, is a website on the World Wide Web.  The World Wide Web uses the Internet as its transport mechanism.  *See Webster's New World Computer Dictionary* 410-11 (10th ed. 2003) (B7-8).

was by receiving information "from a remote database 40, which may constitute a database provider such as 'COMPUSERVE,' 'PRODIGY' or the like." *Id.* at 3:47-49 (A6).

In March of 1992, the date to which the '078 patent claims priority, the Internet was not ubiquitous as it is today. CompuServe and Prodigy—referenced in the '078 patent—were dial-up systems, not Internet-based systems.[3] Those dial-up systems operated very differently from websites using HTTP. For example, CompuServe had client software, the CompuServe Information Manager, that the user would load onto his or her computer to program that computer. When the user opened and loaded that software, he or she would be presented with icons from which to choose. Berkov Dep. at 38:4-14 (B54). The user could then select an icon, in response to which the CompuServe Information Manager software would perform a series of steps in order to log the user into the CompuServe servers. Berkov Dep. at 38:15-19 (B54). The CompuServe Information Manager used the computer's telephone modem to dial the phone number of a CompuServe access point and "make a telephonic connection via modem to CompuServe," through which it logged the user into the CompuServe servers. Berkov Dep. at 17:13-18:1 (A625-A626). In this manner, the user would be connected to CompuServe. That connection persisted—it did not rely on the user's computer dialing a phone number and logging in to the CompuServe system each time the user wanted to make a request for new information from the CompuServe server. The CompuServe Information Manager program also

---

[3]  CompuServe and Prodigy offered access to the Internet several years after the priority date of the '078 patent. *See* Wikipedia, *CompuServe*, http://en.wikipedia.org/wiki/Compuserve (last visited Nov. 20, 2007) ("In April 1995, CompuServe topped three million members and launched its NetLauncher service, providing WWW access capability via the Spry Mosaic browser."); Wikipedia, *Prodigy*, http://en.wikipedia.org/wiki/Prodigy_%28ISP%29 (last visited Nov. 20, 2007) ("In 1994, Prodigy became the first of the early-generation dialup services to offer access to the World Wide Web and to offer Web page hosting to its members.").

programmed the user's computer to provide other functionality, such as a search or find command. Berkov Dep. at 37:2-21 (B53).

In contrast to the dial-up systems disclosed in the '078 patent and prevalent as of the priority date of the patent, users of websites such as Zap2it.com do not have a specialized program running on their computer to connect them to Zap2it.com and provide functionality specific to the Zap2it.com website.   Instead, they have a general program—an Internet browser—that connects them to the Internet and allows communication over the Internet using HTTP.  Loose Decl. at ¶ 5-6 (B73-74).  Moreover, users of websites such as Zap2it.com do not establish a "connection" to the website.  Each interaction with Zap2it.com is an independent HTTP request-response.  Loose Decl. at ¶ 8 (B74).  User information does not persist from one HTTP request-response to the next, so the user is essentially "logging on" (to use the terminology of the earlier CompuServe and Prodigy systems) each time he or she makes a request for new information from the website. *Id.*

The '078 patent was written with a dial-up system such as CompuServe in mind, not the Internet.

## REDACTED

The words "Internet" and "website" do not appear anywhere in the '078 patent.  *See* '078 patent (A1-A8).  And the plain language of the independent system claim of the '078 patent, claim 8, describes a system like that offered by CompuServe in 1992: the controller is "programmed to perform" certain functions, just as the CompuServe Information Manager programmed the CompuServe user's

computer to perform certain functions. *Compare id.* at claim 8 (A8) *with* Berkov Dep. at 38:4-19 (B54). One of the claimed functions the controller is "programmed to perform" is to "establish a connection to a service provider through the modem," just as the CompuServe Information Manager programmed the user's computer to dial up and log in to CompuServe in order to establish a connection between the user's computer and the CompuServe service provider. *Compare* '078 patent at claim 8 (A8) *with* Berkov Dep. at 38:4-19 (B54) and Berkov Dep. at 17:13-18:1 (A625-A626). Neither the system described in the specification nor the system of claim 8 describe a system such as Zap2it.com, because Zap2it.com functions very differently than how the earlier dial-up systems functioned, due to the request-response nature of HTTP.

Nonetheless, TV Guide asserts that TMS's Zap2it.com website infringes the system claims of the '078 patent. But TV Guide cannot credibly sustain that position—an Internet, HTTP-based system is not what the inventor envisioned *and it is not what he claimed*. A user's computer is not programmed to perform any functions specific to the Zap2it.com website prior to the user sending an HTTP request to the Zap2it.com server. The only functionality that the user's computer is even arguably "programmed" to perform is that which the user requested, because the Zap2it.com server can only respond to a user's HTTP request. *See* Loose Decl. at ¶ 9 (B74). Furthermore, a Zap2it.com user cannot establish a "connection" to the Zap2it.com server; each interaction between a user's Internet browser and the Zap2it.com server is independent due to the asynchronous nature of HTTP, in which each request-response is a separate event. Loose Decl. at ¶ 8 (B74). As with the method claims, TV Guide concedes several of these points and tries to rewrite claim 8 of the '078 patent to gloss over other failures of proof, as described in more detail below. Despite TV Guide's efforts, however, it still cannot establish that TMS or Zap2it.com "make, use or sell" a device that meets all of the structural

limitations of the asserted system claims.  The '078 patent was not written to be asserted against a website using HTTP.  TV Guide's attempt to do so should be rejected and its motion for summary judgment of direct infringement denied.

**C.    TMS Does Not Directly Infringe Any Asserted Claim Of The '078 Patent.**

TV Guide's theory regarding TMS's alleged direct infringement is not apparent from its brief.  First, it appears that TV Guide alleges that TMS's Zap2it.com website directly infringes the asserted claims of the '078 patent, either by performing all of the steps of the asserted method claims itself or by meeting all of the structural limitations of the asserted system claims, despite the fact that TV Guide concedes that Zap2it.com does not meet all of the limitations of the asserted claims.  *See, e.g.*, D.I. 204, TV Guide Infring. Br. at 14, 20.  TV Guide goes on to allege that TMS directly infringes all asserted claims of the '078 patent under a "joint infringement" theory, arguing that TMS should be held liable for the actions of Zap2it.com's users who allegedly perform some of the steps of the asserted claims.  *Id.* at 25-28.  Neither theory has merit.

1.    <u>TMS's Zap2it.com Website Does Not Perform Each Step Of The Asserted Method Claims Of The '078 Patent.</u>

"Direct infringement requires a party to perform or use each and every step or element of a claimed method or product."  *BMC Resources,* 498 F.3d at 1378 (Fed. Cir. 2007).  As is clear from both TV Guide's expert reports and its opening summary judgment brief, TV Guide concedes that TMS's accused Zap2it.com website does not itself practice all of the steps of the asserted method claims of the '078 patent.  Therefore, TMS cannot directly infringe these claims.

The method claims of the '078 patent, claims 1-7, all include the following limitation: "establishing a connection to a wide-area network through the modem."  *See* '078 patent at claims 1, 6 (A7-A8).  There is no disputed issue of fact that TMS does not perform this step of

the asserted method claims—TV Guide's own expert admits that TMS does not establish a connection to a wide-area network:

> Q: Isn't it correct that Tribune Media Services does not establish a connection between a user's computer and a wide area network?
>
> [objection omitted]
>
> A: I think that is essentially correct, yes.

Cole Dep. at 53:25-54:6 (A597-A598); *see also id.* at 56:2-8, 60:17-61:5 (A598-A599);

### REDACTED

TV Guide concedes this point in its opening brief: "There is, therefore, no dispute that at least some Zap2it.com **users** establish a connection to a wide-area network through a modem when accessing Zap2it.com." D.I. 204, TV Guide Infring. Br. at 15 (emphasis added). Therefore, TMS cannot be a direct infringer of the asserted method claims of the '078 patent, as a matter of law.

Additionally, claim 6 of the '078 patent requires the step of "viewing the information on the display device." '078 patent at claim 6 (A8). This display device is located at the television viewing location with the controller. *Id.* TMS, as operator of the Zap2it.com website, is not at the user's television viewing location, nor does TMS view the television programming information displayed by the user. Again, only the **user** of Zap2it.com could even theoretically view information on the display device located at the user's television viewing location, as TV Guide concedes. D.I. 204, TV Guide Infring. Br. at 21 ("[Zap2it.com's] **users** are able to view a grid of television program listings.") (emphasis added);

### REDACTED

Thus TV Guide further admits that TMS does not directly infringe claim 6 and its dependent claim 7 of the '078 patent.

16

The asserted method claims also include the limitations "providing a computerized unit at the particular viewing location" (claim 1) and "providing, at a television viewing location, a controller" (claim 6). '078 patent at claims 1-7 (A7-A8). Again, TV Guide admits that it is the *user* of Zap2it.com, not TMS, that provides a computerized unit or controller at the viewing location.

> Q: It's correct that TMS as an entity does not provide a computerized unit at a user's particular viewing location; correct?
>
> A: For general users that's correct, yes.

Cole Dep. at 51:13-51:17 (A597); *see also id.* at 55:4-12 (A598);

## REDACTED

In addressing this limitation in its brief, TV Guide ignores the actual language of this limitation: ***providing*** a computerized unit or a controller. A review of its analysis of these limitations shows that other than in the header identifying the claim limitation, TV Guide does not use the word "providing" once. Rather, TV Guide focuses on users ***accessing*** Zap2it.com using a computerized unit or a controller. TV Guide even goes so far as to say "accessing Zap2it.com with a personal computer … meets this step of claim 6." D.I. 204, TV Guide Infring. Br. at 20. This simply cannot be the case, however, because ***accessing*** a website is not the same thing as ***providing*** a computer. TV Guide cannot now rewrite the claims to suit its infringement arguments. The claim term must be construed "as written, not as the patentees wish they had written it." *Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004).

TV Guide's reliance on *Applied Interact, LLC v. Vermont Teddy Bear Co., Inc.*, No. 04 Civ. 8713 HB, 2005 WL 2133416 (S.D.N.Y. Sept. 6, 2005), for the theory that TMS need not "physically plac[e] the computer and/or other hardware at the particular viewing location"

17

misrepresents the holding of that case. *See* D.I. 204, TV Guide Infring. Br. at 27. In *Applied Interact*, the court held that "providing" did not require supplying newly-acquired equipment, as the defendant argued, but rather could be satisfied by "furnishing, supplying, or making available already-existing equipment." *Applied Interact*, 2005 WL 2133416, at \*7 (internal citations omitted). However, the court did ***not*** find that the ***defendant*** met this limitation when its customers furnished the computer; rather, it was the defendant's ***customers*** who met this limitation. *Id.* The court found that there was a genuine issue of material fact as to whether the defendant could be held responsible for direct infringement when its customers performed this limitation. *Id.* at \*8 ("The remaining issue as to Step 2 is to determine whether VTB may be held responsible for infringement because its customers furnished computers and printers to print the coupon…AI has shown that VTB invites its web site visitors to print out the coupon, bring it to its factory, and receive a free tour. ***While tenuous in my view***, AI has raised a genuine issue of material fact when it contends that VTB and its customers are directly connected through the Internet…") (emphasis added, internal citations omitted). Similarly here, it is the users of Zap2it.com, not TMS, who perform the claimed limitation of "providing" a computer. TMS is ***not*** liable for direct infringement when it is a user of Zap2it.com that performs one or more steps of the asserted method claims.

It is TV Guide's burden to show that each and every claim limitation is met—there is no literal infringement if any claim limitation is not literally present in the accused device, exactly as written in the claim. *See, e.g., DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001) ("Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, i.e., when 'the properly construed claim reads on the accused device exactly.'"). TV Guide cannot now rewrite the claims of the '078 patent to suit its

18

purposes. The claims require "providing" a computer. Thus, to succeed in its infringement case, TV Guide must demonstrate that Zap2it.com performs this step of its method. It has not done so, and its motion for summary judgment of direct infringement should be denied.

2.    TMS's Zap2it.com Website Does Not Meet The Structural Limitations Of The Asserted Apparatus Claims Of The '078 Patent.

TMS is not liable for direct infringement of the asserted apparatus claims of the '078 patent unless it "makes, uses, offers to sell, or sells" a device that meets all the claim limitations. 35 U.S.C. § 271(a) (2007); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293, 1311-12 (Fed. Cir. 2005) ("[t]o infringe an apparatus claim, the device must meet all of the structural limitations.")   The only independent apparatus claim of the '078 patent claims a system comprising:

> an electronic terminal unit including an operator input, a bidirectional modem, and a controller in communication with the operator input and the modem, the controller being programmed to perform the following functions: …

'078 patent at claim 8 (A8) (listing four specific functions). Accordingly, TMS cannot directly infringe claim 8 and its dependent claim 10 unless TMS "makes, uses, offers to sell, or sells" the claimed "electronic terminal unit" "programmed to perform" four specific functions.

TV Guide contends that the "Zap2it.com system … embodies each and every element of claim 8 of the '078 patent." D.I. 204, TV Guide Infring. Br. at 21. Once again, TV Guide ignores the claim language and its plain meaning. Zap2it.com is a website, not "an electronic terminal unit" that is "programmed to perform" certain functions. Even TV Guide admits that Zap2it.com is not itself an electronic terminal unit, but rather that "Zap2it.com is *accessed* by an electronic terminal unit." *Id.* at 22 (emphasis added). Because Zap2it.com is not "an electronic terminal unit" as claimed by the asserted apparatus claims of the '078 patent, it does *not* "embod[y] each and every element of claim 8 of the '078 patent" or "meet[] the physical

19

limitations of the 'electronic terminal unit' element of claim 8." *See id.* at 21, 22.  Furthermore,

there is no evidence that TMS provides Zap2it.com users with an "electronic terminal unit" to

access Zap2it.com, as TV Guide's expert concedes:

> Q: Leaving aside the TMS employees, do you have any evidence whatsoever to understanding [sic] that TMS has ever provided an electronic terminal unit for a user to access zap2it.com?
>
> A: None that I'm aware of.

Cole Dep. at 57:23-58:4 (A598-A599);

### REDACTED

Because Zap2it.com is not an "electronic terminal

unit" as claimed, and because TMS does not make, use or sell the "electronic terminal unit"

structure of this apparatus claim, TMS does not infringe the asserted apparatus claims as a matter

of law. *See Cross Med. Prods.*, 424 F.3d at 1311-12 ("To infringe an apparatus claim, the device

must meet all of the structural limitations.").

Nonetheless, TV Guide argues that TMS directly infringes claim 8 of the '078 patent

because the user's electronic terminal unit is allegedly "programmed by TMS" to perform the

four claimed functions. D.I. 204, TV Guide Infring. Br. at 22.  This is factually incorrect.  Under

either party's construction of the claim term "controller being programmed to perform," TMS

does not "program" the controller of the user's electronic terminal unit to perform the claimed

functions.  In particular, TMS *cannot* program a user's computer to "establish a connection to a

service provider through the modem."  Due to the nature of HTTP, Zap2it.com can only

communicate with the user's computer in response to an HTTP request.  Any "connection to a

service provider" (*i.e.,* any connection to Zap2it.com) is done by the user's Internet browser

sending a request to the Zap2it.com server.  10/5/07 Tjaden Decl. at ¶ 6 (A654); Loose Decl. at

¶ 9 (B74).  Notably, TV Guide does not even try to argue that Zap2it.com *programs* the user's

computer to "establish a connection" to Zap2it.com; rather, TV Guide admits that the initial step of "connecting" to Zap2it.com must be done by the user's Internet browser program under the user's direction. *See* D.I. 204, TV Guide Infring. Br. at 24 ("When a user types 'www.zap2it.com' into his or her Internet browser application and pushes 'enter,' TMS's servers establish a connection ..."). TMS cannot program the user's computer or Internet browser to "establish a connection" to the Zap2it.com server because, before any alleged "programming" of the user's computer by TMS can happen, the connection must already exist in the form of an HTTP request sent by the user's Internet browser to the Zap2it.com server. 10/5/07 Tjaden Decl. at ¶ 6 (A654); Loose Decl. at ¶ 9 (B74). Because Zap2it.com cannot program a user's computer to perform all of the claimed functions of claim 8 of the '078 patent, it does not "make, use or sell" the claimed device, and thus TMS does not infringe the asserted apparatus claims as a matter of law. 35 U.S.C. § 271(a).

TV Guide also takes the unsupportable position that the Zap2it.com server "establishes a connection" between the user's computer and itself by establishing a browser session.[4] D.I. 204, TV Guide Infring. Br. at 24. This argument illustrates TV Guide's fundamental misunderstanding regarding both the operation of Zap2it.com and websites in general. A browser session is simply the instance of the Internet browser software running on a user's computer. Loose Decl. at ¶ 10 (B74-75). It is not a "connection," and, more particularly, it is "established" by the user's Internet browser, not by the Zap2it.com server.[5] *Id*. The browser

---

[4]    Again, TV Guide ignores the plain language of the claim. The function described in claim 8 is "establish a connection *to a service provider*," not *between* a service provider and a user's computer. *See* '078 patent at claim 8 (A8). The directionality of the claim language further supports TMS's argument that the connection is made from the user's computer, not by the Zap2it.com server.

[5]    TV Guide's assertion that "TMS's expert admitted that" the browser session programs the user's computer to perform the "transmitting" element of claim 8 either miscomprehends or mischaracterizes TMS's expert's
(Continued...)

session on a user's computer is neither established nor controlled by Zap2it.com's server, and thus TMS is not "programming" the user's computer in the manner described by TV Guide.

Furthermore, TMS does not infringe claims 8 and 10 of the '078 patent under the proper constructions of various terms in the claims. First, claim 8 of the '078 patent requires an electronic terminal unit with a controller, the "controller being programmed to perform" certain functions. '078 patent at claim 8 (A8). For the reasons stated in TMS's Opening and Answering *Markman* briefs, the proper construction of "controller programmed to perform" is that "computer application programs are installed on the controller prior to its use by a user to perform the functions," *i.e.*, that prior to performing any of the functions, the controller is programmed to perform all of the functions. D.I. 216, TMS Opening *Markman* Br. at 39-41; TMS *Markman* Answ. Br. at 19-22. Assuming, *arguendo*, that the Zap2it.com server "programs" the user's computer at all—and TMS disputes that it does so—it certainly does not program the user's computer to perform all of the claimed steps before the user connects to Zap2it.com. It cannot do so, because the Zap2it.com server can only respond to HTTP requests from the user's computer. Loose Decl. at ¶ 9 (B74). The first claimed function—"establish a connection to a service provider through the modem"—must occur before any "programming" of the further functions can occur.

Second, TMS does not "program" the controller to "receive … information specific to the type of television programming available." As explained in detail in TMS's Opening *Markman* brief and its Opening Brief in Support of Its Motion for Summary Judgment of Noninfringement,

_____

statement. TMS's expert, Dr. Tjaden, explained the request-response interaction between a user's computer and the Zap2it.com server. 2/9/07 Tjaden Rpt. at ¶ 97 (B59); *see also* Tjaden Decl. at ¶¶ 6-8 (A654-A655). Nowhere does Dr. Tjaden reference a "browser session." *See id.*

the proper construction of this "receive" limitation is "having data transferred to a computer such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data" because of disclaimers made during prosecution of the application to which the '078 patent claims priority.  D.I. 216, TMS Opening *Markman* Br. at 36-39; D.I. 211, TMS Noninfring. Br. at 25-30.  Assuming, *arguendo*, that the Zap2it.com server "programs" the user's computer at all—and TMS disputes that it does so—it cannot "program" the user's computer to meet this limitation.  The information sent from the Zap2it.com server to a user's personal computer for display is not transferred in a database format such as a Microsoft Excel or Microsoft Access file such that the user can perform database-type manipulations directly on it.  Rather, the information is sent in an HTML file.

> **REDACTED**                              D.I. 211, TMS Noninfring. Br. at 25-27.

Each time a user wants to see new or different television programming information—for example, schedule information for a different time period or day—another request must be sent to the Zap2it.com server and a new HTML file generated.  10/5/07 Tjaden Decl. at ¶ 8 (A655); Loose Decl. at ¶ 7 (B74); D.I. 211, TMS Noninfring. Br. at 27-28.

TV Guide has not met its burden of proof to show that TMS or Zap2it.com meet each and every structural limitation of the asserted apparatus claims 8 and 10.  At a minimum, there is a disputed issue of material fact regarding the operation of the Zap2it.com website.  Therefore, TV Guide's motion for summary judgment should be denied.

> 3.     TV Guide's "Joint Infringement" Theory Misstates The Law And Is Inapplicable To TMS And Zap2it.com.

TV Guide is wrong about the proper legal standards regarding joint (or divided) infringement, and its reliance on *On Demand Machine Corp. v. Ingram Industries, Inc.*, 442 F.3d 1331 (Fed. Cir. 2006), is misplaced given the Federal Circuit's recent jurisprudence on the topic

23

of joint infringement.  In a case TV Guide addresses only in a footnote, *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007), the Federal Circuit ***expressly rejected*** BMC's reading of the *On Demand* case—the same reading TV Guide now offers—and clarified that the "endorsement" of jury instructions regarding joint infringement in the *On Demand* case was *dicta* that "did not change the traditional standard requiring a single party to perform all steps of a claimed method."  *Id.* at 1380.  The Federal Circuit unequivocally stated:

> The district court properly analyzed the law and this court's cases. As Paymentech succinctly noted in its brief, "[i]t is unlikely the Court intended to make a major change in its jurisprudence in the *On Demand* [statement] that was not even directly necessary to its decision in the case."  In other words, BMC's interpretation of *On Demand* goes beyond settled law.  *On Demand* did not change this court's precedent with regard to joint infringement.

*Id.* (internal citations omitted).  "Infringement requires, as it always has, a showing that a defendant has practiced each and every element of the claimed invention."  *Id.*  This is true regardless of whether the patent contemplates action by more than one party.  *Id.* at 1381. Accordingly, the Federal Circuit has expressly rejected TV Guide's theory of joint infringement.

An accused infringer may be liable for direct infringement if a third party carries out one step of a process, but only if that third party performs that step at the ***control or direction*** of the accused infringer.[6]  *Id.*  This is more than "some connection" between the parties, as TV Guide contends is the prevailing legal standard.  "Control or direction" requires explicit coordination

---

[6]     System or apparatus claims cannot be infringed under a joint infringement theory.  Although multiple parties may produce components that, when assembled, form an infringing apparatus, only the party who actually assembles those components "makes" the accused product, and thus only that party is the direct infringer of the patent.  *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1311 (Fed. Cir. 2005) ("Cross Medical argues that the situation is analogous to those in which courts have found a party to directly infringe a method claim when a step of the process is performed at the direction of, but not by, that party. However, if anyone makes the claimed apparatus, it is the surgeons, who are, as far as we can tell, not agents of Medtronic." (internal citations omitted)); *see also id.* ("a rule that governs infringement of a method claim may not always govern infringement of an apparatus claim.").

between the two actors to complete all the steps of the accused process, not merely the existence

of a customer or other arm's-length relationship between the accused infringer and the third

party.

> Where there is no agency relationship or similar coordination—for
> example where the different actors do not know each other at all,
> or are in an arm's-length business transaction—courts have not
> been willing to apply the law of inducement to aggregate the
> disparate acts of unrelated parties.   Courts require proof of a
> sufficient connection between the coordinator and the entity
> performing the steps so that the coordinator, "through its
> connection with the entity performing only part of the process, is in
> actuality performing the combination of each and every step of the
> claimed method."  ***This is a rather strict standard, contemplating
> almost an alter ego and certainly not a mere customer
> relationship.***

Mark A. Lemley et al., *Divided Infringement Claims*, 33 AIPLA Q.J. 255, 260 (2005) (emphasis

added, internal citations omitted) (cited with approval in *BMC*, 498 F.3d at 1381); *see also BMC*,

498 F.3d at 1381 ("This court acknowledges that the standard requiring control or direction for a

finding of joint infringement may in some circumstances allow parties to enter into arms-length

agreements to avoid infringement."); *Hill v. Amazon.com, Inc.*, No. Civ. A. 2:02-CV-186, 2006

WL 151911, at *2 (E.D. Tex. Jan. 19, 2006) ("Not just any connection, however, is sufficient.  In

the absence of an agency or contractual relationship, the case law appears to require a showing

that the defendant and the third party are connected at least to the extent that the defendant must

actually direct the third party to perform the remaining steps of the method.").  To the extent the

cases cited by TV Guide rely upon the "some connection" standard, rather than a "control and

direct" standard, they are no longer good law in view of *BMC*.

TV Guide's infringement allegations also fail under its "joint infringement" theory.  TMS

and Zap2it.com users are at arms-length from one another; their only relationship is a customer

relationship.  There is not a sufficient connection between them for TMS to "direct" or "control"

Zap2it.com users' actions. *See BMC*, 498 F.3d at 1381. Additionally, TV Guide's assertion that by merely designing and providing the architecture for the Zap2it.com website TMS "directs" its users to do anything—let alone perform a particular step of the asserted '078 patent claims—is wrong. Any entity making or providing a product may wish for its customers to buy or use its product, but it does not "direct" its users to do so or "control" its users' choice to do so.[7] Thus TV Guide's allegations of joint infringement by TMS and Zap2it.com's users fail.

Furthermore, according to TV Guide, the alleged "direction" TMS provides is not a direction to perform any step of the claimed method. Claims 1 and 6 of the '078 patent require the steps of: (1) "providing" a computer; (2) "establishing a connection to a wide-area network through the modem"; (3) "transmitting" geographical information to the service provider; (4) "receiving" television programming information; and (5) "viewing" television programming information (claim 6 only). TV Guide concedes that Zap2it.com users, and not TMS, perform steps 1 and 2 of the asserted method claims. D.I. 204, TV Guide Infring. Br. at 14-15, 20. But TV Guide offers no evidence of any "direction" by TMS to its users to perform these steps. The "direction" TV Guide alleges TMS provides to its users is "prompting the users to 'Enter Zip' to obtain local TV listings." D.I. 204, TV Guide Infring. Br. at 26. This is not a direction to perform any limitation of the asserted method claims—claims 1 and 6 of the '078 patent require "transmitting" geographical information, not entering it. And, according to TV Guide's own infringement analysis, it is the Zap2it.com website, not its users, that performs this step. Because

---

[7] "¹**Di·rect** *vb*... **2a:** to regulate the activities or course of **b:** to carry out the organizing, energizing, and supervising of **c:** to dominate and determine the course of..." *Merriam-Webster's Collegiate Dictionary* 353 (11th ed. 2003) (bold in original) (B34).

"¹**Con·trol** *vb*... **2a:** to exercise restraining or directing influence over **b:** to have power over..." *Merriam-Webster's Collegiate Dictionary* 272 (11th ed. 2003) (bold in original) (B33).

TV Guide has not, and cannot, prove that TMS "directs" or "controls" Zap2it.com's users to perform any step of the patented method, its "joint infringement" theory should be rejected and its motion for summary judgment of infringement denied.[8]

### D.    TMS Does Not Induce Infringement Of Any Asserted Claim Of The '078 Patent.

Before TV Guide's induced infringement argument can be considered, there is a threshold issue to address.  TV Guide must establish an instance of direct infringement before it can succeed in any claim for indirect infringement.  *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004) ("There can be no inducement or contributory infringement without an underlying act of direct infringement.").  TV Guide has not even ***tried*** to establish an instance of direct infringement by someone other than TMS, let alone offered any evidence of such an occurrence.  Merely stating that "Zap2it.com users may be found to be the direct infringers even if TMS performs some of the steps," D.I. 204, TV Guide Infring. Br. at 29 n.8, does not provide any explanation, let alone evidence, regarding how or why Zap2it.com's users might allegedly be found to be direct infringers.  Lacking evidence of any instance of direct

---

8    At a minimum, a genuine issue of material fact exists regarding whether or not the relationship between TMS and the Zap2it.com users constitutes a sufficient connection such that TMS is able to "direct" or "control" its users, as confirmed by the very cases TV Guide cites.  *See Hill*, 2006 WL 151911, at *2-3 (holding that the question of whether a sufficient connection existed between the accused infringer and the third party allegedly performing certain steps of the patented method raised a triable issue of fact and thus denying a motion for summary judgment of noninfringement); *Applied Interact*, 2005 WL 2133416, at *8 (denying defendant's motion for summary judgment of noninfringement, stating "while tenuous in my view, AI has raised a genuine issue of material fact when it contends that VTB and its customers are directly connected through the Internet"); *Marley Mouldings Ltd. v. Mikron Indus., Inc.*, No. 02 C 2855, 2003 WL 1989640, at *3 (N.D. Ill. Apr. 30, 2003) (denying Mikron's motion for summary judgment of noninfringement, stating that "[a]t the very least, there is a material issue of fact as to whether Mikron has control over North Wood's activities with the performance of the first two steps of the process.").

infringement, TV Guide has failed to meet an essential element of proof regarding its induced infringement claim, and thus summary judgment is inappropriate.[9]

Furthermore, TV Guide has not met its heavy burden to establish that TMS has the *mens rea* required to be liable for inducing infringement. *See BMC*, 498 F.3d at 1381 ("Direct infringement is a strict-liability offense, but it is limited to those who practice each and every element of the claimed invention. By contrast, indirect liability requires evidence of 'specific intent' to induce infringement."). Notably, TV Guide does not cite a single case in its brief regarding the elements it is required to prove in order to succeed on its claim of induced infringement, and in particular, provides no guidance for this Court regarding the *mens rea* requirement of its claim. An examination of the elements of an induced infringement claim shows that TV Guide has failed to establish that TMS specifically intends to induce direct infringement of the '078 patent, and thus TV Guide's summary judgment motion should be denied.

To establish liability for inducing infringement, the patentee must prove that the accused infringer "actively and *knowingly* aid[ed] and abett[ed] another's direct infringement." *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) (emphasis in original). In other words, the patentee must prove "that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). Knowledge of particular *acts* that are alleged to infringe is insufficient; to be liable under the inducement theory, one must knowingly induce the

---

[9]    Pursuant to L.R. 7.1.3(c)(2), "The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." Thus, TV Guide is not permitted to present evidence regarding any alleged direct infringement by an entity other than Zap2it.com in its reply brief.

infringement itself.  *Id.*.  "[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities."  *Id.*

TV Guide has not identified any evidence to support its argument that TMS had or has a specific intent for users of Zap2it.com to *infringe* the '078 patent.  All TV Guide alleges is that (1) TMS has known about the '078 patent since REDACTED and (2) TMS continued to provide the Zap2it.com website and instructions for accessing television listings on Zap2it.com after learning about the patent.  D.I. 204, TV Guide Infring. Br. at 29.  The only specific "instruction" that TV Guide references is the Zap2it.com prompt for a user to enter his or her zip code.  *Id.* Even taking TV Guide's allegations at face value, however, transmitting a zip code to a service provider is only *one* of several necessary steps in the asserted claims of the '078 patent, and TMS's prompt constitutes at most an invitation of a particular *act* by the user.  The prompt does not evidence a *specific intent* to induce infringement because it does not evidence any intent on the part of TMS for users to perform the remaining steps or limitations of the '078 patent claims. *See id.*  TV Guide presents no evidence that TMS instructs, let alone specifically intends, for the user to perform any other steps of the asserted claims.

TMS does *not* offer any instruction or direction to its users to perform other steps or limitations of the '078 patent claims.  For example, each asserted claim requires that the user access a service provider using a computer located at the user's television viewing location, *i.e.*, their home.[10]  '078 patent (A7-A8).  TV Guide presents no evidence that TMS requires, or even

---

[10]    This is explicitly a requirement of independent claims 1 and 6 of the '078 patent.  '078 patent at claims 1, 6 (A7-A8).  It is also a requirement of the independent apparatus claim 8, as repeatedly stated by the named inventor during prosecution of the patent.  *See* 5/18/99 Resp. to Office Action, at 1 (A117) ("*all* of Applicant's independent claims include the limitation, in one form or another, of <u>transmitting</u>, *from a computerized unit situated at a viewing location*, information regarding geographical location.") (underlining in original, other (Continued...)

prefers, that a user access Zap2it.com from a computer located at the user's television viewing location as opposed to a non-viewing location. In fact, the unrebutted testimony of TMS's 30(b)(6) witness is that TMS does *not* intend to have Zap2it.com users access Zap2it.com from their alleged television viewing location rather than a non-viewing location such as their work location:

> Q: Does it make any difference to TMS whether the Zap2it users use the site, access the site from home or at work?
>
> A: I would believe TMS would be indifferent as to where a user sees access to Zap2it.com.

Tolstrup Dep. at 53:23-54:3 (A640). Thus, TV Guide has not demonstrated that TMS has the requisite intent for a finding of induced infringement: "knowingly induced infringement and possessed specific intent to encourage another's infringement." *DSU Med.*, 471 F.3d at 1306. Because TV Guide has failed to meet its burden of proof regarding TMS's level of intent to induce infringement—and, as noted above and in TMS's Brief in Support of Its Motion for Summary Judgment of Noninfringement, because TV Guide *cannot* meet this burden under the evidence—TV Guide's motion for summary judgment regarding induced infringement should be denied.

## VI.   CONCLUSION

For the reasons stated above, TV Guide's Motion for Summary Judgment That TMS Infringes Claims 1-8 and 10 of the '078 Patent should be denied as to both direct infringement and induced infringement.

---

emphases added); 11/30/98 Amend., at 2 (A107) ("*all* of Applicant's independent claims include the step *or apparatus* associated with transmitting, *from a viewing location*, information to a service provider") (emphases added); *see also* D.I. 216, TMS *Markman* Br. at Section IV.A.

Dated: November 21, 2007

/s/ Richard K. Herrmann
Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
302.888.6800
rherrmann@morrisjames.com

Mark A. Pals, P.C.
Linda S. DeBruin, P.C.
Michael A. Parks
Meredith Zinanni
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
312.861.2000

*Counsel for Defendant Tribune Media Services, Inc.*