## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TV GUIDE ONLINE, INC. and<br>TV GUIDE ONLINE, LLC<br><br>    Plaintiffs,<br>    Counterclaim-Defendants,<br><br>        v.<br><br>TRIBUNE MEDIA SERVICES, INC.<br><br>    Defendants,<br>    Counterclaim-Plaintiffs | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 05-cv-725-***<br><br>**REDACTED**<br>**PUBLIC VERSION** |

### TV GUIDE'S ANSWERING BRIEF IN OPPOSITION TO TMS'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 5,988,078

OF COUNSEL:

Christopher J. Harnett
Ching-Lee Fukuda
Stuart W. Yothers
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036
(212) 596-9000

Ronald E. Naves, Jr.
Jeffrey A. Fehervari
GEMSTAR-TV GUIDE INTERNATIONAL,
INC.
6922 Hollywood Blvd.
Hollywood, California 90028
(323) 817-4600

November 21, 2007

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Steven J. Fineman (#4025)
RICHARDS, LAYTON & FINGER PA
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
fineman@rlf.com

*Attorneys for Plaintiffs TV Guide Online, Inc.*
*and TV Guide Online, LLC*

**TABLE OF CONTENTS**

                                                                                        **PAGE**

I.      INTRODUCTION.................................................................................................1

II.     NATURE AND STAGE OF THE PROCEEDINGS...............................................5

III.    SUMMARY OF ARGUMENT ............................................................................5

IV.     STATEMENT OF FACTS....................................................................................7

        A.      The '078 Patent........................................................................................7

        B.      The Prosecution Of The '078 Patent And The
                '338 Application To Which The '078 Patent Claims Priority ...................8

        C.      TMS And The Accused Product, Zap2it.com ..........................................10

        D.      TMS's Knowledge Of The '078 Patent ...................................................14

V.      ARGUMENT ...................................................................................................16

        A.      The Summary Judgment Standard.........................................................16

        B.      TMS's Zap2it.com Web Site Infringes
                The Asserted Claims Of The '078 Patent................................................17

        C.      TMS Directly Infringes The Asserted Claims Of The '078 Patent ...........21

        D.      Alternatively, TMS, At the Very Least, Induces
                Infringement Of The Asserted Claims Of The '078 Patent........................25

        E.      TMS Also Contributes To The Infringement Of
                The Asserted Claims Of The '078 Patent................................................27

VI.     CONCLUSION .................................................................................................31

i

# TABLE OF AUTHORITIES

## CASES

PAGE

*AFG Indus., Inc. v. Cardinal IG Co.*,
375 F.3d 1367 (Fed. Cir. 2004) ...........................................................................16

*Anderson v. Liberty Lobby*,
477 U.S. 242 (1986) .................................................................................................16

*Applied Interact, LLC v. Vt. Teddy Bear Co.*,
No. 04 Civ. 8713 (HB), 2005 U.S. Dist. LEXIS 19070
(S.D.N.Y. Sept. 6, 2005)...............................................................................*passim*

*BMC Res., Inc. v. Paymentech, L.P.*,
498 F.3d 1373 (Fed. Cir. 2007) ...................................................................*passim*

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005) ............................................................................29

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006) ............................................................................26

*E.I. DuPont de Nemours & Co. v. Monsanto Co.*,
903 F. Supp. 680 (D. Del. 1995), *aff'd without op.*, 92 F.3d 1208 (Fed. Cir. 1996) ..........6, 25

*Fantasy Sports Props., Inc. v. SportsLine.com, Inc.*,
287 F.3d 1108 (Fed. Cir. 2002) ............................................................................25

*Gibson v. Mayor & Council of Wilmington*,
355 F.3d 215 (3d Cir. 2004) ...................................................................................17

*Hill v. Amazon.com, Inc.*,
No. 2:02-cv-186, 2006 U.S. Dist. LEXIS 3389 (E.D. Tex. Jan. 19, 2006) ...............*passim*

*Hoffmann-La Roche, Inc. v. Promega Corp.*,
33 U.S.P.Q. 2d 1641 (N.D. Cal. 1994) ...........................................................29, 30

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.*,
177 F.3d 968 (Fed. Cir. 1999) ..............................................................................16

*Marley Mouldings, Ltd. v. Mikron Indus., Inc.*,
66 U.S.P.Q. 2d 1701 (N.D. Ill. 2003) ............................................................*passim*

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
    545 U.S. 913 (2005) ........................................................................................ 26

*Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH,*
    139 F.3d 877 (Fed. Cir. 1998) ...................................................................... 16

*Polysius Corp. v. Fuller Co.,*
    709 F. Supp. 560 (E.D. Pa. 1989) ................................................................ 29

*Saunders Group, Inc. v. Comfortrac, Inc.,*
    492 F.3d 1326 (Fed. Cir. 2007) ................................................................ 2, 19

*Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.,*
    473 F.3d 1173 (Fed. Cir. 2006) ................................................................ 2, 19

## STATUTES

35 U.S.C. § 271 ...................................................................................................... 27

## RULES

Rule 56(c), Fed. R. Civ. P. ................................................................................... 16

iii

## I.    INTRODUCTION

Plaintiffs TV Guide Online, Inc. and TV Guide Online, LLC (collectively, "TV Guide") respectfully submit this opposition to defendant Tribune Media Services, Inc.'s ("TMS") Motion for Summary Judgment of Noninfringement of U.S. Patent No. 5,988,078.

In TV Guide's papers supporting its October 5, 2007 motion for summary judgment of infringement (D.I. 204), TV Guide demonstrated that TMS's accused product literally meets each and every limitation of *all* of the asserted claims of the '078 patent. Therefore, entry of a judgment of *infringement* as a matter of law is appropriate.

In its present motion for noninfringement, TMS does not dispute the facts concerning the operation of its accused product -- the www.Zap2it.com website. TMS also does not dispute the fact that TMS designed, built, hosts, and controls the operation of that website. Indeed, in its summary judgment motion, TMS does not dispute that all but one of the elements of the asserted claims 1-8 and 10 of the '078 patent is met during the operation of the accused Zap2it.com website. The *only* claim element that TMS argues is supposedly not practiced is the step of "receiving" from the service provider specific television programming information. TMS is wrong in that regard.

TMS's noninfringement argument is premised on the Court's adoption of TMS's far-fetched construction of the common term "receiving" to mean "having data transferred to a computer such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data." TMS's construction, with its numerous extraneous limitations, finds no support in the intrinsic evidence. In an attempt to find some support for this tortured construction, TMS turns to the prosecution of a *different* patent application and to statements that relate to *different* terms. Those statements do not in any way support TMS's construction. Indeed, the law makes crystal clear that statements made during the

prosecution of one patent application have no relevance for construction of a different claim term in a related application. *Saunders Group, Inc. v. Comfortrac, Inc.*, 492 F.3d 1326, 1333-34 (Fed. Cir. 2007); *Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*, 473 F.3d 1173, 1182 (Fed. Cir. 2006).

TMS's tortured construction of "receiving" is a transparent attempt to improperly limit and narrow the claims in order to manufacture a noninfringement defense where none exists.

**REDACTED**

TMS's construction, therefore, cannot be proper.

TMS admits that Zap2it.com provides a grid of television program listings that is received on the user's computer. Thus, under TV Guide's construction of "receiving" as meaning "receiving electronically," any use of Zap2it.com *requires* the performance of this step. Even under TMS's own proposed definition of this term, however, use of Zap2it.com *still* meets this element of the asserted claims. As explained in more detail below, the user may use the "find" feature of the Internet browser to perform key word searches on the information received from Zap2it.com. Use of Zap2it.com, therefore, infringes the '078 patent under either party's construction of the term "receiving."

TMS also argues that it somehow cannot be the direct infringer because TMS itself does not perform a few of the steps of the asserted method claims -- TMS argues that it is the user of TMS's Zap2it.com website who performs those steps. With respect to method claims

2

1-7, TMS argues that it is the user who practices the steps of "establishing a connection to a wide-area network through the modem," "providing a computerized unit at the particular viewing location" or "providing, at a television viewing location, a controller," and "viewing the information on the display device." With respect to apparatus claims 8 and 10, TMS argues that it cannot be a direct infringer because it does not provide its users with an "electronic terminal unit" to access its infringing Zap2it.com website. These arguments presented by TMS do not withstand legal scrutiny.

Remarkably, TMS ignores entirely the recent Federal Circuit case law and numerous district court cases holding an accused infringer liable for direct infringement even when some steps of the patented method were performed by another entity -- so long as the accused infringer "controls or directs" the activities of the other entity. *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007). That is exactly the case here. The evidence confirms that TMS does, in fact, control or direct the users' activities.

Specifically, TMS designed, built, and hosts the user/service-provider architecture used to infringe the asserted claims of the '078 patent. TMS also provides instructions on its Zap2it.com website directing the users to use the site in an infringing manner. For example, TMS prompts its users to "Enter Zip" to receive localized television programming information. Having done so, as a matter of law, TMS cannot avoid liability for direct infringement when the users of that architecture use it in exactly the way it was designed to be used.

Alternatively, if the user of Zap2it.com is found to be the direct infringer, then TMS is necessarily liable for indirect infringement. By providing the Zap2it.com architecture and instructions on how to obtain localized television listings, TMS induces its users' infringement of the '078 patent. From user profile studies that TMS itself commissioned, TMS

3

gained specific knowledge that the majority of its Zap2it.com users were using the website in an infringing manner. In fact, TMS knows full well that it derives a large part of its advertising revenues through such infringing uses. Even *after* it received actual notice of infringement of the '078 patent from Plaintiffs, TMS continues to provide the architecture being used for infringement and continues to instruct its users to use its Zap2it.com website in an infringing manner. The undisputed facts of the case, therefore, demonstrate that TMS had the requisite specific intent for a finding of inducement of infringement under 35 U.S.C. § 271(b).

Likewise, if the users are the direct infringers, TMS is also liable for contributory infringement. As supposed support for its argument that it cannot be a contributory infringer, TMS points to user studies showing that about 25% of Zap2it.com's users have accessed the website from work. TMS's argument fails because it rests on two faulty premises. *First*, that access from work must be noninfringing, and *second*, that such access constitutes substantial non-infringing use. The asserted claims of the '078 patent have no limitation that requires access from home or that excludes access from work. At the very least, there is an issue of material fact as to exactly what portion of the 25% is in fact noninfringing. There also is an issue of material fact whether that portion of the noninfringing use can be considered substantial when, in reality, users would not be interested in Zap2it.com if they were prohibited from using Zap2it.com at home.

As TV Guide explained in its October 5, 2007 motion for summary judgment of infringement (D.I. 204), there is overwhelming evidence that use of TMS's accused website infringes the asserted claims of the '078 patent. Accordingly, TV Guide respectfully submits that TV Guide's motion for summary judgment of *infringement* should be *granted* and TMS's present summary judgment motion of *noninfringement* should be *denied*. To the extent that

4

there are any questions regarding TMS's infringement, they are issues of material fact that also require *denial* of TMS's motion for summary judgment of noninfringement.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

TV Guide respectfully directs the Court's attention to pages 2-3 of TV Guide's October 5, 2007 Opening Claim Construction Brief (D.I. 205) for a summary of the procedural history of this litigation.

## III.    SUMMARY OF ARGUMENT

1.    Only one claim limitation -- the step of "receiving" television programming information -- is at issue for purposes of TMS's motion for summary judgment. TMS does not dispute that use of Zap2it.com involves receiving (in the ordinary sense of the word) programming information. In order for TMS to make any case for noninfringement, "receiving" must be construed to mean "having data transferred to a computer such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data." There is, however, no support for this construction. The claims at issue say nothing of the kind. TMS's reference to remarks made during the prosecution of a different patent application, concerning different claims in which the term "receiving" is not found, only highlights the erroneous nature of TMS's construction. In any case, even under TMS's construction, use of Zap2it.com still infringes the '078 patent. Accordingly, TMS's noninfringement argument must fail.

2.    TMS also argues that it cannot be the direct infringer because it somehow does not perform every step of the patented method itself. TMS's argument is flatly inconsistent with governing case law. TMS's motion fails to mention even a single one of the multitude of cases providing that an entity is liable for direct infringement even though multiple entities together perform the steps of the patented method. *See BMC Res., Inc. v. Paymentech, L.P.*, 498

5

F.3d 1373 (Fed. Cir. 2007). A party that arranges for, controls, or instructs part of a process or method to be completed by someone else is the direct infringer. *See id.; Hill v. Amazon.com, Inc.*, No. 2:02-cv-186, 2006 U.S. Dist. LEXIS 3389, at *18 (E.D. Tex. Jan. 19, 2006); *Marley Mouldings, Ltd. v. Mikron Indus., Inc.*, 66 U.S.P.Q.2d 1701, 1703 (N.D. Ill. 2003). This is particularly true where "the patent contemplates action by at least two actors." *Applied Interact, LLC v. Vt. Teddy Bear Co.*, No. 04 Civ. 8713 (HB), 2005 U.S. Dist. LEXIS 19070, at *15-16 (S.D.N.Y. Sept. 6, 2005). TMS directly infringes the asserted claims of the '078 patent by designing, building, and hosting its Zap2it.com web site. Each step of the claimed methods is performed by TMS or at its instruction. Because the '078 patent expressly contemplates performance of the claimed steps by multiple entities, and because TMS dictates the steps performed by each actor, TMS is liable for direct infringement.

3.    In the alternative, in the event that the Court finds the user -- and not TMS -- to be the direct infringer, TMS is nonetheless liable for indirect infringement. TMS controls and instructs the steps taken by the user, who directly infringes the '078 patent. Zap2it.com users may be found to be the direct infringers even though TMS performs some steps of the claimed methods. *E.I. DuPont de Nemours & Co. v. Monsanto Co.*, 903 F. Supp. 680, 734-35 (D. Del. 1995) (where defendant practices step (a) of the claimed process and sells product to customer who then practices steps (b) and (c), the Court found the customer to be the direct infringer and defendant to be the inducer of infringement), *aff'd without op.*, 92 F.3d 1208 (Fed. Cir. 1996). Beyond that, TMS has had knowledge of the '078 patent since at least April 2005 and continues to provide the Zap2it.com service. TMS, therefore, intends for its users to infringe the asserted claims of the '078 patent and is liable for indirect infringement of the asserted claims. *E.I. DuPont de Nemours & Co.*, 903 F. Supp. at 734 (finding defendant liable for

6

inducing infringement where defendant continued to supply material to direct infringer even after defendant became aware of the patent-in-suit).

4.    TMS also argues that it cannot contribute to the infringement of the '078 patent because user studies have shown that about 25% of Zap2it.com's users have accessed the website from work.  According to TMS, access from work is noninfringing (TMS does not dispute that access from home is infringing) and 25% constitutes substantial noninfringing use. This argument also fails.  The asserted claims of the '078 patent do not exclude access from work.  And even if they did, which is not the case, a website that is capable of being accessed from home is an infringing website.  Thus, at the very least, there are two genuine issues of material fact that must be resolved:  (1) exactly what portion of the 25% is in fact noninfringing, and (2) whether that portion of the noninfringing use can be considered substantial when, in reality, users would not be interested in Zap2it.com if they were prohibited from using Zap2it.com at home.  TMS's motion for summary judgment, therefore, should be denied.

IV.    **STATEMENT OF FACTS**

TV Guide respectfully directs the Court's attention to pages 8-14 of TV Guide's Opening Brief in Support of Its Motion For Summary Judgment That TMS Infringes Claims 1-8 and 10 of the '078 Patent (D.I. 204) for a summary of the facts relevant to this opposition brief.

In addition to the above, TV Guide disputes certain facts stated in TMS's motion and presents the corrected facts as follows.

A.    **The '078 Patent**

The '078 patent is directed to a system and a method for providing information specific to the type of television programming available to a particular viewing location (*compare with* D.I. 211 at 5, ¶ 2).  The viewing location is identified by geographic information such as a zip code.  The '078 patent describes a system in which a computer is used to transmit a

7

postal zip code, and, if necessary, an identification of a cable service provider, in order to receive the schedule of programming for that local area (Ex. A at col. 3:50-56[1]).

The '078 patent specification teaches that the prior art systems suffer "from the disadvantage of adding hardware and software to existing video cassette recorders or cable boxes which do not contain a schedule memory and a database program for selecting particular entries on the memory for display" (Ex. A at col. 1:44-51) (*compare with* D.I. 211 at 5-6, ¶ 3).

Claim 6 of the '078 patent requires "providing, at a television viewing location, a controller *interfaced* to a bidirectional modem and display device." There is no requirement that the display device be physically located "at the television viewing location with the claimed controller" (*compare with* D.I. 211 at 6, ¶ 9).

Claim 8 of the '078 patent does not require that the user access a service provider using a computer located "at the user's viewing location" (*compare with* D.I. 211 at 7, ¶ 11).

### B.    The Prosecution Of The '078 Patent And The '338 Application To Which The '078 Patent Claims Priority

The '078 patent issued from an application that is a continuation-in-part of U.S. Application No. 07/848,338 ("the '338 Application"). TMS cites to a portion of the prosecution history of the '338 Application -- *not* the '078 application -- as support for its construction of the term "receiving" (D.I. 211 at 7, ¶ 13). Notably, that cited portion relates to a set of then-pending claims that are substantially different from the '078 claims at issue in this action -- none of those claims even include the term "receiving."

The '338 claims are directed to a system for programming a video recorder, in which a personal computer stores a database of future programming schedules and an application

---

[1]    As used herein, "Ex. __" refers to the stated exhibit to the Declaration of Stuart W. Yothers, which is submitted herewith.

program allows the use of the database information for programming the video recorder. Each of

the '338 claims includes "*a database of future programming schedules*." For example, the two

pending independent claims in the '338 application recite the following:

> 1. (Amended) A system for programming a video recorder [of the type] having an electromagnetic remote control, for the [future,] unattended recording of programming from a video programming source connected to the <u>video</u> recorder, comprising:
>
> a personal computer;
>
> <u>means within said personal computer for storing</u> *a database of future programming schedules* <u>including information relating to program identification and start time;</u>
>
> an electromagnetic radiation transmitter connected to an I/O port of the personal computer; and
>
> an application program for the personal computer operative to cause generation of signals by said electromagnetic transmitter operative to program the video recorder to record a particular video program *in accordance with information contained within said database* <u>being selected by a user of said personal computer</u> [available to the video recorder on said source of said video programming at a particular future time].
>
> 10. (Amended) The method of programming a video recorder having an electromagnetic remote receiver to record programming available to the video recorder at a particular future time comprising:
>
> connecting an electromagnetic transmitter to an output port of a personal computer; [and]
>
> <u>storing in the personal computer</u> *a database of future programming schedules*<u>; and</u>
>
> providing the personal computer with an application program which causes the output port to generate signals to said electromagnetic transmitter causing said video recorder to record [said] <u>a</u> program [at said particular future time] *selected from said database* <u>by a user of said personal computer</u>.

(Ex. B at TG000774 and TG000776) (italics added, underline in original).

In connection with distinguishing the '338 invention from the cited Launey

reference, the applicant argued:

> Claims 1 and 10 have been amended to include means within the personal computer for storing a *database of future programming schedules.* . . . The Applicant respectfully submits that *this database*, in combination with the electromagnetic radiation transmitter already recited, *distinguish claims 1 and 10 over the prior art, including the Launey patent.*

(Ex. B at TG000780 (emphasis added)) (*compare with* D.I. 211 at 7, ¶ 13). That argument is based on the fact that each of the '338 claims at issue required a ***database of future programming schedules*** which distinguished those claims from the prior art.

There is no "database" limitation in the asserted claims of the '078 patent.

### C.    TMS And The Accused Product, Zap2it.com

Zap2it.com is a web site designed, built, and hosted by TMS to provide its users with access to television program listings available to a specified viewing location. The users specify their viewing locations with a zip code. On the Zap2it.com home page, TMS instructs its users to "Enter Zip" to obtain local TV listings (shown below as Figure 1) (Cole Ex. A at ¶22 and FIG B1[2]).

**REDACTED**

---

[2]    As used herein "Cole Ex. __" refers to the stated exhibit to the Affidavit of J. Tipton Cole, D.I. 206.



**Figure 1:  Sample Zap2it.com Home Page Prompting Users To "Enter Zip"**

Based on the zip code provided, Zap2it.com displays a list of television programming providers (e.g., cable, satellite, and broadcast operators) for that geographic area and instructs the user to select the correct provider (Cole Ex. A at ¶22 and FIG. B2; and Ex. D at 51:4-7).  Upon selection by the user, TMS's servers deliver to the user's computer a grid of television listings (Cole Ex. A at ¶22, FIG. C3 and FIG. B3; and Ex. D at 51:13-15).

TMS has provided and continues to provide to users instructions such as "Enter your zipcode for TV or Movie listings," "To see TV listings enter your ZIP Code, and click 'Continue,'" etc. (Cole Ex. A at ¶128 and FIG B1).   Through marketing materials, user instructions, and FAQs, TMS expressly instructs its users to, for example, "Enter your 5 digit ZIP code and click on Continue.  Then choose your broadcast, cable or satellite provider" (Cole Ex. A at ¶¶127-128).

11

Once users obtain localized television programming information from Zap2it.com, the users may view the information on a display device and search at least the data contained in the grid by using the "find" feature of their Internet browser application (see Figure 2 below) (*compare with* D.I. 211 at 9, ¶ 18).



**Figure 2: Using the "Find" Feature on Zap2it.com Provided Listings**

Moreover, the user can employ a commercially available database program to search the listings information provided by Zap2it.com (Cole Ex. C at ¶28) (*compare with* D.I. 211 at 9-10, ¶ 21).

The asserted claims of the '078 patent require "a computerized unit," "a controller," or "an electronic terminal unit." Nowhere do the claims require that the hardware belong to the user (*compare with* D.I. 211 at 8, ¶ 15).

In order to access TMS's www.zap2it.com website, the users must first establish a connection to a wide area network. There is no other way for the user to obtain information from

12

Zap2it.com. TMS, therefore, controls and directs the users' action in this regard (*compare with* D.I. 211 at 8, ¶ 16).

**REDACTED**

**REDACTED**

**D.**     <u>**TMS's Knowledge Of The '078 Patent**</u>

In early 2005, representatives of TV Guide, its parent company (Gemstar-TV Guide International, Inc.), and predecessor company (Index Systems), initiated discussions with TMS directed to licensing of the '078 patent and other patents.

**REDACTED**

14

REDACTED

RLF1-3226643-1

**REDACTED**

## V.    ARGUMENT

### A.    The Summary Judgment Standard

Summary judgment is improper when there exists a genuine issue as to any material fact. Rule 56(c), Fed. R. Civ. P.; *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *AFG Indus., Inc. v. Cardinal IG Co.*, 375 F.3d 1367, 1371 (Fed. Cir. 2004). As the moving party, TMS must establish that no material facts are in dispute. *See Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881 (Fed. Cir. 1998).

In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the non-moving party. *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 970 (Fed. Cir. 1999). The Court must draw all reasonable inferences and resolve all doubt over factual issues in the non-movants' favor. *See, e.g., Anderson*, 477 U.S. at 255 (stating that "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor"); *Karlin*, 177 F.3d at 970. In considering a motion for summary judgment, "a court must 'view the evidence presented through the prism of the substantive evidentiary burden' that would inhere at trial." *Monarch Knitting*, 139 F.3d at 880-81.

Moreover, the trial court may grant *sua sponte* summary judgment to the non-moving party where the "record reveals no genuine dispute on a material fact, the overwhelming

16

weight of authority supports" a finding that the non-movant is entitled to summary judgment as a matter of law. *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 222 n.2 (3d Cir. 2004) (internal citations omitted).

**B.    TMS's Zap2it.com Web Site Infringes The Asserted Claims Of The '078 Patent**

As demonstrated in TV Guide's October 5, 2007 motion for summary judgment of infringement (D.I. 204), use of Zap2it.com meets each and every limitation of the asserted claims of the '078 patent.

In TMS's motion of noninfringement, the only claim element that TMS argues is not met by the use of its Zap2it.com website is the step of "receiving" television programming information. TMS's noninfringement position is premised on its argument that "receiving" should be construed to mean "having data transferred to a computer such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data."

TMS's proposed construction is fully at odds with the intrinsic evidence. TMS does not -- and cannot -- cite to anything in the specification of the '078 patent or in the prosecution of the '078 patent application that supports adding these extraneous limitations to the term "receiving." In desperation, TMS cites to remarks made during the prosecution of an abandoned application -- U.S. Application No. 07/848,338 ("the '338 Application") -- in the '078 patent's lineage (*See* Ex. M at 5 and Ex. B at TG000779-780) (D.I. 211 at ¶ 13). Those remarks, however, relate to a set of pending claims in the '338 Application that are *substantially different* from the '078 claims at issue in this action. The remarks made about the '338 claims are not relevant to the construction of the '078 claim term "receiving" for at least two reasons: (1) none of the '338 claims even include the term "receiving," and (2) the '338 claims all include

17

"a database of future programming schedules" -- language absent in the '078 claims -- which is the point of distinction in the applicant's remarks.

        The '338 claims are directed to a system for programming a video recorder, in which a personal computer stores a database of future programming schedules and an application program allows the use of the database information for programming the video recorder. Each of the '338 claims includes "a database of future programming schedules." In connection with distinguishing the '338 invention from the cited prior art reference, the applicant argued:

> Claims 1 and 10 have been amended to include means within the personal computer for storing a *database of future programming schedules*. . . . The Applicant respectfully submits that *this database*, in combination with the electromagnetic radiation transmitter already recited, *distinguish claims 1 and 10 over the prior art, including the Launey patent*.

(Ex. B at TG000780 (emphasis added) (*compare with* D.I. 211 at 7, ¶ 13). Even the remarks relied upon by TMS make clear that they relate to claims having "a database" and using that database to program a video recorder:

> In contrast, the present invention maintains a *database* including information relating to programming available to the VCR during a future period, including program identification, start time and so forth. . . . In all cases, however, an entire block of schedule information for a given period of time is transferred to the personal computer in accordance with the present invention, thereby enabling an operator to perform database-type manipulations directly on this information, *including its use to immediately schedule a particular video program for future recording*.

(Ex. B at TG000779-780 (emphasis added)).

        The applicant's remarks, therefore, relate to entirely *different terms* in entirely *different claims*. The applicant's remarks are directed to the inclusion of "a database of future programming schedules" in the '338 claims and have no bearing on the '078 patent claims, which do not include any such limitation. Moreover, those remarks can have no relevance in construing the term "receiving," which does not appear in any of the '338 claims.

18

As a matter of law, statements made during the prosecution of a different application regarding different claim terms cannot be used to limit the claims at issue here. *Saunders Group, Inc.*, 492 F.3d at 1333-34; *Ventana Med. Sys., Inc.*, 473 F.3d at 1182. If anything, the difference in terms indicates that the constructions ought to be different.

TMS's motivation for proposing its tortured claim construction -- which is inconsistent with the intrinsic record and with controlling case law -- is readily apparent from the report and deposition testimony of TMS's expert on the subject of infringement.

## REDACTED

19

**REDACTED**

It is difficult to imagine a more goal-oriented proposed construction. TMS's contrived construction imposes extraneous limitations on the term "receiving" that, if adopted, would purportedly render the claim meaningless when applied to Zap2it.com. There is nothing in the intrinsic record to suggest that the term "receiving" requires any database manipulations be performed, or that the patentee wished to depart from the plain and ordinary meaning and gave a special meaning to that term. (Cole Ex. A at ¶ 66).

TMS admits that Zap2it.com provides a grid of television program listings that is received and displayed on the user's computer (Ex. D at 51:14-15; and Ex. N at ¶89). Thus, use of Zap2it.com requires the performance of this step. TV Guide notes, however, that even under TMS's own proposed definition of this term, the use of Zap2it.com *still* meets this element of the asserted claims. For example, once the grid is displayed on a user's computer, a user can search at least the data contained in the current grid by using the "find" feature of their Internet browser application (*Supra* p. 12, Figure 2).

Moreover, the user can use a commercially available database program to search the listings information provided by Zap2it.com (Cole Ex. C at ¶28).

**REDACTED**

20

REDACTED

The user can even perform this search after the connection to the original data source is terminated.

For these reasons and for the reasons set forth in TV Guide's October 5, 2007 opening brief in support of its motion for summary judgment of infringement, each and every limitation of the asserted claims of the '078 patent is met by or during the use of the Zap2it.com website.

### C.    TMS Directly Infringes The Asserted Claims Of The '078 Patent

TMS's second "noninfringement" argument is that it does not directly infringe the asserted method claims, because it does not perform each step of the method or provide each element of the system *by itself*. TMS argues that its users perform some of the steps in each asserted claim -- "establishing a connection to a wide-area network through the modem," "providing a computerized unit at the particular viewing location," "providing, at a television viewing location, a controller," and "viewing the information on the display device." TMS also argues that it does not directly infringe the asserted apparatus claims because it does not supply the "electronic terminal unit" to the users. These arguments also fail.

TMS's motion entirely ignores the body of case law that holds a party liable for direct infringement even when some steps were performed by other entities. In *BMC Res., Inc.*, the Federal Circuit found that a defendant who controls the acts of someone else in carrying out one or more of the claimed steps is still liable for direct infringement:

> These rules for vicarious liability might seem to provide a loophole for a party to escape infringement by having a third party carry out one or more of the claimed steps on its behalf. To the contrary, the law imposes vicarious liability on a party for the acts of another in circumstances showing that the liable party controlled the conduct of the acting party. ***In the context of patent infringement,***

21

*a defendant cannot thus avoid liability for direct infringement by having someone else carry out one or more of the claimed steps* on its behalf.

A party cannot avoid infringement, however, simply by contracting out steps of a patented process to another entity. In those cases, *the party in control would be liable for direct infringement.* It would be unfair indeed for the mastermind in such situations to escape liability. District courts in those cases have held a party liable for infringement.

*BMC Res., Inc.*, 498 F.3d at 1379, 1381 (internal citations omitted; emphasis added).

Likewise, district courts have routinely found that a defendant may be held liable as the direct infringer even though it did not perform every step of a method claim, so long as the defendant has "some connection" with the other entities that performed the remaining steps. *See, e.g., Hill*, 2006 U.S. Dist. LEXIS 3389, at *14-18 (finding that defendants may be liable for direct infringement even though they only perform some steps and the customers independently perform the remaining steps); *Applied Interact*, 2005 U.S. Dist. LEXIS 19070, at *15-16; *Marley Mouldings, Ltd.*, 66 U.S.P.Q2d at 1703. This is particularly true where "'the patent contemplates action by at least two actors.'" *Applied Interact*, 2005 U.S. Dist. LEXIS 19070, at *16. The requirement for "'some connection'" may be satisfied by a showing that the defendant directs the other entities to perform the remaining steps. *Hill*, 2006 U.S. Dist. LEXIS 3389, at *17-18; *Applied Interact*, 2005 U.S. Dist. LEXIS 19070, at *15-17 (finding that "some connection" exists because the customers perform the infringing steps "according to the instructions on [defendant's] web site"); *Marley Mouldings, Ltd.*, 66 U.S.P.Q2d at 1703 ("some connection" may be found if defendant has control over the other entity's performance of the remaining steps).

As discussed below, TMS directs the users of its Zap2it.com website to infringe the '078 patent by: (1) designing and providing the architecture for the website service that

22

enables users to obtain local television listings in the specific manner claimed by the '078 patent; and (2) instructing the users to "Enter Zip" to obtain local TV listings.

## REDACTED

At the very least, whether there is sufficient "connection" between TMS and the Zap2it.com users to warrant holding TMS liable for direct infringement involves resolving issues of material fact.    Numerous courts have denied motions for summary judgment of noninfringement on this basis.  *See, e.g., Hill*, 2006 U.S. Dist. LEXIS 3389, at *14-21; *Marley Mouldings, Ltd.*, 66 U.S.P.Q2d at 1703 ("At the very least, there is a material issue of fact as to whether Mikron has control over North Wood's activities with the performance of the first two steps of the process.").

1.    **"Providing A Computerized Unit At The Particular Viewing Location" Or "Providing, At A Television Viewing Location, A Controller" (Claims 1-7)**

TMS requires its users to access Zap2it.com from a computerized unit by offering its service over the Internet (Ex. O).  In fact, TMS *instructs* its users to use a personal computer to access its services.  (*See, e.g.,* Ex. O ("Check your Local Listings at www.Zap2it.com")).

TMS argues that it does not provide to the user the computer or controller used to access the Zap2it.com website (Ex. N at ¶¶64 and 70).    TMS, however, cannot escape infringement by not physically placing the computer and/or other hardware at the particular viewing location.  *Applied Interact* is instructive on this issue.  *Applied Interact*, 2005 U.S. Dist.

23

LEXIS 19070, at *21-22.  In that case, one of the claimed steps required "'providing said individuals with electronically programmable token dispensers.'"  *Id.* at *20.  The Court found that this step does not require the defendant to provide the hardware to the customers.  *Id.* at *21-22.  Rather, this step is met when the customers use their own computers to print a hard copy record.  *Id.*  The Court in *Applied Interact*, accordingly, denied defendant's motion for summary judgment of noninfringement.  *Id.* at *27.  Likewise, TMS cannot escape liability for direct infringement by merely arguing that it does not provide the computer that is used.

### 2.    "Establishing A Connection To A Wide-Area Network Through The Modem" (Claims 1-7)

TMS requires its users to establish a connection to the Internet in order to access the Zap2it.com website.  By designing, hosting and providing Zap2it.com, TMS controls and directs the performance of this step of method claims 1-7.  *See Hill*, 2006 U.S. Dist. LEXIS 3389, at *18; *Applied Interact*, 2005 U.S. Dist. LEXIS 19070, at *15-16; *Marley Mouldings, Ltd.*, 66 U.S.P.Q2d at 1703.

### 3.    "Viewing The Information On The Display Device" (Claims 6-7)

TMS also argues that TMS does not, itself, view the information on the display device.  As explained above, the law does not permit TMS to escape infringement on this ground.  This step could not be completed by the user without TMS providing the information that is displayed through the Zap2it.com website.  Where, as here, the accused infringer orchestrates the entire infringement, he is liable for direct infringement.  *See Hill*, 2006 U.S. Dist. LEXIS 3389, at *18; *Applied Interact*, 2005 U.S. Dist. LEXIS 19070, at *15-16; *Marley Mouldings, Ltd.*, 66 U.S.P.Q2d at 1703.

24

4.    **"Electronic Terminal Unit" (Claims 8 and 10)**

TMS's direct infringement is particularly clear in the context of claims 8 and 10. The claims are directed to a "controller being programmed to perform" a number of steps. The browser session established by TMS between its server and a user's computer programs the user's computer to perform each of the steps set forth in claims 8 and 10. TMS, therefore, is directly responsible for "programming" the users' computers to operate in the infringing manner.

As explained above, TMS also has admitted that the system required to access Zap2it.com includes each and every piece of hardware that is required by claims 8 and 10. It does not matter for purposes of direct infringement that TMS does not, itself, manufacture and provide the hardware. *See Fantasy Sports Props., Inc. v. SportsLine.com, Inc.*, 287 F.3d 1108, 1118-19 (Fed. Cir. 2002).

D.    **Alternatively, TMS, At The Very Least, Induces Infringement Of The Asserted Claims Of The '078 Patent**

The only entities involved in the use of Zap2it.com are TMS and the users. If the Court were to find that the direct infringer is the Zap2it.com user[3] -- rather than TMS -- then TMS is the indirect infringer who induces the infringement of the '078 patent.

TMS has the requisite knowledge of the '078 patent and the requisite intent for its users to infringe the asserted claims (Cole Ex. A at ¶¶126 and 129). TMS has known about the '078 patent at least since April 2005 but continued to provide service through its Zap2it.com website (*See supra* pp. 14-16; and Ex. P at 28). *See E.I. DuPont de Nemours & Co.*, 903 F. Supp. at 734 (finding defendant liable for inducing infringement where defendant continued to

---

[3] Zap2it.com users may be found to be the direct infringers even if TMS performs some of the steps of the asserted method claims. *E.I. DuPont de Nemours & Co.*, 903 F. Supp. at 734-35 (where defendant practices step (a) of the claimed process and sells product to customer who then practices steps (b) and (c), the Court found the customer to be the direct infringer).

supply material to direct infringer even after defendant became aware of the patent-in-suit).

## REDACTED

The Supreme Court reiterated that inducement is found when "[e]vidence of 'active steps ... taken to encourage direct infringement,' such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005); *see also DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006). Such evidence is plentiful in this case.

TMS provides the Zap2it.com architecture and provides instructions to users on how to obtain localized television listings in an infringing manner. TMS has not and cannot dispute that it has provided and continues to provide to users instructions such as "Enter Zip," "Enter your zipcode for TV or Movie listings," "To see TV listings enter your ZIP Code, and click 'Continue,'" etc. (Cole Ex. A at ¶128 and FIG B1). Through marketing materials, user instructions, and FAQs, TMS expressly instructs its users to infringe the asserted claims of the '078 patent (Cole Ex. A at ¶¶127-128).

TMS has also derived significant advertising revenues from use of Zap2it.com in an infringing manner.

## REDACTED

26

# REDACTED

Accordingly, TMS's acts, coupled with TMS's knowledge of the '078 patent, demonstrate that TMS is at least liable for inducing infringement.

### E.    TMS Also Contributes To The Infringement Of The Asserted Claims Of The '078 Patent

Contributory infringement liability arises when one "sells within the United States ... apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and *not a staple article or commodity of commerce suitable for substantial noninfringing use*." 35 U.S.C. § 271(c) (2001) (emphasis added).

As discussed above, TMS possesses the requisite knowledge and intent for its users to infringe the '078 patent.

27

TMS argues that it cannot contribute to the infringement of the '078 because user studies have shown that about 25% of Zap2it.com's users have accessed the website from work.[4] TMS's argument fails because it rests on two faulty premises: (1) that access from work must be noninfringing, and (2) that such access constitutes substantial non-infringing use. The asserted claims of the '078 patent have no limitation that requires access from home or that excludes access from work. Method claims 1-7 require only that the user receive television programming information specific to the viewing location where the computer is located. Apparatus claims 8 and 10 do not even include this requirement.

As a matter of common experience -- and a fact that TMS cannot seriously dispute -- many offices have televisions. It is, therefore, likely that a user may access Zap2it.com from work to see what programs may be showing on the office televisions. That is an infringing use under all of the asserted claims. Also, in at least some instances, the users accessing Zap2it.com from work using their work zip codes will receive the same information they would receive if they had accessed Zap2it.com from home using their home zip codes

## REDACTED

At the very least, there is an issue of material fact as to exactly what portion of the 25% is in fact noninfringing. Even the cases relied upon by TMS deny summary judgment because there were

_____

## REDACTED

genuine issues of material fact as to whether there were substantial noninfringing uses. *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1314 (Fed. Cir. 2005); *Hoffmann-La Roche, Inc. v. Promega Corp.*, 33 U.S.P.Q.2d 1641, 1648-49 (N.D. Cal. 1994).

There also is an issue of material fact as to whether the alleged noninfringing use of Zap2it.com can be considered substantial. Evidence demonstrates that the website without the capability of using it in an infringing manner is not economically feasible. *See Hoffmann-La Roche, Inc.*, 33 U.S.P.Q.2d at 1648 ("inefficient and uneconomical uses are less likely to be deemed 'substantial'"); *Polysius Corp. v. Fuller Co.*, 709 F. Supp. 560, 576 (E.D. Pa. 1989) ("A staple article of commerce is one that was not specifically designed for use with a patented process and has substantial, efficient, and feasible uses outside of the patent"), aff'd without op. 889 F.2d 1100 (Fed. Cir. 1989). In reality, users would not be interested in Zap2it.com if they were prohibited from using Zap2it.com at home.

## REDACTED

*Hoffmann-La Roche* -- relied upon by TMS itself for its contributory infringement argument -- is particularly instructive. That Court denied defendant's motion for summary judgment of no contributory infringement in circumstances much like this case:

> The language of 35 USC Section 271(c) clearly requires a *qualitatively significant* noninfringing use to be "substantial" before a defendant can be fully

---

[5]    As used herein "Vellturo Ex. __" refers to the stated exhibit to the Affidavit of Dr. Christopher A. Vellturo, which is submitted herewith.

absolved from contributory infringement liability ....Similarly, *inefficient and uneconomical uses are less likely to be deemed "substantial."*

In this case, [plaintiff] has submitted evidence *sufficient to create a triable issue of fact* on whether the alleged [noninfringing] uses identified by [defendant] are "substantial" or not.  First, [plaintiff] presented various *expert declarations* stating that   [the accused product] was clearly optimized for [infringing] use.   Second, [plaintiff's] experts state that the [alleged noninfringing] uses of [the accused product] identified by [defendant] are not substantial because they are *not commercially viable, efficient, or recommended uses* of the [product].

Because [plaintiff] has raised evidence sufficient to dispute this issue, [defendant's] motion (for summary judgment) on the contributory infringement claim is hereby *DENIED*.

*Hoffmann-La Roche, Inc.*, 33 U.S.P.Q.2d at 1648-49 (internal citations omitted; emphasis added).

TV Guide has provided sufficient evidence demonstrating that there at least is a genuine issue of material fact on whether the alleged noninfringing use is "substantial."  TMS's motion for summary judgment on this issue, accordingly, should be denied.

30

## VI.   CONCLUSION

For all of the foregoing reasons, TV Guide respectfully requests that the Court grant TV Guide's motion for summary judgment of infringement and deny TMS's motion for summary judgment of noninfringement.

OF COUNSEL:

Christopher J. Harnett
Ching-Lee Fukuda
Stuart W. Yothers
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Ronald E. Naves, Jr.
Jeffrey A. Fehervari
GEMSTAR-TV GUIDE
INTERNATIONAL, INC.
6922 Hollywood Blvd.
Hollywood, California 90028
(323) 817-4600

November 21, 2007

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Steven J. Fineman (#4025)
RICHARDS, LAYTON & FINGER PA
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
fineman@rlf.com

*Attorneys for Plaintiffs TV Guide Online, Inc.
and TV Guide Online, LLC*

31

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2007, I electronically filed the foregoing document

with the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand

Delivered to the following:

> Richard K. Herrmann, Esquire
> Mary B. Matterer, Esquire
> Morris James, LLP
> 500 Delaware Avenue
> Suite 1500
> Wilmington, DE 19801-1494

I hereby certify that on November 21, 2007, I have sent by Federal Express and

electronic mail, the foregoing document to the following non-registered participant:

> Mark A. Pals, P.C., Esquire
> Kirkland & Ellis, LLP
> 200 East Randolph Drive
> Chicago, IL 60601

> Steven J. Fineman (#4025)
> Richards, Layton & Finger, P.A.
> One Rodney Square
> P.O. Box 551
> Wilmington, Delaware 19899
> (302) 651-7700
> fineman@rlf.com

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 29, 2007, I electronically filed the foregoing document

with the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand

Delivered to the following:

    Richard K. Herrmann, Esquire
    Mary B. Matterer, Esquire
    Morris James, LLP
    500 Delaware Avenue
    Suite 1500
    Wilmington, DE 19801-1494

I hereby certify that on November 29, 2007, I have sent by electronic mail, the foregoing

document to the following non-registered participant:

    Mark A. Pals, P.C., Esquire
    Kirkland & Ellis, LLP
    200 East Randolph Drive
    Chicago, IL 60601

                                        _____
                                        Steven J. Fineman (#4025)
                                        Richards, Layton & Finger, P.A.
                                        One Rodney Square
                                        P.O. Box 551
                                        Wilmington, Delaware 19899
                                        (302) 651-7700
                                        fineman@rlf.com