IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| TV GUIDE ONLINE, INC. AND TV GUIDE ONLINE, LLC, | ) ) ) ) | |
| Plaintiffs, Counterclaim-Defendants, | ) ) ) | C.A. No. 05-CV-725-*** |
| v. | ) ) ) | **REDACTED** |
| TRIBUNE MEDIA SERVICES, INC. | ) ) ) | **PUBLIC VERSION** |
| Defendant, Counterclaim-Plaintiff. | ) ) ) ) | |

## TV GUIDE'S CONSOLIDATED ANSWERING BRIEF IN OPPOSITION TO TMS'S SUMMARY JUDGMENT MOTIONS DIRECTED TO DAMAGES ISSUES

OF COUNSEL:
Christopher J. Harnett
Ching-Lee Fukuda
Stuart W. Yothers
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000

Ronald E. Naves, Jr.
Jeffrey A. Fehervari
GEMSTAR-TV GUIDE
INTERNATIONAL, INC.
6922 Hollywood Blvd.
Hollywood, California 90028
(323) 817-4600

Dated: November 21, 2007

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Steven J. Fineman (#4025)
RICHARDS, LAYTON & FINGER PA
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
fineman@rlf.com
Attorneys for Plaintiffs TV Guide Online,
Inc. and TV Guide Online, LLC

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ........................................................................................1

II.   OVERVIEW .............................................................................................1

III.  NATURE AND STAGE OF THE PROCEEDINGS ....................................5

IV.   SUMMARY OF ARGUMENT ..................................................................5

V.    THE FACTS AT ISSUE ............................................................................7

VI.   ARGUMENT ...........................................................................................15

    A.   The Standard For Summary Judgment ..............................................15

    B.   TV Guide Is Entitled To Recover Damages From
        At Least As Early As April 29, 2005 -- The Date That
        TV Guide Provided Actual Notice Of Infringement .........................16

    C.   TMS's Argument That It Did Not Know The Identity
        Of The Patent Owner Cannot Be Taken Seriously .............................17

    D.   TV Guide Is Entitled To Recover Lost Royalties     **REDACTED**
        That Were Caused By TMS's Infringement ......................................18

        1.   TV Guide's Lost Royalties Were Both Foreseeable To
            TMS And Were Caused By TMS's Infringement .....................18

        2.   TMS's Argument That Lost Royalties Are "Not Judicially
            Recognized" Is Inconsistent With The Controlling Authorities ....21

        3.   TMS's Argument About The *Panduit* Test Is Legally Meaningless ....22

        4.   TMS's Scattershot Complaints About Dr. Velluro's Analysis
            Serve Only To Show That Genuine Issues Of Material Fact Exist .....23

VII.  CONCLUSION .......................................................................................27

i

# TABLE OF AUTHORITIES

## CASES

PAGE

*AFG Indus., Inc. v. Cardinal IG Co.,*
   375 F.3d 1367 (Fed. Cir. 2004) ...................................................................................15

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986).........................................................................................................15

*Aro Mfg. Co. v. Convertible Top Replacement Co.,*
   377 U.S. 476 (1964).........................................................................................................6

*Berckeley Inv. Group, Ltd. v. Colkitt,*
   455 F.3d 195 (3d Cir. 2006) ...........................................................................................21

*Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.,*
   739 F.2d 604 (Fed Cir. 1984) .........................................................................................25

*Cantor v. Perelman,*
   No. 97-586-KAJ, 2006 U.S. Dist. LEXIS 86329 (D. Del. Nov. 30, 2006) .....................21

*Ciba Specialty Chems. Corp. v. Hercules, Inc.,*
   436 F. Supp. 2d 670 (D. Del. 2006).........................................................................15, 17

*Davis v. Milwaukee County,*
   225 F. Supp. 2d 967 (E.D. Wis. 2002) ....................................................................15, 17

*Doeblers' Pa. Hybrids, Inc. v. Doebler,*
   442 F.3d 812 (3d Cir. 2006) ...........................................................................................27

*Hartford Nat'l Bank & Trust Co. v. E. F. Drew & Co.,*
   188 F. Supp. 353 (D. Del. 1960)..................................................................................6, 20

*Hodosh v. Block Drug Co.,*
   786 F.2d 1136 (Fed. Cir. 1986) ......................................................................................24

*eSpeed Inc. v. BrokerTec USA, LLC,*
   342 F. Supp. 2d 244 (D. Del. 2004)................................................................................27

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.,*
   177 F.3d 968 (Fed. Cir. 1999) ........................................................................................15

*Lans v. Digital Equip. Corp.,*
   252 F.3d 1320 (Fed. Cir. 2001) ......................................................................................17

ii

*Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH,*
    139 F.3d 877 (Fed. Cir. 1998) ..................................................................15

*Nickson Indus., Inc. v. Rol Mfg. Co.,*
    847 F.2d 795 (Fed. Cir. 1988) ..................................................................20

*Orthokinetics v. Safety Travel Chairs, Inc.,*
    806 F.2d 1565 (Fed. Cir. 1986) ..................................................................5

*Philips Petroleum Co. v. Rexene Corp.,*
    No. 90-208-LON, 1997 WL. 781856 (D. Del. Sept. 4, 1997)................................6, 20

*Rite-Hite Corp. v. Kelley Co.,*
    56 F.3d 1538 (Fed. Cir. 1995) ........................................................... *passim*

*Trio Process Corp. v. Goldstein's Sons, Inc.,*
    533 F.2d 126 (3d Cir. 1976) ..................................................................20

*Yarway Corp. v. Eur-Control USA Inc.,*
    775 F.2d 268 (Fed. Cir. 1985) ..................................................................25

## STATUTES

35 U.S.C. § 287..................................................................................4, 16

## OTHER AUTHORITIES

Robert L. Harmon, <u>PATENTS AND THE FEDERAL CIRCUIT</u>, 937 (8th ed. 2007)................22

Rule 56 Fed. R. Civ. P. ...........................................................................15, 18

iii

## I.    INTRODUCTION

On October 5, 2007, Defendant Tribune Media Services, Inc. ("TMS") filed four separate motions for summary judgment, two of which were directed to damages issues (D.I. 209 and D.I. 213). Through its first damages-related motion, TMS seeks to prevent plaintiffs TV Guide Online, Inc. and TV Guide Online, LLC (collectively "TV Guide") from recovering pre-suit damages. Through its second damages-related motion, TMS seeks to prevent TV Guide from recovering damages in the form of lost royalties caused by the continuing presence of TMS's infringing Zap2It.com website in the marketplace following TMS's refusal to take a license to the '078 patent-in-suit.

Neither of TMS's damages motions have any merit. Those motions present genuine issues of disputed material fact -- and, indeed, those motions are premised on several supposedly "undisputed" factual assertions that are demonstrably incorrect. At bottom, TMS's "kitchen sink" approach to summary judgment practice is the latest in a long line of TMS's efforts to avoid responsibility for its infringement of TV Guide's '078 patent.

## II.    OVERVIEW

TMS asserts that TV Guide is not entitled to recover pre-suit damages because TV Guide supposedly: (1) "did not mark its TV Guide.com website with the '078 patent number" until after this lawsuit was filed; (2) "did not inform TMS of the identity of the '078 patent owner;" and (3) "did not communicate to TMS a specific charge of infringement by a specific accused product or device prior to the date it filed this patent infringement suit." (D.I. 209 at 1).

With respect to item (1), TMS tries to create the illusion that its summary judgment motion has substance by dedicating page after page of its brief to an argument that TV Guide did not mark its own website with the '078 patent number until February 10, 2006. That

1

is both undisputed and utterly irrelevant. TV Guide is not seeking any pre-suit damages as a consequence of marking. Rather, TV Guide has made plain throughout discovery that it is seeking pre-suit damages commencing on April 29, 2005

**REDACTED**

Moving to item (2) referenced above, TMS's assertion that TV Guide did not "inform TMS of the identity of the patent owner," is simply not correct. At the time of the April 29, 2005 meeting, the '078 patent was assigned to Index Systems, Inc., which is a wholly owned subsidiary of Gemstar-TV Guide International, Inc. ("Gemstar").[1] The meeting was attended by Samir Armaly who, at the time, was an officer of Index Systems. Mr. Armaly's title in that regard was Senior Vice President of Intellectual Property and Licensing.

**REDACTED**

Mr. Armaly made crystal clear during -- and after -- the April 2005 meeting that he was authorized to negotiate a license to the '078 patent and that TMS should contact him. Accordingly, TMS cannot pretend that it did not know the identity of the patent owner.

TMS's third assertion -- that TV Guide "did not communicate to TMS a specific charge of infringement by a specific accused product or device"-- is also demonstrably incorrect. In that regard, TMS points to the "sworn testimony of TMS's Rule 30(b)(6) designee, Barbara Needleman, who personally attended the [April 29, 2005] meeting." (D.I. 209 at 9).    **REDACTED**

---

[1]    Plaintiffs TV Guide Online, Inc. and TV Guide Online, LLC are also wholly owned subsidiaries of Gemstar-TV Guide International, Inc.

**REDACTED**

In view of this and other evidence addressed below, TMS's assertions that there are no genuine issues of material fact precluding the grant of summary judgment barring recovery of pre-suit damages cannot be taken seriously. And, TMS fares no better with its summary judgment motion seeking to preclude TV Guide's recovery of lost royalties **REDACTED** According to TMS, lost royalty payments are improper because they are, supposedly, "not a recognizable form of lost profits damages." (D.I. 213 at 1).

As with its summary judgment motion relating to pre-suit damages, TMS presents a blizzard of off-point arguments. In an attempt to give its second motion some heft, TMS dedicates page after page to an argument that recovery of lost royalties resulting from TMS's infringing activities cannot properly be considered a "price erosion" damages claim (D.I. 213 at 14-15). That is utterly irrelevant -- neither TV Guide nor its damages expert (Dr. Christopher

---

[2]     As used herein, "Ex. __" refers to the stated exhibit to the Declaration of Stuart W. Yothers, which is submitted herewith.

Vellturo) ever suggested that its recovery of lost royalties was premised on a price erosion theory.

Rather, TV Guide's lost royalties are a tangible example of harm that was directly caused by TMS's infringement. Recovery for such harm is fully consistent with the patent damages statute. Specifically, 35 U.S.C. § 287 provides that "[u]pon finding for the claimant the court shall award the claimant damages *adequate to compensate for the infringement* but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." Patent infringement is a tort. Here, the tort committed by TMS -- the infringing presence of its Zap2It.com website in the marketplace -- caused harm to TV Guide in the form of lost royalties.

Because TMS was present in the market misappropriating the technology of the '078 patent (and, thereby, attracting advertisers and consumers to its infringing website), the value of licenses under that patent to other prospective licensees                        was necessarily diminished. This is a matter of common sense --                **REDACTED**

Stated plainly, when one party is taking something for free, other parties are less inclined to pay for it.

The loss of royalty payments to TV Guide was demonstrated and quantified by Dr. Vellturo as a matter of sound and easily-understood economics. When TMS criticizes TV Guide and Dr. Vellturo, arguing that the "factual bases for the [lost royalties] claim are a tangle of mismatched data and unsupported assumptions," TMS unwittingly concedes that its summary judgment motion has no merit. (D.I. 213 at 1). The words of TMS's own argument shows that there are disputed issues of fact. If TMS believes that there is a "tangle of mismatched data" or

4

"unsupported assumptions," TMS will have the opportunity to cross-examine Dr. Vellturo and other TV Guide witnesses and present its own evidence at trial.

## III.    NATURE AND STAGE OF THE PROCEEDINGS

TV Guide set forth a recitation of the procedural posture of this case in its October 5, 2007 Opening Claim Construction Brief (D.I. 205).   To avoid unnecessary duplication of information, TV Guide respectfully directs this Court's attention to that submission.

## IV.    SUMMARY OF ARGUMENT

1.    TV Guide is entitled to recover damages from at least as early as April 29, 2005.


## REDACTED


Post-meeting correspondence also confirms that TMS had been expressly put on notice of the need for a license under the '078 patent for the Zap2It.com website and that Mr. Armaly (an officer of Index Systems) was authorized to negotiate such a license.

2.    Patent infringement is a tort.  *Orthokinetics v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1579 (Fed. Cir. 1986).  The patent statute expressly provides that the patentee is entitled to recover damages "adequate to compensate for the infringement."  Both the United States Supreme Court and the U.S. Court of Appeals for the Federal Circuit have recognized that "adequate" damages should "approximate those damages that will *fully compensate* the patentee

5

for infringement." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (emphasis added). In that regard, the "question to be asked in determining damages is 'how much had the Patent Holder and Licensee suffered by the infringement. And that question [is] primarily: had the Infringer not infringed, what would the Patent Holder-Licensee have made?'" *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964) (citation omitted).

3.    TV Guide is entitled to recover damages in the form of lost royalties caused by TMS's infringing activities. Such damages are foreseeable and are directly caused by TMS's infringement.

4.    As to foreseeability, at least as early as the April 29, 2005 meeting, TMS was put on notice about TV Guide's patent licensing program and its efforts to secure licensing revenue from companies that use TV Guide's patented technology.

## REDACTED

5.    As to causation, the adverse consequences on TV Guide's licensing program with respect to the '078 patent are demonstrable as a matter of economics and common sense. It is self-evident that the amount one party is willing to pay for something is lessened if another party is taking it for free. Indeed, this Court has recognized that "[i]t is a fact of economic life that an open infringement tends to reduce patentee's fees from its subsequent licensees who must meet the infringer's competition, and such infringement deters potential licensees from taking a license." *Hartford Nat'l Bank & Trust Co. v. E. F. Drew & Co.*, 188 F. Supp. 353, 362 n.50 (D. Del. 1960), *aff'd*, 290 F.2d 589 (3d Cir. 1961); *Philips Petroleum Co. v. Rexene Corp.*, No. 90-208-LON, 1997 WL 781856, at *17 (D. Del. Sept. 4, 1997).

6

6.

# REDACTED

TMS's summary judgment papers show only that TMS disagrees with the factual bases for TV Guide's lost royalties claim. That is not grounds for summary judgment -- the appropriate way for TMS to proceed is by challenging TV Guide's evidence by cross-examination and by presenting its own evidence at trial. The fact that TMS cannot (or does not want to) do so, does not justify its motion for summary judgment.

## V.    THE FACTS AT ISSUE

TV Guide respectfully submits that the "facts" included in the "Statement of Undisputed Facts" set forth in TMS's two damages-related summary judgment motions are far from undisputed. Accordingly, TV Guide sets forth below its own recitation of relevant facts that are fully supported by the record. Those facts demonstrate that TMS is not entitled to the summary judgment it requests.

TV Guide Online, LLC is the owner by assignment of the '078 patent-in-suit. TV Guide Online, Inc. is the exclusive licensee of the '078 patent and has the right to bring suit for past infringement. The ultimate parent company of both TV Guide Online companies is Gemstar. Another wholly-owned subsidiary of Gemstar is Index Systems, which was the owner of the '078 patent before it was assigned to TV Guide Online, LLC (Armaly Aff. at ¶ 2[3]; and Ex. R).

---

[3]    As used herein "Armaly Aff. ¶ __" refers to the stated paragraph of the Affidavit of Samir Armaly, which is submitted herewith.

7

In early 2005, representatives of TV Guide Online, LLC and its parent company (Gemstar) and predecessor company (Index Systems), initiated discussions with TMS directed to licensing of the '078 patent and other patents. On April 29, 2005, the parties met in Chicago, where TMS is headquartered, to discuss TMS's need to take a license to patents -- including, specifically, the '078 patent-in-suit.

The April 29, 2005 meeting was attended by several TMS representatives, including Ms. Barbara Needleman -- TMS's Vice President for Entertainment Products

**REDACTED**                              Representatives of the

Gemstar companies that attended the April 29, 2005 meeting included Samir Armaly and Marcelino Ford-Levine. At the time of that meeting, Mr. Armaly was an officer of Index Systems.[5] Mr. Armaly's position for Index Systems was Senior Vice President of Intellectual Property and Licensing.

At the time of the April 29, 2005 meeting, TMS was marketing a website known as Zap2It.com, which is the subject of this lawsuit. At that same time, TV Guide was marketing its own website known as TVGuide.com. Both Zap2It.com and TVGuide.com allow customers to use their Zip Code as a geographic identifier to get access to television listings for their geographic area.

The operators of websites such as Zap2It.com and TVGuide.com receive revenues from companies that advertise their products and services on the website. The value of a website

_____

**REDACTED**

_____

[5]    Mr. Armaly was also an officer of the other Gemstar companies that owned additional patents that were the subject of discussions with TMS. (Armaly Aff. ¶¶ 4 and 6).

8

as an advertising platform relates to the volume of traffic on that website.   The number of viewers that access a website is directly related to the value of that website as an advertising forum.  (Armaly Aff. ¶ 8; Vellturo Ex. A at ¶ 26[6]).

**REDACTED**

---

[6]     As used herein "Vellturo Ex. __" refers to the stated exhibit to the Affidavit of Dr. Christopher A. Vellturo, which is submitted herewith.

**REDACTED**

**REDACTED**

Thus, TMS was, once again, made aware that the individuals authorized to negotiate a license under the '078 patent included Mr. Armaly who was an officer of Index Systems.

Following the April 2005 meeting, TV Guide Online continued with its efforts to engage TMS in productive licensing discussions.

**REDACTED**

11

**REDACTED**

In view of TMS's refusal to take a license under the '078 patent, TV Guide Online -- which previously had assumed ownership of the '078 patent from Index Systems -- filed its Complaint on October 12, 2005. Following TMS's refusal to take a license to the '078 patent, TV Guide continued with its efforts to license that technology to other companies that provide websites enabling access to television listing information using a geographic indicator such as a Zip Code.

**REDACTED**

12

**REDACTED**

As this litigation progressed, counsel for TV Guide engaged Dr. Vellturo to offer his opinions on the damages that TV Guide would be entitled to recover assuming a finding that the '078 patent is valid and infringed. After considering the documents produced by the parties and the testimony of percipient witnesses, Dr. Vellturo concluded that one measure of damages included lost royalties                    that were caused by TMS's infringement. In this regard, Dr. Vellturo opined that:

**REDACTED**

Dr. Vellturo also presented detailed calculations showing the dollar value of the lost royalties attributable to TMS's infringing activities. Those calculations are set forth in Tables 15 and 15-A that were included in his expert report and that are attached hereto. (Vellturo Ex. C at Ex. 15

13

and 15A).

**REDACTED**

The ability to calculate the lost royalty damages attributable to TMS's infringement is a consequence of recognized economic principles known as "linearity" and "monotonicity." Accordingly, Dr. Vellturo testified that:

> ... the concept that payments for a license are a monotonically increasing function of the size of the opportunity associated with that license, that's just a basic economic principle. If there is a bigger pie compared to a smaller pie, there is going to be a difference in the payments one would anticipate. That is just a basic economic principle of relative valuation.
>
> So, as a general principle, unless I see very strong evidence to the contrary, I would expect that kind of relationship between a contract and the magnitude of the business opportunity that the contract covers. So, that -- that just provides me with the historic concept that there is a monotonicity.
>
> Given the monotonocity, these additional analyses allow me to identify more approximately, but still I think with a reasonable degree of certainty, that at least

14

locally that there is a linearity associated with that monotonic relationship that I used to estimate the effect. (Ex. V at 160:8 - 161:3).

## VI.    ARGUMENT

### A.    The Standard For Summary Judgment

Summary judgment is improper when there exists a genuine issue as to any material fact. Rule 56(c), Fed. R. Civ. P.; *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986); *AFG Indus., Inc. v. Cardinal IG Co.*, 375 F.3d 1367, 1371 (Fed. Cir. 2004). As the moving party, TMS must establish that no material facts are in dispute. *See Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881 (Fed. Cir. 1998).

In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the non-moving party. *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 970 (Fed. Cir. 1999). The Court must draw all reasonable inferences and resolve all doubt over factual issues in the non-movants' favor. *See, e.g., Anderson*, 477 U.S. at 255 (stating that "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor"); *Karlin*, 177 F.3d at 970. In considering a motion for summary judgment, "a court must 'view the evidence presented through the prism of the substantive evidentiary burden' that would inhere at trial." *Monarch Knitting*, 139 F.3d at 880-81 (citation omitted).

Moreover, a court may grant summary judgment *sua sponte* to the non-moving party where the record reveals no genuine dispute on a material fact and "the law compels a judgment in favor of the non-movant." *Davis v. Milwaukee County*, 225 F. Supp. 2d 967, 970-71 (E.D. Wis. 2002); and *Ciba Specialty Chems. Corp. v. Hercules, Inc.*, 436 F. Supp. 2d 670, 683 (D. Del. 2006).

**B.    TV Guide Is Entitled To Recover Damages From At Least As Early As April 29, 2005 -- The Date That TV Guide Provided Actual Notice Of Infringement**

The Patent Statute provides that a patentee may recover damages "on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." 35 U.S.C. § 287(a) (2001).

The deposition testimony, contemporaneous writings and sworn statements of the representatives of TMS (on the one hand) and Index Systems and other Gemstar companies (on the other hand) who attended the April 29, 2005 meeting in Chicago confirm that:

1.    Samir Armaly, Vice President of Intellectual Property and Licensing attended the meeting on behalf of Index Systems -- the company that owned the '078 patent at that time;

2.    The '078 patent was specifically discussed during that meeting -- particularly with respect to the feature of using a geographic identifier such as a Zip Code to access local television information;

3.    The representative of Index Systems explained -- and the representative of TMS understood -- that the Gemstar Companies (which included Index Systems) believed that TMS needed a patent license for its Zap2It.com website;

4.    Mr. Armaly, who represented Index System's interests at the meeting with respect to the '078 patent, invited TMS to contact him and his colleagues for further negotiations with respect to a patent license for Zap2It.com; and

5.    TMS did exactly that with follow-up correspondence to Mr. Armaly in which TMS ultimately refused to take a license.

As such, there is absolutely no basis for TMS to claim entitlement to summary judgment precluding pre-suit damages. If anything, since TMS put this issue in play, summary judgment that TV Guide is, in fact, entitled to recover damages from at least as early as April 29,

16

2005 would be appropriate  *Ciba Specialty Chems. Corp*, 436 F. Supp. 2d at 683; *Davis*, 225 F.

Supp. 2d at 970-71.

**C.    TMS's Argument That It Did Not Know The Identity Of The Patent Owner Cannot Be Taken Seriously**

Throughout its summary judgment brief, TMS tries to pretend that it did not know

the identity of the owner of the '078 patent and argues, therefore, that pre-suit damages are

barred under the case of *Lans v. Digital Equip. Corp.*, 252 F.3d 1320 (Fed. Cir. 2001). TMS's

reliance on that case is unfounded.

TMS's argument distills down to the proposition that, because its representatives

do not remember hearing the words "Index Systems" in connection with the April 2005 meeting,

the patentee did not give TMS proper notice of the patent owner's identity. That is absurd. *The*

*officer of Index Systems with authority to license the '078 patent (Mr. Armaly) was sitting*

*directly across the negotiating table from TMS at the April 2005 meeting.*

## REDACTED

As the Federal Circuit explained in the *Lans* decision:

"[T]he purpose of the actual notice requirement is met when the recipient is
notified, with sufficient specificity, that the *patent holder believes* that the
recipient of the notice may be an infringer." *SRI Int'l, Inc. v. Advanced Tech.*
*Labs., Inc.*, 127 F.3d 1462, 1470, 44 USPQ2d 1422, 1428 (Fed. Cir. 1997)
(emphasis added). Besides alerting the alleged infringer to avoid further
infringement, the notice requirement also permits the alleged infringer to contact
the patentee about an amicable and early resolution of the potential dispute. Thus,
without knowledge of the patentee's identity, an alleged infringer may lose the
benefit of this primary purpose of the notice requirement. An alleged infringer
may lose the opportunity to consult with the patentee about design changes to
avoid infringement. Similarly, *without knowledge of the patentee, an alleged*
*infringer may lose the chance to negotiate a valid license.*

*Lans*, 252 F.3d at 1327 (emphasis added).

17

Index Systems's officer (Mr. Armaly) made plain -- and TMS understood full well -- that TMS needed to negotiate a license under the '078 patent through Mr. Armaly and his colleagues. *In fact, when TMS summarily rejected the offer of a license including the '078 patent, TMS wrote to Mr. Armaly.* The notice requirement, therefore, was unquestionably met.

### D.    TV Guide Is Entitled To Recover Lost Royalties    REDACTED<br>That Were Caused By TMS's Infringement

The evidence conclusively demonstrates that "but for" TMS's presence in the marketplace with the infringing Zap2It.com website, TV Guide would have received additional license payments    **REDACTED**    At the very least, there are genuine issues of material fact with respect to lost payments under the license and, therefore, TMS's motion for summary judgment must be denied. Rule 56, Fed. R. Civ. P.

### 1.    TV Guide's Lost Royalties Were Both Foreseeable To TMS And Were<br>Caused By TMS's Infringement

According to TMS, TV Guide's "lost royalties were not an injury that would have been foreseeable to TMS because TMS does not compete in the patent license market." TMS's argument is, put charitably, strained.

A tortfeasor such as TMS cannot put its head in the sand about the foreseeability of the harm it causes through its tortious infringement.

**REDACTED**

**REDACTED**

In view of this, TMS's argument that lost royalties were not a foreseeable consequence of TMS's infringement is dead wrong.

TMS's argument that there is no evidence of "causation" linking TMS's infringement with TV Guide's lost royalties is also incorrect. In fact, TMS's argument is doomed by the very legal authority it cites. Specifically, TMS relies on *Rite-Hite* for the proposition that "[t]he general principles expressed in the common law tell us that the question of legal compensability is one 'to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent.'" (D.I. 213 at 16-17.) TV Guide agrees.

The causal relationship between TMS's infringement and the lost royalties suffered by TV Guide are manifestly apparent. As a matter of "common sense" and "logic," the presence in the marketplace of a party such as TMS who is misappropriating TV Guide's patented technology without payment causes other parties REDACTED to be less inclined to pay for a license to that same technology. This follows like night follows day. The fact that TV Guide lost royalties as a consequence of TMS's infringement is also confirmed by Mr. Armaly's deposition testimony and affidavit as well as by Dr. Vellturo's expert report and deposition testimony -- all of which is summarized *supra* at pages 7-16. Because TMS was present in the market with its infringing website, TMS diverted viewers (and consequently advertising revenue) from other website operators REDACTED who were ultimately willing to pay for a license. The dimunition of viewers and advertising revenue invariably reduced the amount such licensees would pay for patent rights.

The causal relationship between infringement and lost royalties is also recognized in established case law. *See, e.g., Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 798 (Fed. Cir. 1988) ("For example, a higher figure may be awarded when the evidence clearly shows that widespread infringement made the established royalty artificially low."); *Phillips*, 1997 WL 781856, at *17 ("For example, courts have stated that established rates which are artificially depressed because the patent had not yet gained public recognition or acceptance or due to widespread infringement or to avoid challenges to the patent, may not constitute a reasonable royalty."); *Trio Process Corp. v. Goldstein's Sons, Inc.*, 533 F.2d 126, 129 (3d Cir. 1976) ("'It is a fact of economic life that an open infringement tends to reduce a patentee's fees from its subsequent licensees who must meet the infringer's competition, and such infringement deters potential licensees from taking a license.'"), quoting *Hartford*, 188 F. Supp. at 326 n.50).

20

2.    **TMS's Argument That Lost Royalties Are "Not Judicially Recognized" Is Inconsistent With The Controlling Authorities**

TMS asserts on several occasions that TV Guide's expert (Dr. Vellturo) has supposedly admitted that TV Guide's lost royalties claim "does not fall within a judicially recognized category of lost profits damages" (D.I. 213 at 2, 8, and 10). He admitted no such thing. Dr. Vellturo merely said that, as a matter of economics -- the discipline in which he is an expert -- it does not matter what legal "bucket" lost royalties damages would be placed in (Ex. V at 104:17-22).[7]    TMS's suggestion that TV Guide's lost royalties are not a "judicially recognized" form of damages is incorrect as a matter of law. As the Federal Circuit held in *Rite-Hite*:

> The statute thus mandates that a claimant receive damages "adequate" to compensate for infringement. Section 284 further instructs that a damage award shall be "in no event less than a reasonable royalty"; the purpose of this alternative is not to direct the form of compensation, but to set a floor below which damage awards may not fall. *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1326, 5 U.S.P.Q.2d 1255, 1260 (Fed. Cir. 1987). Thus, *the language of the statue is expansive rather than limiting*. It affirmatively states that damages must be adequate, while providing only a lower limit and no other limitation.
>
> ...Thus, while the statutory text states tersely that the patentee receive "adequate" damages, the Supreme Court has interpreted this to mean that *"adequate" damages should approximate those damages that will <u>fully compensate</u> the patentee for infringement*.

*Rite-Hite*, 56 F.3d at 1544-45 (emphasis added).

---

[7]    Dr. Vellturo is a Ph.D. economist. He is not a lawyer. Dr. Vellturo is offering opinions on the matter of economics -- not law. Indeed, this Court, like most other District Courts, do not permit expert testimony on legal issues from lawyers, let alone non-lawyers. *See Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006); *Cantor v. Perelman*, No. 97-586-KAJ, 2006 U.S. Dist. LEXIS 86329, at *10 (D. Del. Nov. 30, 2006). Legal instruction is the exclusive province of this Court.

In this regard, the Federal Circuit explained in the *Rite-Hite* case that the U.S. Supreme Court also has endorsed an appropriately expansive view of the statutory language relating to patent infringement damages:

> In *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 141 U.S.P.Q. 681 (1964), the Court discussed the statutory standard for measuring patent infringement damages, explaining:
>
>> The question to be asked in determining damages is "how much had the Patent Holder and Licensee suffered by the infringement. *And that question [is] primarily: had the Infringer not infringed, what would the Patentee Holder-Licensee have made?*"
>
> 377 U.S. at 507, 141 U.S.P.Q. at 694 (plurality opinion) (citations omitted). *This surely states a "but for" test.* In accordance with the court's guidance, we have held that the general rule for determining actual damages to a patentee that is itself producing the patented item is to determine the sales and profits lost to the patentee because of the infringement. *Del Mar*, 836 F.2d at 1326, 4 U.S.P.Q.2d at 1260; *see State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577, 12 U.S.P.Q.2d 1026, 1028 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1022 (1990) (award of damages may be split between lost profits as actual damages to the extent they are proven and a reasonable royalty for the remainder).

*Rite-Hite*, 56 F.3d at 1545 (emphasis added).

As a leading commentator on Patent Law has observed: "Section 284 imposes no limitation on the types of harm resulting from infringement that the statute will redress. Its broad language awards damages for an injury as long as it resulted from the infringement." Robert L. Harmon, PATENTS AND THE FEDERAL CIRCUIT, 937 (8th ed. 2007).

### 3.    TMS's Argument About The *Panduit* Test Is Legally Meaningless

TMS repeatedly criticizes TV Guide and Dr. Velturo for not applying the four-factor *Panduit* test in addressing TV Guide's entitlement to lost royalties.

## REDACTED

(D.I. 213 at 13.) TMS further argues that "[l]ooking at each of the *Panduit* factors individually also demonstrates that

22

this is not a valid lost sales claim" (D.I. 213 at 13). TMS's arguments are irrelevant as a matter

of law. As the Federal Circuit made crystal clear in *Rite-Hite*:

> Generally, the *Panduit* test has been applied when a patentee is seeking lost profits for a device covered by the patent in suit. ***However, Panduit is not the sine qua non for providing "but for" causation. If there are other ways to show that the infringement in fact caused the patentee's lost profits, there is no reason why another test should not be acceptable.*** Moreover, other fact situations may require different means of evaluation, and failure to meet the *Panduit* test does not *ipso facto* disqualify a loss from being compensable.

*Rite-Hite*, 56 F.3d at 1548 (emphasis added).

Here, the evidence shows that "but for" TMS's infringing presence in the

marketplace, more viewers -- and, therefore, more advertising revenues -- would have been

available to operators who lawfully practice the '078 patent by way of a license. As Dr. Vellturo

explained:

<br>

## REDACTED

<br>

Such "but for" causation is exactly the type of causation that the law contemplates for recovering

the loss attributable to patent infringement.

### 4.    TMS's Scattershot Complaints About Dr. Vellturo's Analysis Serve Only To Show That Genuine Issues Of Material Fact Exist

TMS spends page after page of its brief articulating its disagreement with the

methodology employed by Dr. Vellturo in calculating approximately REDACTED in lost

royalties attributable to TMS's infringing activities. In that regard, TMS repeatedly complains

about Dr. Vellturo's economic allocations and his factual assumptions (D.I. 213 at 19-26). TMS

also relies on the fact that its own retained expert, Mr. Chase, disagrees with Dr. Vellturo's

23

methodology and conclusions. None of this, however, supports TMS's motion for summary judgment in any way. TMS's complaints about Dr. Vellturo's methodology and factual assumptions simply confirm the existence of disputed fact issues that should be addressed at trial by cross-examination and presentation of TMS's own evidence (if it has any). The disagreement between expert witnesses -- which TMS points out -- also militates against summary judgment. *See Hodosh v. Block Drug Co.*, 786 F.2d 1136, 1143 (Fed. Cir. 1986) ("The fact issues herein must be resolved by trial in which the conflicting views of the experts will be subject to the refining fire of cross examination....") Beyond the fact that TMS's arguments do nothing to support its motion for summary judgment, those arguments are readily shown to be incorrect (or, at the very least, disputed), by reference to Dr. Vellturo's expert report and his deposition testimony.

## REDACTED

TMS then presents a truncated excerpt of Dr. Vellturo's testimony as supposed support. (*Id.*). TMS's efforts on this point are misleading. Here is the entirety of Dr. Vellturo's testimony from which TMS selected a limited and out-of-context quote:

## REDACTED

24

**REDACTED**

As. Dr. Vellturo explained, these payments could have been significantly higher. In any event, that analysis shows the amount of damages "with a reasonable degree or certainty" (Ex. V at 160:22-161:3). As a matter of law, the amount of loss attributable to infringing activity need not be presented with absolute precision and the infringer bears the risk of any uncertainty as to computation. *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 739 F.2d 604, 616 (Fed Cir. 1984); *Yarway Corp. v. Eur-Control USA Inc.*, 775 F.2d 268, 276 (Fed. Cir. 1985).

**REDACTED**

25

**REDACTED**

RLF1-3226637-1

**REDACTED**

## VII.   CONCLUSION

In view of the foregoing, TV Guide respectfully submits that TMS's summary judgment motion directed to pre-suit damages should be denied or, in the alternative, summary judgment should be entered in favor of TV Guide that it is entitled to receive damages beginning at least as early as April 29, 2005 -- the date on which TMS received actual notice of

---

8    In this regard, TMS agues that an "internal allocation of licensing proceeds is essentially a self-dealing -- and potentially self-serving -- transaction...." (D.I. 213 at 23).  In effect, TMS is making a credibility argument.  Credibility determinations are not properly resolved on summary judgment.  *See, e.g, eSpeed Inc. v. BrokerTec USA, LLC*, 342 F. Supp. 2d 244, 254 (D. Del. 2004) ("the parties rely on conflicting witnesses' testimony to support their claims and, in addition, their experts are at odds . . . Consequently, this issue is not proper for summary judgment"); *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 821 (3d Cir. 2006) ("credibility determinations that underlie findings of fact are appropriate to a bench verdict.  But they are inappropriate to the legal conclusions necessary to a ruling on summary judgment" (citations omitted)).  It is worth noting that TMS's expert (Mr. Chase) criticized TV Guide's internal allocations but doggedly defended TMS's internal allocations.  (Ex. W at 143:2-147:14).  This only confirms the existence of disputed fact issues.

infringement.  TV Guide also respectfully submits that TMS's motion with respect to lost

royalties should be denied in view of numerous genuine issues of disputed material fact.

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Steven J. Fineman (#4025)
Richards, Layton & Finger PA
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
fineman@rlf.com
Attorneys for Plaintiffs TV Guide Online, Inc. and
TV Guide Online, LLC

OF COUNSEL:
Christopher J. Harnett
Ching-Lee Fukuda
Stuart W. Yothers
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY  10020
(212) 596-9000

Dated:  November 21, 2007

28

RLF1-3226637-1

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2007, I electronically filed the foregoing document

with the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand

Delivered to the following:

Richard K. Herrmann, Esquire
Mary B. Matterer, Esquire
Morris James, LLP
500 Delaware Avenue
Suite 1500
Wilmington, DE 19801-1494

I hereby certify that on November 21, 2007, I have sent by Federal Express and

electronic mail, the foregoing document to the following non-registered participant:

Mark A. Pals, P.C., Esquire
Kirkland & Ellis, LLP
200 East Randolph Drive
Chicago, IL 60601

Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
fineman@rlf.com

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2007, I electronically filed the foregoing document

with the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand

Delivered to the following:

Richard K. Herrmann, Esquire
Mary B. Matterer, Esquire
Morris James, LLP
500 Delaware Avenue
Suite 1500
Wilmington, DE 19801-1494

I hereby certify that on November 29, 2007, I have sent by electronic mail, the foregoing

document to the following non-registered participant:

Mark A. Pals, P.C., Esquire
Kirkland & Ellis, LLP
200 East Randolph Drive
Chicago, IL 60601

Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
fineman@rlf.com