# EXHIBIT O

## WEDNESDAY, JAN. 29, 2003

**[27]** Noticias. 93271
**[AE]** Third Watch. ⓢ 320252
**[DIV]** The Larry Sanders Show. ⓢ 679691
**[ESC]** Even Stevens. ⓢ 688349
**[ESQ]** Crash Detectives. ⓢ 335184
**[FAM]** The 700 Club. ⓢ 504252
**[HBO]** The Vicard Corpse. ⓢ 6746875
**[DIC]** Perfect Crimes? ⓢ 9621962
**[LIF]** Golden Girls.
**[MSG]** High-School Sports Weekly. 95233
**[NIC]** Coach. ⓢ
**[SCI]** Star Trek Next Generation. ⓢ 721621

**11:30**
**[2]** That '70s Show. ⓢ 47639
**[5]** The Drew Carey Show. ⓢ 69639
**[9]** Everybody Loves Raymond. ⓢ 74707
**[21]** Are You Being Served? 16962
**[31]** News.
**[41]** Noticiero Univision: Ultima Hora. 72349
**[47]** Laura en America. 49368
**[55]** Ellmidate. 70981
**[DIS]** Boy Meets World. ⓢ 949007
**[HBO]** Erotic Confessions. 877610
**[MSG]** SportsDesk. ⓢ 45828
**[SCI]** SportsCenter. ⓢ 782423
**[TNT]** Law & Order. 274455

**11:35**
**[2] [6]** Late Show With David Letterman. ⓢ
**[4]** The Tonight Show With Jay Leno. ⓢ
**[7] [8]** Nightline. ⓢ 5625417 5729287

**12:00**
**[4]** Just Shoot Me. ⓢ 16027
**[9]** Blind Date. ⓢ 42837
**[11]** Will & Grace. ⓢ 37005
**[13]** Great News! Thu Alfred I. du Pont/Co-lumbia Awards 2002. ⓢ 73382
**[21]** Travels in Europe. 66011
**[25]** Pax First Weather. 8062769
**[41]** Hasta en los Mejores Familias. 24092
**[AE]** Biography. ⓢ 228011
**[DIS]** Boy Meets World. ⓢ 110214
**[ESC]** The Ultimate Guide. 233943
**[FAM]** The Caroline Rhea Show. ⓢ 281473
**[ESQ]** Racing From the Meadowlands. 790092
**[DIC]** UFOs: Then and Now? ⓢ 2615108
**[LIF]** Designing Women. ⓢ 216009
**[MSG]** Basketball.
New York Knicks at Miami Heat. ⓢ 497721
**[NIC]** The Cosby Show. ⓢ 982479
**[SCI]** Worst-Case Scenario. 470653
**[TNT]** Blind Date. ⓢ 561824
**[USA]** Nash Bridges. ⓢ 782395

**12:05**
**[7] [8]** Jimmy Kimmel Live. 4871560 4879100

**12:30**
**[2] [6]** Spin City. ⓢ 63618
**[9]** EX-tremo dating. 86978
**[11]** Frasier. ⓢ 23214
**[21]** Beautiful Nosery. ⓢ 45038
**[41]** JW Rojo Vivo! 90160
**[DIS]** Smart Guy. ⓢ 466905
**[ESC]** You Gotta See This! ⓢ 431081
**[FAM]** The Nanny. ⓢ 392160
**[NIC]** The Cosby Show. ⓢ 141408
**[SCI]** College Hoops Tonight. 365289
**[TNT]** Blind Date. ⓢ 824905
**[USA]** The X-Files. ⓢ 903903

**12:35**
**[2]** The Late Late Show With Craig Kilborn.
**[5]** Entertainment Tonight. ⓢ 6212634
**[7]** Late Night With Conan O'Brien. 4700450

**1:00**
**[2]** M*A*S*H. ⓢ 09244
**[4]** The 5th Wheel. 85276
**[5]** Inside Edition. ⓢ 24112
**[13]** Alan Alda in Scientific American Frontiers.
**[21]** Real Science! ⓢ
**[25]** Worship TV.
**[41]** La Mentira. 83479
**[AE]** American Justice. ⓢ 453011
**[DIS]** Sister, Sister. ⓢ 262301
**[ESC]** Billion Dollar Disasters. 468943
**[ESQ]** You Gotta See This! ⓢ 806769
**[DIC]** UFOs: What You Didn't Know. 6134818
**[LIF]** Mad About You. ⓢ 295069
**[NIC]** Cheers.
**[SCI]** SportsCenter. 824585
**[TNT]** Ripley's Believe It or Not! 837081
**[USA]** Real TV. 193672
**[USA]** Martin. ⓢ 195450

**1:05**
**[5]** The Late Late Show With Craig Kilborn.
**[7]** The Caroline Rhea Show. ⓢ 1916059
**[8]** Divorce Court. ⓢ 8533092

**1:30**
**[6]** Cops. ⓢ 73905
**[9]** King of the Hill. ⓢ 22295
**[11]** Taxi. ⓢ 17303
**[21]** La Corte da Familia. 71547
**[DIV]** Cirque du Soleil: Fire Within. 081924
**[ESC]** Even Stevens. ⓢ 983382
**[ESQ]** College Basketball.
Delaware at Hofstra. (R) 644056
**[LIF]** Any Day Now. ⓢ 665498
**[NIC]** Real TV. ⓢ 821943
**[USA]** Living Single. ⓢ 849769

**1:35**
**[5]** Ellmidate. 1367158
**[7]** Last Call With Carson Daly. 3062586
**[8]** Texas Justice. ⓢ 5100721

**2:00**
**[5]** Cops. ⓢ 56214
**[11]** Suddenly Susan. ⓢ 21061
**[21]** Real Science! ⓢ 8893059
**[41]** Retrato de Familia. 506108
**[47]** La Corte del Pueblo. 64856
**[AE]** City Confidential. ⓢ 406189
**[DIV]** The Larry Sanders Show. ⓢ 357843
**[DIS]** Boy Meets World. ⓢ 359301
**[ESC]** Treasures of the Earth. 404721
**[FAM]** The 700 Club. ⓢ 665127
**[DIC]** Modern Marvels. ⓢ 1287653
**[LIF]** SportsDesk. ⓢ 685653
**[MSG]** All in the Family.
**[SCI]** SportsCenter. 840393
**[TNT]** Worst-Case Scenario. 235009
**[USA]** V.I.P. ⓢ 181618

**2:05**
**[2]** Weakest Link. ⓢ 2313924
**[5]** News. ⓢ
**[7]** The Tonight Show With Jay Leno. ⓢ
**[8]** Ask Rita. 1866721

**2:15**
**[11]** Change of Heart. ⓢ 22858 -
**[DIV]** The Larry Sanders Show. ⓢ 336460
**[DIC]** The Jersey. ⓢ 345108

**2:33**
**[2]** Entertainment Tonight. ⓢ 5071637
**[5]** Judge Joe Brown. ⓢ 5068363
**[7]** News. ⓢ

**2:40**
**[8]** Entertainment Studios.com. 4288837

**3:00**
**[11]** Beyond With James Van Praagh. ⓢ
**[21]** Shakespeare Shorts. ⓢ 2375740
**[41]** Clasicos da Cristina. 077214
**[DIV]** Third Watch. ⓢ 458547
**[ESC]** Famous Jet Jackson. ⓢ 259837
**[DIC]** Perfect Crimes? ⓢ 4594924
**[MSG]** Basketball. (R) 681011
**[SCI]** Basketball. (R) 578547

**3:03**
**[2] [5]** Up to the Minute.
**[7]** Late Night With Conan O'Brien. ⓢ
**[8]** ABC World News Now. ⓢ 96353363

**3:10**
**[8]** ABC World News Now. ⓢ 28071382

**3:20**
**[21]** Shakespeare Shorts. ⓢ 98367672

**3:30**
**[55]** Headline News. -
**[DIS]** So Weird. ⓢ 329160
**[ESC]** S4321. 410295
**[NIC]** The Brady Bunch. 194056

**3:50**
**[13]** Inquiring Minds. 11353837

**4:00**
**[4]** Celebrity Justice. 14214
**[5]** News. ⓢ - -
**[11]** Street Smarts. ⓢ
**[21]** College Telecourse. 802276
**[DIS]** El Gordo y la Flaca. 670160
**[ESC]** Mother, She Wrote. ⓢ 116059
**[DIC]** The Jersey. ⓢ 349663
**[NIC]** Happy Days. 179257
**[SCI]** Martin. ⓢ 719189

**4:30**
**[4] [5]** CBS Morning News. 06382 60100
**[9]** Early Today. ⓢ 71450
**[11]** ABC World News This Morning.
**[41]** Ay, Caramba. 48721
**[DIV]** Cirque du Soleil: Fire Within. 258108
**[DIC]** Lloyd in Space. ⓢ 250566
**[NIC]** Charles in Charge. ⓢ 572585

**Fan Appreciation Sweepstakes**

**WIN**

**a Visit to the Andromeda Set!**

Other prizes include Andromeda Merchandise

Watch Andromeda and find out how to win! Check your Local Listings at

**www.Zap2it.com**

GENE RODDENBERRY'S
**Andromeda**

No purchase necessary. Official Entry Form and Rules at www.andromedatv.com. Limit one entry per ho. schold. Open to U.S. Citizens 18 years or older (except residents of Rhode Island). Odds depend on number of entries. Void where prohibited or restricted by law. Entries must be received by Monday, February 10, 2003 at 5:00 PM EST. One Fan selected at random will receive a trip to the Andromeda set; selected entrees will receive great prizes, other Action Figures, DVD's, Trading Cards or Official Andromeda Soundtracks.

**ZAP 2 it**
What to Watch

# EXHIBIT P

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TV GUIDE ONLINE, INC. and
TV GUIDE ONLINE, LLC,

     Plaintiffs and Counterclaim-defendants,

     v.

TRIBUNE MEDIA SERVICES, INC.,

     Defendant and Counterclaim-plaintiff.

)
)
)
)
)
)
)
)
)
)
)
)

**ENTERED IN DOCKET**
4|10|06 ntc

C.A. No. 05-725-KAJ

## TMS' RESPONSES TO TV GUIDE'S FIRST SET OF INTERROGATORIES

     Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant Tribune Media Services, Inc. ("TMS") hereby responds to the First Set of Interrogatories served by plaintiffs TV Guide Online, Inc. and TV Guide Online, LLC (collectively, "TV Guide"). Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, TMS expressly reserves the right to supplement these responses.

**Interrogatory No. 1:**

     State in detail all factual and legal bases for TMS's allegations set forth in "Defendant's Answer, Affirmative Defenses and Counterclaims," (i.e., the Second Affirmative Defense, and Count II, paragraphs 13-14 of the "Counterclaims") that "TMS has not infringed, has not contributed to infringement by others of, and has not induced infringement by others of the '078 patent, either literally or under the doctrine of equivalents," by providing claim charts that set forth each claim element that allegedly is not met by Defendant's website, www.Zap2It.com, or by the operation of that web site, explaining why each such element is not included (either

literally and under the doctrine of equivalents) and identifying the three persons (other than Defendant's counsel of record in this action) most knowledgeable about the factual bases for those allegations.

**Response To Interrogatory No. 1:**

Subject to and without waiving its General Objections, TMS responds that TMS, zap2it.com and use of zap2it.com do not infringe any claim of the '078 patent, either literally or under the doctrine of equivalents, for at least the following reasons:

**I.      Non-Infringement of Claims 1-5**

**A.      There Is No Direct Infringement of Claims 1-5.**

a.   Claims 1-5 are method claims.  TMS cannot directly infringe any of these claims, because (among other reasons) TMS does not "provid[e] a computerized unit at the particular viewing location," does not "transmit[ ], from the computerized unit . . .," and does not perform any of the other steps required by claims 1-5.

b.      Zap2it.com does not infringe any of these claims either.  Claims 1-5 each claim a method that is practiced "in a television distribution arrangement."  Zap2it.com neither operates nor is practiced "in a television distribution arrangement."  Rather, zap2it.com is a website that is independent of and does not interface with any "television distribution arrangement."  For that reason alone, zap2it.com and use of zap2it.com do not infringe claims 1-5.

c.   Claims 1-5 are not infringed for other, independent reasons.  For example, claims 1-5 each require the following steps:

providing a computerized unit at the particular viewing location, the unit including an operator input and a modem;

transmitting, from the computerized unit, information to a service provider through the wide area network regarding the geographical location of the particular viewing location; and

2

receiving, from the service provider, information specific to the type of programming available to the particular viewing location.

None of the above steps is practiced in use or operation of zap2it.com, for at least the following reasons:

### i. "providing a computerized unit at the particularized viewing location"

According to this limitation, the computer that transmits the geographical location of the television viewing location must be situated at the television viewing location -- i.e., the computer must be at the location where the television programming is received from the programming source.  Claim 1, '078 patent, col. 6, lines 38-41; *see also, e.g.,* May 17, 1999 Amendment to Appl. Ser. No. 08/947,950 ("All of Applicant's independent claims include the limitation, in one form or another, of <u>transmitting</u>, *from a computerized unit situated at a viewing location*, information regarding geographical location.") (underlining in original; italics added)) A user accessing television programming information on zap2it.com does not input geographical information through a computer required to be situated at the user's television viewing location. Rather, a user can access zap2it.com from a computer that is away from the user's television viewing location.

### ii. "transmitting, from the computerized unit, information to a service provider through the wide-area network regarding the geographical location of the particular viewing location"

Claims 1-5 require the computerized unit to transmit the geographical location of the viewing location.  As explained above, the claims also require the computerized unit to be situated at the television viewing location.  The claims further require the computerized unit to transmit the geographical location to a service provider *from the television viewing location.  See also* November 20, 1998 Amendment in Appl. Ser. No. 08/947,950 ("In particular, all of

3

Applicant's independent claims include the step or apparatus associated with *transmitting, from a viewing location*, information to a service provider through a wide-area network regarding the geographical location of the particular viewing location." (emphasis added)); *id.* ("the Alten patent is silent as to the transmission of geographical information *from the viewer location* to the service provider"); *id.* (". . . the Examiner seems to be disregarding the fact that, according to applicant, *such transmission also occurs according to Applicant's claims from the viewer location* to the service provider in regards to geographical location."); May 17, 1999 Amendment in Appl. Ser. No. 08/947,950 ("All of Applicant's independent claims include the limitation, in one form or another, of transmitting, *from a computerized unit situated at a viewing location*, information regarding geographical location.") (underlining in original; italics added)).

Thus, to satisfy the "transmitting" limitation of claims 1-5, the computer's transmittal of geographical information to the service provider must originate from the television viewing location. That limitation is not satisfied by zap2it.com. Zap2it.com is a website that does not interface with the "television viewing locations" that form the "television distribution arrangement" claimed in the '078 patent. Moreover, zap2it.com does not require a user to transmit geographical location information from a computer situated at the television viewing location. A zap2it.com user therefore does not perform the claimed "transmitting" step when accessing or using zap2it.com.

        iii.    **"receiving, from the service provider, information specific to the type of programming available to the particular viewing location"**

The "receiving from the service provider" limitation requires that the information sent by the service provider be downloaded to the user's personal computer so that the user may

4

manipulate the information. During prosecution of the '078 patent, the applicant explained this requirement:

> — "In contrast [to the prior art cited by the examiner], the present invention maintains a database including information relating to the programming available to the VCR during a future period, including program identification, start time and so forth. This information my be derived from a remote database via telephonic communication, by broadcast, or by subscription provision of disposable means. *In all cases, however, an entire block of schedule information for a given period of time is transferred to the personal computer in accordance with the present invention, thereby enabling an operator to perform database-type manipulations directly on this information, including its use to immediately schedule a particular video program for future recording.*" (November 16, 1993 Amendment, p. 8, Appl. Ser. No. 07/848,338) (emphasis added)

> — "The schedule information may be *downloaded* into the personal computer from a number of sources, including telephone communication, via broadcast, or by subscription provision of disposable memories." (September 3, 1996 Amendment, p. 3, Appl. Ser. No. 08/287,343) (emphasis added)

In addition, the official record of an April 15, 1997 interview between the applicant and patent examiner states:

> — Attorney for the Applicant argued, and both the Examiners agreed, that previously cited reference Yuen et al., on which the previous rejection of the independent claims was based, fails to teach the *downloading* of the schedule information by the PC and further downloading the same to a separate module for controlling the VCR as recited by the claims. (Interview Summary of April 15, 1997 interview, Appl. Ser. No. 08/287,343) (emphasis added)

In contrast to the downloading in the '078 patent, a user does not download television programming information from zap2it.com for manipulation by the user. Thus, use and operation of zap2it.com does not satisfy the "receiving from the service provider" limitation.

Because multiple limitations of independent claim 1 are not infringed by use or operation of zap2it.com, there can be no direct infringement of method claims 1-5.

### B.    There Can Be No Contributory Infringement of Claims 1-5.

Because there is no direct infringement of claims 1-5, there can be no contributory infringement of those claims.    In addition, there is no contributory infringement because zap2it.com has a substantial non-infringing use no matter how TV Guide tries to interpret the '078 patent claims.  As explained above, claims 1-5 require the user to transmit the geographical location of the television viewing location from a computer *"at the particular viewing location."* (*See, e.g.,* claim 1:   "providing a computerized unit at the particular viewing location" and "transmitting, from the computerized unit, information to a service provider through the wide-area network regarding the geographical location of the particular viewing location")   During prosecution of the '078 patent, the applicant confirmed that the computerized unit must transmit the geographical location to the service provider *from the television viewing location.*   For example, the applicant stated:

- "All of Applicant's independent claims include the limitation, in one form or another, of <u>transmitting</u>, *from a computerized unit situated at a viewing location*, information regarding geographical location."  May 17, 1999 Amendment in Appl. Ser. No. 08/947,950 (underlining in original; italics added)).

- "In particular, all of Applicant's independent claims include the step or apparatus associated with *transmitting, from a viewing location*, information to a service provider through a wide-area network regarding the geographical location of the particular viewing location." November 20, 1998 Amendment in Appl. Ser. No. 08/947,950(emphasis added).

- ". . . the Examiner seems to be disregarding the fact that, according to applicant, *such transmission also occurs according to Applicant's claims from the viewer location* to the service provider in regards to geographical location." *Id.*

Because users access and use zap2it.com away from their television viewing locations, zap2it.com has a substantial non-infringing use.   For example, consider the case of a user accessing zap2it.com from her work office in Philadelphia to see the television listings for the cable system at her home in Wilmington.  In that case, the user does not use a computer at her

"television viewing location" in Wilmington to transmit information to zap2it.com.  Rather, the computer is at her work office in Philadelphia -- miles away from her "television viewing location" in Wilmington, Delaware.  That type of use of zap2it.com (i.e., a user transmitting information to zap2it.com from a computer away from his television viewing location) is a substantial non-infringing use, regardless of how TV Guide tries to interpret its claims.

Thus, TMS cannot contributorily infringe claims 1-5 as a matter of law.

### C.    There Is No Inducement of Infringement Either.

Because there is no direct infringement, there can be no inducement of infringement.  In addition, there is no inducement of infringement because TMS has not knowingly induced anyone to infringe the '078 patent, nor has TMS had any specific intent to encourage anyone to infringe the '078 patent.  For example, claims 1-5 all require "providing a computerized unit *at the particular viewing location*" and "transmitting, from the computerized unit, information to a service provider through the wide-area network regarding the geographical location of the particular viewing location."  TMS does not instruct zap2it.com users to place a computer at their "particular viewing location" and to use the computer they placed at their "particular viewing location" to transmit information to zap2it.com regarding the geographical location of the "particular viewing location."  Indeed, zap2it.com has no requirement whatsoever that information transmitted to it originate from a computer placed at the user's "particular viewing location."

## II.    Non-Infringement of Claims 6-7

Claims 6-7 each contain the same "providing," "transmitting" and "receiving" limitations of claims 1-5:

7

"providing, at a television viewing location, a controller interfaced to a bi-directional modem and a display device"

"transmitting, from the television viewing location, information to a service provider through the wide-area network regarding the geographical area of the viewing location"

"receiving, from the service provider, television programming schedule information specific to the viewing location"

For the same reasons that there is no direct, contributory or inducement of infringement of claims 1-5, there is no direct, contributory or inducement of infringement of claims 6-7 either.

### III.    Non-Infringement of Claims 8-10

Claims 8-10 each claim a "system enabling a viewer of a television receiver to *download* information specific to the type of television programming available to the receiver," and each claim requires a "controller being programmed" to perform the claimed steps. (claim 8, col. 7, lines 26-28 and col. 8, lines 3-5 (emphasis added)) The downloading required by claim 8 means the user must be able to manipulate the information downloaded. *See, e.g.,* November 16, 1993 Amendment, p. 8, Appl. Ser. No. 07/848,338) ("In all cases, however, an entire block of schedule information for a given period of time is transferred to the personal computer in accordance with the present invention, thereby enabling an operator to perform database-type manipulations directly on this information, including its use to immediately schedule a particular video program for future recording.").

As explained above, zap2it.com does not enable a viewer of a television receiver to download television programming information available to the viewer's receiver. Zap2it.com also lacks the required "controller being programmed" to perform the claimed steps. For those reasons alone, there can be no direct, contributory or inducement of infringement of claims 8-10.

\*   \*   \*

TMS identified in its initial disclosures persons knowledgeable about the operation of zap2it.com, and TMS will identify additional knowledgeable people who come to its attention. TMS further notes that if TV Guide and its counsel had conducted an adequate pre-filing investigation into this matter, they would have discovered that TMS, zap2it.com and use of zap2it.com do not infringe any claim of the '078 patent.

TMS reserves the right to supplement and/or amend its answer to this interrogatory and its non-infringement contentions once additional facts are known, TV Guide's infringement contentions are provided and after the Court issues its claim construction ruling.

**Interrogatory No. 2**

State in detail all factual and legal bases for TMS's allegations set forth in "Defendant's Answer, Affirmative Defenses and Counterclaims," (i.e., the Third Affirmative Defense, and Count III, paragraph 15 of the "Counterclaims") that the patent-in-suit is "invalid for failing to comply with" one or more of the provisions of 35 U.S.C. §§ 102 and 103 including an identification of all facts, documents, information, prior art, activities, evidence, alleged motivation or suggestion to combine references, statutory or regulatory provisions tending to support or refute the allegation and, where appropriate, a claim chart comparing on an element by-element basis each claim of the patent to each item of prior art, including references to specific portions of the prior art by page, line, figure, or description.

**Response To Interrogatory No. 2:**

Subject to and without waiving its General Objections, TMS responds that the following prior art references, alone or in combination, invalidate all claims of the '078 patent under 35 U.S.C. §§ 102 and/or 103:

9

• The Personal Entertainment Guide, publicly used and described in printed publications including user guides (*see, e.g.,* TMS1105-1186) at least as early as March 8, 1991 -- more than a year before the '078 patent's effective filing date.

• The CompuServe system, publicly used and described in printed publications at least as early as March 8, 1991 (more than a year before the '078 patent's effective filing date), including without limitation THE COMPLETE GUIDE TO COMPUSERVE, published by Osborne-McGraw Hill in 1990 (TMS1210-1233); COMPUSERVE INFORMATION SERVICE TODAY, July 1981 (TMS1091-1098); COMPUSERVE INFORMATION SERVICE TODAY, October 1981 (TMS1084-1090); COMPUSERVE INFORMATION SERVICE TODAY, January 1982 (TMS1076-1083); COMPUSERVE INFORMATION SERVICE TODAY, April 1982 (TMS1070-1075); COMPUSERVE INFORMATION SERVICE TODAY, September/October 1982 (TMS1099-1104).

• U.S. Patent No. 4,706,121 (TMS1291-1326), titled "TV Schedule System and Process," issued to Patrick Young on November 10, 1987 -- more than a year before the '078 patent's effective filing date.

A.    **The Personal Entertainment Guide**

The Personal Entertainment Guide was in public use in this country and described in publicly available printed publications more than a year before the '078 patent's effective filing date.    TMS' predecessor TV Data supplied television listings for the Personal Entertainment Guide at least as early as January 1, 1991.  (TMS1274 - 1280)  The Personal Entertainment Guide distributed the television listings electronically to a user's "personal computer via telephone and modem."  (User Guide, p. I-2)  The user could configure the Personal Entertainment Guide system to download listings automatically or the user could control the transmission manually.  (*Id.* at II-1)  When a user requested television listings from

10

the Personal Entertainment Guide, the system transmitted the user's account number, which represents the user's name, address, cable company and cable line-up. (*Id.* at Appendix C and I-3)

The Personal Entertainment Guide displayed the listings in a rolling log format and in grid-format. (*Id.* at IV-1 - IV-3) It also allowed the user to search for television programs of interest and to create personal listings. (*Id.* at II-5, V-4, I-2)

The Personal Entertainment Guide invalidates each claim of the '078 patent:

| The Prior Art Personal Entertainment Guide Invalidates All Claims of the '078 Patent | |
|---|---|
| 1.    In a television distribution arrangement wherein a plurality of geographically dispersed television viewing locations receive television programming from a source of such programming, a method of receiving information specific to the type of programming available to a particular one of the viewing locations, the method comprising the steps of: | If TV Guide contends zap2it.com operates in a "television distribution arrangement," the prior art Personal Entertainment Guide also teaches operating in such an arrangement. |
| providing a computerized unit at the particular viewing location, the unit including an operator input and a modem, | The prior art Personal Entertainment Guide teaches a computer having an operator input and modem.    If TV Guide contends this limitation is met by zap2it.com, the limitation is also satisfied by the prior art Personal Entertainment Guide. (*See, e.g.,* I-2, I-4) |
| establishing a connection to a wide-area network through the modem; | The prior art Personal Entertainment Guide teaches connecting to a wide-area network through the modem. (*See, e.g., id.*) |
| transmitting, from the computerized unit, information to a service provider through the wide-area network regarding the geographical location of the particular viewing location; and | The prior art Personal Entertainment Guide teaches using a computer to transmit to a service provider through a wide-area network a transmission protocol that includes an account number.    The account number represents the user's name, address, cable company and cable line-up. (*See, e.g.,* Appendix C, I-3) |
| receiving, from the service provider, information specific to the type of programming available to the particular viewing location. | The prior art Personal Entertainment Guide teaches receiving from a service provider television listings specific to the type of programming available to the viewing location. (*See, e.g.,* User Guide, p. I-2, II-1)    It also |

11

| The Prior Art Personal Entertainment Guide Invalidates All Claims of the '078 Patent | |
|---|---|
| | teaches that the listings may be delivered electronically through a user's personal computer via telephone and modem. (*See, e.g.,* User Guide, p. I-2) |
| **2.** The method of claim 1, wherein the information transmitted to the service provider includes the Zip Code associated with the particular viewing location. | See the above claim chart for claim 1. The prior art Personal Entertainment Guide teaches using an account number representing the user's name, address, cable company and cable line-up. |
| **3.** The method of claim 1, wherein the information received from the service provider includes a schedule of the television programming available to the particular viewing location. | See the above claim chart for claim 1. The prior art Personal Entertainment Guide teaches receiving from a service provider television listings specific to the type of programming available to the viewing location. |
| **4.** The method of claim 1, wherein the computerized unit is interfaced to a display, and wherein the method further includes the step of displaying the information specific to the type of programming available to the particular viewing location. | See the above claim chart for claim 1. The prior art Personal Entertainment Guide teaches displaying on a computer information specific to the type of programming available to a viewing location (*See, e.g.,* I-1, I-2). |
| **5.** The method of claim 1, wherein the computerized unit further includes a memory for storing the information specific to the type of programming available to the particular viewing location. | See the above claim chart for claim 1. The prior art Personal Entertainment Guide teaches a computer having a memory for storing information specific to the type of programming available to the particular viewing location. (*See, e.g.,* I-2) |
| **6.** A method of receiving customized television programming schedule information, comprising the steps of: | The prior art Personal Entertainment Guide teaches a method of receiving customized television programming schedule information. |
| providing, at a television viewing location, a controller interfaced to a bidirectional modem and a display device; | If TV Guide contends this limitation is met by zap2it.com, the limitation is also satisfied by the prior art Personal Entertainment Guide. In addition, the prior art Personal Entertainment Guide also teaches providing a computer interfaced to a bi-directional modem and display device. (*See, e.g.,* I-1, I-2, I-4) |
| establishing a connection to a wide-area network through the modem; | The prior art Personal Entertainment Guide teaches connecting to a wide-area network through the modem. (*See, e.g., id.*) |
| transmitting, from the television viewing location, information to a service provider through the wide-area network regarding the geographical area of the viewing location; | The prior art Personal Entertainment Guide teaches using a computer to transmit to a service provider through a wide-area network a transmission protocol that includes an account number. The account number represents the |

12

| The Prior Art Personal Entertainment Guide Invalidates All Claims of the '078 Patent | |
|---|---|
| | user's name, address, cable company and cable line-up. (*See, e.g.,* Appendix C, I-3) |
| receiving, from the service provider, television programming schedule information specific to the viewing location; and | The prior art Personal Entertainment Guide teaches receiving from a service provider television listings specific to the type of programming available to the viewing location. (*See, e.g.,* User Guide, p. I-2) It also teaches that the listings may be delivered electronically through a user's personal computer via telephone and modem. (*See, e.g.,* User Guide, p. I-2) |
| viewing the information on the display device. | The prior art Personal Entertainment Guide teaches viewing programming schedule information on a display device (*See, e.g.,* I-1, I-2). |
| 7.    The method of claim 6, wherein the information transmitted to the service provider through the wide-area network regarding the geographical area of the viewing location is the Zip Code associated with the viewing location. | See the above claim chart for claim 1. The prior art Personal Entertainment Guide teaches using an account number representing the user's name, address, cable company and cable line-up. (*See, e.g.,* Appendix C, I-3) |
| 8.  A system enabling a viewer of a television receiver to download information specific to the type of television programming available to the receiver, the system comprising: | The prior art Personal Entertainment Guide teaches enabling a user to download information specific to the type of television programming available to the user. (*See, e.g.,* I-1, I-2) |
| an electronic terminal unit including an operator input, a bidirectional modem, and a controller in communication with the operator input and the modem, the controller being programmed to perform the following functions | The prior art Personal Entertainment Guide teaches an electronic terminal unit having an operator input, bi-directional modem and controller in communication with the operator and modem. (*See, e.g.,* I-1, I-2) The prior art Personal Entertainment Guide teaches downloading listings automatically at scheduled intervals. (*Id.* at II-1) |
| a) establish a connection to a service provider through the modem, | The prior art Personal Entertainment Guide teaches connecting to a wide-area network through the modem. (*See, e.g., id.*) |
| b) receive information through the operator input pertaining to the geographic location of the television receiver, | The prior art Personal Entertainment Guide teaches using a computer to transmit to a service provider through a wide-area network a transmission protocol that includes an account number. The account number represents the user's name, address, cable company and cable line-up. (*See, e.g.,* Appendix C, I-3) |
| c) transmit the information pertaining to the | The prior art Personal Entertainment Guide |

13

| The Prior Art Personal Entertainment Guide Invalidates All Claims of the '078 Patent | |
|---|---|
| geographic location of the television receiver to the service provider, and | teaches using a computer to transmit to a service provider through a wide-area network a transmission protocol that includes an account number. The account number represents the user's name, address, cable company and cable line-up. (*See, e.g.,* Appendix C, I-3) |
| d) receive, from the service provider, the information specific to the type of television programming available to the receiver | The prior art Personal Entertainment Guide teaches receiving from a service provider television listings specific to the type of programming available to the viewing location. (*See, e.g.,* User Guide, p. I-2) It also teaches that the listings may be delivered electronically through a user's personal computer via telephone and modem. (*See, e.g.,* User Guide, p. I-2) |
| 9. The system of claim 8, further including an electronic television interface in communication with the controller, the controller being further programmed to affect the operation of the television receiver in accordance with the information specific to the type of television programming available to the receiver. | See the above claim chart for claim 8. If TV Guide contends this limitation is met by zap2it.com, the limitation is also satisfied by the prior art Personal Entertainment Guide. |
| 10. The system of claim 8, further including a memory in communication with the controller for storing and retrieving the information specific to the type of television programming available to the receiver. | See the above claim chart for claim 8. The prior art Personal Entertainment Guide teaches a memory in communication with the controller for storing and retrieving information specific to the type of television programming available to a television receiver. (*See, e.g.,* I-1, I-2) |

**B.    CompuServe**

"CompuServe is an online information utility and a videotex system." THE COMPLETE GUIDE TO COMPUSERVE, page 4. It allows users to access, among other things, news, weather and entertainment information. *Id.* at 6. It allows users to enter geographical locations to access information available through CompuServe, for example, weather information for a specific geographic area. *Id.* at 100-103. Since at least as early as the 1980s, it also has allowed users to access and view newspapers, entertainment guides and television listings. *See, e.g.,*

COMPUSERVE INFORMATION SERVICE TODAY, July 1981; COMPUSERVE INFORMATION SERVICE TODAY, January 1982; COMPUSERVE INFORMATION SERVICE TODAY, April 1982; COMPUSERVE INFORMATION SERVICE TODAY, September/October 1982. Since at least as early as January 1982, when a user accessed television listings through CompuServe, the geographical location of the television viewing location was transmitted. *See, e.g.,* COMPUSERVE INFORMATION SERVICE TODAY, January 1982. Since at least as early as the 1980s, CompuServe also has provided a means for a user to connect to the cable company head-end servicing the user. COMPUSERVE INFORMATION SERVICE TODAY, October 1981.

CompuServe invalidates each claim of the '078 patent:

| CompuServe Invalidates All Claims of the '078 Patent | |
|---|---|
| 1. In a television distribution arrangement wherein a plurality of geographically dispersed television viewing locations receive television programming from a source of such programming, a method of receiving information specific to the type of programming available to a particular one of the viewing locations, the method comprising the steps of: | If TV Guide contends zap2it.com operates in a "television distribution arrangement," the prior art CompuServe system also teaches operating in such an arrangement. |
| providing a computerized unit at the particular viewing location, the unit including an operator input and a modem, | The prior art CompuServe system teaches a computer having an operator input and modem. If TV Guide contends this limitation is met by zap2it.com, the limitation is also satisfied by the prior art CompuServe system. (*See, e.g.,* THE COMPLETE GUIDE TO COMPUSERVE) |
| establishing a connection to a wide-area network through the modem; | The prior art CompuServe system teaches establishing a connection to a wide-area network through a modem. (*See, e.g.,* THE COMPLETE GUIDE TO COMPUSERVE) |
| transmitting, from the computerized unit, information to a service provider through the wide-area network regarding the geographical location of the particular viewing location; and | The prior art CompuServe system teaches transmitting information from a computer to a service provider through a wide area network regarding geographical information relating to weather ((*See, e.g.,* THE COMPLETE GUIDE TO COMPUSERVE, p. 100-101), television listings (*see, e.g.,* COMPUSERVE INFORMATION SERVICE TODAY, January 1982) and |

| CompuServe Invalidates All Claims of the '078 Patent | |
|---|---|
| | newspapers containing television listings (*see, e.g.,* COMPUSERVE INFORMATION SERVICE TODAY, April 1982) |
| receiving, from the service provider, information specific to the type of programming available to the particular viewing location. | The prior art CompuServe system teaches receiving information from a service provider in response to requests to that service provider. (*See, e.g.,* THE COMPLETE GUIDE TO COMPUSERVE) |
| 2.    The method of claim 1, wherein the information transmitted to the service provider includes the Zip Code associated with the particular viewing location. | See the above claim chart for claim 1.  The prior art CompuServe system teaches transmitting information from a computer to a service provider through a wide area network regarding geographical information relating to weather ((*See, e.g.,* THE COMPLETE GUIDE TO COMPUSERVE, p. 100-101), television listings (*see, e.g.,* COMPUSERVE INFORMATION SERVICE TODAY, January 1982) and newspapers containing television listings (*see, e.g.,* COMPUSERVE INFORMATION SERVICE TODAY, April 1982)  It would have been obvious to one of ordinary skill in the art to use a zip code as the geographical information. |
| 3.    The method of claim 1, wherein the information received from the service provider includes a schedule of the television programming available to the particular viewing location. | See the above claim chart for claim 1.  The prior art CompuServe system allowed users to access television listings at least as early as January 1982.    (*see, e.g.,* COMPUSERVE INFORMATION SERVICE TODAY, January 1982) |
| 4.    The method of claim 1, wherein the computerized unit is interfaced to a display, and wherein the method further includes the step of displaying the information specific to the type of programming available to the particular viewing location. | See the above claim chart for claim 1.  The prior art CompuServe System teaches a computer interfaced to a display and also teaches displaying information received in response to user queries.    (*See, e.g.,* THE COMPLETE GUIDE TO COMPUSERVE) |
| 5.    The method of claim 1, wherein the computerized unit further includes a memory for storing the information specific to the type of programming available to the particular viewing location. | See the above claim chart for claim 1.  The prior art CompuServe system teaches a computer having a memory for storing information. (*See, e.g.,* THE COMPLETE GUIDE TO COMPUSERVE) |
| 6.    A method of receiving customized television programming schedule information, comprising the steps of: | The prior art CompuServe system allowed users to access television listings at least as early as January 1982.    (*see, e.g.,* COMPUSERVE INFORMATION SERVICE TODAY, January 1982) |
| providing, at a television viewing location, a controller interfaced to a bidirectional modem | The prior art CompuServe system teaches a computer having an operator input and modem. |

| CompuServe Invalidates All Claims of the '078 Patent | |
|---|---|
| and a display device; | If TV Guide contends this limitation is met by zap2it.com, the limitation is also satisfied by the prior art CompuServe system. (See, e.g., THE COMPLETE GUIDE TO COMPUSERVE) |
| establishing a connection to a wide-area network through the modem; | The prior art CompuServe system teaches establishing a connection to a wide-area network through a modem. (See, e.g., THE COMPLETE GUIDE TO COMPUSERVE) |
| transmitting, from the television viewing location, information to a service provider through the wide-area network regarding the geographical area of the viewing location; | The prior art CompuServe system teaches transmitting information from a computer to a service provider through a wide area network regarding geographical information relating to weather ((See, e.g., THE COMPLETE GUIDE TO COMPUSERVE, p. 100-101), television listings (see, e.g., COMPUSERVE INFORMATION SERVICE TODAY, January 1982) and newspapers containing television listings (see, e.g., COMPUSERVE INFORMATION SERVICE TODAY, April 1982) |
| receiving, from the service provider, television programming schedule information specific to the viewing location; and | The prior art CompuServe system teaches receiving information from a service provider in response to requests to that service provider. (See, e.g., THE COMPLETE GUIDE TO COMPUSERVE) |
| viewing the information on the display device. | The prior art CompuServe System teaches viewing information received in response to user queries. (See, e.g., THE COMPLETE GUIDE TO COMPUSERVE) |
| 7.    The method of claim 6, wherein the information transmitted to the service provider through the wide-area network regarding the geographical area of the viewing location is the Zip Code associated with the viewing location. | See the above claim chart for claim 6.  The prior art CompuServe system teaches transmitting information from a computer to a service provider through a wide area network regarding geographical information relating to weather ((See, e.g., THE COMPLETE GUIDE TO COMPUSERVE, p. 100-101), television listings (see, e.g., COMPUSERVE INFORMATION SERVICE TODAY, January 1982) and newspapers containing television listings (see, e.g., COMPUSERVE INFORMATION SERVICE TODAY, April 1982)  It would have been obvious to one of ordinary skill in the art to use a zip code as the geographical information. |
| 8. A system enabling a viewer of a television receiver to download information specific to the type of television programming available to | If TV Guide contends zap2it.com enables a viewer of a television receiver to download information specific to the type of television |

17

| CompuServe Invalidates All Claims of the '078 Patent | |
|---|---|
| the receiver, the system comprising: | programming available to the receiver, the prior art CompuServe system also teaches enabling a viewer of a television receiver to download information specific to the type of television programming available to the receiver. |
| an electronic terminal unit including an operator input, a bidirectional modem, and a controller in communication with the operator input and the modem, the controller being programmed to perform the following functions | The prior art CompuServe system teaches an electronic terminal having an operator input, a bi-directional modem, and a controller in communication with the operator input and the modem. If TV Guide contends this limitation is met by zap2it.com, the limitation also is satisfied by the prior art CompuServe system. (*See, e.g.,* THE COMPLETE GUIDE TO COMPUSERVE) |
| a) establish a connection to a service provider through the modem, | The prior art CompuServe system teaches establishing a connection to a wide-area network through a modem. (*See, e.g.,* THE COMPLETE GUIDE TO COMPUSERVE) |
| b) receive information through the operator input pertaining to the geographic location of the television receiver, | The prior art CompuServe system teaches receiving information through an operator input pertaining to geographical information regarding television listings. (*see, e.g.,* COMPUSERVE INFORMATION SERVICE TODAY, January 1982) |
| c) transmit the information pertaining to the geographic location of the television receiver to the service provider, and | The prior art CompuServe system teaches transmitting information from a computer to a service provider through a wide area network regarding geographical information relating to weather ((*See, e.g.,* THE COMPLETE GUIDE TO COMPUSERVE, p. 100-101), television listings (*see, e.g.,* COMPUSERVE INFORMATION SERVICE TODAY, January 1982) and newspapers containing television listings (*see, e.g.,* COMPUSERVE INFORMATION SERVICE TODAY, April 1982) |
| d) receive, from the service provider, the information specific to the type of television programming available to the receiver | The prior art CompuServe system teaches receiving information from a service provider in response to requests to that service provider. (*See, e.g.,* THE COMPLETE GUIDE TO COMPUSERVE) |
| 9. The system of claim 8, further including an electronic television interface in communication with the controller, the controller being further programmed to affect | See the above claim chart for claim 8. If TV Guide contends this limitation is met by zap2it.com, the limitation is also satisfied by the prior art CompuServe system. |

| CompuServe Invalidates All Claims of the '078 Patent | |
|---|---|
| the operation of the television receiver in accordance with the information specific to the type of television programming available to the receiver. | |
| **10.** The system of claim 8, further including a memory in communication with the controller for storing and retrieving the information specific to the type of television programming available to the receiver. | See the above claim chart for claim 8. The prior art CompuServe system teaches storing and retrieving information. (*See, e.g.,* THE COMPLETE GUIDE TO COMPUSERVE) If TV Guide contends this limitation is met by zap2it.com, the limitation is also satisfied by the prior art CompuServe system. |

## C.    U.S. Patent No. 4,706,121, Issued to Patrick Young

The Young '121 patent issued November 10, 1987. It teaches accessing television programming information "with a personal computer through an information utility, such as Compuserve or The Source." (U.S. Patent No. 4,706,121, col. 21, line 68 - col. 22, line 2) Young teaches that "the user could either make the selection inputs to the utility's mainframe for running a selection program on the mainframe and then download the selected program information, or download the program schedule information for his or her locality, then run the selection program with the downloaded program schedule information on the personal computer. The television set and VCR could then be controlled as peripherals of the personal computer. Alternatively, the user could employ the selected program information from the personal computer to control the television receiver or VCR manually in the process of this invention." (U.S. Patent No. 4,706,121, col. 22, lines 2-14) Young also teaches that "[t]he TV scheduler can be used to control a satellite programmable tuner as well as a TV programmable tuner." (U.S. Patent No. 4,706,121, col. 22, lines 19-21)

Young invalidates each claim of the '078 patent:

| Young Invalidates All Claims of the '078 Patent | |
|---|---|
| **1.**    In a television distribution arrangement wherein a plurality of geographically dispersed | Young teaches a television distribution arrangement wherein a plurality of |

| Young Invalidates All Claims of the '078 Patent | |
|---|---|
| television viewing locations receive television programming from a source of such programming, a method of receiving information specific to the type of programming available to a particular one of the viewing locations, the method comprising the steps of: | geographically dispersed television viewing locations receive television programming from a source of such programming. (*See, e.g.,* Young, columns 21 and 22) |
| providing a computerized unit at the particular viewing location, the unit including an operator input and a modem, | Young teaches providing a computer at the television viewing location, with the computer using a service provider such as CompuServe or The Source to access television programming information. (*See, e.g.,* Young, columns 21 and 22) |
| Establishing a connection to a wide-area network through the modem; | Young teaches establishing a connection to a wide-area network to a service provider such as CompuServe or The Source to access television programming information. (*See, e.g.,* Young, columns 21 and 22) |
| Transmitting, from the computerized unit, information to a service provider through the wide-area network regarding the geographical location of the particular viewing location; and | Young teaches using CompuServe or The Source to access television programming information. (*See, e.g.,* Young, columns 21 and 22) As explained above, CompuServe allowed for the transmission of geographical information and television listings could be accessed through CompuServe since at least as early as 1982. |
| receiving, from the service provider, information specific to the type of programming available to the particular viewing location. | Young teaches receiving and downloading television program scheduling information for television programming available to the viewing location. (*See, e.g.,* Young, columns 21 and 22) |
| 2.  The method of claim 1, wherein the information transmitted to the service provider includes the Zip Code associated with the particular viewing location. | See the above claim chart for claim 1. Young teaches using CompuServe or The Source to access television programming information. (*See, e.g.,* Young, columns 21 and 22) As explained above, CompuServe allowed for the transmission of geographical information and television listings could be accessed through CompuServe since at least as early as 1982. It would have been obvious to one of ordinary skill in the art to use a zip code as the geographical information. |
| 3.  The method of claim 1, wherein the information received from the service provider includes a schedule of the television | See the above claim chart for claim 1. Young teaches receiving and downloading television program scheduling information for television |

20

| Young Invalidates All Claims of the '078 Patent | |
|---|---|
| programming available to the particular viewing location. | programming available to the viewing location. (*See, e.g.*, Young, columns 21 and 22) |
| 4. The method of claim 1, wherein the computerized unit is interfaced to a display, and wherein the method further includes the step of displaying the information specific to the type of programming available to the particular viewing location. | See the above claim chart for claim 1. Young teaches interfacing the computer to a display and displaying television programming information specific to the viewing location. (*See, e.g.*, Young, column 10) |
| 5. The method of claim 1, wherein the computerized unit further includes a memory for storing the information specific to the type of programming available to the particular viewing location. | See the above claim chart for claim 1. Young teaches receiving and downloading television program scheduling information for television programming available to the viewing location. (*See, e.g.*, Young, columns 21 and 22) |
| 6. A method of receiving customized television programming schedule information, comprising the steps of: | Young teaches a method of receiving customized television programming schedule information. |
| providing, at a television viewing location, a controller interfaced to a bidirectional modem and a display device; | Young teaches providing a computer at the television viewing location, with the computer using a service provider such as CompuServe or The Source to access television programming information. (*See, e.g.*, Young, columns 21 and 22) |
| establishing a connection to a wide-area network through the modem; | Young teaches establishing a connection to a wide-area network to a service provider such as CompuServe or The Source to access television programming information. (*See, e.g.*, Young, columns 21 and 22) |
| transmitting, from the television viewing location, information to a service provider through the wide-area network regarding the geographical area of the viewing location; | Young teaches using CompuServe or The Source to access television programming information. (*See, e.g.*, Young, columns 21 and 22) As explained above, CompuServe allowed for the transmission of geographical information and television listings could be accessed through CompuServe since at least as early as 1982. |
| receiving, from the service provider, television programming schedule information specific to the viewing location; and | Young teaches receiving and downloading television program scheduling information for television programming available to the viewing location. (*See, e.g.*, Young, columns 21 and 22) |
| viewing the information of the display device. | Young teaches displaying television programming information specific to the viewing location. (*See, e.g.*, Young, column 10) |
| 7. The method of claim 6, wherein the | See the above claim chart for claim 6. Young |

21

| Young Invalidates All Claims of the '078 Patent | |
|---|---|
| information transmitted to the service provider through the wide-area network regarding the geographical area of the viewing location is the Zip Code associated with the viewing location. | teaches using CompuServe or The Source to access television programming information. (*See, e.g.,* Young, columns 21 and 22)   As explained above, CompuServe allowed for the transmission of geographical information and television listings could be accessed through CompuServe since at least as early as 1982.  It would have been obvious to one of ordinary skill in the art to use a zip code as the geographical information. |
| **8.**  A system enabling a viewer of a television receiver to download information specific to the type of television programming available to the receiver, the system comprising: | Young teaches a system enabling a viewer of a television receiver to download information specific to the type of television programming available to the receiver.  (*See, e.g.,* Young, columns 21 and 22) |
| an electronic terminal unit including an operator input, a bidirectional modem, and a controller in communication with the operator input and the modem, the controller being programmed to perform the following functions | Young teaches providing a computer at the television viewing location, with the computer using a service provider such as CompuServe or The Source to access television programming information. (*See, e.g.,* Young, columns 21 and 22) |
| a) establish a connection to a service provider through the modem, | Young teaches establishing a connection to a wide-area network to a service provider such as CompuServe or The Source to access television programming information.    (*See, e.g.,* Young, columns 21 and 22) |
| b) receive information through the operator input pertaining to the geographic location of the television receiver, | Young teaches receiving information through an operator's input pertaining to the geographic location of a television receiver.  (*See, e.g.,* Young, columns 21 and 22) |
| c) transmit the information pertaining to the geographic location of the television receiver to the service provider, and | Young teaches using CompuServe or The Source to access television programming information.  (*See, e.g.,* Young, columns 21 and 22)   As explained above, CompuServe allowed for the transmission of geographical information and television listings could be accessed through CompuServe since at least as early as 1982. |
| d) receive, from the service provider, the information specific to the type of television programming available to the receiver | Young teaches receiving and downloading television program scheduling information for television programming available to the viewing location.  (*See, e.g.,* Young, columns 21 and 22) |
| **9.**  The system of claim 8, further including an electronic television interface in | See the above claim chart for claim 8.  Young teaches an electronic television interface in |

| Young Invalidates All Claims of the '078 Patent | |
| --- | --- |
| communication with the controller, the controller being further programmed to affect the operation of the television receiver in accordance with the information specific to the type of television programming available to the receiver. | communication with the computer, and further teaches that the television set and VCR could be controlled as peripherals of the computer. (*See, e.g.,* Young, columns 21 and 22) |
| **10.** The system of claim 8, further including a memory in communication with the controller for storing and retrieving the information specific to the type of television programming available to the receiver. | See the above claim chart for claim 8.  Young teaches using a computer to receive and download television program scheduling information for television programming available to a viewing location.  (*See, e.g.,* Young, columns 21 and 22) |

TMS reserves the right to supplement and/or amend its answer to this interrogatory and its invalidity contentions once additional facts are known, TV Guide's infringement contentions are provided and after the Court issues its claim construction ruling.

**Interrogatory No. 3**

State in detail all factual and legal bases for TMS's allegations set forth in "Defendant's Answer, Affirmative Defenses and Counterclaims," (i.e., the Third Affirmative Defense, and Count III, paragraph 15 of the "Counterclaims") that the patent-in-suit is "invalid for failing to comply with one or more of the provisions" of 35 U.S.C. §§ 101, and/or 112, including an identification of all facts and circumstances tending to support or refute the allegations.

**Response To Interrogatory No. 3:**

Subject to and without waiving its General Objections, TMS responds that the only portion of the '078 patent written description that allegedly provides support for the subject matter claimed in the patent is the following (col. 3, lines 46-67):

> In the preferred embodiment of the invention the schedule information is provided to the personal computer 18 from a remote database 40, which may constitute a database provider such as 'COMPUSERVE," "PRODIGY" or the like. This information may be customized for the cable service available to the system through an initialization routine in which the computer operator keys in

23

the postal ZIP code of his location and, if necessary, an identification of the cable service provider. The head end database uses this information to provide the computer 18 with the schedule of programming for that service. The operator of the personal computer system 18 may communicate with the schedule source over phone lines using modems at each end. Alternatively, the personal computer could employ a program in which the system automatically communicates with the schedule source 40 at predetermined periods, such as each morning at 4:00 am or the like, to update the schedule stored in the personal computer 18.

The above language does not describe a user entering geographical information into a website to see television listings information, which is what TV Guide now alleges the '078 patent claims cover. It is apparent from a simple comparison of the '078 patent claims with the specification that the named inventor Michael Levine did not regard as his alleged invention a user entering geographical information into a website to see television listings information.

TMS reserves the right to supplement and/or amend its answer to this interrogatory and its invalidity contentions once additional facts are known, TV Guide's infringement contentions are provided and after the Court issues its claim construction ruling.

**Interrogatory No. 4**

Identify and quantify all revenue on a monthly, quarterly, and annual basis derived by TMS in connection with the operation of the www.Zap2It.com website (beginning with the first receipt by TMS of any such revenue) and explain how TMS derives that revenue, either directly or indirectly.

**Response To Interrogatory No. 4:**

TMS objects to this interrogatory as seeking irrelevant information not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding TMS' revenue for periods prior to the date TV Guide filed this lawsuit. TV Guide has not marked its products that it contends practice the claims of the '078 patent (e.g., www.tvguide.com) and has not provided any evidence that any licensees under the '078 patent

24

have marked any of their products that TV Guide contends practice the clams of the '078 patent. Under no circumstances therefore is TV Guide entitled to damages for periods prior to the date it filed this lawsuit and has no need for TMS' revenue information for such periods. TMS further objects to Interrogatory No. 4 as unduly burdensome in its request for monthly, quarterly and annual revenue figures for www.zap2it.com.

Subject to and without waiving its specific and General Objections, TMS will answer this interrogatory with respect to revenue TMS has generated from www.zap2it.com from October 12, 2005 forward. TMS states that such answer may be derived or ascertained from business records in the possession, custody or control of TMS, and the burden of deriving or ascertaining the answer is substantially the same for TV Guide as it is for TMS. Thus, pursuant to Fed. R. Civ. P. 33(d), TMS will produce non-privileged documents from which TV Guide may derive the revenue TMS has generated from www.zap2it.com from October 12, 2005 forward, and the method by which TMS derived that revenue.

**Interrogatory No. 5**

State in detail all factual and legal bases for TMS's allegation in its Fourth Affirmative Defense, set forth in "Defendant's Answer, Affirmative Defenses and Counterclaims," that Plaintiffs' infringement claim is "barred by the doctrine of laches," including but not limited to identification of all facts, documents, activities, evidence and communications tending to support or refute the allegation and the identity of the three persons (other than Defendant's counsel of record in this action) most knowledgeable about the factual bases for those allegations.

**Response To Interrogatory No. 5:**

Subject to and without waiving its General Objections, TMS responds that TV Guide's infringement claim is barred by the doctrine of laches for at least the following reasons:

The '078 patent issued November 23, 1999. But neither TV Guide nor its predecessors in interest to the '078 patent notified TMS of the patent until April 2005 and did not assert the patent against TMS until October 12, 2005 -- almost 6 years after the patent issued.

There is no justification for the unreasonable delay by TV Guide and its predecessors in asserting the '078 patent. For almost 10 years now, TMS and its predecessors have publicly and openly operated websites and/or provided products that allow users to search and see television listings by zip code -- the very thing TV Guide now accuses of infringement. For example, beginning at least as early as mid-1995, TMS marketed and licensed a "TV Week Interactive" product to third parties. That "TV Week Interactive" product allowed users to search and see television listings by zip code over the Internet. (*See, e.g.,* TMS 1559-1577) The software for the "TV Week Interactive" product was developed by the same company that invented the prior art Personal Entertainment Guide. (*Id.*) From at least as early as March 1998 until the launch of zap2it.com in May 2000, TMS owned and operated a website called tvquest.com, which (like zap2it.com) allowed users to search and see television listings by zip code over the Internet. TMS' predecessor JDTV also provided a website, ultimatetv.com, that since at least as early as first quarter 1998 allowed users to search and see television listings by zip code over the Internet. Likewise, TV Data (another of TMS' predecessors) owned and operated a website called clicktv.com that was in public use and operation before zap2it.com. Clicktv.com (like zap2it.com) allowed users to search and see television listings by zip code over the Internet since at least as early as December 1997. Zap2it.com itself has been in public use and operation since May 2000 -- with no threat of patent litigation whatsoever by TV Guide, its predecessors in interest to the '078 patent or its parent Gemstar-TV Guide International, until October 12, 2005 when TV Guide filed this lawsuit.

TV Guide, its predecessors in interest to the '078 patent and its parent Gemstar-TV Guide International undoubtedly knew of the TMS products discussed above and their use of zip codes to search and see television listings over the Internet. Indeed, TMS, TV Guide and TV Guide's parent Gemstar-TV Guide International are competitors in the same industry and generally knowledgeable about the commercially available products of the other. Moreover, TMS, TV Guide and Gemstar-TV Guide International have met regularly over the years for various business reasons. Yet despite their knowledge and opportunity to object, TV Guide, its predecessors in interest to the '078 patent and its parent Gemstar-TV Guide International voiced no objection whatsoever to TMS providing and licensing websites and other products allowing users to search and see television listings by zip code, until almost 6 years after the '078 patent issued and almost 10 years after TMS began the activities TV Guide now accuses of infringement.

The lack of an objection for almost 10 years by Gemstar-TV Guide International, TV Guide or its predecessors in interest to the '078 patent is especially noteworthy given their track record. They have a long history of litigation, and Gemstar-TV Guide International is infamous for its patent suits over interactive program guide technology. Because such litigious players voiced no objection to TMS for almost 10 years, it was more than reasonable for TMS to rely on that silence as a confirmation that Gemstar-TV Guide International, TV Guide and its predecessors in interest to the '078 patent had no objection (patent-based or otherwise) to TMS operating websites and providing and licensing products that allow users to search and see television listings by zip code. It would be unfairly prejudicial to TMS after all these years to allow TV Guide to now come forward and assert the '078 patent against an activity that TMS (and its predecessors) have been engaged in for almost 10 years.

TMS reserves the right to supplement and/or amend its answer to this interrogatory once additional facts are known.

**Interrogatory No. 6**

State the date on which Defendant first became aware of the '078 patent, describe the circumstances leading to that awareness, including the identity of the person(s) involved, and identify all documents which refer or relate to this first awareness and the circumstances leading to the first awareness.

**Response To Interrogatory No. 6:**

Subject to and without waiving its General objections, TMS responds that it first became aware of the '078 patent in April 2005 through an email sent by Samir Armaly of Gemstar-TV Guide International, Inc. Mr. Armaly sent the email in advance of an April 29, 2005 meeting between representatives of TMS and Gemstar-TV Guide International. The purpose of the April 29, 2005 meeting was for TMS and Gemstar-TV Guide International to discuss potential ways for the parties to work together. TMS did not review the '078 patent before the April 29, 2005 meeting. The documents relating to TMS' first awareness of the '078 patent consist of the '078 patent and a PowerPoint presentation handed out by Gemstar-TV Guide International at the April 29, 2005 meeting. TMS further states that it and its predecessors had been operating websites and/or providing products allowing users to search and see television listings by zip code for almost 10 years before learning of the '078 patent.

**Interrogatory No. 7**

State in detail all factual and legal bases for TMS's allegations set forth in "Defendant's Answer, Affirmative Defenses and Counterclaims," (i.e., the Answer to paragraphs 25 and 27 of the Complaint, the First Affirmative Defense, and Count I, paragraphs 8-12 of the "Counterclaims") that "the '078 patent is unenforceable due to misuse by TV Guide Online, Inc.,

TV Guide Online, LLC, and their ultimate parent corporation Gemstar-TV Guide International, Inc." including but not limited to an explanation of how "TV Guide Online and Gemstar have misused the '078 patent and other patents in Gemstar's patent portfolio."

**Response To Interrogatory No. 7:**

Subject to and without waiving its General Objections, TMS responds that TV Guide Online and Gemstar-TV Guide International, Inc. have misused the '078 patent and other patents by licensing them subject to covenants not to assert, covenants not to sue, and/or grantback provisions. These covenants not to assert, covenants not to sue and grantback provisions allow TV Guide, Gemstar and their customers to free ride on some or all of the licensees' patented technology. These provisions unlawfully extend the bounds of the patent monopoly, creating disincentives for competition and innovation. For example, if a TV Guide or Gemstar licensee were to create a competitive interactive program guide technology, TV Guide and Gemstar as well as Gemstar's customers could, among other things, misappropriate the technology without fear of liability and free ride off of the licensee's technology or product development costs, thereby creating a disincentive to develop competing technology and products.

Judge Luckern, an Administrative Law Judge in the International Trade Commission ("ITC") found, after a full trial on the merits, that Gemstar's grantback and covenant not to sue provisions constitute patent misuse. According to Judge Luckern's publicly filed decision:

- the respondents in the investigation argued that Gemstar's licenses contain unlawful grantbacks and covenants not to sue (*In the Matter of Certain Set-Top Boxes and Components Thereof*, 2002 WL 31556392, at *80, 130-31 n.27);

- the ITC staff argued that Gemstar engaged in patent misuse by using its large patent portfolio to impermissibly expand the scope of its patents, hinder competition and discourage innovation in technology (id. at *80);

29

- Judge Luckern found that Gemstar had a large portfolio of interactive program guide ("IPG")-related patents which gave Gemstar a large share of the IPG technology market (*id.* at *85);

- Judge Luckern found that Gemstar's grantbacks and covenants not to sue in Gemstar's licensing agreements created significant barriers to entry in the IPG technology and product markets (*id.* at *87);

- Judge Luckern found that the constraints imposed in Gemstar's IPG licensing agreements demonstrated Gemstar's ability to control the market for IPG technology (*id.*);

- Judge Luckern rejected Gemstar's argument that Gemstar's grantbacks and covenants not to sue have not reduced efforts to participate in IPG innovations (*id.* at *91);

- Judge Luckern adopted testimony that Gemstar's grantbacks and covenants not to sue created a "free rider" problem which deterred innovation (*id.*); and

- Judge Luckern found that, as a result, Gemstar had engaged in patent misuse (*id.*).

Thus, Judge Luckern's publicly available opinion states that Gemstar had a large IPG patent portfolio; that Gemstar entered into license agreements giving rights to all of the patents in its portfolio; that Gemstar used covenants not to sue and grantbacks in its licensing agreements; that the covenants not to sue and grantbacks created a "free rider" problem, deterred innovation, and created barriers to entry; and that, consequently, Gemstar had committed patent misuse.

Even after Judge Luckern found Gemstar guilty of patent misuse, Gemstar continued entering into patent license agreements containing covenants not to sue. For example, the publicly available version of the Gemstar/TiVo Interactive Program Guide License Agreement (see http://www.secinfo.com/d14D5a.2PQ1.d.htm) contains the following provision entitled "TiVo's Covenant and Release," which governs TiVo and all successors in interest to its patents:

(a) COVENANT. TIVO covenants that, subject to GEMSTAR's continued compliance with the terms and conditions of this AGREEMENT, TIVO, to the extent it has the rights to assert, shall not assert against GEMSTAR, or any of GEMSTAR's suppliers, distributors, dealers, customers or licensees ("GEMSTAR'S CUSTOMERS"), any IPG-RELATED PATENT right against any IPG features or functionality of a GEMSTAR authorized IPG product or

GEMSTAR authorized IPG service, either of the foregoing that is TRANSFERRED or provided in the TERRITORY during the TERM. This covenant shall not apply to any GEMSTAR CUSTOMER who files a claim for patent infringement against TIVO in connection with the IPG features or functionality of a TIVO PVR DEVICE, the GEMSTAR AUTHORIZED TIVO IPG, or the TIVO SERVICE. The covenant set forth in this section shall bind and inure to all successors of interest of TIVO's IPG-RELATED PATENT rights.

On information and belief, the Gemstar/TiVo Interactive Program Guide License Agreement includes the '078 patent.

TMS reserves the right to supplement and/or amend its answer to this interrogatory once additional facts are known and TV Guide produces the license agreements and other documents that are the subject of TMS' outstanding discovery requests.

**Interrogatory No. 8**

State in detail all factual and legal bases for TMS's allegations set forth in "Defendant's Answer, Affirmative Defenses and Counterclaims," (i.e., the Answer to paragraphs 25 and 27 of the Complaint, the First Affirmative Defense, and Count I, paragraph 9 of the "Counterclaims") that "[t]he Administrative Law Judge in the matter of In re Certain Set-top Boxes and Components Thereof, Investigation Number 337-TA-454 in the International Trade Commission found that similar Gemstar licensing provisions constitute patent misuse," including but not limited to an identification of all information on which Defendant based its assertion that the license terms were "similar" and an explanation of how Defendant obtained that information, including, but not limited to, the identity of all persons who provided and/or received such information.

**Response To Interrogatory No. 8:**

TMS objects to Interrogatory No. 8 to the extent it seeks information duplicative of that sought by Interrogatory No. 7. Subject to and without waiving its General Objections and specific objections to this interrogatory and Interrogatory No. 7, TMS states that according to

Judge Luckern's publicly available decision in *In re Certain Set-top Boxes and Components Thereof*, Investigation Number 337-TA-454:

- the respondents in the investigation argued that Gemstar's licenses contain unlawful grantbacks and covenants not to sue (*In the Matter of Certain Set-Top Boxes and Components Thereof*, 2002 WL 31556392, at *80, 130-31 n.27);

- the ITC staff argued that Gemstar engaged in patent misuse by using its large patent portfolio to impermissibly expand the scope of its patents, hinder competition and discourage innovation in technology (*id.* at *80);

- Judge Luckern found that Gemstar had a large portfolio of interactive program guide ("IPG")-related patents which gave Gemstar a large share of the IPG technology market (*id.* at *85);

- Judge Luckern found that Gemstar's grantbacks and covenants not to sue in Gemstar's licensing agreements created significant barriers to entry in the IPG technology and product markets (*id.* at *87);

- Judge Luckern found that the constraints imposed in Gemstar's IPG licensing agreements demonstrated Gemstar's ability to control the market for IPG technology (*id.*);

- Judge Luckern rejected Gemstar's argument that Gemstar's grantbacks and covenants not to sue have not reduced efforts to participate in IPG innovations (*id.* at *91);

- Judge Luckern adopted testimony that Gemstar's grantbacks and covenants not to sue created a "free rider" problem which deterred innovation (*id.*); and

- Judge Luckern found that, as a result, Gemstar had engaged in patent misuse (*id.*).

Thus, Judge Luckern's publicly available opinion states that Gemstar had a large IPG patent portfolio; that Gemstar entered into license agreements giving rights to all of the patents in its portfolio; that Gemstar used covenants not to sue and grantbacks in its licensing agreements; that the covenants not to sue and grantbacks created a "free rider" problem, deterred innovation, and created barriers to entry; and that, consequently, Gemstar had committed patent misuse.

The covenant not to sue that Gemstar and TV Guide proposed to TMS was "similar" to what Judge Luckern found unlawful, because (among other reasons) Gemstar and TV Guide

sought covenants not to sue in both cases; the covenants not to sue were in exchange for licenses under TV Guide's and Gemstar's IPG patents in both cases; and in both cases, the covenants not to sue deter innovation.

Judge Luckern's decision is publicly available. TMS obtained it from Westlaw and other public sources.

TMS reserves the right to supplement and/or amend its answer to this interrogatory once additional facts are known and TV Guide produces the license agreements and other documents that are the subject of TMS' outstanding discovery requests.

**Interrogatory No. 9**

State in detail all factual and legal bases for TMS' s allegations set forth in "Defendant's Answer, Affirmative Defenses and Counterclaims," (i.e., the Answer to paragraphs 25 and 27 of the Complaint, the First Affirmative Defense, and Count I, paragraph 9 of the "Counterclaims"), that Gemstar "conditioned" its offer to license the '078 patent, including, but not limited to, an explanation of how Gemstar has a "practice" of conditioning licenses to its patents, and how "TV Guide Online and Gemstar have misused the '078 patent and other patents for the reasons the Administrative Law Judge found that Gemstar misused its patents in the matter of In re Certain Set-top Boxes and Components Thereof, Investigation Number 337-TA-454 in the International Trade Commission."

**Response To Interrogatory No. 9:**

TMS objects to Interrogatory No. 9 to the extent it seeks information duplicative of that sought by Interrogatory Nos. 7 and 8. Subject to and without waiving its General Objections and specific objections to this interrogatory and Interrogatory Nos. 7 and 8, TMS states:

According to Judge Luckern's publicly available decision in *In re Certain Set-top Boxes and Components Thereof*, Investigation Number 337-TA-454:

- the respondents in the investigation argued that Gemstar's licenses contain unlawful grantbacks and covenants not to sue (*In the Matter of Certain Set-Top Boxes and Components Thereof*, 2002 WL 31556392, at *80, 130-31 n.27);

- the ITC staff argued that Gemstar engaged in patent misuse by using its large patent portfolio to impermissibly expand the scope of its patents, hinder competition and discourage innovation in technology (*id.* at *80);

- Judge Luckern found that Gemstar had a large portfolio of interactive program guide ("IPG")-related patents which gave Gemstar a large share of the IPG technology market (*id.* at *85);

- Judge Luckern found that Gemstar's grantbacks and covenants not to sue in Gemstar's licensing agreements created significant barriers to entry in the IPG technology and product markets (*id.* at *87);

- Judge Luckern found that the constraints imposed in Gemstar's IPG licensing agreements demonstrated Gemstar's ability to control the market for IPG technology (*id.*);

- Judge Luckern rejected Gemstar's argument that Gemstar's grantbacks and covenants not to sue have not reduced efforts to participate in IPG innovations (*id.* at *91);

- Judge Luckern adopted testimony that Gemstar's grantbacks and covenants not to sue created a "free rider" problem which deterred innovation (*id.*); and

- Judge Luckern found that, as a result, Gemstar had engaged in patent misuse (*id.*).

Thus, Judge Luckern's publicly available opinion states that Gemstar had a large IPG patent portfolio; that Gemstar entered into license agreements giving rights to all of the patents in its portfolio; that Gemstar used covenants not to sue and grantbacks in its licensing agreements; that the covenants not to sue and grantbacks created a "free rider" problem, deterred innovation, and created barriers to entry; and that, consequently, Gemstar had committed patent misuse.

Here, on June 16, 2005 Gemstar-TV Guide submitted a proposal to TMS regarding licensing of the '078 patent. Gemstar-TV Guide's proposal included the following covenant not to assert provision:

**COVENANT NOT-TO-ASSERT.**  The grant of rights hereunder will be subject to Licensee [TMS] agreeing to covenant not-to-assert Licensee's IPG patents against Gemstar IPGs provided by Gemstar or its customers.

On November 16, 2005 TMS submitted a counter-proposal to Gemstar-TV Guide that did not include a covenant not to assert provision.

On November 29, 2005 Gemstar-TV Guide submitted a counter to TMS.  That November 29, 2005 counter included a covenant not to assert provision that was *broader* than the one in Gemstar-TV Guide's original June 16, 2005 proposal (emphasis added):

**COVENANT NOT-TO-ASSERT.**  The grant of rights hereunder will be subject to Licensee [TMS] agreeing to covenant not-to-assert Licensee's IPG patents **(includes existing patents and any future patents Licensee and its subsidiaries own or have the right to enforce)** against Gemstar IPGs provided by Gemstar or its customers.

On December 8, 2005 TMS responded with another proposal that again did not include a covenant not to assert provision.

Gemstar-TV Guide responded on December 14, 2005, saying it was "not interested or willing to negotiate off of [TMS'] counter-proposal."  In that December 14, 2005 communication, Gemstar-TV Guide included another proposal that "made a few minor modifications to [its] prior proposal," but included the same, broader covenant not to assert provision contained in its November 29, 2005 proposal (emphasis added):

**COVENANT NOT-TO-ASSERT.**  The grant of rights hereunder will be subject to Licensee [TMS] agreeing to covenant not-to-assert Licensee's IPG patents **(includes existing patents and any future patents Licensee and its subsidiaries own or have the right to enforce)** against Gemstar IPGs provided by Gemstar or its customers.

Gemstar-TV Guide then added (first emphasis added; second emphasis in original):  "If we do not receive a substantive response to our proposal *based on the framework set forth in the attached document* by **December 21, 2005**, we will assume that the parties are too far off to

reach a commercial resolution on these issues, and will be left with no other option than to proceed with the litigation that has already been filed."

TMS reserves the right to supplement and/or amend its answer to this interrogatory once additional facts are known and TV Guide produces the license agreements and other documents that are the subject of TMS' outstanding discovery requests.

**Interrogatory No. 10**

State in detail all factual and legal bases for TMS's allegations set forth in "Defendant's Answer, Affirmative Defenses and Counterclaims," (i.e., the Answer to paragraphs 25 and 27 of the Complaint, the First Affirmative Defense, and Count I, paragraph 11 of the "Counterclaims"), that TMS "had to agree" to a covenant not-to-assert provision "as a condition to any license."

**Response To Interrogatory No. 10:**

TMS objects to Interrogatory No. 10 to the extent it seeks information duplicative of that sought by Interrogatory No. 9. Subject to and without waiving its General Objections and specific objections to this interrogatory and Interrogatory No. 9, TMS states:

On June 16, 2005 Gemstar-TV Guide submitted a proposal to TMS regarding licensing of the '078 patent. Gemstar-TV Guide's proposal included the following covenant not to assert provision:

**COVENANT NOT-TO-ASSERT.** The grant of rights hereunder will be subject to Licensee [TMS] agreeing to covenant not-to-assert Licensee's IPG patent against Gemstar IPGs provided by Gemstar or its customers.

On November 16, 2005 TMS submitted a counter-proposal to Gemstar-TV Guide that did not include a covenant not to assert provision.

On November 29, 2005 Gemstar-TV Guide submitted a counter to TMS. That November 29, 2005 counter included a covenant not to assert provision that was *broader* than the one in Gemstar-TV Guide's original June 16, 2005 proposal (emphasis added):

**COVENANT NOT-TO-ASSERT.** The grant of rights hereunder will be subject to Licensee [TMS] agreeing to covenant not-to-assert Licensee's IPG patents **(includes existing patents and any future patents Licensee and its subsidiaries own or have the right to enforce)** against Gemstar IPGs provided by Gemstar or its customers.

On December 8, 2005 TMS responded with another proposal that again did not include a covenant not to assert provision.

Gemstar-TV Guide responded on December 14, 2005, saying it was "not interested or willing to negotiate off of [TMS'] counter-proposal." In that December 14, 2005 communication, Gemstar-TV Guide included another proposal that "made a few minor modifications to [its] prior proposal," but included the same, broader covenant not to assert provision contained in its November 29, 2005 proposal (emphasis added):

**COVENANT NOT-TO-ASSERT.** The grant of rights hereunder will be subject to Licensee [TMS] agreeing to covenant not-to-assert Licensee's IPG patents **(includes existing patents and any future patents Licensee and its subsidiaries own or have the right to enforce)** against Gemstar IPGs provided by Gemstar or its customers.

Gemstar-TV Guide then added (first emphasis added; second emphasis in original): "If we do not receive a substantive response to our proposal *based on the framework set forth in the attached document* by **December 21, 2005**, we will assume that the parties are too far off to reach a commercial resolution on these issues, and will be left with no other option than to proceed with the litigation that has already been filed."

TMS reserves the right to supplement and/or amend its answer to this interrogatory once additional facts are known and TV Guide produces the license agreements and other documents that are the subject of TMS' outstanding discovery requests.

## GENERAL OBJECTIONS

1.     TMS objects to these interrogatories, including the definitions and instructions, to the extent they seek to impose any requirements or obligations on TMS in addition to or different from those imposed by the Federal Rules of Civil Procedure, the Local Rules of this Court, any applicable orders of this Court, any stipulation or agreement of the parties, or other applicable law. TMS will answer in accordance with the applicable Rules.

2.     TMS objects to each interrogatory to the extent it calls for information protected from discovery by the attorney-client privilege or the attorney work-product doctrine, or that is otherwise protected from disclosure under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or the relevant statutory or case law.   As provided for in the Protective Order governing this case, inadvertent disclosure of any such information shall not be deemed a waiver of any privilege or immunity.

3.     TMS objects to each interrogatory to the extent it requests TMS to produce or otherwise analyze documents, things, or other information that is not within the possession, custody or control of TMS, or to prepare documents or other information that does not already exist, or to seek information about persons not currently employed or associated with TMS.

4.     TMS objects to each interrogatory to the extent it seeks discovery of materials within the scope of Rule 26(b)(4)(A) of the Federal Rules of Civil Procedure, and therefore constitutes an improper and premature attempt to conduct discovery of expert opinion.

5.     TMS objects to each interrogatory using the terms "refer to," "relating to," "related to," or "that relates to," as well as TV Guide's definition of those terms (Definition 8), to the extent they are used in a manner that renders the request overbroad, vague or ambiguous, or requires subjective judgment and speculation on the part of TMS.

6.    TMS objects to TV Guide's Instructions 2 and 3, instructing TMS to identify documents that have been destroyed or are not in TMS' possession, custody or control, as unreasonable, unduly burdensome, and not in accordance with the Federal Rules of Civil Procedure. TMS will identify and produce documents in accordance with the requirements set forth in the Federal Rules.

7.    TMS objects to these interrogatories on the basis of the foregoing general objections and such other additional specific objections as have been set forth herein in response to particular interrogatories. TMS does not waive any General Objection to a specific interrogatory, but rather incorporates each of these General Objections in its response to each interrogatory.


Dated: April 10, 2006

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES HITCHENS & WILLIAMS
222 Delaware Avenue 10th Floor
Wilmington, Delaware 19801
302.888.6800
rherrmann@morrisjames.com
*Attorneys for Defendant*
*Tribune Media Services, Inc.*


**Of Counsel:**
Mark A. Pals, P.C.
Linda S. DeBruin
Michael A. Parks
Laura A. Hepburn
Meredith Zinanni
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
312.861.2000

## VERIFICATION

I, Beth A. Fulkerson, state that I am an authorized agent of Tribune Media Services, Inc.

("TMS") for the purpose of verifying *TMS' Responses to TV Guide's First Set of Interrogatories,*

and that I have so verified them in accord with applicable law and rules.

Executed April 10, 2006

_____
Beth A. Fulkerson