# EXHIBIT SS

# PART 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TV GUIDE ONLINE, INC. AND TV GUIDE ONLINE, LLC | ) ) ) | |
| | ) | **Civil Action No.: 05-CV-725-KAJ** |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| TRIBUNE MEDIA SERVICES, INC., | ) ) | |
| Defendant | ) ) ) | |

---

**EXPERT REPORT OF DR. GARY S. TJADEN REGARDING INVALIDITY OF
UNITED STATES PATENT NO. 5,988,078**

---

1. My name is Gary S. Tjaden. I currently reside at 2820 GlenEagles Pointe, Alpharetta, Georgia 30005.

## I.    Background and Qualifications

2. I am currently Founder and President of COCOMO ID, LLC, a developer of technology for mobilized speech-audio publishing. From 1993 through 2004 I was a Principal Research Engineer and Director of the Center for Enterprise Systems at the Georgia Institute of Technology. Before coming to the Georgia Institute of Technology I held numerous executive positions with NYNEX Corporation (1987-92), a regional telecommunication service provider, and with Burroughs/Unisys (1984-87), a manufacturer of computer systems and provider of information technology services. I also was Senior Vice President of Engineering and Technology for Cox Cable Communications from 1979 to 1984, where I was involved in various

company activities and ventures, including supervising development and implementation of the company's interactive cable-based videotext system known as INDAX. Prior to joining Cox, I held research and development posts with Sperry Corporation in both the Sperry Research Center located in Sudbury, Massachusetts (1975-76) and the Univac Division located in Bluebell, Pennsylvania (1976-79) and with the Bell Telephone Laboratories Electronic Switching Systems Division located in Naperville, Illinois (1966-70 and 1972-75).

3. I am a named inventor of eight issued U.S. patents, and thus I am familiar with the prosecution of patent applications before the United States Patent & Trademark Office ("USPTO").

4. I hold a Bachelor of Science degree in Electrical Engineering (B.S.E.E.), which I received from the University of Utah in 1966. I received a Master of Science degree in Electrical Engineering (M.S.E.E.) in 1969 from Northwestern University. In 1973, I received a Doctor of Philosophy (Ph.D.) degree in Computer Science from the Johns Hopkins University.

5. My detailed educational and professional background and a list of my technical publications for the preceding ten years are described in my curriculum vitae, attached hereto as EXHIBIT 1. My curriculum vitae also lists the cases in which I have testified as an expert at trial or by deposition during the last four years.

## II.    Subject Matter of This Report

6. I have been retained by TRIBUNE MEDIA SERVICES, Inc. ("TMS") as an expert witness in this action to provide my technical assessment and opinions regarding U.S. Patent No. 5,988,078 ("the '078 Patent"), entitled "Method And Apparatus For Receiving Customized

2

Television Programming Information By Transmitting Geographic Location To A Service Provider Through A Wide-Area Network". In making my analyses I have been informed that the Court has not yet adopted the constructions of specific claim terms, so I have assumed constructions where necessary. I have used these assumed constructions, stated in the attached claim charts, in forming my opinions. I reserve the right to revise my opinions in light of other constructions given to me in the future by the Court or others. I am being compensated for my time at my normal hourly rate, which is $400. No part of my compensation depends on the outcome of this litigation, the opinions I express, or my testimony.

7. I have been informed that TV Guide Online, Inc. and TV Guide Online, LLC (collectively, "TV Guide") have alleged that TMS' zap2it.com services or systems infringe claims 1, 2, 3, 4, 5, 6, 7, 8 and 10 of the '078 Patent. It is the validity or invalidity of these asserted claims with which this Report deals.

8. It is my opinion that, under the assumed claim constructions, all of the asserted claims of the '078 Patent are invalid because the prior art anticipates the claims and/or the claims would have been obvious to one of ordinary skill in the art at the time of the filing of the '078 patent application.

9. I am informed that plaintiffs assert a priority filing date for the '078 Patent of March 9, 1992. In formulating my opinion I have assumed that the date of invention is no earlier than March 9, 1992 for all asserted claims.

10. In formulating my opinion, I have carefully reviewed the '078 patent, its prosecution history, and some of the references cited in the prosecution history. I have also considered the level of skill in the art, the scope and content of the prior art, and the differences between the

prior art and the claimed invention.  In addition, I have and/or will consider any objective

evidence relating to the obviousness issue, including any alleged commercial success, failure or

success by others in developing the alleged invention, any unexpected results, any long felt need,

and any other evidence submitted on this point.  A list of the materials I reviewed in reaching the

opinions set forth in this Report is attached as EXHIBIT 2.  At this time I have not determined

what exhibits I may use in connection with my testimony at trial, but they will most likely be

derived from the materials that I considered.

III.    **Technology Background**

11. The patent in question is generally related to the field of mass, consumer-oriented,

electronic information distribution systems and, more specifically, to the sub-field of electronic

information distribution systems based upon bi-directional wide-area networks.  Additionally,

within this sub-field, it is related to the downloading of subsets of electronic databases to a

multiplicity of end-user terminals, where the subsets include information regarding television

programming.   Such systems and their underlying technologies are generally known as

Electronic Program Guides ("EPGs").

12. Well before the assumed date of invention for the '078 Patent, March 9, 1992, various

technologies were well known for implementing mass electronic information distribution

systems, including systems for distributing databases (comprising, for example, financial data,

television programming information, executable computer program code and classified

advertising) to television receivers, personal computers and other types of terminal devices.

About 1970, some twenty years before the '078 Patent's named inventor filed his patent

application, a British postal worker, Sam Fedida, invented a technology that would permit such

4

information to be distributed to and displayed with properly equipped television receivers. This technology came to be known as "videotext." (E. Sigel, et al., The Future of Videotext, Worldwide Prospects for Home/Office Electronic Information Services, Knowledge Industry Publications, Inc., 1983 (hereinafter "Sigel") at pp. 1-2, and Fig. 1.1). Others in the United Kingdom (e.g., engineers at the British Broadcasting Company (the "BBC")) developed and commercialized a version of such a system that used the public telephone network by 1979. (*Id.*) The BBC's videotext service came to be known as "Prestel." (*Id.*) The French began development of their version in 1973, called "Antiope," and commenced experimental transmission of the Antiope videotext service in 1977. *(Id.)*

13. Development of videotext systems and the underlying technology quickly spread to many countries of the world, including the United States. By 1980 the Knight-Ridder Co. and AT&T began a trial of a videotext system using telephone network distribution in Coral Gables, Florida. *(Id.)* Soon after, by 1982, Time Inc., Cox Cable and Times Mirror offered videotext services based upon cable television for the distribution network. *(Id.)* Another major U.S. videotext service provider in this time frame was the CompuServe Corporation, with its 1979 initiation of CompuServe Information Service. While the other above services were offered by media companies and targeted for information display on television sets, CompuServe began business as a computer time-sharing service provider, and expanded into the database/information distribution business to further utilize its centralized computer systems and the telephone-based distribution network it already had in place. *(Id., at pp. 59-62.)* CompuServe targeted users having personal computers and telephone modems for network access and information downloading. Information was displayed on the personal computer monitor rather than a television screen.

14. With the advent of videotext, the BBC and others began electronically distributing information of all types, digitally encoded and formatted into top-level records called magazines. Each magazine record was further formatted into sub-records called pages. Thus, the logical structure of the information in these databases was that of a hierarchy. The information in some of the pages would be lists, or menus, of either information categories or specific bottom-level (leaf) pages from the database. The user would select items from the menus to navigate through the database. (See, e.g., *Id.,* Fig. 5.1, at p. 87, showing traversing a Prestel menu hierarchy for finding movies playing at cinemas by location of the cinema.) Videotext systems also offered the user the capability of bypassing the menu hierarchy and selecting a page directly by simply entering the page number on their keypad or keyboard. (*Id.* at p. 86.)

15. Techniques and methods for storing and searching information in computer databases were very well known by 1980. Indeed, such problems had been studied from the inception of the modern digital computer in the late 1950's because the manipulation of large amounts of data was one of the primary commercial uses of these computers. A classic textbook on this subject, running some 700 pages, was published in 1973 by Professor Donald Knuth of Stanford University (The Art of Computer Programming, Volume 3 / Sorting and Searching; Addison-Wesley Publishing Company, 1973 (hereinafter "Knuth")). Knuth himself used this book to teach university courses at the "junior-to-graduate level" (Knuth, Preface, at p. *vi*).

16. The issue of searching a large database for data items matching one or more selection criteria was well known to skilled artisans by the early 1980's. Knuth discusses such techniques in his Section 6.5 Retrieval On Secondary Keys (*Id.*, at pp. 550-570). He outlines the problem thusly: "In general, we assume that each record contains several attributes, and we want to search for all records that have certain values of certain attributes. The specification of which

6

records are desired is called a *query*. Queries are usually restricted to at most the following three types: a) A *simple query* ... b) A *range query* ... c) A *Boolean query*..." (*Id.*, at p. 550.)

17. By 1980, technology specifically intended for storing in a computer system large databases of information, and selectively retrieving subsets of these data based on queries involving multiple criteria combined in complex expressions, was well known. In fact, the computer industry had developed and was marketing commercial database software products for this purpose based on the technology of "relational data" developed by E. F. Codd in the late 1960's at IBM. With the advent of the IBM PC in the early 1980's, the computer industry also began supplying such database software suitable for executing on the microcomputers used in videotext decoders and personal computers. Additionally, by the early 1980's, technology for applying these same notions of relational data and complex queries was developed for the selection of complex subsets of data delivered in a broadcast stream. U.S. Patent No. 4,429,385, "Method and Apparatus For Digital Serial Scanning With Hierarchical and Relational Access," issued January 31, 1984 to Richard Cichelli (hereinafter "Cichelli"), teaches these techniques specifically applied to the broadcast teletext medium. (Cichelli at Abstract.) Before describing his new methods for performing relational queries against broadcast databases, Cichelli provides a review of the major issues involved in searching videotext databases in general. (*Id.*, at Cols. 2-6.)

18. An excellent overview of the state of videotext database technology in the early 1980s is given by Jan Gecsei in his book The Architecture of Videotex Systems, Prentice-Hall, 1983 (hereinafter "Gecsei"). See especially his discussion on pp. 167-173 and pp. 213-232. Both Cichelli and Gecsei refer to the CompuServe system as an example embodiment of the database technologies to which they refer. And, indeed, the CompuServe database capabilities were

7

extensive, as a review of the CompuServe references in EXHIBIT 2 attests. Particularly relevant to the issues of this Report are the "Schepp," "Glossbrenner," "Today 1982" and "Today 1985" references. It was well-known prior to 1990, and the CompuServe system illustrated this, that the selection information entered by the user and sent to the central database system to specify the information desired by the user could be equivalently, for example: (1) a word or phrase typed by the user with his keyboard or keypad, (2) a menu item selected by highlighting the item and pressing a selection key or by typing the number of the menu item, or (3) a unique identifier of a particular information item, such as the "page" number of the item.

19. The telephone-based method for distributing data to intelligent home terminal units (set-top boxes or HTU's) and personal computers was not the only method known or in use by the late 1980's. As described by Sigel (at p. 1): "There are two principal versions of videotext. One, a broadcast system known as teletext, involves the one-way sending of pages of information from the TV transmitter. ... The other version, known as viewdata or videotext or videotex, involves the sending of information from a central computer to an individual terminal over telephone lines." Other electronic media known in the art included RF subcarriers, cable television systems and satellites. Systems involving all of these media, as well as numerous other related technologies for storing, manipulating and displaying information, are described throughout Sigel, as well as in a lengthy transcript of an international conference, called Viewdata '80, held to discuss "[t]he use of the ubiquitous TV set as an information display and interactive personal electronic communication device..." (VIEWDATA AND VIDEOTEXT, 1980-81: A Worldwide Report, published by Knowledge Industry Publications, Inc., White Plains, New York, 1980 (hereinafter "Viewdata '80"), at p. iii.) Both Sigel and Viewdata '80 describe systems that combine one-way (broadcast) and two-way (e.g., telephone or two-way

cable television) technologies such that users can request specific data items of interest with a two-way capability, and have those items delivered with a one-way technology.

20. The notion of television programming information is as old as television itself (circa 1950). By 1985, newspapers in markets of any size printed such information presented in the form of a listing of television programs together with information about the programs, such as time of broadcast, channel to which to tune to view the program, title of the program, and perhaps a brief description. In cities with cable television (CATV) systems having upwards of 30 channels of programming, the supplier or provider of the program (e.g., ABC, HBO, Cinemax) would also be included because CATV viewers would not necessarily find the program on the same channel number as viewers using the standard off-air version of the TV signal. Also, since there were so many channels from which to choose, programs were categorized and listed by subject or type (e.g., sports, movies) and sometimes by subtype (e.g., Sports, then Football, then College or Professional). In fact, well before the filing of the '078 Patent, electronic versions of television programming information were available from multiple publishers for downloading to local computers. The CompuServe system, for example, included in its database the contents of multiple newspapers in different areas of the country, each of which contained television programming information for its locality. This information could be accessed by users of CompuServe by selecting the location of interest. (See, e.g., CompuServe Information Service Today, January 1982, TMS 0001076-0001083 (hereinafter "Today 1982")).

21. In summary, an engineer skilled in the art relevant to the claims of the '078 Patent prior to its invention priority date would have possessed knowledge and understood technologies that included at least the following:

9

- Distributing data residing in a centralized information database by connecting large numbers of consumer home terminal units or personal computers to the database computer via a telephone-based or cable television-based wide area network.

- Distributing data residing in a centralized information database by selecting portions of it with a specific request transmitted from a consumer terminal unit to the database system over a wide-area network.

- The data residing in the centralized information database could be for virtually any kind of information, including television programming information.

- The selection information entered by the user and sent to the central database system to specify the information desired by the user could be equivalently, for example: (1) a word or phrase typed by the user with his keyboard or keypad, (2) a menu item selected by highlighting the item and pressing a selection key or by typing the number of the menu item, or (3) a unique identifier of a particular information item, such as the "page" number of the item.

- The selection information so entered by the user could include an identification of geographical location.

- The requested data could be received by HTUs (home terminal units) or personal computers, and presented to a microcomputer in the units for storage and/or display.

- The microcomputers in HTUs were general purpose computers consisting of a few relatively inexpensive components, and comprised of the functional elements of a central processing unit (CPU), memory (RAM and ROM), data buses interconnecting

10

the components, data or text display on a monitor or TV, and input/output capabilities and interfaces (including user input from a keyboard or remote keypad and via selections from on-screen menus).

IV.    The Perspective of One of Ordinary Skill in the Art

22. I understand that determinations of whether prior art invalidates a claim in a patent are performed from the perspective of a hypothetical person having ordinary skill in the field of the invention at the time of the invention.

23. During my thirty years in the fields of computer systems, electronic communications and television broadcasting, I have often worked with engineers and other technical personnel in the field of interactive information distribution systems. Based on this experience, I conclude that the level of ordinary skill in the relevant art in 1990-92 would best be defined as a combination of education and experience. For example, I would consider an engineer with a bachelor of science degree in electrical engineering (including classes in computer systems and software engineering) or computer science (with classes in electronics and data communications) and three to five years of experience in electronic communications (including computer systems and software engineering) in the pertinent relevant time period to posses an "ordinary level of skill" in the field. The more formal education one possesses, the less industry experience needed to attain an "ordinary level of skill." For example, an engineer with a master of science degree in electrical engineering or computer science would need only two to three years of experience to attain an "ordinary level of skill" in the field of data communications. Similarly, the more industry experience one possesses, the less formal education needed to attain this "ordinary level of skill."

11

24. In expressing my opinions below, I will use the term "Skilled Artisan" to refer to a person who, in the relevant time period, possessed the level of ordinary skill described above in the field of electronic consumer information distribution systems.

## V.    Invalidity in View of the Prior Art

25. I understand that a patent claim is invalid under 35 U.S.C. § 102 if a Skilled Artisan would reasonably understand or infer that each and every element as set forth in the claim is either expressly or inherently described in a single prior art reference. The reference is then said to "anticipate" the claimed invention.

26. I understand that the prior art reference anticipates the claimed invention if it discloses the claimed invention sufficiently to teach all elements of the claimed invention to one of skill in the art (i.e., enables a Skilled Artisan to make and use the claimed invention).

27. I understand that a prior art reference inherently describes a claim element when one of ordinary skill would know that the element is necessarily present, not just possibly or probably present, in what is described in the prior art reference.

28. For purposes of rendering an opinion regarding anticipation under the above understandings I have used the following definitions, taken from the Eleventh Edition of Merriam-Webster's Collegiate Dictionary (2003):

> **Infer:  1**: to derive as a conclusion from facts or premises ... **3 a**: to involve as a normal outcome of thought **b**: to point out: INDICATE **4**: SUGGEST, HINT
>
> **Imply:  2**: to involve or indicate by inference, association, or necessary consequence rather than by direct statement **3**: to contain potentially **4**: to express indirectly
>
> **Necessary:  1 a**: of an inevitable nature: INESCAPABLE **b(1)**: logically unavoidable **b(2)**: that cannot be denied without contradiction **c**: determined or produced by the previous condition of things **d**: COMPULSORY **2**: absolutely needed: REQUIRED

29. I understand that although references may not be combined to show anticipation, additional references may be used to interpret the allegedly anticipating reference and shed light on what it would have meant to those skilled in the art at the time of the invention. These additional references must make it clear that the matter not expressly described is necessarily present in the system or other subject matter disclosed in the anticipating reference, and that it would be so recognized by persons of ordinary skill.

30. I also understand that under 35 U.S.C. § 103 a patent may not be obtained even though the invention is not identically disclosed or described in the prior art if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious to a person having ordinary skill in the art in the relevant subject matter at the time the invention was made.

31. Furthermore, I understand that the "obviousness" determination of an invention turns on whether a hypothetical person with ordinary skill and full knowledge of all the pertinent prior art, when faced with the problem to which the claimed invention is addressed, would be led naturally to the solution adopted in the claimed invention or at least would naturally view that solution as an available alternative.

32. I also understand that in considering whether one of ordinary skill in the art would have combined the information found in different prior art documents or devices placed on sale, one should consider whether there is any suggestion or basis for motivating such a combination found in prior art documents, in the art as a whole, the nature of the problem to be solved, or in the knowledge that one of ordinary skill would have. I further understand that without any reason, suggestion, or motivation for the proposed combination, a combination under 35 U.S.C.

§ 103 currently would be improper for determining obviousness. Finally, I understand that issues of the conditions required for showing obviousness are being reviewed by higher courts, and I therefore reserve the right to review and possibly modify the opinions expressed in this Report in light of any decisions by the courts in this regard.

33. From these understandings I distill the following specific criteria for motivating combinations for obviousness, any one of which by itself is sufficient motivation according to my understanding of the applicable law.

1. The references explicitly refer to each other.
2. The references' teachings are based upon, either explicitly or implicitly, the same technologies (art).
3. The references discuss or teach solutions to the same problem(s).
4. A skilled artisan would know, by virtue of the skills necessarily acquired, that the references' teachings are combinable (i.e., compatible within the art or technology taught).

34. I further understand that a claim or claim element is rendered obvious by a prior art reference if what is claimed is only a specific limitation or instance of a broader teaching in the reference, unless the claim also discloses a new or unexpected benefit not disclosed in the prior art reference or not already known to one of ordinary skill. I further understand that a claim element covering several structures or compositions, either generically or as alternatives, is rendered obvious if the prior art reference discloses any of the structures or compositions within the scope of the claim.

35. I understand that certain objective factors (or the lack thereof) may also be considered in determining whether an invention was obvious to one of ordinary skill at the time the invention was made. These factors include, among other considerations: 1) whether there was long-felt, but unsatisfied, need for the claimed invention; 2) whether others attempted, but failed, to invent the claimed invention; 3) whether others copied the claimed invention; 4) whether the claimed

14

invention achieved any unexpected results; and 5) whether there was any commercial success (or lack thereof) of the claimed invention.

36. In addition, I understand that § 102(b) may create a bar to patentability either alone, if a device placed on sale anticipates the claimed invention, or in combination with § 103, if the claimed invention would have been obvious from consideration of the on-sale device in conjunction with the other prior art.

37. I also understand that patent claims may be invalid, as indefinite, if they fail to recite with particularity the subject matter regarded as the invention. Furthermore, a patent claim is invalid if the specification fails to enable one of ordinary skill in the art, as of the filing date of the patent, to practice the claimed invention without undue experimentation.

38. In analyzing claims of the '078 Patent and reaching the conclusions expressed below, I have:

- reviewed the prior art identified in EXHIBIT 2 to determine what each item of prior art would have taught a Skilled Artisan in the appropriate time frames;

- identified similarities and differences between the asserted claims and the teachings of the prior art identified in EXHIBIT 2; and

- applied the above understandings regarding the invalidity of patent claims to the identified similarities and differences.

39. In the following paragraphs, and the detailed claim charts referred to therein (attached as EXHIBITS 3-8), I set forth my present opinions as to the invalidity of each of the asserted claims

of the '078 Patent with regard to the prior art, and assuming the constructions shown in the claim charts. Although the claim charts cite to particular pages and/or lines of many of the references discussed, these citations are intended to assist the reader in understanding the various bases and prior art teachings used in my conclusions, and are not intended to be an exhaustive recitation of every page, line number, or paragraph in which these teachings may be found. Similar teachings may be found at other pages and/or lines, as well as in other references discussed above, and it should be understood that my opinions and statements provided herein are made in view of all of the references, teachings, and claim constructions I have reviewed. Furthermore, similar teachings may be found in other references (discussed herein or otherwise), and I expressly reserve the right to affirm, update, or modify my present opinions based on such references as necessary. Furthermore, I expressly reserve the right to affirm, update, or modify my opinions herein should I be presented with additional prior art to consider.

40. In the paragraphs below, I enumerate various references as rendering obvious the particular claimed invention being addressed. In enumerating these references, I have endeavored to identify the most pertinent reference for the obviousness determination, and it should be understood that these pertinent references may be combined with the references, knowledge and teachings I have detailed above or in the Exhibits attached to this report in rendering the claims obvious.

41. In the paragraphs below, it should be understood that the various bases for anticipation and/or obviousness of dependent claims will incorporate by reference the various bases enumerated for the claims from which the dependent claims depend. I have been informed that a dependent claim contains each and every feature recited in the claim(s) from which it depends,

and if these features are anticipated/obvious in the claim depended from, they will also be anticipated/obvious when they reappear in the dependent claims.

42. The paragraphs below address anticipation by a single reference, as well as obviousness using one or more of the listed references. I note that one of ordinary skill in the art would have been motivated to combine the various teachings of the cited references for many reasons. For example, all of the art listed below relates to the electronic distribution, and subsequent use, of computer readable data to user microcomputer-based terminals. The various references all relate to the display of this data to the user and to the use of this data to, for example, select data from an information database for storage or display. This commonality of goals, methods and technologies places this art squarely within the same field of endeavor. Practitioners in this field were also well aware of what their counterparts were doing, partly due to the various technical publications that were disseminated. For example, the 1983 "Architecture of Videotext" article (Gecsei) enumerates in detail the various videotext efforts underway not only in the USA, but in England, France, Canada and Japan. (See, e.g., Gecsei, at pp. 9-13.)

43. As another example, persons of ordinary skill in the art would have been motivated to combine the references I discuss because of the rapid pace at which technologies were combined with each other into new types of videotext systems. As described in Viewdata and Videotext, 1980-1981: A Worldwide Report, Knowledge Industry Publications, White Plains, NY, 1980, p. 8, "[w]e are heartened by the announcement of ANTIOPE which seemed at the time to be more readily adaptable to NTSC. We were just on the verge of starting a field trial when in August 1978, the Department of Communications (DOC) unveiled Telidon, Canada's alphageometric Videotex system. Telidon forced us to reappraise our expectations for teletext applications. With high resolution graphics available we now looked on Telidon as an educational medium in

17

its own right. It also made us decide to look at all modes of delivery: telephone, cable television, broadcast, and even physical delivery."

44. Another motivating factor for combining the various references lies in the economics of providing a saleable customer product. In some of the earlier art, design features may have been heavily influenced by the high cost of electronic components, particularly memory. As the years progressed, however, the cost of these components dropped due at least in part to improvements in manufacturing capabilities and increased demand. By the time the newer prior art was available, those in the field familiar with the limitations of the early systems would have been motivated to modify or update those earlier systems to take advantage of both the newly-available teachings in the references, and the lower cost of electronic components.

## VI.    The '078 Patent

45. The USPTO issued the '078 Patent on November 23, 1999, based on multiple patent application continuations by the named inventor, Michael R. Levine, dating back to a filing on March 9, 1992. Claims 1, 2, 3, 4, 5, 6, 7, 8 and 10 are asserted by the plaintiff in this matter, and are the subject of my invalidity analysis discussed below.

46. The '078 patent description, in the section entitled "FIELD OF THE INVENTION" ('078 at 1:15-22) states: "This invention relates to a method and apparatus for controlling a video recorder to allow the unattended recording of future occurring programs using a personal computer and more particularly to such a method and apparatus which provides a display of a schedule of future programming available to the recorder on the personal computer." In studying the patent's prosecution history, I note that the originally proposed claims did indeed relate to methods for controlling television recording devices. After the many continuations and

18

amendments in response to the examiner's rejections, the resulting asserted claims do not even mention a VCR, or controlling the recording of television programs with a VCR or equivalent recording device. Rather, the asserted claims all deal with electronic information distribution systems that are used to electronically distribute information regarding television programming. Thus, the asserted claims are only loosely reflective of the teachings of the '078 patent description.

47. In arriving at my current opinions regarding invalidity under § 102 (anticipation) of the asserted '078 claims by prior art references, I have produced detailed claim charts for six such references. These claim charts are attached as Exhibits to my report. The references and their associated claim charts are:

- The **CompuServe** system, described in, among other publications, B. Schepp and D. Schepp, The Complete Guide to CompuServe, Osborne McGraw-Hill, 1990 ("Schepp"), TMS 0058354; CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985. TMS 0054628-0054629 ("Today 1985"). Collectively these references are denoted herein as "**CompuServe**," and the claim chart is attached as **Exhibit 3.**
- J. Tydeman, et al., Teletext And Videotex In The United States: Market Potential, Technology, Public Policy Issues, McGraw-Hill Publications Company, 1982 (herein "**Tydeman**"), claim chart attached as **Exhibit 4.**
- U.S. Patent No. 4,706,121, issued Nov. 10, 1987 to Patrick Young (herein "**Young**"), claim chart attached as **Exhibit 5.**
- U.S. Patent No. 4,787,063, Issued Nov. 22, 1988 to Francis Muguet (herein "**Muguet**"), claim chart attached as **Exhibit 6.**
- The **Personal Entertainment Guide ("PEG")**, described in, among other publications, the Personal Entertainment Guide User's Guide Version 1.0, Copyright 1991 by Lookahead Communications Inc. (herein "**PEG**"), claim chart attached as **Exhibit 7.**
- The **Prodigy** system, described in, among other publications, J. L. Viescas, THE OFFICIAL GUIDE TO THE PRODIGY SERVICE, Microsoft Press, 1991 (herein "**Prodigy**"), claim chart attached as **Exhibit 8.**

48. I note that Young was cited by the patent examiner during the application prosecution as rendering obvious all of the proposed claims pending at the time and asserted in this action (see

TG 002258-002261).  In response to this rejection the patentee argued that the rejection was inappropriate, saying, "The Examiner argues that the Young patent teaches 'transmitt[al of], from the computerized unit, information to a service provider (Compuserve or The Source—col. 22 lines 1-9) regarding the geographic location (locality—col. 22 lines 1-9) of the particular viewing location.'  However, retrieval of information from a database does not, by definition, include or even suggest transmittal of a viewer's geographic location.  The '121 patent describes the process of 'download[ing] the program schedule information for his or her locality' (Young patent—col. 22, ln. 5-7).  *This description does not imply transmitting particular geographic location information.*  Most database applications allow a user to passively select information from a list/menu, or to search a database without transmitting location-specific information.  Such applications provide choices from which a user may select without transmitting a request.  *In contrast, Applicant's claim 19 clearly sets forth the active <u>transmittal</u> of 'geographical location of the particular viewing location.'"*  (See TG 002282-002283, italics mine; underlining in original.)

49. The above characterization of Young by the patentee is incorrect.  Young teaches embodiments that include downloading television schedule information from CompuServe.  As is clearly shown in the claim chart of Exhibit 3, the CompuServe system at the time Young's application was filed (May 6, 1986) included television schedule information in its database that was downloaded to the user's personal computer as a result of the user transmitting geographical information to CompuServe.  I do not agree that "Applicant's claim 19 clearly sets forth the active transmittal of 'geographical location'" as defined in the above quoted Response To Office Action, but to the extent it did, the CompuServe system clearly provided to the user the capability to perform such "active transmittal of 'geographical location.'"  The patentee's gross

20

mischaracterization of Young's teachings was accepted by the Examiner as being an accurate representation, and the rejection of the claims was withdrawn based upon it. I therefore conclude that the Young reference may be used in my invalidity analysis without prejudice of its use in the '078 prosecution.

50. Regarding invalidity due to indefiniteness, it is my considered opinion that Claim 3 is invalid due to indefiniteness. Claim 3 requires: *"wherein the information received from the service provider includes a schedule of the television programming available to the particular viewing location."* The patent description in no way explicitly or implicitly defines the term "schedule." In fact, the term "schedule" is used to mean something at 2:1-6 of the '078 Patent that is different than the meaning given "schedule" at 4:66-5:4 of the '078 Patent. Without any clarification from the specification, I am unable to determine how the "information received" in Claim 3 differs from that required by claim element 1.5. I therefore conclude that Claim 3 is invalid due to indefiniteness.

51. Regarding invalidity due to lack of enablement, it is my considered opinion that claims 1, 6 and 8 (the asserted independent claims) are each invalid due to lack of enablement. Claim element 1.5, as shown in the attached claim charts, requires: *"receiving, from the service provider, information specific to the type of programming available to the particular viewing location."* Claim elements 6.4 and 8.5 have equivalent requirements.

52. The information specific to the type of programming available to a particular viewing location cannot be determined solely from the geographical information transmitted; whenever more than one programming source is offered in a location (which I understand to be the case for the vast majority of locations), the programming source must also be identified. Indeed,

21

dependent claim 2 (and also claim 7) adds the limitation that the information transmitted must include Zip Code, and the patentee has admitted that Zip Code itself is often not specific enough to determine the programming available to the particular viewing location (see '078 at 3:50-54). And, at the time of the invention, a skilled artisan would have known that information other than just geographical information would be required to identify the programming available to the particular viewing location. However, because only geographic information is transmitted to the program schedule information source (in claim elements 1.4, 6.3 and 8.4, respectively), the information received in return will at least sometimes contain information in addition to that specifically available to the viewing location. Therefore, in order for the claimed system to meet its objective of automatically controlling a VCR to record television programming (see, for example, '078 at Abstract), the application residing within the "computerized unit" or "controller" of these claims must necessarily include functionality to search the received information to extract only that programming information broadcast to the television receiver of the viewing location, or otherwise identify the programming source. This functionality is not taught in the patent description. Furthermore, it would not have been obvious to a skilled artisan, based upon the patent description, how to implement such functionality. Therefore I conclude that claims 1, 6 and 8 are invalid because they are not enabled.

53. Regarding invalidity under § 102 (anticipation) of the asserted '078 claims, it is my considered opinion, as detailed in Exhibits 3, 4 and 5 respectively, that each of CompuServe, Tydeman and Young anticipate all asserted claims of the '078 Patent, rendering them invalid. And, as detailed in Exhibit 6, Muguet anticipates claims 1, 3, 4, 5, 6, 8 and 10, rendering them invalid. Furthermore, PEG, as detailed in Exhibit 7, anticipates claims 1, 3, 4, 5 and 6, rendering

them invalid.  Finally, as detailed in Exhibit 8, Prodigy anticipates claims 1, 3, 4, 5, 6, 8 and 10, rendering them invalid.

54. Regarding invalidity under § 103 (obviousness) of the asserted '078 claims by prior art references, it is my opinion that each and every prior art reference listed in EXHIBIT 2, for the reasons I have stated above, can be combined with one or more other prior art references for purposes of determining obviousness of each of the asserted claims.  I shall not list all of the possible combinations here.  However, with respect to the references for which I have produced claim charts, and as shown in the respective claim charts, it is my opinion that claims 2 and 7 are obvious in view of Muguet because what is claimed is only a specific limitation or instance of a broader teaching in Muguet, and the claims do not disclose a new or unexpected benefit. Furthermore, Claims 2 and 7 are rendered obvious by each of PEG and PRODIGY in combination with at least each of CompuServe, Tydeman or Young.  And claims 8 and 10 are rendered obvious by PEG in combination with at least each of CompuServe, Tydeman, Muguet, Young or PRODIGY.

55. Additionally, it is my opinion that each of the charted references, in combination with any one or more of the other prior art or charted references listed in EXHIBIT 2, renders all asserted claims invalid due to obviousness.

Dated:  ___December 14, 2006___          *Gary S. Tjaden*

                                        **Gary S. Tjaden, Ph.D.**

EXHIBIT 1

## BIOGRAPHICAL SKETCH

### Dr. GARY S. TJADEN

*Education*

| | |
|---|---|
| Doctor of Philosophy, Computer Science<br>The Johns Hopkins University | 1973 |
| Master of Science, Electrical Engineering<br>Northwestern University | 1969 |
| Bachelor of Science, Electrical Engineering<br>University of Utah | 1966 |

*Employment History*

| | |
|---|---|
| COCOMO ID, LLC<br>Founder/President | 1996-Present |
| Georgia Institute of Technology<br>Principal Research Engineer | 1993-2004 |
| Polytechnic University<br>Industry Professor of Computer Science | 1992-1993 |
| NYNEX Corp.<br>President, NYNEX ALLINK Co.<br>Director, Information Systems & Services Lab. | 1989-1992<br>1987-1989 |
| Burroughs/Unisys Corp.<br>V.P. & Gen. Mgr., Third Party Programs<br>V.P. Systems Architecture | 1985-1987<br>1984-1985 |
| Cox Cable Communications<br>Senior V.P., Engineering & Technology | 1979-1984 |
| Sperry Corp.<br>Director, Hardware Tech., Univac Division<br>Member Tech. Staff, Sperry Research Center | 1976-1979<br>1975-1976 |
| Bell Telephone Labs<br>Member Tech. Staff, Advanced Tech. Lab.<br>Member Tech. Staff, Electronic Switching Systems Division | 1972-1975<br>1966-1970 |

Dr. GARY S. TJADEN              PAGE 2              BIOGRAPHICAL SKETCH

## Experience Summary

Founder, President of COCOMO ID, LLC, a company that develops and markets technology for mobilized speech-audio publishing. Technology based on patents awarded to founder.

During eleven years at Georgia Institute of Technology responsible for directing the activities of a Georgia Tech interdisciplinary research center, called the Center for Enterprise Systems. The mission of the Center was to help commercial enterprises use information technology to support business strategy. Retired from Georgia Tech November, 2004.

Background of some twenty-five years of experience in the computer and communications industries. Specific activities and responsibilities include:
- Founder and general manager of NYNEX subsidiary company which develops and markets turnkey real-time decision support systems to improve the management of large heterogeneous corporate networks and distributed systems.
- Established and managed applied research laboratory responsible for development and transfer of new technologies and product concepts in the area of data communications-based information systems and services.
- Led the development and commercial production of a distributed information system based on off-the-shelf components including UNIX workstations and servers, an expert system, a relational database management system, and an object-oriented graphical user interface.
- Responsible for Burroughs' corporate third party software strategy, general management of cross-industry application software Line Of Business, and use of third party technologies to satisfy product needs in all product areas.
- Responsible for technology strategy, R&D of interactive CATV information systems, cable system design, and for construction and technical operation standards and quality control for an operator of some 60 cable television systems serving more than 1.3 million subscribers.
- Responsible for management of all advanced hardware technology activities for major supplier of mainframe computer systems. Technologies included VLSI design and fabrication, disk and optical memories, and mainframe architectures.
- Member of a 3-person team that developed a new, patented architecture for designing mainframe central processors from off-the-shelf LSI chip sets at research arm of major supplier of mainframe computer systems. Technology commercialized as Univac 1160 mainframe computer.
- Member of advanced technology development group in the Electronic Switching Systems (computer-based telephone central office switches) for AT&T Bell Laboratories. Worked on advanced operating system for telephone switching systems, and new switched services such as centralized voice-mail and e-mail.
- Member of group developing telephone switching system peripheral components. Inventor of new technology for using LSI to detect on-hook/off-hook state changes on telephone lines.

## Fields of Interest

Complex adaptive systems, business process engineering, impact of information technology on business strategy, management of information technology and information systems, distributed systems architecture and management; computer communication and networking; and distributed application software architectures.

## Special Honors and Awards

Samuel N. Alexander award from Washington D.C. regional ACM chapter for outstanding student of Computer Science in 1971-72
Elected to Sigma Xi

Dr. GARY S. TJADEN                     PAGE 3                     BIOGRAPHICAL SKETCH

Elected to Eta Kappa Nu
M.S. studies supported under Bell Labs Graduate Study Program
Graduated Cum Laude from U. of Utah under Honors Program
Distinguished Lecturer award from Stanford University Computer Forum


_Professional Affiliations_

Session Chair, IEEE International Workshop on Systems Management, April 1993
Member IEEE Computer Society 1972 - 1973
Vice Chairman of 1979 Computer Architecture Symposium
Member of Program Committee, 1978 Computer Architecture Symposium
Chairman of Panel Session on Implications of VLSI on Computer Design, 1979 ACM National
    Conference
Member of NSF Committee on the National Telecommunications Network, representing CATV industry,
    1983
Two term Chairman of CATV trade Association Engineering Committee, 1982-84


_Patents_

1.  "Supervisory Circuit for Telephone Lines," No. 3,622,709, assigned to Bell Labs

2.  "Bus Coupler Protection Circuit," No. 3,654,517, assigned to Bell Labs

3.  "Microprogrammable Computer Utilizing Concurrently Operating Processors," No. 4,199,811,
    assigned to Sperry Corp

4.  "One's Complement Subtractive Arithmetic Unit Utilizing Two's Complement Arithmetic Circuits,"
    No. 4,099,248, assigned to Sperry Corp

5.  "Digital Computer with Overlapped Operation Utilizing Conditional Control to Minimize Time
    Losses," No. 4,210,960, assigned to Sperry Corp

6.  "Table Driven Decision and Control Logic for Digital Computers," No. 4,237,532, assigned to
    Sperry Corp

7.  "Personalized Audio Information Delivery System," No. 5,915,238.

8.  "Personalized Audio Information Delivery System (continuance)," No. 6,122,617.

_Trials or Depositions Within Last Five Years_

Superguide Corp. and Gemstar Development Corp. vs. DirecTV, Thomson, and EchoStar, U.S. District
Court for the Western District of North Carolina, Asheville Division.  Opined on invalidity for defendants
EchoStar and Thomson, and non-infringement for EchoStar.

Certain Set-Top Boxes and Components Thereof, U. S. International Trade Commission, Wash. D.C.,
Honorable Paul L. Luckern.  Opined on invalidity for defendants Scientific Atlanta and Pioneer.

Gemstar Development Corporation MDL Patent Litigation.  Opined on invalidity and non-infringement for
defendant Scientific Atlanta.  Deposed multiple times with respect to two groups of patents.

Dr. GARY S. TJADEN                    PAGE 4                    BIOGRAPHICAL SKETCH

Finisar Corporation vs. DirecTV, U.S. District Court, Eastern District Of Texas, Beaumont Division. Opined on invalidity for defendant DirecTV.

*Major Reports and Publications*

1.  "Measuring The Information Age Business". Technology Analysis and Strategic Management, Vol. 8, No. 3, 1996, pp. 233-246. Also published in The Information Revolution, edited by Porter, A. & Read, W., Ablex Publishing, 1998, Chapter 1.

2.  "Structural Effectiveness Metrics for Business Processes," co-authored with S. Narasimhan and S. Mitra, INFORMS Conference on Information Systems and Technology, Washington, DC, May, 1996.

3.  "Business Process Metrics of Effectiveness," co-authored with S. Narasimhan and S. Mitra, Third Eurpoean Academic Conference on Business Process Redesign, Cranfield University, UK, Feb. 1996.

4.  "Network management under the umbrella," Networking Management 10, (9), August 1992, pp. 39-41

5.  "OSF/DME as an Application Platform", Proceedings of Interop '91 Fall, San Francisco, Calif., 9-11 October, 1991

6.  "The Allink Approach to Integrated Network Management," Network and Distributed Systems Management '91 Conference, Technology Transfer Institute, 18-20 September 1991, Washington D.C.

7.  "Using Expert Systems for Real-Time Integrated Network Management," Communications Networks West, San Francisco, Calif., 15-18 July 1991

8.  "Integrated Network Management for Real-Time Operations," IEEE Network 5, (2), March 1991, pp. 10-15, coauthor

9.  "Automating Integrated Network Management," Network Management Solutions Conference, Anaheim, Calif., April 10-12, 1990

10. "Integrated Network Management for Real-Time Operations," Proceedings of NOMs '90, IEEE Coms. Society, San Diego, Calif., Feb. 11-14, 1990

11. "Switched Voice on a CATV System", Proceedings of GLOBECOM '83, November 1983

12. "The INDAX Two-Way CATV Network For Videotex Services," VideoTex – Key To The Information Revolution, (Northwood Hills, Middlesex, UK), June, 1982, pp 465-475, coauthor

13. "INDAX:   An Operational Interactive Cable Television and Home Information System", Proceedings of COMPCON Spring '82, February 1982, pp 356-359, coauthor

14. "Some Considerations in the Design of Mainframe Processors with Microprocessor Technology," IEEE Computer 12, (8), August 1979, coauthor

15. "Impact of LSI Technology on Computer Architecture", Proceedings of 1979 Computer Architecture Symposium

Dr. GARY S. TJADEN                    PAGE 5                    BIOGRAPHICAL SKETCH

16. "Hierarchical Properties of Concurrency," Proceedings of 1979 International Conference on Parallel Processing

17. "Non-Custom Design for NMOS VLSI," 1979 Custom Integrated Circuits Conference, U. of Rochester

18. "Mainframe Implementation With Off-the-shelf LSI Modules," IEEE Computer 11, (7), July 1978, pp. 42-48, coauthor

19. "Can Mainframe Performance Be Achieved With Microprocessor Systems?," Infotech International, 1977

20. "Applying LSI Technology to Mainframe Computers," 1977 MIDCON Conference, November 1977

21. "MIMD Multimicroprocessors as Mainframe Replacements," Workshop on Microprocessors, Northwestern University, May 1976

22. "Analysis of New Telecommunication Services Via System Attributes," Proceedings of International Communications Conference, San Francisco, June 1975, coauthor

23. "Representation of Concurrency with Ordering Matrices," IEEE Trans. On Computers", C-22, (8), August 1973, coauthor

24. "Representation and Detection of Concurrency Using Ordering Matrices," Ph.D. Dissertation, The Johns Hopkins University, September 1972

25. "Detection and Parallel Execution of Independent Instructions," IEEE Trans. On Comp., C-19, (10), October 1970, pp. 889-895, coauthor

EXHIBIT 2

# References Reviewed

1) Complaint

2) Answer and Counterclaims

3) U.S. Patent No. 5,988,078

4) Prosecution History for U.S. Patent Application No. 07/848,338

5) Prosecution History for U.S. Patent Application No. 08/287,343

6) Prosecution History for U.S. Patent Application No. 08/947,950

7) Plaintiffs' Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1-19)

8) Plaintiffs' July 14, 2006 Supplemental Responses and Objections to Defendant's First Set of Interrogatories

9) Plaintiffs' Responses and Objections to Defendant's Second Set of Interrogatories (Nos. 20-24)

10) Plaintiffs' December 4, 2006 Supplemental Responses to Defendant's Interrogatory Nos. 1, 4, 10-14, and 17-19

11) TMS' Responses to TV Guide's First Set of Interrogatories

12) TMS' Reponses to TV Guide's Second Set of Interrogatories

13) TMS' Responses to TV Guide's Third Set of Interrogatories

14) TMS' Responses to Plaintiffs' Fourth Set of Interrogatories

15) TMS' First Supplemental Response to Plaintiffs' Interrogatories

16) TMS' Second Supplement Response to Plaintiffs' Interrogatories

17) Deposition Transcript of Michael Levine

18) Deposition Transcript of Allen M. Krass

19) Deposition Transcript of Barry Berkov.

20) Deposition Transcript of Mark Kaplinsky.

## Prior Art

21) Brad Schepp and Debra Schepp, <u>The Complete Guide to CompuServe,</u> Osborne McGraw-Hill, 1990, TMS 0058354 ("Schepp").

22) CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982").

23) Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner").

24) Online Today, January 1985. TMS 0054628-0054629 ("Today 1985").

1

25) CompuServe Information Service Today, October 1981, TMS 0001084-0001090.

26) CompuServe Information Service for DOS Computers, Version 2, TMS 0054461-0054528.

27) C. Bowen & D. Peyton, How To Get The Most Out Of CompuServe, 1993, TMS 0054646-0054651.

28) Online Today, TMS 0054623-0054627.

29) CompuServe Crew Scheduling Services, TMS 0054611-0054616.

30) CompuServe Flight Planning and Aviation Weather, TMS 0054601-0054610.

31) CompuServe Almanac, TMS 0054794-0054802.

32) CompuServe's Application Software, TMS 0054697-0054756.

33) CompuServe Magazine, October 1992, TMS 0054597-0054598.

34) CompuServe Information Service Today, April 1982, TMS 0001070-0001075.

35) CompuServe Information Service Today, July 1981, TMS 0001091-0001098.

36) Teletext And Videotex In The United States:  Market Potential, Technology, Public Policy Issues, by John Tydeman, et al., McGraw-Hill Publications Company, 1982, TMS 0062508 ("Tydeman").

37) U.S. Patent No. 4,706,121, issued Nov. 10, 1987 to Patrick Young, TMS 0001291-1319 ("Young").

38) U.S. Patent No. 4,787,063, issued Nov. 22, 1988 to Francis Muguet, TMS 0000233-46 ("Muguet").

39) Personal Entertainment Guide User's Guide, Version 1.0, Copyright 1991 by Lookahead Communications Inc., TMS 0001105-0001186 ("PEG").

40) Letter from Lawrence Shulman, TV Data, to Mark Kaplinsky, LookAhead Communications, Feb. 4, 1991, TMS 0001274-0001290.

41) J. L. Viescas, THE OFFICIAL GUIDE TO THE PRODIGY SERVICE, Microsoft Press, 1991, TMS 0062509 ("Prodigy").

42) U.S. Patent No. 4,429,385, issued Jan. 31, 1984 to Richard Cichelli, TMS 0000098-118 ("Cichelli").

43) U.S. Patent No. 5,347,632, issued Sep. 13, 1994 to Robert Filepp, et al, TMS 0054529-96.

44) "Guest Editorial, Interactive Picture Information Systems," IEEE Journal On Selected Areas In Communications, Vol. SAC-1, No. s, Feb. 1983, pp. 237-243, TMS 0068071-78.

45) Gifford, D. K., et al., "The Application of Digital Broadcast Communication to Large Scale Information Systems," IEEE Journal On Selected Areas In Communications, Vol. SAC-3, May, 1985, pp. 457-467, TMS 0068079-89.

46) G. Herman, et al., "The Datacycle Architecture for Very High Throughput Database Systems," Communications of the ACM, 1987, ACM 0-89791=236-5/87/0005/0097, TMS 0068064-70.

47) Donald Knuth, <u>The Art of Computer Programming, Volume 3 / Sorting and Searching,</u> Addison-Wesley Publishing Company, 1973, TMS 0068062 ("Knuth").

48) <u>VIEWDATA AND VIDEOTEXT, 1980-81: A Worldwide Report,</u> published by Knowledge Industry Publications, Inc., White Plains, New York, 1980, TMS 0068093-718 ("Viewdata '80").

49) Jan Gecsei, <u>The Architecture of Videotex Systems,</u> Prentice-Hall, 1983, TMS 0068090 ("Gecsei").

50) Efrem Sigel, <u>The Future of Videotext,</u> Knowledge Industry Publications, 1983, TMS 0068063 ("Sigel").

51) Richard H. Veith, <u>Television's Teletext,</u> Elsevier Science Publishing, 1983, TMS 0068091 ("Veith").

52) Paul Hurly, et al., <u>The Videotex and Teletext Handbook,</u> Harper & Row, 1985, TMS 0068092 ("Hurly").

EXHIBIT 3

## ANALYSIS OF CompuServe* TEACHINGS AGAINST THE '078 PATENT

*CompuServe system is described in The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985. TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (TMS no.:para. no). Citation format for others is (TMS no.:para. no).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. In a television distribution arrangement wherein a plurality of geographically dispersed television viewing locations receive television programming from a source of such programming, | "Television viewing location" means the specific room within a building where a television set is positioned and watched by a user. | CompuServe teaches all elements of this claim, so anticipates Claim 1.<br><br>"CompuServe is North America's most successful personal information service for computer users. ... CompuServe boasts more than 600,000 subscribers, and for years has added between 6,000 and 7,000 subscribers per month. It's no wonder CompuServe is successful; it offers more than 1,400 databases and services, all accessible by the average computer user." (Schepp;xxvii:1-2).<br><br>"CompuServe is an online information utility and a videotext system. An online information utility is an easy-to-use electronic information service. A videotext system is an interactive service that delivers information one page at a time. CompuServe is both of these. It provides information delivered through friendly, menu-driven screens." (Schepp;4:2).<br><br>**CompuServe is an information service intended and used to deliver information to users in their homes.** |
| 1. a method of receiving information specific to the type of programming available to a particular one of the viewing locations, the method comprising the steps of: | **"Available to a particular one of the viewing locations"** means deliverable from a programming source to a specific "television viewing location", as defined above. | CompuServe teaches this claim element.<br><br>"If's no wonder CompuServe is successful; it offers more than 1,400 databases and services, all accessible by the average computer user." (Schepp;xxvii:2).<br><br>"This is CompuServe's subject index. It lists every subject found on the system, along with its GO word. The system will continue to show you every subject listing until you reach the end of the more than 560 topics available or until you tell it to stop." (Schepp;62:1).<br><br>See also (Today 1982;TMS 0001082-0001083) showing the following CompuServe "Subject Index" items: "Cable TV listings....Go SFE-51; Columbus area: ... Television listings .. |

## ANALYSIS OF CompuServe* TEACHINGS AGAINST THE '078 PATENT

*CompuServe system is described in The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1992, TMS 0001076-0001083 ("Today 1992"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985. TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no). Citation format for others is (TMS no.:para. no).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | | Go CDP-1; Hampton Roads, Virginia area: ... Television schedule ..Go VPL-60; New York City area: ... Television......Go NYT-12 ;San Francisco area. ... Television......Go SFC-7; Satellite TV signals ..Go PSP-1; Television reviews: ... Columbus Dispatch ... New York Times ... S.F. Chronicle ... VPL ... Washington Post" |
| 2. providing a computerized unit at the particular viewing location, the unit including an operator input and a modem; | **"Operator input"** means a keyboard or other device for manually entering data into a computer.<br><br>**"Modem"** means a data signal conversion device that converts digital signals to analog signals (and vice versa) and enables a computerized unit to exchange data with another computerized unit over a standard dial-up telephone line. | CompuServe teaches this claim element.<br><br>"MS-DOS machines require the following hardware:<br><br>• An IBM or IBM-compatible PC<br><br>• A color or monochrome monitor (no graphics necessary)<br><br>• A hard disk and one floppy drive<br><br>• MS-DOS 2.0 or higher<br><br>• A serial port/Hayes-compatible modem. (Schepp:38:3-39:2).<br><br>**An IBM or IBM-compatible PC necessarily includes a keyboard or similar "operator input" device. A skilled artisan would have known that a "PC" could have been located anywhere in the user's home accessible to a telephone line, including the room(s) in which the user watches television.** |
| 3. establishing a connection to a wide-area network through the modem; | **"Modem"** means a data signal conversion device that converts digital signals to analog signals (and vice versa) and enables a computerized unit to exchange data with another computerized unit over a standard dial-up telephone line. | CompuServe teaches this claim element.<br><br>"Your computer needs three items to communicate with other computers.  It needs a modem to transmit and receive data over standard telephone wires.  It needs communications software to give your computer instructions for operating the modem.  Finally, it needs access to a telephone line."  (Schepp;20:4).<br><br>"CompuServe's success is rooted in its telecommunications |

2 of 15

## ANALYSIS OF CompuServe* TEACHINGS AGAINST THE '078 PATENT

*CompuServe system is described in The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985. TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 4. transmitting, from the computerized unit, information to a service provider through the wide-area network regarding the geographical location of the particular viewing location; and | "Information regarding the geographical location of a particular viewing location" means any information, irrespective of how the information is encoded, that expressly indicates in geographic language (e.g., name of a continent, country, province, state, city, town, region, street address, zip code, area code, etc.) the approximate portion of the planet in which a particular "television viewing location", as defined above, is located. [Note: the '078 patent at (3:50-54) distinguishes "ZIP code" as geographic ("location") information from programming source ("cable service provider") as, therefore, non-geographic information.] | network. As of this writing, the network has 1,800 communication nodes that service about 400 U.S. cities." (Schepp:4:5).<br><br>CompuServe teaches this claim element.<br><br>"All CompuServe services have GO words, which are direct routes to their main menus. Using a GO word instead of menus to get to a service is like taking an express train rather than the local. To jump from one service to another, just enter the GO word to get directly to that service's main menu. To go directly to a specific page within that service, enter the screen's page number." (Schepp:26:3).<br><br>See (Today 1982;TMS 0001082-0001083) showing the following CompuServe "Subject Index" items and their GO words for accessing them directly: "Cable TV listings....Go SFE-51; Columbus area: ... Television listings .. Go CDP-1; Hampton Roads, Virginia area: ... Television schedule ..Go VPL-60; New York City area: ... Television....Go NYT-12 ;San Francisco area:... Television...Go SFC-7; Satellite TV signals ..Go PSP-1; Television reviews: ... Columbus Dispatch ... New York Times ... S.F. Chronicle ... VPL ... Washington Post ..."<br><br>**From the above "Subject Index" the user would know to type at the keyboard the selection, for example, "Go SFC-7" to view the television listings in the San Francisco area. The acronym "SFC", indicating the San Francisco Chronicle newspaper, is geographic information. The number "7" is the number of the CompuServe page within the San Francisco area database that contains television listings.**<br><br>"The easiest and fastest way to get a quick forecast for your area is to select the Weather option from CIM's Services pull-down menu. When you do, the dialog box shown in Figure 4-11 |

3 of 15

## ANALYSIS OF CompuServe* TEACHINGS AGAINST THE '078 PATENT

*CompuServe system is described in The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"), CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985. TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | | appears. As you can see, the default shows you a local weather forecast for the node from which you are calling. You can also **choose a report by city and state** or by National Weather Service reporting station. The report you will receive includes the current day's forecasted temperature, winds, precipitation probability, sun or clouds, and the forecast for tonight and tomorrow. (Schepp;101:2 and 101:Figure 4-11). |
| | | "Option 5 from NewsGrid's main menu lets you search the database by keyword. Stories from the last seven days are available for searching. NewsGrid editors assign five to ten keywords for each story. Keywords are most often: |
| | | • Proper names |
| | | • **Country names** |
| | | • **Regions of the world** |
| | | • ... |
| | | NewsGrid also offers automatic truncation, or wildcard searching, that will search for keywords beginning with the string or word you specify." (Schepp;87:10-88:7). |
| | | Many IQuest databases enable you to search by field quite easily. A database record (the complete hit) is divided into distinct searchable parts called fields, enabling searchers to pull out only the information they need. Examples of fields include company name, SIC code, **geographic area**, and a person's name. The ability to search by field effortlessly, through IQuest and its spinoffs, is a great boon." (Schepp;219:7). |
| | | "The directory first asks you **the area code** you will be calling from, since some listings will not be valid in your area." (Schepp;253:2). |

## ANALYSIS OF CompuServe* TEACHINGS AGAINST THE '078 PATENT

*CompuServe system is described in The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985. TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 5. receiving, from the service provider, information specific to the type of programming available to the particular viewing location. | "Receiving" means transferring data to a computerized unit such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data. (See File History at TG 000780.)<br><br>[Expert Witness Note: The information specific to the type of programming available to a particular viewing location cannot be determined solely from the geographical information transmitted; whenever more than one programming source is offered in a location (which I understand to be the case for the vast majority of locations), the programming source must also be identified. Indeed, dependent claim 2 (and also claim 7) adds the limitation that the information transmitted must include Zip Code, and the patentee has admitted that Zip Code itself is often not specific enough to determine the programming available to the particular viewing location (see '078 at 3:50-54). And, at the time of the invention, a skilled artisan would have known that information other than just geographical information would be required to identify the programming available to the particular viewing location. However, because only geographic information is transmitted to the program schedule information source, the information received in return will at least sometimes contain information in addition to that specifically available to the viewing location. Therefore, in | CompuServe teaches this claim element.<br><br>See (Today 1982;TMS 0001082-0001083) showing the following CompuServe "Subject Index" items and their GO words for accessing them directly: "Cable TV listings....Go SFE-51; Columbus area: ... Television listings .. Go CDP-1; Hampton Roads, Virginia area: ... Television schedule ..Go VPL-60; New York City area: ... Television....Go NYT-12 :San Francisco area: ... Television....Go SFC-7; Satellite TV signals ..Go PSP-1; Television reviews: ... Columbus Dispatch ... New York Times ... S.F. Chronicle ... VPL ... Washington Post ..."<br><br>"The HMI protocol is specifically designed to enhance communications between a PC and the CompuServe host mainframe computers. When using CIM, instead of your PC receiving information character by character, as it does with ASCII communications, it gets information from CompuServe in 'packets' or bursts. A packet is the information you need to complete what you asked for. It could include a menu or a complete article. Once your computer receives this packet, it stores the information so you can bring it up again much faster than if you had to retrieve it anew from CompuServe. Therefore, CIM both eliminates the need for you to use ASCII commands and enables you to store more information locally." (Schepp;30:2).<br><br>A skilled artisan would have known that, since information transmitted to a service provider can include geographical information, then necessarily this information can be used as criteria to select specific portions of the database for downloading that match that criteria. |

# ANALYSIS OF CompuServe* TEACHINGS AGAINST THE '078 PATENT

*CompuServe system is described in The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985. TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.;para. no.). Citation format for others is (TMS no.;para. no.).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | order for the claimed system to meet its objective of automatically controlling a VCR to record television programming (see, for example, '078 at Abstract), the application residing within the "computerized unit" of this claim must necessarily include functionality to search the received information to extract only that programming information broadcast to the television receiver of the viewing location, or otherwise identify the programming source. This functionality is not taught in the patent description. Furthermore, it would not have been obvious to a skilled artisan, based upon the patent description, how to implement such functionality. Therefore I conclude that Claim 1 is invalid because it is not enabled.] | |

6 of 15

| Claim 2 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1, | | CompuServe anticipates Claim 1 and teaches all elements of this claim, so anticipates Claim 2. |
| 1. wherein the information transmitted to the service provider includes the Zip Code associated with the particular viewing location. | | CompuServe teaches this claim element.<br><br>"The database is searchable by zip code or area code." (Schepp;424:4).<br><br>"Both the database and the techniques have been developed and refined to the point that, for a fee, you can now get an instant report on any ZIP code or U.S. county." (Glossbrenner;TMS 0054634:2).<br><br>"SuperSite information comes from CACI, a management |

## ANALYSIS OF CompuServe* TEACHINGS AGAINST THE '078 PATENT

*CompuServe system is described in The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054610-0054645 ("Glossbrenner") and Online Today, January 1985. TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 2 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | | consulting firm specializing in demographic analysis. Information is provided for every ZIP code and county in the United States ... . All SuperSite reports are preformatted and are of presentation quality. You simply specify the areas you want to look at and the reports you need. The information is displayed immediately for you to review or print on hard copy." (Today 1985;TMS 0054629:2-5).<br><br>**CompuServe teaches that its information databases can be searched on any arbitrary attribute at the designers choice, including, specifically, Zip Code.** |

| Claim 3 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1, | | CompuServe anticipates Claim 1 and teaches all elements of this claim, so anticipates Claim 3. |
| 1. wherein the information received from the service provider includes a schedule of the television programming available to the particular viewing location. | **"Schedule of the television programming"** means a list, not necessarily ordered in any way, containing at least one item of television programming. (See '078 at 2:1-6 in contrast with '078 at 4:66-5:4)<br><br>**[Expert Witness Note: I am unable to determine from the patent description how the "information received" in this claim differs from that required by claim element 1.5. The patent description in no way explicitly or implicitly defines the term "schedule", I therefore conclude that Claim 3 is invalid due to indefiniteness.]** | CompuServe teaches this claim element.<br><br>See (Today 1982;TMS 0001082-0001083) showing the following CompuServe "Subject Index" items and their GO words for accessing them directly: "Cable TV listings ...Go SFE-51; Columbus area: ... Television listings .. Go CDP-1; Hampton Roads, Virginia area: ... Television schedule ..Go VPL-60; New York City area: ... Television....Go NYT-12 ;San Francisco area: ... Television...Go SFC-7; Satellite TV signals ..Go PSP-1; Television reviews ... Columbus Dispatch ... New York Times ... S.F. Chronicle ... VPL ... Washington Post .." |

**ANALYSIS OF CompuServe\* TEACHINGS AGAINST THE '078 PATENT**

\*CompuServe system is described in The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-J001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985. TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 4 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1, | | CompuServe anticipates Claim 1 and teaches all elements of this claim, so anticipates Claim 4. |
| 1. wherein the computerized unit is interfaced to a display, and | | CompuServe teaches this claim element. "MS-DOS machines require the following hardware: <br><br> • An IBM or IBM-compatible PC <br><br> • A color or monochrome monitor (no graphics necessary)" (Schepp:38:3-5). |
| 2. wherein the method further includes the step of displaying the information specific to the type of programming available to the particular viewing location. | | CompuServe teaches this claim element. <br><br> "CompuServe is an online information utility and a videotext system. An online information utility is an easy-to-use electronic information service. A videotext system is an interactive service that delivers information one page at a time. CompuServe is both of these. It provides information delivered through friendly, menu-driven screens." (Schepp;4:2). <br><br> "CompuServe is delivered to your PC's screen in 'pages.' Each page has its own identifying number or word. The pages are organized under menus." (Schepp;25:3) |

| Claim 5 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1, | | CompuServe anticipates Claim 1 and teaches all elements of this claim, so anticipates Claim 5. |

## ANALYSIS OF CompuServe* TEACHINGS AGAINST THE '078 PATENT

*CompuServe system is described in The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987. TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985. TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no). Citation format for others is (TMS no.:para. no.).

| Claim 5 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 1. wherein the computerized unit further includes a memory for storing the information specific to the type of programming available to the particular viewing location. | "Memory for storing the information" means a device that can retain computerized information for retrieval later. | CompuServe teaches this claim element.<br><br>"MS-DOS machines require the following hardware:<br><br>• An IBM or IBM-compatible PC<br>• A color or monochrome monitor (no graphics necessary)<br>• **A hard disk and one floppy drive** (Schepp;38:3-6). |

| Claim 6 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. A method of receiving customized television programming schedule information, comprising the steps of: | | CompuServe anticipates Claims 1 and 4, so anticipates Claim 6. |
| 1. providing, at a television viewing location, a controller interfaced to a bidirectional modem and a display device; | "Controller" means an electronic device for manipulating information including at least memory for storing and executing computer programs and I/O ports for connecting to peripheral devices, such peripheral devices including modems and display devices. | See claim element 1.2. |
| 2. establishing a connection to a wide-area network through the modem; | | See claim element 1.3. |
| 3. transmitting, from the television viewing location, information to a service provider through the wide-area network regarding the | "Information regarding the geographical location of a particular viewing location" means any information, irrespective of how the information is encoded, that expressly indicates in geographic language (e.g., name of a continent, | See claim element 1.4. |

## ANALYSIS OF CompuServe* TEACHINGS AGAINST THE '078 PATENT

*CompuServe system is described in The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985. TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.;para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 6 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| geographical area of the viewing location; | country, province, state, city, town, region, street address, zip code, area code, etc.) the approximate portion of the planet in which a particular "television viewing location", as defined above, is located. [Note: the '078 patent at (3:50-54) distinguishes "ZIP code" as geographic ("location") information from programming source ("cable service provider") as, therefore, non-geographic information.] | |
| 4. receiving, from the service provider, television programming schedule information specific to the viewing location; and | "Receiving" means transferring data to a controller such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data. (See File History at TG 000780.)<br><br>[Expert Witness Note: The information specific to the type of programming available to a particular viewing location cannot be determined solely from the geographical information transmitted; whenever more than one programming source is offered in a location (which I understand to be the case for the vast majority of locations), the programming source must also be identified. Indeed, dependent claim 2 (and also claim 7) adds the limitation that the information transmitted must include Zip Code, and the patentee has admitted that Zip Code itself is often not specific enough to determine the programming available to the particular viewing location (see '078 at 3:50-54). And, at the time of the invention, a skilled artisan would have known that information | See claim element 1.5. |

10 of 15

## ANALYSIS OF CompuServe* TEACHINGS AGAINST THE '078 PATENT

*CompuServe system is described in The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985. TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 6 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | other than just geographical information would be required to identify the programming available to the particular viewing location. However, because only geographic information is transmitted to the program schedule information source, the information received in return will at least sometimes contain information in addition to that specifically available to the viewing location. Therefore, in order for the claimed system to meet its objective of automatically controlling a VCR to record television programming (see, for example, '078 at Abstract), the application residing within the "controller" of this claim must necessarily include functionality to search the received information to extract only that programming information broadcast to the television receiver of the viewing location, or otherwise identify the programming source. This functionality is not taught in the patent description. Furthermore, it would not have been obvious to a skilled artisan, based upon the patent description, how to implement such functionality. Therefore I conclude that Claim 6 is invalid because it is not enabled.] | |
| 5. viewing the information on the display device. | | See claim element 4.2. |

| Claim 7 | Assumed Constructions | Prior Art Teaching |
|---|---|---|

## ANALYSIS OF CompuServe* TEACHINGS AGAINST THE '078 PATENT

*CompuServe system is described in The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985. TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 7 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 6, | | CompuServe anticipates Claim 6 and teaches all elements of this claim, so anticipates Claim 7. |
| 1. wherein the information transmitted to the service provider through the wide-area network regarding the geographical area of the viewing location is the Zip Code associated with the viewing location. | | See claim element 2.1. |

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. A system enabling a viewer of a television receiver to download information specific to the type of television programming available to the receiver, the system comprising: | "**Download**" means transferring data to a computerized unit such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data. (See File History at TG 000780.) | CompuServe anticipates Claim 1 and teaches all elements of this claim not included in Claim 1, so anticipates Claim 8. |
| 1. an electronic terminal unit including an operator input, a bidirectional modem, and a controller in communication with the operator input and the modem, the controller being programmed to perform the following functions: | "**Controller**" means a computer, exclusive of peripheral devices such as a keyboard and monitor, but inclusive of memory for storing and executing computer programs and inclusive of I/O ports for connecting to peripheral devices.<br><br>[**Expert Witness Note:** I note that this claim element does not include the requirement of claim element 1.2 that the "**electronic terminal unit**" be located at the television viewing location. However, the file history, at TG | See claim element 1.2. |

## ANALYSIS OF CompuServe* TEACHINGS AGAINST THE '078 PATENT

*CompuServe system is described in The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985. TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no,). Citation format for others is (TMS no.:para. no,).

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 2. a) establish a connection to a service provider through the modem, | 002253 and TG 002282, clearly states that "All of applicant's claims include this limitation ... ."] | See claim element 1.3. |
| 3. b) receive information through the operator input through the geographic location of the television receiver, | "Receive information through the operator input" means signals produced by the operator input in response to user actions and transferred to the controller in the electronic terminal unit.<br><br>"Information regarding the geographical location of a particular viewing location" means any information, irrespective of how the information is encoded, that expressly indicates in geographic language (e.g., name of a continent, country, province, state, city, town, region, street address, zip code, area code, etc,) the approximate portion of the planet in which a particular "television viewing location", as defined above, is located. [Note: the '078 patent at (3:50-54) distinguishes "ZIP code" as geographic ("location") information from programming source ("cable service provider") as, therefore, non-geographic information.] | CompuServe teaches this claim element.<br><br>"All CompuServe services have GO words, which are direct routes to their main menus. Using a GO word instead of menus to get to a service is like taking an express train rather than the local. To jump from one service to another, just enter the GO word to get directly to that service's main menu. To go directly to a specific page within that service, enter the screen's page number." (Schepp:26:3).<br><br>See (Today 1982;TMS 0001082-0001083) showing the following CompuServe "Subject Index" items and their GO words for accessing them directly: "Cable TV listings....Go SFE-51; Columbus area: ... Television listings .. Go CDP-1; Hampton Roads, Virginia area: ... Television schedule ..Go VPL-60; New York City area: ... Television....Go NYT-12 ;San Francisco area: ... Television...Go SFC-7; Satellite TV signals ..Go PSP-1; Television reviews: ... Columbus Dispatch ... New York Times ... S.F. Chronicle ... VPL ... Washington Post ..."<br><br>From the above "Subject Index" the user would know to type at the keyboard the selection, for example, "Go SFC-7" to view the television listings in the San Francisco area. The acronym "SFC", indicating the San Francisco Chronicle newspaper, is geographic information. The number "7" is the number of the CompuServe page within the San Francisco |

13 of 15

ANALYSIS OF CompuServe* TEACHINGS AGAINST THE '078 PATENT

*CompuServe system is described in The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985, TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 4.  c) transmit the information pertaining to the geographic location of the television receiver to the service provider, and | | area database that contains television listings.

See claim element 1.4. |
| 5.  d) receive, from the service provider, the information specific to the type of television programming available to the receiver. | [Expert Witness Note: The information specific to the type of programming available to a particular viewing location cannot be determined solely from the geographical information transmitted; whenever more than one programming source is offered in a location (which I understand to be the case for the vast majority of locations), the programming source must also be identified.  Indeed, dependent claim 2 (and also claim 7) adds the limitation that the information transmitted must include Zip Code, and the patentee has admitted that Zip Code itself is often not specific enough to determine the programming available to the particular viewing location (see '078 at 3:50-54). And, at the time of the invention, a skilled artisan would have known that information other than just geographical information would be required to identify the programming available to the particular viewing location. However, because only geographic information is transmitted to the program schedule information source, the information received in return will at least sometimes contain information in addition to that specifically | See claim element 1.5. |

14 of 15

## ANALYSIS OF CompuServe* TEACHINGS AGAINST THE '078 PATENT

*CompuServe system is described in The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985. TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | available to the viewing location. Therefore, in order for the claimed system to meet its objective of automatically controlling a VCR to record television programming (see, for example, '078 at Abstract), the application residing within the "controller" of this claim must necessarily include functionality to search the received information to extract only that programming information broadcast to the television receiver of the viewing location, or otherwise identify the programming source. This functionality is not taught in the patent description. Furthermore, it would not have been obvious to a skilled artisan, based upon the patent description, how to implement such functionality. Therefore I conclude that Claim 8 is invalid because it is not enabled.] | |

| Claim 10 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The system of claim 8, | | CompuServe anticipates Claims 8 and 5, so anticipates Claim 10. |
| 1. further including a memory in communication with the controller for storing and retrieving the information specific to the type of television programming available to the receiver. | | See claim element 5.1. |

EXHIBIT 4

**ANALYSIS OF Tydeman\* TEACHINGS AGAINST THE '078 PATENT**

\*Teletext And Videotex In The United States: Market Potential, Technology, Public Policy Issues, by John Tydeman, et al., McGraw-Hill Publications Company, 1982.
Citation format is (page no.:para. no.).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. In a television distribution arrangement wherein a plurality of geographically dispersed television viewing locations receive television programming from a source of such programming, | "Television viewing location" means the specific room within a building where a television set is positioned and watched by a user. | Tydeman teaches all elements of this claim, so anticipates Claim 1.<br><br>"Following the International Telegraph and Telephone Consultative Committee (CCITT) we use the term *videotext* as the generic name to describe the provision of two-way information services and *teletext* for one-way services.  In addition, we also use the term videotex to refer broadly to the class of systems that provide electronic information to the home.<br><br>Tyler (1979a) has defined teletext/videotext as follows:  'Systems for the widespread dissemination of textual and graphic information by wholly electronic means, for display on low-cost terminals (**often suitably equipped television receivers**), under the selective control of the recipient, and using control procedures easily understood by untrained users.'"  (2:1-2). |
| 1. a method of receiving information specific to the type of programming available to a particular one of the viewing locations, the method comprising the steps of: | "Available to a particular one of the viewing locations" means deliverable from a programming source to a specific "television viewing location", as defined above. | Tydeman teaches this claim element.<br><br>"The array of services for users is limited only by the ingenuity of those providing them.  Teletext and videotex are not just information-retrieval services.  They provide an electronic window to a multitude of services in the information society.  In subsequent chapters we identify five broad classes of videotex services.<br><br>    information retrieval (e.g., news, weather, sports, advertising, directories, how-to guides) ..." (2:10-3:2)<br><br>**Tydeman teaches methods for receiving in user's homes any type of information including, implicitly, television programming information.** |
| 2. providing a computerized unit at the particular viewing location, the unit including an operator input and a | "Operator input" means a keyboard or other device for manually entering data into a computer.<br><br>"Modem" means a data signal conversion device that converts digital signals to analog signals (and | Tydeman teaches this claim element.<br><br>"The database design is such that it permits the accessing and rapid retrieval of specific items of information and the billing of customers using the system.  The transmission lines between the |

**ANALYSIS OF Tydeman* TEACHINGS AGAINST THE '078 PATENT**

*Teletext And Videotex In The United States: Market Potential, Technology, Public Policy Issues, by John Tydeman, et al., McGraw-Hill Publications Company, 1982. Citation format is (page no.:para. no.).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| modem; | vice versa) and enables a computerized unit to exchange data with another computerized unit over a standard dial-up telephone line. | user and the computer include the **public telephone network (using appropriate modems** to convert analog telephone signals into digital form for display) or a cable TV system with two-way capabilities.

"Again a modified TV receiver with a decoder translates the data and builds up the video image (Figure 1.2). As with teletext, the decoder may be plugged into the antenna socket or directly wired into the RGB beam circuits. Pages for transmission are selected by the user on a **numeric keypad or an alphanumeric keyboard.**" (5:3-4 and 5:Figure 1.2).

"At present the only commercial systems in operation in the United States provide teletext and videotex services directed at special groups such as captioning for the deaf, Dow Jones financial information, and **home-based personal computer services (The Source, CompuServe).**" (7:1).

"Teletext/videotext decoders **include a processor, memory, and** generally a character/pattern generator." (28:1). |
| 3. establishing a connection to a wide-area network through the modem; | **"Modem"** means a data signal conversion device that converts digital signals to analog signals (and vice versa) and enables a computerized unit to exchange data with another computerized unit over a standard dial-up telephone line. | Tydeman teaches this claim element.

"As the system has *full two-way capability*, the user may also send a message to the computer, the database, or another terminal. In telephone systems, the transmission of data to the user is usually at a higher speed than the transmission from the user to the system (e.g., the British Prestel system uses **1,200 bits per second from computer to user and 75 bits per second from user to computer**)." (5:4-6:1). |
| 4. transmitting, from the computerized unit, information to a service provider through the wide-area network regarding the geographical location of | **"Information regarding the geographical location of a particular viewing location"** means any information, irrespective of how the information is encoded, that expressly indicates in geographic language (e.g., name of a continent, country, province, state, city, town, region, street | Tydeman teaches this claim element.

"The usual procedure, once a telephone connection has been made for videotex, is to specify a user identification number (to log-on) and then to sequentially negotiate increasingly specific tables of contents (Figure 3.13). … |

## ANALYSIS OF Tydeman* TEACHINGS AGAINST THE '078 PATENT

*Teletext And Videotex In The United States: Market Potential, Technology, Public Policy Issues, by John Tydeman, et al., McGraw-Hill Publications Company, 1982. Citation format is (page no.:para. no.).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| the particular viewing location; and | address, zip code, area code, etc.) the approximate portion of the planet in which a particular "television viewing location", as defined above, is located. [Note: the '078 patent at (3:50-54) distinguishes "ZIP code" as geographic ("location") information from programming source ("cable service provider") as, therefore, non-geographic information.] | In all cases the option exists to go straight to a particular page by entering the page number, for example 4163289. In the case of the French electronic directory a particular name may typed in or a joint keyword-tree search may be undertaken using geographic locations, names, or businesses." (32:3-4 and 33:Figure 3.13).<br><br>"DATABASE STRUCTURE, SEARCH PROCEDURES, AND STORAGE<br><br>There are three main types of database structure for teletext and videotext systems (Date, 1981):<br><br>• Hierarchical structures<br><br>• Relational structures<br><br>• Network structures" (92:4-5).<br><br>"In relational database structures, data are stored in a set of interrelated tables. These tables are typically two-dimensional, in which the rows are the data records and the columns are the data fields. The records are related through fields having matching data. Table 6.1 illustrates two relational files that could possibly be part of a database used to provide a transaction service such as teleshopping or telebanking" (93:3).<br><br>See also (94:Table 6.1) showing the relational data fields of "Address", "City", and "Zip". A skilled artisan would have known that, in light of the above two citations it can be inferred from Tydeman that the relational data fields of "Address", "City", and "Zip" may be part of a database used to provide many types of information, and thus transmitted by the "computerized unit" to an information service provider. |
| 5. receiving, from the service provider, | "Receiving" means transferring data to a computerized unit such that a user can perform | Tydeman teaches this claim element.<br><br>"Information retrieval. In this category, the user gains access to |

3 of 14

## ANALYSIS OF Tydeman* TEACHINGS AGAINST THE '078 PATENT

*Teletext And Videotex In The United States: Market Potential, Technology, Public Policy Issues, by John Tydeman, et al., McGraw-Hill Publications Company, 1982. Citation format is (page no.:para. no.).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| information specific to the type of programming available to the particular viewing location. | database-type manipulations directly on the transferred data without being connected to the original source of the data. (See File History at TG 000780.)<br><br>[Expert Witness Note: The information specific to the type of programming available to a particular viewing location cannot be determined solely from the geographical information transmitted; whenever more than one programming source is offered in a location (which I understand to be the case for the vast majority of locations), the programming source must also be identified. Indeed, dependent claim 2 (and also claim 7) adds the limitation that the information transmitted must include Zip Code, and the patentee has admitted that Zip Code itself is often not specific enough to determine the programming available to the particular viewing location (see '078 at 3:50-54). And, at the time of the invention, a skilled artisan would have known that information other than just geographical information would be required to identify the programming available to the particular viewing location. However, because only geographic information is transmitted to the program schedule information source, the information received in return will at least sometimes contain information in addition to that specifically available to the viewing location. Therefore, in order for the claimed system to meet its objective of automatically controlling a VCR to record television programming (see, for | information in a computer's database. The information may include general news bulletins, financial quotes, entertainment listings, basic directory services, the provision of subtitles for TV programs, or special interest services such as encyclopedia information that does not change rapidly. Information can be delivered in either a one-way teletext or a two-way videotext system." (56:6).<br><br>"TABLE 5.2 MOST POPULAR TOPICS ON PRESTEL, 1978-79 ...What's On...."(61:Table 5.2). I note that one skilled in the art would have known that "What's On" implicitly refers to entertainment programming information, including television programming.<br><br>A skilled artisan would have known that, since information transmitted to a service provider can include geographical information, then necessarily this information can be used as criteria to select specific portions of the database for downloading that match that criteria. |

## ANALYSIS OF Tydeman* TEACHINGS AGAINST THE '078 PATENT

*Teletext And Videotex In The United States: Market Potential, Technology, Public Policy Issues, by John Tydeman, et al, McGraw-Hill Publications Company, 1982. Citation format is (page no.;para. no).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | example, '078 at Abstract), the application residing within the "computerized unit" of this claim must necessarily include functionality to search the received information to extract only that programming information broadcast to the television receiver of the viewing location, or otherwise identify the programming source. This functionality is not taught in the patent description. Furthermore, it would not have been obvious to a skilled artisan, based upon the patent description, how to implement such functionality. Therefore I conclude that Claim 1 is invalid because it is not enabled.] | |

| Claim 2 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1, | | Tydeman anticipates Claim 1 and teaches all elements of this claim, so anticipates Claim 2. |
| 1. wherein the information transmitted to the service provider includes the Zip Code associated with the particular viewing location. | | Tydeman teaches this claim element.<br><br>"In relational database structures, data are stored in a set of interrelated tables. These tables are typically two-dimensional, in which the rows are the data records and the columns are the data fields. The records are related through fields having matching data. Table 6.1 illustrates two relational files that could possibly be part of a database used to provide a transaction service such as teleshopping or telebanking" (93:3).<br><br>See also (94;Table 6.1) showing the relational data fields of "Address", "City", and "Zip". A skilled artisan would have known that, in light of the above two citations it can be inferred from Tydeman that the relational data fields of "Address", "City", and "Zip" may be part of a database used |

## ANALYSIS OF Tydeman* TEACHINGS AGAINST THE '078 PATENT

*Teletext And Videotex In The United States: Market Potential, Technology, Public Policy Issues, by John Tydeman, et al., McGraw-Hill Publications Company, 1982. Citation format is (page no.:para. no.).

| Claim 2 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | | to provide other types of information, such as television program information, and thus used, either individually or in combination, to select such information from the database for download to the user's computerized unit. |

| Claim 3 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1, | | Tydeman anticipates Claim 1 and teaches all elements of this claim, so anticipates Claim 3. |
| 1. wherein the information received from the service provider includes a schedule of the television programming available to the particular viewing location. | "Schedule of the television programming" means a list, not necessarily ordered in any way, containing at least one item of television programming. (See '078 at 2:1-6 in contrast with '078 at 4:66-5:4)<br><br>[Expert Witness Note: I am unable to determine from the patent description how the "information received" in this claim differs from that required by claim element 1.5. The patent description in no way explicity or implicitly defines the term "schedule". I therefore conclude that Claim 3 is invalid due to indefiniteness.] | Tydeman teaches this claim element.<br><br>"*Information retrieval.* In this category, the user gains access to information in a computer's database. The information may include general news bulletins, financial quotes, **entertainment listings**, basic directory services, the provision of **subtitles for TV programs**, or special interest services such as encyclopedia information that does not change rapidly. Information can be delivered in either a one-way teletext or a two-way videotext system." (56:6).<br><br>"TABLE 5.2  MOST POPULAR TOPICS ON PRESTEL, 1978-79 …What's On …"(61:Table 5.2). I note that one skilled in the art would have known that "What's On" implicitly refers to television programming information. |

| Claim 4 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1, | | Tydeman anticipates Claim 1 and teaches all elements of this claim, so anticipates Claim 4. |

**ANALYSIS OF Tydeman\* TEACHINGS AGAINST THE '078 PATENT**

\*Teletext And Videotex In The United States: Market Potential, Technology, Public Policy Issues, by John Tydeman, et al., McGraw-Hill Publications Company, 1982.

Citation format is (page no..para. no).

| Claim 4 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 1. wherein the computerized unit is interfaced to a display, and | | Tydeman teaches this claim element. <br><br> Tyler (1979a) has defined teletex/videotext as follows: 'Systems for the widespread dissemination of textual and graphic information by wholly electronic means, for display on low-cost terminals (**often suitably equipped television receivers**), under the selective control of the recipient, and using control procedures easily understood by untrained users.'" (2:1-2). <br><br> "Teletex/videotext business and home-based user terminals typically include three main components (Figure 3.7): <br><br> 1. An input device, for selecting 'pages' of information <br><br> 2. A decoder, for translating and assembling the digital teletext/videotext signal into a video display <br><br> 3. A display device for presenting the information to the user" (27:1-2). |
| 2. wherein the method further includes the step of displaying the information specific to the type of programming available to the particular viewing location. | | Tydeman teaches this claim element. <br><br> Tyler (1979a) has defined teletex/videotext as follows: 'Systems for the widespread dissemination of textual and graphic information by wholly electronic means, for display on low-cost terminals (**often suitably equipped television receivers**), under the selective control of the recipient, and using control procedures easily understood by untrained users.'" (2:1-2). <br><br> "Teletex/videotext business and home-based user terminals typically include three main components (Figure 3.7): <br><br> 1. An input device, for selecting 'pages' of information <br><br> 2. A decoder, for translating and assembling the digital teletext/videotext signal into a video display <br><br> 3. A display device for presenting the information to the user" (27:1-2). |

# ANALYSIS OF Tydeman* TEACHINGS AGAINST THE '078 PATENT

*Teletext And Videotex In The United States: Market Potential, Technology, Public Policy Issues, by John Tydeman, et al., McGraw-Hill Publications Company, 1982. Citation format is (page no.:para. no.).

| Claim 5 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1, | | Tydeman anticipates Claim 1 and teaches all elements of this claim, so anticipates Claim 5. |
| 1. wherein the computerized unit further includes a memory for storing the information specific to the type of programming available to the particular viewing location. | "Memory for storing the information" means a device that can retain computerized information for retrieval later. | Tydeman teaches this claim element.<br><br>"In addition to the semiconductor memory associated with a terminal's processing capability, storage capacity may be desirable or necessary for some teletext/videotext application. . . .<br><br>These devices are:<br><br>• floppy disc<br><br>• hard disc . . . (139:2-140:2). |

| Claim 6 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. A method of receiving customized television programming schedule information, comprising the steps of: | | Tydeman anticipates Claims 1 and 4, so anticipates Claim 6. |
| 1. providing, at a television viewing location, a controller interfaced to a bidirectional modem and a display device; | "Controller" means an electronic device for manipulating information including at least memory for storing and executing computer programs and I/O ports for connecting to peripheral devices, such peripheral devices including modems and display devices. | See claim element 1.2. |
| 2. establishing a connection to a wide-area network through the modem; | | See claim element 1.3. |

## ANALYSIS OF Tydeman* TEACHINGS AGAINST THE '078 PATENT

*Teletext And Videotex In The United States: Market Potential, Technology, Public Policy Issues, by John Tydeman, et al., McGraw-Hill Publications Company, 1982.

Citation format is (page no.:para. no.).

| Claim 6 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 3. transmitting, from the television viewing location, information to a service provider through the wide-area network regarding the geographical area of the viewing location; | "Information regarding the geographical location of a particular viewing location" means any information, irrespective of how the information is encoded, that expressly indicates in geographic language (e.g., name of a continent, country, province, state, city, town, region, street address, zip code, area code, etc.) the approximate portion of the planet in which a particular "television viewing location", as defined above, is located. [Note: the '078 patent at (3:50-54) distinguishes "ZIP code" as geographic ("location") information from programming source ("cable service provider") as, therefore, non-geographic information.] | See claim element 1.4. |
| 4. receiving, from the service provider, television programming schedule information specific to the viewing location; and | "Receiving" means transferring data to a controller such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data. (See File History at TG 000780). [Expert Witness Note: The information specific to the type of programming available to a particular viewing location cannot be determined solely from the geographical information transmitted; whenever more than one programming source is offered in a location (which I understand to be the case for the vast majority of locations), the programming source must also be identified. Indeed, dependent claim 2 (and also claim 7) adds the limitation that the information transmitted must include Zip Code, and the patentee has admitted that Zip Code itself is often not specific enough to determine the programming available to the | See claim element 1.5. |

# ANALYSIS OF Tydeman* TEACHINGS AGAINST THE '078 PATENT

*Teletext And Videotex In The United States: Market Potential, Technology, Public Policy Issues, by John Tydeman, et al., McGraw-Hill Publications Company, 1982.

Citation format is (page no.:para. no.).

| Claim 6 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | particular viewing location (see '078 at 3:50-54). And, at the time of the invention, a skilled artisan would have known that information other than just geographical information would be required to identify the programming available to the particular viewing location. However, because only geographic information is transmitted to the program schedule information source, the information received in return will at least sometimes contain information in addition to that specifically available to the viewing location. Therefore, in order for the claimed system to meet its objective of automatically controlling a VCR to record television programming (see, for example, '078 at Abstract), the application residing within the "controller" of this claim must necessarily include functionality to search the received information to extract only that programming information broadcast to the television receiver of the viewing location, or otherwise identify the programming source. This functionality is not taught in the patent description. Furthermore, it would not have been obvious to a skilled artisan, based upon the patent description, how to implement such functionality. Therefore I conclude that Claim 6 is invalid because it is not enabled.] | |
| 5. viewing the information on the display device. | | See claim element 4.2. |

# ANALYSIS OF Tydeman* TEACHINGS AGAINST THE '078 PATENT

*Teletext And Videotex In The United States: Market Potential, Technology, Public Policy Issues, by John Tydeman, et al., McGraw-Hill Publications Company, 1982. Citation format is (page no.:para. no.).

| Claim 7 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 6, | | Tydeman anticipates Claim 6 and teaches all elements of this claim, so anticipates Claim 7. |
| 1. wherein the information transmitted to the service provider through the wide-area network regarding the geographical area of the viewing location is the Zip Code associated with the viewing location. | | See claim element 2.1. |

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. A system enabling a viewer of a television receiver to download information specific to the type of television programming available to the receiver, the system comprising: | "Download" means transferring data to a computerized unit such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data. (See File History at TG 000780.) | Tydeman anticipates Claim 1 and teaches all elements of this claim not included in Claim 1, so anticipates Claim 8. |
| 1. an electronic terminal unit including an operator input, a bidirectional modem, and a controller in communication with the operator input and the modem, the controller being programmed to perform the following functions: | "Controller" means a computer, exclusive of peripheral devices such as a keyboard and monitor, but inclusive of memory for storing and executing computer programs and inclusive of I/O ports for connecting to peripheral devices.

[Expert Witness Note: I note that this claim element does not include the requirement of claim element 1.2 that the "electronic terminal unit" be located at the television viewing location. However, the file history, at TG | See claim element 1.2. |

# ANALYSIS OF Tydeman* TEACHINGS AGAINST THE '078 PATENT

*Teletext And Videotex In The United States: Market Potential, Technology, Public Policy Issues, by John Tydeman, et al., McGraw-Hill Publications Company, 1982. Citation format is (page no.:para. no).

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | 002253 and TG 002282, clearly states that "All of applicant's claims include this limitation … ."] | |
| 2.    a) establish a connection to a service provider through the modem, | | See claim element 1.3. |
| 3.    b) receive information through the operator input pertaining to the geographic location of the television receiver, | "Receive information through the operator input" means signals produced by the operator input in response to user actions and transferred to the controller in the electronic terminal unit.<br><br>"Information regarding the geographical location of a particular viewing location" means any information, irrespective of how the information is encoded, that expressly indicates in geographic language (e.g., name of a continent, country, province, state, city, town, region, street address, zip code, area code, etc.) the approximate portion of the planet in which a particular "television viewing location", as defined above, is located. [Note: the '078 patent at (3:50-54) distinguishes "ZIP code" as geographic ("location") information from programming source ("cable service provider") as, therefore, non-geographic information.] | Tydeman teaches this claim element.<br><br>"Teletext/videotext business and home-based user terminals typically include three main components (Figure 3.7):<br><br>1.    An input device, for selecting 'pages' of information<br><br>2.    A decoder, for translating and assembling the digital teletext/videotext signal into a video display<br><br>3.    A display device for presenting the information to the user" (27:1-2). |
| 4.    c) transmit the information pertaining to the geographic location of the television receiver to the service provider, and | | See claim element 1.4. |
| 5.    d) receive, from the service provider, the | [Expert Witness Note: The information specific to the type of programming available to a | See claim element 1.5. |

12 of 14

ANALYSIS OF Tydeman* TEACHINGS AGAINST THE '078 PATENT

*Teletext And Videotex In The United States:  Market Potential, Technology, Public Policy Issues, by John Tydeman, et al., McGraw-Hill Publications Company, 1982.
Citation format is (page no.:para. no.).

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| information specific to the type of television programming available to the receiver. | particular viewing location cannot be determined solely from the geographical information transmitted; whenever more than one programming source is offered in a location (which I understand to be the case for the vast majority of locations), the programming source must also be identified.  Indeed, dependent claim 2 (and also claim 7) adds the limitation that the information transmitted must include Zip Code, and the patentee has admitted that Zip Code itself is often not specific enough to determine the programming available to the particular viewing location (see '078 at 3:50-54).  And, at the time of the invention, a skilled artisan would have known that information other than just geographical information would be required to identify the programming available to the particular viewing location.  However, because only geographic information is transmitted to the program schedule information source, the information received in return will at least sometimes contain information in addition to that specifically available to the viewing location.  Therefore, in order for the claimed system to meet its objective of automatically controlling a VCR to record television programming (see, for example, '078 at Abstract), the application residing within the "controller" of this claim must necessarily include functionality to search the received information to extract only that programming information broadcast to the television receiver of the viewing location, or otherwise identify the programming source. | |

# ANALYSIS OF Tydeman\* TEACHINGS AGAINST THE '078 PATENT

\*Teletext And Videotex In The United States: Market Potential, Technology, Public Policy Issues, by John Tydeman, et al., McGraw-Hill Publications Company, 1982. Citation format is (page no.;para. no).

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | This functionality is not taught in the patent description. Furthermore, it would not have been obvious to a skilled artisan, based upon the patent description, how to implement such functionality. Therefore I conclude that Claim 8 is invalid because it is not enabled.] | |

| Claim 10 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The system of claim 8, | | Tydeman anticipates Claims 8 and 5, so anticipates Claim 10. |
| 1. further including a memory in communication with the controller for storing and retrieving the information specific to the type of television programming available to the receiver. | | See claim element 5.1. |

14 of 14

EXHIBIT 5

## ANALYSIS OF Young* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,706,121, issued Nov. 10, 1987 to Patrick Young. Citation format is (col. no.:row no.). Secondary references used to show that a particular claim requirement is necessarily or implicitly present in the CompuServe system are: The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985, TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. In a television distribution arrangement wherein a plurality of geographically dispersed television viewing locations receive television programming from a source of such programming. | "Television viewing location" means the specific room within a building where a television set is positioned and watched by a user. | Young teaches all elements of this claim, so anticipates Claim 1. "As the number of television stations in a metropolitan area or on a cable network has increased, a larger number of programs of potential interest to a viewer is presented. With the use of dish antennas capable of receiving direct satellite signals, the multitude of programs available to the viewer is further increased." (Young:1:44-49). |
| 1. a method of receiving information specific to the type of programming available to a particular one of the viewing locations, the method comprising the steps of: | "Available to a particular one of the viewing locations" means deliverable from a programming source to a specific "television viewing location", as defined above. | Young teaches this claim element. "Accordingly, it is an object of this invention to provide a system and process which allows a user to control a television set by selecting broadcast programs for viewing from schedule information with user-supplied selection criteria. It is another object of the invention to provide such a system and process which receives the schedule information as a broadcast." (Young:3:1-10). |
| 2. providing a computerized unit at the particular viewing location, the unit including an operator input and a modem; | "Operator input" means a keyboard or other device for manually entering data into a computer. "Modem" means a data signal conversion device that converts digital signals to analog signals (and vice versa) and enables a computerized unit to exchange data with another computerized unit over a standard dial-up telephone line. | Young teaches this claim element. "For example, the schedule information could be accessible with a personal computer through an information utility, such as Compuserve or The Source, ... " (Young:21:67-22:2). "MS-DOS machines require the following hardware: • An IBM or IBM-compatible PC • A color or monochrome monitor (no graphics necessary) • A hard disk and one floppy drive • MS-DOS 2.0 or higher • A serial port/Hayes-compatible modem. (Schepp:38:3- |

1 of 18

## ANALYSIS OF Young* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,706,121, issued Nov. 10, 1987 to Patrick Young. Citation format is (col. no.:row no.). Secondary references used to show that a particular claim requirement is necessarily or implicitly present in the CompuServe system are: The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glosbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glosbrenner") and Online Today, January 1985. TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | | 39:2). |
| | | An IBM or IBM-compatible PC necessarily includes a keyboard or similar "operator input" device.  A skilled artisan would have known that a "PC" could have been located anywhere in the user's home accessible to a telephone line, including the room(s) in which the user watches television. |
| 3. establishing a connection to a wide-area network through the modem; | "Modem" means a data signal conversion device that converts digital signals to analog signals (and vice versa) and enables a computerized unit to exchange data with another computerized unit over a standard dial-up telephone line. | Young teaches this claim element.<br><br>"For example, the schedule information could be accessible with a personal computer through an information utility, such as Compuserve or The Source, … " (Young;21:67-22:2).<br><br>"Your computer needs three items to communicate with other computers.  It needs a modem to **transmit and receive data over standard telephone wires.**  It needs communications software to give your computer instructions for operating the modem.  Finally, it needs access to a telephone line." (Schepp;20:4).<br><br>"CompuServe's success is rooted in its telecommunications network.  As of this writing, **the network has 1,800 communication nodes that service about 400 U.S. cities.**" (Schepp;4:5). |
| 4. transmitting, from the computerized unit, information to a service provider through the wide-area network regarding the geographical location of the particular viewing location; and | "Information regarding the geographical location of a particular viewing location" means any information, irrespective of how the information is encoded, that expressly indicates in geographic language (e.g., name of a continent, country, province, state, city, town, region, street address, zip code, area code, etc.) the approximate portion of the planet in which a particular "television viewing location", as defined above, is | Young teaches this claim element.<br><br>"For example, the schedule information could be accessible with a personal computer through an information utility, such as Compuserve or The Source, and the user could either make the selection inputs to the utility's mainframe for running a selection program on the mainframe and then download the selected program information for his or her locality, … " (Young;21:67-22:6). |

# ANALYSIS OF Young* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,706,121, issued Nov. 10, 1987 to Patrick Young.  Citation format is (col. no.:row no.).  Secondary references used to show that a particular claim requirement is necessarily or implicitly present in the CompuServe system are:  The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985, TMS 0054628-0054629 ("Today 1985").  Citation format for Schepp is (page no.:para. no.).  Citation format for others is (TMS no.:para. no.).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | located.  [Note: the '078 patent at (3:50-54) distinguishes "ZIP code" as geographic ("location") information from programming source ("cable service provider") as, therefore, non-geographic information.] | "All CompuServe services have GO words, which are direct routes to their main menus.  Using a GO word instead of menus to get to a service is like taking an express train rather than the local.  To jump from one service to another, just enter the GO word to get directly to that service's main menu.  To go directly to a specific page within that service, enter the screen's page number."  (Schepp:26:3). |
| | | See (Today 1982;TMS 0001082-0001083) showing the following CompuServe "Subject Index" items and their GO words for accessing them directly:  "Cable TV listings….Go SFE-51; Columbus area: … Television listings .. Go CDP-1; Hampton Roads, Virginia area: … Television schedule .. Go VPL-60; New York City area. .. Television….Go NYT-12 ;San Francisco area: … Television….Go SFC-7; Satellite TV signals ..Go PSP-1; Television reviews: … Columbus Dispatch … New York Times … S.F. Chronicle … VPL … Washington Post …" |
| | | **From the above "Subject Index" the user would know to type at the keyboard the selection, for example, "Go SFC-7" to view the television listings in the San Francisco area.  The acronym "SFC", indicating the San Francisco Chronicle newspaper, is geographic information.  The number "7" is the number of the CompuServe page within the San Francisco area database that contains television listings.** |
| | | "The easiest and fastest way to get a quick forecast for your area is to select the Weather option from CIM's Services pull-down menu.  When you do, the dialog box shown in Figure 4-11 appears.  As you can see, the default shows you a local weather forecast for the node from which you are calling.  You can also **choose a report by city and state** or by National Weather Service reporting station.  The report you will receive includes the |

## ANALYSIS OF Young* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,706,121, issued Nov. 10, 1987 to Patrick Young. Citation format is (col. no.:row no.). Secondary references used to show that a particular claim requirement is necessarily or implicitly present in the CompuServe system are: The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985, TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | | current day's forecasted temperature, winds, precipitation probability, sun or clouds, and the forecast for tonight and tomorrow. (Schepp;101:2 and 101:Figure 4-11). |
| | | "Option 5 from NewsGrid's main menu lets you search the database by keyword. Stories from the last seven days are available for searching. NewsGrid editors assign five to ten keywords for each story. Keywords are most often: |
| | | • Proper names |
| | | • Country names |
| | | • Regions of the world |
| | | • ... |
| | | NewsGrid also offers automatic truncation, or wildcard searching, that will search for keywords beginning with the string or word you specify." (Schepp;87:10-88:7). |
| | | Many IQuest databases enable you to search by field quite easily. A database record (the complete hit) is divided into distinct searchable parts called fields, enabling searchers to pull out only the information they need. Examples of fields include company name, SIC code, **geographic area**, and a person's name. The ability to search by field effortlessly, through IQuest and its spinoffs, is a great boon." (Schepp;219:7). |
| | | "The directory first asks you **the area code** you will be calling from, since some listings will not be valid in your area." (Schepp;253:2). |
| 5. receiving, from the service provider, information specific to the | "**Receiving**" means transferring data to a computerized unit such that a user can perform database-type manipulations directly on the | Young teaches this claim element.

"For example, the schedule information could be accessible with a personal computer through an information utility, such as |

4 of 18

## ANALYSIS OF Young* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,706,121, issued Nov. 10, 1987 to Patrick Young. Citation format is (col. no.:row no.). Secondary references used to show that a particular claim requirement is necessarily or implicitly present in the CompuServe system are: The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1984, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985, TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no). Citation format for others is (TMS no.:para. no).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| type of programming available to the particular viewing location. | transferred data without being connected to the original source of the data. (See File History at TG 000780.)<br><br>[Expert Witness Note: The information specific to the type of programming available to a particular viewing location cannot be determined solely from the geographical information transmitted; whenever more than one programming source is offered in a location (which I understand to be the case for the vast majority of locations), the programming source must also be identified. Indeed, dependent claim 2 (and also claim 7) adds the limitation that the information transmitted must include Zip Code, and the patentee has admitted that Zip Code itself is often not specific enough to determine the programming available to the particular viewing location (see '078 at 3:50-54). And, at the time of the invention, a skilled artisan would have known that information other than just geographical information would be required to identify the programming available to the particular viewing location. However, because only geographic information is transmitted to the program schedule information source, the information received in return will at least sometimes contain information in addition to that specifically available to the viewing location. Therefore, in order for the claimed system to meet its objective of automatically controlling a VCR to | Compuserve or The Source, and the user could either make the selection inputs to the utility's mainframe for running a selection program on the mainframe and then download the selected program information for his or her locality, ... "(Young;21:67-22:6).<br><br>"The HMI protocol is specifically designed to enhance communications between a PC and the CompuServe host mainframe computers. When using CIM, instead of your PC receiving information character by character, as it does with ASCII communications, it gets information from CompuServe in 'packets' or bursts. A packet is the information you need to complete what you asked for. It could include a menu or a complete article. Once your computer receives this packet, it stores the information so you can bring it up again much faster than if you had to retrieve it anew from CompuServe. Therefore, CIM both eliminates the need for you to use ASCII commands and enables you to store more information locally." (Schepp;30:2).<br><br>A skilled artisan would have known that, since information transmitted to a service provider can include geographical information, then necessarily this information can be used as criteria to select specific portions of the database for downloading that match that criteria. |

5 of 18

## ANALYSIS OF Young* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,706,121, issued Nov. 10, 1987 to Patrick Young. Citation format is (col. no.:row no.). Secondary references used to show that a particular claim requirement is necessarily or implicitly present in the CompuServe system are: The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985, TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | record television programming (see, for example, '078 at Abstract), the application residing within the "computerized unit" of this claim must necessarily include functionality to search the received information to extract only that programming information broadcast to the television receiver of the viewing location, or otherwise identify the programming source. This functionality is not taught in the patent description. Furthermore, it would not have been obvious to a skilled artisan, based upon the patent description, how to implement such functionality. Therefore I conclude that Claim 1 is invalid because it is not enabled.] | |

| Claim 2 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1, | | Young anticipates Claim 1 and teaches all elements of this claim, so anticipates Claim 2. |
| 1. wherein the information transmitted to the service provider includes the Zip Code associated with the particular viewing location. | | Young teaches this claim element.<br><br>"For example, the schedule information could be accessible with a personal computer through an information utility, such as Compuserve or The Source, … " (Young;21:67-22:2).<br><br>"The database is searchable by zip code or area code." (Schepp;424:4).<br><br>"Both the database and the techniques have been developed and refined to the point that, for a fee, you can now get an instant report on any ZIP code or U.S. county." (Glossbrenner;TMS |

## ANALYSIS OF Young* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,706,121, issued Nov. 10, 1987 to Patrick Young. Citation format is (col. no.:row no.). Secondary references used to show that a particular claim requirement is necessarily or implicitly present in the CompuServe system are: The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985, TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no).

| Claim 2 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | | 0054634:2).<br><br>"SuperSite information comes from CACI, a management consulting firm specializing in demographic analysis. Information is provided for every **ZIP code** and county in the United States ... . All SuperSite reports are preformatted and are of presentation quality. You simply specify the areas you want to look at and the reports you need. The information is displayed immediately for you to review or print on hard copy." (Today 1985;TMS 0054629:2-5).<br><br>**Young teaches that information databases can be searched on any arbitrary attribute at the designer's choice, necessarily including Zip Code as Young cites CompuServe as an example of a provider of television programming information to Young's methods and systems.** |

| Claim 3 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1, | | Young anticipates Claim 1 and teaches all elements of this claim, so anticipates Claim 3. |
| 1, wherein the information received from the service provider includes a schedule of the television programming available to the particular viewing location. | **"Schedule of the television programming"** means a list, not necessarily ordered in any way, containing at least one item of television programming. (See '078 at 2:1-6 in contrast with '078 at 4:66-5:4)<br><br>[Expert Witness Note: I am unable to determine from the patent description how the "information received" in this claim differs from that required by claim element 1.5. The patent description in no way explicitly or | Young teaches this claim element.<br><br>"For example, the **schedule information** could be accessible with a personal computer through an information utility, such as Compuserve or The Source, and the user could either make the selection inputs to the utility's mainframe for running a selection program on the mainframe and then **download the selected program information**, ... " (Young;21:67-22:5).<br><br>See (Today 1982;TMS 0001082-0001083) showing the following CompuServe "Subject Index" items and their GO words for |

## ANALYSIS OF Young* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,706,121, issued Nov. 10, 1987 to Patrick Young. Citation format is (col. no.:row no.). Secondary references used to show that a particular claim requirement is necessarily or implicitly present in the CompuServe system are: The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985, TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 3 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | implicitly defines the term "schedule". I therefore conclude that Claim 3 is invalid due to indefiniteness.] | accessing them directly: "Cable TV listings.....Go SFE-51; Columbus area: ... Television listings .. Go CDP-1; Hampton Roads, Virginia area: ... Television schedule ..Go VPL-60; New York City area: ... Television.....Go NYT-12 ;San Francisco area: ... Television...Go SFC-7; Satellite TV signals ..Go PSP-1; Television reviews: ... Columbus Dispatch ... New York Times ... S.F. Chronicle ... VPL ... Washington Post ..." |

| Claim 4 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1, | | Young anticipates Claim 1 and teaches all elements of this claim, so anticipates Claim 4. |

## ANALYSIS OF Young* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,706,121, issued Nov. 10, 1987 to Patrick Young. Citation format is (col. no.:row no.). Secondary references used to show that a particular claim requirement is necessarily or implicitly present in the CompuServe system are: The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985, TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 4 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 1. wherein the computerized unit is interfaced to a display, and | | Young teaches this claim element.<br><br>"The tuner receives conventional TV broadcast signals from antenna 133 on line 135. The CPU 110 supplies information signals from the **program schedule data** on line 108, control program inputs on line 114 and user inputs on line 120 to a video **display generator 136** on line 138. Output video display signals from the generator 136 are supplied to a video switcher 140 on line 142. The video switcher also receives TV program signals from tuner 132 on line 144, and a control signal for switching between the tuner 132 and the generator 136 on line 146 from the CPU 110. The video switcher 140 supplies the signals from the tuner 132 or the generator 142 to the **TV receiver 126** on line 148 ..." (Young;7:66-8:11).<br><br>"MS-DOS machines require the following hardware:<br><br>&bull; An IBM or IBM-compatible PC<br><br>**A color or monochrome monitor** (no graphics necessary)" (Schepp;38:3-5). |

## ANALYSIS OF Young* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,706,121, issued Nov. 10, 1987 to Patrick Young. Citation format is (col. no.:row no.). Secondary references used to show that a particular claim requirement is necessarily or implicitly present in the CompuServe system are: The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985, TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no). Citation format for others is (TMS no.:para. no.).

| Claim 4 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 2. wherein the method further includes the step of displaying the information specific to the type of programming available to the particular viewing location. | | Young teaches this claim element.<br><br>"The tuner receives conventional TV broadcast signals from antenna 133 on line 135.  The CPU 110 supplies information signals from the **program schedule data** on line 108, control program inputs on line 114 and user inputs on line 120 to a video **display generator 136** on line 138.  Output video display signals from the generator 136 are supplied to a video switcher 140 on line 142.  The video switcher also receives TV program signals from tuner 132 on line 144, and a control signal for switching between the tuner 132 and the generator 136 on line 146 from the CPU 110.  The video switcher 140 supplies the signals from the tuner 132 or the generator 142 to the TV receiver 126 on line 148 …" (Young;7:66-8:11).<br><br>"CompuServe is an online information utility and a videotext system.  An online information utility is an easy-to-use electronic information service.  A videotext system is an interactive service that **delivers information one page at a time.**  CompuServe is both of these.  It provides information delivered through **friendly, menu-driven screens**." (Schepp;4:2).<br><br>"CompuServe is delivered to your PC's screen in 'pages.'  Each page has its own identifying number or word.  The pages are organized under menus." (Schepp;25:3) |

| Claim 5 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1, | | Young anticipates Claim 1 and teaches all elements of this claim, so anticipates Claim 5. |

## ANALYSIS OF Young* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,706,121, issued Nov. 10, 1987 to Patrick Young. Citation format is (col. no.:row no.). Secondary references used to show that a particular claim requirement is necessarily or implicitly present in the CompuServe system are: The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985, TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 5 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 1. wherein the computerized unit further includes a memory for storing the information specific to the type of programming available to the particular viewing location. | "Memory for storing the information" means a device that can retain computerized information for retrieval later. | Young teaches this claim element. "The data demodulator 102 converts the schedule information signals to digital form and supplies the digital schedule data signals to system control unit 106 on line 108, more particularly, to CPU 110 of the system control unit 106. A memory 111 is connected to the CPU 110 at 113. A control program for the system control unit 106 and a user identification code are stored in a read only memory (ROM) 112." (Young;7:42-50).<br><br>"MS-DOS machines require the following hardware:<br>• An IBM or IBM-compatible PC<br>• A color or monochrome monitor (no graphics necessary)<br>• A hard disk and one floppy drive (Schepp;38:3-6). |

| Claim 6 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. A method of receiving customized television programming schedule information, comprising the steps of: | | Young anticipates Claims 1 and 4, so anticipates Claim 6. |
| 1. providing, at a television viewing location, a controller interfaced to a bidirectional modem and a display device; | "Controller" means an electronic device for manipulating information including at least memory for storing and executing computer programs and I/O ports for connecting to peripheral devices, such peripheral devices including modems and display devices. | See claim element 1.2. |
| 2. establishing a connection | | See claim element 1.3. |

## ANALYSIS OF Young* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,706,121, issued Nov. 10, 1987 to Patrick Young. Citation format is (col. no.:row no.). Secondary references used to show that a particular claim requirement is necessarily or implicitly present in the CompuServe system are: The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985, TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 6 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| to a wide-area network through the modem; | | |
| 3. transmitting, from the television viewing location, information to a service provider through the wide-area network regarding the geographical area of the viewing location; | "**Information regarding the geographical location of a particular viewing location**" means any information, irrespective of how the information is encoded, that expressly indicates in geographic language (e.g., name of a continent, country, province, state, city, town, region, street address, zip code, area code, etc.) the approximate portion of the planet in which a particular "television viewing location", as defined above, is located. [Note: the '078 patent at (3:50-54) distinguishes "ZIP code" as geographic ("location") information from programming source ("cable service provider") as, therefore, non-geographic information.] | See claim element 1.4. |
| 4. receiving, from the service provider, television programming schedule information specific to the viewing location; and | "**Receiving**" means transferring data to a controller such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data. (See File History at TG 000780.)<br><br>**[Expert Witness Note: The information specific to the type of programming available to a particular viewing location cannot be determined solely from the geographical information transmitted; whenever more than one programming source is offered in a location (which I understand to be the case for the vast majority of locations), the programming source must also be identified. Indeed, dependent** | See claim element 1.5. |

## ANALYSIS OF Young* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,706,121, issued Nov. 10, 1987 to Patrick Young.  Citation format is (col. no.:row no.).  Secondary references used to show that a particular claim requirement is necessarily or implicitly present in the CompuServe system are:  The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985, TMS 0054628-0054629 ("Today 1985").  Citation format for Schepp is (page no.:para. no.).  Citation format for others is (TMS no.:para. no.).

| Claim 6 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | claim 2 (and also claim 7) adds the limitation that the information transmitted must include Zip Code, and the patentee has admitted that Zip Code itself is often not specific enough to determine the programming available to the particular viewing location (see '078 at 3:50-54).  And, at the time of the invention, a skilled artisan would have known that information other than just geographical information would be required to identify the programming available to the particular viewing location.  However, because only geographic information is transmitted to the program schedule information source, the information received in return will at least sometimes contain information in addition to that specifically available to the viewing location.  Therefore, in order for the claimed system to meet its objective of automatically controlling a VCR to record television programming (see, for example, '078 at Abstract), the application residing within the "controller" of this claim must necessarily include functionality to search the received information to extract only that programming information broadcast to the television receiver of the viewing location, or otherwise identify the programming source.  This functionality is not taught in the patent description.  Furthermore, it would not have been obvious to a skilled artisan, based upon the patent description, how to implement such | |

13 of 18

## ANALYSIS OF Young* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No.4,706,121, issued Nov. 10, 1987 to Patrick Young.  Citation format is (col. no.:row no.).  Secondary references used to show that a particular claim requirement is necessarily or implicitly present in the CompuServe system are:  The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985, TMS 0054628-0054629 ("Today 1985").  Citation format for Schepp is (page no.:para. no).  Citation format for others is (TMS no.:para. no).

| Claim 6 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | functionality.  Therefore I conclude that Claim 6 is invalid because it is not enabled.] | |
| 5. viewing the information on the display device. | | See claim element 4.2. |

| Claim 7 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 6, | | Young anticipates Claim 6 and teaches all elements of this claim, so anticipates Claim 7. |
| 1. wherein the information transmitted to the service provider through the wide-area network regarding the geographical area of the viewing location is the Zip Code associated with the viewing location. | | See claim element 2.1. |

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. A system enabling a viewer of a television receiver to download information specific to the type of television programming available to the receiver, the system comprising: | "Download" means transferring data to a computerized unit such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data. (See File History at TG 000780.) | Young anticipates Claim 1 and teaches all elements of this claim not included in Claim 1, so anticipates Claim 8. |

## ANALYSIS OF Young* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,706,121, issued Nov. 10, 1987 to Patrick Young. Citation format is (col. no.:row no.). Secondary references used to show that a particular claim requirement is necessarily or implicitly present in the CompuServe system are: The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985, TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 1. an electronic terminal unit including an operator input, a bidirectional modem, and a controller in communication with the operator input and the modem, the controller being programmed to perform the following functions: | "Controller" means a computer, exclusive of peripheral devices such as a keyboard and monitor, but inclusive of memory for storing and executing computer programs and inclusive of I/O ports for connecting to peripheral devices.<br><br>[Expert Witness Note: I note that this claim element does not include the requirement of claim element 1.2 that the "electronic terminal unit" be located at the television viewing location. However, the file history, at TG 002253 and TG 002282, clearly states that "All of applicant's claims include this limitation … ."] | See claim element 1.2. |
| 2. a) establish a connection to a service provider through the modem, | | See claim element 1.3. |
| 3. b) receive information through the operator input pertaining to the geographic location of the television receiver, | "Receive information through the operator input" means signals produced by the operator input in response to user actions and transferred to the controller in the electronic terminal unit.<br><br>"Information regarding the geographical location of a particular viewing location" means any information, irrespective of how the information is encoded, that expressly indicates in geographic language (e.g., name of a continent, country, province, state, city, town, region, street address, zip code, area code, etc.) the approximate portion of the planet in which a particular "television viewing location", as defined above, is | Young teaches this claim element.<br><br>"For example, the schedule information could be accessible with a personal computer through an information utility, such as Compuserve or The Source, and the user could either make the selection inputs to the utility's mainframe for running a selection program on the mainframe and then download the selected program information for his or her locality, … " (Young:21:67-22:6).<br><br>"All CompuServe services have GO words, which are direct routes to their main menus. Using a GO word instead of menus to get to a service is like taking an express train rather than the local. To jump from one service to another, just enter the GO |

15 of 18

## ANALYSIS OF Young* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,706,121, issued Nov. 10, 1987 to Patrick Young. Citation format is (col. no.:row no.). Secondary references used to show that a particular claim requirement is necessarily or implicitly present in the CompuServe system are: The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985. TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 4.    c) transmit the information pertaining to the geographic location of the television receiver to the service provider, and | located.  [Note: the '078 patent at (3:50-54) distinguishes "ZIP code" as geographic ("location") information from programming source ("cable service provider") as, therefore, non-geographic information.] | word to get directly to that service's main menu.  To go directly to a specific page within that service, enter the screen's page number." (Schepp:26:3).<br><br>See (Today 1982;TMS 0001082-0001083) showing the following CompuServe "Subject Index" items and their GO words for accessing them directly:  "Cable TV listings….Go SFE-51; Columbus area: … Television listings .. Go CDP-1; Hampton Roads, Virginia area: … Television schedule ..Go VPL-60; New York City area: … Television….Go NYT-12 ;San Francisco area: … Television…Go SFC-7; Satellite TV signals ..Go PSP-1; Television reviews: … Columbus Dispatch … New York Times …S.F. Chronicle … VPL … Washington Post …"<br><br>**From the above "Subject Index" the user would know to type at the keyboard the selection, for example, "Go SFC-7" to view the television listings in the San Francisco area. The acronym "SFC", indicating the San Francisco Chronicle newspaper, is geographic information.  The number "7" is the number of the CompuServe page within the San Francisco area database that contains television listings.** |
| | | See claim element 1.4. |
| 5.    d) receive, from the service provider, the information specific to the type of television programming available to | [Expert Witness Note: The information specific to the type of programming available to a particular viewing location cannot be determined solely from the geographical information transmitted; whenever more than one programming source is offered in a location | See claim element 1.5. |

16 of 18

## ANALYSIS OF Young* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,706,121, issued Nov. 10, 1987 to Patrick Young. Citation format is (col. no.:row no.). Secondary references used to show that a particular claim requirement is necessarily or implicitly present in the CompuServe system are: The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985, TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| the receiver. | (which I understand to be the case for the vast majority of locations), the programming source must also be identified. Indeed, dependent claim 2 (and also claim 7) adds the limitation that the information transmitted must include Zip Code, and the patentee has admitted that Zip Code itself is often not specific enough to determine the programming available to the particular viewing location (see '078 at 3:50-54). And, at the time of the invention, a skilled artisan would have known that information other than just geographical information would be required to identify the programming available to the particular viewing location. However, because only geographic information is transmitted to the program schedule information source, the information received in return will at least sometimes contain information in addition to that specifically available to the viewing location. Therefore, in order for the claimed system to meet its objective of automatically controlling a VCR to record television programming (see, for example, '078 at Abstract), the application residing within the "controller" of this claim must necessarily include functionality to search the received information to extract only that programming information broadcast to the television receiver of the viewing location, or otherwise identify the programming source. This functionality is not taught in the patent | |

17 of 18

## ANALYSIS OF Young* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,706,121, issued Nov. 10, 1987 to Patrick Young. Citation format is (col. no.:row no.). Secondary references used to show that a particular claim requirement is necessarily or implicitly present in the CompuServe system are: The Complete Guide to CompuServe, by Brad Schepp and Debra Schepp, Osborne McGraw-Hill, 1990 ("Schepp"); CompuServe Information Service Today, January 1982, TMS 0001076-0001083 ("Today 1982"); Alfred Glossbrenner's Master Guide to CompuServe, 1987, TMS 0054630-0054645 ("Glossbrenner") and Online Today, January 1985. TMS 0054628-0054629 ("Today 1985"). Citation format for Schepp is (page no.:para. no.). Citation format for others is (TMS no.:para. no.).

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | description. Furthermore, it would not have been obvious to a skilled artisan, based upon the patent description, how to implement such functionality. Therefore I conclude that Claim 8 is invalid because it is not enabled.] | |

| Claim 10 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The system of claim 8, | | Young anticipates Claims 8 and 5, so anticipates Claim 10. |
| 1. further including a memory in communication with the controller for storing and retrieving the information specific to the type of television programming available to the receiver. | | See claim element 5.1. |

18 of 18