# EXHIBIT SS

# PART 2

EXHIBIT 6

**ANALYSIS OF Muguet\* TEACHINGS AGAINST THE '078 PATENT**

\*U.S. Patent No. 4,787,063, Issued Nov. 22, 1988 to Francis Muguet. Citation format is (col. no.: row no.).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. In a television distribution arrangement wherein a plurality of geographically dispersed television viewing locations receive television programming from a source of such programming, | "Television viewing location" means the specific room within a building where a television set is positioned and watched by a user. | Muguet teaches all elements of this claim, so anticipates Claim 1.<br><br>"At the present time, in accordance with the conventional way of scheduling a videorecorder, a user has to read in a magazine the hours, channels, titles, abstracts, and other features of the program. … Furthermore, the conventional way is less and less convenient, with the increasing number of TV channels (air, cable, satellite), some with different local times." (1:6-22). |
| 1. a method of receiving information specific to the type of programming available to a particular one of the viewing locations, the method comprising the steps of: | "Available to a particular one of the viewing locations" means deliverable from a programming source to a specific "television viewing location", as defined above. | Muguet teaches this claim element.<br><br>"The present invention is yet another approach to the problem of starting the recording of scheduled programs, on the real and correct time.  The invention provides a general user-friendly scheduling system which can be upgraded to a universal scheduling and real-time recording stop/start system." (2:56-61).<br><br>"The system has two inter-related components: a data-acquisition system which helps the user in his scheduling task, and an additional real time start/stop recording system." (3:12-15). |
| 2. providing a computerized unit at the particular viewing location, the unit including an operator input and a modem; | "Operator input" means a keyboard or other device for manually entering data into a computer.<br><br>"Modem" means a data signal conversion device that converts digital signals to analog signals (and vice versa) and enables a computerized unit to exchange data with another computerized unit over a standard dial-up telephone line. | Muguet teaches this claim element.<br><br>"The data-acquisition system includes a computer and an interactive computer network which is connected to a modem.  The modem is connected, through an interface, to the timer of the VCR, and also to a **terminal with a screen and a keyboard**.  The data related to the scheduling are exchanged through the interactive network." (3:16-22).<br><br>"The data acquisition apparatus in accordance with the invention comprises (see FIG. 1): … 4. a terminal (4) with a display device and a data acquisition device, such as a screen and a **keyboard**, for example. The terminal (4) is connected to the **modem** (3). In accordance with a most preferred embodiment, the terminal (4) can be a wholly packaged telecommunicatyion [sic] terminal |

ANALYSIS OF Muguet* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,787,063, Issued Nov. 22, 1988 to Francis Muguet. Citation format is (col. no.: row no.).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 3. establishing a connection to a wide-area network through the modem; | "Modem" means a data signal conversion device that converts digital signals to analog signals (and vice versa) and enables a computerized unit to exchange data with another computerized unit over a standard dial-up telephone line. | including the modem (3), a screen (32), a keyboard (33) and a peripheral plug (31);" (3:48-64). Muguet teaches this claim element. "The data-acquisition system includes a computer and an interactive computer network which is connected to a modem. The modem is connected, through an interface, to the timer of the VCR, and also to a terminal with a screen and a keyboard. The data related to the scheduling are exchanged through the interactive network." (3:16-22). "The user may access, through his terminal (4) and the network (2), to the data base (W), ..." (4:44-45). |
| 4. transmitting, from the computerized unit, information to a service provider through the wide-area network regarding the geographical location of the particular viewing location; and | "Information regarding the geographical location of a particular viewing location" means any information, irrespective of how the information is encoded, that expressly indicates in geographic language (e.g., name of a continent, country, province, state, city, town, region, street address, zip code, area code, etc.) the approximate portion of the planet in which a particular "television viewing location", as defined above, is located. [Note: the '078 patent at (3:50-54) distinguishes "ZIP code" as geographic ("location") information from programming source ("cable service provider") as, therefore, non-geographic information.] | Muguet teaches this claim element. "The user may access, through his terminal (4) and the network (2), to the data base (W), and then, with the help of whatever good interrogation software, selects the TV program he wants to record. ... The user forms a set (w) of the programs he wants to record." (4:44-51). "Then, as soon as the user has selected the programs he wants to record, the only operation is to extract the set (w) as a subset of (W)." (5:31-33). Furthermore, the conventional way is less and less convenient, with the increasing number of TV channels (air, cable, satellite), some with different local times." (1:19-22). A skilled artisan would have known that for viewing locations served by multiple programming sources (e.g., "air, cable, satellite") the identification of specific programming available to the viewing location necessarily would require a specification of both geographical location and programming source. Therefore Muguet inherently includes the requirement of this claim element to specify geographical |

**ANALYSIS OF Muguet\* TEACHINGS AGAINST THE '078 PATENT**

\*U.S. Patent No. 4,787,063, Issued Nov. 22, 1988 to Francis Muguet. Citation format is (col. no.: row no.).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 5. receiving, from the service provider, information specific to the type of programming available to the particular viewing location. | "Receiving" means transferring data to a computerized unit such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data. (See File History at TG 000780.)<br><br>[Expert Witness Note: The information specific to the type of programming available to a particular viewing location cannot be determined solely from the geographical information transmitted; whenever more than one programming source is offered in a location (which I understand to be the case for the vast majority of locations), the programming source must also be identified. Indeed, dependent claim 2 (and also claim 7) adds the limitation that the information transmitted must include Zip Code, and the patentee has admitted that Zip Code itself is often not specific enough to determine the programming available to the particular viewing location (see '078 at 3:50-54). And, at the time of the invention, a skilled artisan would have known that information other than just geographical information would be required to identify the programming available to the particular viewing location. However, because only geographic information is transmitted to the program schedule information source, the information received in return will at least sometimes contain information in addition to that specifically available to the viewing location. Therefore, in | Muguet teaches this claim element.<br><br>"The data acquisition apparatus in accordance with the invention comprises (see FIG. 1): … 4. a terminal (4) with a display device and a data acquisition device, such as a screen and a keyboard, for example. … 6. **an intelligent component (5)**, especially conceived, means for an interface between the timer (7) and the modem (3), or the peripheral plug (31)." (3:48-4:5).<br><br>"With the help of the computer center (1), the next step of the method is to assemble and combine (T1 operation): 1. the set (w) **and, more precisely, the characteristics of the chosen program**, i.e., the channel references, the forecast start/stop hours and, as a preferred option, the (F) identification codes; and 2. the codes (Bi) of the input language which commands the interface (5) and the timer (7). The result of the computation (T1) is the set of (c) codes, which is sent over the network (2) to the interface (5). In this way, the scheduling process is performed automatically. Then the interface (5) acknowledges the process and asks the computer center (1) for disconnection." (5:1-15).<br><br>A skilled artisan would have known that, since information transmitted to a service provider can include geographical information, then necessarily this information can be used as criteria to select specific portions of the database for downloading that match that criteria. |

**ANALYSIS OF Muguet\* TEACHINGS AGAINST THE '078 PATENT**

\*U.S. Patent No. 4,787,063, Issued Nov. 22, 1988 to Francis Muguet. Citation format is (col. no.: row no.).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | order for the claimed system to meet its objective of automatically controlling a VCR to record television programming (see, for example, '078 at Abstract), the application residing within the "computerized unit" of this claim must necessarily include functionality to search the received information to extract only that programming information broadcast to the television receiver of the viewing location, or otherwise identify the programming source. This functionality is not taught in the patent description. Furthermore, it would not have been obvious to a skilled artisan, based upon the patent description, how to implement such functionality. Therefore I conclude that Claim 1 is invalid because it is not enabled.] | |

| Claim 2 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1, | | Muguet anticipates Claim 1, and renders Claim 2 obvious because what is claimed is only a specific limitation or instance of a broader teaching in Muguet, and the claim does not disclose a new or unexpected benefit of Zip Code. |
| 1. wherein the information transmitted to the service provider includes the Zip Code associated with the particular viewing location. | | Muguet inherently includes the transmission of both geographical information and programming source information, without limitation as to the specific information that may be transmitted (see claim element 1.4). Zip Code is merely a specific instance of geographic information that would have been well known to a skilled artisan. The '078 patent does not disclose a new or unexpected benefit of the use of Zip Code to specify a geographical location. |

# ANALYSIS OF Muguet* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,787,063, Issued Nov. 22, 1988 to Francis Muguet. Citation format is (col. no.: row no.).

| Claim 3 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1, | | Muguet anticipates Claim 1 and teaches all elements of this claim, so anticipates Claim 3. |
| 1. wherein the information received from the service provider includes a . schedule of the television programming available to the particular viewing location. | "Schedule of the television programming" means a list, not necessarily ordered in any way, containing at least one item of television programming. (See '078 at 2:1-6 in contrast with '078 at 4:66-5:4)<br><br>[Expert Witness Note: I am unable to determine from the patent description how the "information received" in this claim differs from that required by claim element 1.5. The patent description in no way explicitly or implicitly defines the term "schedule". I therefore conclude that Claim 3 is invalid due to indefiniteness.] | Muguet teaches this claim element.<br><br>"With the help of the computer center (1), the next step of the method is to assemble and combine (T1 operation): 1. the set (w) and, more precisely, the characteristics of the chosen program, i.e., the channel references, the forecast start/stop hours and, as a preferred option, the (F) identification codes; and 2. the codes (B1) of the input language which commands the interface (5) and the timer (7). The result of the computation (T1) is the set of (c) codes, which is sent over the network (2) to the interface (5). In this way, the scheduling process is performed automatically. Then the interface (5) acknowledges the process and asks the computer center (1) for disconnection." (5:1-15). |

| Claim 4 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1, | | Muguet anticipates Claim 1 and teaches all elements of this claim, so anticipates Claim 4. |
| 1. wherein the computerized unit is interfaced to a display, and | | Muguet teaches this claim element.<br><br>"The data acquisition apparatus in accordance with the invention comprises (see FIG. 1): ... 4. a terminal (4) with a display device and a data acquisition device, such as a screen and a keyboard, for example. The terminal (4) is connected to the modem (3). In accordance with a most preferred embodiment, the terminal (4) can be a wholly packaged telecommunicatyion [sic] terminal including the modem (3), a screen (32), a keyboard (33) and a peripheral plug (31);" (3:48-64). |

## ANALYSIS OF Muguet* TEACHINGS AGAINST THE '078 PATENT
*U.S. Patent No. 4,787,063, Issued Nov. 22, 1988 to Francis Muguet. Citation format is (col. no.: row no.).

| Claim 4 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 2. wherein the method further includes the step of displaying the information specific to the type of programming available to the particular viewing location. | | Muguet teaches this claim element.<br><br>"Then the computer center (1) **send the titles or other relevant information, over the network (2), onto a display unit such as a screen (32)** or a printer." (5:66-68). |

| Claim 5 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1, | | Muguet anticipates Claim 1 and teaches all elements of this claim, so anticipates Claim 5. |
| 1. wherein the computerized unit further includes a memory for storing the information specific to the type of programming available to the particular viewing location. | "**Memory for storing the information**" means a device that can retain computerized information for retrieval later. | Muguet teaches this claim element.<br><br>"With the help of the computer center (1), the next step of the method is to assemble and combine (T1 operation): 1. **the set (w) and, more precisely, the characteristics of the chosen program,** i.e., the channel references, the forecast start/stop hours and, as a preferred option, the (**F**) identification codes; and 2. the codes (**B1**) of the input language which commands the interface (5) and the timer (7). **The result of the computation (T1) is the set of (c) codes, which is sent over the network (2) to the interface (5)**. In this way, the scheduling process is performed automatically. Then the interface (5) acknowledges the process and asks the computer center (1) for disconnection." (5:1-15).<br><br>"With the help of the (**B1**) codes, the first step of the method is to prepare (operation **T4**) the interrogation control codes, in order that the interface (5) can receive or access the content of the **memories of the timer (7)**." (5:38-41).<br><br>"A peculiar case is when the user has not only a dumb telecommunication terminal even packaged like a MINITEL, but a smart terminal or a microcomputer (4), with a central processing |

**ANALYSIS OF Muguet\* TEACHINGS AGAINST THE '078 PATENT**

\*U.S. Patent No. 4,787,063, Issued Nov. 22, 1988 to Francis Muguet.  Citation format is (col. no.: row no.).

| Claim 5 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. A method of receiving customized television programming schedule information, comprising the steps of: | | unit (41) and main memory, with an auxiliary memory (42) like diskettes or tapes or laser disks, with an I/O module (43) (see FIG. 1)." (6:3-9). "Once a week, or once every two weeks, for example, the computer center (1) loads the data base (W) onto the memory (42) of the microcomputer (41), then the microcomputer (41) acts exactly as the computer center (1), as regards the interface (5)." (6:42-46). |

| Claim 6 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. A method of receiving customized television programming schedule information, comprising the steps of: | | Muguet anticipates Claims 1 and 4, so anticipates Claim 6. |
| 1. providing, at a television viewing location, a controller interfaced to a bidirectional modem and a display device; | "Controller" means an electronic device for manipulating information including at least memory for storing and executing computer programs and I/O ports for connecting to peripheral devices, such peripheral devices including modems and display devices. | See claim element 1.2. |
| 2. establishing a connection to a wide-area network through the modem; | | See claim element 1.3. |
| 3. transmitting, from the television viewing location, information to a service provider through the wide-area network regarding the geographical area of the | "Information regarding the geographical location of a particular viewing location" means any information, irrespective of how the information is encoded, that expressly indicates in geographic language (e.g., name of a continent, country, province, state, city, town, region, street | See claim element 1.4. |

## ANALYSIS OF Miguet* TEACHINGS AGAINST THE '078 PATENT
*U.S. Patent No. 4,787,063, Issued Nov. 22, 1988 to Francis Miguet. Citation format is (col. no.: row no.).

| Claim 6 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| viewing location; | address, zip code, area code, etc.) the approximate portion of the planet in which a particular "television viewing location", as defined above, is located. [Note: the '078 patent at (3:50-54) distinguishes "ZIP code" as geographic ("location") information from programming source ("cable service provider") as, therefore, non-geographic information.] | |
| 4. receiving, from the service provider, television programming schedule information specific to the viewing location, and | "Receiving" means transferring data to a controller such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data. (See File History at TG 000780.)<br><br>[Expert Witness Note: The information specific to the type of programming available to a particular viewing location cannot be determined solely from the geographical information transmitted; whenever more than one programming source is offered in a location (which I understand to be the case for the vast majority of locations), the programming source must also be identified. Indeed, dependent claim 2 (and also claim 7) adds the limitation that the information transmitted must include Zip Code, and the patentee has admitted that Zip Code itself is often not specific enough to determine the programming available to the particular viewing location (see '078 at 3:50-54). And, at the time of the invention, a skilled artisan would have known that information other than just geographical information would be required to identify the programming available to the particular viewing location. | See claim element 1.5. |

## ANALYSIS OF Muguet* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,787,063, Issued Nov. 22, 1988 to Francis Muguet. Citation format is (col. no.: row no.).

| Claim 6 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | However, because only geographic information is transmitted to the program schedule information source, the information received in return will at least sometimes contain information in addition to that specifically available to the viewing location. Therefore, in order for the claimed system to meet its objective of automatically controlling a VCR to record television programming (see, for example, '078 at Abstract), the application residing within the "controller" of this claim must necessarily include functionality to search the received information to extract only that programming information broadcast to the television receiver of the viewing location, or otherwise identify the programming source. This functionality is not taught in the patent description. Furthermore, it would not have been obvious to a skilled artisan, based upon the patent description, how to implement such functionality. Therefore I conclude that Claim 6 is invalid because it is not enabled.] | |
| 5. viewing the information on the display device. | | See claim element 4.2. |

| Claim 7 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 6, | | Muguet anticipates Claim 6, and renders Claim 7 obvious because what is claimed is only a specific limitation or instance of a broader teaching in Muguet, and the claim does not disclose a new or unexpected benefit of Zip Code. |
| 1. wherein the information | | See claim element 2.1. |

## ANALYSIS OF Muguet* TEACHINGS AGAINST THE '078 PATENT
*U.S. Patent No. 4,787,063, Issued Nov. 22, 1988 to Francis Muguet. Citation format is (col. no.: row no.).

| Claim 7 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| transmitted to the service provider through the wide-area network regarding the geographical area of the viewing location is the Zip Code associated with the viewing location. | | |

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. A system enabling a viewer of a television receiver to download information specific to the type of television programming available to the receiver, the system comprising: | "Download" means transferring data to a computerized unit such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data. (See File History at TG 000780.) | Muguet anticipates Claim 1 and teaches all elements of this claim not included in Claim 1, so anticipates Claim 8. |
| 1. an electronic terminal unit including an operator input, a bidirectional modem, and a controller in communication with the operator input and the modem, the controller being programmed to perform the following functions: | "Controller" means a computer, exclusive of peripheral devices such as a keyboard and monitor, but inclusive of memory for storing and executing computer programs and inclusive of I/O ports for connecting to peripheral devices.<br><br>[Expert Witness Note: I note that this claim element does not include the requirement of claim element 1.2 that the "electronic terminal unit" be located at the television viewing location. However, the file history, at TG 002253 and TG 002282, clearly states that "All of applicant's claims include this limitation ...."] | See claim element 1.2. |

ANALYSIS OF Muguet* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,787,063, Issued Nov. 22, 1988 to Francis Muguet. Citation format is (col. no.: row no.).

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 2. a) establish a connection to a service provider through the modem, | | See claim element 1.3. |
| 3. b) receive information through the operator input pertaining to the geographic location of the television receiver, | "**Receive information through the operator input**" means signals produced by the operator input in response to user actions and transferred to the controller in the electronic terminal unit.<br><br>"**Information regarding the geographical location of a particular viewing location**" means any information, irrespective of how the information is encoded, that expressly indicates in geographic language (e.g., name of a continent, country, province, state, city, town, region, street address, zip code, area code, etc.) the approximate portion of the planet in which a particular "television viewing location", as defined above, is located. [Note: the '078 patent at (3:50-54) distinguishes "ZIP code" as geographic ("location") information from programming source ("cable service provider") as, therefore, non-geographic information.] | Muguet teaches this claim element.<br><br>"The data acquisition apparatus in accordance with the invention comprises (see FIG. 1): … 4. a terminal (4) with a display device and a data acquisition device, such as a screen and a **keyboard**, for example. The terminal (4) is connected to the modem (3). In accordance with a most preferred embodiment, the terminal (4) can be a wholly packaged telecommunicatyion [sic] terminal including the modem (3), a screen (32), a **keyboard (33)** and a peripheral plug (31);" (3:48-64).<br><br>"The user may access, **through his terminal (4)** and the network (2), to the data base (W), …" (4:44-45). |
| 4. c) transmit the information pertaining to the geographic location of the television receiver to the service provider, and | | See claim element 1.4. |
| 5. d) receive, from the service provider, the information specific to the type of television programming available to | [**Expert Witness Note:** The information specific to the type of programming available to a particular viewing location cannot be determined solely from the geographical information transmitted; whenever more than | See claim element 1.5. |

ANALYSIS OF Muguet* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,787,063, Issued Nov. 22, 1988 to Francis Muguet. Citation format is (col. no.: row no.).

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| the receiver. | one programming source is offered in a location (which I understand to be the case for the vast majority of locations), the programming source must also be identified. Indeed, dependent claim 2 (and also claim 7) adds the limitation that the information transmitted must include Zip Code, and the patentee has admitted that Zip Code itself is often not specific enough to determine the programming available to the particular viewing location (see '078 at 3:50-54). And, at the time of the invention, a skilled artisan would have known that information other than just geographical information would be required to identify the programming available to the particular viewing location. However, because only geographic information is transmitted to the program schedule information source, the information received in return will at least sometimes contain information in addition to that specifically available to the viewing location. Therefore, in order for the claimed system to meet its objective of automatically controlling a VCR to record television programming (see, for example, '078 at Abstract), the application residing within the "controller" of this claim must necessarily include functionality to search the received information to extract only that programming information broadcast to the television receiver of the viewing location, or otherwise identify the programming source. This functionality is not taught in the patent description. Furthermore, it would not have been obvious to a skilled artisan, based upon | |

12 of 13

## ANALYSIS OF Muguet* TEACHINGS AGAINST THE '078 PATENT

*U.S. Patent No. 4,787,063, Issued Nov. 22, 1988 to Francis Muguet. Citation format is (col. no.: row no.).

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | the patent description, how to implement such functionality. Therefore I conclude that Claim 8 is invalid because it is not enabled.] | |

| Claim 10 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The system of claim 8, | | Muguet anticipates Claims 8 and 5, so anticipates Claim 10. |
| 1. further including a memory in communication with the controller for storing and retrieving the information specific to the type of television programming available to the receiver. | | See claim element 5.1. |

EXHIBIT 7

# ANALYSIS OF Personal Entertainment Guide ("PEG")* TEACHINGS AGAINST THE '078 PATENT

*Personal Entertainment Guide User's Guide Version 1.0, Copyright 1991 by Lookahead Communications Inc.  Citation format is (page no.:para. no.) or page Bates number as (TMS xxxxx).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. In a television distribution arrangement wherein a plurality of geographically dispersed television viewing locations receive television programming from a source of such programming, | "Television viewing location" means the specific room within a building where a television set is positioned and watched by a user. | PEG teaches all elements of this claim, so anticipates Claim 1.<br><br>"Chances are that you are missing programs and movies you want to see (and are paying to see) because you forgot they were on at a particular time – or didn't know they were on in the first place.  Now that you have the Personal Entertainment Guide, you can have unprecedented control of your TV watching and taping schedule." (1-1:4). |
| 1. a method of receiving information specific to the type of programming available to a particular one of the viewing locations, the method comprising the steps of: | "Available to a particular one of the viewing locations" means deliverable from a programming source to a specific "television viewing location", as defined above. | PEG teaches this claim element.<br><br>"The Personal Entertainment Guide (™) is the first television listing magazine implemented on a personal computer.  Like printed magazines, the Personal Entertainment Guide contains feature articles, program listings, grid listings and program break-outs by type and category." (1-1:1). |
| 2. providing a computerized unit at the particular viewing location, the unit including an operator input and a modem; | "Operator input" means a keyboard or other device for manually entering data into a computer.<br><br>"Modem" means a data signal conversion device that converts digital signals to analog signals (and vice versa) and enables a computerized unit to exchange data with another computerized unit over a standard dial-up telephone line. | PEG teaches this claim element.<br><br>"The Personal Entertainment Guide has the following minimum hardware and operating system requirements:<br><br>• IBM-compatible XT, AT, 386, 486, PS/1, PS/2 Personal Computer, running DOS 3.0 or greater,<br><br>...<br><br>• a serial port connected to a 2400-baud Hayes-compatible modem.  A 1200 baud modem may be used but it is not recommended ..." (1-2:3-8).<br><br>"Step 2.  Log onto the drive containing the Personal Entertainment Guide distribution disk.  If the disk is in drive A:. then type A: followed by ENTER.  If the disk is in drive B;, then type B: followed by ENTER." (1-3:5). |

# ANALYSIS OF Personal Entertainment Guide ("PEG")* TEACHINGS AGAINST THE '078 PATENT

*Personal Entertainment Guide User's Guide Version 1.0, Copyright 1991 by Lookahead Communications Inc.  Citation format is (page no.:para. no.) or page Bates number as (TMS xxxxx).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 3. establishing a connection to a wide-area network through the modem; | "Modem" means a data signal conversion device that converts digital signals to analog signals (and vice versa) and enables a computerized unit to exchange data with another computerized unit over a standard dial-up telephone line. | I note that PEG places no limitations on the location of the personal computer used to run the PEG application.  One skilled in the art at the time of the priority date would have known that the PEG personal computer could be located in any room desired by the user accessible to a telephone line, including the room in which the user's television receiver(s) is (are) located.<br><br>PEG teaches this claim element.<br><br>"Once a week, at a convenient day and time, you use a program supplied with the Personal Entertainment Guide to download the next issue of the magazine.  The data is delivered to your personal computer via telephone and modem." (1-2:2).<br><br>"If you type 'PEGMAIL' at the DOS prompt, and you don't type anything else, the PEGMAIL procedure will:<br><br>• 'go to sleep' until a prearranged time, …<br><br>• 'wake up' at a prearranged time and dial the Lookahead Communications, Inc. main computer," (VI-3:1-3). |
| 4. transmitting, from the computerized unit, information to a service provider through the wide-area network regarding the geographical location of the particular viewing location; and | "Information regarding the geographical location of a particular viewing location" means any information, irrespective of how the information is encoded, that expressly indicates in geographic language (e.g., name of a continent, country, province, state, city, town, region, street address, zip code, area code, etc.) the approximate portion of the planet in which a particular "television viewing location", as defined above, is located.  [Note: the '078 patent at (3:50-54) distinguishes "ZIP code" as geographic ("location") information from programming source ("cable service provider") as, therefore, non-geographic information.] | PEG teaches this claim element.<br><br>"The system is pre-configured at Lookahead Communications, Inc. to include certain information that you cannot change. …  This information is:<br><br>• Your name and address,<br><br>• Your cable company and cable line-up." (1-3:8-10).<br><br>"Cable System Edition – PEG is customized for your cable system and the channels are keyed to your cable converter." (II-9:9).<br><br>"If you type 'PEGMAIL' at the DOS prompt, and you don't type anything else, the PEGMAIL procedure will: |

**ANALYSIS OF Personal Entertainment Guide ("PEG")\* TEACHINGS AGAINST THE '078 PATENT**

\*Personal Entertainment Guide User's Guide Version 1.0, Copyright 1991 by Lookahead Communications Inc. Citation format is (page no.:para. no.) or page Bates number as (TMS xxxxx).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | | • 'go to sleep' until a prearranged time, … |
| | | • 'wake up' at a prearranged time and dial the Lookahead Communications. Inc. main computer, |
| | | • determine which new PEG files are available for your account, |
| | | • download compressed versions of those files," (VI-3:1-6). |
| | | "Account Number – the account number assigned to you by Lookahead Communications, Inc.  This field is protected and cannot be modified." (VI-6:8). |
| | | "CONNECT 2400 |
| | | 20:14:46 – Connecting To Lookahead Communications Inc. Computer |
| | | 20:14:47 – Logging On To Lookahead Communications Inc. Computer |
| | | 20:14:47 – Requesting File List … |
| | | 20:14:47 – The Following 4 File(s) Will Be Requested For Download: 212M0098.^PC . . . " (TMS 0001179). |
| | | "APPENDIX G.  FILE NAME CONVENTIONS |
| | | The weekly update files distributed by Lookahead Communications, Inc. are of form "\*.^\*".  There are up to three weeks of these files loaded onto your hard disk. |
| | | Database Update File Name:  aaaczwww.^tx where |
| | | aaa – Telephone area code (i.e. 212) |
| | | c – Cable Company id (e.g. M for Manhattan Cable, P for Paragon |
| | | z – Cable Company Zone number |
| | | www – Week number …" (TMS 0001184). |
| | | **PEG teaches that the files downloaded to the user's personal computer on which PEG resides and is run contain** |

# ANALYSIS OF Personal Entertainment Guide ("PEG")* TEACHINGS AGAINST THE '078 PATENT

*Personal Entertainment Guide User's Guide Version 1.0, Copyright 1991 by Lookahead Communications Inc.  Citation format is (page no.:para. no.) or page Bates number as (TMS xxxxx).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | | information specific to the geographic area and serving Cable Company at the viewing location.  Necessarily information "regarding the geographical location of the particular viewing location" must be sent to the PEG main computer in order for it to determine the specific files, identified by area code, Cable Company id and Cable Company Zone number, to send to the requesting personal computer.  See also the Deposition Transcript of Mark Kaplinsky, co-author of the PEG document at, for example, pp. 52-59 and pp. 105-108 showing the transmission of encoded geographical information. |
| 5. receiving, from the service provider, information specific to the type of programming available to the particular viewing location. | "Receiving" means transferring data to a computerized unit such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data. (See File History at TG 000780.)<br><br>[Expert Witness Note: The information specific to the type of programming available to a particular viewing location cannot be determined solely from the geographical information transmitted; whenever more than one programming source is offered in a location (which I understand to be the case for the vast majority of locations), the programming source must also be identified.  Indeed, dependent claim 2 (and also claim 7) adds the limitation that the information transmitted must include Zip Code, and the patentee has admitted that Zip Code itself is often not specific enough to determine the programming available to the particular viewing location (see '078 at 3:50-54).  And, at the time of the invention, a skilled artisan would have known that information | PEG teaches this claim element.<br><br>"Cable System Edition – PEG is customized for your cable system and the channels are keyed to your cable converter." (II-9:9).<br><br>"Third, the Personal Entertainment Guide provides unprecedented detail.  For example, the listing for most movies in the Personal Entertainment Guide contains a synopsis, year of release, MPAA rating, quality rating, director and six actors.  The Personal Entertainment Guide includes episode titles and descriptions of syndicated shows." (1-1:6).<br><br>"Once you receive your issue of the Personal Entertainment Guide, you do not have to use the telephone and modem again to access the television listings, folders and feature articles – they are immediately available to you on your personal computer." (1-2:2).<br><br>"The Personal Entertainment Guide consists of three main procedures:<br><br>• PEG<br><br>  o   View Feature Articles<br><br>  o   View Program Listings |

# ANALYSIS OF Personal Entertainment Guide ("PEG")* TEACHINGS AGAINST THE '078 PATENT

*Personal Entertainment Guide User's Guide Version 1.0, Copyright 1991 by Lookahead Communications Inc.  Citation format is (page no.:para. no.) or page Bates number as (TMS xxxxx).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---------|----------------------|--------------------|
| | other than just geographical information would be required to identify the programming available to the particular viewing location.  However, because only geographic information is transmitted to the program schedule information source, the information received in return will at least sometimes contain information in addition to that specifically available to the viewing location.  Therefore, in order for the claimed system to meet its objective of automatically controlling a VCR to record television programming (see, for example, '078 at Abstract), the application residing within the "computerized unit" of this claim must necessarily include functionality to search the received information to extract only that programming information broadcast to the television receiver of the viewing location, or otherwise identify the programming source.  This functionality is not taught in the patent description.  Furthermore, it would not have been obvious to a skilled artisan, based upon the patent description, how to implement such functionality.  Therefore I conclude that Claim 1 is invalid because it is not enabled.] | o   Setup And View Folders<br><br>o   Setup And View Personal Listings<br><br>o   Setup Transmission" (I-4:11 – I-5:2).<br><br>"On several screens, you have the ability to search the database for programs of interest to you.  These searches inspect program titles only, not the channel, program type, category or any part of the program description.  These database searches should not be confused with folder searches of which different rules apply (see Section V, FOLDERS AND PERSONAL LISTINGS)." (II-5:3). |

| Claim 2 | Assumed Constructions | Prior Art Teaching |
|---------|----------------------|--------------------|
| Preamble. The method of claim 1, | | PEG renders claim 2 obvious in combination with each of CompuServe, Tydeman or Young. |
| 1. wherein the information transmitted to the service. | | PEG renders claim 2 obvious in combination with each of CompuServe, Tydeman or Young. |

# ANALYSIS OF Personal Entertainment Guide ("PEG")* TEACHINGS AGAINST THE '078 PATENT

*Personal Entertainment Guide User's Guide Version 1.0, Copyright 1991 by Lookahead Communications Inc.  Citation format is (page no.:para. no.) or page Bates number as (TMS xxxxxx).

| Claim 2 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| provider includes the Zip Code associated with the particular viewing location. | | |

| Claim 3 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1, | | PEG anticipates Claim 1 and teaches all elements of this claim, so anticipates Claim 3. |
| 1. wherein the information received from the service provider includes a schedule of the television programming available to the particular viewing location. | "Schedule of the television programming" means a list, not necessarily ordered in any way, containing at least one item of television programming.  (See '078 at 2:1-6 in contrast with '078 at 4:66-5:4) [Expert Witness Note: I am unable to determine from the patent description how the "information received" in this claim differs from that required by claim element 1.5. The patent description in no way explicitly or implicitly defines the term "schedule". I therefore conclude that Claim 3 is invalid due to indefiniteness.] | PEG teaches this claim element. "First, the Personal Entertainment Guide provides complete listings – with more channels and program information than any single source currently available.  Second, the Personal Entertainment Guide provides program listings earlier than most weekly magazines.  In most cases, the Personal Entertainment Guide subscriber is able to view listings two and one-half weeks in advance of air-time." (I-1:5). |

| Claim 4 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1, | | PEG anticipates Claim 1 and teaches all elements of this claim, so anticipates Claim 4. |
| 1. wherein the computerized unit is interfaced to a display, and | | PEG teaches this claim element. "The Personal Entertainment Guide has the following minimum hardware and operating system requirements: |

## ANALYSIS OF Personal Entertainment Guide ("PEG")* TEACHINGS AGAINST THE '078 PATENT

*Personal Entertainment Guide User's Guide Version 1.0, Copyright 1991 by Lookahead Communications Inc. Citation format is (page no.:para. no.) or page Bates number as (TMS xxxxxx).

| Claim 4 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 2. wherein the method further includes the step of displaying the information specific to the type of programming available to the particular viewing location. | | • IBM-compatible XT, AT, 386, 486, PS/1, PS/2 Personal Computer, running DOS 3.0 or greater, <br><br> ... <br><br> • a CGA, EGA or VGA or compatible monitor, ..." (1-2:3-7). <br><br> PEG teaches this claim element. <br><br> "*FEATURE ARTICLE MENU* <br><br> The Feature Articles Menu provides a list of the feature articles available for the date selected in the Feature Articles Date Menu screen. <br><br> To access a feature article, you can either highlight the feature article with the cursor and press ENTER or press the number of letter key (not a function key) that is associated with the feature article. <br><br> *FEATURE ARTICLE SCREEN* <br><br> The Feature Article screen provides the ability to view a selected feature article." (III-1:4-8). <br><br> *ELECTRONIC GRID* <br><br> The Electronic Grid screen is a listing of program events showing at a particular time. This screen is similar to a window of a 'grid' found in television magazines. The window may be scrolled up and down to view a full range of channels, or right and left to view different time periods." (IV-3:10). |

7 of 14-

| Claim 5 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1, | | PEG anticipates Claim 1 and teaches all elements of this claim, so anticipates Claim 5. |

ANALYSIS OF Personal Entertainment Guide ("PEG")* TEACHINGS AGAINST THE '078 PATENT

*Personal Entertainment Guide User's Guide Version 1.0, Copyright 1991 by Lookahead Communications Inc.  Citation format is (page no.:para. no.) or page Bates number as (TMS xxxxx).

| Claim 5 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 1. wherein the computerized unit further includes a memory for storing the information specific to the type of programming available to the particular viewing location. | "Memory for storing the information" means a device that can retain computerized information for retrieval later. | PEG teaches this claim element.<br><br>"The Personal Entertainment Guide has the following minimum hardware and operating system requirements:<br><br>• IBM-compatible XT, AT, 386, 486, PS/1, PS/2 Personal Computer, running DOS 3.0 or greater,<br><br>• 640K of memory (runs in 512K with DOS 5.0)<br><br>• a hard disk with approximately 3 MB of free space, (1-2:3-6).<br><br>"Once you receive your issue of the Personal Entertainment Guide, you do not have to use the telephone and modem again to access the television listings, folders and feature articles – they are immediately available to you on your personal computer." (1-2:2).<br><br>"The weekly update files distributed by Lookahead Communications, Inc. are of form "*.^*".  There are up to three weeks of these files loaded onto your hard disk." (TMS 0001184). |

| Claim 6 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. A method of receiving customized television programming schedule information, comprising the steps of: | | PEG anticipates Claims 1 and 4, so anticipates Claim 6. |
| 1. providing, at a television viewing location, a controller interfaced to a bidirectional modem and a display device; | "Controller" means an electronic device for manipulating information including at least memory for storing and executing computer programs and I/O ports for connecting to peripheral devices, such peripheral devices | See claim element 1.2. |

8 of 14

# ANALYSIS OF Personal Entertainment Guide ("PEG")* TEACHINGS AGAINST THE '078 PATENT

*Personal Entertainment Guide User's Guide Version 1.0, Copyright 1991 by Lookahead Communications Inc. Citation format is (page no.:para. no.) or page Bates number as (TMS xxxxxx).

| Claim 6 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | including modems and display devices. | |
| 2. establishing a connection to a wide-area network through the modem; | | See claim element 1.3. |
| 3. transmitting, from the television viewing location, information to a service provider through the wide-area network regarding the geographical area of the viewing location; | **"Information regarding the geographical location of a particular viewing location"** means any information, irrespective of how the information is encoded, that expressly indicates in geographic language (e.g., name of a continent, country, province, state, city, town, region, street address, zip code, area code, etc.) the approximate portion of the planet in which a particular "television viewing location", as defined above, is located. [Note: the '078 patent at (3:50-54) distinguishes "ZIP code" as geographic ("location") information from programming source ("cable service provider") as, therefore, non-geographic information.] | See claim element 1.4. |
| 4. receiving, from the service provider, television programming schedule information specific to the viewing location; and | **"Receiving"** means transferring data to a controller such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data. (See File History at TG 000780.)<br><br>[Expert Witness Note: The information specific to the type of programming available to a particular viewing location cannot be determined solely from the geographical information transmitted; whenever more than one programming source is offered in a location (which I understand to be the case for the vast majority of locations), the programming source must also be identified. Indeed, dependent | See claim element 1.5. |

# ANALYSIS OF Personal Entertainment Guide ("PEG?")* TEACHINGS AGAINST THE '078 PATENT

*Personal Entertainment Guide User's Guide Version 1.0, Copyright 1991 by Lookahead Communications Inc. Citation format is (page no.:para. no.) or page Bates number as (TMS xxxxxx).

| Claim 6 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | claim 2 (and also claim 7) adds the limitation that the information transmitted must include Zip Code, and the patentee has admitted that Zip Code itself is often not specific enough to determine the programming available to the particular viewing location (see '078 at 3:50-54). And, at the time of the invention, a skilled artisan would have known that information other than just geographical information would be required to identify the programming available to the particular viewing location. However, because only geographic information is transmitted to the program schedule information source, the information received in return will at least sometimes contain information in addition to that specifically available to the viewing location. Therefore, in order for the claimed system to meet its objective of automatically controlling a VCR to record television programming (see, for example, '078 at Abstract), the application residing within the "controller" of this claim must necessarily include functionality to search the received information to extract only that programming information broadcast to the television receiver of the viewing location, or otherwise identify the programming source. This functionality is not taught in the patent description. Furthermore, it would not have been obvious to a skilled artisan, based upon the patent description, how to implement such functionality. Therefore I conclude that Claim 6 is invalid because it is not enabled.] | |

10 of 14

ANALYSIS OF Personal Entertainment Guide ("PEG")* TEACHINGS AGAINST THE '078 PATENT

*Personal Entertainment Guide User's Guide Version 1.0, Copyright 1991 by Lookahead Communications Inc.  Citation format is (page no.:para. no.) or page Bates number as (TMS xxxxx).

| Claim 6 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 5. viewing the information on the display device. | | See claim element 4.2. |

| Claim 7 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 6, | | PEG renders claim 7 obvious for the same reasons as Claim 2. |
| 1. wherein the information transmitted to the service provider through the wide-area network regarding the geographical area of the viewing location is the Zip Code associated with the viewing location. | | PEG renders claim 7 obvious for the same reasons as claim element 2.1. |

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. A system enabling a viewer of a television receiver to download information specific to the type of television programming available to the receiver, the system comprising: | "Download" means transferring data to a computerized unit such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data. (See File History at TG 000780.) | PEG renders claim 8 obvious in view of each of CompuServe, Tydeman, Young or Muguet. |
| 1. an electronic terminal unit including an operator input, a bidirectional modem, and a controller in communication with the | "Controller" means a computer, exclusive of peripheral devices such as a keyboard and monitor, but inclusive of memory for storing and executing computer programs and inclusive of I/O | See claim element 1.2. |

## ANALYSIS OF Personal Entertainment Guide ("PEG")* TEACHINGS AGAINST THE '078 PATENT

*Personal Entertainment Guide User's Guide Version 1.0, Copyright 1991 by Lookahead Communications Inc.  Citation format is (page no.:para. no.) or page Bates number as (TMS xxxxx).

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| operator input and the modem, the controller being programmed to perform the following functions: | ports for connecting to peripheral devices.<br><br>**[Expert Witness Note: I note that this claim element does not include the requirement of claim element 1.2 that the "electronic terminal unit" be located at the television viewing location.  However, the file history, at TG 002253 and TG 002282, clearly states that "All of applicant's claims include this limitation … ."]** | |
| 2.   a) establish a connection to a service provider through the modem, | | See claim element 1.3. |
| 3.   b) receive information through the operator input pertaining to the geographic location of the television receiver, | **"Receive information through the operator input"** means signals produced by the operator input in response to user actions and transferred to the controller in the electronic terminal unit.<br><br>**"Information regarding the geographical location of a particular viewing location"** means any information, irrespective of how the information is encoded, that expressly indicates in geographic language (e.g., name of a continent, country, province, state, city, town, region, street address, zip code, area code, etc.) the approximate portion of the planet in which a particular "television viewing location", as defined above, is located.  [Note: the '078 patent at (3:50-54) distinguishes "ZIP code" as geographic ("location") information from programming source ("cable service provider") as, therefore, non-geographic information.] | PEG renders this limitation obvious in combination with each of CompuServe, Tydeman, Young or Muguet. |

**ANALYSIS OF Personal Entertainment Guide ("PEG")* TEACHINGS AGAINST THE '078 PATENT**

*Personal Entertainment Guide User's Guide Version 1.0, Copyright 1991 by Lookahead Communications Inc.  Citation format is (page no.:para. no.) or page Bates number as (TMS xxxxxx).

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 4.    c) transmit the information pertaining to the geographic location of the television receiver to the service provider, and | | See claim element 1.4. |
| 5.    d) receive, from the service provider, the information specific to the type of television programming available to the receiver. | [Expert Witness Note: The information specific to the type of programming available to a particular viewing location cannot be determined solely from the geographical information transmitted; whenever more than one programming source is offered in a location (which I understand to be the case for the vast majority of locations), the programming source must also be identified.  Indeed, dependent claim 2 (and also claim 7) adds the limitation that the information transmitted must include Zip Code, and the patentee has admitted that Zip Code itself is often not specific enough to determine the programming available to the particular viewing location (see '078 at 3:50-54).  And, at the time of the invention, a skilled artisan would have known that information other than just geographical information would be required to identify the programming available to the particular viewing location.  However, because only geographic information is transmitted to the program schedule information source, the information received in return will at least sometimes contain information in addition to that specifically available to the viewing location.  Therefore, in order for the claimed system to meet its objective of automatically controlling a VCR to | See claim element 1.5. |

**ANALYSIS OF Personal Entertainment Guide ("PEG")\* TEACHINGS AGAINST THE '078 PATENT**

\*Personal Entertainment Guide User's Guide Version 1.0, Copyright 1991 by Lookahead Communications Inc. Citation format is (page no.:para. no.) or page Bates number as (TMS xxxxx).

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | record television programming (see, for example, '078 at Abstract), the application residing within the "controller" of this claim must necessarily include functionality to search the received information to extract only that programming information broadcast to the television receiver of the viewing location, or otherwise identify the programming source. This functionality is not taught in the patent description. Furthermore, it would not have been obvious to a skilled artisan, based upon the patent description, how to implement such functionality. Therefore I conclude that Claim 8 is invalid because it is not enabled.] | |

| Claim 10 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The system of claim 8, | | PEG renders Claim 8 obvious, and teaches the elements of Claim 10, and so renders Claim 10 obvious for the same reasons as Claim 8. |
| 1. further including a memory in communication with the controller for storing and retrieving the information specific to the type of television programming available to the receiver. | | See claim element 5.1. |

EXHIBIT 8

## ANALYSIS OF PRODIGY* TEACHINGS AGAINST THE '078 PATENT

J. L. Viescas, THE OFFICIAL GUIDE TO THE PRODIGY SERVICE, Microsoft Press, 1991. Citation format is (page no.:para. no.).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. In a television distribution arrangement wherein a plurality of geographically dispersed television viewing locations receive television programming from a source of such programming. | **"Television viewing location"** means the specific room within a building where a television set is positioned and watched by a user. | PRODIGY teaches all elements of this claim, so anticipates Claim 1.<br><br>"The PRODIGY service offers a huge array of information, presented in an easy-to-use and entertaining format, to more than a million owners of personal computers and their families." (ix:1).<br><br>"The PRODIGY service is intended not only for the computer owner in your home, but for your entire family." (ix:4). |
| 1. a method of receiving information specific to the type of programming available to a particular one of the viewing locations, the method comprising the steps of: | **"Available to a particular one of the viewing locations"** means deliverable from a programming source to a specific "television viewing location", as defined above. | PRODIGY teaches this claim element.<br><br>"The PRODIGY service offers a huge array of information, presented in an easy-to-use and entertaining format, to more than a million owners of personal computers and their families." (ix:1).<br><br>"Television fans will find a wealth of information under the fifth selection box on the Arts Club menu—TV. TV News give you the latest information on new shows, cancellations, time slot changes and stars. Under TV Charts, you'll find the Nielsen Ratings for the previous week. Figure 3-28 shows the Nielsen ratings for the week ending June 23, 1991." (94:1). |
| 2. providing a computerized unit at the particular viewing location, the unit including an operator input and a modem; | **"Operator input"** means a keyboard or other device for manually entering data into a computer.<br><br>**"Modem"** means a data signal conversion device that converts digital signals to analog signals (and vice versa) and enables a computerized unit to exchange data with another computerized unit over a standard dial-up telephone line. | PRODIGY teaches this claim element.<br><br>"To be able to use the PRODIGY service , you need"<br><br>• A personal computer (either IBM PC or compatible or an Apple Macintosh) …<br>• On either an IBM PC or compatible or an Apple Macintosh, a Hayes or compatible modem that operates at 1200 or 2400 bits per second (BPS) or the Apple Personal Modem on a Macintosh.<br>• A phone line …" (3:1-4).<br><br>**An IBM or IBM-compatible PC, or an Apple Macintosh necessarily includes a keyboard or similar "operator input"** |

## ANALYSIS OF PRODIGY* TEACHINGS AGAINST THE '078 PATENT

J.L. Viescas, THE OFFICIAL GUIDE TO THE PRODIGY SERVICE, Microsoft Press, 1991. Citation format is (page no:para. no).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | | device. A skilled artisan would have known that a "PC" could have been located anywhere in the user's home accessible to a telephone line, including the room(s) in which the user watches television. |
| 3. establishing a connection to a wide-area network through the modem; | "**Modem**" means a data signal conversion device that converts digital signals to analog signals (and vice versa) and enables a computerized unit to exchange data with another computerized unit over a standard dial-up telephone line. | PRODIGY teaches this claim element.<br><br>"To be able to use the PRODIGY service, your computer has to be hooked up through your modem and phone line to the PRODIGY service's computer network. You have to tell the PRODIGY software the phone number to dial to connect to the network." (22:2). |
| 4. transmitting, from the computerized unit, information to a service provider through the wide-area network regarding the geographical location of the particular viewing location; and | "**Information regarding the geographical location of a particular viewing location**" means any information, irrespective of how the information is encoded, that expressly indicates in geographic language (e.g., name of a continent, country, province, state, city, town, region, street address, zip code, area code, etc.) the approximate portion of the planet in which a particular "television viewing location", as defined above, is located. [Note: the '078 patent at (3:50-54) distinguishes "ZIP code" as geographic ("location") information from programming source ("cable service provider") as, therefore, non-geographic information.] | PRODIGY teaches this claim element.<br><br>"Still not enough weather detail for Los Angeles? Highlight the CITY INDEX box and press Enter, or double-click it with your mouse. The PRODIGY service presents you with a list of all the cities in the western United States for which it has a detailed forecast, as shown in Figure 2-7. ... When you see an entry you want, you can press Tab or use your arrow keys to move it and then press Enter to select it, or double-click the selection you want with your mouse. When the list is longer than two or three screens, an input box is available. You can use Tab to highlight this box (or select it with your mouse) and type in one or more beginning characters to move the list so the entry that's closest to what you typed is at the top." (41:1-2).<br><br>"As you saw in Chapter 2, you can also look at news and events by metropolitan area—at least 34 are available on the PRODIGY service, including the top 25 metropolitan areas according to the 1990 census. As a refresher, [JUMP]: *area news*, select an area of the country, and then a city from the area list, as shown in Figures 4-4 and 4-5." (123:2).<br><br>"Flights in the EAASY SABRE system are listed by three-character airport codes. If you know these, you can enter them |

## ANALYSIS OF PRODIGY* TEACHINGS AGAINST THE '078 PATENT

J.L. Viescas, THE OFFICIAL GUIDE TO THE PRODIGY SERVICE, Microsoft Press, 1991. Citation format is (page no.:para. no).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 5. receiving, from the service provider, information specific to the particular type of programming available to the particular viewing location. | "Receiving" means transferring data to a computerized unit such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data. (See File History at TG 000780.)<br><br>[Expert Witness Note: The information specific to the type of programming available to a particular viewing location cannot be determined solely from the geographical information transmitted; whenever more than one programming source is offered in a location (which I understand to be the case for the vast majority of locations), the programming source must also be identified. Indeed, dependent claim 2 (and also claim 7) adds the limitation that the information transmitted must include Zip Code, and the patentee has admitted that Zip Code itself is often not specific enough to determine the programming available to the particular viewing location (see '078 at 3:50-54). And, at the time of the invention, a skilled artisan would have known that information other than just geographical information would be required to identify the programming available to the particular viewing location. However, because only geographical information received in the information source, the information received in return will at least sometimes contain information in addition to that specifically | directly—otherwise the system translates the city name for you." (266:1).<br><br>PRODIGY teaches this claim element.<br><br>"Television fans will find a wealth of information under the fifth selection box on the Arts Club menu—TV. TV News give you the latest information on new shows, cancellations, time slot changes and stars. Under TV Charts, you'll find the Nielsen Ratings for the previous week. Figure 3-28 shows the Nielsen ratings for the week ending June 23, 1991." (94:1).<br><br>"The PRODIGY software uses some of the disk storage on your home computer to save pictures or information that you are likely to use often (such as the basic format of the first highlight screen, or the shape of the North American weather map). ... If the space is available on the disk drive from which you loaded the PRODIGY software, the service uses up to 1 MB of storage to save and preload information." (9.2).<br><br>**A skilled artisan would have known that, since information transmitted to a service provider can include geographical information, then necessarily this information can be used as criteria to select specific portions of the database for downloading that match that criteria.** |

# ANALYSIS OF PRODIGY* TEACHINGS AGAINST THE '078 PATENT

J.L. Viescas, THE OFFICIAL GUIDE TO THE PRODIGY SERVICE, Microsoft Press, 1991. Citation format is (page no.:para. no).

| Claim 1 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | available to the viewing location. Therefore, in order for the claimed system to meet its objective of automatically controlling a VCR to record television programming (see, for example, '078 at Abstract), the application residing within the "computerized unit" of this claim must necessarily include functionality to search the received information to extract only that programming information broadcast to the television receiver of the viewing location, or otherwise identify the programming source. This functionality is not taught in the patent description. Furthermore, it would not have been obvious to a skilled artisan, based upon the patent description, how to implement such functionality. Therefore I conclude that Claim 1 is invalid because it is not enabled.] | |

| Claim 2 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1, | | PRODIGY renders claim 2 obvious in combination with each of CompuServe, Tydeman or Young. |
| 1. wherein the information transmitted to the service provider includes the Zip Code associated with the particular viewing location. | | PRODIGY renders claim 2 obvious in combination with each of CompuServe, Tydeman or Young. |

| Claim 3 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of | | PRODIGY anticipates Claim 1 and teaches all elements of this |

## ANALYSIS OF PRODIGY* TEACHINGS AGAINST THE '078 PATENT

J.L. Viescas, THE OFFICIAL GUIDE TO THE PRODIGY SERVICE, Microsoft Press, 1991. Citation format is (page no.;para. no,).

| Claim 3 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| claim 1, | | claim, so anticipates Claim 3. |
| 1. wherein the information received from the service provider includes a schedule of the television programming available to the particular viewing location. | "Schedule of the television programming" means a list, not necessarily ordered in any way, containing at least one item of television programming. (See '078 at 2:1-6 in contrast with '078 at 4:66-5:4) <br><br> [Expert Witness Note: I am unable to determine from the patent description how the "information received" in this claim differs from that required by claim element 1.5. The patent description in no way explicitly or implicitly defines the term "schedule". I therefore conclude that Claim 3 is invalid due to indefiniteness.] | PRODIGY teaches this claim element. <br><br> "Television fans will find a wealth of information under the fifth selection box on the Arts Club menu—TV. TV News give you the latest information on new shows, cancellations, time slot changes and stars. Under TV Charts, you'll find the Nielsen Ratings for the previous week. Figure 3-28 shows the Nielsen ratings for the week ending June 23, 1991." (94:1). |

| Claim 4 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1, | | PRODIGY anticipates Claim 1 and teaches all elements of this claim, so anticipates Claim 4. |
| 1. wherein the computerized unit is interfaced to a display, and | | PRODIGY teaches this claim element. <br><br> "The PRODIGY service uses your computer's graphics capability to make using the service fun, interesting, and easy." (ix:2). <br><br> "Monitor and graphics adapter. You can use any monochrome or color monitor with a VGA, MCGA, EGA, CGA, Hercules, or Hercules-compatible graphics adapter." (4:8). |

## ANALYSIS OF PRODIGY* TEACHINGS AGAINST THE '078 PATENT

J. L. Viescas, THE OFFICIAL GUIDE TO THE PRODIGY SERVICE, Microsoft Press, 1991. Citation format is (page no.:para. no.).

| Claim 4 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| 2. wherein the method further includes the step of displaying the information specific to the type of programming available to the particular viewing location. | | PRODIGY teaches this claim element.<br><br>"Television fans will find a wealth of information under the fifth selection box on the Arts Club menu—TV. TV News give you the latest information on new shows, cancellations, time slot changes and stars. Under TV Charts, you'll find the Nielsen Ratings for the previous week. Figure 3-28 shows the Nielsen ratings for the week ending June 23, 1991." (94:1). |

| Claim 5 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 1. | | PRODIGY anticipates Claim 1 and teaches all elements of this claim, so anticipates Claim 5. |
| 1. wherein the computerized unit further includes a memory for storing the information specific to the type of programming available to the particular viewing location. | "Memory for storing the information" means a device that can retain computerized information for retrieval later. | PRODIGY teaches this claim element.<br><br>"Disk Drives. Your computer must have, at minimum, one of the following combinations of disk drives:<br><br>• Two double-density 5.25- inch floppy drives …<br>• One double-density 3.5=inch floppy drive …<br>• One high-density floppy drive …<br>• A hard drive with at least 700 KB of free space and one double-density or high-density floppy drive …" (4:3-7).<br><br>"The PRODIGY software uses some of the disk storage on your home computer to save pictures or information that you are likely to use often (such as the basic format of the first highlight screen, or the shape of the North American weather map). … If the space is available on the disk drive from which you loaded the PRODIGY software, the service uses up to 1 MB of storage to save and preload information." (9:2). |

6 of 12

## ANALYSIS OF PRODIGY* TEACHINGS AGAINST THE '078 PATENT

J.L. Viescas, THE OFFICIAL GUIDE TO THE PRODIGY SERVICE, Microsoft Press, 1991. Citation format is (page no.:para. no.).

| Claim 6 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. A method of receiving customized television programming schedule information, comprising the steps of: | | PRODIGY anticipates Claims 1 and 4, so anticipates Claim 6. |
| 1. providing, at a television viewing location, a controller interfaced to a bidirectional modem and a display device; | "**Controller**" means an electronic device for manipulating information including at least memory for storing and executing computer programs and I/O ports for connecting to peripheral devices, such peripheral devices including modems and display devices. | See claim element 1.2. |
| 2. establishing a connection to a wide-area network through the modem; | | See claim element 1.3. |
| 3. transmitting, from the television viewing location, information to a service provider through the wide-area network regarding the geographical area of the viewing location; | "**Information regarding the geographical location of a particular viewing location**" means any information, irrespective of how the information is encoded, that expressly indicates in geographic language (e.g., name of a continent, country, province, state, city, town, region, street address, zip code, area code, etc.) the approximate portion of the planet in which a particular "television viewing location", as defined above, is located. [Note: the '078 patent at (3:50-54) distinguishes "ZIP code" as geographic ("location") information from programming source ("cable service provider") as, therefore, non-geographic information.] | See claim element 1.4. |
| 4. receiving, from the service provider, television programming schedule information specific to the | "**Receiving**" means transferring data to a controller such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of | See claim element 1.5. |

## ANALYSIS OF PRODIGY* TEACHINGS AGAINST THE '078 PATENT

J. L. Viescas, THE OFFICIAL GUIDE TO THE PRODIGY SERVICE, Microsoft Press, 1991. Citation format is (page no.;para. no.).

| Claim 6 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| viewing location; and | the data. (See File History at TG 000780.)<br><br>[Expert Witness Note: The information specific to the type of programming available to a particular viewing location cannot be determined solely from the geographical information transmitted; whenever more than one programming source is offered in a location (which I understand to be the case for the vast majority of locations), the programming source must also be identified. Indeed, dependent claim 2 (and also claim 7) adds the limitation that the information transmitted must include Zip Code, and the patentee has admitted that Zip Code itself is often not specific enough to determine the programming available to the particular viewing location (see '078 at 3:50-54). And, at the time of the invention, a skilled artisan would have known that information other than just geographical information would be required to identify the programming available to the particular viewing location. However, because only geographic information is transmitted to the program schedule information source, the information received in return will at least sometimes contain information in addition to that specifically available to the viewing location. Therefore, in order for the claimed system to meet its objective of automatically controlling a VCR to record television programming (see, for example, '078 at Abstract), the application residing within the "controller" of this claim must necessarily include functionality to search the received information to extract only that | |

ANALYSIS OF PRODIGY* TEACHINGS AGAINST THE '078 PATENT

J.L. Viescas, THE OFFICIAL GUIDE TO THE PRODIGY SERVICE, Microsoft Press, 1991. Citation format is (page no.;para. no,).

| Claim 6 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | **programming information broadcast to the television receiver of the viewing location, or otherwise identify the programming source. This functionality is not taught in the patent description. Furthermore, it would not have been obvious to a skilled artisan, based upon the patent description, how to implement such functionality. Therefore I conclude that Claim 6 is invalid because it is not enabled.]** | |
| 5. viewing the information on the display device. | | See claim element 4.2. |

| Claim 7 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The method of claim 6, | | PRODIGY renders claim 7 obvious for the same reasons as Claim 2. |
| 1. wherein the information transmitted to the service provider through the wide-area network regarding the geographical area of the viewing location is the Zip Code associated with the viewing location. | | PRODIGY renders claim 7 obvious for the same reasons as Claim 2. |

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. A system enabling a viewer of a television receiver to download information specific to the type of television programming | **"Download"** means transferring data to a computerized unit such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data. (See File History at TG | PRODIGY anticipates Claim 1 and teaches all elements of this claim not included in Claim 1, so anticipates Claim 8. |

## ANALYSIS OF PRODIGY* TEACHINGS AGAINST THE '078 PATENT

J.L. Viescas, THE OFFICIAL GUIDE TO THE PRODIGY SERVICE, Microsoft Press, 1991. Citation format is (page no.:para. no.).

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| available to the receiver, the system comprising: | 000780.) | |
| 1. an electronic terminal unit including an operator input, a bidirectional modem, and a controller in communication with the operator input and the modem, the controller being programmed to perform the following functions: | "**Controller**" means a computer, exclusive of peripheral devices such as a keyboard and monitor, but inclusive of memory for storing and executing computer programs and inclusive of I/O ports for connecting to peripheral devices.<br><br>[Expert Witness Note: I note that this claim element does not include the requirement of claim element 1.2 that the "**electronic terminal unit**" be located at the television viewing location. However, the file history, at TG 002253 and TG 002282, clearly states that "All of applicant's claims include this limitation … ."] | See claim element 1.2. |
| 2.    a) establish a connection to a service provider through the modem, | | See claim element 1.3. |
| 3.    b) receive information through the operator input through the receiver pertaining to the geographic location of the television receiver, | "**Receive information through the operator input**" means signals produced by the operator input in response to user actions and transferred to the controller in the electronic terminal unit.<br><br>"**Information regarding the geographical location of a particular viewing location**" means any information, irrespective of how the information is encoded, that expressly indicates in geographic language (e.g., name of a continent, country, province, state, city, town, region, street address, zip code, area code, etc.) the approximate portion of the planet in which a particular "television viewing location", as defined above, is | PRODIGY teaches this claim element.<br><br>"As you saw in Chapter 2, you can also look at news and events by metropolitan area—at least 34 are available on the PRODIGY service, including the top 25 metropolitan areas according to the 1990 census.  As a refresher, [JUMP]: *area news*, select an area of the country, and then a city from the area list, as shown in Figures 4-4 and 4-5." (123:2).<br><br>"Flights in the EAASY SABRE system are listed by three-character airport codes.  If you know these, you can enter them directly—otherwise the system translates the city name for you." (266:1). |

ANALYSIS OF PRODIGY* TEACHINGS AGAINST THE '078 PATENT

J. L. Viescas, THE OFFICIAL GUIDE TO THE PRODIGY SERVICE, Microsoft Press, 1991. Citation format is (page no.:para. no.).

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | located. [Note: the '078 patent at (3:50-54) distinguishes "ZIP code" as geographic ("location") information from programming source ("cable service provider") as, therefore, non-geographic information.] | |
| 4. c) transmit the information pertaining to the geographic location of the television receiver to the service provider, and | | See claim element 1.4. |
| 5. d) receive, from the service provider, the information specific to the type of television programming available to the receiver. | [Expert Witness Note: The information specific to the type of programming available to a particular viewing location cannot be determined solely from the geographical information transmitted; whenever more than one programming source is offered in a location (which I understand to be the case for the vast majority of locations), the programming source must also be identified. Indeed, dependent claim 2 (and also claim 7) adds the limitation that the information transmitted must include Zip Code, and the patentee has admitted that Zip Code itself is often not specific enough to determine the programming available to the particular viewing location (see '078 at 3:50-54). And, at the time of the invention, a skilled artisan would have known that information other than just geographical information would be required to identify the programming available to the particular viewing location. However, because only geographic information is transmitted to the program schedule information source, the information received in | See claim element 1.5. |

## ANALYSIS OF PRODIGY* TEACHINGS AGAINST THE '078 PATENT

J.L. Viescas, THE OFFICIAL GUIDE TO THE PRODIGY SERVICE, Microsoft Press, 1991. Citation format is (page no.:para. no.).

| Claim 8 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| | return will at least sometimes contain information in addition to that specifically available to the viewing location. Therefore, in order for the claimed system to meet its objective of automatically controlling a VCR to record television programming (see, for example, '078 at Abstract), the application residing within the "controller" of this claim must necessarily include functionality to search the received information to extract only that programming information broadcast to the television receiver of the viewing location, or otherwise identify the programming source. This functionality is not taught in the patent description. Furthermore, it would not have been obvious to a skilled artisan, based upon the patent description, how to implement such functionality. Therefore I conclude that Claim 8 is invalid because it is not enabled.] | |

| Claim 10 | Assumed Constructions | Prior Art Teaching |
|---|---|---|
| Preamble. The system of claim 8, | | PRODIGY anticipates Claims 8 and 5, so anticipates Claim 10. |
| 1. further including a memory in communication with the controller for storing and retrieving the information specific to the type of television programming available to the receiver. | | See claim element 5.1. |