# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TV GUIDE ONLINE, INC. and
TV GUIDE ONLINE, LLC,

       Plaintiffs and Counterclaim Defendants,

             v.

TRIBUNE MEDIA SERVICES, INC.,

       Defendant and Counterclaim Plaintiff.

)
)
)
)
)
)
)
)
)
)
)

Case No.: 05-725-***

## TRIBUNE MEDIA SERVICES'
## REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
## OF NONINFRINGEMENT OF U.S. PATENT NO. 5,988,078

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2969)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
302.888.6800

Mark A. Pals, P.C.
Linda S. DeBruin, P.C.
Michael A. Parks
Laura A. Hepburn
Meredith Zinanni
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
312.861.2000

*Counsel for Defendant Tribune Media Services, Inc.*

Dated:  December 21, 2007

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ..............................................................................................1

II.   ARGUMENT......................................................................................................1

A.    TV Guide Has Not Shown That TMS Performs Each Step Of Asserted
Method Claims 1-7. ...............................................................................2

1.    TV Guide Misstates The Correct Legal Standard For Joint
Infringement.................................................................................2

2.    TV Guide's Argument That TMS "Controls Tr Directs"
Zap2it.com Users Has No Legal Support. ....................................2

B.    TV Guide Has Not Rebutted TMS's Non-Infringement Showing For
Apparatus Claims 8-10. .........................................................................4

C.    Zap2it.com Does Not Perform The "Receiving" Limitation Common To
All Claims Of The '078 Patent As A Matter of Law. ............................6

1.    The Prosecution History Confirms That There Can Be No
Infringement.................................................................................7

2.    TV Guide Fails To Show Specific Facts That Anyone "Receives"
Television Listings Data ...............................................................9

D.    TMS Does Not Indirectly Infringe The '078 Patent As A Matter of Law............11

1.    TV Guide Cannot Show That TMS Has "Specific Intent" For
Users Of Zap2it.com To Infringe The '078 Patent. ...................11

2.    TV Guide Has Not Shown That A Genuine Issue Of Fact Exists As
To The "Substantiality" Of Noninfringing Use Of Zap2it.com. ...............13

E.    TV Guide's "Disputed" Facts Are Not Actually Disputed....................................15

III.  CONCLUSION.................................................................................................18

# TABLE OF AUTHORITIES

**Page**

## Cases

*ACCO Brands, Inc. v. ABA Locks Mfr. Co. Ltd.*
    501 F.3d 1307 (Fed. Cir. 2007)...................................................................................... 14

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,*
    314 F.3d 1313 (Fed. Cir. 2003)........................................................................................ 9

*Applied Interact, LLC v. Vermont Teddy Bear Co.,*
    No. 04 Civ. 8713 HB, 2005 WL 2133416 (S.D.N.Y. Sept. 6, 2005) ................................. 8

*BMC Res, Inc. v. Paymentech, L.P.,*
    498 F.3d 1373 (Fed. Cir. 2007)..................................................................................... 6, 7

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)......................................................................................................... 5

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,*
    424 F.3d 1293 (Fed. Cir. 2005)...................................................................................... 10

*DSU Med. Corp. v. JMS Co.,*
    471 F.3d 1293 (Fed. Cir. 2006)................................................................................. 16, 18

*Fantasy Sports Props., Inc. v. SportsLine.com,*
    287 F.3d 1108 (Fed. Cir. 2002)...................................................................................... 10

*Hill v. Amazon.com, Inc.,*
    No. Civ. A. 2:02-CV-186, 2006 WL 151911 (E.D. Tex. Jan. 19, 2006)............................ 8

*Hoffmann-La Roche Inc. v. Premega Corp.,*
    33 U.S.P.Q.2d 1641 (N.D. Cal. 1994) ...................................................................... 18, 19

*Markman v. Westview Instruments, Inc.,*
    517 U.S. 370, 372 (1996).............................................................................................. 11

*Marley Mouldings Ltd. v. Mikron Industries, Inc.,*
    No. 02 C 2855, 2003 WL 1989640 (N.D. Ill. Apr. 30, 2003)........................................... 8

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,*
    420 F.3d 1369 (Fed. Cir. 2005)...................................................................................... 16

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005)...................................................................................... 12

*Saunders Group, Inc. v. Comfortrac, Inc.,*
    492 F.3d 1326 (Fed. Cir. 2007)...................................................................................... 12

*Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*,
   473 F.3d 1173 (Fed. Cir. 2006).......................................................................................... 12

## I.    INTRODUCTION

TV Guide's response brief makes it clear that TV Guide does not fully grasp how Zap2it.com functions, nor the implications of this misunderstanding on its infringement claims. More fundamentally, however, TV Guide does not "designate specific facts showing that there is a genuine issue for trial," as it was required to do to avoid summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal citations omitted).  In particular:

- TV Guide does *not* show that *anyone* using Zap2it.com "receives" television listings data, as that claim term is properly construed;

- TV Guide does *not* show that TMS "controls" or "directs" users of Zap2it.com to infringe any method claims;

- TV Guide does *not* show that TMS makes, uses, offers to sell, sells or imports the apparatus claimed in claims 8-10;

- TV Guide does *not* show that TMS either had or has "specific intent" for Zap2it.com users to infringe the patent; and

- TV Guide does *not* show that a reasonable jury would *not* consider 25% of users accessing Zap2it.com from work to be a substantial non-infringing use.

Because there are no genuine issues of material fact, and because TV Guide cannot prove either direct or indirect infringement as a matter of law, the Court should grant TMS' motion for summary judgment of noninfringement of the '078 patent.

## II.    ARGUMENT

In its opening brief, TMS demonstrated that TV Guide's admissions and the other undisputed facts of record confirm there is no direct or indirect infringement here:

- TV Guide admits TMS does not make, use, sell or offer for sale the components necessary to infringe the '078 patent, nor does TMS perform the claimed method steps, so there can be no direct infringement.

- TV Guide has proffered no evidence to demonstrate that TMS induces its Zap2it.com users to make or use the claimed components in the particular configuration necessary to infringe the asserted claims, so there can be no induced infringement.

1

- It is undisputed that over 25% of Zap2it.com's users access the website from a location where they do not watch television, so there can be no contributory infringement.

TMS also demonstrated that the '078 prosecution history restricts the interpretation of the "receive" limitation required by each claim, providing yet another reason why TMS cannot infringe any claim as a matter of law.

In response, TV Guide offers nothing that is sufficient to avoid summary judgment of non-infringement.

## A.    TV Guide Has Not Shown That TMS Performs Each Step Of Asserted Method Claims 1-7.

In its opening brief, TMS demonstrated that it does not perform at least the "establishing a connection," "providing a computerized unit," or "viewing the information on the display device" limitations of the asserted method claims.  D.I. 211, TMS Noninfring. Br. at 15-18.  In response, TV Guide does not argue TMS performs these steps as would be required for TMS to directly infringe, but instead argues there is infringement under a joint infringement theory.  TV Guide advances no other argument, and its joint infringement theory fails as a matter of law.

### 1.    TV Guide Misstates The Correct Legal Standard For Joint Infringement.

An accused infringer may be liable for direct infringement if a third party carries out one step of a process, but *only if* that third party performs the step at the ***control or direction*** of the accused infringer.  *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007). This requires more than "some connection" between the parties, as TV Guide contends is the prevailing legal standard.  D.I. 230, TV Guide Noninfring. Resp. Br. at 22.

### 2.    TV Guide's Argument That TMS "Controls Or Directs" Zap2it.com Users Has No Legal Support.

*First*, the relationship between Zap2it.com and its users is legally insufficient to find that one party "controls or directs" the other under Federal Circuit law.  TMS and its customers have

2

an arms length relationship, and their customer relationship begins only after the user has chosen, of his or her own free will, to "provide" a computer and "establish" a connection to Zap2it.com. TMS does not "hav[e] [Zap2it.com users] carry out one or more of the claimed steps on its behalf," nor does TMS "contract[ ] out steps of a patented process to [Zap2it.com users]." *BMC*, 498 F.3d at 1381 (emphases added). Thus, this is not a case where the law will impose "vicarious liability on a party for the acts of another." *Id.* at 1379; *see also id.* at 1381 ("[T]he standard requiring control or direction for a finding of joint infringement may in some circumstances allow parties to enter into arms-length agreements to avoid infringement.").

*Second*, the "Enter Zip" instruction also does not establish "control or direction" as a matter of law. "Infringement requires, as it always has, a showing that a defendant has practiced *each and every element of the claimed invention*." *Id.* at 1380. TV Guide essentially argues that TMS "controls" the Zap2it.com website by designing and hosting it, and thereby "directs" its users to perform the entire patented method. The only actual "direction" TV Guide points to, however, is Zap2it.com "instructing the users to 'Enter Zip' to obtain local TV listings." D.I. 230, TV Guide Noninfring. Resp. Br. at 23. Assuming, *arguendo*, that "entering" geographical information is the same as "transmitting" such information, TMS still has not actually "directed" its users to perform at least three steps in the patented method. '078 patent claims at 1, 6 (A7, A8). Indeed, what TV Guide argues for its infringement case is technologically impossible. In order for TMS to "direct" a user to "Enter Zip," the user must be at the Zap2it.com website, which in turn means that the user must have already "established a connection" with the Zap2it.com website. 10/5/07 Tjaden Decl. at ¶ 6 (A564); Loose Decl. at ¶ 9 (B74). Thus TMS

3

does not control or direct its users to practice "each and every element of the claimed invention" as required by law for joint infringement.[1]

## B. TV Guide Has Not Rebutted TMS's Non-Infringement Showing For Apparatus Claims 8-10.

In its opening brief, TMS demonstrated it cannot infringe claim 8 or 10 as a matter of law because TMS does not provide the electronic terminal unit required by the claims. TV Guide offers nothing to rebut TMS's showing.

*First*, TV Guide admits that Zap2it.com is not an "electronic terminal unit" when it states that "Zap2it.com is *accessed by* an electronic terminal unit." D.I. 204, TV Guide Infring. Br. at 22 (emphasis added).

*Second*, TMS cannot "program" the claimed electronic terminal unit to "establish a connection" to the Zap2it.com server, which is a vital step of claim 8. Due to the nature of HTTP, Zap2it.com can only communicate with the user's computer (alleged electronic terminal unit) in response to an HTTP request. 10/5/07 Tjaden Decl. at ¶ 6 (A654); Loose Decl. at ¶ 9 (B74). Any "connection to a service provider" is accomplished by the user's Internet browser sending a request to the Zap2it.com server. 10/5/07 Tjaden Decl. at ¶ 6 (A654); Loose Decl. at

---

[1]   The cases TV Guide cites to support its contention that a "genuine issue of fact" exists on the issue of joint infringement are inapplicable here. *Applied Interact, LLC v. Vermont Teddy Bear Co.*, is no longer good law in light of *BMC*, because it relies on the rejected "some connection" standard in order to find even a "tenuous" issue of fact regarding the connection between the defendant and its customers. No. 04 Civ. 8713 HB, 2005 WL 2133416, at *8 (S.D.N.Y. Sept. 6, 2005). The court in *Marley Mouldings Ltd. v. Mikron Industries, Inc.* found a genuine issue of fact regarding joint infringement where the two parties were in a contractual relationship. No. 02 C 2855, 2003 WL 1989640, at *1, *3 (N.D. Ill. Apr. 30, 2003) (one party manufacturing infringing products according to the explicit specifications of, and using supplies provided by, the other). Because Zap2it.com and its users are at arms-length from one another and not in any analogous contractual relationship, *Marley Mouldings* does not apply. Similarly, in *Hill v. Amazon.com*, the court found a genuine issue of fact where every step in the method occurred *after* the user logged-on to the Amazon.com website. No. Civ. A. 2:02-CV-186, 2006 WL 151911, at *3 (E.D. Tex. Jan. 19, 2006). Under the '078 patent, however, users must perform *at least two steps* of the method—"providing" a computerized unit and "establishing a connection"—*before even reaching* Zap2it.com. Because of this critical difference, *Hill* is also inapplicable to this case. Thus, TV Guide does not offer any analogous caselaw to support its contention that "genuine issues of material fact" exist regarding joint infringement to defeat TMS's motion for summary judgment of noninfringement.

¶ 9 (B74). In other words, one function of the claimed apparatus ***must already exist*** before Zap2it.com would even have an opportunity to "program" the computer to perform that function. TV Guide is thus incorrect when it states that "the browser session established by TMS between its server and a user's computer programs the user's computer to perform each of the steps set forth in claims 8 and 10." D.I. 230, TV Guide Noninfring. Resp. Br. at 25.

*Third*, in its invalidity opposition, TV Guide argues ***in order to implement the invention*** a personal computer needs to be 'provided with a special application program...'" D.I. 229, TV Guide Invalidity Resp. Br. at 23, ¶ 12 (*citing* '078 patent at 3:22-25 (A6)); *see also id.* at 6, ¶ 2 (*citing* '078 patent at 3:16-26 (A6)). TV Guide's position is binding on the infringement analysis. *See, e.g., Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313 (Fed. Cir. 2003) ("It is axiomatic that claims are construed the same way for both validity and infringement."). There is nothing in the record to suggest TMS provides the "special application program" TV Guide argues is necessary to satisfy the claim limitation, which is yet another reason there is no infringement.[2]

---

[2]  The one case TV Guide cites to support its argument that "it does not matter for purposes of direct infringement that TMS does not, itself, manufacture and provide the hardware" required in claims 8 and 10 is distinguishable on its facts. D.I. 230, TV Guide Noninfring. Resp. Br. at 25. The patent in *Fantasy Sports* claimed "A computer for playing [fantasy football], comprising..." seven limitations, five of which were in means-plus-function form. *Fantasy Sports Props., Inc. v. SportsLine.com*, 287 F.3d 1108, 1111 (Fed.Cir. 2002). In a motion for summary judgment of noninfringement, one defendant argued that its product did not directly infringe the claim because it was computer software, and not a "computer for playing football." The court held, however, that because the software offered each function claimed in the patent, it essentially provided the necessary "means" and therefore did in fact directly infringe. *Id.* at 1119 ("[N]o reasonable juror could find that the Commissioner.com product is not software installed on a 'computer for playing football' that may directly infringe the [ ] patent."). In contrast, and as explained above, Zap2it.com is merely a website, not software installed on a user's computer; it does not—and ***cannot***—program a user's computer to perform at least one function claimed in the patent ("establish a connection"). Instead, it is the user who establishes a connection to Zap2it.com by sending an HTTP request to the Zap2it.com server. 10/5/07 Tjaden Decl. at ¶ 6 (A654); Loose Decl. at ¶ 9 (B74). Because "in this case, no reasonable juror could find that the accused infringer itself makes or uses the entire claimed apparatus," TV Guide's arguments for direct infringement of claims 8-10 fail as a matter of law. *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1311 (Fed. Cir. 2005)(distinguishing *Fantasy Sports* where the device did not meet the "operatively joined" to bone limitation until implanted by surgeons, and thus the device manufacturer did not make, use or sell the entire claimed apparatus).

It is unclear whether TV Guide extends its joint infringement theory to encompass not only the method claims 1-7, but also the apparatus claims 8-10. Either way, established Federal Circuit law states that an *apparatus*, as opposed to a method, cannot be infringed by the combined efforts of more than one actor. Although multiple parties may produce components that, when assembled, form an infringing apparatus, only the party who actually assembles those components "makes" the accused product, and thus only that party directly infringes the patented apparatus claim. *Cross Med. Prods.*, 424 F.3d at 1311. ("Cross Medical argues that the situation is analogous to those in which courts have found a party to directly infringe a method claim when a step of the claim is performed at the direction of, but not by, that party. However, if anyone makes the claimed apparatus, it is the surgeons, who are, as far as we can tell, not agents of Medtronic." (internal citations omitted)); *see also id.* ("[A] rule that governs infringement of a method claim may not always govern infringement of an apparatus claim."). Claims 8-10 of the '078 patent are apparatus claims. Thus, TMS cannot jointly infringe claims 8-10 of the '078 patent as a matter of law.

### C.    Zap2it.com Does Not Perform The "Receiving" Limitation Common To All Claims Of The '078 Patent As A Matter Of Law.

There is yet another reason why there is no direct infringement of any claim as a matter of law. Each claim of the '078 patent requires the step of "receiving ... information specific to the type of programming available to the particular viewing location," or a variant thereof. '078 patent at claims 1, 6, 8 (A7-A8). The correct construction of the "receiving" limitation is "having data transferred to a computer such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data." TMS's construction is based on the '078 patent's prosecution history, to which TV Guide is bound as a matter of law. *See* D.I. 216, TMS's Opening *Markman* Br. at Section IV.E; D.I. 237,

TMS's *Markman* Resp. Br. at Section II.E. The correct construction of "receive" is an important issue because, under the proper construction, neither Zap2it.com nor its users meet the "receive" limitation. The proper construction of "receive"—as with all claim construction—is a matter "exclusively within the province of the court." *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 372 (1996).

        1.    <u>The Prosecution History Confirms That There Can Be No Infringement.</u>

TV Guide's only argument against TMS's proofs based on the patent's prosecution history is that "statements made during the prosecution of a different application regarding different claim terms cannot be used to limit the claims at issue here." D.I. 230, TV Guide Noninfring. Resp. Br. at 19. TV Guide is incorrect as matter of law, and the cases TV Guide cites are inapplicable here. For example, *Saunders Group* holds that "[w]hen the purported disclaimers are directed to specific claim terms that have been omitted or materially altered in subsequent applications (***rather than to the invention itself***), those disclaimers do not apply." *Saunders Group, Inc. v. Comfortrac, Inc.*, 492 F.3d 1326, 1333 (Fed. Cir. 2007) (emphasis added). Here, however, as TMS demonstrated in its opening brief, the named inventor of the '078 patent clearly and unmistakably referred to ***the entire invention itself***, and not to specific claims in the patent application:

- In contrast, ***the present invention*** maintains a database …
- ***In all cases,*** however…
- … in accordance with ***the present invention*** …

7

11/16/93 Amend., at 7-9 (emphases added) (A42-A44). The rule in *Saunders*, limiting the doctrine of prosecution disclaimer with claim-specific statements, does not apply to invention-general disclaimers like those made by the named inventor of the '078 patent.[3]

TV Guide's response to TMS's invalidity summary judgment motion further confirms TMS has correctly construed the "receive" limitation. In its Invalidity Response Brief, TV Guide "corrects" one of TMS's stated facts by explaining that "*in order to implement the invention* a personal computer needs to be 'provided with a special application program...'" D.I. 229, at 23, ¶ 12 (*citing* '078 patent at 3:22-25 (A6)). According to the '078 patent, this "special application program":

- "Allows the computer to receive data representing a schedule of future programs. The operator can perform *data base operations on the data* to obtain listings of programs of particular interest." '078 patent at ABSTRACT (A1); and

- Displays the schedule information provided from a remote database on the display device, and allows "chronological, alphabetical or topical selection" of such information. '078 patent at 2:1-6 (A5).

In other words, the "special application program" must allow users to "receive" television listings data such that they can "perform database-type manipulations directly on the transferred data without being connected to the original source of the data"—just as TMS construes the "receive" limitation. By stating that the '078 patent requires a "special application program," TV

---

[3] Similarly, the *Ventana* court declined to apply prosecution disclaimer to limit a claim term when the parent's prosecution history refers to a specific term in a specific claim that does not exist in the continuation patent. *See Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*, 473 F.3d 1173, 1182 (Fed. Cir. 2006) (inventor's comment that the prior art "lacked the present invention's novel capability to dispense reagent 'directly to a sample' *as set forth in Applicants' Claim 1*.") (emphasis in original). *Ventana* does not hold that prosecution disclaimer does not apply where, as here, the parent prosecution history distinguishes *the invention as a whole*, as did the named inventor of the '078 patent. *See* 11/16/93 Amend., at 6-9 (A41-A44). Indeed, *Ventana* states to the contrary: "The prosecution history can often inform the meaning of the claim language *by demonstrating how the inventor understood the invention* and whether the inventor *limited the invention in the course of prosecution*, making the claim scope narrower than it would otherwise be." *Ventana*, 473 F.3d at 1182 (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005)) (emphases added). Thus, the rule articulated in *Ventana* does not prevent applying the doctrine of prosecution disclaimer in the situation presented here, where the named inventor did not disclaim with respect to a particular claim term but rather with respect to the entire invention.

Guide admits the invention requires that the user be able to do database-type manipulations to data that is "received."

Thus, TV Guide's statement that TMS's construction of "receive" is "fully at odds with the intrinsic evidence" has no legal basis, goes against clear and unmistakable prosecution disclaimers made by the named inventor, and contradicts the very language and requirements of the '078 patent *as TV Guide itself argues it to this Court*.

        2.     <u>TV Guide Fails To Show Specific Facts That Anyone "Receives"</u>
                <u>Television Listings Data</u>

In its opening brief, TMS demonstrated no Zap2it.com user "receives" television listings from Zap2it under the proper construction of "receive." TV Guide's arguments in response do not rebut TMS's showing. *First*, TV Guide's claim that the "find" feature of an Internet browser can be used to "search" the listings on Zap2it.com mistakes TMS's correct construction of the term "receive." As discussed above, the patent specifies that a "special application program"— which TV Guide asserts is necessary to implement the invention—must allow the user to "perform data base operations on the data," '078 patent at ABSTRACT (A1), such as making selections based on chronology, alphabetical order, and topic matter of the data. '078 patent at 2:1-6 (A5). A simple "find" feature merely enables the user to "look for" particular words or phrases in text. This is not the type of "data base operation" as described in the patent; nor is it a "database-type manipulation," as that phrase is understood by one of ordinary skill in the art. *See* Tjaden Decl. at ¶ 7 (A654-A655); *see also* Tjaden Dep. at 53:13-54:15 (C36-C37); *id.* at 58:24-59:23 (C38). Second, the "find" feature belongs to an ***Internet browser***, which indisputably is *not* a database manipulation program. An Internet browser does not have the capabilities of manipulating databases, it merely presents webpages written in HTML. *See* Tjaden Decl. at ¶ 7 (A654-A655); *see also* Tjaden Dep. at 54:16-55:3 (C37).

9

*Second*, the experience of TV Guide's expert with "manipulating" the Zap2it.com listings is legally insufficient to establish direct infringement of the '078 patent. TV Guide presents no evidence that ***anyone*** other than Mr. Cole has ever copied the HTML display sent by Zap2it.com into a database program such as Microsoft Excel or Access, or would even know it could be done. As a matter of law, Mr. Cole's actions in developing his opinions do not constitute proof of infringement by Zap2it.com or its users. "In order to prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit. ... Hypothetical instances of direct infringement are insufficient to establish vicarious liability or indirect infringement." *ACCO Brands, Inc. v. ABA Locks Mfr. Co. Ltd.*, 501 F.3d 1307, 1312-14 (Fed. Cir. 2007) (finding that the record lacked sufficient evidence to sustain the jury's finding of direct infringement, where the only evidence of direct infringement was the action of plaintiff's expert and a set of instructions on how to use the allegedly infringing product).

It is TV Guide's burden to prove infringement, and yet TV Guide offers ***nothing*** to dispute TMS's contentions on this point, either in the way of evidence that someone other than Mr. Cole has ever manipulated television listings from Zap2it.com, or case support refuting the assertion that Mr. Cole's actions alone are legally insufficient. Because TV Guide cannot prove that *anyone* performs the "receive" limitation in each claim of the '078 patent, the Court should grant TMS's motion for summary judgment of noninfringement.

\*\*\*

Because TV Guide offers absolutely no factual evidence that TMS "controls or directs" its users to perform the patented method, and because TV Guide undermines its own arguments

10

with respect to the patent's apparatus claims, its assertion that TMS directly infringes the '078 patent fails as a matter of law.

**D.    TMS Does Not Indirectly Infringe The '078 Patent As A Matter of Law.**

Even assuming TV Guide could prove that someone other than TMS directly infringes the patent—a fundamental requirement which TV Guide addresses in a footnote—it still cannot demonstrate the other elements necessary to prove that TMS either induces or contributes to infringement of the '078 patent.

1.    TV Guide Cannot Show That TMS Has "Specific Intent" For Users Of Zap2it.com To Infringe The '078 Patent.

In order to succeed in its claim that TMS induces infringement of the patent, TV Guide must prove "that the alleged infringer knowingly induced infringement and possessed *specific intent* to encourage another's infringement." *DSU Med. Corp. v. JMS Co.,*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (quoting *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005) (internal quotation marks omitted) (emphasis added).   TV Guide's only argument is that TMS knew of the patent's existence since April 2005 and has not shut down Zap2it.com, which TMS does not dispute.   TV Guide also argues that TMS knew that some of its users were accessing Zap2it.com from home.   The Federal Circuit has specifically *rejected* TV Guide's argument as a basis for finding induced infringement. *See DSU Med.*, 471 F.3d at 1305 ("[K]nowledge of the acts alleged to constitute infringement is not enough … *The mere knowledge of possible infringement by others does not amount to inducement*; specific intent and action to induce infringement must be proven.") (internal quotation marks and citations omitted) (emphasis added).   If all TV Guide can show is knowledge—and that is all it has shown—its allegation of inducement fails as a matter of law.   Indeed, TV Guide offers

11

nothing to meet its burden of proof of showing TMS has taken "active steps" to induce infringement.

TV Guide's argument that simply providing instructions for using the television listings portion of Zap2it.com is an "active step" of inducement fails as a matter of law. D.I. 230, TV Guide Noninfring. Resp. Br. at 26. The only specific "instruction" that TV Guide references is the prompt for a user to enter his or her zip code. *Id.* Assuming, *arguendo,* that "entering" information is the same as "transmitting" it, this comprises only ***one of several necessary steps*** in the asserted claims of the '078 patent, and TMS's prompt constitutes at most an invitation of a particular ***act*** by the user. The prompt does not evidence "specific intent" to induce infringement because it does not evidence any intent on the part of TMS for its users to perform the remaining steps of the '078 patent.[4] Thus, TV Guide's argument on this point fails as a matter of law.

TV Guide next points to advertising on the Zap2it.com website as another alleged "active step" to encourage infringement. TV Guide's argument is baseless and immaterial to the infringement analysis. The only advertising TV Guide cites is general marketing and advertising information for the Zap2it.com site. D.I. 230, TV Guide Noninfring. Resp. Br. at 26. The advertisements on Zap2it.com, however, are for television programs. TV Guide does not (and cannot) argue that the '078 patent is even remotely related to advertising television programs, and no reasonable jury would consider general advertising on the Zap2it.com website to be "advertising an infringing use." TV Guide thus does not satisfy its burden to show that TMS takes any "active steps" to induce infringement, and therefore cannot prove specific intent as a matter of law.

---

[4] For example, Zap2it.com does not provide any instructions for users to access the website "from a viewing location," nor for them to use a "modem."

12

Finally, TV Guide does not even attempt to dispute that TMS does not require, or even prefer, that a user access Zap2it.com from a computer located at the user's television viewing location. *See* D.I. 211, TMS Noninfring. Br. at 19-20. The unrebutted testimony of TMS's 30(b)(6) witness is that TMS does *not* intend to have Zap2it.com users access Zap2it.com from their alleged television viewing location rather than from a non-viewing location:

> Q: Does it make any difference to TMS whether the Zap2it users use the site, access the site from home or at work?
>
> A: I would believe TMS would be indifferent as to where a user sees access to Zap2it.com.

Tolstrup Dep. at 53:23-54:3 (A640). TV Guide simply has no evidence to show TMS has specific *intent* for Zap2it.com users to access the website from their television viewing location—wherever that may be—rather than from a non-viewing location.

### 2.    TV Guide Has Not Shown That A Genuine Issue Of Fact Exists As To The "Substantiality" Of Noninfringing Use Of Zap2it.com.

TMS demonstrated in its opening brief that there can be no contributory infringement as a matter of law because at least 25% of Zap2it.com users access the site from work—a substantial non-infringing use. In response, TV Guide argues: (1) a user's office constitutes a "viewing location" and therefore access to the Zap2it.com website from work is an infringing use; and, in the alternative, (2) 25% of users accessing Zap2it.com from work does not constitute "substantial" use. *The burden of proof is on TV Guide* to show that the allegedly infringing component of Zap2it.com does *not* have substantial noninfringing uses. *See, e.g., DSU Med. Prods.,* 471 F.3d at 1303 (stating that the patentee has the burden to show both "direct infringement for each instance of indirect infringement" and that the allegedly infringing device has no substantial noninfringing uses); *Hoffmann-La Roche Inc. v. Premega Corp.,* 33 U.S.P.Q.2d 1641, 1648 (N.D. Cal. 1994). Both of TV Guide's responses fail as a matter of law.

*First*, **all** of the asserted claims of the '078 patent require that a user access the service provider using a computer located at the user's television "viewing location." '078 patent at claims 1, 6 and 8 (A7-A8).  As a matter of law, then, any user accessing Zap2it.com from a location that is **not** his or her television viewing location (such as an office) is **not** infringing the patent.  TV Guide does not dispute that approximately 25% of users access Zap2it.com from work, nor that its expert conceded as much in his deposition.  *See* D.I. 230, TV Guide Noninfring. Resp. Br. at 28, n.4.  TV Guide cites no evidence of users performing the claimed invention at work, but instead argues "common experience" as its only support.  *Id.* at 28.  But vague assertions of common experience cannot constitute "specific facts" necessary to defeat a motion for summary judgment.  *See* Fed. R. Civ. P. 56(e) ("... [an opposing party's] response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial.") (effective as of Dec. 1, 2007); Fed. R. Civ. P 56(c).  TV Guide has not presented any evidence that a user's work location is also a viewing location in the context of the '078 patent.

*Second*, TV Guide's argument that "there is an issue of material fact as to exactly what portion of the 25% is in fact noninfringing," *id.*, is not actually material.  TV Guide points to the fact that "the user studies ... do not identify what information is received by the users who access Zap2it.com from work nor how the users intend to use that information." *Id.*  It is completely irrelevant *what* information is received by Zap2it.com users or *how* they intend to use that information, because the claim at issue only demands that users perform the method from a "viewing location."  Even if we were to consider *what* information is received, and discovered that Zap2it.com users download non-television related listings, this would be outside the scope

14

of the '078 patent and therefore support TMS's argument that the website has substantial noninfringing uses. No reasonable jury could find that 25% is not "substantial" in this situation.

TV Guide's alternative argument for why there is a "genuine issue of material fact" as to the *qualitative* substantiality of the 25% is similarly misplaced. TV Guide pulls language from *Hoffmann-La Roche* for its assertion that "inefficient and uneconomical uses are less likely to be deemed 'substantial.'" 33 U.S.P.Q.2d at 1648. This language, however, does not state some independent test or standard for "qualitative substantiality." Rather, it expands on the court's previous statement that "Whether a use is 'substantial' or not *depends on how likely and often the use will occur*." *Id.* An "inefficient and uneconomical use" is simply one example of when a particular use is *not likely to occur*. *Id.* (the other example offered by the court being "*occasional* aberrant use," referring of course to *how often the use will occur* as opposed to how likely it is that it will occur). TV Guide misreads *Hoffmann-La Roche*.

***

TV Guide has not shown that Zap2it.com has specific intent to induce infringement; nor has TV Guide shown that a genuine issue of material fact exists regarding the substantiality of Zap2it.com's noninfringing use. Accordingly, TMS should be granted summary judgment of noninfringement of all asserted claims as a matter of law.

### E.    TV Guide's "Disputed" Facts Are Not Actually Disputed.

TV Guide does not dispute the material facts presented in paragraphs 1, 3-8, 10, 12, 14, 16-17, 19, 21 and 23-24 of TMS's Opening Brief. TV Guide's "disputes" with the statements of undisputed fact in paragraphs 16, 21 and 23 of this brief are not actual factual disputes. Where TV Guide cites those paragraphs, TV Guide has either added additional unnecessary information

or has offered an interpretation of the undisputed facts. In addition, TV Guide's alleged "disputes" with the rest of TMS's material facts are not actual disputes, as explained below[5]:

      2.     TV Guide "disputes" TMS's characterization of the '078 patent as being directed generally "to a method and system for *receiving* television programming information …," and states instead that the patent is directed to a method for "*providing*" such information. D.I. 230 at 7 (emphasis added). This dispute is disingenuous, however, because TV Guide agrees that the patent is entitled "Method and Apparatus for ***Receiving*** Customized Television Programming Information…" Also, in its Response Brief to TMS's Motion for Summary Judgment of Invalidity, TV Guide admits that the '078 patent "discloses and claims" a method of using a computer to *receive* information. D.I. 229, at 6, ¶ 1. Moreover, the only thing that the patent claims "provide" is a computerized unit/controller—not television programming information. '078 patent at claim 1, 6, 8 (A7-A8).

      9.     The parties agree that claim 6 requires a controller at a viewing location, and that controller is "interfaced" to a display. Examples in the patent's specification show the controller and display physically connected by way of cables. *See, e.g.,* '078 patent at Figs. 1, 4 (A2, A3); *id.* at 3:27-30 ("An infrared transmitter and receiver 26 ***is connected to*** an I/O port of the personal computer, preferably a parallel port, by a male connector 28 ***and a cable*** 30.") (emphases added) (A6). TV Guide's assertion that the "display device" (computer monitor) does *not* need to be physically located "at the television viewing location with the claimed controller," then, stands against the teachings of the patent.

      11.     TV Guide does not dispute that Claims 1 and 6 both require "that the user access a service provider using a computer located at the user's viewing location." D.I. 211, TMS

---

[5]   The paragraph numbers correspond to the paragraph numbers in TMS's Opening Brief for Summary Judgment of Noninfringement, D.I. 211.

Noninfring. Br. at 7. TV Guide only disputes that claim 8 requires this as well. D.I. 230, TV Guide Noninfring. Resp. Br. at 8. TV Guide does not dispute, however, that during prosecution of the '078 patent, the named inventor declared: "***All** of Applicant's independent claims* include the limitation, in one form or another, of <u>transmitting</u>, *from a computerized unit situated at a viewing location*..." 5/18/99 Resp. to Office Action, at 1 (A117) (emphasis added). Nor does TV Guide dispute that the named inventor stated during prosecution of the '078 patent: "... such transmission also occurs according to Applicant's claims *from the viewer location to the service provider*..." 11/30/98 Amend. at 3 (A108) (emphasis added). In these statements, the named inventor clearly and unmistakably stated in the prosecution history that *all* of the independent claims—including claim 8—require the computerized unit be located at the user's viewing location.

13.    TV Guide does not dispute that the named inventor distinguished the invention in the '338 application from the Launey prior art, and, in doing so, described Launey as covering a system that provides television schedule information on an as-needed basis. The only thing TV Guide disputes here is the legal impact of these statements, which is an issue of law for the court to decide as part of the claim construction analysis. There is no factual dispute about the statements made.

15.    The parties agree that a "necessary precondition" for any use of Zap2it.com is that a user connect to the website using a computer.

18.    TV Guide does not dispute that it is the users of Zap2it.com who view television programming information on a display device.

22.    Although TV Guide references only statistics from 2000-2003, ignoring the 2006 statistics regarding access to Zap2it.com from home vs. work, there is no actual dispute between

17

the parties here. In any given time period, between 61% and 74% of Zap2it.com's users access the site from home, and 21% to 39% access from work.

Finally, the entire discussion in Section IV.D. of TV Guide's response—that TMS learned of the '078 patent in 2005, more than eight years after it began offering online television listings—is immaterial to TMS's position that there is no induced infringement as a matter of law. As discussed in Section III.C.2 of this brief, *infra*, knowledge of a patent is not "specific intent" to induce infringement as a matter of law.

## III.    CONCLUSION

As a matter of law, TV Guide cannot meet its burden of proof that TMS directly infringes, contributes to, or induces infringement of, any claim of the '078 patent. Therefore, TMS respectfully requests that the Court enter summary judgment of noninfringement in favor of TMS.

Dated: December 21, 2007

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2969)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
302.888.6800

Mark A. Pals, P.C.
Linda S. DeBruin, P.C.
Michael A. Parks
Laura A. Hepburn
Meredith Zinanni
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
312.861.2000

*Counsel for Defendant Tribune Media Services, Inc.*