IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TV GUIDE ONLINE, INC. AND<br>TV GUIDE ONLINE, LLC,<br><br>    Plaintiffs,<br>    Counterclaim-Defendants,<br><br>    v.<br><br>TRIBUNE MEDIA SERVICES, INC.<br><br>    Defendant,<br>    Counterclaim-Plaintiff. | C.A. No. 05-CV-725-***-LPS<br><br>**REDACTED<br>PUBLIC VERSION** |

**TV GUIDE'S REPLY BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT THAT
TMS INFRINGES CLAIMS 1-8 AND 10 OF THE '078 PATENT**

OF COUNSEL:
Christopher J. Harnett
Ching-Lee Fukuda
Stuart W. Yothers
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000

Ronald E. Naves, Jr.
Jeffrey A. Fehervari
GEMSTAR-TV GUIDE
INTERNATIONAL, INC.
6922 Hollywood Blvd.
Hollywood, California 90028
(323) 817-4600

Dated: December 21, 2007

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Steven J. Fineman (#4025)
RICHARDS, LAYTON & FINGER PA
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
fineman@rlf.com
Attorneys for Plaintiffs TV Guide Online,
Inc. and TV Guide Online, LLC

## TABLE OF CONTENTS

                                                           **Page**

I. INTRODUCTION ............................................................................................................. 1

II. TMS'S ARGUMENTS ABOUT THE INTENT OF THE '078 PATENT CLAIMS' DRAFTSMAN ARE INCORRECT AND LEGALLY IRRELEVANT ........................... 3

III. TMS'S ARGUMENTS ABOUT THE INTERNET ARE BESIDE THE POINT ............. 3

IV. DR. TJADEN'S NEW EFFORTS TO FURTHER CONSTRUE TMS'S PROPOSED CLAIM CONSTRUCTION ARE BOTH IMPROPER AND INEFFECTIVE ................. 4

V. TMS CANNOT LEGITIMATELY DISPUTE THAT THE "ESTABLISHING A CONNECTION" LIMITATION IS MET BY ZAP2IT.COM ........................................... 8

VI. TMS OFFERS A CONTORTED VIEW OF THE LAW GOVERNING DIRECT INFRINGEMENT BY MORE THAN ONE ACTOR .................................................... 10

VII. TMS'S ARGUMENTS ON THE INDUCEMENT ISSUE ARE DEMONSTRABLY INCORRECT ................................................................................................................ 14

VIII. CONCLUSION ............................................................................................................. 15

## TABLE OF AUTHORITIES

### CASES

*Applied Interact, LLC v. Vt. Teddy Bear Co., Inc.*,
   No. 04 Civ. 8713 (HB), 2005 U.S. Dist. LEXIS 19070
   (S.D.N.Y. Sept. 6, 2005) ................................................................................. 11, 12, 13, 14

*BMC Res., Inc. v. Paymentech, L.P.*,
   498 F.3d 1373 (Fed. Cir. 2007) ........................................................................................ 10

*BMC Res., Inc. v. Paymentech, L.P.*,
   No. 3-03-CV-1927-M, 2006 U.S. Dist. LEXIS 4961 (E.D. Tex. Feb. 9, 2006) ................. 13

*Hill v. Amazon.com, Inc.*,
   No. 2:02-CV-186, 2006 U.S. Dist. LEXIS 3389 (E.D. Tex. Jan. 19, 2006) ...................... 12

*Marley Mouldings, Ltd. v. Mikron Indus., Inc.*,
   66 U.S.P.Q.2d 1701 (N.D. Ill. 2003) ................................................................................ 11

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ....................................................................................... 5, 6

I.  INTRODUCTION

Having filed its motion for summary judgment representing to this Court that there is *no genuine issue of material fact* on the question of *non-infringement*, TMS now presents:

- A 30-page brief;

- A declaration from a "fact" witness, Gregory B. Loose, TMS's Director of Production Development; and

- A 39-paragraph declaration from Gary S. Tjaden, TMS's retained expert,

all designed to show that disputed factual issues somehow exist about the structure and operation of the accused Zap2it.com website that preclude summary judgment of infringement.

Despite the enormous number of words and pages that TMS dedicates to this exercise, TMS comes forward with nothing of substance to rebut TV Guide's showing that every element of the asserted '078 patent claims, when properly construed, read on the Zap2it.com website. As such, TMS has not identified any *genuine* issue of material fact that TMS does not infringe.

TMS's brief, as well as the new declaration of its retained expert (Dr. Tjaden), proves only that TMS's position on claim construction continues to be a moving target. Even now -- more than 14 months after the Court-ordered deadline for the parties to identify their proposed definitions for claim terms -- TMS and Dr. Tjaden continue to offer strained and exotic definitions for claim terms that are self-explanatory. TMS and Dr. Tjaden previously tried to redefine the claim term "being programmed to control" to incorporate temporal and other limitations that find no support in the intrinsic evidence. Now, TMS and Dr. Tjaden take it a step further by arguing for the first time that particular "installation" and "compilation" steps must be taken in order for the "being programmed to control" limitation to meet the non-existent

1

temporal limitations. There is nothing in the language of the claims, the specification or the prosecution history to support TMS's temporal limitations in the first place -- much less these new "installation" or "compilation" requirements. TMS and its expert are simply adding new limitations as they go to find some way -- *any way* -- to avoid a judgment of infringement.

The declaration of TMS employee, Gregory Loose, is also of no help to TMS.

**REDACTED**

Without the ability to identify any genuine issue of material fact, TMS proceeds to misstate the law. As TV Guide has already detailed, as a matter of law, TMS infringes the claims directly -- both as a consequence of its own actions and as a consequence of actions it takes in concert with others acting under TMS's control or direction. Alternatively, TMS's actions meet all of the legal requirements for a finding of indirect infringement through its inducement of end users to infringe the '078 patent.

TV Guide has previously explained in chapter and verse how the indisputable facts concerning the structure and operation of TMS's Zap2it.com website establish infringement. This can be found in TV Guide's Opening Brief In Support Of Its Motion For Summary Judgment That TMS Infringes Claims 1-8 And 10 Of The '078 Patent (D.I. 204) and TV Guide's Answering Brief In Opposition To TMS's Motion For Summary Judgment Of Noninfringement Of U.S. Patent No. 5,988,078 (D.I. 230). TV Guide has already addressed

2

TMS's arguments on the question of infringement in these earlier submissions and, to avoid unnecessary repetition of information, TV Guide respectfully refers the Court to them.

To the extent that TMS has come forward with any new arguments, TV Guide briefly addresses them below. As stated above, none of those arguments raises any genuine issue of material fact.

## II. TMS'S ARGUMENTS ABOUT THE INTENT OF THE '078 PATENT CLAIMS' DRAFTSMAN ARE INCORRECT AND LEGALLY IRRELEVANT

TMS argues that the '078 patent specification and claims are written "from the perspective of a television viewer" (D.I. 236). Those claims are not written from any "perspective." Those claims define particular methods for receiving television programming information specific to a viewing location and a computerized system that facilitates such transmission and receipt of information. That direct infringement can be accomplished by one actor or by multiple actors acting in concert (D.I. 204 at 25-28; and D.I. 230 at 21-25). Infringement can also be accomplished by one actor inducing another actor to perform certain acts (D.I. 204 at 29; and D.I. 230 at 25-27). When the words and phrases of the asserted patent claims are properly construed as a matter of law, TMS directly infringes (or at the very least, induces infringement of) those claims. "Perspective" has nothing to do with it.

## III. TMS'S ARGUMENTS ABOUT THE INTERNET ARE BESIDE THE POINT

TMS asserts that:

> The technology the '078 patent discloses is that of dial-up services such as CompuServe and Prodigy -- prominent systems as of the priority date of the '078 patent and identified in its specification -- not today's Internet technology. Thus, the '078 patent system claims are written to describe such a dial-up system, not a website such as Zap2it.com that uses Hypertext Transfer Protocol ("HTTP") to communicate over the Internet. (D.I. 236 at 2).

The claims of the '078 patent do not use the word "Internet." They more broadly claim a "wide area network." There is no dispute that the Internet is a wide area network. **REDACTED**

3

RLF1-3238076-1

**REDACTED**

Accordingly, the wide area network limitations of the '078 patent claims are met by Zap2it.com. TMS's "Internet" arguments are a sideshow.

TMS also dedicates a substantial portion of its infringement opposition brief to a general description of CompuServe systems available in the 1992 time frame. CompuServe has no bearing on the issues at hand. TMS apparently included this lengthy discussion of CompuServe to create the illusion that genuine issues of material fact exist. They do not. The claims of the '078 patent do not use the word "Compuserve." As discussed in the previous paragraph, the claims are directed to a "wide area network" and there is no dispute that the Internet is a wide area network.

## IV. DR. TJADEN'S NEW EFFORTS TO FURTHER CONSTRUE TMS'S PROPOSED CLAIM CONSTRUCTION ARE BOTH IMPROPER AND INEFFECTIVE

When TMS filed its motion for summary judgment of noninfringement, the *only* claim element that TMS argued is supposedly not practiced during the use of the Zap2it.com website is the step of "receiving" from the service provider specific television programming information. TMS's non-infringement arguments in that regard are simply incorrect.

As TV Guide explained in its answering brief: (1) TMS's noninfringement argument is premised on the Court's adoption of TMS's far-fetched construction of the common

---

[1] As used herein, "Ex. __" refers to the stated exhibit to the Declaration of Stuart W. Yothers, which is submitted herewith.

4

term "receiving" to mean "having data transferred to a computer such that a user can perform database-type manipulations directly on the transferred data without being connected to the original source of the data;" and (2) TMS's construction, with its numerous extraneous limitations, finds no support in the intrinsic evidence. TV Guide exposed the infirmities of TMS's proposed construction of the "receiving" limitation in both its opening and responsive claim construction submission (D.I. 205 at 22-25; and D.I. 228 at 20-27). To avoid unnecessary repetition of information, TV Guide respectfully directs this Court's attention to those submissions.

## REDACTED

Under TV Guide's proposed construction of "receiving" as meaning "receiving electronically" -- which is the correct construction -- any use of Zap2it.com meets this step. Even under TMS's own proposed definition of this term, use of Zap2it.com *still* meets this element of the asserted claims. As TV Guide explained, the user may use the "find" feature of the Internet browser to perform key word searches on the information received from Zap2it.com (D.I. 230 at 12 and Figure 2). Use of Zap2it.com, therefore, infringes the '078 patent under either party's construction of the term "receiving."

Faced with this situation with respect to the "receiving" limitation, TMS now tries to rewrite the "controller being programmed to perform" limitation. The claim term "controller being programmed to perform" is self-explanatory and requires no elucidation or amplification (*see* D.I. 228 at 27). When the words of a claim are clear and readily understood, as a matter of law, there is no need for a Court to use different words to define them. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005).

Nonetheless, TMS is seeking to add extraneous verbiage -- this time a temporal limitation "computer application programs are installed on the controller *prior to the use* by a user to perform" -- to limit the scope of the claims in the hopes of manufacturing a noninfringement defense. In that regard, TMS was able to cite to nothing in the words of the claims, the patent specification or the prosecution history to justify this temporal limitation. Instead, TMS said only that, at trial, its retained expert will testify that it is so (D.I. 237 at 22). But, the Federal Circuit has repeatedly held that "expert testimony" of this kind, which is unsupported by the intrinsic record is entitled to no weight: "a court should discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.'" *Phillips*, 415 F.3d at 1318 (citation omitted).

As TV Guide detailed previously, the language of the term -- "being programmed" -- expressly allows the programming to take place concurrently with the performance of the steps. Indeed, it was common in the early 1990s, as it is today, for programs to be placed on a computer connected to a network as the computer is being used. (*See* Cole Ex. B at ¶¶ 121-123[2]; and Cole Ex. C at ¶ 37, Exs. D, E, and F). TMS's only response to this was a conclusory statement by its technical expert that "[a]t the priority date of the'078 patent (March 1992), personal computer application programs were completely installed on the personal computer before they began executing" (D.I. 216 at 40). This statement has been incontrovertibly refuted by technical publications by Goldszmidt, Korb and Bell which were identified and explained by TV Guide's technical expert -- Tipton Cole. (*See, e.g.*, Cole Ex. C at

---

[2] As used herein "Cole Ex. __" refers to the stated exhibit to the Affidavit of J. Tipton Cole, D.I. 206.

6

¶ 37: "At the time of the '078 patent's priority date, examples of systems that downloaded or installed incremental functionality while the application program was being executed were common.").

In view of these publications, TMS's Dr. Tjaden now comes forward with a 39-paragraph declaration further explaining what he *really* meant by "completely installed on a personal computer before they began executing." With his new "explanation" Dr. Tjaden tries to further limit his "temporal" limitations by requiring particular ways in which "installation" and "compiling" -- terms that are not even in the asserted claims -- must be accomplished. For example, Dr. Tjaden now states with respect to Goldszmidt that:

> Regarding the process I have called "installation," Goldszmidt provides the following details for its MAD system: "Each DMP is represented in the repository as a data structure which contains the actual code of the program, and additional information describing its characteristics and requirements . . . . DMPs can be in source code format, which may require compilation and linking or interpretation, or as object code that requires only dynamic linking. The Mad Agent uses the Translator for preparing the DMP for instantiation, via compilation and linking. The Translator uses the Repository to store the executable images which are produced by the compilation." (*Id.* at p. 354, col. 1, para. 1.) Here Goldszmidt proposes a type of installation that was certainly not used on personal computers in user's home in 1992, and still is not used today, that is, compiling a program locally on the personal computer during the installation process. Goldszmidt does refer to interpretation in passing, but again only if the program to be interpreted is already "installed" in the Repository (agent hard drive). Such interpretation was not used in the prototype system described by Goldszmidt, nor is it performed by user's personal computers when using the Zap2it.com service. (Ex. C at ¶23).

With respect to Korb, Dr. Tjaden states:

> There are only two statements in Korb that could possibly be misconstrued to relate to the issue at hand of downloading during the execution of an application program incremental functionality for it to perform. The first is: "The setup for a V pipeline involves downloading a local (to the workstation) helper program for each remote service to handle input and output for that service." (*Id.* at p. 72, col. 2, para. 5.) The second is: "After creation of all connections, the executive downloads a local V program to connect to the input port of the first service, and to listen on all the local TCP ports." (*Id.* at p. 72, col. 2, para. 6.) In these statements the term "pipeline" refers to the mechanism used to transfer the

7

results of a service's computation to its intended destination. In both of these statements the reference to "downloading a local program" refers to the process that is used to setup the chained computation prior to performing the computation. It does not in any way imply downloading during the execution of the computation incremental functionality for it to perform. (Ex. C at ¶30).

All of this is a blizzard of technical irrelevancy. The "controller being programmed to control" does not include any temporal limitation in the first place. Dr. Tjaden's newly-stated insistence on these additional requirements with respect to "installation" and "compiling" is simply something he made up. It has no basis in the intrinsic record. TMS is trying to make things seem much more complicated than they really are in the hopes of manufacturing the illusion of a genuine disputed fact issue. The Court should reject TMS's efforts.

## V. TMS CANNOT LEGITIMATELY DISPUTE THAT THE "ESTABLISHING A CONNECTION" LIMITATION IS MET BY ZAP2IT.COM

In order to access TMS's www.Zap2it.com website, the users must first establish a connection to a wide area network. That is a matter of common sense because there is no other way for a user to obtain information from Zap2it.com. When a user accesses Zap2it.com,

**REDACTED**

TMS exercises direct control over the operation and use of Zap2it.com, and therefore directly performs each step of the asserted method claims.

**REDACTED**

8

TMS was not able to present any rebuttal from Dr. Tjaden in response to TV Guide's showing that the "establishing a connection" limitation is met by Zap2it.com

Tellingly, Dr. Tjaden is absolutely silent about that subject in his new declaration.

**REDACTED**

**REDACTED**

Once the connection is made, TMS's servers transmit the instructions. As TMS boasts in its own advertisements for Zap2it.com "We're *connecting* users with content anywhere and everywhere there's something worth watching" (Ex. E at TMS0002463 (emphasis added)).

## VI. TMS OFFERS A CONTORTED VIEW OF THE LAW GOVERNING DIRECT INFRINGEMENT BY MORE THAN ONE ACTOR

TMS tries to avoid the body of case law that holds a party liable for direct infringement even when some steps were performed by other entities. For example, in *BMC Res., Inc.*, the Federal Circuit found that a defendant who directs or controls the acts of someone else in carrying out one or more of the claimed steps is still liable for direct infringement:

> These rules for vicarious liability might seem to provide a loophole for a party to escape infringement by having a third party carry out one or more of the claimed steps on its behalf. To the contrary, the law imposes vicarious liability on a party for the acts of another in circumstances showing that the liable party controlled the conduct of the acting party. *In the context of patent infringement, a defendant cannot thus avoid liability for direct infringement by having someone else carry out one or more of the claimed steps* on its behalf.
>
> A party cannot avoid infringement, however, simply by contracting out steps of a patented process to another entity. In those cases, *the party in control would be liable for direct infringement.* It would be unfair indeed for the mastermind in such situations to escape liability. District courts in those cases have held a party liable for infringement.

*BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379, 1381 (Fed. Cir. 2007) (internal citations omitted; emphasis added).

Likewise, district courts have routinely found that a defendant may be held liable as the direct infringer even though it did not perform every step of a method claim, so long as the

10

defendant has sufficient connection with the other entities that performed the remaining steps. *See, e.g., Applied Interact, LLC v. Vt. Teddy Bear Co., Inc.*, No. 04 Civ. 8713 (HB), 2005 U.S. Dist. LEXIS 19070, at *15-16 (S.D.N.Y. Sept. 6, 2005); *Marley Mouldings, Ltd. v. Mikron Indus., Inc.*, 66 U.S.P.Q.2d 1701, 1703 (N.D. Ill. 2003). This is particularly true where "the patent contemplates action by at least two actors." *Applied Interact*, 2005 U.S. Dist. LEXIS 19070, at *16. Consistent with the Federal Circuit's guidance in *BMC Resources, Inc.*, these district courts also found that there is sufficient connection to hold a defendant liable for direct infringement when the defendant directs or controls the other entities in performing the remaining steps. *Applied Interact*, 2005 U.S. Dist. LEXIS 19070, at *15-17 (finding sufficient connection because the customers perform the infringing steps "according to the *instructions* on [defendant's] web site") (emphasis added); *Marley Mouldings, Ltd.*, 66 U.S.P.Q.2d at 1703 (sufficient connection may be found if defendant has *control* over the other entity's performance of the remaining steps).

Faced with this, TMS dedicates page after page of its opposition to an argument suggesting that TV Guide has shown only "some connection" between TMS and the Zap2it.com users that is akin to some "arm's-length" relationship.[3] In that regard, TMS argues that "[t]o the extent the cases cited by TV Guide rely upon the 'some connection' standard, rather than a 'control and direct' standard they are no longer good law in view of *BMC*." TMS is wrong about the law and about the facts.

---

[3] TMS now argues that "[a]t a minimum, a genuine issue of material fact exists regarding whether or not the relationship between TMS and the Zap2it.com users constitutes a sufficient connection such that TMS is able to 'direct' or 'control' its users" (D.I. 236 at 27, n.8). That admission alone should defeat *TMS's motion* for summary judgment of *noninfringement* (D.I. 211).

11

As discussed, the district courts in the cited cases found sufficient connection between the defendant and other entities based on the defendant's direction or control of the other entities in performing the remaining steps -- the same standard applied in the *BMC* case. In any event, TV Guide has shown irrefutably that TMS does, in fact, "control and direct the actions of the Zap2it.com end users." This is crystal clear from TMS's advertisements and instructions for the Zap2it.com website and the actual interaction between the end user and the website, which TV Guide has previously explained (D.I. 204 at 25-28; and D.I. 230 at 21-25).

This type of interaction between an Internet service provider and a user is precisely the type of relationship contemplated by the court in *BMC* and in other cases. The service provider is uniquely positioned to control the entire user experience. For instance, in *Hill v. Amazon.com, Inc.*, No. 2:02-CV-186, 2006 U.S. Dist. LEXIS 3389, at *18-20 (E.D. Tex. Jan. 19, 2006), the district court held that sufficient evidence supported plaintiff's claim of direct infringement where the defendant offered a website to its users. Specifically, the **design** of the defendant's website enabled the defendant to **control** the activity of its users by circumscribing navigation within the site and causing the web browser to cache certain items and not others. *Id.* at *19. The court also cited suggestions by defendant for users to update their browser and modify settings as evidence of **direction** of the user.

Similarly, the district court in *Applied Interact* held that the defendant may be liable as a direct infringer where the defendant **instructed** users of its website to perform steps of a claimed invention. In that case, the defendant invited users of its website to print out coupons for a free factory tour, and instructed users as to how to proceed. *Applied Interact, LLC*, 2005 U.S. Dist. LEXIS 19070, at *23. The court also held that, by embedding javascript commands in its website, the defendant was **directing** the user's web browser. *Id.* at *25. It is instructive that

12

the district court in *BMC* specifically distinguished that case from the facts of *Applied Interact*, noting that the relationship between the defendant and website users in *Applied Interact* was not an arms-length transaction. *BMC Res., Inc. v. Paymentech, L.P.*, No. 3-03-CV-1927-M, 2006 U.S. Dist. LEXIS 4961, at *17-18 (E.D. Tex. Feb. 9, 2006).

Moreover, contrary to TMS's assertions, the district court's findings in *Applied Interact* -- that a website-operator defendant may be liable for direct infringement even when it is the users who fulfill the step of "providing" a computer to access the website -- is exactly on point. In an effort to obfuscate this point, TMS mischaracterizes the finding of the court. Even a quick review of the *Applied Interact* case would demonstrate that TV Guide's reliance is proper. Specifically, the asserted claim required performance of the following step:

> "providing said individuals with electronically programmable token dispensers capable ... of dispensing a token having value to said requesting individual."

The defendant (VTB) argued -- much like TMS argues in this case -- that "it has never provided its customers with electronically programmable token dispensers." The plaintiff argued that "VTB's promotion of an online coupon for a free factory tour induced its web site visitors to provide their own computers and printers to print the coupon in question." The court found that the step "is satisfied by VTB's customers supplying or making available their already-acquired computer systems and printers to print VTB's factory tour coupon" and proceeded to analyze the connection between VTB and its customers:

> The remaining issue as to Step 2 is to determine whether VTB may be held responsible for infringement because its customers furnished computers and printers to print the coupon. As I previously concluded, ***VTB may be held liable for direct infringement*** if it has "some connection" to its customers. AI has shown that VTB invites its web site visitors to print out the coupon, bring it to its factory, and receive a free tour.

13

*Applied Interact*, 2005 U.S. Dist. LEXIS 19070, at *19-23. The court, thus, found that a website operator need not actually provide its customers with the necessary equipment in order to be held liable as a direct infringer.

### VII. TMS'S ARGUMENTS ON THE INDUCEMENT ISSUE ARE DEMONSTRABLY INCORRECT

TMS argues that "TV Guide has offered no evidence or analysis that someone other than TMS directly infringes the '078 patent, and thus has failed to establish the threshold requirement for a finding of inducement of infringement." TMS's "other than TMS" argument makes no sense. TMS -- through its advertisements and the instructions provided right on the Zap2it.com website -- instructed millions of individuals on how to receive television listings by entering geographic information. TMS's own marketing documents confirm that millions of end users did exactly that. And, in any event, TV Guide proved that numerous deponents -- at home, in their private lives -- used the Zap2it.com website in an infringing fashion.

## REDACTED

14

## VIII. CONCLUSION

In view of the foregoing, TV Guide respectfully submits that TMS has failed to identify any *genuine* issue of material fact on the question of infringement. Accordingly, TV Guide's motion should be granted.

OF COUNSEL:
Christopher J. Harnett
Ching-Lee Fukuda
Stuart W. Yothers
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Ronald E. Naves, Jr.
Jeffrey A. Fehervari
GEMSTAR-TV GUIDE
INTERNATIONAL, INC.
6922 Hollywood Blvd.
Hollywood, California 90028
(323) 817-4600

Dated: December 21, 2007

/s/ 

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Steven J. Fineman (#4025)
Richards, Layton & Finger PA
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
fineman@rlf.com
Attorneys for Plaintiffs TV Guide Online, Inc. and TV Guide Online, LLC

15

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2007, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand Delivered to the following:

Richard K. Herrmann, Esquire
Mary B. Matterer, Esquire
Morris James, LLP
500 Delaware Avenue
Suite 1500
Wilmington, DE 19801-1494

I hereby certify that on December 21, 2007, I have sent by electronic mail, the foregoing document to the following non-registered participant:

Mark A. Pals, P.C., Esquire
Kirkland & Ellis, LLP
200 East Randolph Drive
Chicago, IL 60601

/s/ Steven J. Fineman
Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
fineman@rlf.com

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I hereby certify that on January 2, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand Delivered to the following:

Richard K. Herrmann, Esquire
Mary B. Matterer, Esquire
Morris James, LLP
500 Delaware Avenue
Suite 1500
Wilmington, DE 19801-1494

I hereby certify that on January 2, 2008, I have sent by electronic mail, the foregoing document to the following non-registered participant:

Mark A. Pals, P.C., Esquire
Kirkland & Ellis, LLP
200 East Randolph Drive
Chicago, IL 60601

/s/ Steven J. Fineman
Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
fineman@rlf.com

RLF1-2978403-1