## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TV GUIDE ONLINE, INC. and<br>TV GUIDE ONLINE, LLC,<br><br>                Plaintiffs and Counterclaim Defendants,<br><br>                           v.<br><br>TRIBUNE MEDIA SERVICES, INC.,<br><br>                Defendant and Counterclaim Plaintiff. | ) <br>) <br>) <br>) <br>) <br>)   Case No.: 05-725-\*\*\*<br>) <br>) <br>) <br>)   **PUBLIC VERSION**<br>) <br>) |

## TRIBUNE MEDIA SERVICES' CONSOLIDATED REPLY IN SUPPORT
## OF ITS SUMMARY JUDGMENT MOTIONS DIRECTED TO DAMAGES ISSUES

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2969)
MORRIS JAMES LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800

Mark A. Pals, P.C.
Linda S. DeBruin, P.C.
Michael A. Parks
Laura A. Hepburn
Meredith Zinanni
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
312.861.2000

*Counsel for Defendant Tribune Media Services, Inc.*

Originally filed: December 21, 2007
Public version filed:  January 3, 2008

## TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................................1

II.   TV GUIDE'S DAMAGES DILEMMA IS SELF-INFLICTED. ........................................1

      A.    The Gemstar Entities And Chain Of Ownership In The '078 Patent. .....................1

      B.    The Damages At Issue. .......................................................................................2

      C.    TMS's Motion To Dismiss TV Guide Online, Inc. For Lack Of Standing. ............3

      D.    Gemstar's Patent Misuse.....................................................................................5

III.  TV GUIDE IS NOT ENTITLED TO "LOST ROYALTIES" FROM THE
      YAHOO! LICENSE. ....................................................................................................5

      A.    TV Guide's "Lost Royalties" Claim Is Not Legally Compensable. ......................6

      B.    TV Guide's "Lost Royalties" Claim Is Purely Speculative. ..................................8

      C.    TV Guide Cannot Show Causation Or Foreseeability As A Matter of Law. ...........9

            1.    TV Guide Cannot Establish A Causal Relationship Between
                  TMS's Alleged Infringement, The '078 Patent, And The Yahoo!
                  License. ..................................................................................................10

            2.    TV Guide Cannot Prove The Alleged Lost Yahoo! Royalties Were
                  Foreseeable. ...........................................................................................11

IV.   BINDING FEDERAL CIRCUIT PRECEDENT REQUIRES SUMMARY
      JUDGMENT OF NO PRE-SUIT DAMAGES................................................................13

      A.    *Lans* Precludes Pre-Suit Damages Because TMS Did Not Have Notice Of
            The Patent Owner's Identity. .............................................................................13

      B.    *Amsted* Precludes Pre-Suit Damages Because Gemstar Did Not Make A
            Specific Charge Of Infringement By A Specific Product........................................17

V.    CONCLUSION...........................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.,*
    24 F.3d 178 (Fed. Cir. 1994)............................................................................... passim

*Baer v. Chase,*
    392 F.3d 609 (3d Cir. 2004)........................................................................................ 18

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.,*
    1 F.3d 1214 (Fed. Cir. 1993).......................................................................................... 9

*Fiskars, Inc. v. Hunt Mfg. Co.,*
    279 F.3d 1378 (Fed. Cir. 2002)...................................................................................... 9

*Gemstar Dev. Corp. v. Prevue Networks, Inc.,*
    98-CV-20778 (N.D. Cal.) .............................................................................................. 4

*Gemstar Dev. Corp. v. Prevue Networks, Inc.,*
    99-CV-127 (N.D. Okla.) ............................................................................................ 4, 5

*Grain Processing Corp. v. Am. Maize-Prods. Co.,*
    185 F.3d 1341 (Fed. Cir. 1999).............................................................................. 10, 12

*Herbert v. Lisle Corp.,*
    99 F.3d 1109 (Fed. Cir. 1996)....................................................................................... 7

*In re Gemstar Dev. Corp. Patent Litig.,*
    MDL-1274-WBH (N.D. Ga.).......................................................................................... 5

*Jiminez v. All Am. Rathskeller, Inc.,*
    503 F.3d 247 (3d Cir. 2007)........................................................................................ 18

*King Instruments Corp. v. Perego,*
    65 F.3d 941 (Fed. Cir. 1995)......................................................................................... 6

*Lans v. Digital Equip. Corp.,*
    252 F.3d 1320 (Fed. Cir. 2001)............................................................... 13, 14, 15, 16

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.,*
    895 F.2d 1403 (Fed. Cir. 1990)..................................................................................... 7

*Martin v. Merrell Dow Pharms., Inc.,*
    851 F.2d 703 (3d Cir. 1988)........................................................................................ 18

*New R.R. Mfg., LLC v. Vermeer Mfg. Co.,*
    298 F.3d 1290 (Fed. Cir. 2002).................................................................................... 19

*Philips Electronics N.A. Corp. v. Contec Corp.,*
    312 F. Supp. 2d 649 (D. Del. 2004)................................................................... 20

*Poly-America, L.P. v. GSE Lining Tech., Inc.,*
    383 F.3d 1303 (Fed. Cir. 2004)............................................................... passim

*Prevue Interactive, Inc. v. Starsight Telecast, Inc.,*
    93-CV-934 (N.D. Okla.) ...................................................................... 4

*Rite-Hite Corp v. Kelley Co., Inc.,*
    56 F.3d 1538 (Fed. Cir. 1995)............................................................ 8, 10, 11

*Soverain Software LLC v. Amazon.com, Inc.,*
    383 F. Supp. 2d 904 (E.D. Tex. 2005) ............................................... 20

*Trell v. Marlee Elecs. Corp.,*
    912 F.2d 1443 (Fed. Cir. 1990)............................................................ 7

**Statutes**

35 U.S.C. § 287........................................................................................... 3

**Treatises**

John M. Skenyon et al., Patent Damages Law & Practice, § 7:2 (2003) ....................................... 7

I.    **INTRODUCTION**

In response to TMS's motions for partial summary judgment barring lost royalties and pre-suit damages, TV Guide filed a consolidated opposition brief.  TMS submits this consolidated reply.  As a matter of law, TMS should receive summary judgment on the pre-suit damages, because neither TV Guide nor the then-owner of the '078 patent, Index Systems, ever communicated to TMS the necessary charge that Zap2it.com infringes the '078 patent.  As a matter of law, TMS should receive summary judgment on TV Guide's so-called "lost royalties" claim because its damages theory does not meet the statutory or caselaw requirements of compensable patent damages.

In its damages opposition brief, TV Guide relies heavily on

**REDACTED**

.  The undisputed evidence regarding these negotiations shows that there was:  (1) no actual notice for pre-suit damages; (2) no causal connection for "lost royalties"; and (3) no foreseeable "lost royalties."

II.   **TV GUIDE'S DAMAGES DILEMMA IS SELF-INFLICTED.**

TV Guide's inability to sustain its damages claims against TMS is driven in part by the decisions TV Guide and its affiliates made regarding ownership of the '078 patent.

A.    **The Gemstar Entities And Chain Of Ownership In The '078 Patent.**

For clarity, TMS defines the Gemstar entities involved in the events at issue as follows:

- Plaintiffs TV Guide Online LLC and TV Guide Online Inc. are jointly referred to as "TV Guide," and individually referred to as "TVGO LLC" and "TVGO Inc.," respectively.

- Their ultimate parent company, Gemstar-TV Guide International, Inc., is defined as "Gemstar," which also refers to its predecessor Gemstar Development Corporation.

1

- Gemstar's wholly-owned subsidiary Index Systems, Inc., who owned the patent before this lawsuit was filed, is "Index Systems."

The following timeline sets out the chain of ownership of the '078 patent:

| DATE | EVENT |
|------|-------|
| 10/9/1997 | '078 Application Filed |
| 1/6/1998 | Named Inventor Assigned '078 Application to Index Systems, Inc. |
| 10/1999 | Definitive Merger Agreement Announced by Gemstar Development Corporation and TV Guide, resolving patent/antitrust litigation |
| 11/23/1999 | '078 Issued, Listing Assignee as "Gemstar Development Corp." |
| 7/2000 | Merger Finalized, Formation of Gemstar-TV Guide International, Inc. |
| 9/28/2005 | TV Guide Online, LLC formed |
| 10/6/2005 | Assignment from Index Systems to TV Guide Online, LLC; recorded in the USPTO by TV Guide's trial counsel Stuart Yothers |
| | License from TVGO LLC to TVGO Inc. |
| 10/12/2005 | TV Guide files this litigation |

## B.    The Damages At Issue.

*Lost Profits Damages:* Plaintiff TV Guide seeks two categories of lost profits damages beginning October 6, 2005, the date the '078 patent was simultaneously assigned from Index Systems to TVGO LLC and licensed from TVGO LLC to TVGO Inc: (1) lost profits "due to lost advertising revenues"; and (2) "lost royalties payable to TV Guide Online, Inc." from Yahoo!, a licensee to the '078 patent." Velltturo Rpt. at 4 (A554). TMS's Motion for Partial Summary Judgment related to lost profit damages concerns the second category. D.I. 213.

*Pre-Suit Reasonable Royalty Damages:* TV Guide seeks only a reasonable royalty from April 29, 2005 (the alleged date of actual notice triggering damages) to October 5, 2005, conceding, as it must, that "lost profits damages are not warranted during this period" when

2

Index Systems owned the '078 patent. Vellturo Rpt. at 4 n.5 (A554). A patent holding company such as Index Systems is not entitled to lost profits. *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004) (emphasis added). TVGO LLC likewise is not entitled to lost profits because it too is only a patent holding company. 10/18/06 Armaly Dep. at 153:20-23 (C27). TMS's Motion for Summary Judgment Barring Pre-Suit Damages covers the entire period in which TV Guide claims reasonable royalty damages because Gemstar engineered the assignment from Index Systems to TVGO LLC, and license from TVGO LLC to TVGO Inc., immediately before filing suit. TMS's motion is based on the failure of the patent owner (then Index Systems) to provide actual notice of infringement of the '078 patent within the meaning of 35 U.S.C. § 287. *See* D.I. 209.

        C.      **TMS's Motion To Dismiss TV Guide Online, Inc. For Lack Of Standing.**

        As a threshold matter, TV Guide is not entitled to any lost profits, let alone "lost royalties" from the Yahoo! license, because TVGO Inc. lacks standing to sue and TVGO LLC, as a patent holding company, is not entitled to lost profits. As explained in TMS's pending Motion to Dismiss Plaintiff TV Guide Online, Inc. for Lack of Standing, D.I. 146, the TVGO LLC/Inc. assignment-license-allocation structure was engineered on the eve of this litigation to manufacture a lost profits claim in recognition of the fact that Index Systems could not get lost profits because it is a patent holding company.

                                    **REDACTED**

                                    TMS's Motion to Dismiss should be determined as a threshold matter because, if it is granted, the Motion for Summary Judgment Barring Lost Profits will be moot.

        At the time Gemstar acquired the '078 patent from the named inventor—via an assignment to Index Systems, 4/13/98 Record of Assign. (A124-A126)—Gemstar and TV Guide

                                          3

(then Prevue) were competitors enmeshed in patent and antitrust litigation on other patents.[1] After Gemstar merged with TV Guide in 2000, Gemstar did nothing to transfer any interest in the '078 patent to TVGO Inc., despite TV Guide's already-existing tvguide.com website (which allegedly practices the '078 patent) and Gemstar's ongoing licensing of its patent portfolio, including the '078 patent. Only five years later, on the eve of filing this suit, did Gemstar: (1) incorporate TVGO LLC **REDACTED** Del. Sec. of State Record (A128-129) and 10/18/06 Armaly Dep. at 153:20-154:2 (C27-C28); (2) assign the patent from Index Systems to TVGO LLC, 10/6/05 Assignment to TV Guide (A127); and (3)

**REDACTED** Regardless of any business reasons Gemstar had for structuring the assignment and license this way, the law is clear that Gemstar cannot use this structure to manufacture a lost profits claim.

This would not be the first time Gemstar's licensing schemes surrounding the '078 patent family have disqualified potential patent infringement damages. In the Gemstar MDL proceedings, involving several Levine patents from the '078 patent family, the District Court for the Northern District of Georgia granted a motion for summary judgment that Gemstar Development Corporation lacked standing to assert the Levine '713 patent, the ultimate parent of the '078 patent. *See* 6/10/03 Order Granting Motion for Summary Judgment that Gemstar Lacks Standing to Enforce '713 Patent, *In Re Gemstar Dev. Corp. Patent Litig.*, MDL-1274-WBH (N.D. Ga.) (C11-C17) ("Gemstar MDL Order").[2] Both the '078 and '713 patents were assigned by the same named inventor to Index Systems on January 6, 1998. 4/13/98 Record of Assign.

---

[1]　*Prevue Interactive, Inc. v. Starsight Telecast, Inc.*, 93-CV-934 (N.D. Okla.), *Gemstar Dev. Corp. v. Prevue Networks Inc.*, 98-CV-20778 (N.D. Cal.) transferred to *Gemstar Dev. Corp. v. Prevue Networks, Inc.*, 99-CV-127 (N.D. Okla.).

[2]　The court also granted the unopposed motion for judgment as to "the Gemstar counterclaimants" Gemstar-TV Guide International, Inc., TV Guide, Inc. and Starsight Telecast, Inc. for lack of standing. *Id.*

4

(A124-A126).  In the MDL action, the court held the January 6, 1998, assignment of the '713

patent to Index Systems was invalid in light of an earlier assignment, and that Gemstar had

improperly split up ownership of the patent.  The court also rejected Gemstar's attempt to add

Index Systems as a party to cure the defect in standing.  Gemstar MDL Order (C11-C17)  TVGO

Inc. likewise should be dismissed for lack of standing to assert the '078 patent.

**D.    Gemstar's Patent Misuse.**

TV Guide uses Gemstar's licensing negotiations with TMS and Yahoo! as the basis for

millions of dollars in damages.  In support of its damages claim, TV Guide relies on the same

events, evidence, and witnesses at issue in TMS's patent misuse claim, demonstrating that the

damages issues in this case are inextricably intertwined with TMS's patent misuse claim and

should be tried together.[3]  In the event the Court denies any of these motions or TMS's motion to

dismiss, TMS may move to bifurcate damages for trial with misuse so that there would be (1)

first a trial on any invalidity and/or infringement issues that survive summary judgment and then

(2) a separate trial on damages (in the event of an infringement verdict) and patent misuse.

TMS's patent misuse counterclaim would survive a judgment of non-infringement.

**III.    TV GUIDE IS NOT ENTITLED TO "LOST ROYALTIES" FROM THE YAHOO! LICENSE.**

There are two key points to remember with regard to TV Guide's claim for lost royalties

from the Yahoo! license agreement.  *First*, the question of whether TV Guide is entitled to these

"lost royalties," a form of lost profits, is a question of law.  *Poly-America*, 383 F.3d at 1311.

---

[3]    TMS's counterclaim of patent misuse alleges, in part: "Further, Gemstar conditioned its offer to license the '078 patent and others to TMS on a similar covenant not-to-assert.  Specifically, on June 16, 2005 Gemstar sent TMS a proposal with respect to a license under Gemstar's patent portfolio for TMS' online IPGs, including the '078 patent.  The licensing terms proposed by Gemstar were unacceptable because, among other reasons, the proposed licensing rates were exorbitant and as a condition to any license under Gemstar's patents Gemstar said TMS had to agree to covenant not to assert TMS' interactive program guide patents against Gemstar interactive program guides provided by Gemstar or its customers."  D.I. 6, TMS's Answer, Counterclaim Count I at ¶ 11.

("Whether lost profits are legally compensable in a particular situation is a question of law…").
As such, it is appropriate for resolution on summary judgment. *Second*, it is TV Guide's burden
to prove it is entitled to these damages. *King Instruments Corp. v. Perego*, 65 F.3d 941, 952
(Fed. Cir. 1995) ("The patent owner bears the burden to present evidence sufficient to show a
reasonable probability that it would have made the asserted profits absent infringement.").

In its opening brief, TMS established that: (1) as a matter of law, TV Guide cannot prove
that it is legally entitled to these damages; and (2) even if TV Guide were legally entitled to this
form of damages, TV Guide has not met its burden to establish these damages with the requisite
degree of certainty. In response, TV Guide failed to refute any of the numerous reasons for
judgment as a matter of law that this is not a legally compensable form of damages and
confirmed that the "lost royalties" claim advanced by its paid expert is a house of cards.

### A.    TV Guide's "Lost Royalties" Claim Is Not Legally Compensable.

As explained above, TMS's Opening Brief pointed out that "[w]hether lost profits are
legally compensable in a particular situation is *a question of law*." *Poly-America,* 383 F.3d at
1311 (emphasis added). TV Guide's response confirms that lost profits in the form of "lost
royalties" for the Yahoo! license are not legally compensable as a matter of law.

It is black-letter law that a patent holding company that does not practice the patent is not
entitled to lost profits. *See, e.g., Herbert v. Lisle Corp.*, 99 F.3d 1109, 1119 (Fed. Cir. 1996)
("When the patentee does not seek to make and sell the invention, lost profits are not an
appropriate measure of damages."); *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1445 (Fed. Cir.
1990) ("Because Trell did not sell its invention in the United States, he could not seek damages
on the basis of lost profits."); *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*,
895 F.2d 1403, 1406 n.2 (Fed. Cir. 1990) ("Because Lindemann did not compete in the sale of its
invention in the United States, it did not, as it could not, seek damages on the basis of lost

6

profits."); John M. Skenyon et al., Patent Damages Law & Practice, § 7:2 (2003) ("[P]atent

owners that do not practice their patents, such as holding companies, must settle for a reasonable

royalty."). In *Poly-America*, the Federal Circuit explicitly addressed how "separating the owner

of the patent from the seller of the patented product" affects patent damages:

> While we do not speculate concerning the benefits that the two companies reap
> from dividing their operations and separating the owner of the patent from the
> seller of the patented product, *[the holding company and licensee] may not enjoy*
> *the advantages of their separate corporate structure and, at the same time, avoid*
> *the consequential limitations of that structure…*

*Poly-America*, 383 F.3d at 1311 (emphasis added). Acknowledging this point, TV Guide does

not claim lost profits during the period when the holding company Index Systems owned the

'078 patent. Vellturo Rpt. at 4 n.5 (A554) ("lost profits damages are not warranted during this

period.").

TV Guide attempted to manufacture lost royalties right before it filed this suit by:

forming a new holding company **REDACTED** (TVGO LLC); transferring the patent

to that company; and then

**REDACTED**

The Federal Circuit forbids

manufacturing lost profits claims:

> Although parties to a lawsuit may allocate the disposition of infringement
> damages between themselves, as they appear to have done here, *they cannot*
> *create lost profits for a patentee if there are none.* Awarding lost profits to Poly-
> America on the basis of its private arrangement with Poly-Flex would
> synthetically create lost profits for Poly-America, when it may not have suffered
> any, to the detriment of [the defendant].

*Poly-America*, 383 F.3d at 1311-12; *see also Rite-Hite Corp v. Kelley Co., Inc.,* 56 F.3d 1538,

1552-53 (Fed. Cir. 1995) (en banc) (noting purported exclusivity amendment to licenses was

made on the "eve of litigation" in finding licensees non-exclusive and reversing lost profits

award). In *Poly-America*, Poly-Flex (corresponding to TVGO Inc. here) had the right to

7

sublicense and the right to enforce the patent for past damages, but the court found it to be a "non-exclusive" licensee for purposes of lost profits.   Moreover, *Poly-America* defeats

**REDACTED**

The court specifically addressed a holding company and licensee's "private arrangement" to "allocate" funds (in that case, the licensee's patent infringement damages; here,

**REDACTED**                    ) and found that it "would synthetically create lost profits."

383 F.3d at 1311-12.  As a matter of law, therefore, TVGO Inc. cannot recover "lost royalties"

**REDACTED**

This principle is related to TMS's pending Motion to Dismiss TVGO Inc. for lack of standing.  TMS's briefs supporting that motion establish why TVGO Inc. is not an exclusive licensee for standing purposes and should be dismissed.  If TMS's motion to dismiss is granted, this motion is rendered moot.

**B.     TV Guide's "Lost Royalties" Claim Is Purely Speculative.**

Section D.4 of TV Guide's Answering Brief evidences a fundamental misunderstanding by TV Guide regarding the nature of TMS's motion.  D.I. 231 at 23-27.  For purposes of this motion, TMS is not disputing the facts as stated by TV Guide's expert, Dr. Vellturo.  Rather, TMS argues these facts are legally insufficient to prove lost profits because they do not constitute "sound economic proof" of a reasonable probability that TV Guide would have made the claimed lost royalties but-for TMS's alleged infringement.  *See Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1383 (Fed. Cir. 2002).  As the Federal Circuit has expressly stated: "An award of lost profits *may not be speculative.*" *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993).  Yet all the evidence that TV Guide has presented—both through its expert's testimony and in response to TMS's motion—is a list of speculative assumptions that cannot, as a matter of law, support its claim for lost royalties.

8

An example of the purely speculative nature of the evidence TV Guide presents is the

extended quote from Dr. Vellturo's testimony:

> *I don't know the particulars.* As I said, from a, from an economic standpoint, the
> value of the license to them would be somewhat more than what they paid. *That
> number could be a small number. It could be a very large number.* Based on
> Yahoo's position in the marketplace at that time, I would have expected they
> would be a fairly -- they would have been in a position to be a fairly effective
> negotiator in terms of retaining a significant part of the value associated with the
> agreement above and beyond the payments they would have made.
>
> *Now, whether that number is 20 percent or 50 percent or a hundred
> percent, I don't have any specific knowledge of that,* but we observe Yahoo's
> position in the marketplace at this time in terms of the amount of traffic that
> originated into the internet though the Yahoo portal, the amount of activity that
> individuals were undertaking at Yahoo, and at this time period Yahoo would have
> been one of the very top sites, in terms of the principal access point or portal that
> individuals used when getting onto the internet.

Vellturo Dep. at 123:19-124:15 (A646) (quoted at D.I. 231, TV Guide Damages Resp. Br. at 24-

25). Whether these uncertainties mean TV Guide's estimate is conservative or overstated is

irrelevant. TV Guide must state with a reasonable degree of certainty the amount of damages it

suffered. By the testimony of its own expert, that certainty does not exist.

### C.    TV Guide Cannot Show Causation Or Forseeability As A Matter of Law.

Even if it were appropriate to manufacture a lost profits claim for purposes of litigation,

TV Guide cannot meet the rigorous causation and foreseeability standards for lost profits. *See*

D.I. 213, TMS Lost Profits Br. at 15-19. Grasping at straws, TV Guide characterizes the alleged

infringement as a tort for its foreseeability argument and appeals to the Court's logic and

common sense to meet its causation burden. Neither approach can avoid the causation and

foreseeability requirements.

*First*, the tort case TV Guide cites does not apply to damages—it deals with the personal

liability of corporate officers for patent infringement. *Second*, the *Rite-Hite* case that both TMS

and TV Guide quote for its reference to logic and common sense expressly balanced the patent

9

statute, on the one hand, with the common law general principle that considers common sense and logic, on the other hand, to conclude that lost profits requires "reasonable, objective foreseeability." *Rite-Hite Corp.*, 56 F.3d at 1552-53. It would defy common sense and logic to award unforeseeable lost profits. Common sense and logic are components of foreseeability, not a substitute for evidence of "but for" causation, as TV Guide proposes.

        1.    TV Guide Cannot Establish A Causal Relationship Between TMS's Alleged Infringement, The '078 Patent, And The Yahoo! License.

    For causation, TV Guide must show the alleged lost profits are causally connected to the alleged infringement—*i.e.*, that "but for" the infringement, TVGO Inc. would have made the "lost royalties." *See, e.g., Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999) ("To recover lost profits, the patent owner must show causation in fact,..."). TMS's opening brief explained that TV Guide has no evidence of causation sufficient to meet its burden of proof. TV Guide's response appeals only to "common sense and logic"—it does not offer any such proof.

    TV Guide argues "[t]he causal relationship between infringement and lost royalties is also recognized in established case law." D.I. 231, TV Guide Damages Resp. Br. at 20. But this does not respond to TMS's argument.[4] As TMS explained in its Opening Brief, the problem with TV Guide's damages claim is that TV Guide cannot show a sufficient relationship between

**REDACTED**

---

[4]    TV Guide's argument also misrepresents the cases it cites. The three cases do not address "lost royalties" of the type TV Guide seeks here; rather, they all concern the reasonable (or established) royalty rate where the patent owner does not practice the patent and therefore is not entitled to lost profits. They do not support granting lost profits based on alleged lost royalties from third parties. TV Guide's quoted passages from these cases concern the point that the third-party license rates may have been artificially lower than the reasonable royalty rate due to the infringement, justifying a higher reasonable royalty rate, but do not even suggest that the patentee may recover "lost royalties" due to the lower rates the third parties paid. Notably, these cases all found insufficient evidence that infringement caused lower rates.

10

**REDACTED**

*See* D.I. 213, TMS Lost Profits Br. at 17-18. There must be some connection between the allegedly infringed patent and the lost profits to satisfy the causation requirement. *See Rite-Hite*, 56 F.3d at 1546 ("... the 'test' for compensability of damages under § 284 is not solely a 'but for' test in the sense that an infringer must compensate a patentee for any and all damages that proceed from the act of patent infringement. Nothwithstanding the broad language of § 284, judicial relief cannot redress every conceivable harm that can be traced to an alleged wrongdoing.").

**REDACTED**

Vellturo Dep. at 138:9-139:17 (A648), 147:11-24 (A649), 151:15-152:7 (A649.1). Thus TV Guide has failed to meet its burden to prove that the lost royalties damages it claims were caused by TMS's alleged infringement.

     2.     <u>TV Guide Cannot Prove The Alleged Lost Yahoo! Royalties Were Foreseeable.</u>

TV Guide's claim also fails to meet the "foreseeability" requirement of a lost profits claim as a matter of law. *See Grain Processing Corp.*, 185 F.3d at 1349 ("Full compensation includes any foreseeable lost profits the patent owner can prove."). In order to satisfy the foreseeability requirement raised on summary judgment, TV Guide departs from its expert's theory and analysis, and instead points to the

**REDACTED**

11

**REDACTED**

*See* D.I. 213, TV Guide

Damages Resp. Br. at 18-19.

As discussed in more detail below, Gemstar made no specific charge of infringement regarding the '078 patent and Zap2it.com at the April Meeting, so TMS had no reason to "foresee" that it would be liable for lost royalties damages allegedly attributable to infringement of the '078 patent in future litigation. ',

**REDACTED**

As a matter of law, in that context TV Guide cannot meet its burden to show foreseeability.

12

IV.    **BINDING FEDERAL CIRCUIT PRECEDENT REQUIRES SUMMARY JUDGMENT OF NO PRE-SUIT DAMAGES.**

For two independent reasons, the April 2005 Gemstar/TMS meeting did not constitute actual notice to trigger damages under 35 U.S.C.§ 287(a) as a matter of law: (1) it did not inform TMS of the '078 patent owner's identity (then Index Systems); and (2) it did not include a specific charge of infringement by a specific product. *Lans* and *Amsted*, the leading Federal Circuit cases for these two issues, respectively, militate judgment as a matter of law of no pre-suit damages. *Lans v. Digital Equip. Corp.*, 252 F.3d 1320 (Fed. Cir. 2001); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178 (Fed. Cir. 1994).

A.    *Lans* **Precludes Pre-Suit Damages Because TMS Did Not Have Notice Of The Patent Owner's Identity.**

It is uncontested that at the April 2005 meeting Gemstar did not inform TMS of the '078 patent owner's identity. *See* Licensing Pres., at Slide 9 (A224). Although TV Guide contends that Mr. Armaly attended this meeting "on behalf of Index Systems," it presents no evidence— and does not even try to argue—that Gemstar informed TMS that Mr. Armaly was doing so. ⁻

**REDACTED**                                        *See* Licensing Pres. (A216-

**REDACTED**

TMS00548242-25 (C24-C25).

That Gemstar did not ever identify to TMS the actual assignee of the '078 patent is not

**REDACTED**

4/22/05 Email from M. Ford-Levine to B. Needleman (C18-C20). Even if TMS looked up the

13

'078 patent, it would not have identified the true owner of the '078 patent at the time of the April

Meeting because the face of the patent identifies Gemstar Development Corporation, not Index

Systems, as the assignee. '078 patent (A1). While the case law puts the duty of identifying the

patent owner squarely on the owner and does not impose a duty to search assignment records,

Gemstar's tactics surrounding assignment and licensing of the '713 and '078 patents demonstrate

why any such duty would be problematic.

     *Lans* established the rule that "the actual notice requirement of § 287(a) demands notice

of the patentee's identity as well as notice of infringement," and, thus, "notice from someone

closely associated with the patentee does not satisfy § 287(a)." *Lans*, 252 F.3d at 1327. The

court explained that it was merely applying the rule from *Amsted*, discussed below, as follows:

"This court thus reiterates that actual notice under § 287(a) 'must be *an affirmative act on the

part of the patentee* which informs the defendant of infringement.'" *Id.* at 1327-28 (quoting

*Amsted*, 24 F.3d at 187) (emphasis added).

     TV Guide's attempt to distinguish *Lans* fails on several levels. TV Guide provides a

block quote from *Lans* listing several examples of how knowledge of the patentee's identity can

be important. TV Guide relies entirely on the example that "without knowledge of the patentee,

an alleged infringer may lose the chance to negotiate a valid license." D.I. 231, TV Guide

Damages Resp. Br. at 17 (quoting *Lans*, 252 F.3d at 1327). TV Guide argues that its admitted

failure to notify TMS of the patent owner's identity does not preclude pre-suit damages because

Mr. Armaly was offering a license and had authority to license the '078 patent "on behalf of

Index Systems." D.I. 232, Armaly Decl. at ¶ 4. These facts are immaterial and consequently

cannot create a genuine issue of material fact, as a matter of law, for several reasons.

*First*, the fact that Mr. Lans mistakenly stated he was the patent owner, while Mr. Armaly was silent as to the actual owner of the '078 patent, does not distinguish this situation from *Lans*. The notice from Mr. Lans did not constitute notice under § 287 because it did not identify the holding company Uniboard. Similarly, the notice from Gemstar does not constitute notice under § 287 because Mr. Armaly and Gemstar were silent regarding the holding company Index Systems.

The Federal Circuit has admonished that companies who structure patent ownership in a holding company must suffer any negative consequences for patent damages:

> Poly-America [the patent owner] and Poly-Flex [the seller of the patented product] have a common parent corporation and are not simply divisions of a single corporation, but are separate corporate entities. ***Their parent has arranged their corporate identities and functions to suit its own goals and purposes, but it must take the benefits with the burdens.*** While we do not speculate concerning the benefits that the two companies reap from dividing their operations and separating the owner of the patent from the seller of the patented product, ***Poly-America and Poly-Flex may not enjoy the advantages of their separate corporate structure and, at the same time, avoid the consequential limitations of that structure*** — in this case, the inability of the patent holder to claim the lost profits of its non-exclusive licensee.

*Poly-America*, 383 F.3d at 1311 (emphasis added). *Poly-America* not only precludes a patent holding company (like TVGO LLC) and a **REDACTED** (like TVGO Inc., the subject of TMS's pending Motion to Dismiss TVGO Inc. for lack of standing) from recovering lost profits, but teaches that the same lesson applies in other damages contexts.

*Second*, any factual distinction TV Guide makes regarding *Lans* is irrelevant because the passage TV Guide relies on merely provided examples of the court's rationale for the rule. The Federal Circuit in no way provided these as requirements for precluding pre-suit damages. *Lans* explicitly set out a bright-line rule because "a looser rule would both frustrate the purpose of notification and present difficult, if not unworkable, enforcement problems," as follows:

15

> Contrary to Mr. Lans's contentions, notice from someone closely associated with
> the patentee does not satisfy § 287(a). After all, only the patentee has authority
> to grant licenses or accept design changes to facilitate the purposes of the
> notification requirement. Moreover, a looser notification rule would present
> notable enforcement problems. Courts would have to decide the degree of
> association sufficient to satisfy the rule. Must the notifying party control the
> patentee, or simply have an interest in the patentee? Indeed, how much control or
> interest would suffice? Agency principles would not likely ease this problem
> because the notifying party would not likely even purport to act on behalf of the
> patentee.

*Lans*, 252 F.3d at 1327. In arguing that because Mr. Armaly was at the April Meeting "on behalf

of Index Systems" (unbeknownst to TMS), TV Guide advocates the same "looser notification

rule" that the court unequivocally rejected.

   *Third*, TV Guide selectively quotes *Lans*, omitting the following sentence: "In sum,

knowledge of the patentee's identity facilitates avoidance of infringement with design changes,

negotiations for licenses, and even early resolution of rights in a declaratory judgment

proceeding." *Lans*, 252 F.3d at 1327. The *Amsted* court likewise referred to the declaratory

judgment example when it established the rule requiring a specific charge of infringement by a

specific product: "Just as such letters [without an infringement charge] tend not to be threats

sufficient to justify a declaratory judgment action, they also are not charges of infringement for

'notice' purposes." *Amsted*, 24 F.3d at 187. Gemstar's April 2005 presentation to TMS presents

this same problem.

## REDACTED

                                 But again, for summary judgment purposes, TMS is not

required to establish undisputed facts that it could not file a declaratory judgment action, or

negotiate a license, or consult about design changes. The burden of proof is on TV Guide to

show that it is entitled to pre-suit damages, and the admitted fact that TV Guide did not identify

to TMS who the owner of the '078 patent alone requires judgment as a matter of law barring pre-suit damages.

**B.**    *Amsted* Precludes Pre-Suit Damages Because Gemstar Did Not Make A Specific Charge Of Infringement By A Specific Product.

The April 2005 Gemstar/TMS meeting did not include a specific charge of (1) infringement (2) of the '078 patent (3) by Zap2it.com. The most TV Guide can muster is that the meeting included explaining that TMS "needed" or "required" a license for Zap2It.com and the '078 patent was the first of 13 "exemplary patents" discussed during the meeting. D.I. 231, TV Guide Damages Resp. Br. at 16. As a matter of law, that does not constitute a specific charge of infringement connecting the '078 patent with Zap2It.com, particularly where

**REDACTED**

*See* Licensing Presentation (A216-A237). Even with all of TV Guide's evidence taken as true and all reasonable inferences drawn in its favor, TV Guide cannot create a genuine issue of material fact to defeat summary judgment.

TV Guide attempts to evade this problem by submitting a Declaration by Mr. Armaly in support of its response brief. D.I. 232. Mr. Armaly's Declaration does not create a genuine issue of material fact on this point. According to his Declaration, '

**REDACTED**

17

**REDACTED**

The Third Circuit has addressed the "sham affidavit" doctrine and instructed "if it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007); *see also Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004) ("[A] party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict."); *Martin v. Merrell Dow Pharms., Inc.*, 851 F.2d 703, 706 (3d Cir. 1988) ("[T]he objective of summary judgment would be seriously impaired if the district court were not free to disregard the conflicting affidavit."); *New R.R. Mfg., LLC v. Vermeer Mfg. Co.*, 298 F.3d 1290 (Fed. Cir. 2002) (affirming district court decision finding that an inventor's declarations which contradicted prior deposition, could not create a genuine issue of material fact to defeat a motion for summary judgment of invalidity of the inventor's patent).

*Amsted* controls here and compels a finding of no actual notice in these circumstances. In *Amsted* the court overturned a jury verdict and reversed the district court's denial of judgment as a matter of law regarding actual notice because it "conclude[d] *as a matter of law* that its 1986 letter ... was not notice within the meaning of § 287," and found that the patentee "did not give

18

[the defendant] notice...until its 1989 letter, which specifically charged [the defendant] with infringement and specified an infringing device." *Amsted*, 24 F.3d at 187 (emphasis added).

In *Amsted*, the 1986 letter did not constitute notice because, despite identifying the patent and warning against infringement with reference to the patent owner's product, "[i]t did not explicitly charge [the defendant] with infringement of Amsted's '269 patent." *Id.* Rather, "the 1986 letter was merely informational, of the kind that companies often send to others without intending to charge infringement. Just as such letters tend not to be threats sufficient to justify a declaratory judgment action, they also are not charges of infringement for 'notice' purposes." *Id.* at 187. In contrast, the 1989 letter that "specifically charged [the defendant] with infringement and specified an infringing device" stated: "On January 10, 1986 I wrote to you and advised of AMSTED Industries' ownership and enforcement policy respecting the ['269 patent].... In our view [your center plate, a photocopy of which is attached,] or the intended application thereof to a freight car infringes the ['269 patent]." *Id.* at 187, 186 (alterations in original).

Other courts have similarly held that a general licensing discussion does not provide actual notice of infringement sufficient to trigger the damages period. Judge Jordan granted partial summary judgment limiting damages where the alleged notice was a letter including copies of both patents-in-suit for the defendant's "review and stated that [the patentee] 'would like to arrange a meeting within the next few weeks to discuss these patents and our license terms.'" *Philips Electronics N.A. Corp. v. Contec Corp.*, 312 F. Supp. 2d 649, 652 (D. Del. 2004). The court held the letter met neither the "specific charge of infringement" nor the "by a specific product" requirements for notice. *Id.* Another court likewise granted judgment barring pre-suit damages where "Amazon admits to receiving a proposal to license" the patent-in-suit and "Soverain has shown [the parties] met to discuss a possible licensing agreement," but

19

"[w]ithout more, a meeting regarding a licensing agreement does not raise an issue as to whether a patentee gave actual notice of alleged infringement. Soverain has not alleged any facts that might show this was anything more than a licensing meeting. Accordingly, Soverain has not raised a material fact issue that defeats summary judgment as to actual notice." *Soverain Software LLC v. Amazon.com, Inc.*, 383 F. Supp. 2d 904, 910-11 (E.D. Tex. 2005).

As detailed in TMS's Opening Brief, the April 2005 meeting was nothing more than a licensing and business meeting between Gemstar and TMS. D.I. 209, TMS Pre-Suit Damages Br. at 8-10. It did not include a specific charge that TMS's Zap2it.com website infringed the '078 patent.

**REDACTED**

Because the patentee did not explicitly charge TMS with infringement of the '078 patent, *see Amsted*, 24 F.3d at 187, TV Guide is not entitled to damages for the period prior to the filing of this Complaint.

## V.    CONCLUSION

For the foregoing reasons, TMS respectfully requests that this Court grant partial summary judgment (1) excluding TV Guide's lost profits claims with respect to the Yahoo! license and (2) barring TV Guide from recovering damages for the period prior to October 12, 2005, the date TV Guide filed this suit.

Dated: December 21, 2007

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2969)
MORRIS JAMES LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800

Mark A. Pals, P.C.
Linda S. DeBruin, P.C.
Michael A. Parks
Laura A. Hepburn
Meredith Zinanni
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
312.861.2000

*Counsel for Defendant Tribune Media Services, Inc.*

21