IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TV GUIDE ONLINE, INC. and<br>TV GUIDE ONLINE, LLC,<br><br>           Plaintiffs,<br><br>    v.<br><br>TRIBUNE MEDIA SERVICES,<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civ. No. 05-725-SLR/LPS<br>)<br>)   **REDACTED PUBLIC VERSION**<br>)<br>) |

**REPORT AND RECOMMENDATION CONCERNING
DEFENDANT TRIBUNE'S MOTION TO DISMISS
PLAINTIFF TV GUIDE ONLINE, INC. FOR LACK OF STANDING**

Introduction

This is a patent infringement action. Plaintiffs TV Guide Online, LLC ("TVGL") and TV Guide Online, Inc. ("TVGI") have jointly sued Defendant Tribune Media Services, Inc. ("Tribune") for alleged infringement of United States Patent No. 5,988,078 ("the '078 patent"). (D.I. 1)[1] Plaintiff TVGL is the owner by assignment of the '078 patent. (D.I. 1 ¶ 3) Plaintiff TVGI is, according to the Complaint, "the exclusive licensee of the '078 patent, with the right to bring suit and to recover damages for past infringement." (D.I. 1 ¶ 4)

TVGI operates the internet website www.tvguide.com, providing media content and tools for television viewers. This website includes a television listings section that enables a viewer to

---

[1] The '078 patent was granted on November 23, 1999 and is entitled "Method and Apparatus for Receiving Customized Television Programming Information By Transmitting Geographic Location to a Service Provider Through a Wide-Area Network." (D.I. 1 Ex. A) This technology permits a television viewer using a computer to obtain television programming information specific to that viewer's geographical location. (D.I. 1 ¶ 10)

obtain television programming information specific to the viewer's geographic location. (D.I. 1 ¶ 13)

Defendant Tribune operates the internet website www.Zap2It.com. (D.I. 1 ¶ 19) Using the Zap2It website, television viewers can obtain television programming information specific to their location. (D.I. 1 ¶ 20)

Tribune seeks to dismiss one of the two plaintiffs, TVGI, on the grounds that TVGI lacks standing to maintain an action for infringement of the '078 patent. According to Tribune, TVGI is not an exclusive licensee of the '078 patent, despite the Complaint's allegation to the contrary. Therefore, Tribune argues, this suit should proceed, if at all, with TVGL as the sole plaintiff.[2]

For the reasons explained below, I believe that TVGI is the "exclusive licensee" of the '078 patent as that term is appropriately understood. Therefore, TVGI has standing. Accordingly, I recommend that Tribune's motion to dismiss be denied.

Procedural Background

This action was filed on October 12, 2005 and initially assigned to the Honorable Kent A. Jordan. (D.I. 1) On November 20, 2006, Tribune filed its motion to dismiss Plaintiff TVGI. (D.I. 145) Upon Judge Jordan's elevation to the Third Circuit on December 15, 2006, the case was assigned to the "judicial vacancy" and referred to Magistrate Judge Mary Pat Thynge. (D.I. 158) By order dated December 3, 2007, the case was referred within the "judicial vacancy" to Magistrate Judge Leonard P. Stark. (D.I. 249) On February 1, 2008, the case was reassigned to

---

[2]While this may seem to be an esoteric dispute, in fact the consequences may be significant, as Tribune contends that Plaintiffs' claim for lost profits damages is contingent upon TVGI remaining a party in the case. (D.I. 162 at 1 n.1)

Judge Sue L. Robinson, who continued the referral to Magistrate Judge Stark. (D.I. 268)

Tribune's Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(1), Tribune has moved to dismiss Plaintiff TVGI for lack of subject matter jurisdiction. Specifically, Tribune argues that TVGI is a non-exclusive licensee of the patent-in-suit and, therefore, lacks standing. Tribune asserts two theories. First, Tribune notes that, in addition to TVGI, at least 19 other entities have licenses to the '078 patent (hereinafter the "additional licenses theory"). Second, Tribune claims that after TVGI obtained its purportedly "exclusive" license, the parent company of both Plaintiffs – Gemstar-TV Guide International, Inc. ("Gemstar") – issued a license to yet another third party: Company A. This establishes, according to Tribune, that TVGI does not actually control the issuance of new licenses (hereinafter the "Company A theory").

In response, Plaintiffs rely on an October 6, 2005 License Agreement ("License Agreement"), pursuant to which TVGL granted TVGI "an exclusive license to the '078 patent, including the right to sue and recover for past infringement." (D.I. 146 Ex. 1 ¶ 1) With respect to the additional licenses theory, Plaintiffs explain that the other 19 licenses were issued before TVGI obtained its exclusive license, and cite to cases finding a license may be "exclusive" for standing purposes notwithstanding pre-existing nonexclusive licenses. With respect to the Company A theory, Plaintiffs have placed in the record evidence they claim demonstrates that TVGI (and not Gemstar) contributed the patent rights to the deal that resulted in Company A obtaining its license.

The Motion to Dismiss Should Be Denied

    A.    Legal Standard Governing Motions To Dismiss For Lack Of Standing

"A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter. Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007) (internal citations omitted); *see also Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995) ("The question of standing to sue is a jurisdictional one."). A court may grant a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

There are three requirements for Article III standing: (1) injury in fact, which means an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the challenged conduct, which means that the injury fairly can be traced to the challenged action of the defendant and has not resulted from the independent action of some third party not before the court; and (3) a likelihood that the injury will be redressed by a favorable decision, which means that the prospect of obtaining relief from the injury as a result of a favorable ruling is not too speculative. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

The party invoking federal jurisdiction has the burden to establish standing to sue. *Id.* at 561. Each of the three standing requirements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of

evidence required at the successive stages of the litigation." *Id.* "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (internal quotation marks omitted). "When ruling on motions to dismiss for lack of standing, federal courts may consider affidavits and other factual materials in the record." *Nat'l Ass'n of State Utility Consumer Advocates v. F.C.C.*, 457 F.3d 1238, 1251 (11th Cir. 2006), *cert. denied*, 128 S. Ct. 1119 (2008).

B.   Determining Whether A License Is "Exclusive"

The Federal Circuit has had frequent occasion to address when a licensee has standing to enforce a patent.[3] For example, in *Aspex Eyeware, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1340 (Fed. Cir. 2006), the Federal Circuit recently explained:

> The term 'patentee' encompasses 'not only the patentee to whom the patent was issued but also the successors in title to the patentee.' 35 U.S.C. § 100(d) (2000). A patentee may transfer title to a patent by assignment, and the assignee may be deemed the effective patentee under 35 U.S.C. § 281 for purposes of holding standing to sue another for patent infringement in its own name.
>
> While a licensee normally does not have standing to sue without joinder of the patentee, an exclusive license may be tantamount to an assignment for purposes of creating standing if it conveys to the licensee all substantial rights to the patent at issue. To determine whether an agreement to transfer rights to a patent at issue amounts to an assignment or a license, we must ascertain the intention of the parties and examine the substance of what was granted.

(Internal citations omitted)

The Federal Circuit has also stated, "The proprietary rights granted by any patent are the

---

[3] Decisions of the Federal Circuit Court of Appeals are binding on federal district courts in substantive matters concerning patent law. *See Broyhill Furniture Indus., Inc. v. Craftmaster Furniture Corp.*, 12 F.3d 1080, 1083 (Fed. Cir. 1993).

rights to exclude others from making, using or selling the invention in the United States." *Ortho Pharm. Corp. v. Genetics Institute, Inc.*, 52 F.3d 1026, 1031-32 (Fed. Cir. 1995). A party asserting that it has all substantial rights in the patent must produce a written instrument documenting the transfer of these proprietary rights. *See Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000). Analysis of the written instrument is crucial because the word "license" may, in practice, be applied to relationships ranging from a mere covenant not to sue the licensee for practicing the patent (i.e., a "bare license," which does not give the licensee standing to sue) to provision to the licensee of full and unencumbered control over all aspects of a patent and its enforcement. *See Ortho*, 52 F.3d at 1031-32.

"[I]t is the licensee's beneficial ownership of a right to prevent others from making, using or selling the patented technology that provides the foundation for . . . standing." *Id.* at 1032. Therefore, "[t]o be an exclusive licensee for standing purposes, a party must have received not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well." *Rite-Hite*, 56 F.3d at 1552.

    C.    <u>The License Agreement Intended To Create An Exclusive License</u>

Here the relevant written instrument is the October 6, 2005 License Agreement between TVGL and TVGI. Pursuant to the License Agreement, TVGL granted to TVGI "subject to pre-existing nonexclusive licenses, an exclusive license to the '078 patent, including the right to sue and recover for past infringement of the '078 patent and any and all causes of action and remedies, either legal and/or equitable, related thereto." (D.I. 146 Ex. 1 ¶ 1) The License Agreement also gives TVGI the power to institute and prosecute actions for infringement of the '078 patent that

6

occur after the date of the License Agreement. (*Id.* ¶ 4) Additionally, TVGI is given "the exclusive right under the '078 patent to grant sublicenses to others." (*Id.* ¶ 3) Finally, the License Agreement recites TVGI's "desire[] to obtain an exclusive license under the '078 patent" and three times refers to TVGI as receiving an "exclusive license" or being the "exclusive licensee." (*Id.* ¶¶ 1, 3-4)

I find that TVGL and TVGI intended that the License Agreement would provide TVGI with an "exclusive license" in the '078 patent. As noted above, the License Agreement gives TVGI the right to practice the '078 patent, the right to exclude others (except for pre-existing nonexclusive licensees) from practicing the '078 patent, and the right to grant sublicenses. TVGL did not retain any rights to practice the patent, initiate litigation, or grant sublicenses.[4]

D.    The Additional Licenses Theory

In pressing its additional licenses theory, Tribune argues that, notwithstanding the terms of the License Agreement, the existence of at least 19 other licenses in the '078 patent means that TVGL could not grant TVGI an "exclusive license," even if this was the intent of both Plaintiffs. As the License Agreement expressly states, the "exclusive license" being granted to TVGI is "subject to pre-existing nonexclusive licenses." (D.I. 146 Ex. 1 ¶ 1)

The parties are in agreement that at least 19 licenses were issued prior to execution of the License Agreement. There has been no suggestion that any of these prior licenses were intended to be or in fact were "exclusive" licenses. There is no indication that any of the other licenses granted rights to initiate or participate in infringement litigation or to grant sublicenses; nor did

---

[4]TVGL did, however, agree to "join as party plaintiff in such [infringement] suits" if required. (D.I. 146 Ex. 1 ¶ 4)

TVGL retain any of these rights for itself.

In these circumstances, the prior existence of nonexclusive licenses does not prevent a patentee from granting an "exclusive license" going forward. *See, e.g., Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1129, 1131 (Fed. Cir. 1995) (finding standing in party holding "exclusive" license despite existence of eight prior nonexclusive licenses); *Intuitive Surgical, Inc. v. Computer Motion, Inc.*, 214 F. Supp.2d 433, 436 n.4, 440 (D. Del. 2002) (finding license to be exclusive even though patentee had previously granted 24 nonexclusive licenses); *Solarex Corp. v. ARCO Solar, Inc.*, 805 F. Supp. 252, 258 (D. Del. 1992) ("A license may be exclusive even though the owner had granted . . . [four] non-exclusive license[s] prior to the exclusive license."); *see also Sigma-Aldrich, Inc. v. Open Biosystems, Inc.*, 2007 WL 1993439, at *8 (E.D. Mo. 2007) ("[O]btaining an exclusive license subject to certain defined preexisting uses is comparable to purchasing real estate subject to an easement. The new owner knowingly acquires the property subject to certain reserved rights, but has the exclusive right going forward to exclude anyone else from using the property in the exclusive field of use.").[5]

Accordingly, I conclude that Tribune's additional licenses theory does not defeat TVGI's standing to maintain this litigation.

E.  The Company A Theory

Subsequent to execution of the License Agreement between TVGL and TVGI, Gemstar, the parent of both Plaintiffs, executed an agreement with Company A. The "TV Guide-Company

---

[5]The cases on which Tribune principally relies are readily distinguished. In *Ortho*, 52 F.3d at 1033, the Federal Circuit found a licensee to lack standing because the patentee retained the right to issue additional licenses without the licensee's consent. In *Rite Hite*, 56 F.3d at 1553, a licensee was found to lack standing both because the patentee retained the right to issue additional licenses and because the licensee had merely obtained exclusive sales territories.

A License Agreement" ("Company A Agreement"), effective as of **[REDACTED]** 2006, grants Company A a nonexclusive license in the '078 patent. (D.I. 152 Ex. 1) Based on the Company A Agreement, Tribune's Company A theory is that it is Gemstar – and not TVGI – that actually controls the '078 patent. Therefore, according to Tribune, TVGI is not, in fact, an exclusive licensee.

In support of the Company A theory, Tribune insists that TVGI is not a "party" to the Company A Agreement. In making this argument, Tribune emphasizes: (i) the Company A Agreement preamble states the agreement "is made and entered into by and between" just Gemstar and Company A (D.I. 152 Ex. 1 at TG162614); (ii) the signature block for the non-Company A side of the transaction lists only "Gemstar-TV Guide International, Inc." (*Id.* at TG162640); and (iii) the signatory for the non-Company A side (Mike McKee), although formally holding the titles of Chief Operating Officer of both Gemstar and TVGI, has testified that his limited involvement with TVGI did not include anything relating to the Company A Agreement (D.I. 162 Ex. 1 at 13-14).

In response, the Plaintiffs assert that TVGI is a party to the Company A Agreement. They point out that the preamble defines "TV Guide" as Gemstar "together with all of its Subsidiaries" and states that "TV Guide" is "hereinafter sometimes . . . referred to as a '<u>Party</u>.'" (D.I. 152 Ex. 1 at TG162614) (emphasis in original) Also, the Company A Agreement has the effect of granting certain rights to all Gemstar subsidiaries (including TVGI) and imposing certain obligations on all such subsidiaries (again including TVGI), things which an agreement might only be able to do to entities that are "parties" to it. *See, e.g., id.* at TG162621 ¶ 2.1.2 (Company A granting certain licensing rights to "TV Guide," i.e. Gemstar and its subsidiaries); *id.* at TG162626 ¶ 3.4.2 ("TV

Guide," and therefore Gemstar subsidiaries including TVGI, making certain representations and warranties); *id.* at TG162632 ¶ 8.2 (same).

It is unnecessary to determine whether TVGI is a party to the Company A Agreement. This is because the record contains a declaration and deposition testimony of Samir Armaly, the Senior Vice President, Intellectual Property, for Gemstar and TVGI. In these documents, Armaly states that he participated in the negotiations of the Company A Agreement on behalf of TVGI as well as Gemstar. (D.I. 153) In his declaration, Armaly states that it was TVGI that "granted the nonexclusive, '078 patent license to Company A." (*Id.* ¶ 3) In his deposition, Armaly further explains that Gemstar is working on a mechanism for allocating a portion of the revenues from the Company A Agreement to TVGI, in recognition of the value TVGI contributed to the transaction in the form of the patent rights. (D.I. 152 Ex. 3 at 140-41, 148-49)[6]

In my view, the record, taken as a whole, including the definitive statements of Armaly as well as the admittedly more ambiguous indicators in the Company A Agreement, establishes that TVGI was, at minimum, a participant in the Company A transaction and exercised control over the '078 patent.[7] This is sufficient to satisfy Plaintiffs' burden at this point in the proceedings.

Accordingly, I conclude that Tribune's Company A theory does not defeat TVGI's standing

---

[6]Tribune observes that all payments under the Company A Agreement are made directly to Gemstar. (D.I. 162 at 5) Precisely whom Company A pays, and whether Company A is required to pay multiple Gemstar-related entities or just Gemstar, is irrelevant. To the extent the stream of payments has any significance, what matters is what happens to the monies after they are received by Gemstar. Armaly's statements support the Plaintiffs' assertion that a portion of the proceeds will be redirected to Gemstar's subsidiary, TVGI.

[7]TVGI has also been a participant in discussions about the '078 patent with Tribune. *See* Tribune's Answer (D.I. 6 ¶ 24) (Tribune "admit[ting] it met with TV Guide Online, Inc. and Gemstar . . . to discuss possible avenues for the companies to work together, and that the '078 patent was discussed during that meeting").

to maintain this litigation.

Recommended Disposition

For the reasons set forth above, I find that Plaintiff TVGI has met its burden of proving it has standing to maintain this patent infringement suit. Therefore, I recommend that Defendant Tribune's Motion to Dismiss be denied.

Dated: March 6, 2008
**[PUBLIC VERSION RELEASED MARCH 26, 2008]**

Honorable Leonard P. Stark
UNITED STATES MAGISTRATE JUDGE