# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **TV GUIDE ONLINE, INC. and**<br>**TV GUIDE ONLINE, LLC,** | ) )<br>) | |
| | ) | |
| **Plaintiffs and Counterclaim Defendants,** | ) | |
| | ) | **C.A. No.: 05-725-SLR/LPS** |
| v. | ) | |
| | ) | |
| **TRIBUNE MEDIA SERVICES, INC.,** | ) | **PUBLIC VERSION** |
| | ) | |
| **Defendant and Counterclaim Plaintiff.** | ) | |
| | ) | |

## TRIBUNE MEDIA SERVICES, INC.'S OBJECTIONS
## TO THE REPORT AND RECOMMENDATION CONCERNING
## DEFENDANT TRIBUNE'S MOTION TO DISMISS
## PLAINTIFF TV GUIDE ONLINE, INC. FOR LACK OF STANDING

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
302.888.6800
rherrmann@morrisjames.com

Mark A. Pals, P.C.
Linda S. DeBruin
Michael A. Parks
Laura A. Hepburn
Meredith Zinanni
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
312.861.2000

*Counsel for Defendant Tribune Media Services, Inc.*

Originally filed: March 27, 2008
Public version filed: April 3, 2008

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

BACKGROUND ............................................................................................................2

LEGAL STANDARDS ..................................................................................................6

    I.    Standard Of Review. ....................................................................................6
    II.    Legal Standards Governing Motions To Dismiss For Lack Of Standing And Determining Whether A Licensee Is "Exclusive." ...........................................7

ARGUMENT ..................................................................................................................8

    I.    The TVGI/TVGL License Does Not Meet The Legal Requirements Of An Exclusive License. ..................................................................................8
        A.    The Use Of The Phrase "Exclusive License" Is Not Enough To Create An Exclusive License. ....................................................9
        B.    The Rights To Sue And Sublicense Do Not Confer Standing On TVGI. ..................................................................................10
    II.    The Magistrate Judge Made Other Errors That Contributed To The Incorrect Legal Conclusion That TVGI Has Standing To Sue. .............................14
        A.    Mr. Armaly's Statements Relied On By The Magistrate Do Not Show That TVGI Has Control Over The Licensing Of The '078 Patent. ..............................................................................15
        B.    TMS' Answer Does Not Show That TVGI Has Standing. .........................18

CONCLUSION ............................................................................................................19

i

## TABLE OF AUTHORITIES

**Cases**

*ADE Corp. v. KLA-Tencor Corp.*,
    288 F. Supp. 2d 590 (D. Del. 2003) ................................................................. 6

*Carpet Group Int'l v. Oriental Rug Importers Assoc.*,
    227 F.3d 62 (3d Cir. 2000) ............................................................................... 7

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
    C.A. No. 07-187-JJF, 2007 WL 4565020 (D. Del. Dec. 20, 2007) ......................... passim

*Intellectual Property Development, Inc., v. TCI Cablevision of California, Inc.*,
    248 F.3d 1333 (Fed. Cir. 2001) ...................................................................... 9

*Klapper v. Commonwealth Realty Trust*,
    657 F. Supp. 948 (D. Del. 1987) .................................................................... 6

*MBIA Insurance Corp. v. Royal Indemnity Co.*,
    426 F.3d 204 (3d Cir. 2005) ...................................................................... 16, 17

*Mortensen v. First Federal Savings & Loan Assoc.*,
    549 F.2d 884 (3d Cir. 1977) ........................................................................... 7

*Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.*,
    52 F.3d 1026 (Fed. Cir. 1995) ....................................................................... 15

*Poly-America, L.P. v. GSE Lining Tech., Inc.*,
    383 F.3d 1303 (Fed. Cir. 2004) ............................................... 11, 12, 13, 14, 17

*Propat Int'l Corp. v. RPost, Inc.*,
    473 F.3d 1187 (Fed. Cir. 2007) ................................................................. passim

*Sicom Systems Ltd. v. Agilent Technologies, Inc.*,
    427 F.3d 971 (Fed. Cir. 2005) ....................................................................... 8

*Tufano v. One Toms Point Lane Corp.*,
    64 F. Supp. 2d 119 (E.D.N.Y. 1999) .............................................................. 6

*URS Corp. v. Lebanese Co. for the Development & Reconstruction of Beirut Central
    District SAL*,
    512 F. Supp. 2d 199 (D. Del. 2007) ............................................................... 7

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*,
    944 F.2d 870 (Fed. Cir. 1991) ....................................................................... 9

*Waterman v. Mackenzie*,
    138 U.S. 252 (1891) ..................................................................................... 9

**Statutes**

28 U.S.C. § 636(b)(1)(C) ............................................................................................................. 6

**Rules**

Fed. R. Civ. P. 72 ......................................................................................................................... 6

## INTRODUCTION

There currently are two plaintiffs in this case, TV Guide Online Inc. ("TVGI") and TV Guide Online LLC ("TVGL"). The issue here is whether TVGI has standing to be a plaintiff. This is an important issue because if TVGI is not in the case, plaintiffs have no basis to sustain their lost profits damages claims, which is the bulk of their requested damages in this case.

TVGI's only argument as to why it has standing to sue is that it claims to be the exclusive licensee to the sole patent-in-suit, U.S. Patent No. 5,988,078 ("the '078 patent"). Tribune Media Services, Inc. ("TMS") moved to dismiss TVGI because TVGI is ***not*** the exclusive licensee to the '078 patent and does not control licensing of the '078 patent to third parties. Rather, TVGI's parent company, Gemstar-TV Guide International, Inc. ("Gemstar"), controls licensing of the '078 patent, and in fact licensed the '078 patent to REDACTED during the pendency of this litigation. In Magistrate Judge Stark's Report and Recommendation Concerning Defendant Tribune's Motion to Dismiss Plaintiff TV Guide Online, Inc. for Lack of Standing (the "Report"), he found that TVGI is an exclusive licensee to the '078 patent with standing to sue. TMS objects to the Report for the following reasons:

- Case law that issued post-briefing on TMS' Motion to Dismiss confirms that the rights granted to TVGI do not constitute an exclusive license.

- The Magistrate Judge's reliance on the phrase "exclusive license" in the license agreement, rather than the substance of the rights granted to TVGI, was in error.

- The Magistrate Judge's conclusion that TVGI "was, at a minimum, a participant in the REDACTED transaction and exercised control over the '078 patent" is not supported by the evidence and is contrary to applicable law.

In the underlying briefs filed in 2006, TMS explained that because the rights in the '078 patent granted to TVGI were not sufficient to create an exclusive license, and because Gemstar controls the '078 patent and continues to license it to third parties, TVGI is not an exclusive licensee with standing to sue. Subsequent case law from the Federal Circuit and this Court that

issued post-briefing and that the Magistrate Judge therefore did not have the benefit of considering, further confirms that TVGI lacks the necessary rights in the '078 patent to be an exclusive licensee. Accordingly, TMS respectfully objects to the Report and asks the Court to dismiss TVGI for lack of standing.

## BACKGROUND

From the day it first issued until just days before this suit was filed, the '078 patent was owned by Index Systems, a wholly-owned subsidiary of Gemstar. Plaintiffs' Opposition to TMS' Motion to Dismiss ("MTD Opp. Br."), Ex. 3 at 150:13-151:4. Then, on September 28, 2005, plaintiff TVGL was incorporated          **REDACTED**          *Id.* at 153:20-23. Index Systems assigned the '078 patent to TVGL on October 6, 2005 (the "Assignment"). Exhibit 1, 10/6/05 '078 Patent Assignment from Index Systems to TVGL.[1]  Simultaneously, TVGL licensed the '078 patent to TVGI (the "License"). TMS' Opening Brief in Support of Its Motion to Dismiss ("MTD Open. Br."), Ex. 1. This lawsuit was filed on October 12, 2005. Complaint (D.I. 1). Plaintiffs claim over          **REDACTED**

as a result of TMS' alleged infringement. Exhibit 2, Vellturo Second Supp. Rpt. at 3-4.

The License states that TVGL grants to TVGI "an exclusive license to the '078 patent" but grants only the following rights to TVGI:

- The right "to sue and recover for past infringement of the '078 patent and any and all causes of action and remedies, either legal and/or equitable, related thereto" and "to institute and prosecute at its own expense actions for infringement of the '078 patent" and

- The "exclusive right under the '078 patent to grant sublicenses to others."

MTD Open Br., Ex. 1.

---

[1]  The assignment of the '078 patent to TVGL is included here in response to an issue raised *sua sponte* by the Magistrate Judge. Report at 10 n.7.

The License does not include any grant to TVGI of a right to practice the patent (*i.e.*, to make, use or sell the patented invention). *See id.* Moreover, TVGI's right to transfer its interest in the '078 patent is restricted by the License, which states that the rights and licenses granted to TVGI "may not be assigned or otherwise transferred without the written consent of [TVGL]." *Id.*

After the Plaintiffs entered into the License, Gemstar, the parent company of both plaintiffs, licensed rights to the '078 patent to REDACTED an agreement entered into between REDACTED and Gemstar (the 'REDACTED Agreement"). *See* MTD Opp. Br., Ex. 1. The preamble to the REDACTED Agreement specifies that Gemstar and REDACTED are the sole parties to the agreement:

> This License Agreement ("Agreement"), effective as of      **REDACTED** (the "Effective Date"), *is made and entered into by and between Gemstar-TV Guide International, Inc.*, a corporation organized under the laws of the State of Delaware, USA (which, together with all of its Subsidiaries (unless expressly stated otherwise), is referred to herein as "TV Guide") *and*   REDACTED

*Id.* at TG162614 (emphasis added).    TVGI is expressly not a party to the   REDACTED Agreement—the term "TV Guide" is defined to be Gemstar and its subsidiaries, including TVGI, but "TV Guide" is not a *party* to the Agreement. *See id.*; *see also* Exhibit 3, 1/31/07 Armaly Tr. at 221:22-222:1

**REDACTED**

2

The signature block of the REDACTED Agreement further confirms that Gemstar and   REDACTED are the only parties to the agreement.    The only parties identified in the signature block are

---

2   This deposition testimony of Mr. Samir Armaly was taken after briefing on TMS' Motion to Dismiss was completed and thus was not available to the Magistrate Judge when he issued the Report. TMS offers Mr. Armaly's testimony to corroborate the evidence presented in TMS' Motion to Dismiss or to address issues raised by the Magistrate Judge.

Gemstar-TV Guide International, Inc. and    REDACTED    MTD Opp. Br., Ex. 1 at TG 162640-41.

The defined term "TV Guide" is mentioned nowhere in the signature block.  *Id.*  No reference is

made to any subsidiaries of Gemstar, or that the agreement is being signed by Gemstar on behalf

of it and its subsidiaries.  *Id.*   The agreement is signed by Mike McKee as Chief Operating

Officer of Gemstar-TV Guide International, Inc.  *Id.*  Although nominally the Chief Operating

Officer of TVGI, Mr. McKee did not act on behalf of TVGI with regard to the   REDACTED

Agreement.  Indeed, in his deposition testimony in this case, Mr. McKee expressly stated that his

only involvement with TV Guide Online was in October 2005 in connection with the lawsuit

between TV Guide Online and TMS, and not in connection with negotiating any arrangement

with


**REDACTED**


TMS' Reply Brief in Support of Its Motion to Dismiss ("MTD Reply Br."), Ex. 1 at 13:17-14-12

(emphases added).

The  REDACTED  Agreement contains only one patent license grant to  REDACTED  , a non-exclusive

license grant covering "TV Guide Patents."  MTD Opp. Br., Ex. 1 at TG162620 (§ 2.1.1).  "TV

Guide Patents" includes "any and all patents and patent applications" owned by Gemstar and its

subsidiaries.  MTD Opp. Br., Ex. 1 at TG162617-18 (§ 1.1).  TVGI has rights to only one patent—the '078 patent—and therefore could not have granted REDACTED rights to the universe of patents licensed under the REDACTED Agreement's sole license grant clause.  *See* MTD Opp. Br., Ex. 3 at 149:23-150:4.  The REDACTED Agreement has no separate patent license grant from any Gemstar subsidiary, and in particular, no separate license grant from TVGI to REDACTED regarding the '078 patent.  *See generally* MTD Opp. Br., Ex. 1.  The language of the sole patent license grant demonstrates that Gemstar, as the sole party to the agreement, controls and is able to license the patents owned or licensed by its subsidiaries, including the '078 patent.  Mr. Armaly's testimony corroborates that the '078 patent is considered part of *Gemstar's* patent portfolio, not just TVGI's.  Exhibit 3, 1/31/07 Armaly Tr. at 268:13-18 ("

**REDACTED**

"); *id.* at 295:13-24 ("

**REDACTED**

").

Gemstar, not TVGI, also controls the amount of revenue TVGI receives as a result of the REDACTED Agreement.  All payments under the REDACTED Agreement are made directly to Gemstar. Report at 10; MTD Opp. Br., Ex. 3 at 146:24-147:13.  No determination of the revenue attributable to the '078 patent and allegedly payable to TVGI is made in the REDACTED Agreement itself.  *See generally* MTD Opp. Br., Ex. 1.  According to Plaintiffs' own witness, it is *Gemstar* that determined how to allocate the payment from REDACTED among the various Gemstar

subsidiaries. Report at 10; MTD Opp. Br. at 139:24-140:8 and 146:8-10. The License between TVGI and TVGL requires TVGL to receive 25% of the licensing revenues from the '078 patent. MTD Open. Br., Ex. 1. But the testimony of Mr. Armaly, Plaintiffs' own witness and 30(b)(6) designee, is that Gemstar has allocated          **REDACTED**

Exhibit 3, 1/31/07 Armaly Tr. at 296:19-297:7.

**LEGAL STANDARDS**

**I.      Standard Of Review.**

Any party may object to the findings and recommendations proposed by a magistrate judge. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72. For motions dispositive of a claim or defense, such as a motion to dismiss, the District Court reviews *de novo* any part of the magistrate judge's proposal to which an objection has been raised, and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). *See also Tufano v. One Toms Point Lane Corp.*, 64 F. Supp. 2d 119, 122 (E.D.N.Y. 1999) ("A motion to dismiss or for summary judgment is a dispositive motion and as such it may be referred to a Magistrate Judge for proposed findings of fact and recommendations for its disposition pursuant to 28 U.S.C. § 636(b)(1)(B), and specific objections thereto shall be reviewed de novo by this Court to accept, reject, or modify, in whole or in part, the Magistrate's findings or recommendations."); *Klapper v. Commonwealth Realty Trust*, 657 F. Supp. 948, 952-53 (D. Del. 1987) (applying *de novo* review under § 636(b)(1)(B) to a motion to dismiss for failure to state a claim). The *de novo* review of dispositive motions is as equally true in a patent case as in any other. *See ADE Corp. v. KLA-Tencor Corp.*, 288 F. Supp. 2d 590, 592-93 (D. Del. 2003) ("A magistrate judge's patent claim construction and decisions on dispositive motions are subject to plenary review.").

6

**II.    Legal Standards Governing Motions To Dismiss For Lack Of Standing And Determining Whether A Licensee Is "Exclusive."**

TMS objects to the first paragraph of the Report's discussion of the legal standards governing a motion to dismiss for lack of standing.  Report at 4, Section A.  The Magistrate Judge incorrectly stated that the Court must accept all material allegations in the Complaint as true and construe those facts in the light most favorable to plaintiffs.  *Id.*  Although that statement is accurate for a facial challenge to a party's standing, TMS has raised a factual challenge to TVGI's standing to sue—TMS disputes Plaintiffs' claim in their Complaint that TVGI is the exclusive licensee to the '078 patent.  *See Carpet Group Int'l v. Oriental Rug Importers Assoc.*, 227 F.3d 62, 69 (3d Cir. 2000) ("Here, the defendants attack subject matter jurisdiction 'in fact,' meaning they dispute the existence of certain jurisdictional facts alleged by the plaintiffs.").

When a factual challenge to standing is made, "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case.  In such a situation, 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'"  *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Assoc.*, 549 F.2d 884, 891 (3d Cir. 1977)); *see also URS Corp. v. Lebanese Co. for the Development & Reconstruction of Beirut Central District SAL*, 512 F. Supp. 2d 199, 206 (D. Del. 2007) (Robinson, J.) (stating that in a factual challenge to subject matter jurisdiction, the court may consider evidence outside the pleadings to resolve factual disputes bearing on jurisdiction).  TMS objects to the statement of the law in the Report at 4, Section A, and the resulting shifting of the burden to TMS to prove that TVGI does not have standing to sue.  *See, e.g.*, Report at 10 ("I conclude that Tribune's       theory ***does not defeat TVGI's standing*** to maintain this litigation" (emphasis added)).  As the Magistrate

Judge correctly stated, "[t]he party invoking federal jurisdiction [TVGI] has the burden to establish standing to sue." Report at 4. TVGI has not met its burden.

TMS does not object to the remainder of the Report's discussion of the legal standards governing motions to dismiss for lack of standing and for determining whether a license is "exclusive." Report at 4-6, Sections A-B. However, TMS does object to the Magistrate Judge's application of these legal standards to the facts of this case.

## ARGUMENT

As Judge Farnan recently explained in dismissing a purported exclusive licensee for lack of standing based on facts similar to this case, "[a] nonexclusive license confers no constitutional standing on the licensee to bring suit or even to join a suit with the patentee because *a nonexclusive licensee suffers no legal injury* from infringement." *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, C.A. No. 07-187-JJF, 2007 WL 4565020, at *5 (D. Del. Dec. 20, 2007) (emphasis added) (alteration in original) (quoting *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005)). TVGI is not an exclusive licensee and does not control the '078 patent, and thus has not suffered any legal injury from TMS' alleged infringement, let alone the millions of dollars in lost profits damages it claims.

I.    **The TVGI/TVGL License Does Not Meet The Legal Requirements Of An Exclusive License.**

In Section C of the Report, the Magistrate Judge found "that TVGL and TVGI intended that the License Agreement would provide TVGI with an 'exclusive license' in the '078 patent" and that the License granted three rights to TVGI. Report at 7. However, under the governing law (including two cases that issued after briefing on TMS' Motion to Dismiss was completed)

the Plaintiffs' intent and the rights granted to TVGI in the TVGI/TVGL License are legally insufficient to create an exclusive license.[3]

### A.    The Mere Use Of The Phrase "Exclusive License" In Not Sufficient To Create An Exclusive License.

The Magistrate Judge erred by placing undue reliance on the fact that "the License Agreement recites TVGI's 'desire[] to obtain an exclusive license under the '078 patent' and three times refers to TVGI as receiving an 'exclusive license' or being the 'exclusive licensee.'" Report at 7. This reliance on the word "exclusive" fails to consider the actual language and substance of the License. "[T]he use of the term 'exclusive license' in the [license] agreements is not dispositive; what the documents in fact recite is dispositive." *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875 (Fed. Cir. 1991); *see also Intellectual Prop. Dev., Inc., v. TCI Cablevision of California, Inc.,* 248 F.3d 1333, 1344 (Fed. Cir. 2001) ("The title of the agreement at issue, … , is not determinative of the rights transferred under the agreement; actual consideration of the rights transferred is the lynchpin of such a determination."). It is well settled law "that '[w]hether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions.'" *Vaupel,* 944 F.2d at 875 (quoting *Waterman v. Mackenzie,* 138 U.S. 252, 256 (1891)). The one and only time the TVGI/TVGL License uses the term "exclusive" substantively to transfer a specific right to TVGI is to grant "the exclusive

---

3    The Magistrate Judge also concluded in Section C of the Report that TVGL "did not retain any rights to … initiate litigation." Report at 7. If that conclusion were correct, this entire action would have to be dismissed because neither party would have standing to sue—TVGI was granted insufficient rights to confer standing to sue, and TVGL did not retain the right to sue. *See Fairchild*, 2007 WL 4565020, at *8 (holding no party had standing to sue and dismissing the entire case because the patent owner granted the licensee the exclusive right to sue, retaining no such rights for itself, but granted insufficient rights to confer standing on the licensee). The TVGI/TVGL License does not grant TVGI the *exclusive* right to sue, however, and therefore TMS does not argue that TVGL lacks standing.

Case 1:05-cv-00725-SLR-LPS     Document 275     Filed 04/03/2008     Page 14 of 30

right under the '078 patent *to grant sublicenses to others*." MTD Open. Br., Ex. 1 at ¶ 3 (emphasis added). As established below, that right alone is insufficient to create an exclusive license and confer standing, and in any event TVGI has no such exclusive right because Gemstar continues to license the patent.

**B.     The Rights To Sue And Sublicense Do Not Confer Standing On TVGI.**

The Magistrate Judge concluded that the TVGI/TVGL License granted TVGI three rights: "the right to practice the '078 patent, the right to exclude others (except for pre-existing nonexclusive licensees) from practicing the '078 patent, and the right to grant sublicenses." Report at 7.[4] The Magistrate Judge premised his conclusion that TVGI is the exclusive licensee to the '078 patent on the proposition that these rights are sufficient to confer standing. However, he did not have the benefit of post-briefing case law that rejects this view of the law. Both the Federal Circuit's decision in *Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187 (Fed. Cir. 2007), and Judge Farnan's recent decision in *Fairchild*, found plaintiffs with rights to sue and sublicense were not exclusive licensees and therefore lacked standing. These recent decisions confirm TMS' position in its Motion to Dismiss and are fatal to TVGI's standing claim.

In *Propat*, the Federal Circuit found that an agreement virtually identical to the TVGI/TVGL License in all material respects was neither an assignment of the patent nor an exclusive license and, therefore, affirmed dismissal of the licensee Propat for lack of standing. Like TVGI's License, Propat's agreement included the rights to sue and sublicense in exchange for "a defined percentage share of the proceeds of the licensing royalties and of any judgment or

---

[4]   Although the Magistrate Judge concluded that the License granted TVGI the right to practice the '078 patent, the plain language of the License does not grant such a right. *See* MTD Open. Br., Ex. 1. Nowhere in the License is the right to practice the '078 patent granted. *Id.* Indeed, Plaintiffs have never argued that the License grants TVGI such a right. *See* MTD Opp. Br. Accordingly, TMS does not address this issue further, as neither of the parties' arguments nor the plain language of the License supports this erroneous conclusion.

settlement arising out of the litigation" (TVGI's purported share is 75%).[5]  *Propat*, 473 F.3d at 1190; MTD Open. Br., Ex. 1.  Additionally, both the Propat agreement and the TVGI/TVGL License are silent as to whether the licensee has the right to practice the patent.  *See id.*  Under these conditions, the Federal Circuit concluded that Propat did not have sufficient rights in the patent to grant it standing to sue, even with the assignee of the patent named as a co-plaintiff (as TVGL is named here).  *Propat*, 473 F.3d at 1194.

In finding the patentee retained too much control over the patent to confer sufficient rights for Propat to have standing to sue as an exclusive licensee, the Federal Circuit placed strong emphasis on Propat's restricted right to assign or transfer its rights—a restriction also imposed on TVGI.  Specifically, in finding Propat was not an exclusive licensee with standing to sue, even if the patentee were named as a co-plaintiff, the court explained "Propat lacks important indicia of a true ownership interest in the patent, such as the right to transfer its interest.  Under the May 2002 agreement, Propat is not allowed to assign its interests under the agreement without [the patent owner's] consent, which can be withheld on any ground."  *Id*. Likewise, TVGI's "rights and licenses … may not be assigned or otherwise transferred without the written consent of [TVGL]."  MTD Open. Br., Ex. 1 at ¶ 5.  Accordingly, based upon the *Propat* decision, the Magistrate Judge's conclusion that the rights granted to TVGI were sufficient to convey standing is in error.

Significantly, the Federal Circuit's holding in *Propat* that the rights to sue and sublicense are insufficient to confer standing reaffirms *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383

---

5  The TVGI/TVGL License requires 25% of the '078 patent licensing revenue to flow to TVGL.  MTD Open. Br., Ex. 1.  But Plaintiffs' 30(b)(6) testimony is that 100% of the licensing revenue from REDACTED  Agreement flows solely to TVGI.  Exhibit 3, 1/31/07 Armaly Tr. at 296:19-297:7.

F.3d 1303 (Fed. Cir. 2004), which TMS cited in its opening brief.  In *Poly-America*, the Federal

Circuit unequivocally rejected plaintiff Poly-America's contention "that Poly-Flex was more

than a mere non-exclusive licensee and possessed certain substantive rights, including the 'right

of enforcement for claims for past damages' and the right to sublicense others."  *Id.* at 1310.

Instead, it found that "Poly-Flex does not have exclusive rights" and "has no entitlement under

the patent statutes to itself collect lost profits damages for any losses it incurred due to

infringement." *Id*. at 1311.

      The Federal Circuit also explicitly addressed in *Poly-America* how the tactic of

"separating the owner of the patent from the seller of the patented product"—as Plaintiffs have

done here—affects patent damages:

> Poly-America and Poly-Flex have a common parent corporation and are not
> simply divisions of a single corporation, but are separate corporate entities.  Their
> parent has arranged their corporate identities and functions to suit its own goals
> and purposes, but it must take the benefits with the burdens.  While we do not
> speculate concerning the benefits that the two companies reap from dividing their
> operations and separating the owner of the patent from the seller of the patented
> product, ***Poly-America [holding company] and Poly-Flex [licensee] may not
> enjoy the advantages of their separate corporate structure and, at the same time,
> avoid the consequential limitations of that structure…***

*Id.* at 383 F.3d at 1311 (emphasis added); *see also id.* at 1311-12 ("Although parties to a lawsuit

may allocate the disposition of infringement damages between themselves, as they appear to

have done here, they cannot create lost profits for a patentee if there are none.  Awarding lost

profits to Poly-America on the basis of its private arrangement with Poly-Flex would

synthetically create lost profits for Poly-America, when it may not have suffered any, to the

detriment of [the defendant].").

**REDACTED**

                                                      Exhibit 2, Vellturo

Second Supp. Rpt. at 3-4.  But Plaintiffs must also recognize the limitations of their corporate

structure—they cannot create lost profits damages on the basis of a legally insufficient license, which is "exclusive" in name only, between TVGI and TVGL.

Additionally, Judge Farnan recently held that the rights to sue and sublicense did not confer exclusivity in *Fairchild*, 2007 WL 4565020, at *8. Similar to the *Propat* license, Fairchild's license conveyed the rights to sue and sublicense with the patent owner's consent. In finding the patent owner retained too much control over the patent for the licensee to have standing, Judge Farnan found the right to sublicense "is not absolute" and placed special emphasis on a provision conditioning sublicensing consent on the patent owner receiving a cross-license from the sublicensee coextensive with any cross-license the licensee receives.[6] *Fairchild*, 2007 WL 4565020, at *7.

**REDACTED**

MTD Opp. Br., Ex. 1 at § 2.1.2. Both before and after the TVGI/TVGL License

**REDACTED**

The notion

that ***TVGI*** is licensing the '078 patent is false. ***Gemstar*** was the only party, only signatory, and only licensor under the REDACTED Agreement.

Plaintiffs cannot distinguish *Fairchild* and *Poly-America* by arguing that the licenses at issue there included only nonexclusive rights to make, use and sell patented products. The question to be addressed is not whether TVGL granted TVGI exclusive or nonexclusive rights to

---

6    Specifically, in the *Fairchild* case, the right to sublicense was "conditioned upon Intersil being granted a license to all [Power Integrations] patents and intellectual property to which Fairchild may be granted rights in a manner and to an extent co-extensive with the rights granted by [Power Integrations] to Fairchild, including any additional rights granted to Fairchild by [Power Integrations] within one year of the grant of any rights by Intersil to [Power Integrations]." 2007 WL 4565020, at *7 (alterations in original). Intersil was the patent owner, Fairchild was the licensee, and Power Integrations was the sublicensee.

13

make, use or sell products under the '078 patent.[7]  The question is whether the TVGI/TVGL License granted TVGI "rights in the patent sufficient to give it standing to sue." *Propat*, 473 F.3d at 1194; *see also id.* ("We therefore agree with the district court that Propat's rights created by the May 2002 agreement did not accord it rights in the patent sufficient to give it standing to sue, even with Authentix [assignee of the patent] named as a co-plaintiff.").  The patentee's control over the patent was dispositive to the question of the licensee's exclusivity and standing in both *Propat,* (where the license did "not explicitly address" the right to practice) and *Fairchild* (where the license explicitly granted a non-exclusive right to practice).  *Propat*, 473 F.3d at 1194; *Fairchild*, 2007 WL 4565020, at *7.  And in *Poly-America*, the Federal Circuit held that "the 'right of enforcement for claims for past damages' and the right to sublicense others" do not create a right to recover lost profits damages.  *Poly-America*, 383 F.3d at 1310.  The bottom line is that *Propat*, *Poly-America* and *Fairchild* establish that the rights to sue and sublicense—the *only* rights granted to TVGI in the License—are insufficient to create standing for TVGI to sue.

## II.    The Magistrate Judge Made Other Errors That Contributed To The Incorrect Legal Conclusion That TVGI Has Standing To Sue.

The thrust of " REDACTED    theory" (as it is called in the Report) is that even if the rights granted to TVGI by the TVGI/TVGL License were sufficient to create an exclusive license—a point TMS does not concede, as discussed above—the circumstances of the REDACTED Agreement illustrate that the rights granted to TVGI are illusory because Gemstar, not TVGI, controls the licensing of the '078 patent.  The Magistrate Judge made several errors in finding the evidence supported the conclusion that TVGI "was, at a minimum, a participant in the REDACTED transaction and exercised control over the '078 patent."  Report at 10.  Even if it were true that TVGI

---

7    Indeed, as noted above, the TVGI/TVGL License does not convey to TVGI any right to make, use, or sell patented products.

*participated* in the REDACTED negotiations—a finding TMS disputes—the facts do not support a conclusion that TVGI *controlled* the licensing of the '078 patent to REDACTED. Absent that control, TVGI does *not* have the "exclusive right under the '078 patent to grant sublicenses to others," one of the only two rights it was purportedly granted in the TVGI/TVGL License. Without that exclusive right to sublicense, TVGI does not hold any of the "bundle of rights to exclude others," which are necessary to provide TVGI with co-plaintiff standing. *See Ortho Pharm. Corp. v. Genetics Institute, Inc.*, 52 F.3d 1026, 1032 (Fed. Cir. 1995) ("[I]t is the licensee's beneficial ownership of a right to prevent others from making, using or selling the patented technology that provides the foundation for co-plaintiff standing, not simply that the word 'exclusive' may or may not appear in the license.").

A.    **Mr. Armaly's Statements Relied On By The Magistrate Do Not Show That TVGI Has Control Over The Licensing Of The '078 Patent.**

The Magistrate Judge explicitly based his conclusion regarding TVGI's participation and control over the '078 patent on the following three statements in "a declaration and deposition testimony of Samir Armaly, the Senior Vice President, Intellectual Property, for Gemstar and TVGI":

1.    "he participated in the negotiations of the REDACTED Agreement on behalf of TVGI as well as Gemstar";

2.    "it was TVGI 'that granted the nonexclusive, '078 patent license to REDACTED '"; and

3.    "Gemstar is working on a mechanism for allocating a portion of the revenues from REDACTED Agreement to TVGI, in recognition of the value TVGI contributed to the transaction in the form of patent rights."

Report at 10.

Mr. Armaly's first statement is inapposite—whom Mr. Armaly was representing during negotiation of the REDACTED Agreement does not change the legal effect of the REDACTED Agreement itself. The only parties to the REDACTED Agreement are Gemstar and REDACTED ; the only signatories

are Gemstar and _REDACTED_ ; and the only license grants are between Gemstar and _REDACTED_ . *See generally* MTD Opp. Br., Ex. 1. That Mr. Armaly may claim to have been wearing the hats of both Gemstar and TVGI at the time the _REDACTED_ Agreement was being negotiated—unbeknownst to _REDACTED_—does not indicate any control by TVGI over the licensing of the '078 patent.

Mr. Armaly's second statement is belied by the _REDACTED_ Agreement itself. The Magistrate Judge concluded that there were "admittedly ambiguous indicators in the _REDACTED_ Agreement" as to whether Gemstar or TVGI licensed the '078 patent to _REDACTED_. Report at 10. However, the Magistrate Judge did not conclude the language of the _REDACTED_ Agreement itself is ambiguous, and there is no ambiguity about what the _REDACTED_ Agreement says—there is only argument by Plaintiffs that is contrary to the Agreement's plain language. But "[a] contract is not ambiguous merely because the parties disagree about its proper interpretation." *MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 210 (3d Cir. 2005). Rather, "[u]nambiguous written agreements should be enforced according to their terms, without using extrinsic evidence 'to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity.'" *Id.*. It is unambiguous from the terms of the _REDACTED_ Agreement that Gemstar, not TVGI, granted REDACTED the nonexclusive '078 patent license. _REDACTED_ and Gemstar are the only parties to the REDACTED Agreement, as evidenced by the preamble and signature blocks of the _REDACTED_ Agreement. *See* MTD Opp. Br., Ex. 1. And there is a single patent license grant to _REDACTED_.[8] *Id.* As the only party that could grant the patent license to _REDACTED_, Gemstar must have had sufficient rights to the granted patents, including the '078 patent, to make that grant to _REDACTED_. Furthermore, if the

---

[8] The Magistrate Judge did not address the significant point that the _REDACTED_ license is not just for the '078 patent, but rather _REDACTED_ as explained above and in TMS' underlying briefs. This further weighs against the conclusion that TVGI licensed the '078 patent _REDACTED_, as TVGI could not have made the single patent grant in the _REDACTED_ Agreement. *See* MTD Opp. Br., Ex. 1 at § 2.1.1.

Court were to consider extrinsic evidence, it further supports the four corners of the   REDACTED

Agreement that Gemstar and   REDACTED are the only parties to that agreement.  *See* MTD Reply Br.,

Ex. 1 at 13:17-14-12 (Mr. McKee, the signatory of the   REDACTED   Agreement on behalf of Gemstar,

testifying that he had no involvement with TVGI related to the   REDACTED Agreement); Exhibit 3,

1/31/07 Armaly Tr. at 221:22-222:1 (Mr. Armaly testifying that   REDACTED   and Gemstar are the

only two parties to the agreement).  Mr. Armaly's after-the-fact, conclusory affidavit that it was

TVGI that granted   REDACTED the license to the '078 patent cannot overcome the weight of the

evidence, including the unambiguous terms of the   REDACTED   Agreement itself, that it was Gemstar

that granted patent rights in the '078 patent to   REDACTED .  *See MBIA,* 426 F.3d at 210.

       With regard to Mr. Armaly's third statement, the Magistrate Judge found that Gemstar's

hypothetical eventual allocation (now allocated) of   REDACTED   revenues to TVGI supports standing

and erroneously concluded that it is "irrelevant" whether   REDACTED pays Gemstar directly and

Gemstar allocates the money, so long as TVGI ultimately receives the money.  To the contrary,

Mr. Armaly's statement makes TMS' point: it is "***Gemstar*** [ ] working on a mechanism for

allocating a portion of the revenues from the   REDACTED   Agreement to TVGI," not TVGI, the

alleged exclusive licensee, or TVGL, the assignee of the patent.  Report at 10 (emphasis added).

Gemstar is in control of the revenue allocation, just as it was in control of the patent license

grant.[9]  Just as it controlled the license grant to   REDACTED , Gemstar now controls the allocation of

funds it receives from   REDACTED   related to the '078 patent license—TVGI has no control.

---

9    Moreover, the decision in *Poly-America* defeats TV Guide's reliance on Gemstar's internal
     allocation of royalties for   REDACTED   license to prove "lost royalties."  The Federal Circuit
     specifically addressed a parent structuring a holding company and licensee's "private
     arrangement" to "allocate" funds (in that case, the licensee's patent infringement damages;
     here, the royalties REDACTEDpays to Gemstar), and found that it "would synthetically create lost
     profits" and reversed the lost profits award.  383 F.3d at 1311-12.

The Magistrate Judge ignored the actual terms of the *REDACTED* Agreement in favor of a single affidavit filed by Mr. Armaly in opposition to TMS' Motion to Dismiss. That affidavit cannot be used to change the unambiguous meaning of the *REDACTED* Agreement or to counter the sworn testimony of Plaintiffs' witnesses. Gemstar's control over all aspects of the '078 patent licensing defeats any claim TVGI has regarding its status as an "exclusive licensee" with standing to sue.

**B.    TMS' Answer Does Not Show That TVGI Has Standing.**

Although neither party raised this argument, the Magistrate Judge also relied on the licensing negotiations between Gemstar and TMS for the finding that TVGI "exercised control over the '078 patent." Report at 10 n.7. The Magistrate mistakenly noted that "TVGI has also been a participant in discussions about the '078 patent with Tribune," citing TMS' Answer "admitting it met with [TVGI] and Gemstar ... to discuss possible avenues for the companies to work together, and that the '078 patent was discussed during this meeting" in April 2005. Report at 10 n.7 (citing Answer D.I. 6, at ¶ 24). The Magistrate Judge's conclusion is incorrect because at the time of the meeting at issue *Index Systems* owned the '078 patent and TVGI had no interest in it. MTD Opp. Br., Ex. 3 at 13:18; Exhibit 1, 10/6/05 Assignment to TVGL. TVGI was at the meeting "to discuss possible avenues for the companies to work together;" Gemstar was the entity discussing the '078 patent.

However, these negotiations raised by the Magistrate Judge further support the conclusion that the rights granted to TVGI in the TVGI/TVGL License are not sufficient to confer standing. In *Propat*, the license agreement included the requirement that "[the licensee] must provide [the patent owner] with notice and obtain [ ] consent to its selection of targets for licensing and suit." 473 F.3d at 1194. The Federal Circuit held this requirement that the patentee have continued involvement and approval rights in licensing and enforcement actions

18

further indicated that the licensee did not have sufficient rights to the patent to be an exclusive licensee with standing to sue. *Id.* Similarly in this case, Gemstar is involved in the selection of targets for licensing and suit, including TMS. Any suggestion that TVGI controls the selection of targets for licensing and suit is not supported by the clear record. Gemstar and TMS met in April 2005, over 5 months before TVGL or TVGI had any rights or license under the patent, to discuss possible ways to work together. D.I. 6, Answer at ¶ 24. In June 2005, while Index Systems was the owner of the '078 patent, Gemstar sent TMS a licensing proposal that included the '078 patent. *Id.* at ¶ 25.

**REDACTED**

MTD Reply Br., Ex. 2

at 138:1-18. It was *Gemstar* who targeted both TMS and  REDACTED) either (1) license the Gemstar patent portfolio under Gemstar's licensing terms (which are the subject of TMS' patent misuse claim that is currently stayed) or (2) be sued (without notice, the subject of TMS' pending summary judgment motion to preclude pre-suit damages). Because TVGI's right to grant sublicenses to the '078 patent is subject to the control of Gemstar, it does not hold any of the "bundle of rights to exclude others" necessary to provide it with co-plaintiff standing. *See Ortho Pharm.*, 52 F.3d at 1032 (holding that a license that "makes the licensee a beneficial owner of some identifiable part of the patentee's bundle of rights to exclude others" is an exclusive license).

**CONCLUSION**

TMS respectfully objects to the Magistrate's Report and Recommendation denying TMS' Motion to Dismiss because the Magistrate Judge erred in finding: (1) the License Agreement between TV Guide Online, Inc. and TV Guide Online, LLC does not convey sufficient rights in the '078 patent to confer exclusive licensee standing on TV Guide Online, Inc.; and (2) TV Guide Online, Inc. does not control the licensing of the '078 patent to REDACTED The burden is on

TV Guide Online, Inc. to establish that it is an exclusive licensee to the '078 patent with standing to sue. TV Guide Online, Inc. has not, and cannot, meet this burden, and thus TMS respectfully requests this Court dismiss TV Guide Online, Inc. from this case.

Dated: March 27, 2008

*/s/ Richard K. Herrmann*

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
302.888.6800
rherrmann@morrisjames.com

Mark A. Pals, P.C.
Linda S. DeBruin
Michael A. Parks
Laura A. Hepburn
Meredith Zinanni
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
312.861.2000

*Counsel for Defendant Tribune Media Services, Inc.*

# EXHIBIT 1

# A S S I G N M E N T

WHEREAS, Index Systems, Inc. ("Index Systems"), a corporation organized and existing under the laws of the British Virgin Islands and having an office and place of business at Post Office Box 71, Craigmuir Chambers, Road Town, Tortola, British Virgin Islands, is the sole and exclusive owner of U.S. Patent No. 5,988,078, issued November 23, 1999 ("the '078 patent"); and

WHEREAS, TV Guide Online, LLC ("TV Guide Online"), a limited liability company organized and existing under the laws of the State of Delaware and having an office and place of business at 6922 Hollywood Blvd., Los Angeles, CA 90028, is desirous of acquiring the '078 patent.

NOW, THEREFORE, be it known that in consideration of the payment of good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, Index Systems does hereby sell, assign, and transfer to TV Guide Online, its successors, assigns, and legal representatives, the '078 patent, together with all right, title and interest therein held by Index Systems, including, but not limited to, the right to sue and recover for past infringement thereof, and any and all causes of action and remedies, either legal and/or equitable, related thereto.

Index Systems, Inc.
a British Virgin Islands Corporation

Name: _Samir Armah_
Title: _Senior Vice President_
Date: _October 6, 2005_

TG 000450

# EXHIBIT 2

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# EXHIBIT 3

# EXHIBIT REDACTED
# IN ITS ENTIRETY